**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ )<br>**DOMINGO ARREGUIN GOMEZ, et al.,**  )<br> )<br>**Plaintiffs,**  )<br> )<br>**v.**  )<br> )<br>**DONALD J. TRUMP, in his official capacity as**  )<br>**President of the United States of America, et al.,**  )<br> )<br>**Defendants.**  )<br>_____ ) | **Case No. 20-cv-01419 (APM)** |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs in this action are United States citizens and lawful permanent residents whose children and grandchildren ("beneficiaries") were, at the time this litigation commenced, all "minors"—meaning unmarried children under the age of 21—seeking immigrant visas to enter this country.  Each beneficiary has since turned or will turn 21 years old this month.  Two have received their visas since Plaintiffs filed this action, and Plaintiffs concede that their individual claims relating to those beneficiaries' applications are now moot.  As for the third beneficiary, W.Z.A., Plaintiffs fear that if he does not receive his visa and enter the country before his birthday on June 30, he will "age out" of his minor visa preference category.

What prompted Plaintiffs' filing of this suit is Presidential Proclamation 10014, Suspension of Entry of Immigrants Who Present a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak, 85 Fed. Reg. 23,441 (Apr. 22, 2020) ("Proclamation" or "Proclamation 10014").  Presidential Proclamation 10014 halts processing of certain categories of immigrant visas, including the beneficiary-based visas at issue in this case.  Plaintiffs seek a temporary restraining order preventing Defendants from enforcing

Proclamation 10014 against minor visa applicants who will turn 21 years old during the Proclamation's effective period.  The minor visa applicants are sponsored by Plaintiffs and other similarly situated United States citizen and lawful permanent resident parents.  Plaintiffs also request that this court certify a class of visa sponsors whose beneficiaries or derivative beneficiaries are subject to the Proclamation and will also age out while the Proclamation remains in effect.  Because Plaintiffs have not shown that this action presents a justiciable case or controversy, the court denies Plaintiffs' motions.

## I. Background

### A.    Proclamation 10014

On April 22, 2020, President Trump signed Presidential Proclamation 10014, which temporarily suspends the "entry into the United States" of certain classes of immigrants who did not already have a valid immigrant visa or travel document as of April 23, 2020, the effective date of the Proclamation.  85 Fed. Reg. at 23,442–43 §§ 1, 2(a), 5.

The Proclamation cites various justifications, rooted in economic harms caused by the COVID-19 pandemic, to justify temporarily suspending entry of new permanent residents.  First among those reasons is protecting unemployed American workers against competition in the labor market from new permanent residents.  *See* 85 Fed. Reg. at 23,441–42.  The Proclamation states that "we must be mindful of the impact of foreign workers on the United States labor market, particularly in an environment of high domestic unemployment and depressed demand for labor," and highlights the need to protect in particular "workers at the margin between employment and unemployment, who are typically 'last in' during an economic expansion and 'first out' during an economic contraction."  *Id.* at 23,441.  The Proclamation also identifies an overburdened healthcare system as reason to halt inflow of new permanent residents:  "[I]ntroducing additional

permanent residents when our healthcare resources are limited puts strain on the finite limits of our healthcare system at a time when we need to prioritize Americans and the existing immigrant population." *Id.* at 23,442.  Finally, the Proclamation cites the need to preserve State Department resources as a reason to put a pause on entry, "so that consular officers may continue to provide services to United States citizens abroad." *Id.* at 23,441.

For these reasons, the President suspended entry of specified classes of immigrants for an initial 60-day period starting April 23, 2020, though the suspension "may be continued as necessary." *Id.* at 23,443 §§ 4–5.  As relevant here, the Proclamation temporarily suspends entry of most immigrants with family-based visas. *See id* at 23,442–43 § 2.  The Proclamation provides an exception, however, for "any alien whose entry would be in the national interest, as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees"— which the court will refer to as the "national interest exception." *Id.* at 23,443 § 2(b)(ix).  The Secretaries of State and Homeland Security are tasked with implementing the Proclamation as it applies to visas and aliens, respectively. *Id.* at 23,443 § 3.

On June 22, 2020, the President issued a follow-up proclamation, which extends Proclamation 10014 through December 31, 2020, effective immediately. *See* Proclamation Suspending Entry of Aliens Who Present a Risk to the U.S. Labor Market Following the Coronavirus Outbreak § 1 (June 22, 2020) ("Second Proclamation").[1]  The Second Proclamation also provides that, effective June 24, 2020, "[t]he Secretary of State and the Secretary of Homeland Security shall exercise the authority under" the national interest exception "of Proclamation 10014

---

[1] Available at https://www.whitehouse.gov/presidential-actions/proclamation-suspending-entry-aliens-present-risk-u-s-labor-market-following-coronavirus-outbreak/ (last accessed June 22, 2020).

to exempt alien children who would as a result of . . . the suspension in section 1 of Proclamation 10014 age out of eligibility for a visa."[2]  *Id.* §§ 4(a)(i), 7.

**B.     The Family-Based Immigrant Visa Process**

The family-based visa program allows United States citizens and permanent residents to "sponsor" non-citizen family members, or "beneficiaries," for immigrant visas.  *See* 8 U.S.C. §§ 1151, 1153(a).  The sponsor may also petition for visas for certain relatives ("derivatives") of the principal beneficiary.  *Id.* §§ 1153(d), 1154(a).  A family member seeking to sponsor a beneficiary must file a petition with the United States Citizenship and Immigration Services ("USCIS").  *See* AUSTIN T. FRAGOMEN, JR. ET AL., IMMIGRATION PROCEDURES HANDBOOK § 12:2 (June 2020) [hereinafter HANDBOOK]; Pls.' Emergency Mot. for Temporary Restraining Order, ECF No. 21 [hereinafter Pls.' TRO Mot.], at 3.  Once the petition is approved, USCIS will forward the visa petition for consular processing at the U.S. Department of State's National Visa Center ("NVC").  *See* HANDBOOK § 12:25; Foreign Affairs Manual ("FAM") 504.1.[3]

 "Immediate relatives"—beneficiaries who are the spouses, parents, and unmarried children under the age of 21 of U.S. Citizens—can apply for and receive a visa as soon as USCIS approves a sponsoring petition.  8 U.S.C. §§ 1101(b)(1); 1151(b)(2)(A)(i); *Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 46–48 (2014).  All other family relationships, however, are classified in "preference" categories, for which Congress imposes annual limits on the number of available visas.  8 U.S.C. §§ 1151(c)(1), 1152, 1153(a)(1)–(4).  For these preference categories, visas for beneficiaries and their derivative beneficiaries become available in order of the date the sponsor filed her petition with USCIS, and demand regularly outstrips the congressionally allocated yearly

---

[2] The reference in the Second Proclamation to the national interest exception as being located in "section 2(b)(iv) of Proclamation 10014" appears to be a scrivener's error.  The national interest exception in Proclamation 10014 is found in section 2(b)(ix).
[3] Available at https://fam.state.gov/Fam/FAM.aspx (last accessed June 22, 2020).

allotments.  *Cuellar de Osorio*, 573 U.S. at 48.  Some beneficiaries may wait years or even decades before a visa in a given preference category becomes available.  *Id.* at 50.  If and when a visa becomes available, the NVC then notifies the appropriate consular office, which will conduct an interview to confirm that the beneficiary is eligible for an immigrant visa.  9 FAM 504.1-2(d); 9 FAM 504.1-3.

This often lengthy process creates a pitfall for minor children whose visa preference categories hinge on their youth.  *See Cuellar de Osorio*, 573 U.S. at 50 ("[N]ot all offspring, but only those under the age of 21 can qualify as an 'immediate relative' of a U.S. citizen, or as the principal beneficiary of a[] [lawful permanent resident's] petition, or . . . as the derivative beneficiary of any family preference petition.").  These beneficiaries risk "ag[ing] out"—i.e., reaching adulthood and losing their immigration status—before their visa applications are granted. *Id.* at 45–46.  The Child Status Protection Act ("CSPA"), 116 Stat. 927, partially remedies this problem by preventing eligible beneficiaries from aging out due to bureaucratic delays, *see* 8 U.S.C. §§ 1151(f)(1), 1153(h); *Cuellar de Osorio*, 573 U.S. at 51–53; though not all potential age-outs are automatically eligible for CSPA's protections.

A child who "ages out" of her preferential visa eligibility may seek a visa through another preference category, but this often entails significant delays.  For instance, an aged-out child of a lawful permanent resident may seek an F2B visa—a preference category available to unmarried, adult children of lawful permanent residents, which is capped at a lower number of total visas annually and subject to additional per-country limits.  *See* 8 U.S.C. § 1152(a)(2), (4)(C); Pls.' TRO Mot., Ex. A., Decl. of Charles Wheeler, ECF No. 21-2 [hereinafter Wheeler Decl.], ¶¶ 2–3, 6.  The queue for prospective F2B immigrants is at least several years long and even longer for immigrants

from oversubscribed countries.  *See* Pls.' TRO Mot. at 5–6.  The estimated wait time for an F2B immigrant from Mexico, for instance, is approximately 67 years.  Wheeler Decl. ¶ 9.

To avoid these drastic consequences of aging out, the State Department's policy is to prioritize children whose applications are "current" (i.e., a visa is immediately available through the appropriate queue), but who are about to age out of immediate eligibility.  *See, e.g.*, 7 FAM 1812.4-2.b(4); 9 FAM 402.6-6(K)(d); 9 FAM 502.2-3(C)(c)(1).  Though the COVID-19 pandemic has led to the suspension of routine visa processing worldwide, *see Suspension of Routine Visa Services*, U.S. DEP'T OF STATE – BUREAU OF CONSULAR AFFAIRS (Mar. 20, 2020),[4] the State Department "considers age-out cases to be mission critical services that may be eligible for a national interest exception . . . and thus may continue to be scheduled for [an] interview at [the U.S. consulate or embassy] as resources allow."  *See* Defs.' Opp'n to Pls.' TRO Mot., ECF No. 30 [hereinafter Defs.' TRO Opp'n], Ex. 2, Decl. of Brianne Marwaha, ECF No. 30-2 [hereinafter Marwaha Decl.], ¶¶ 2, 4–5.

### C.    Plaintiffs' and Their Families' Visa Applications

Plaintiffs Domingo Arreguin Gomez, Mirna S., and Vicenta S.[5] are family-based visa sponsors of minor beneficiaries and derivative beneficiaries who have turned or will turn 21 this month.  Compl., ECF No. 1 [hereinafter Compl.], ¶¶ 23–25.  Plaintiffs fear that Defendants' enforcement of the Proclamation against the minor beneficiaries will cause them to age out of their minor preference categories before they receive visas and enter the United States, causing Plaintiffs to remain separated from their loved ones for years, or possibly for the rest of their lives.  *See* Pls.' TRO Mot. at 1–2, 21–23.

---

[4]  Available  at  https://travel.state.gov/content/travel/en/News/visas-news/suspension-of-routine-visa-services.html (last accessed June 23, 2020).
[5] Plaintiffs Mirna S. and Vicenta S. are proceeding under pseudonyms.  *See* 6/5/2020 Minute Order.

    *1.*  *Domingo Arreguin Gomez and Alondra*

   Lead Plaintiff Domingo Arreguin Gomez is a lawful permanent resident of Mexican origin. *See* Pls.' TRO Mot., Ex. F, Decl. of Domingo Arreguin Gomez, ECF 21-14 [hereinafter Gomez Decl.], ¶ 1. Gomez sponsored his wife for an immigrant visa, and his stepdaughter, Alondra, was a derivative child beneficiary of Gomez's wife's visa application. *Id.* ¶ 4. Alondra's 21st birthday was on June 15, 2020. *Id.* ¶¶ 7, 11. On April 20, 2020, the United States Consulate General in Ciudad Juárez, Mexico denied Alondra's request for an expedited appointment after determining that she qualified for relief under CSPA, which would allow her to immigrate to the United States under the minor preference category even after she turned 21 years old. *See* Defs.' TRO Opp'n, Ex. 4, Decl. of Linda Neilan Dus, ECF No. 30-4 [hereinafter Second Dus Decl.], ¶¶ 6–7; *see also* Gomez Decl. ¶ 10. On June 4, 2020, the U.S. Consulate General found that its earlier determination that Alondra was eligible for CSPA was incorrect. Second Dus Decl. ¶ 8. The U.S. Consulate General contacted Alondra the following day to schedule an expedited visa interview. *Id.* ¶ 10. On June 9, 2020, the consular officer determined that Alondra had established her eligibility for a national interest exception under the Proclamation and issued her a visa before her 21st birthday. *Id.* ¶ 11.

    *2.*  *Mirna S. and M.T.S.*

   Plaintiff Mirna S. is a United States lawful permanent resident of Mexican origin. *See* Pls.' TRO Mot., Ex. C., Decl. of Mirna S., ECF No. 21-9 [hereinafter Mirna Decl.], ¶ 1. Mirna S.'s daughter, M.T.S., is turning 21 years old today, on June 23, 2020. *Id.* ¶ 11. Mirna S. filed a petition to sponsor M.T.S.'s visa application in November 2018, and USCIS approved the petition in June 2019. *Id.* ¶ 10. Mirna S. and M.T.S. submitted M.T.S.'s visa application and required documentation to the NVC in November 2019. *Id.* ¶ 11. NVC notified Mirna S. the following

month that M.T.S. was ready to be scheduled for a visa interview at the U.S. consulate in Ciudad Juárez, Mexico. *Id.* ¶¶ 11, 13. On May 12, 2020, the U.S. Consulate General in Ciudad Juárez scheduled an expedited immigrant visa appointment for M.T.S. for June 5, 2020, which was subsequently moved up to May 29, 2020. *Id.* ¶ 13; *see also* Defs.' TRO Opp'n, Ex. 3, Decl. of Linda Neilan Dus, ECF No. 30-3 [hereinafter First Dus Decl.], ¶ 2. At M.T.S.'s interview, the consular officer refused M.T.S.'s application under Presidential Proclamation 10014; however, the officer noted he intended to pursue a national interest exception. First Dus. Decl. ¶ 3. M.T.S. was granted a national interest exception on June 4, 2020, and received a visa on June 9, 2020. *Id.* ¶¶ 4, 6.

3.      *Vicenta S. and W.Z.A.*

The third Plaintiff, Vicenta S., is a U.S. citizen of Salvadoran origin. Pls.' TRO Mot., Ex. H, Decl. of Vicenta S., ECF No. 21-16 [hereinafter Vicenta Decl.], ¶¶ 1, 6. Vicenta S. filed a visa petition on behalf of her son, W.Z., who lives in the United States. *Id.* ¶ 5, 7. Vicenta S.'s grandson, W.Z.A., is one of the derivative beneficiaries of that petition. *Id.* ¶¶ 5, 7, 13, 14. W.Z.A. lives in El Salvador and will turn 21 on June 30, 2020. *Id.* ¶¶ 5, 17. W.Z. and his family completed their visa applications on March 10, 2020, and their immigrant visa interviews were scheduled to take place at the United States Embassy on April 30, 2020. *Id.* ¶ 17. Due to the COVID-19 pandemic, however, El Salvador imposed a lockdown in which no one was allowed out of their homes except to buy food and medicine. *See* Defs.' TRO Opp'n, Ex. 5, Decl. of William Bent, ECF No. 30-5 [hereinafter Bent Decl.], ¶ 9. Although the consulate in El Salvador continued to grant emergency interview appointments to visa applicants at risk of aging out, it was unable to do so for W.Z. and his family because they had not completed their medical appointments at the time of the lockdown and medical examinations were prohibited by the lockdown. *Id.* ¶¶ 9, 12–13.

W.Z. was informed on April 1, 2020, that his and his family's visa interviews were cancelled. Vicenta Decl. ¶ 18; Bent Decl. ¶ 8.

On or about June 14 or 15, 2020, El Salvador partially lifted its lockdown orders, allowing the required medical examinations to go forward. *See* Bent Decl. ¶ 9; Pls.' Reply in Further Supp. of Pls.' TRO Mot., ECF No. 37 [hereinafter Pls.' TRO Reply], at 3 (citing Gov't of El Salvador, Exec. Decree No. 31, Art. 9(A)(2), 9(A)(5), 9(B)(25) (June 14, 2020)[6]). The U.S. Embassy in San Salvador then scheduled medical examinations for W.Z. and his family to take place on June 17, 2020, and tentatively scheduled the visa interviews for June 22, 2020. Pls.' TRO Reply, Decl. of Brian J. Blackford, ECF No. 37-1 [hereinafter Blackford Decl.], ¶ 17. Flights are still unavailable from the United States to El Salvador, *id.* ¶ 25, so counsel for W.Z. asked to reschedule the interviews until after June 23, 2020—the earliest day W.Z. expects to be able reach El Salvador, *id.* ¶¶ 26–27; *see also* 6/18/2020 Draft Hr'g Tr. at 3–4.

### D. Procedural Background

On May 28, 2020, Plaintiffs filed a class-action complaint against Defendants President Donald Trump, Attorney General William Barr, the United States Department of State, Secretary of State Michael Pompeo, the United States Department of Homeland Security, and Acting Secretary of Homeland Security Chad Wolf. *See* Compl., ECF No. 1, ¶¶ 26–31, 118. They filed the instant motions for a temporary restraining order and class certification on June 2, 2020. *See generally* Pls.' TRO Mot.; Pls.' Mot. for Class Cert. & Supporting Mem., ECF No. 20 [hereinafter Pls.' Class Cert. Mot.].

Plaintiffs argue that Defendants have violated the Administrative Procedure Act, 5 U.S.C. § 706, in "implementing the Proclamation by categorically applying it to 20-year-old visa

---

[6] Available at https://covid19.gob.sv/wp-content/uploads/2020/06/Decreto-Ejecutivo-No-31.pdf (last accessed June 21, 2020).

applicants who are otherwise eligible for visas, and for whom visas are immediately available, but who will age out of their eligibility before the Proclamation expires."  Pls.' TRO Mot. at 23–24. Plaintiffs seek to certify the following class:

> All individual immigrant sponsors with approved immigrant visa petitions for a child, including for derivative child relatives in applicable preference categories, with a "current" priority date while Presidential Proclamation 10014 is in effect; and whose sponsored child or sponsored derivative child relative is subject to the Proclamation and will, as a result of the Proclamation, age out of his or her current visa preference category by turning 21 years old while the Proclamation remains in effect.

Pls.' Class Cert. Mot. at 1.  Briefing concluded on June 18, 2020, *see generally* Defs.' Surreply to Pls.' TRO Mot., ECF No. 38, and the court held a hearing on the motions the same day, *see* 6/18/2020 Minute Entry.

## II.  Standard of Review

Courts analyze motions for temporary restraining orders using the same standards that apply to preliminary injunctions.  *See Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 81 (D.D.C. 2018); *Sterling Commercial Credit–Mich., LLC v. Phx. Indus. I, LLC*, 762 F. Supp. 2d 8, 12 (D.D.C. 2011).  These "extraordinary" remedies "should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion."  *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004).  To prevail on such a motion, the movant bears the burden of showing that: (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Federal Rule of Civil Procedure 23 governs class certification.  "Rule 23 does not set forth a mere pleading standard."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Rather, a

party must be "be prepared to prove" that he has "in fact" satisfied each of the requirements of Rule 23(a), *id.*: (1) "the class is so numerous that joinder" is impractical ("numerosity"); (2) "there are questions of law or fact common to the class" ("commonality"); (3) the claims or defenses of the named plaintiffs "are typical of the claims or defenses of the class" ("typicality"); and (4) the named plaintiffs "will fairly and adequately protect the interests of the class" ("adequacy of representation"), Fed R. Civ. P. 23(a).   The movant must "also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

A plaintiff seeking either a temporary restraining order or class certification must, as a threshold matter, satisfy the justiciability requirements of Article III of the United States Constitution. *See, e.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *Anderson v. Green*, 513 U.S. 557, 559 (1995) (vacating a preliminary injunction because "no justiciable controversy" remained before the Court).   The justiciability doctrines include "standing[,] ripeness, [and] mootness." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)).   The "core component[s]" of these doctrines are "essential and unchanging part[s] of the case-or-controversy requirement of Article III," and are threshold requirements of federal courts' jurisdiction. *Id.* (alterations in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Because federal courts are courts of limited jurisdiction, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).   The plaintiff therefore "bears the burden of proof" of establishing jurisdiction

"with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. For a motion for temporary restraining order, the plaintiff must demonstrate a "substantial likelihood" of jurisdiction "under the heightened standard for evaluating a motion for summary judgment." *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity* ("*EPIC*"), 878 F.3d 371, 377 (D.C. Cir. 2017) (internal quotation marks and citation omitted); *see also Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) ("T]he 'merits' on which [a] plaintiff must show a likelihood of success encompass not only substantive theories but also establishment of jurisdiction." (citation omitted)). Likewise, "on a motion for class certification," a plaintiff must demonstrate jurisdiction "through evidentiary proof." *Moore v. Apple Inc.*, 309 F.R.D. 532, 539 (N.D. Cal. 2015) (quoting *Comcast*, 569 U.S. at 33); *cf. Lewis v. Casey*, 518 U.S. 343, 357 (1996) (noting that named plaintiffs' "general allegations" of jurisdiction in their class action complaint were "irrelevant . . . for we are beyond the pleading stage").[7]

## III. Discussion

The court does not reach the merits of Plaintiffs' temporary restraining order and class certification motions because they have not shown at this stage in the proceedings that they have standing nor that their claims are ripe and not moot.

---

[7] The Second Circuit evaluates standing at the class certification stage "by relying on the pleadings and 'constru[ing] the complaint in favor of the complaining party.'" *See Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 154 (S.D.N.Y. 2017) (*quoting Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006)); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 459 (S.D.N.Y. 2018) (noting that in the Second Circuit, "class standing is assessed based on allegations rather than evidence"). While that pleading standard would be appropriate in assessing a defendant's motion to dismiss a putative class action representative's complaint for lack of standing, *see, e.g.*, *Ndaba v. Obama*, 697 F. Supp. 2d 75, 77 (D.D.C. 2010), at the class certification stage, the plaintiff is held to a higher burden than "a mere pleading standard," *Wal-Mart*, 564 U.S. at 350.

A.      **Plaintiffs' Temporary Restraining Order**

1.      *Plaintiffs Have Not Demonstrated a Substantial Likelihood of Standing*

To have standing to bring a temporary restraining order, Plaintiffs must adduce record evidence establishing a substantial likelihood that "(i) they have 'suffered a concrete and particularized injury in fact, (ii) that was caused by or is fairly traceable to the actions of the defendant, and (iii) is capable of resolution and likely to be redressed by judicial decision.'" *Food & Water Watch*, 808 F.3d at 913–14 (quoting *Osborn v. Visa*, 797 F.3d 1057, 1063 (D.C. Cir. 2015)).  To be judicially cognizable, an asserted imminent injury must be "certainly impending and immediate—not remote, speculative, conjectural, or hypothetical." *Id.* (quoting *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1293 (D.C. Cir. 2007)).

Plaintiffs assert an imminent injury stemming from the risk that their visa beneficiaries may age out of their minor visa preference categories "in the coming weeks rather than receive the visa for which he or she is qualified." Pls.' TRO Mot. at 21.  According to Plaintiffs, "[t]his impending loss of eligibility to receive an immediate visa, and Plaintiffs' consequent loss of opportunity to reunite with their family members in the United States, satisfy the injury requirement for Article III standing." *Id.*  Plaintiffs assert that this injury is caused by Proclamation 10014 because, despite the State Department's policy to grant emergency consular services to applicants who may be eligible for an exception under the Proclamation, "Plaintiffs' beneficiaries' requests for emergency interviews have gone unfulfilled despite the fact that they are approaching their 21st birthdays." *Id.* at 22.

Plaintiffs' theory of standing founders, however, because they have not shown that, at the time they filed their Complaint, their asserted injury was imminent and non-speculative.  *See Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 324 (D.C. Cir. 2009) ("[S]tanding is

assessed as of the time a suit commences.").[8]  Take Mirna S., for instance.  Mirna S.'s daughter M.T.S. received her visa appointment on May 12, 2020.  Mirna Decl. ¶ 13; First Dus Decl. ¶ 2.  At her interview on May 29, 2020, M.T.S.'s visa application was refused because of the Proclamation, but the consular officer noted that he intended to pursue a national interest exception, which was ultimately granted.  *See* Pls.' TRO Mot., Ex. E, Decl. of M.T.S., ECF No. 21-11 [hereinafter M.T.S. Decl.], ¶ 21; First Dus Decl. ¶¶ 3, 6.

Accordingly, while M.T.S. was initially denied a visa pursuant to the Proclamation, she was considered for (and later granted) a visa under the national interest exception.[9]  Indeed, it is the State Department's policy to treat all visa applicants that may age out as potentially eligible for the national interest exception.  *See* 6/18/2020 Draft Hr'g Tr. at 38–39; Marwaha Decl. ¶¶ 4–5.  Thus, it appears that for M.T.S., while her application was initially denied because of the Proclamation, in practice it was simply funneled into what is essentially a different administrative processing category.  There is no indication in the record that she faced any greater likelihood that her application would be rejected under the national interest exception than under the ordinary visa application process, or that she faced a greater burden in establishing eligibility for the national interest exception.

Plaintiffs counter that the national interest exception is "illusory," citing as evidence the fact that the consular office asked M.T.S. no "national interest" questions during her visa

---

[8] Defendants do not challenge Plaintiffs' suffering of an injury in fact.  *See* Defs.' TRO Opp'n at 17–23.  The court nevertheless has an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party," *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006), so the court here must independently evaluate whether Plaintiffs have met their burden of establishing a cognizable injury, even though it is unchallenged.

[9] In this summary judgment posture of review, the court considers events that occurred subsequent to Plaintiffs' complaint insofar as they shed light on the likelihood of Plaintiffs' claim of future harm at the commencement of the litigation.  *Cf. Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 262 (D.D.C. 2012) (holding that "when a plaintiff alleges a future injury, common sense dictates that a court can and should consider the activities of the plaintiff during and after the time that the complaint is filed in order to assess the likelihood of such a future injury").

interview.  *See* Pls.' TRO Mot. at 42; *see also* M.T.S. Decl. ¶ 20.  However, the absence of any

such questions appears to be due to the fact that there are no "additional criteria[] or burdens upon

. . . the applicants who are being considered for a national interest exception for when they're at

risk of aging out."  6/18/2020 Draft Hr'g Tr. at 39.  In any event, the limited record before the

court belies the claimed illusoriness of the exception: both M.T.S. and Alondra received visas

under the national interest exception since this litigation commenced.  *See* First Dus Decl. ¶ 6;

Second Dus Decl. ¶ 11.[10]  In sum, Mirna S. has not shown that any injury stemming from M.T.S.

being considered under the national interest exception rather than the ordinary visa application

process was "certainly impending and immediate—not remote, speculative, conjectural, or

hypothetical."  *Food & Water Watch*, 808 F.3d at 914 (quoting *Pub. Citizen*, 489 F.3d at 1293).

So, too, for Plaintiff Gomez and his beneficiary, Alondra.  On April 20, 2020—two days

before Proclamation 10014 was issued—the U.S. Consulate General in Ciudad Juarez denied

Alondra's request for an expedited visa appointment after determining (incorrectly, it turned out)

that she qualified for protection under CSPA.  *See* Second Dus Decl. ¶¶ 6, 9.  After the consulate

realized its error, it quickly scheduled her for an interview for a visa under the national interest

exception.  *See id.* ¶¶ 10–11.  The consular office did not ask Alondra any questions relating to her

eligibility under the national interest exception during her interview.  *See* Pls.' TRO Reply, ECF

No. 37, Decl. of Alondra, ECF No. 37-3, ¶ 9.  Thus, as with M.T.S.'s application, it appears that

Alondra's application was simply considered under a different administrative scheme, which,

based on the record before the court, entailed no greater risk of denial and no greater burdens.  As

---

[10] Plaintiffs assert that it "was only after the filing of this lawsuit and the present motions that Defendants determined to invoke the Proclamation's 'national interest' exception'" as to M.T.S., *see* Pls.' TRO Reply at 4, but the evidence contradicts this assertion.  Plaintiffs' own declaration confirms that the State Department informed M.T.S. on May 13, 2020—well before Plaintiffs filed the instant action—that she would need to qualify for a national interest exception.  *See* Pls.' TRO Mot., Ex. D, Decl. of Michael J. Eatroff, ECF No. 21-10, ¶¶ 12–13.

these subsequent developments make clear, Plaintiffs' assertion that Gomez and Alondra were likely to experience lengthy separation due to Defendants' implementation of the Proclamation was, at the time the Complaint was filed, speculative.

Plaintiff Vicenta S.'s alleged imminent injury due to Defendants' enforcement of Proclamation as to her grandson W.Z.A.'s visa application is, at this juncture, equally conjectural. On April 1, 2020—21 days before Proclamation 10014 was issued—the U.S. Embassy in El Salvador cancelled W.Z.A.'s and his father W.Z's visa interviews appointment due to the fact that El Salvador had instituted a strict lockdown and neither W.Z. nor W.Z.A. had completed their medical examinations.  *See* Bent Decl. ¶¶ 8–9, 12; Vicenta Decl. ¶ 18.  Therefore, any family-separation-related injury Vicenta S. had experienced at the time Plaintiffs filed their Complaint was attributable to El Salvador's lockdown, not Proclamation 10014.  Plaintiffs point out that El Salvador has since partially lifted its lock down and the consular office has rescheduled W.Z.A. and his father's medical and visa interviews, *see* Pls.' TRO Reply at 3; Blackford Decl. ¶ 17, but that just puts W.Z.A. in the same place Alondra and M.T.S. were in at the start of this litigation— eligible for consideration under the national interest exception.  Indeed, Plaintiffs attest that "it is 'almost certain' that the Department of State will treat W.Z. and W.Z.A. favorably and grant their visas . . . consistent with its treatment of M.T.S. and Alondra."  Pls.' TRO Reply at 4 (quoting Blackford Decl. 4).  Though Plaintiffs fear that W.Z.A.'s application will be denied if "the State Department enforces the Proclamation so as to prevent the consulate from granting" W.Z.A. a visa, Pls.' TRO Reply at 4, Plaintiffs offer no evidence to suggest that W.Z.A. is any less likely than M.T.S. or Alondra to qualify for the national interest exception.[11]  Indeed, under the Second Proclamation, which becomes effective on June 24, 2020, the Secretaries of State and Homeland

---

[11] W.Z.A.'s father's visa application and eligibility are not affected by the Proclamation, because he was not "outside the United States on the effective date" thereof.  85 Fed. Reg. at 23,442 § 2(a)(i).

Security "*shall exercise*" their authority under the national interest exception "to exempt alien children who would . . . age out of eligibility for a visa" as a result of the enforcement of Proclamation 10014. *See* Second Proclamation § 4(a)(i) (emphasis added). Given this development, Plaintiffs' fear that W.Z.A.'s national interest exception will be denied seems especially unlikely.

In sum, the record evidence before the court suggests that Defendants' enforcement of the Proclamation has, at most, funneled Plaintiffs' beneficiaries' applications into a different administrative channel that carries no greater burdens or risks of denials, at least as to potential age-outs. Plaintiffs have not shown beyond mere speculation that their beneficiaries' consideration under the national interest exception will imminently cause them harm. The Supreme Court has "repeatedly held that disputes about future events where the possibility of harm to any given individual is remote and speculative are properly left to the policymaking Branches, not the Article III courts." *Food & Water Watch*, 808 F.3d at 914 (quoting *Pub. Citizen*, 489 F.3d at 1295). Consequently, the court cannot conclude on this record that Plaintiffs have shown a "substantial likelihood of standing under the heightened standard for evaluating a motion for summary judgment." *EPIC*, 878 F.3d at 377 (internal quotation marks and citation omitted).

### 2.     *Plaintiffs Gomez's and Mirna S.'s Claims Are Moot, and Plaintiff Vicenta S.'s Claims Are Unripe*

Along with standing, the doctrines of ripeness and mootness "derive from the 'case or controversy' requirement of Article III." *Spirit of the Sage Council v. Norton*, 411 F.3d 225, 230 (D.C. Cir. 2005). "All of the doctrines that cluster about Article III—not only standing but mootness and ripeness—relate in part, and in different though overlapping ways, to an idea . . . about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government." *Worth v. Jackson*, 451 F.3d 854, 857 (D.C. Cir. 2006)

(cleaned up) (quoting *Allen*, 468 U.S. at 750)).  If the constitutional requirements of any one of these doctrines "is not satisfied, then the court is without jurisdiction over the suit." *Spirit of the Sage Council*, 411 F.3d at 230.

"In general, a case becomes moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (quoting *Larsen v. U.S. Navy*, 525 F.3d 1, 3 (D.C. Cir. 2008)).  This can occur "when, among other things, the court can provide no effective remedy because a party has already obtained all the relief that it has sought." *Id.* (cleaned up) (quoting *Monzillo v. Biller*, 735 F.2d 1456, 1459 (D.C. Cir. 1984)).  The "flip side" of the mootness doctrine is ripeness. *Endeley v. United States Dep't of Def.*, 268 F. Supp. 3d 166, 176 (D.D.C. 2017).  "As a 'constitutional minim[um],' the ripeness doctrine—like, and closely akin to, the standing doctrine—excludes claims seeking relief for future injuries that are hypothetical or speculative." *Id.* (quoting *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 48 (D.C. Cir. 1999)).  Thus, "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)).

As Plaintiffs conceded at oral argument, *see* 6/18/2020 Draft Hr'g Tr. at 4, Plaintiffs Mirna S.'s and Gomez's claims are now moot because their beneficiaries, M.T.S. and Alondra, have received their visas and immigrated to the United States.  The court therefore can provide no additional remedy for these Plaintiffs.

Likewise, Plaintiff Vicenta S.'s claims are unripe because her grandson W.Z.A.'s visa application is proceeding and appears likely to be granted under the Second Proclamation.  *See* Bent Decl. ¶ 14; Blackford Decl. ¶ 17; Second Proclamation § 4(a)(i).  While the court is

sympathetic to Plaintiffs' concern that Plaintiffs will have little time to seek judicial relief before W.Z.A. ages out if his visa application is denied, *see* 6/18/2020 Draft Hr'g Tr. at 5–6, the risk that W.Z.A. will be denied is only hypothetical and speculative at this point.  *See Endeley*, 268 F. Supp. 3d at 175.  Should the feared denial come to pass, the court is prepared to expeditiously revisit its decision.

* * *

Accordingly, Plaintiffs' motion for a temporary restraining order must be denied because Plaintiffs have not shown that they had standing at the outset, and because their claims have become moot or remain unripe since this litigation commenced.  The court will retain jurisdiction over the case while W.Z.A.'s visa application proceeds.  *See Food & Water Watch*, 808 F.3d at 913 ("[A]n inability to establish a substantial likelihood of standing requires denial of the motion for preliminary injunction, not dismissal of the case."); *Scahill v. District of Columbia.*, 909 F.3d 1177, 1184 (D.C. Cir. 2018) (holding that a "plaintiff may cure a standing defect under Article III through an amended pleading alleging facts that arose after filing the original complaint").

### B.    Plaintiffs' Class Certification Motion

Ordinarily, "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."  *O'Shea*, 414 U.S. at 494.  Plaintiffs contend that they are nevertheless entitled to class certification because two exceptions to the doctrine of mootness apply to Mirna S.'s and Gomez's claims.  *See* Pls.' Reply in Supp. of Mot. for Class Cert., ECF No. 36, at 3–7.[12]  Under the first exception, if "a named plaintiff's claim . . . is 'inherently transitory,' and

---

[12] Plaintiffs also argue that their class certification motion may proceed because Vicenta S.'s claim is "live," *see* Pls.' Class Cert. Reply at 2–3; however, the court has already determined that Vicenta S. lacked standing at the outset of this case, and her claim is now unripe.

becomes moot prior to certification, a motion for certification may 'relate back' to the filing of the complaint."  *J.D. v. Azar*, 925 F.3d 1291, 1308 (D.C. Cir. 2019) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 n.2 (2013)).   The second exception, which has not been considered by the D.C. Circuit, applies when "a defendant picks off named plaintiffs in a class action before the class is certified" by "strategically mooting named plaintiffs' claims in an attempt to avoid a class action."  *Wilson v. Gordon*, 822 F.3d 934, 947 (6th Cir. 2016).

The court need not decide whether either exception applies here, however, because both exceptions simply operate to relate the motion for class certification back to the filing of the complaint—the exceptions cannot salvage a suit that was never justiciable to begin with.  *See J.D. v. Azar*, 925 F.3d at 1308, 1310 (holding that "[t]he inherently transitory exception serves only to salvage claims that will, or at least might, not survive until certification," and that when the exception applies, the motion for class certification "may relate back to the filing of the complaint" (internal quotation marks and citation omitted)); *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1092 (9th Cir. 2011) (explaining that when the "picking off" exception applies, "certification relates back to the filing of the complaint"); *cf. Lewis*, 518 U.S. at 357 ("That a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured . . . .'" (cleaned up) (quoting S*imon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40, n.20 (1976)).  For the reasons discussed above, none of the Plaintiffs has "'affirmatively demonstrate[d]' . . . through evidentiary proof" that he or she had standing when this lawsuit commenced.  *Comcast Corp.*, 569 U.S. at 33 (quoting *Wal-Mart*, 564 U.S. at 350).  The relation back doctrine therefore cannot "salvage" Plaintiffs' claims.  *J.D. v. Azar*, 925 F.3d at 1310.

### IV.   Conclusion and Order

For the foregoing reasons, the court denies Plaintiffs' Motion for Temporary Restraining Order, ECF No. 21, and denies Plaintiffs' Motion for Class Certification, ECF No. 20.  The parties shall provide the court with a joint status report by June 25, 2020, updating the court on the status of W.Z.A.'s visa application.

Dated:  June 23, 2020

Amit P. Mehta
United States District Court Judge