IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DOMINGO ARREGUIN GOMEZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, President of the United States of America, et al., <br> Defendants. | Civil Action No. 1:20-cv-01419 |

**PLAINTIFFS' SUPPLEMENTAL MOTION FOR PRELMINARY INJUNCTION**

The diversity visa Plaintiffs in *Gomez v. Trump* (Fatma Bushati, Jodi Lynn Karpes, Shyam Sundar Koirala, Aja Tamamu Mariama Kinteh, Iwundu épouse Kouadio Golden, and Aya Nakamura) respectfully submit this supplemental motion on behalf of themselves, their beneficiaries, and the proposed subclass of diversity visa lottery winners, for a classwide preliminary injunction directing Defendants to adjudicate their visa applications notwithstanding the suspension of routine visa services at certain consular posts.  As explained below, the need for additional relief became clear only through disclosures that Defendants made in this litigation *after* Plaintiffs submitted their initial motion for a preliminary injunction (ECF 53).  In response to the government's new representations regarding the diversity visa Plaintiffs, Plaintiffs raised the possibility that a motion for compulsory relief would be necessary in their opposition to Defendants' motion for an extension of time (ECF 56, at 5), and again at the telephonic status conference held August 7, 2020.  Plaintiffs submit this motion now in order to avoid any need for supplemental briefing following the completion of briefing on the pending motions (*cf.* ECF 38), which could delay resolution of this extremely time-sensitive matter.

Given the narrow scope of the issues raised herein, their substantial overlap with issues raised in the already-pending motions, and the fact that the need for this motion arose as a result

1

of Defendants' disclosures in this litigation, Plaintiffs maintain that no additional extension of the current August 18 due date for Defendants' omnibus opposition brief is warranted; Defendants did not request such an extension during a telephonic meet-and-confer earlier today.  *Cf.* L. Civ. R. 65.1(c) (providing a seven-day period for opposing a motion for a preliminary injunction). Plaintiffs would not object to a reasonable request for a further enlargement of the page limit for Defendants' omnibus opposition brief.  Pursuant to Local Rule 7(m), Plaintiffs have conferred with Defendants; Defendants oppose this motion.

**1.**  In their motion for an extension of time (ECF 55), Defendants asserted that, "in response to the COVID-19 pandemic, U.S. consular posts worldwide have suspended 'routine visa services'" and are only "provid[ing] emergency and mission critical visa services."  *Id.* at 3 (citing State Department guidance referred to herein as the "COVID-19 Guidance"[1]).  During the status conference held on August 7, 2020, counsel for Defendants stated that Defendants intend to argue that Plaintiffs lack standing as a result.  Defendants' argument presumably will be that this Court cannot redress Plaintiffs' injuries because the COVID-19 Guidance would prevent Plaintiffs' and their beneficiaries' visas from issuing even if the Proclamations are enjoined.  At the status conference, counsel further stated, for the first time, that qualified 2020 diversity visa lottery winners are not considered to be "emergency" or "mission critical" cases under the COVID-19 Guidance—even though thousands of such individuals' visa eligibility will expire if they do not receive their visas by September 30, 2020.  Defendants' counsel reaffirmed during a teleconference earlier today that they intend to raise arguments along these lines to assert a lack of standing.

Before counsel's disclosures in the extension motion and at the status conference, Plaintiffs

---

[1] U.S. Dep't of State, Bureau of Consular Affairs, Suspension of Routine Visa Services, https://travel.state.gov/content/travel/en/News/visas-news/suspension-of-routine-visa-services.html (last visited August 10, 2020) (Ex. 1 hereto).

understood that if the Proclamations were enjoined, the State Department's "phased resumption of visa services" would at minimum encompass issuance of diversity visas before September 30—either as a "routine" matter or on an "emergency" or "mission critical" basis. *See* ECF 53-1, at 21 n.18. Defendants had, for example, processed visas (and permitted entry) on an emergency basis for the beneficiaries of Mr. Gomez's and Mirna S.'s visa petitions in order to prevent them from aging out of their visa eligibility, even at a time when consular posts had not begun their "phased resumption of visa services." *See* ECF 37, at 7-8; ECF 41, at 7-8. But Defendants' disclosures regarding the diversity visa Plaintiffs show that Plaintiffs' understanding regarding the effect of enjoining the Proclamations was incorrect, necessitating this motion for additional relief.[2]

**2.** Plaintiffs are likely to succeed in showing that Defendants' application of the COVID-19 Guidance to the diversity visa Plaintiffs, their beneficiaries, and class members (as recently disclosed in this litigation) is arbitrary, capricious, and unlawful under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2). The APA authorizes this Court to issue an injunction "to preserve status or rights pending the conclusion of the review proceedings," *id.* § 705, and it should do so here.

**a.** The COVID-19 Guidance as applied to the diversity visa Plaintiffs (and their beneficiaries, and class members) constitutes final agency action. *See* ECF 53-1, at 33-34. It provides for the suspension of "routine visa services" at consular posts, and expressly directs that at posts where such services have not yet resumed, visas may still be issued in "emergency" and "mission-critical" situations. Ex. 1 at 1. As Defendants' counsel has represented to Plaintiffs and the Court, however, the State Department has determined that Plaintiffs, their beneficiaries, and

---

[2] To the extent that the claims asserted herein require further amendment of the *Gomez* complaint, Plaintiffs will respectfully request leave to file such a further amended complaint. *See* Fed. R. Civ. P. 15(a)(2), 15(b).

the entire class of 2020 diversity visa applicants will not be considered "emergency" or "mission-critical" cases—not even for purposes of seeking exceptions to the Proclamations, and not even if the Proclamations are enjoined.

This is "the consummation of the … decisionmaking process," and it "determine[s]" the "rights" of Plaintiffs and other visa applicants by establishing a policy "from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 156, 178 (1997).  Defendants unequivocally represented to Plaintiffs and the Court that under the COVID-19 Guidance, Plaintiffs have no rights to have their visa applications adjudicated.  And according to Defendants, legal consequences will flow from this policy unless it is enjoined: The policy will prevent all the diversity visa Plaintiffs (and their beneficiaries, and all of the class members) from being issued visas for which they are now eligible, and will prevent those individuals from immigrating based on those visas.  Even more significantly, the policy will cause the diversity visa Plaintiffs (and beneficiaries, and class members) to lose their visa eligibility after September 30, 2020.  As an additional "legal consequence[]," Defendants apparently will argue that Plaintiffs' case should be dismissed.  And even more broadly, Defendants' application of the COVID-19 Guidance would eliminate the congressionally mandated diversity visa program for more than half of the fiscal year, beginning when consular posts began to suspend routine visa services in March.  The requisites for final agency action are met.

**b.**  The State Department's action is arbitrary and capricious.  *See* ECF 53-1, at 34-38.

*First*, Defendants' application of the COVID-19 Guidance to diversity visa Plaintiffs, their beneficiaries, and class members usurps consular officers' authority to issue visas, *see* 8 U.S.C. § 1201(a)(1); *Encuentro Del Canto Popular v. Christopher*, 930 F. Supp. 1360, 1369 (N.D. Cal. 1996); ECF 53-1, at 35, and contravenes a binding and "mandatory" regulatory requirement that

4

"[w]hen a visa application has been properly completed and executed…, the consular officer must either issue or refuse the visa…." 22 C.F.R. § 42.81(a). Consular officers cannot exercise their authority or carry out their duty to adjudicate visa applications if State Department policy is to refuse to allow them to do so.

*Second*, the State Department has not given adequate reasons for refusing to adjudicate the visa applications of diversity visa Plaintiffs, their beneficiaries, and class members. *See DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020). The COVID-19 Guidance expressly provides that "emergency" and "mission critical" visa applications may be adjudicated even where "routine" services remain suspended, but the State Department has given no reasons for adopting a policy under which such exceptions are not categorically granted to diversity visa Plaintiffs (and beneficiaries, and class members). Certainly there is no "reasoned explanation" for this decision. *See Cigar Ass'n of Am. v. FDA*, 436 F. Supp. 3d 70, 84 (D.D.C. 2020). Moreover, as with the Proclamations, the State Department "does not appear to have given meaningful consideration to the exceptionally harsh result of failing to issue visas to diversity visa lottery winners" by September 30, upsetting such individuals' significant reliance interests. ECF 53-1, at 35-36. "That is 'an important aspect of the problem,' and the State Department's evident failure to give the issue due consideration renders its action unlawful." *Id.* (quoting *Regents*, 140 S. Ct. at 1913).

*Third*, Defendants' application of the COVID-19 Guidance to the diversity visa Plaintiffs, their beneficiaries, and class members is arbitrary and capricious because it "fail[s] to account for … matter[s] of importance under the statute." *Gresham v. Azar*, 950 F.3d 93, 102 (D.C. Cir. 2020). As relevant here, its effect is to *permanently* prevent thousands of diversity visa lottery winners from immigrating, contravening Congress's direction "to promote diversity in [the] immigration system." H.R. Rep. No. 101-723, pt. 1 (1990); *see* ECF 53-1, at 37 (collecting

authorities).  The State Department's wooden application of the COVID-19 Guidance to diversity visa Plaintiffs, their beneficiaries, and class members gives no consideration to its detrimental effects on these congressional policies, which have remained in place for decades despite efforts by President Trump and others to eliminate the diversity visa program.  *See* ECF 53-1, at 5 & n.3.

*Fourth*, the COVID-19 Guidance irrationally imposes *permanent* injuries on diversity visa Plaintiffs, their beneficiaries, and class members even though—by the State Department's own reckoning—it is possible to entertain "emergency" and "mission critical" visa applications.  An agency must show a "rational connection between the facts found and the choice[s] made," *Baystate Franklin Med. Ctr. v. Azar*, 950 F.3d 84, 89 (D.C. Cir. 2020), and it is impossible to conclude that there is a rational basis for refusing to issue diversity visas and thus to deprive Plaintiffs and class members of their once-in-a-lifetime opportunity to immigrate.

*Finally*, Defendants' application of the COVID-19 Guidance to diversity visa Plaintiffs, their beneficiaries, and class members "lacks any coherence" and therefore "cannot withstand judicial review," *Tripoli Rocketry Ass'n v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 437 F.3d 75, 77 (D.C. Cir. 2006), because it is being irrationally applied.  "A fundamental norm of administrative procedure requires an agency to treat like cases alike.  If the agency makes an exception in one case, then it must either make an exception in a similar case or point to a relevant distinction between the two cases."  *Westar Energy, Inc. v. FERC*, 473 F.3d 1239, 1241 (D.C. Cir. 2007).  Here, the diversity visa Plaintiffs and class members are in a position that is virtually identical to that which the original Plaintiffs' beneficiaries occupied when this case began:  They face a hard deadline after which their current visa eligibility will expire.  *Compare* ECF 41, at 5 (describing age-out phenomenon) *with* ECF 53-1, at 6.  Whereas the State Department treats potential age-outs as emergencies (allows them to seek "national interest" exceptions to the

Proclamations),³ and has demonstrated in this very litigation that it will go to great lengths to grant visas to prevent prospective immigrants from aging out despite the COVID-19 Guidance and the consular closures (*see* ECF 37, at 7-8; ECF 41, at 7-8), the State Department provides no similar relief for diversity visa applicants.  This is true even though diversity visa applicants face an even *greater* penalty from delay than do age-outs:  While many family-based age-outs can reapply for a visa and eventually receive one as a matter of right (though the wait may be years or decades), a diversity visa applicant who does not timely receive his or her visa has no realistic chance of *ever* having the opportunity to immigrate again.  *See* FAC (ECF 46) ¶ 57.  In this context, the State Department's refusal to consider diversity visa applicants faced with an imminent deadline as "emergency" or "mission critical" cases is incoherent, arbitrary and capricious, and thus unlawful. *See Westar*, 473 F.3d at 1241-43 (agency action was "arbitrary and capricious in that it provides no basis in fact or in logic for the [agency's] refusal to treat [plaintiff] as it had treated [a similarly situated party]").

    **3.**  The State Department's application of the COVID-19 Guidance to diversity visa applicants should also be enjoined either under the APA, 5 U.S.C. §§ 705, 706(2), or under the Court's inherent authority to enjoin unlawful executive action, *see, e.g.*, *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582-89 (1952), because it would unlawfully abolish the diversity visa program for more than half of the 2020 fiscal year.  Congress has comprehensively legislated in this area (*see* ECF 53-1, at 29-32), but has never granted the State Department power to eliminate any portion of the diversity visa program.  To the contrary, Congress has made clear that diversity

---

³ *See* 9 FAM 402.6-6(K)(d) (consular officials "*must* process [SU visa] cases *as quickly as possible* when they are close to aging out") (emphases added); 7 FAM 1812.4-2.b(4) (in the event of a crisis requiring limitations on visa services, consular officials should "[m]ake provisions for age-out cases, expiring preferences, etc.").

7

visas must be issued by September 30 each year. *See* 8 U.S.C. §§ 1153(c), 1153(e)(2). And Congress has further mandated that diversity visa lottery winners "***shall remain eligible*** to receive a visa only through the end of the specific fiscal year for which they were selected. *Id.* § 1154(a)(1)(I)(ii)(II) (emphasis added). Whatever authority the Executive Branch may have over visas and visa applications, that authority cannot extend so far as to allow the State Department to pocket-veto thousands of complete and fully qualified diversity visa applications. *See, e.g.*, *Doe v. Trump*, 957 F.3d 1050, 1064 (9th Cir. 2020) (upholding injunction against executive action that "eviscerate[d] the statutory scheme" governing immigrant visas); *Doe v. Trump*, 418 F. Supp. 3d 573, 594 (D. Or. 2019) (executive action is invalid under separation of powers if it "overrides, contravenes, or is otherwise incompatible with any provision of the INA"). The Proclamations themselves are invalid for the same reasons. *See* FAC ¶ 339.

**4.** The *Gomez* diversity visa Plaintiffs adopt and incorporate by reference the claims asserted by the plaintiffs in *Mohammed*, *Aker*, and *Fonjong*, specifically to the extent that those claims seek orders compelling adjudication of the plaintiffs' visa applications. *See, e.g.*, *Mohammed* ECF 8-1, at 15-24, 26; *Aker* ECF 4, at 49-50, 68; *Fonjong* ECF 7-1, at 16-26, 28.

**5.** The *Gomez* diversity visa Plaintiffs further incorporate by reference herein their arguments regarding irreparable harm, the balance of the equities, and the public interest. *See* ECF 53-1, at 38-44. Plaintiffs further note that Congress has determined that the issuance of diversity visas is in the public interest. *See id.* at 5 (citing authorities). Defendants may argue that the public interest requires continued suspension of visa services. But some consulates have already resumed "routine" services, and the COVID-19 Guidance expressly provides for "emergency" and "mission critical" exceptions. And Defendants have shown in this action that they are able to safely and expeditiously complete visa processing and issue visas even during the pandemic. *See* ECF 37, at

7-8; ECF 41, at 7-8. Given Defendants' demonstrated capacity to adjudicate visa applications on an emergency basis, Plaintiffs respectfully submit that any temporary public interest that might be implicated here falls far short of outweighing Plaintiffs' and the public's exceptionally strong interests in having the visas issue before Plaintiffs' eligibility expires on September 30.

**6.** The foregoing requests for relief dispel any argument by Defendants that the diversity visa Plaintiffs lack standing on account of the COVID-19 Guidance (or other COVID-related factors). The diversity visa Plaintiffs have all complied with all the requirements for obtaining diversity visas, and prior to the cessation of routine visa services each of them had either scheduled a visa interview or been told that his or her case was ready for scheduling.[4] An injunction requiring adjudication of the diversity visa Plaintiffs' visa applications would obviate Defendants' basis for asserting that the COVID-19 Guidance prevents adjudication of those visas, and would thus defeat any argument that the injuries caused by Defendants' actions are not redressable. And because "the court need only find one plaintiff who has standing" for the case to proceed, *Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014), Defendants' anticipated argument regarding standing provides no basis to refuse an injunction against the Proclamations.

## CONCLUSION

The motions for a preliminary injunction should be granted.

---

[4] *See* Bushati Decl. ¶ 17; Golden Decl. ¶¶ 4-5; Karpes Decl. ¶ 7; Kinteh Decl. ¶ 2; Koirala Decl. ¶ 2; Nakamura Decl. ¶ 10.

August 10, 2020

Jesse M. Bless (D.D.C. Bar No. MA0020)
AMERICAN IMMIGRATION LAWYERS
 ASSOCIATION
1301 G Street NW, Ste. 300
Washington, D.C. 20005
(781) 704-3897
jbless@aila.org

Karen C. Tumlin (*pro hac vice*)
Esther H. Sung (*pro hac vice*)
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 316-0944
karen.tumlin@justiceactioncenter.org
esther.sung@justiceactioncenter.org

Stephen Manning (*pro hac vice*)
Nadia Dahab (*pro hac vice*)
Tess Hellgren (*pro hac vice*)
Jordan Cunnings (*pro hac vice*)
INNOVATION LAW LAB
333 SW Fifth Avenue #200
Portland, OR 97204
Telephone: (503) 241-0035
stephen@innovationlawlab.org
nadia@innovationlawlab.org
tess@innovationlawlab.org
jordan@innovationlawlab.org

Respectfully submitted,

/s/ Andrew J. Pincus
Andrew J. Pincus (D.D.C. Bar No. 370762)
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Telephone: (202) 263-3000
apincus@mayerbrown.com

Matthew D. Ingber (*pro hac vice*)
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
mingber@mayerbrown.com

Cleland B. Welton II (*pro hac vice*)
MAYER BROWN MEXICO, S.C.
Goldsmith 53, Polanco
Ciudad de Mexico, 11560
Telephone: (502) 314-8253
cwelton@mayerbrown.com

Laboni A. Hoq (*pro hac vice*)
LAW OFFICE OF LABONI A. HOQ
Justice Action Center Cooperating Attorney
P.O. Box 753
South Pasadena, CA 91030
laboni@hoqlaw.com