# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

DOMINGO ARREGUIN GOMEZ; MIRNA S.;
AND VICENTA S.,

          Plaintiffs,

    v.

DONALD J. TRUMP, President of the United
States of America, et al.,

          Defendants.

Civil Action No. 1:20-cv-1419

_____

# DEFENDANTS' OPPOSITION TO
# PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
_____

ETHAN P. DAVIS
Acting Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
COLIN A. KISOR
Deputy Director
GLENN M. GIRDHARRY
Assistant Director
AARON GOLDSMITH
Senior Litigation Counsel
JULIAN M. KURZ
CHRIS LYERLA
JOSHUA S. PRESS
JAMES J. WEN
THOMAS B. YORK

Trial Attorneys
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 598-6073
thomas.b.york@usdoj.gov
*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

I.      BACKGROUND .................................................................................................. 2

A.    The COVID-19 Pandemic and Presidential Proclamations 10014 and 10052 .................... 2

    1.      The effect of the COVID-19 Pandemic on operations at U.S. Embassies and
    Consulates worldwide. ..........................................................................................2

B.    Procedural History ..........................................................................................................9

II.     LEGAL STANDARD FOR CLASS CERTIFICATION ....................................................13

III.    ARGUMENT .........................................................................................................16

    A. THE PROPOSED DIVERSITY VISA SUBCLASS DOES NOT MEET THE
    CERTIFICATION REQUIREMENTS ......................................................16

        1.  The Named DV Plaintiffs Lack Standing. .........................................................17

        2.  Plaintiffs Cannot Satisfy the "Commonality" and "Typicality" Requirements For
        Class Certification Under Federal Rule of Civil Procedure 23.............................19

        3.  The Proposed Representatives Have Failed to Demonstrate That They Will Fairly
        And Adequately Protect Class Interests.............................................................23

    B. NONE OF THE FOUR ADDITIONAL SUBCLASSES MEETS THE
    CERTIFICATION REQUIREMENTS ......................................................24

    1.  The named Plaintiffs fail to show standing ...........................................................25

        a.   Immediate Relative Parent Subclass.....................................................26

        b.   Preference Relative Subclass.. ...............................................................26

        c.   Temporary Worker Employer Subclass. ................................................28

        d.   Exchange Visitor Program Subclass. .....................................................32

    2.  Plaintiffs Cannot Satisfy the "Commonality" and "Typicality" Requirements For Class
    Certification Under Federal Rule of Civil Procedure 23. ............................................33

3.  The Proposed Representatives Have Failed to Demonstrate That They Will Fairly And Adequately Protect Class Interests...............................................................................36

C.  PLAINTIFFS' PROPOSED SUBCLASSES FAIL RULE 23(b). .............................37

a.  Rule 23(b)(2) .........................................................................................37

b.  Rule 23(b)(1)(A) ...................................................................................38

CONCLUSION.........................................................................................................................40

CERTIFICATE OF SERVICE.. ..............................................................................................42

Cases

*Adair v. England,*
    209 F.R.D. 5 (D.D.C. Aug. 19, 2002) ................................................................................... 28, 29

*Bailey v. Patterson,*
    369 U.S. 31 (1962) ..................................................................................................................... 18

*Califano v. Yamasaki,*
    442 U.S. 682 (1979) ................................................................................................................... 10

*Comcast Corp. v. Behrend,*
    569 U.S. 27 (2013) ................................. 10, 11, 15, 18, 20, 21, 22, 23, 24, 26, 27

*Daskalea v. Washington Humane Soc.,*
    275 F.R.D. 346 (D.D.C. 2011) ........................................................................................ 21, 22, 35

*East Tex. Motor Freight System, Inc. v. Rodriguez,*
    431 U.S. 395 (1977) ........................................................................................................ 23, 24, 36

*Gen. Tel. Co. v. Falcon,*
    457 U.S. 147 (1982) .............................................................................................................. 15, 23

*Hall v. Beals,*
    396 U.S. 45 (1969) ..................................................................................................................... 24

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ............................................................................................... 22, 35

*Hardy v. District of Columbia,*
    283 F.R.D. 20 (D.D.C. 2012) ..................................................................................................... 21

*Hoyte v. District of Columbia,*
    325 F.R.D. 485 (D.D.C. July 27, 2017) ..................................................................................... 21

*Kremens v. Bartley,*
    431 U.S. 119 (1977) ................................................................................................................... 23

*Lightfoot v. District of Columbia,*
    246 F.R.D. 326 (D.D.C. 2007) ................................................................................................... 37

*McCarthy v. Kleindienst,*
    741 F.2d 1406 .............................................................................................................................. 14

*Nguyen v. U.S. Dep't of Homeland Security,*
    — F.Supp.3d —, 2020 WL 2527210 (D.D.C. May 18, 2020) .............................. 22, 23, 24, 26

*Nippon Shinyaku Co. Ltd. v. Iancu*,
   369 F.Supp.3d 226 (D.D.C. Feb. 27, 2019) .......................................................... 27

*Norton v. S. Utah Wilderness*,
   *All.*, 542 U.S. 55 (2003) ..................................................................................... 19

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)............................................................................................ 26

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) .............................................................................. 19

*Rosario v. Rockefeller*,
   410 U.S. 752 ....................................................................................................... 23

*Saavedra Bruno v. Albright*,
   197 F.3d 1153 (D.C. Cir. 1999) .......................................................................... 40

*Schlesinger v. Reservists Committee to Stop the War*,
   418 U.S. 208 (1974) ............................................................................................ 23

*Sosna v. Iowa*,
   419 U.S. 393 (1975) ............................................................................................ 23

*Trump v. Hawaii*,
   138 S.Ct. 2392 (2017) ......................................................................................... 32

*Udugampola v. Jacobs*,
   795 F.Supp.2d 96 (D.C. Cir. 2011) ..................................................................... 32

*Wal–Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)............................................................. 12, 15, 18, 21, 33, 34, 37, 38

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ....................................................................... 11, 12

## Statutes

8 U.S.C. § 1182(f) .............................................................................................. 5, 7, 11

## Rules

Fed. R. Civ. P. 23(a) ..................................................................................... 11, 12, 27, 30

Fed. R. Civ. P. 23(a)(2) ........................................................................................ 19

Fed. R. Civ. P. 23(a)(4) .................................................................................... 23, 36

Fed. R. Civ. P. 23(b)(2) .............................................................................................. 37

Rule 23 of the Federal Rules of Civil Procedure ...................................... 1, 2, 5, 13, 15, 19, 33, 40

## Regulations

85 Fed. Reg. 23 ................................................................................................... 1, 3, 4

85 Fed. Reg. 23,442 ................................................................................................. 5

85 Fed. Reg. 38 ....................................................................................................... 6

## INTRODUCTION

This Court should deny Plaintiffs' request for class certification. The named Plaintiffs seek certification of five subclasses to enjoin the entirety of two Presidential actions: The Suspension of Entry of Immigrants Who Present a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak, 85 Fed. Reg. 23,441, and Suspension of Entry of Immigrants and Nonimmigrants Who Present a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak, 85 Fed. Reg. 38263 ("the Proclamations"). Plaintiffs have not carried their burden to support class certification.

First, none of the named Plaintiffs has carried their burden to establish standing. As this Court held in its June 23, 2020 order denying Plaintiffs' first class-certification motion, no class can be certified when no named plaintiffs has standing. *Gomez v. Trump*, No. 20-cv-1419, Doc. 41, Order at 20.

Second, Plaintiffs fail to show commonality among the subclasses, as well as typicality between the named Plaintiffs and proposed class members. Fed. R. Civ. P. 23(a)(2), (3). The proposed class fails the commonality requirement because its over-inclusive definition would capture individuals for whom the requested injunction would provide no relief, as demonstrated by the three named Plaintiffs' circumstances. Plaintiffs also fail to show typicality because the putative class members, like the named Plaintiffs, would be subject to a wide array of defenses that would not be suitable for class treatment.

Third, the named Plaintiffs fail to show that they can adequately protect the interests of the class because they themselves do not even have standing to assert a claim. Fed. R. Civ. P. 23(a)(4).

The Supreme Court has made clear that without standing for any of the named Plaintiffs, there can be no adequate class representation.

Fourth, Plaintiffs failed to show that any of the factors outlined under Rule 23(b) are satisfied. Plaintiffs rely on Rules 23(b)(2) and (b)(1)(A), but neither is satisfied because any injunction issued by the Court providing the relief requested in Plaintiffs' complaint will not provide relief uniformly across the class.

Plaintiffs failed to meet their burden to support the certification of a class, and accordingly, this Court should deny their motion.

## I.      BACKGROUND

### A.      The COVID-19 Pandemic and Presidential Proclamations 10014 and 10052.

#### 1.      The effect of the COVID-19 Pandemic on operations at U.S. Embassies and Consulates worldwide.

The COVID-19 pandemic has presented extraordinary challenges for countries around the world.  The United States government has taken a range of steps to respond to the pandemic and stem the spread of the virus. The State Department has, for example, sought to protect its employees and the public while maintaining mission-critical services. On March 20, 2020, the State Department announced that it would "temporarily suspend routine visa services at all U.S. Embassies and Consulates," but noted that "emergency and mission critical visa services" would continue as resources allow.  U.S. Department of State–Bureau of Consular Affairs, *Suspension of Routine Visa Services*, https://travel.state.gov/content/travel/en/News/visas-news/suspension-of-routine-visa-services.html (last visited Aug. 16, 2020); *see also* Marwaha Decl., ¶ 2. While visa operations are suspended, consular posts might operate on a limited capacity, providing mission-critical or emergency services. *Id*. Immigrant visa services considered "mission critical" include services for age-out cases, spouses, unmarried children, and adopted children of U.S. citizens, and

Afghan and Iraqi Special Immigrants. *Id*. On July 14, 2020, the State Department provided public guidance advising, "U.S. Embassies and Consulates are beginning a phased resumption of routine visa services." U.S. Dep't of State, *Phased Resumption of Routine Visa Services*, https://travel.state.gov/content/travel/en/News/visas-news/phased-resumption-routine-visa-services.html (last visited Aug. 16, 2020). The public guidance explains that "[t]he resumption of routine visa services will occur on a post-by-post basis … . As post-specific conditions improve, our missions will begin providing additional services, culminating eventually in a complete resumption of routine visa services." *Id.*

### 2. Presidential Proclamation 10014.

On April 22, 2020, the President signed Proclamation 10014. *See* Presidential Proclamation 10014, Suspension of Entry of Immigrants Who Present a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak, 85 Fed. Reg. 23,441 (Apr. 27, 2020). The President issued Proclamation 10014 to address the damage to the economy caused by COVID-19 in the United States, especially the rising unemployment rate from the virus and the policies that have been necessary to mitigate its spread. *Id*. Unemployment claims had reached "historic levels"—between March 13, when the President declared a national emergency, and April 11, "more than 22 million Americans have filed for unemployment." *Id*.

As the President explained, administering our immigration system during the pandemic requires "be[ing] mindful of the impact of foreign workers on the United States labor market, particularly in an environment of high domestic unemployment and depressed demand for labor," as well as "conserv[ing] critical State Department resources so that consular officers may continue to provide services to United States citizens abroad." 85 Fed. Reg. 23,441. "[W]ithout intervention,

the United States faces a potentially protracted economic recovery with persistently high unemployment if labor supply outpaces labor demand." *Id*. An excess labor supply "is particularly harmful to workers at the margin between employment and unemployment," as they are the ones "likely to bear the burden of excess labor supply disproportionately." *Id*. Recently, "these workers have been disproportionately represented by historically disadvantaged groups, including African Americans and other minorities, those without a college degree, and the disabled." *Id.*

Once immigrants are admitted as lawful permanent residents (LPRs), they are immediately eligible "to compete for almost any job," and the "vast majority of immigrant visa categories do not require employers to account for displacement of United States workers." 85 Fed. Reg. 23,441. Although "some employment-based visas contain a labor certification requirement," that certification, issued long before the visa is granted, would not "capture the status of the labor market today." *Id*. at 23,442.

To address these complex challenges, the President issued Proclamation 10014 under, *inter alia*, 8 U.S.C. § 1182(f) and § 1185(a), and suspended entry into the United States, for 60 days, of intending immigrants abroad who did not already have a valid immigrant visa or travel document as of the date the Proclamation was signed, April 23, 2020. 85 Fed. Reg. 23,442, §§ 1, 2(a). Proclamation 10014 directed, "[w]ithin 30 days of the effective date of this proclamation, the Secretary of Labor and the Secretary of Homeland Security, in consultation with the Secretary of State, shall review nonimmigrant programs and shall recommend … other measures appropriate to stimulate the United States economy and ensure the prioritization, hiring, and employment of United States workers." *Id*.

### 3.    Presidential Proclamation 10052.

On June 22, 2020, the President signed Proclamation 10052, which modified and extended Proclamation 10014 through December 31, 2020. *See* Presidential Proclamation 10052, Suspension of Entry of Immigrants and Nonimmigrants Who Present a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak, 85 Fed. Reg. 38,263 (June 25, 2020). The President explained that the 60-day timeframe set by Proclamation 10014 was insufficient for the United States labor market to rebalance and that "the considerations present in Proclamation 10014 remain." *Id*.

Besides extending the suspension under Proclamation 10014, the President announced that the Secretary of Labor and Secretary of Homeland Security had reviewed nonimmigrant programs, as directed in Proclamation 10014, and "found that the present admission of workers within several nonimmigrant visa categories also poses a risk of displacing and disadvantaging United States workers during the current recovery." *Id*. Proclamation 10052 states that "[u]nder ordinary circumstances, properly administered temporary worker programs can provide benefits to the economy. But under the extraordinary circumstances of the economic contraction resulting from the COVID-19 outbreak, certain nonimmigrant visa programs authorizing such employment pose an unusual threat to the employment of American workers." *Id*.

Specifically, the President found that "[t]he entry of additional workers through the H-1B, H-2B, J, and L nonimmigrant visa programs … presents a significant threat to employment opportunities for Americans affected by the extraordinary economic disruptions caused by the COVID-19 outbreak." *Id*. at 38,264. "For example, between February and April of 2020, more than 17 million United States jobs were lost in industries in which employers are seeking to fill worker positions tied to H-2B nonimmigrant visas." *Id*. at 38,263-64. Moreover, "more than 20

million United States workers lost their jobs in key industries where employers are currently requesting H-1B and L workers to fill positions." *Id.* at 38,264. Furthermore, "the May unemployment rate for young Americans, who compete with certain J nonimmigrant visa applicants, has been particularly high … ." *Id.* Recognizing that, "[h]istorically, when recovering from economic shocks that cause significant contractions in productivity, recoveries in employment lag behind improvements in economic activity" and "demonstrate[ ] that assuming the conclusion of the economic contraction, the United States economy will likely require several months to return to pre-contraction economic output, and additional months to restore stable labor demand." *Id.* Exercising the authority under, *inter alia*, 8 U.S.C. § 1182(f) and § 1185(a), the President "determined that the entry, through December 31, 2020, of certain aliens as immigrants and nonimmigrants would be detrimental to the interests of the United States." *Id.*

### 4.    National Interest Exceptions to Proclamations 10014 and 10052.

Proclamations 10014 and 10052 include exceptions, including an exception for individuals whose travel would be in the national interest, as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees. *See*: https://travel.state.gov/content/travel/en/News/visas-news/exceptions-to-p-p-10014-10052-suspending-entry-of-immigrants-non-immigrants-presenting-risk-to-us-labor-market-during-economic-recovery.html (last visited Aug. 16, 2020). On August 12, 2020, the State Department updated language on its website that explains national interest exceptions to Presidential Proclamations 10014 and 10052 that may be available for certain nonimmigrant workers in H-1B, H-2B, L, and J visa categories. *Id.* The guidance provides "a non-exclusive list of the types of travel that may be considered to be in the national interest," and it is "based on determinations made by the Assistant Secretary of State for Consular Affairs, exercising the authority delegated

to him by the Secretary of State under Section 2(b)(iv) of [Proclamation] 10014 and 3(b)(iv) of [Proclamation] 10052." *Id.*

The State Department's guidance indicates that applicants "who are subject to any of these Proclamations, but who believe they may qualify for a national interest exception or other exception, should follow the instructions on the nearest U.S. Embassy or Consulate's website regarding procedures necessary to request an emergency appointment and should provide specific details as to why they believe they may qualify for an exception." *Id.*  The guidance also clarifies that "[w]hile a visa applicant subject to one or more Proclamations might meet an exception, the applicant must first be approved for an emergency appointment request and a final determination regarding visa eligibility will be made at the time of visa interview." And, acknowledging the ongoing limitations of U.S. consular operations around the world due to the COVID-19 pandemic, the State Department clarifies "that U.S. Embassies and Consulates may only be able to offer limited visa services due to the COVID-19 pandemic, in which case they may not be able to accommodate [a request for a national interest exception] unless the proposed travel is deemed emergency or mission critical." *Id.*

### B.    Procedural History

This matter originated as a proposed class action brought by three named plaintiffs challenging the April 2020 Proclamation on behalf of individuals who were at risk of aging out of their visa eligibility. This Court denied Plaintiffs' request for an emergency temporary restraining order as well as their motion to certify a class because the Plaintiffs failed to establish standing. Order, ECF No. 41. Plaintiffs filed their First Amended Complaint ("FAC") on July 17, 2020, ECF No. 46, and then on July 31, 2020, filed a second motion for a preliminary injunction of the June 2020 Proclamation as well as the immediate motion to certify a class. ECF Nos. 51, 52.

Around the same time, multiple other lawsuits challenging the June Proclamation as applied to groups of individual plaintiffs claiming they will lose their opportunity to receive a green card under the Diversity Visa ("DV") program. Now, this matter involves four fully consolidated cases and one partially consolidated case. On August 7, 2020, the Court entered a Minute Order fully consolidating *Gomez v. Trump*, No. 20-cv-1419, with *Mohammed v. Pompeo*, No. 20-cv-1856, *Fonjong v. Pompeo*, No. 20-cv-2128, and *Aker v. Trump*, No. 20-cv-1926. On August 13, the Court ordered that *Panda v. Wolf*, No. 20-cv-1907, be partially consolidated with those cases. *See* ECF No. 79, *Gomez*, No. 20-cv-1419. The Court ordered that "[a]ll merits briefing on Counts 1 and 2 of the *Panda* plaintiffs' Motion for a Preliminary Injunction shall be filed in *Gomez*. The *Panda* matter will remain open for briefing on Count 3 of the *Panda* plaintiffs' Motion for Preliminary Injunction and any other non-merits and equitable issues." Minute Order, *Panda*, No. 20-cv-1907 (Aug, 13, 2020). Each case involves a motion for a temporary restraining order or a preliminary injunction (or both) seeking to enjoin Presidential Proclamations 10014 and/or 10052.

Despite the seeming overlap of the claims brought on behalf of the proposed DV subclass in *Gomez* with those of some of the individual plaintiffs in the other cases, none of the plaintiffs in the other cases have joined in the *Gomez* Plaintiffs' motion for class certification. Accordingly, the allegations raised by the other plaintiffs are of no moment to evaluating the *Gomez* Plaintiffs' class-certification motion. The named plaintiffs are nine family-based immigrant visa sponsors, consisting of citizens and LPRs, who are petitioning on behalf of foreign family members, seven employers or organizations sponsoring individuals for various nonimmigrant visas, and seven diversity visa selectees for FY 2020. The applications for the seven diversity visa selectees are being adjudicated by U.S. embassies and consulates in, as listed in the order of the first amended

complaint (FAC), Albania, South African, Nepal, Kazakhstan, Senegal, Côte d'Ivoire, and Japan. FAC ¶¶ 187, 194, 200, 205, 216, 217, 221.

On behalf of the individual plaintiffs and the putative class, the FAC asserts that: (1) the State Department's "implementation of the Proclamations violates the [APA] by preventing issuance of visas for which Plaintiffs and class members who are otherwise eligible]" *id.*, ¶ 311; (2) "Defendants' implementation of the Proclamations' 'national interest' exception violates the APA," *id.*, ¶ 322; (3) the Proclamations' suspension of visa issuance "are ultra vires, in excess of the President's authority under the INA," *id.*, ¶ 331; (4) "the June Proclamation does not satisfy the requirements of § 1182(f) or § 1185(a), [and] is [therefore] ultra vires and invalid, *id.*, ¶ 336; (5) "The June Proclamation effectively revokes and renders void qualified applicants' statutorily guaranteed eligibility for a diversity visa by suspending the issuance of visas beyond the Diversity Visa Program deadline of September 30, 2020," and, therefore, "violates § 1154(a)(1)(I)(ii)(II), is ultra vires, and is invalid," *id.*, ¶ 341; (6) "The June Proclamation … exceeds the authority delegated to the President under the INA" and "impermissibly violates the Constitution's separation of powers," *id.*, ¶¶ 346, 348; and (7) "The Proclamations … unconstitutionally deny Plaintiffs their constitutional rights by preventing visas from being issued and thereby foreclosing their reunification with family members without the process due under the Fifth Amendment." *Id.*, ¶ 352. Along with various other relief, Plaintiffs further request declaratory relief that "the Proclamations are unlawful and are set aside." *Id.* at 97.

Plaintiffs filed a PI motion seeking to enjoin "Defendants' from enforcing [Proclamations 10014 and 10052]." ECF No. 53, PI Mot. 1. Plaintiffs assert that they are likely to succeed on the merits of their first, third, fourth, fifth, and sixth causes of action. *Id.* at 23-32. Plaintiffs did not raise any arguments regarding the likelihood of success on the merits in connection to their second

and seventh causes of action, their APA claim on the national interest exception and their due-process challenge, respectively. *See generally id.* Plaintiffs propose the following five subclasses:

- **Diversity Visa Subclass**—Individuals who have been selected to receive an immigrant visa through the U.S. Department of State's FY2020 Diversity Visa Lottery and who had not received their immigrant visa on or before April 23, 2020, when the Presidential Proclamation 10014, later extended by Presidential Proclamation 10052, took effect.

- **Immediate Relative Parent Subclass**—Individual U.S. citizens with an approved immigrant visa petition for an immediate relative parent and whose sponsored relative is subject to Presidential Proclamation 10052.

- **Preference Relative Subclass**—Individual U.S. citizens and lawful permanent residents with an approved immigrant visa petition for a relative in a preference immigrant category, including a spouse, parent, child, or sibling, and any qualifying derivative relatives, where the immigrant visa is "current" or will become "current," meaning visas are authorized for issuance abroad, while Presidential Proclamation 10052 is in effect, and whose sponsored preference relative is subject to Proclamation 10052.

- **Temporary Worker Subclass**—United States employers who have an approved nonimmigrant visa petition for an employee or potential employee in the H-1B, H-2B, or L-1 nonimmigrant visa categories; where the employee or potential employee's petition for nonimmigrant status has been approved for temporary employment in the United States, and where the employee or potential employee is subject to Proclamation 10052.

- **Exchange Visitor Program Subclass**—Entities designated by the U.S. Department of State as an Exchange Visitor Program sponsor for any category of J-1 exchange visitors included in Proclamation 10052.

*Gomez* Class Cert. Mot. 4. Plaintiffs request that the 19 named Plaintiffs be appointed class representatives and that their attorneys be named as class counsel. *Id.* at 2.

## II.    LEGAL STANDARD FOR CLASS CERTIFICATION

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). To fall within the exception, Plaintiffs "must affirmatively demonstrate [their] compliance" with Rule 23 of the Federal Rules

of Civil Procedure. *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "The Rule does not set forth a mere pleading standard," but rather the plaintiffs must satisfy Rule 23 "through evidentiary proof." *Comcast*, 569 U.S. at 33. The burden of a party seeking certification of a proposed class includes demonstration of the existence of the required elements set forth in Rule 23(a) of the, including: (1) The class is so numerous that joinder is impractical ("numerosity"); (2) There are questions of law or fact common to the class ("commonality"); (3) The claims or defenses of the Named Plaintiffs are typical of claims or defenses of the class ("typicality"); and (4) The Named Plaintiffs will fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23(a). The Supreme Court has explained that "[i]t is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation" that makes a case appropriate as a class action. *Dukes*, 564 U.S. at 350 (emphasis in original). In addition to meeting the requirements set forth in Rule 23(a), the proposed class must also qualify under Rule 23(b)(1), (2), or (3). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

The proponents of a class action have the burden of proof as to each of Rule 23's requirements. *See McCarthy v. Kleindienst*, 741 F.2d 1406, 1414 n. 9 (D.C. Cir. 1984). "[P]laintiffs must establish the requirements of Rule 23 by a preponderance of the evidence, and this standard applies to any factual disputes . . . that bear on the decision whether to certify a class." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 287 F.R.D. 1, (D.D.C. June 21, 2012), *vacated on other grounds*, 725 F.3d 244 (D.C. Cir. 2013). The Supreme Court has emphasized that "actual, not presumed, conformance with Rule 23(a) [is] indispensable." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982). If a court is not fully satisfied, the class cannot be certified. *Id.* "While the trial court has broad discretion to certify a class, its discretion must be exercised within the framework

of Rule 23." *Zinser*, 253 F.3d at 1186. When reviewing a motion for class certification, it "'may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,' and that certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Wal-Mart*, 564 U.S. at 350 (quoting *Falcon*, 457 U.S. at 160–61).

## III.    ARGUMENT

### A.    THE PROPOSED DIVERSITY VISA SUBCLASS DOES NOT MEET THE CERTIFICATION REQUIREMENTS.

Plaintiffs request that this Court certify a "Diversity Visa Subclass" ("DV subclass") under the following definition:

> Individuals who have been selected to receive an immigrant visa through the U.S. Department of State's FY2020 Diversity Visa Lottery and who had not received their immigrant visa on or before April 23, 2020, when the Presidential Proclamation 10014, later extended by Presidential Proclamation 10052, took effect.

Doc. 52, Gomez Class Cert. Mot. 9. Plaintiffs propose the appointment of six named Plaintiffs to serve as class representatives for the DV subclass. *Id.* at 14 (Bushati, Karpes, Koirala, Kinteh, Golden, and Nakamura). Citing "generally" only declarations submitted with Plaintiffs' preliminary injunction motion without reference to exhibit number, page, or paragraph, Plaintiffs contend that these six individuals "are all immediately eligible for visa prior to the September 30, 2020 deadline for such visas, and before the Proclamations took effect, each either had a consular interview scheduled or had been told that their interview was 'ready for scheduling.'" *Id.* Also without specific reference, Plaintiffs assert that none of these six individuals "is aware of any ground of inadmissibility or other ground on which their visa would be denied, other than the June Proclamation." *Id.*

Notably, none of the hundreds of individual plaintiffs who are party to the DV-related lawsuits consolidated with this one has joined in the *Gomez* plaintiffs' motion for class certification or sought to join that class. Indeed, rather than joining the *Gomez* Plaintiffs' recent motion for leave to file a second amended complaint, the other Plaintiffs either gave qualified consent or "take no position." Doc. 76, Mot. For Leave to File SAC 1.

Plaintiffs fail to carry their burden for class certification.

### 1.     The Named DV Plaintiffs Lack Standing.

As presented more fully in Defendants' PI opposition, none of these six Plaintiffs has established standing because they failed their burden to demonstrate that an order in their favor can redress their claimed injuries. *See* PI Opp. 17-25. These six named DV plaintiffs' applications are purportedly pending in Albania, South Africa, Nepal, Kazakhstan, Senegal, Côte d'Ivoire, and Japan. Class Cert. Mot. 9. But, the State Department suspended all routine visa services worldwide on March 20, 2020, due to the COVID-19 pandemic. Marwaha Decl. ¶ 2. Although the State Department issued a notice regarding the phased resumption of routine visa services, the re-opening of services is determined on a post-by-post basis. *Id*. ¶ 5. While suspended, posts might operate on a limited capacity, providing mission-critical or emergency services. *Id*. ¶ 2. Those services, for immigrant visas, include age-out cases, spouses and unmarried children of U.S. citizens, as well as for adopted children, and Afghan and Iraqi Special Immigrant visas. *Id*. Plaintiffs, therefore, fail to establish a substantial likelihood that their injuries would be redressed by a PI because, even if the Court enjoins the Proclamations, or the State Department's alleged actions implementing the Proclamations, the relevant consulate posts may still be suspended due to COVID-19, which would prevent visa issuance or processing.

According to the State Department websites (as of the date of this filing) for the consulate posts relevant to the DV plaintiffs in *Gomez*, routine visa services all remain suspended due to COVID-19, except for emergency or mission-critical services, or, in the case of the consulate post in Tokyo, "capacity is extremely limited and there will be increased wait times for completing such services due to substantial backlogs." *See* https://al.usembassy.gov/visas/ (Albania); https://sa.usembassy.gov/visas/ (South Africa); https://np.usembassy.gov/visas/ (Nepal); https://kz.usembassy.gov/visas/ (Kazakhstan); https://sn.usembassy.gov/visas/ (Senegal); https://ci.usembassy.gov/visas/ (Côte d'Ivoire); https://jp.usembassy.gov/visas/ (Japan). None of the six Plaintiffs attempts to show that their consulate has resumed routine visa services (information that is available on the internet), which would enable the processing or adjudication of their visa applications if this Court were to enjoin the Proclamations or the relevant State Department actions.

Instead, Plaintiffs appear to recognize their lack of standing due to non-redressability based on conditions in the Embassy or Consulates' host countries by filing their "supplemental" PI motion on August 10, 2020. Doc. 66, *Gomez* Pls. Supp. PI Mot. In that motion, Plaintiffs request that this Court take the astonishing step of ordering that U.S. posts overseas set aside their operating procedures issued in the midst of the global pandemic, which are in place for the safety and welfare of consular employees and the public, and are subject to conditions and directives of host countries. *Id*. 8-9. Plaintiffs disagree with the State Department's judgment regarding which categories of visa applicants should qualify as emergencies or as mission critical, but their attempt to invoke the Court's jurisdiction fails because their claim falls outside the Court's subject matter jurisdiction. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2003); PI Opp 29-30 n.5. As

this Court noted during the June 3, 2020 status conference, jurisdiction of U.S. courts over foreign

nations in the operation of their public health orders is dubious to say the least.

Because none of the Plaintiffs has affirmatively demonstrated through evidentiary proof

that he or she had standing when this lawsuit commenced, the Court should deny their request to

certify their proposed DV subclass. Order at 20, Doc. 41 (quoting *Comcast*, 569 U.S. at 33).

### 2. Plaintiffs Cannot Satisfy the "Commonality" and "Typicality" Requirements For Class Certification Under Federal Rule of Civil Procedure 23.

Commonality and typicality are not established here, where the putative class is broadly

drawn, bringing within its ambit differing factual circumstances and differing legal claims. Fed.

R. Civ. P. 23(a)(2), (3). Rule 23(a)'s commonality and typicality requirements occasionally merge:

"[b]oth serve as guideposts for determining whether under the particular circumstances

maintenance of a class action is economical and whether the named plaintiff's claim and the class

claims are so interrelated that the interests of the class members will be fairly and adequately

protected in their absence." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Wal-Mart*,

564 U.S. at 349 n.5). Rule 23(a)(2) requires that Plaintiffs establish "there are questions of law or

fact common to the class." Thus, litigants seeking class certification must show the Court is able

to fairly and efficiently resolve the issue raised by the class "in one stroke." *Wal-Mart*, 564 U.S. at

350.

The DV subclass lacks commonality for the same reasons it lacks typicality: the proffered

class definition includes individuals whose legal and factual interests differ from those of the

proposed class representatives, none of whom presents a cognizable claim. The purpose of the

commonality requirement is to ensure that members of the would-be class have suffered a common

injury and, therefore, their complaints should be aggregated into one lawsuit, thereby husbanding

judicial and party resources. *Wal-Mart*, 564 U.S.at 345. Here, Plaintiffs failed to demonstrate that

the DV subclass satisfies commonality because it is significantly over-inclusive. The subclass definition includes all "[i]ndividuals who have been selected to receive an immigrant visa through the … FY2020 Diversity Visa Lottery and who had not received their immigrant visa on or before April 23, 2020." *Gomez* Class Cert. Mot. 11. Such a broad definition would sweep in a wide number of individuals who would be otherwise ineligible for an immigrant visa for any number of independent reasons, or who may not be able to receive an interview due to the suspension of consular services based on the ongoing worldwide pandemic. Plaintiffs list a number of legal and factual questions "[a]ny one [of which] standing alone, is enough to satisfy Rule 23(a)(2)'s standard." *Gomez* Pls. Class Cert. Mot. 20 (citing *D.L. v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013)). But there must be an issue for which the Court is able to fairly and efficiently resolve the issue raised by the class "in one stroke." *Wal-Mart*, 564 U.S. at 350. None of the questions noted by Plaintiffs can do this because, like the named Plaintiffs, members of a putative class will present a wide variety of factual circumstances that will not be resolved by an order enjoining the Proclamations.

While the commonality analysis looks at the relationship among the class members, the typicality analysis looks at the relationship between the proposed class representative and the rest of the class. Newberg on Class Actions § 3:26 (5th ed.). "The typicality requirement 'aims at ensuring that the class representatives have suffered injuries in the same general fashion as absent class members.'" *Hoyte v. District of Columbia*, 325 F.R.D. 485, 490 (D.D.C. July 27, 2017) (quoting *Hardy v. District of Columbia*, 283 F.R.D. 20, 26 (D.D.C. 2012). "Generally speaking, typicality is satisfied when the plaintiffs' claims arise from the same course of conduct, series or events, or legal theories of other class members." *Daskalea v. Washington Humane Soc*., 275 F.R.D. 346, 358 (D.D.C. 2011). "The facts and claims of each class member do not have to be

identical to support a finding of typicality; rather, typicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff." *Id.* But "[b]ecause Rule 23 requires that both the claims and the defenses be typical, a proposed class representative will not satisfy Rule 23(a)(3) if the representative is subject to a unique defense that is likely to become a major focus of the litigation." *In re Rail Freight Fuel*, 287 F.R.D. at 33 (internal citations and quotation marks omitted). The typicality requirement is not met if the proposed class representatives are subject to unique defenses. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). And that is so here. As demonstrated *supra*, the six named DV Plaintiffs failed to demonstrate standing because they have failed to present any evidence to support redressability under their own individual circumstances. In other words, the proposed representatives are subject to "unique defense[s] that [are] likely to become a major focus of the litigation." *In re Rail Freight Fuel*, 287 F.R.D. at 33.

In short, any class certified under Plaintiffs' proposed DV subclass would include a broad array of issues that are not typical of the class and therefore unsuitable for class certification. Accordingly, the Court should deny Plaintiffs' motion.

### 3. The Proposed Representatives Have Failed to Demonstrate That They Will Fairly And Adequately Protect Class Interests.

Pursuant to Rule 23(a)(4), the named Plaintiffs must fairly and adequately protect the interests of other members of the class. Fed. R. Civ. P. 23(a)(4). The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. *See Gen. Tele. Co. of Southwest v. Falcon,* 457 U.S. 147, 157–58 n. 13 (1982). "As [the Supreme Court] has repeatedly held, a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Tex. Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977) (citing *Schlesinger v. Reservists Committee to*

*Stop the War*, 418 U.S. 208, 216 (1974); *Kremens v. Bartley*, 431 U.S. 119, 130 (1977); *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *Rosario v. Rockefeller*, 410 U.S. 752, 759 n. 9 (1973); *Hall v. Beals*, 396 U.S. 45, 49 (1969); and *Bailey v. Patterson*, 369 U.S. 31, 32–33 (1962)).

The named Plaintiffs here fail this test. None can adequately protect the proposed class interests because none has standing or brought any claim within this Court's subject-matter jurisdiction. *Gomez*, Order at 20, Doc. 41 (quoting *Comcast*, 569 U.S. at 33). None of the Plaintiffs is a member of the class they propose, and so they cannot adequately represent class interests. *Rodriguez*, 431 U.S. at 403. Plaintiffs' requested DV subclass certification should be denied.

Additionally, notwithstanding their lack of standing, Plaintiffs make no attempt to satisfy their burden. "The Rule does not set forth a mere pleading standard," but rather the plaintiffs must satisfy Rule 23 "through evidentiary proof." *Comcast*, 569 U.S. at 33. They present none here, merely asserting without citation that "Plaintiffs will fairly and adequately protect the interest of the proposed class." Pls. Class Cert. Mot. 25. These threadbare statements without evidentiary support fail the standard required to meet Plaintiffs' burden and independently disqualify their proposed subclass for certification.

## B.   NONE OF THE FOUR ADDITIONAL SUBCLASSES MEETS THE CERTIFICATION REQUIREMENTS.

Plaintiffs propose four additional subclasses for certification, but these classes suffer from many of the same maladies that doom the proposed DV subclass. The four additional proposed subclasses are as follows:

- **Immediate Relative Parent Subclass**—Individual U.S. citizens with an approved immigrant visa petition for an immediate relative parent and whose sponsored relative is subject to Presidential Proclamation 10052.

- **Preference Relative Subclass**—Individual U.S. citizens and lawful permanent residents with an approved immigrant visa petition for a relative in a preference immigrant category, including a spouse, parent, child, or sibling, and

any qualifying derivative relatives, where the immigrant visa is "current" or will become "current," meaning visas are authorized for issuance abroad, while Presidential Proclamation 10052 is in effect, and whose sponsored preference relative is subject to Proclamation 10052.

- **Temporary Worker Subclass—**United States employers who have an approved nonimmigrant visa petition for an employee or potential employee in the H-1B, H-2B, or L-1 nonimmigrant visa categories; where the employee or potential employee's petition for nonimmigrant status has been approved for temporary employment in the United States, and where the employee or potential employee is subject to Proclamation 10052.

- **Exchange Visitor Program Subclass—**Entities designated by the U.S. Department of State as an Exchange Visitor Program sponsor for any category of J-1 exchange visitors included in Proclamation 10052.

*Gomez* Class Cert. Mot. 4. Plaintiffs' motion ignores their burden to demonstrate by a preponderance of the evidence that these subclasses can be certified. They have failed to show that their proposed representatives have standing, and have also failed to satisfy Rule 23(a). Accordingly, the Court should also decline to certify the remaining four proposed subclasses.

### 1. The named Plaintiffs fail to show standing.

"A plaintiff seeking … class certification must, as a threshold matter, satisfy the justiciability requirements of Article III of the United States Constitution." *Gomez*, Doc. 41, Order at 11 (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). These named Plaintiffs suffer from different standing deficiencies that render their certification improper.

### a. Immediate Relative Parent Subclass

Plaintiffs put forward one individual named Plaintiff to represent their proposed Immediate Relative Parent subclass, Daniel C. Nwankwo, a U.S. citizen with "an approved immigrant visa petition for his father to immigrate to the United States from Nigeria." *Gomez* Class Cert. Mot. 7. According to Plaintiffs' class-certification motion, "[t]he June Proclamation harms Mr. Nwankwo by depriving him of his father's companionship, care, and guidance during his formative years."

*Id*. Mr. Nwankwo's declaration states that he is 23 years old, and that he initiated the process to sponsor his parents for immigrant visas when he was 22 years old. Doc. 53-28 ¶¶ 1-2. Nowhere do Plaintiffs claim, much less support with evidence, that Mr. Nwankwo's immigrant visa application has been denied or even that it is likely to be denied due to the Proclamations. *See Gomez* Class Cert. Mot. In other words, Plaintiff has no ripe claim and has alleged no cognizable injury. *Gomez*, Doc. 41, Order at 20 (quoting *Comcast*, 569 U.S. at 33).

### b.    Preference Relative Subclass

Plaintiffs present seven named Plaintiffs as representing its Preference Relative subclass. *Gomez* Class Cert. Mot. 8. These plaintiffs are U.S. citizens or legal permanent residents with approved immigrant visa petitions for family members located in Bangladesh, Dominican Republic, Chile, Philippines, and Yemen. These Plaintiffs also fail to show standing because they do not show that any of them has been denied or even is likely to be denied a visa. *Id*. at 8-9. Plaintiffs assert that the named Plaintiff Nancy Abarca's niece Maria Andrea is "a derivative beneficiary who cannot obtain her visa until a visa is issued to her father," and will therefore "age out of her current visa eligibility" while the June Proclamation is in effect. *Id*. at 14. But State Department records demonstrate that Maria Andrea will be protected from aging out under the Child Status Protection Act ("CSPA"). Ex. A, Dus Decl. ¶ 12.[1] Accordingly, Plaintiffs have failed to show that any of the visa beneficiaries will lose their status, much less that they are even at risk

---

[1] Plaintiffs do not make any argument in their Motion for Class Certification that the granddaughter of named Plaintiff Loida Phelps will age out or is likely to age out. *Gomez* Class Cert. Mot. 8. However, Ms. Phelps asserts in her declaration for Plaintiffs' PI Motion that she is concerned that her granddaughter, Marylour, will not be deemed by DOS as "covered under the CSPA." Phelps Decl., Doc. 53-30 ¶¶ 7-8. Plaintiffs have waived this argument by failing to raise it in their initial brief. *Nippon Shinyaku Co. Ltd. v. Iancu*, 369 F.Supp.3d 226, 239 (D.D.C. Feb. 27, 2019). but even waiver notwithstanding, State Department record demonstrate that Marylour is also protected under CSPA. Dus Decl. ¶ 6.

of their visa being rejected, and they have failed to show standing for the named Preference Relative Plaintiffs. *Gomez*, Doc. 41, Order at 20 (quoting *Comcast*, 569 U.S. at 33).

### c.     Temporary Worker Employer Subclass

Plaintiffs name four U.S. companies—3Q Digital, PowerTrunk, Shipco Transport, and Superior Scape—that claim to "sponsor employees and potential employees on temporary nonimmigrant visas in the H-1B, H-2B, and L-1 categories." *Gomez* Pls. Class Cert. Mot. 15. According to Plaintiffs, these four have "been and will continue to be harmed by the June Proclamation's entry suspension because without such workers each company will suffer a multitude of reputational and operational harm, including the prospect of shuttering operation[s] altogether without the entry of foreign workers on approved, valid nonimmigrant visas." *Id*. To support these allegations, Plaintiffs provide only self-serving declarations that do not satisfy their burden of establishing standing by a preponderance of the evidence. *Id*.

3Q Digital "is the largest independent digital marketing agency in the United States." Rodnitzky Decl., Doc. 53-32 ¶ 3. The Rodnitzky declaration states that 3Q furloughed 3% of its staff "during the economic downturn caused by the COVID-19 pandemic," and that "[m]any of [its] competitor agencies suffered massive layoffs during these trying economic times." *Id*. ¶ 7. 3Q has been unable to bring into the United States its H-1B beneficiary Balaji Bhat, whom it has employed while he worked internationally since 2018. *Id*. ¶ 17. The declaration provides no evidence of any particular lost revenue, contracts, or business opportunities caused by Mr. Bhat's inability to enter the United States during the June Proclamation, nor does it identify any other specific losses or financial injuries due to Mr. Bhat's continued employment for them while working internationally. *Id*. ¶ 24.

PowerTrunk is a U.S. subsidiary of a Spanish company "that designs, manufactures and markets professional Land Mobile Radio" systems, a unique communications technology it claims is not available elsewhere because it was developed in Europe. Martin Decl., Doc. 53-24. PowerTrunk sought to extend an L-1B visa for one of its European-based employees to continue working for the company in the United States, whom it claims has unique expertise and relationships. *Id*. But this declaration also fails to support the key allegation to PowerTrunk's standing because it does not provide any evidence of lost revenue, cancelled contracts, or missed business opportunities. Even the letter submitted by one of PowerTrunk's clients—NJ Transit— does not contain any representation that the contract with PowerTrunk was at risk. *Id*. And the declaration states that the U.S. Embassy in Madrid informed PowerTrunk's L1B beneficiary during the spring of 2020 that it could not process his visa application due to the suspension of routine visa operations related to COVID-19—a time during which Spain was one of the world's largest hotspots for the disease.[2] These declarations present only speculation about possible harm and also fails to show causation and redressability. *Nguyen v. U.S. Dep't of Homeland Security*, — F.Supp.3d —, 2020 WL 2527210, at *6 (D.D.C. May 18, 2020); *Gomez*, Doc. 41, Order at 20 (quoting *Comcast*, 569 U.S. at 33).

Shipco Transports is "one of the world's leading neutral Non-Vessel Operating Common Carriers." Jepsen Decl., Doc. 53-17 ¶ 1. According to a declaration of its co-founder, Shipco

---

[2] *How did Spain get its coronavirus response so wrong?*, The Guardian (Mar. 26, 2020), *available at*   https://www.theguardian.com/world/2020/mar/26/spain-coronavirus-response-analysis   (last visited Aug. 18, 2020) ("In the chilling table of daily dead from the coronavirus pandemic, Spain has taken top position from Italy – with 738 dying over 24 hours."); *'We're at a critical moment': Spain sees coronavirus cases surge again*, The Guardian (Aug. 14, 2020), *available at* https://www.theguardian.com/world/2020/aug/14/spain-coronavirus-new-cases (last visited Aug. 18, 2020) ("Some eight weeks after the country emerged from one Europe's strictest lockdowns, a surge of cases in north-east and central areas have resulted in Spain leading Europe in numbers of confirmed new cases.").

submitted an L-1A nonimmigrant worker petition "to employ Mr. Brian Nielsen … in the United States as our Finance Director, Americas Region." *Id*. ¶ 16. Mr. Nieslen "has been and continues to be employed as Chief Financial Officer, Europe Region" at Shipco's "sister office in Denmark." *Id*. Shipco currently has a U.S. Finance Director with 10 years of experience in that role. *Id*. ¶ 21. Mr. Nielsen has not been issued an L-1A visa. *Id*. The declaration does not identify any lost revenue, lost contracts, or lost business opportunities that will be caused by the Proclamations and their implementation, instead merely speculating as to the impact of not having its preferred Financial Director. This fails Plaintiff's burden of showing standing by a preponderance of the evidence. *Nguyen*, 2020 WL 2527210, at *6; *Gomez*, Doc. 41, Order at 20 (quoting *Comcast*, 569 U.S. at 33).

Superior Scape, a landscaping company based out of Michigan, provides only a declaration by its owner stating his opinion that his inability to hire seasonal workers will contribute to projected losses and the possibility of shuttering his business. Newman Decl., Doc. 53-26. But Plaintiffs present no evidence that Superior Scape has actually lost business due to the Proclamations. In fact, the declaration states that it was not able to obtain H-2B nonimmigrant visas in the spring of 2020 because all available visas had already been assigned by the U.S. Department of Labor—not because of the Proclamations. *Id*. ¶¶ 7-8. Mr. Newman states that the failure to obtain one of the extremely competitive visas after the national quota had been met led the company to "delay a number of contracts due to the absence of H-2B workers this spring," and that it "planned on employing 40 H-2B workers for employment from October 1 through December 19, 2020." *Id*. ¶ 9. Mr. Newman believes that "the Proclamation will deprive us of these 40 essential workers, [and because of it] we will lose money this year." *Id*. But he does not detail

any contract that has been lost, any efforts to generate business that has failed, or any efforts to hire domestic workers in the current labor market that have not succeeded. *See generally id*.

In other words, there is no *affirmative evidence* of any loss due to the Proclamations. There is only speculation, and that fails Plaintiffs' burden for class certification. *See Nguyen*, 2020 WL 2527210, at \*6; *Gomez*, Doc. 41, Order at 20 (quoting *Comcast*, 569 U.S. at 33).

### d.   Exchange Visitor Program Subclass

Plaintiffs put forward two named Plaintiffs as representatives of the J-1 subclass: ASSE International, Inc. and EurAuPair International. According to a declaration, these two organizations have the same CEO. Gustafson Decl., Doc. 53-14 ¶ 1. According to their CEO, these two named Plaintiffs "are 'program sponsors' of Exchange Visitor Programs and engage in a private-public partnership with [the State Department] to administer those programs." *Id*. ¶ 2. Unlike the Temporary Worker Employers, the named Exchange Visitor Program Plaintiffs quantify lost funds due to refunds issued ($1,013,000 for ASSE and $434,500 for EurAuPair). *Id*. ¶¶ 17, 32. But even if these two named Plaintiffs have presented affirmative evidence of financial injury, they have failed to raise any justiciable claim because the Proclamations are not subject to judicial review. PI Opp 27-29; *Udugampola v. Jacobs*, 795 F.Supp.2d 96, 103 (D.C. Cir. 2011); *Trump v. Hawaii*, 138 S.Ct. 2392, 2408 (2017).

*         *         *

In short, none of the named Plaintiffs has presented affirmative evidence to satisfy their burden to show standing or to raise a justiciable claim. Accordingly, the Court should deny certification of any of Plaintiffs' proposed subclasses.

**2.      Plaintiffs Cannot Satisfy the "Commonality" and "Typicality" Requirements For Class Certification Under Federal Rule of Civil Procedure 23**.

The named Plaintiffs for the non-DV subclasses have also failed to meet their burden under Rule 23(a). They were required to provide affirmative evidence establishing commonality and typicality, but they have not done so. Indeed, Plaintiffs make no argument specific to any of its particular subclasses meeting these requirements. *See generally Gomez* Class Cert. Mot. Instead, they rely on generalized statements about "Plaintiffs' proposed class, including each of their proposed subclasses." *E.g.*, *id*. at 19.  As demonstrated already, there are widely different factual and legal issues relevant both between and within the subclasses that Plaintiffs have proposed. Rule 23(a)(2) requires that Plaintiffs establish "there are questions of law or fact common to the class." Thus, litigants seeking class certification must show the Court is able to fairly and efficiently resolve the issue raised by the class "in one stroke." *Wal-Mart*, 564 U.S. at 350. As shown, Plaintiffs have failed this requirement.

The same deficiencies that doom the DV subclass apply equally to the other four proposed subclasses because Plaintiffs do not even attempt any subclass-specific analysis for commonality and typicality. The purpose of the commonality requirement is to ensure that members of the would-be class have suffered a common injury and, therefore, their complaints should be aggregated into one lawsuit, thereby husbanding judicial and party resources. *Wal-Mart*, 564 U.S.at 345. Each of Plaintiffs' proposed subclasses fail the commonality requirement because they include too many factual scenarios that cannot be resolved in "one stroke." *Id*. Like the Diversity Visa subclass, the availability and capacity of consular services requires case-specific analysis for each of the named Plaintiffs. Austin Decl. ¶¶ 3-4. Further, the subclasses are too broadly stated, as exemplified by the Temporary Worker Employer subclass. Of the four named Plaintiffs, there are three different nonimmigrant visa categories at issue—H-1B, H-2B, and L-1. *Gomez* Class Cert.

Mot. 9-10. These visa categories each serve unique purposes and require different showings to establish eligibility. *See* 8 U.S.C. § 1101(a)(15)(H)(i)(b) (specialty occupation); *id*. § 1101(a)(15)(H)(ii)(b) ("temporary service or labor if unemployed persons capable of performing such service or labor cannot be found in this country): and *id*. § 1101(a)(15)(L) (temporary "import" employee). These circumstances are far too broad to be satisfy "commonality." *Wal-Mart*, 564 U.S.at 345.

"The facts and claims of each class member do not have to be identical to support a finding of typicality; rather, typicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff."  *Daskalea*, 275 F.R.D. at 358.But, "[b]ecause Rule 23 requires that both the claims and the defenses be typical, a proposed class representative will not satisfy Rule 23(a)(3) if the representative is subject to a unique defense that is likely to become a major focus of the litigation." *In re Rail Freight Fuel*, 287 F.R.D. at 33 (internal citations and quotation marks omitted). The typicality requirement is not met if the proposed class representatives are subject to unique defenses. *Hanon*, 976 F.2d at 508. Here, the named Plaintiffs for the various subclasses demonstrate that each is uniquely situated such that typicality cannot be established. The availability and capacity of consular services, for example, is highly dependent upon host-country conditions and regulations. Marwaha Decl. ¶ 5; Austin Decl. ¶¶ 3-4. This fact alone demonstrates that the named Plaintiffs' claims will be subject to "unique defense[s]." *Hanon*, 976 F.2d at 508,

Plaintiffs failed their burden, class certification should denied as to each of the non-DV subclasses. *Nguyen*, 2020 WL 2527210, at *6; *Gomez*, Doc. 41, Order at 20 (quoting *Comcast*, 569 U.S. at 33).

### 3.     The Proposed Representatives Have Failed to Demonstrate That They Will Fairly And Adequately Protect Class Interests.

Under Rule 23(a)(4), the named Plaintiffs must fairly and adequately protect the interests of other members of the class. Fed. R. Civ. P. 23(a)(4). Just like the DV named Plaintiffs, the remaining named Plaintiffs fail the test. None can adequately protect the proposed class interests because none has standing or brought any claim under this Court's subject matter jurisdiction. *Supra* at 15; *Gomez*, Doc. 41, Order at 20 (quoting *Comcast*, 569 U.S. at 33).  In short, none of the Plaintiffs is a member of the class they propose, and accordingly they cannot adequately represent class interests. *Rodriguez*, 431 U.S. at 403. Therefore, Plaintiffs' requested DV subclass certification should be denied. Additionally, notwithstanding their lack of standing, Plaintiffs make no attempt to satisfy their burden. "The Rule does not set forth a mere pleading standard," but rather the plaintiffs must satisfy Rule 23 "through evidentiary proof." *Comcast*, 569 U.S. at 33. They present none here, merely asserting without citation that "Plaintiffs will fairly and adequately protect the interest of the proposed class." Pls. Class Cert. Mot. 25. These threadbare statements without evidentiary support fail the standard required to meet Plaintiffs' burden and independently disqualify their proposed subclass for certification.

## C.     PLAINTIFFS' PROPOSED SUBCLASSES FAIL RULE 23(b).

In addition to meeting the requirements of Federal Rule of Civil Procedure 23(a), a proposed class must fall within at least one of the three subsections of Rule 23(b). Plaintiffs rely on Rule 23(b)(2) and Rule 23(b)(1)(A), but both fail as to all subclasses.

### a.     Rule 23(b)(2)

For Rule 23(b)(2), Plaintiffs must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P.

23(b)(2). Under Rule 23(b)(2), "two elements must exist: (1) the defendant's action or refusal to act must be generally applicable to the class; and (2) plaintiff must seek final injunctive relief or corresponding declaratory relief on behalf of the class." *Lightfoot v. District of Columbia*, 246 F.R.D. 326, 341 (D.D.C. 2007) (internal quotation marks omitted). The Supreme Court has explained that Rule 23(b)(2) is satisfied "when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360.

Plaintiffs failed to meet their burden as to Rule 23(b)(2) because any single injunction or declaration relief would *not* provide relief to each member of the class. *Id*. Indeed, even if the Court issued an injunction against the Proclamations as to the named Plaintiffs only, relief would not be issued to any of them because they lack standing. *Supra* at 15. Moreover, Plaintiffs' claims combine individualized and classwide relief, which the Supreme Court has held does not satisfy Rule 23(b)(2). *Wal-Mart*, 564 U.S. 338 at 361 ("Permitting the combination of individualized and classwide relief in a (b)(2) class is ... inconsistent with the structure of Rule 23(b)."). Because Plaintiffs' claims rely on too many case-specific allegations, they have failed to show that their proposed subclasses satisfy Rule 23(b)(2). *Id*.

### b.    Rule 23(b)(1)(A)

To qualify under Rule 23(b)(1)(A), Plaintiffs must show that "prosecuting separate actions by or against individual class members would create a risk of…inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Plaintiffs have failed their burden here as well. "Rule 23(b)(1)(A) certification is appropriate when the class seeks injunctive or declaratory relief to change an alleged ongoing course of conduct that is either legal or illegal as to all members of the class." *Adair v. England*, 209 F.R.D. 5, 12 (D.D.C. Aug. 19, 2002). Certification under Rule

23(b)(1)(A) "'is most common' in cases in which the class seeks declaratory or injunctive relief against the government 'to provide unitary treatment to all members of a defined group.'" *Id.* (quoting 5 Moore's Federal Practice, § 23.41[4] (3d ed. 2000)).

Plaintiffs argue that this factor applies to their proposed class because they seek a "single injunction against the government's implementation and enforcement of the June Proclamation with respect to all members of the proposed class," and that "[s]uch an injunction would protect all class members from the harms resulting from implementing the alleged unlawful Proclamation against them." *Gomez* Class Cert. Mot. 29. These arguments, however, also fail. For one, there is no "risk" of "inconsistent or varying adjudications" because Plaintiffs all have failed to meet their burden to show standing. *Supra* at 15. Moreover, any class as proposed by Plaintiffs would likely also include individuals, like the named Plaintiffs, facing various barriers to obtaining entry, such that an injunction would not provide relief to all class members. The status of consular services in specific posts, as well as the underlying facts pertaining to individual visa applicants ultimately determine whether any visa will issue. *Id.* Even among the named Plaintiffs there is a wide variety of factual circumstances requiring individual determinations, such as the Preferred Relationship beneficiaries who are CSPA beneficiaries, Ex. A, Dus Decl. ¶¶ 6, 12, or the Temporary Worker Employer who did not receive an H-2B visa because the quota had already been met. Newman Decl., Doc. 53-2 6¶¶ 7-8. Further, visa issuance determinations are made on a case-by-case basis, and accordingly there is no risk of inconsistent adjudications as to individual class members. *See Saavedra Bruno v. Albright*, 197 F.3d 1153, 1160 (D.C. Cir. 1999).

These distinctions demonstrate that Plaintiffs have not met their burden of showing that Rule 23(b)(1)(A) applies to their proposed subclasses. *Adair*, 209 F.R.D. at 12.

In short, in addition to failing their burden under Federal Rule of Civil Procedure 23(a), Plaintiffs have also failed to meet their burden under 23(b).

## IV.    CONCLUSION

None of the named Plaintiffs has standing to challenge the Proclamations, and they have failed their burden under Federal Rule of Civil Procedure 23. Accordingly, the Court should deny Plaintiffs' motion for class certification as to all five subclasses.

Dated: August 18, 2020                      Respectfully submitted,

ETHAN P. HUNT
*Acting Assistant Attorney General*, Civil Division
SCOTT G. STEWART
*Deputy Assistant Attorney General*
WILLIAM C. PEACHEY
*Director, Office of Immigration Litigation*, *District Court Section*
COLIN A. KISOR
*Deputy Director*
GLENN M. GIRDHARRY
*Assistant Director*
AARON GOLDSMITH
*Senior Litigation Counsel*
JOSHUA S. PRESS
CHRISTOPHER T. LYERLA
JAMES J. WEN
*Trial Attorneys*

*s/Thomas B. York*
THOMAS B. YORK
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
Washington, D.C. 20044
(202) 598-6073
Thomas.B.York@usdoj.gov

Attorneys for Defendants

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
1:20-CV-1419-APM                    30

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2020, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court of for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ Thomas B. York*
THOMAS B. YORK
Trial Attorney
United States Department of Justice
Civil Division