# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DOMINGO ARREGUIN GOMEZ, et al., | ) ) ) Case No. 20-cv-01419 (APM) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| DONALD J. TRUMP, et al., | ) ) |
| Defendants. | ) |

| | |
|---|---|
| MOHAMMED ABDULAZIZ ABDUL MOHAMMED, et al., | ) ) ) Case No. 20-cv-01856 (APM) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| MICHAEL R. POMPEO, et al., | ) ) |
| Defendants. | ) |

| | |
|---|---|
| AFSIN AKER, et al., | ) ) ) Case No. 20-CV-01926 (APM) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| DONALD J. TRUMP, et al., | ) ) |
| Defendants. | ) |

CLAUDINE NGUM FONJONG, et al.,   )
                                 )
**Plaintiffs,**                        )    Case No. 20-cv-021288 (APM)
**v.**                                    )
                                 )
**DONALD J. TRUMP, et al.,**        )
                                 )
**Defendants.**                     )

## DECLARATION OF BRIANNE MARWAHA

I, Brianne Marwaha, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am employed by the U.S. Department of State as the Division Chief in the Immigration and Employment Division, Office of Field Operations of the Visa Office, Bureau of Consular Affairs. The Field Operations Office supports and monitors visa operations at Foreign Service posts around the world, provides updated guidance to our posts regarding changes in visa policy, and oversees the Visa Office's web unit, which maintains visa-related content on Consular Affairs' public-facing website, travel.state.gov.

2. I certify, based on information provided to me in the course of my official duties, that the documents attached and listed in the attached index are the complete administrative record containing all policies, guidance, directives, orders, cables, or communications by the United States Department of State that implement, carry out, or administer Proclamations 10014 and 10052 at issue in this litigation.

I declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

August 17, 2020

Brianne Marwaha, Division Chief
Immigration and Employment Division
Office of Field Operations, Visa Office
Bureau of Consular Affairs
United States Department of State

2

# INDEX

Presidential Proclamation 10014 of April 22, 2020, *Suspension of Entry of Immigrants Who Present a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak* (PP 10014) ................................ 000001

Presidential Proclamation 10052 of  June 22, 2020, *Suspension of Entry of Immigrants and Nonimmigrants Who Present a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak* (PP 10052)………
.................................................................................................................................... 000005

Presidential Proclamation 10054 of June 29, 2020, *Amendment to Proclamation 10052*
.......................................................................................................................... ..000010

Department of State Cables to All Consular and Diplomatic Posts (ALDACs)....... 000012

Action Memos for the Assistant Secretary of Consular Affairs .............................. 000073

Email Directives from the Department of State, Visa Office to all Consular Processing Posts ....................................................................................................................... 000153

Published Notices on Consular Affairs' Public-Facing Website, Travel.State.Gov…………………………………………………………………000158

Training Materials....................................................................................... 000198


Federal Register

Vol. 85, No. 81

Monday, April 27, 2020

# Presidential Documents

Title 3—

The President

Proclamation 10014 of April 22, 2020

Suspension of Entry of Immigrants Who Present a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak

**By the President of the United States of America**

**A Proclamation**

The 2019 Novel Coronavirus (COVID–19) has significantly disrupted the livelihoods of Americans. In Proclamation 9994 of March 13, 2020 (Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID–19) Outbreak), I declared that the COVID–19 outbreak in the United States constituted a national emergency, beginning March 1, 2020. Since then, the American people have united behind a policy of mitigation strategies, including social distancing, to flatten the curve of infections and reduce the spread of SARS–CoV–2, the virus that causes COVID–19. This needed behavioral shift has taken a toll on the United States economy, with national unemployment claims reaching historic levels. In the days between the national emergency declaration and April 11, 2020, more than 22 million Americans have filed for unemployment.

In the administration of our Nation's immigration system, we must be mindful of the impact of foreign workers on the United States labor market, particularly in an environment of high domestic unemployment and depressed demand for labor. We must also conserve critical State Department resources so that consular officers may continue to provide services to United States citizens abroad. Even with their ranks diminished by staffing disruptions caused by the pandemic, consular officers continue to provide assistance to United States citizens, including through the ongoing evacuation of many Americans stranded overseas.

I have determined that, without intervention, the United States faces a potentially protracted economic recovery with persistently high unemployment if labor supply outpaces labor demand. Excess labor supply affects all workers and potential workers, but it is particularly harmful to workers at the margin between employment and unemployment, who are typically "last in" during an economic expansion and "first out" during an economic contraction. In recent years, these workers have been disproportionately represented by historically disadvantaged groups, including African Americans and other minorities, those without a college degree, and the disabled. These are the workers who, at the margin between employment and unemployment, are likely to bear the burden of excess labor supply disproportionately.

Furthermore, lawful permanent residents, once admitted, are granted "open-market" employment authorization documents, allowing them immediate eligibility to compete for almost any job, in any sector of the economy. There is no way to protect already disadvantaged and unemployed Americans from the threat of competition for scarce jobs from new lawful permanent residents by directing those new residents to particular economic sectors with a demonstrated need not met by the existing labor supply. Existing immigrant visa processing protections are inadequate for recovery from the COVID–19 outbreak. The vast majority of immigrant visa categories do not require employers to account for displacement of United States workers.

While some employment-based visas contain a labor certification requirement, because visa issuance happens substantially after the certification is completed, the labor certification process cannot adequately capture the status of the labor market today. Moreover, introducing additional permanent residents when our healthcare resources are limited puts strain on the finite limits of our healthcare system at a time when we need to prioritize Americans and the existing immigrant population. In light of the above, I have determined that the entry, during the next 60 days, of certain aliens as immigrants would be detrimental to the interests of the United States.

NOW, THEREFORE, I, DONALD J. TRUMP, President of the United States, by the authority vested in me by the Constitution and the laws of the United States of America, including sections 212(f) and 215(a) of the Immigration and Nationality Act, 8 U.S.C. 1182(f) and 1185(a), and section 301 of title 3, United States Code, hereby find that the entry into the United States of persons described in section 1 of this proclamation would, except as provided for in section 2 of this proclamation, be detrimental to the interests of the United States, and that their entry should be subject to certain restrictions, limitations, and exceptions. I therefore hereby proclaim the following:

**Section 1**. *Suspension and Limitation on Entry.* The entry into the United States of aliens as immigrants is hereby suspended and limited subject to section 2 of this proclamation.

**Sec. 2**. *Scope of Suspension and Limitation on Entry.* (a) The suspension and limitation on entry pursuant to section 1 of this proclamation shall apply only to aliens who:

(i) are outside the United States on the effective date of this proclamation;

(ii) do not have an immigrant visa that is valid on the effective date of this proclamation; and

(iii) do not have an official travel document other than a visa (such as a transportation letter, an appropriate boarding foil, or an advance parole document) that is valid on the effective date of this proclamation or issued on any date thereafter that permits him or her to travel to the United States and seek entry or admission.

(b) The suspension and limitation on entry pursuant to section 1 of this proclamation shall not apply to:

(i) any lawful permanent resident of the United States;

(ii) any alien seeking to enter the United States on an immigrant visa as a physician, nurse, or other healthcare professional; to perform medical research or other research intended to combat the spread of COVID–19; or to perform work essential to combating, recovering from, or otherwise alleviating the effects of the COVID–19 outbreak, as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees; and any spouse and unmarried children under 21 years old of any such alien who are accompanying or following to join the alien;

(iii) any alien applying for a visa to enter the United States pursuant to the EB–5 Immigrant Investor Program;

(iv) any alien who is the spouse of a United States citizen;

(v) any alien who is under 21 years old and is the child of a United States citizen, or who is a prospective adoptee seeking to enter the United States pursuant to the IR–4 or IH–4 visa classifications;

(vi) any alien whose entry would further important United States law enforcement objectives, as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees, based on a recommendation of the Attorney General or his designee;

(vii) any member of the United States Armed Forces and any spouse and children of a member of the United States Armed Forces;

(viii) any alien seeking to enter the United States pursuant to a Special Immigrant Visa in the SI or SQ classification, subject to such conditions as the Secretary of State may impose, and any spouse and children of any such individual; or

(ix) any alien whose entry would be in the national interest, as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees.

**Sec. 3.** *Implementation and Enforcement.* (a) The consular officer shall determine, in his or her discretion, whether an immigrant has established his or her eligibility for an exception in section 2(b) of this proclamation. The Secretary of State shall implement this proclamation as it applies to visas pursuant to such procedures as the Secretary of State, in consultation with the Secretary of Homeland Security, may establish in the Secretary of State's discretion. The Secretary of Homeland Security shall implement this proclamation as it applies to the entry of aliens pursuant to such procedures as the Secretary of Homeland Security, in consultation with the Secretary of State, may establish in the Secretary of Homeland Security's discretion.

(b) An alien who circumvents the application of this proclamation through fraud, willful misrepresentation of a material fact, or illegal entry shall be a priority for removal by the Department of Homeland Security.

(c) Nothing in this proclamation shall be construed to limit the ability of an individual to seek asylum, refugee status, withholding of removal, or protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, consistent with the laws of the United States.

**Sec. 4.** *Termination.* This proclamation shall expire 60 days from its effective date and may be continued as necessary. Whenever appropriate, but no later than 50 days from the effective date of this proclamation, the Secretary of Homeland Security shall, in consultation with the Secretary of State and the Secretary of Labor, recommend whether I should continue or modify this proclamation.

**Sec. 5.** *Effective Date.* This proclamation is effective at 11:59 p.m. eastern daylight time on April 23, 2020.

**Sec. 6.** *Additional Measures.* Within 30 days of the effective date of this proclamation, the Secretary of Labor and the Secretary of Homeland Security, in consultation with the Secretary of State, shall review nonimmigrant programs and shall recommend to me other measures appropriate to stimulate the United States economy and ensure the prioritization, hiring, and employment of United States workers.

**Sec. 7.** *Severability.* It is the policy of the United States to enforce this proclamation to the maximum extent possible to advance the interests of the United States. Accordingly:

(a) if any provision of this proclamation, or the application of any provision to any person or circumstance, is held to be invalid, the remainder of this proclamation and the application of its provisions to any other persons or circumstances shall not be affected thereby; and

(b) if any provision of this proclamation, or the application of any provision to any person or circumstance, is held to be invalid because of the lack of certain procedural requirements, the relevant executive branch officials shall implement those procedural requirements to conform with existing law and with any applicable court orders.

**Sec. 8.** *General Provisions.* (a) Nothing in this proclamation shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or,

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This proclamation shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This proclamation is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

IN WITNESS WHEREOF, I have hereunto set my hand this twenty-second day of April, in the year of our Lord two thousand twenty, and of the Independence of the United States of America the two hundred and forty-fourth.

[FR Doc. 2020–09068
Filed 4–24–20; 11:15 am]
Billing code 3295–F0–P


38263

Federal Register

Vol. 85, No. 123

Thursday, June 25, 2020

# Presidential Documents

Title 3—

The President

Proclamation 10052 of June 22, 2020

## Suspension of Entry of Immigrants and Nonimmigrants Who Present a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak

### By the President of the United States of America

### A Proclamation

The 2019 Novel Coronavirus (COVID–19) has significantly disrupted Americans' livelihoods. Since March 2020, United States businesses and their workers have faced extensive disruptions while undertaking certain public health measures necessary to flatten the curve of COVID–19 and reduce the spread of SARS–CoV–2, the virus that causes COVID–19. The overall unemployment rate in the United States nearly quadrupled between February and May of 2020—producing some of the most extreme unemployment ever recorded by the Bureau of Labor Statistics. While the May rate of 13.3 percent reflects a marked decline from April, millions of Americans remain out of work.

In Proclamation 10014 of April 22, 2020 (Suspension of Entry of Immigrants Who Present a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak), I determined that, without intervention, the United States faces a potentially protracted economic recovery with persistently high unemployment if labor supply outpaces labor demand. Consequently, I suspended, for a period of 60 days, the entry of aliens as immigrants, subject to certain exceptions. As I noted, lawful permanent residents, once admitted pursuant to immigrant visas, are granted ''open-market'' employment authorization documents, allowing them immediate eligibility to compete for almost any job, in any sector of the economy. Given that 60 days is an insufficient time period for the United States labor market, still stalled with partial social distancing measures, to rebalance, and given the lack of sufficient alternative means to protect unemployed Americans from the threat of competition for scarce jobs from new lawful permanent residents, the considerations present in Proclamation 10014 remain.

In addition, pursuant to Proclamation 10014, the Secretary of Labor and the Secretary of Homeland Security reviewed nonimmigrant programs and found that the present admission of workers within several nonimmigrant visa categories also poses a risk of displacing and disadvantaging United States workers during the current recovery.

American workers compete against foreign nationals for jobs in every sector of our economy, including against millions of aliens who enter the United States to perform temporary work. Temporary workers are often accompanied by their spouses and children, many of whom also compete against American workers. Under ordinary circumstances, properly administered temporary worker programs can provide benefits to the economy. But under the extraordinary circumstances of the economic contraction resulting from the COVID–19 outbreak, certain nonimmigrant visa programs authorizing such employment pose an unusual threat to the employment of American workers.

For example, between February and April of 2020, more than 17 million United States jobs were lost in industries in which employers are seeking

to fill worker positions tied to H–2B nonimmigrant visas. During this same period, more than 20 million United States workers lost their jobs in key industries where employers are currently requesting H–1B and L workers to fill positions. Also, the May unemployment rate for young Americans, who compete with certain J nonimmigrant visa applicants, has been particularly high—29.9 percent for 16–19 year olds, and 23.2 percent for the 20–24 year old group. The entry of additional workers through the H–1B, H–2B, J, and L nonimmigrant visa programs, therefore, presents a significant threat to employment opportunities for Americans affected by the extraordinary economic disruptions caused by the COVID–19 outbreak.

As I described in Proclamation 10014, excess labor supply is particularly harmful to workers at the margin between employment and unemployment—those who are typically "last in" during an economic expansion and "first out" during an economic contraction. In recent years, these workers have been disproportionately represented by historically disadvantaged groups, including African Americans and other minorities, those without a college degree, and Americans with disabilities.

In the administration of our Nation's immigration system, we must remain mindful of the impact of foreign workers on the United States labor market, particularly in the current extraordinary environment of high domestic unemployment and depressed demand for labor. Historically, when recovering from economic shocks that cause significant contractions in productivity, recoveries in employment lag behind improvements in economic activity. This predictive outcome demonstrates that, assuming the conclusion of the economic contraction, the United States economy will likely require several months to return to pre-contraction economic output, and additional months to restore stable labor demand. In light of the above, I have determined that the entry, through December 31, 2020, of certain aliens as immigrants and nonimmigrants would be detrimental to the interests of the United States.

NOW, THEREFORE, I, DONALD J. TRUMP, President of the United States, by the authority vested in me by the Constitution and the laws of the United States of America, including sections 212(f) and 215(a) of the Immigration and Nationality Act (INA) (8 U.S.C. 1182(f) and 1185(a)) and section 301 of title 3, United States Code, hereby find that the entry into the United States of persons described in section 1 of Proclamation 10014, except as provided in section 2 of Proclamation 10014, and persons described in section 2 of this proclamation, except as provided for in section 3 of this proclamation, would be detrimental to the interests of the United States, and that their entry should be subject to certain restrictions, limitations, and exceptions. I therefore hereby proclaim the following:

**Section 1**. *Continuation of Proclamation 10014.* (a) Section 4 of Proclamation 10014 is amended to read as follows:

"**Sec. 4**. *Termination.* This proclamation shall expire on December 31, 2020, and may be continued as necessary. Within 30 days of June 24, 2020, and every 60 days thereafter while this proclamation is in effect, the Secretary of Homeland Security shall, in consultation with the Secretary of State and the Secretary of Labor, recommend any modifications as may be necessary."

(b) This section shall be effective immediately.

**Sec. 2**. *Suspension and Limitation on Entry.* The entry into the United States of any alien seeking entry pursuant to any of the following nonimmigrant visas is hereby suspended and limited, subject to section 3 of this proclamation:

(a) an H–1B or H–2B visa, and any alien accompanying or following to join such alien;

(b) a J visa, to the extent the alien is participating in an intern, trainee, teacher, camp counselor, au pair, or summer work travel program, and any alien accompanying or following to join such alien; and

(c) an L visa, and any alien accompanying or following to join such alien.

**Sec. 3.** *Scope of Suspension and Limitation on Entry.* (a) The suspension and limitation on entry pursuant to section 2 of this proclamation shall apply only to any alien who:

(i) is outside the United States on the effective date of this proclamation;

(ii) does not have a nonimmigrant visa that is valid on the effective date of this proclamation; and

(iii) does not have an official travel document other than a visa (such as a transportation letter, an appropriate boarding foil, or an advance parole document) that is valid on the effective date of this proclamation or issued on any date thereafter that permits him or her to travel to the United States and seek entry or admission.

(b) The suspension and limitation on entry pursuant to section 2 of this proclamation shall not apply to:

(i) any lawful permanent resident of the United States;

(ii) any alien who is the spouse or child, as defined in section 101(b)(1) of the INA (8 U.S.C. 1101(b)(1)), of a United States citizen;

(iii) any alien seeking to enter the United States to provide temporary labor or services essential to the United States food supply chain; and

(iv) any alien whose entry would be in the national interest as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees.

**Sec. 4.** *Implementation and Enforcement.* (a) The consular officer shall determine, in his or her discretion, whether a nonimmigrant has established his or her eligibility for an exception in section 3(b) of this proclamation. The Secretary of State shall implement this proclamation as it applies to visas pursuant to such procedures as the Secretary of State, in consultation with the Secretary of Homeland Security and the Secretary of Labor, may establish in the Secretary of State's discretion. The Secretary of Homeland Security shall implement this proclamation as it applies to the entry of aliens pursuant to such procedures as the Secretary of Homeland Security, in consultation with the Secretary of State, may establish in the Secretary of Homeland Security's discretion.

(i) The Secretary of State, the Secretary of Labor, and the Secretary of Homeland Security shall establish standards to define categories of aliens covered by section 3(b)(iv) of this proclamation, including those that: are critical to the defense, law enforcement, diplomacy, or national security of the United States; are involved with the provision of medical care to individuals who have contracted COVID–19 and are currently hospitalized; are involved with the provision of medical research at United States facilities to help the United States combat COVID–19; or are necessary to facilitate the immediate and continued economic recovery of the United States. The Secretary of State and the Secretary of Homeland Security shall exercise the authority under section 3(b)(iv) of this proclamation and section 2(b)(iv) of Proclamation 10014 to exempt alien children who would as a result of the suspension in section 2 of this proclamation or the suspension in section 1 of Proclamation 10014 age out of eligibility for a visa.

(ii) Aliens covered by section 3(b)(iv) of this proclamation, under the standards established in section 4(a)(i) of this proclamation, shall be identified by the Secretary of State, the Secretary of Homeland Security, or their respective designees, in his or her sole discretion.

(b) An alien who circumvents the application of this proclamation through fraud, willful misrepresentation of a material fact, or illegal entry shall be a priority for removal by the Department of Homeland Security.

(c) Nothing in this proclamation shall be construed to limit the ability of an individual to seek asylum, refugee status, withholding of removal,

or protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, consistent with the laws of the United States.

**Sec. 5.** *Additional Measures.* (a) The Secretary of Health and Human Services, through the Director of the Centers for Disease Control and Prevention, shall, as necessary, provide guidance to the Secretary of State and the Secretary of Homeland Security for implementing measures that could reduce the risk that aliens seeking admission or entry to the United States may introduce, transmit, or spread SARS–CoV–2 within the United States.

(b) The Secretary of Labor shall, in consultation with the Secretary of Homeland Security, as soon as practicable, and consistent with applicable law, consider promulgating regulations or take other appropriate action to ensure that the presence in the United States of aliens who have been admitted or otherwise provided a benefit, or who are seeking admission or a benefit, pursuant to an EB–2 or EB–3 immigrant visa or an H–1B nonimmigrant visa does not disadvantage United States workers in violation of section 212(a)(5)(A) or (n)(1) of the INA (8 U.S.C. 1182(a)(5)(A) or (n)(1)). The Secretary of Labor shall also undertake, as appropriate, investigations pursuant to section 212(n)(2)(G)(i) of the INA (8 U.S.C. 1182(n)(2)(G)(i)).

(c) The Secretary of Homeland Security shall:

(i) take appropriate action, consistent with applicable law, in coordination with the Secretary of State, to provide that an alien should not be eligible to apply for a visa or for admission or entry into the United States or other benefit until such alien has been registered with biographical and biometric information, including but not limited to photographs, signatures, and fingerprints;

(ii) take appropriate and necessary steps, consistent with applicable law, to prevent certain aliens who have final orders of removal; who are inadmissible or deportable from the United States; or who have been arrested for, charged with, or convicted of a criminal offense in the United States, from obtaining eligibility to work in the United States; and

(iii) as soon as practicable, and consistent with applicable law, consider promulgating regulations or take other appropriate action regarding the efficient allocation of visas pursuant to section 214(g)(3) of the INA (8 U.S.C. 1184(g)(3)) and ensuring that the presence in the United States of H–1B nonimmigrants does not disadvantage United States workers.

**Sec. 6.** *Termination.* This proclamation shall expire on December 31, 2020, and may be continued as necessary. Within 30 days of the effective date of this proclamation and every 60 days thereafter while this proclamation is in effect, the Secretary of Homeland Security shall, in consultation with the Secretary of State and the Secretary of Labor, recommend any modifications as may be necessary.

**Sec. 7.** *Effective Date.* Except as provided in section 1 of this proclamation, this proclamation is effective at 12:01 a.m. eastern daylight time on June 24, 2020.

**Sec. 8.** *Severability.* It is the policy of the United States to enforce this proclamation to the maximum extent possible to advance the interests of the United States. Accordingly:

(a) if any provision of this proclamation, or the application of any provision to any person or circumstance, is held to be invalid, the remainder of this proclamation and the application of its provisions to any other persons or circumstances shall not be affected thereby; and

(b) if any provision of this proclamation, or the application of any provision to any person or circumstance, is held to be invalid because of the lack of certain procedural requirements, the relevant executive branch officials shall implement those procedural requirements to conform with existing law and with any applicable court orders.

**Sec. 9**. *General Provisions.* (a) Nothing in this proclamation shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This proclamation shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This proclamation is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

IN WITNESS WHEREOF, I have hereunto set my hand this twenty-second day of June, in the year of our Lord two thousand twenty, and of the Independence of the United States of America the two hundred and forty-fourth.

[FR Doc. 2020–13888
Filed 6–24–20; 11:15 am]
Billing code 3295–F0–P

**Federal Register** / Vol. 85, No. 128 / Thursday, July 2, 2020 / Presidential Documents   **40085**

# Presidential Documents

**Proclamation 10054 of June 29, 2020**

## Amendment to Proclamation 10052

**By the President of the United States of America**

**A Proclamation**

By the authority vested in me as President by the Constitution and the laws of the United States of America, including sections 212(f) and 215(a) of the Immigration and Nationality Act (8 U.S.C. 1182(f) and 1185(a)) and section 301 of title 3, United States Code, I hereby amend Proclamation 10052 of June 22, 2020 (Suspension of Entry of Immigrants and Non-immigrants Who Present a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak), as follows:

**Section 1**. *Amendment.* Section 3(a)(ii) is amended to read as follows:

"(ii) does not have a nonimmigrant visa, of any of the classifications specified in section 2 of this proclamation and pursuant to which the alien is seeking entry, that is valid on the effective date of this proclamation; and"

**Sec. 2**. *General Provisions.* (a) Nothing in this proclamation shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This proclamation shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This proclamation is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

IN WITNESS WHEREOF, I have hereunto set my hand this twenty-ninth day of June, in the year of our Lord two thousand twenty, and of the Independence of the United States of America the two hundred and forty-fourth.

[FR Doc. 2020–14510
Filed 7–1–20; 11:15 am]
Billing code 3295–F0–P

UNCLASSIFIED
~~SBU~~



| | |
|---|---|
| **MRN:** | 20 STATE 30920 |
| **Date/DTG:** | Mar 20, 2020 / 200027Z MAR 20 |
| **From:** | SECSTATE WASHDC |
| **Action:** | ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE *ROUTINE* |
| **E.O.:** | 13526 |
| **TAGS:** | CMGT, CASC, CVIS, AMGT, AMED, AEMR, ASEC |
| **Captions:** | SENSITIVE |
| **Reference:** | 20 STATE 28420 |
| **Subject:** | (U) Suspension of All Routine Visa Services due to COVID-19 Pandemic |

1. (U) SUMMARY:  All posts and AIT are directed to immediately suspend all routine nonimmigrant and immigrant visa services due to the COVID-19 pandemic.  Posts and AIT should continue to provide mission-critical and emergency visa services.  All posts and AIT are directed to prioritize services for U.S. citizens.  END SUMMARY.

2. (U) This ALDAC instructs all posts and AIT to immediately suspend all routine visa services until further notice.  Posts and AIT should continue to provide the visa services described below, to the extent that staff who are required to report to posts for the performance of mission-critical or emergency services are able to do so.

3. (U) Pending further guidance, some examples of mission-critical visa services include:
   - Adoption (only for cases where the PAP is already in-country),
   - Age-Out IV cases,
   - Diplomats and officials,
   - H-2 visas,
   - Medical emergencies,
   - SQ/SI SIV cases, and
   - Other purposes of travel identified by post's senior consular managers or COM as mission-critical.

4. (U) The exceptions to the Presidential Proclamations may also be used as a guide for additional mission-critical or emergency travelers, even in those areas not covered by the Proclamations.  See current guidance in REF.  In determining the use of scarce resources, posts may want to consider the purpose of travel (e.g., an alien spouse accompanying an evacuating U.S. citizen is mission-critical).

5. (U) Posts and AIT may continue processing interview waiver cases and immigrant visa 221(g) cases not requiring the applicant to come in for an interview as resources allow.

6. (U) NVC and KCC will suspend most immigrant/diversity visa pre-processing; any immigrant visa applicants whose appointments must be cancelled should be rescheduled by post at a later date once post resumes normal operations. NVC will continue to process age-out and adoption cases for action at post as resources are available. Posts and AIT should not designate an alternative IV processing post at this time. Post may request via NVCExpedite@state.gov that NVC limit expedite inquiries to those with supporting documentation of urgent medical or humanitarian circumstances. Posts and AIT should contact NVCPost@state.gov to make other adjustments to NVC procedures as appropriate.

7. (U) Unless otherwise prohibited, IV processing posts should continue to run the end of month reports in IVO; end of day reports do not have to be run on a daily basis if posts are not adjudicating IVs, but should still be run on a regular basis.

8. (U) Posts and AIT should review expedited appointment requests through their GSS system and public email and determine whether a case meets one of the exceptions outlined in the Presidential Proclamations. National interest exceptions should be rare – for example, in the case of urgent lifesaving medical treatment. Contact your post liaison in VO/F immediately upon receipt of a credible request for a national interest waiver.

9. (U) **DNA Requests:** All posts and AIT should stop scheduling and collecting DNA samples for all visa, ACS, and USCIS DNA collection requests until routine services resume.

10. (SBU)



11. (U) **GSS Posts:** The GSS vendors stand ready to assist posts with cancelling non-emergency visa appointments. The GSS Program Team, in concert with VO, has provided both vendors with template language for email cancellation notifications and to post on your GSS website. You may only adapt that template with post-specific details, such as the date of reduction in service and visa classes affected. The GSS vendors will continue to provide website and call center services, as well as to collect fees and support appointment scheduling. We suggest you lock/close appointments for several weeks and open up some appointments in the summer. You should continue to schedule emergency appointments using the GSS standard procedure. Please alert GSS_Program_Team@state.gov if you have any questions.

12. (U) The global template which posts and AIT may use on their GSS websites, as provided to the GSS vendors is as follows. AIT should modify as appropriate for Taiwan.

"Information for visa applicants regarding novel coronavirus:  As of x date, the United States Embassy and/or Consulates in x country/post name is/are cancelling/suspending routine immigrant and/or nonimmigrant visa appointments. [If applicable] From x date, the U.S. Embassy/Consulate is not accepting applications by/through [Interview Waiver, Renewal by Mail, Drop Box, Mail-in] for [list all categories post accepts].  We will resume routine visa services as soon as possible but are unable to provide a specific date at this time.  The MRV fee is valid and may be used for a visa appointment in the country where it was purchased within one year of the date of payment.  If you have an urgent matter and need to travel immediately, please follow the guidance provided at [GSS Vendors email, website link, or call center number] to request an emergency appointment.

13. (SBU)



14. (U) **Prioritizing U.S. citizens:**  During this period of rapid situational changes, many posts worldwide have already moved consular resources to support ACS units.  Many posts have seen large increases in inquiries, both telephonically and by email.  Utilize the entire consular section staff to help triage and answer inquiries.  Be sure to reach out to CA should post need assistance in fielding inquiries.

15. (U) **Crisis Training:**  With the global suspension of routine visa services during the COVID-19 pandemic, CA understands that posts are working at capacity to answer correspondence and provide consular services.  To the extent posts can find the time, CA/OCS encourages consular sections to sharpen their crisis preparedness and training.  CA/OCS/ACS has an excellent SharePoint site that has several off-the-shelf consular focused exercises and skill drills.  Under Crisis Preparation, find the Training Continuum, which will help define post's training needs.  The Training Exercise Link includes Skill Drills addressing CTF, 5528 usage, and the Privacy Act.  Under the same link are off-the-shelf tabletop exercises that pose crisis-related questions, processes, and procedures to help post contingency plan for a crisis.  Please view Notes from the Field, where posts share lessons learned from crisis responses.  Reach out to CA-Crisis-Mgt@state.gov if you have any questions.

~~SENSITIVE BUT UNCLASSIFIED~~

**Signature:**          Pompeo

**Drafted By:**          CA:Various Drafters
**Cleared By:**          CA:Brownlee, Ian G
                        CA:███████
                        CA:Benning, Douglass R
                        CA/EX:███████
                        CA/EX/PAS:███████



CA/VO:Ramotowski, Edward J
CA/VO/F██
CA/VO/SAC██
CA/VO/SAC██
CA/VO/I██
CA/VO/F/ET██
CA/VO/F/OI██
CA/VO/F/IE██
CA/VO/DO██
CA/VO/DO/KCC██
CA/VO/DO/NVC██
CA/VO/DO/DL██
CA/VO/L██
CA/VO/L██
CA/OCS/CI██
CA/OCS/CI██
CA/FPP██
CONS██
CA/OCS/L██
CA/P██
CA/P██
CA/P██
CA/P██
CA/P██
CA/C██
CA/PPT:Arndt, Rachel M
AF/EX██
AF/EX██
EAP/EX██
EUR-IO/EX██
NEA-SCA/EX██
WHA/EX██
CT/TSI██
D██
P██
M██
H/RGF██
L/CA██
L/EAP██
R██
GPA/MD/IM██
SES██

**Approved By:**    CA:Risch, Carl C
**Released By:**    CA_FO██
**XMT:**    BASRAH, AMCONSUL; CARACAS, AMEMBASSY; SANAA,
AMEMBASSY; ST PETERSBURG, AMCONSUL; VLADIVOSTOK,
AMCONSUL; ALEXANDRIA, AMCONSUL

**Dissemination Rule:**    Archive Copy

**UNCLASSIFIED**



**UNCLASSIFIED**
~~SBU~~



| | |
|---|---|
| **MRN:** | 20 STATE 41350 |
| **Date/DTG:** | Apr 25, 2020 / 250001Z APR 20 |
| **From:** | SECSTATE WASHDC |
| **Action:** | ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE *ROUTINE* |
| **E.O.:** | 13526 |
| **TAGS:** | CMGT, CVIS |
| **Captions:** | SENSITIVE |
| **Reference:** | A) 20 STATE 22420 |
| | B) 20 STATE 27936 |
| | C) 20 STATE 28420 |
| | D) 20 STATE 30920 |
| | E) 20 STATE 34630 |
| | F) 20 STATE 37592 |
| **Subject:** | PRESIDENTIAL PROCLAMATION SUSPENDING ENTRY OF IMMIGRANTS WHO PRESENT RISK TO THE U.S. LABOR MARKET DURING THE ECONOMIC RECOVERY FOLLOWING THE COVID-19 OUTBREAK |

1. (U) SUMMARY:  On April 22, 2020, the President issued a Presidential Proclamation (P.P.) titled "Suspending Entry of Immigrants Who Present Risk to the U.S. Labor Market During the Economic Recovery Following the COVID-19 Outbreak."  This P.P. is effective at 11:59 p.m. EDT on April 23, 2020 and expires in 60 days, unless continued by the President.  The earlier COVID-19-related proclamations, P.P.s 9984, 9992, 9993, and 9996, as well as the COVID-19-related guidance set forth in Refs A through F, remain in effect, subject to the additional guidance below.  All posts and AIT have already suspended routine nonimmigrant and immigrant visa services due to the COVID-19 pandemic, but continue to provide mission-critical and emergency visa services.  Posts should continue to provide mission-critical and emergency visa services for applicants meeting the exception criteria to the COVID-19 P.P.s, including this new P.P., to the extent they are able, subject to local conditions and restrictions. Providing emergency services to U.S. citizens remains the top priority for consular sections. END SUMMARY.

2. (U) The President issued this P.P. pursuant to his authority under sections 212(f) and 215(a) of the Immigration and Nationality Act (INA) and other authorities, to suspend the entry into the United States of aliens as immigrants, except those set forth in paragraph 3 below, for 60 days. This suspension and limitation on entry only applies to aliens who:  (a) are outside the United States on April 23, 2020; (b) do not possess an immigrant visa that is valid on April 23, 2020; and (c) do not have an official travel document other than a visa (such as a transportation letter, boarding foil, or advance parole document) that is valid on April 23, 2020 or issued on any date

thereafter that permits him or her to travel to the United States and seek entry or admission. The effective date of the new proclamation is 11:59 p.m., Eastern Daylight Time, April 23, 2020. This proclamation will expire on June 22, 2020, 60 days from its effective date of April 23, 2020, unless continued by the President.

3.  (U) Under this proclamation, in addition to the carve-outs for aliens in the United States or possessing a valid immigrant visa or other travel document on the effective date, as described in paragraph 2, the suspension of entry also does not apply to:

    a.  Any lawful permanent resident of the United States;

    b.  Any alien seeking to enter the United States:  on an immigrant visa as a physician, nurse, or other healthcare professional; to perform medical research or other research intended to combat the spread of COVID-19; or to perform work essential to combating, recovering from, or otherwise alleviating the effects of the COVID-19 outbreak, as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees; and any spouse and unmarried children under 21 years old of any such alien who are accompanying or following to join the alien;

    c.  Any alien applying for a visa to enter the United States pursuant to the EB-5 Immigrant Investor Program;

    d.  Any alien who is the spouse of a U.S. citizen;

    e.  Any alien who is under 21 years old and is the child of a U.S. citizen, or who is a prospective adoptee seeking to enter the United States pursuant to the IR-4 or IH-4 visa classifications;

    f.  Any alien whose entry would further important U.S. law enforcement objectives, as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees, based on a recommendation of the Attorney General or his designee;

    g.  Any member of the U.S. Armed Forces and any spouse and children of a member of the U.S. Armed Forces;

    h.  Any alien seeking to enter the United States pursuant to a Special Immigrant Visa in the SI or SQ classification, subject to such conditions as the Secretary of State may impose, and any spouse and children of any such individual; or

    i.  Any alien whose entry would be in the national interest, as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees.

4.  (SBU) When issuing a visa pursuant to an exception listed above, please thoroughly document which exception applies to the applicant in your case notes.  Visas should be annotated to state, "Exception under PP on Risk to Labor Market."   Exceptions listed in

paragraph 3 sub-paragraphs a, c, d, e, and h are self-evident based on the immigrant visa category – in those cases, normal case notes (and above annotation) will suffice. For the exception listed in paragraph 3.g., officers should indicate in the case note the applicant's military status.

5. (SBU) Paragraph 3.b., above, describes the exception covering aliens applying for immigrant visas as physicians, nurses, and other healthcare professionals, or to perform medical research or other research intended to combat the spread of COVID-19. You may determine eligibility for those exceptions based on the DHS-approved petition and any other relevant information in the visa application, as well as information elicited during the visa interview, which constitutes part of the application. You may consult with consular managers at post as needed when assessing eligibility for such exceptions, including to ensure consistency in determinations.

6. (SBU) Paragraph 3.b., above, also describes the exception for aliens who would "perform work essential to combating, recovering from, or otherwise alleviating the effects of the COVID-19 outbreak." Determinations under this aspect of the exception require Department approval. If you believe an immigrant visa applicant may be eligible for this exception, you must follow the following procedure:

   a. The adjudicating officer identifies a case that appears to fall within this section and gains consular manager concurrence.
   b. The consular section sends information about the applicant's case, including a detailed explanation of the work the applicant intends to perform and relevant qualifications, to [CA-VO-F-IE@state.gov](mailto:CA-VO-F-IE@state.gov).
   c. Post, in conjunction with the VO/F analyst, drafts and submits a memorandum and transmittal letter to the Secretary's designee to approve the exception.
   d. VO/F notifies post of the Secretary's or his designee's decision regarding the exception.
   e. If the exception request is approved, post issues the visa and annotates it per the instructions in paragraph 4.

7. (SBU) The national interest (i) and law enforcement (f) exceptions must be determined by the Secretary of State, Secretary of Homeland Security, or their respective designee. If you believe an immigrant visa applicant is covered by this P.P., the applicant's travel to the United States would be in the national interest or would further important U.S. law enforcement objectives, and the applicant cannot wait until the expiration of the P.P. before traveling to the United States, you must follow the following procedure:

   a. The adjudicating officer, normally with input from USG counterparts, identifies a case in which a national interest or law enforcement exception may apply and gains consular manager concurrence.
   b. The consular section sends information about the applicant's case, including the purpose of travel, itinerary, and justification, to [CA-VO-F-IE@state.gov](mailto:CA-VO-F-IE@state.gov).
   c. Post, in conjunction with the VO/F analyst, drafts and submits a memorandum and transmittal letter to the Secretary's designee to approve the exception, with concurrence from the regional bureau as warranted – and in the case of a law

enforcement exception, with the recommendation of the Attorney General or his designee.

    d. VO/F notifies post of the Secretary's or his designee's decision regarding the exception.

    e. If the exception request is approved, post issues the visa and annotates it per the instructions in paragraph 4.

8. (~~SBU~~) Requests for the national interest and law enforcement exceptions are expected to be rare, and the process may take several days. Due to the temporary nature of the proclamation, it is expected that applicants who are eligible for national interest and law enforcement exceptions will have an urgent need for travel. Any travelers should be aware that they may be subject to a 14-day quarantine upon arrival in the United States. Examples of possible national interest exceptions include medical emergencies, age-out cases where the beneficiary subject to aging out is the principal applicant or accompanying or following to join a principal applicant who falls under an exception to this P.P., SE SIVs, or other cases where urgent travel is necessary and the immigrant visa is otherwise issuable.

9. (SBU) Posts and AIT may continue to adjudicate immigrant visa 221(g) cases ███████ ███████ and issue the associated visas, for applicants who are covered by an exception to this P.P. as resources allow. In addition, posts and AIT may issue replacement visas for applicants possessing a valid immigrant visa on April 23, 2020 who will be or were unable to use that immigrant visa during its validity period because of the COVID-19 outbreak, in accordance with the guidance in 9 FAM 504.10-5.

10. (~~SBU~~) **Appointment Scheduling:** Due to the worldwide suspension in routine visa services announced in mid-March (REF D), NVC and KCC have already suspended transmission to posts of most immigrant and diversity visa cases. Scheduling of any appointments by NVC or KCC will resume only when a post is authorized to resume routine services. Posts may continue to schedule mission critical and emergency immigrant visa interviews as resources allow and as described in REF D, but should applicants not qualify for an exception under the Proclamation, including in the national interest, post should refuse the case pursuant to INA 212(f) using refusal code ███████ Once the proclamation is no longer in effect, an applicant refused under ███████ may be considered for reconsideration of the refusal; if the case is reconsidered within one year of the ███████ refusal, the applicant is not required to file a new visa application or pay new fees. As the ███████ refusal code is not yet in CLASS, posts should contact VO/F/IE if it has a case scheduled for interview while the code is not available. VO will inform posts by email when the code is available in CLASS. NVC will continue to process mission-critical cases, such as adoption and age-out cases, for action at post as resources are available. Mission critical cases, such as age-outs, that do not already fall under an explicit exception may be considered on a case-by-case basis under the national interest exception. GSS vendors at supported posts will continue to provide immigrant visa services, including collecting fees, website support, and call center services. Posts and AIT should also review expedited appointment requests through their GSS system and public email and determine whether a case meets one of the exceptions set forth in this new P.P. and the prior COVID-19-related P.P.s. Posts and AIT may contact their NVC liaison at NVCPost@state.gov

to make adjustments to NVC expedite and scheduling procedures as needed.

11. (~~SBU~~) Posts and AIT should not pursue revocations for individuals who have already been issued immigrant visas and are planning to travel to the United States before June 22, 2020, as aliens who already have an immigrant visa or other official travel document valid on April 23, 2020 are not subject to this suspension on entry.

12. (~~SBU~~) **Nonimmigrant Visas:** This P.P. does not suspend the entry of aliens as nonimmigrants, which includes K visa holders, nor does it suspend the entry of lawful permanent residents, which includes SB-1 applicants, nor temporary agricultural workers, which includes H2A visa holders. However, within 30 days of April 23, 2020, the Secretary of Labor and Secretary of Homeland Security, in consultation with the Secretary of State, will review nonimmigrant programs and recommend other measures appropriate to stimulate the U.S. economy and ensure the prioritization, hiring, and employment of U.S. workers. If there are any changes that affect nonimmigrant visas, the Visa Office will provide further guidance.

13. (~~SBU~~) Posts with questions regarding this guidance should contact their post liaison officer in VO/F.

~~SENSITIVE BUT UNCLASSIFIED~~

| | |
|---|---|
| **Signature:** | Pompeo |

| | |
|---|---|
| **Drafted By:** | CA/VO/F█████████ |
| **Cleared By:** | CA█████████ |
| | CA█████████ |
| | CA/VO:Ramotowski, Edward J |
| | CA/VO█████████ |
| | CA/VO/F█████████ |
| | CA/VO/F/IE█████████ |
| | CA/VO/L█████████ |
| | CA/VO/DO█████████ |
| | CA/VO/DO/NVC█████████ |
| | L/CA█████████ |
| | CA/P█████████ |
| | CA/P█████████ |
| | CA/EX█████████ |
| | CA/EX/PAS█████████ |
| | M█████████ |
| | P█████████ |
| | D█████████ |
| | GPA█████████ |
| | R█████████ |
| | AF/EX:Reynolds,█████████ |
| | EUR-IO/EX/PMO█████████ |
| | NEA-SCA/EX█████████ |
| | WHA/EX█████████ |
| | EAP/EX█████████ |

CGRCU: Info

SES ███████

**Approved By:**          CA:Risch, Carl C

**Released By:**          CA_FO███████████

**XMT:**          BASRAH, AMCONSUL; CARACAS, AMEMBASSY; SANAA,
AMEMBASSY; ST PETERSBURG, AMCONSUL; VLADIVOSTOK,
AMCONSUL; ALEXANDRIA, AMCONSUL

**Dissemination Rule:**          Archive Copy

### UNCLASSIFIED
~~SBU~~

**UNCLASSIFIED**



| | |
|---|---|
| **MRN:** | 20 STATE 42180 |
| **Date/DTG:** | Apr 28, 2020 / 282239Z APR 20 |
| **From:** | SECSTATE WASHDC |
| **Action:** | ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE *ROUTINE* |
| **E.O.:** | 13526 |
| **TAGS:** | CVIS, CMGT |
| **Reference:** | A) 20 State 30920 |
| | B) 20 State 32972 |
| | C) 20 State 40968 |
| | D) 20 State 37592 |
| | E) 20 State 41350 |
| | F) 20 State 28420 |
| **Subject:** | Ongoing Suspension of All Routine Visa Services due to COVID-19 Pandemic |

1. (U) The March 20 suspension of all routine visa services (Ref A) remains in place. Posts do not have the authority to resume normal visa operations even if the host country has lifted most restrictions. The Department, in consultation with other agencies, as appropriate, is developing plans for the resumption of services at overseas posts, balancing the full range of interests, including: protecting Department personnel overseas; processing capacity at posts and in the Visa Office; conditions in the United States, including stay-at-home orders in many states; and economic considerations. CA has established a working group to plan for the eventual resumption of consular services and to coordinate guidance to posts. CA/EX regional analysts will issue a survey to posts requesting information on staffing, operational status, and related issues. Posts are requested to use this recurring survey to report changes in operating status and conditions that may favor the resumption of visa services. No post should resume routine visa operations until given a specific instruction to do so.

2. (U) Categories of nonimmigrant visas which are considered mission-critical and MAY be processed during the suspension of routine operations if local conditions and resources allow are:

- Diplomats and Officials.
- H-2 visas, especially those associated with food production (e.g., agriculture H-2A and seafood production H-2B are a priority). See additional instructions in Refs B and C.
- Medical Professionals (e.g., J-1 Alien Physicians or other employment categories). See additional instructions in Ref D.
- Air and Sea Crew (i.e. C1/D or B1 for lightering, private air/sea crew, etc.).
- Medical emergencies.
- Other emergencies or mission critical purposes of travel as determined on a case-by-case

basis by post management.

Although not mission critical, posts may continue to adjudicate interview waiver cases as conditions and resources allow.  GSS posts must maintain open appointments (for an appropriate time in the future) so that applicants with legitimate urgent travel needs can schedule appointments and/or request expedited appointments.

3. (U) The issuance of many immigrant visas (IV) was suspended by Presidential Proclamation (IVPP) effective 11:59 EDT on April 23 (see Ref E for additional instructions).  Only IV applicants that post believes may meet an exception to the PP, including the national interest exception, and that constitute a mission-critical category should be adjudicated at this time. Posts may forward a mission-critical or emergency case for consideration under the national interest exception should it not clearly fall under another excepted category under the Proclamation.  The National Visa Center will continue to expedite cases for post's consideration, such as age-out cases;  posts should continue to adjudicate mission-critical and emergency cases as conditions and resources allow but may not issue any IVs that are not also excepted under the PP.  Categories of immigrant visas which are considered mission-critical and which MAY be adjudicated during the suspension of routine services if local conditions and resources allow are:

- Adoptions (IR/CR-2, IR/IH-3, and IR/IH-4s are all excepted from the IVPP).
- Age-out cases.
- SQ/SI SIVs (this category is excepted from the IVPP).

Other emergencies or mission-critical purposes of travel as determined on a case-by-case basis by post management.  Although not mission-critical, posts may continue to adjudicate 221(g) cases as resources allow.

4. (U) Posts are reminded that NIV and IV applicants who have been physically present in the People's Republic of China (excluding the Special Administrative Regions of Hong Kong and Macau), Iran, the 26 Schengen area countries, the United Kingdom, or the Republic of Ireland, excluding overseas territories outside of Europe,  in the 14 days preceding entry or attempted entry into the United States remain ineligible unless they meet criteria for an exception (see Ref F for additional instruction that applies to all four presidential proclamations).  The U.S. land borders with Canada and Mexico also remain restricted to essential travel only.

| **Signature:** | Pompeo |
|---|---|

| **Drafted By:** | CA/VO/F: █████ |
|---|---|
| **Cleared By:** | CA: ██████ |
| | CA: ███ |
| | CA/VO:Ramotowski, Edward J |
| | CA/VO: ████████ |
| | CA:Benning, Douglass R |
| | CA/EX: ████ |
| | CA/EX/PAS: ██████ |
| | CA/EX/PAS: ████████ |

CA/P
CA/P
CA/VO/F
CA/VO/L
CA/VO/DO:Nantais, Joel D
CA/VO/DO
CA/VO/DO/NVC
CA/VO/F/OI
L/CA
D
M
P
AF/EX
EAP/EX
EUR-IO/EX/PMO
NEA-SCA/EX
WHA/EX
R/GPA
CONS
R
SES

**Approved By:**    CA:Risch, Carl C
**Released By:**    CA_FO
**XMT:**            BASRAH, AMCONSUL; CARACAS, AMEMBASSY; SANAA,
                   AMEMBASSY; ST PETERSBURG, AMCONSUL; VLADIVOSTOK,
                   AMCONSUL; ALEXANDRIA, AMCONSUL

**Dissemination Rule:**    Archive Copy

**UNCLASSIFIED**

**UNCLASSIFIED**



| | |
|---|---|
| **MRN:** | 20 STATE 54966 |
| **Date/DTG:** | Jun 12, 2020 / 120039Z JUN 20 |
| **From:** | SECSTATE WASHDC |
| **Action:** | ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE *ROUTINE* |
| **E.O.:** | 13526 |
| **TAGS:** | CMGT, CVIS |
| **Reference:** | A) 20 STATE 30920 |
| | B) 20 STATE 42180 |
| | C) 20 STATE 41320 |
| **Subject:** | Mission-Critical Visa Services to Include IR1s and IR2s |

1.  The Department is adding to the prior list of examples of categories of visa services that should be considered mission-critical:  IR1, CR1, IR2, and CR2 visas for spouses and children of U.S. citizens.  These visa categories are excepted from all COVID-19-related Presidential Proclamations, including P.P. 10014 suspending issuance of certain immigrant visas, based on the terms of those proclamations. (Note, however, that P.P. 10014 limits the exception for children of U.S. citizens to those who are "under 21 years old", based on their actual age. Therefore, any IR2 or CR2 child who is over 21 and qualifies under CSPA must be refused ██████ unless the applicant is being refused under another ineligibility (see Ref C).) Workload and local conditions permitting, posts may adjudicate IR1, CR1, IR2, and CR2 visas, and reschedule these appointments previously cancelled in response to the suspension of routine services.  NVC can further support posts by transferring or scheduling additional caseload in these categories at posts' request.  Examples of mission critical IV cases now include IR1, CR1, IR2, CR2, IR/IH-3, IR/IH-4, SQ/SI-SIVs, and age-outs.

2.  Safety remains the Department's top priority.  Posts should only schedule cases supported by appropriate levels of staffing and protections for mission staff and the public.  As medical exams are required for immigrant visa applicants, any anticipated expansion of IV workload in the consular section may necessitate consultation with panel physicians to ensure they have a corresponding capacity to increase their workload safely.  Post GSS providers should assess the ability to support local scheduling and document delivery services.

3.  The National Visa Center recently prioritized document review of IR/CR-1/2 cases to maximize available caseload for posts able to process these applications.  Posts may contact NVCAppointment@state.gov to provide available capacity using the standard format.  The earliest appointments should be at least eight business days after the date of the request to allow NVC time to schedule, transfer cases, and notify applicants.  Applicants will also need sufficient time to make appropriate travel plans and schedule medical exams.

| | |
|---|---|
| **Signature:** | Pompeo |

---

| | |
|---|---|
| **Drafted By:** | CA/VO/DO/NVC:  |
| **Cleared By:** | CA:Brownlee, Ian G |
| | CA: |
| | CA/VO:Ramotowski, Edward J |
| | CA/VO/F: |
| | CA/VO/F/IE: |
| | CA/VO/DO: |
| | CA/VO/L/A: |
| | CA/VO/L: |
| | CA/VO/DO/NVC: |
| | CA/P: |
| | L/CA: |
| | EUR/PGI: |
| | EUR-IO/EX/PMO: |
| | AF/EX: |
| | WHA/EX: |
| | NEA-SCA/EX: |
| | EAP/EX: |
| | M: |
| | P: |
| | SES: |
| **Approved By:** | CA:Risch, Carl C |
| **Released By:** | CA_FO: |
| **XMT:** | BASRAH, AMCONSUL; CARACAS, AMEMBASSY; SANAA, AMEMBASSY; ST PETERSBURG, AMCONSUL; VLADIVOSTOK, AMCONSUL; ALEXANDRIA, AMCONSUL |

---

| | |
|---|---|
| **Dissemination Rule:** | Archive Copy |

**UNCLASSIFIED**

**UNCLASSIFIED**
~~SBU~~



| | |
|---|---|
| **MRN:** | 20 STATE 61886 |
| **Date/DTG:** | Jun 30, 2020 / 302128Z JUN 20 |
| **From:** | SECSTATE WASHDC |
| **Action:** | ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE *ROUTINE* |
| **E.O.:** | 13526 |
| **TAGS:** | CMGT, CVIS |
| **Captions:** | SENSITIVE |
| **Reference:** | A) 20 STATE 41350 |
| | B) 20 STATE 22420 |
| | C) 20 STATE 27936 |
| | D) 20 STATE 28420 |
| | E) 20 STATE 30920 |
| | F) 20 STATE 34630 |
| | G) 20 STATE 37592 |
| | H) 20 STATE 49966 |
| | I) 20 STATE 40968 |
| **Subject:** | IMPLEMENTATION PROCEDURES AND GUIDANCE FOR PRESIDENTIAL PROCLAMATION 10052 SUSPENDING ENTRY OF ALIENS WHO PRESENT A RISK TO THE U.S. LABOR MARKET FOLLOWING THE CORONAVIRUS OUTBREAK |

1.  (U) SUMMARY:  On June 22, 2020, the President issued Presidential Proclamation 10052 (P.P. 10052) titled "Suspension of Entry of Aliens Who Present A Risk to the U.S. Labor Market Following the Coronavirus Outbreak."  P.P. 10052 extended the suspension of entry for certain immigrant visa (IV) categories previously suspended under Presidential Proclamation 10014, see Ref A, until December 31, 2020.  The guidance provided in Ref A remains in effect and is supplemented by IV-specific guidance included in this cable.  The provisions of  P.P. 10052 related to nonimmigrant (NIV) categories became effective at 12:01 a.m. EDT on June 24, 2020, and expire on December 31, 2020, unless continued by the President.  This P.P. effectively suspends issuance of certain H-1B, H-2B, J (for certain categories within the Exchange Visitor Program), and L NIVs.   No valid visas will be revoked under the proclamation.   The earlier COVID-19-related proclamations, P.P.s 9984, 9992, 9993, and 9996 related to suspension of entry of individuals who were physically present in certain foreign jurisdictions with significant COVID-19 outbreaks, as well as the COVID-19-related guidance set forth in Refs B through H, remain in effect, subject to the additional guidance below.  All posts and AIT have already suspended routine NIV and IV services due to the COVID-19 pandemic, but continue to provide mission-critical and emergency visa services.  Posts should continue to provide mission-critical and emergency visa services for applicants meeting the exception criteria to the COVID-19 P.P.s, including this new P.P., to the extent they are able under conditions and restrictions.  Providing emergency services to U.S. citizens remains the top

priority for consular sections.  END SUMMARY.

2.  (U) **Immigrant Visas Applicants**:  On April 22, 2020, the President issued P.P. 10014 pursuant to his authority under sections 212(f) and 215(a) of the Immigration and Nationality Act (INA) and other authorities, to suspend the entry into the United States of aliens as immigrants, except those set forth in paragraph 3 of REF A.  This new proclamation, P.P. 10052, extended P.P 10014's suspension of entry for certain immigrants through December 31, 2020, and may be continued.  Consular officers should continue to refer to REF A for guidance on applying the proclamation to IV applicants, as well as the following paragraph:

UPDATES to Guidance in 20 STATE 41350 (REF A): Consular officers may issue replacement visas to aliens whose original IV was valid on April 23, 2020, in accordance with the guidance in 9 FAM 504.10-5.  Further, P.P. 10014 only excepts children of U.S. citizens under the age of 21; therefore IR/CR-2s who benefit from CSPA but are 21 years of age or older cannot be issued an IV while P.P. 10014 is in effect unless the applicant meets another exception.  NVC will continue to schedule IR/CR-2 cases despite this fact, as there is no easy way for NVC to differentiate a CSPA case in the system.  P.P. 10052 requires that IV applicants who would "age-out" of visa eligibility as a result of P.P. 10014 to be considered for a national interest exception.  Accordingly, Posts should continue to submit for consideration potential age out cases where the applicant is within two-months or less of his or her 21st birthday using the guidance in paragraph 7 of REF A.  Given the suspension on routine visa processing, posts may only schedule emergency and mission-critical IV cases which include (IR/CR1, IR/CR2, IR/IH3, IR/IH4, SQ/SI-SIVs, certain employment-based healthcare professionals, and cases involving an applicant who is aging out of eligibility).

3.  (U) **Nonimmigrant Visa Applicants:**  In addition, in P.P. 10052, the President determined that the admission of certain workers, including certain cultural and educational program participants, within several nonimmigrant visa categories also poses a risk of displacing and disadvantaging United States workers during the current recovery, and therefore effectively suspended issuance of **H-1B, H-2B, J (only for certain categories within the Exchange Visitor Program (EVP), and L visas, including derivative family members.**  The suspension of issuance of J visas applies to those applicants who will be participating in au pair, intern, trainee, teacher, camp counselor, or summer work travel programs, as well as accompanying derivative family members. P.P. 10052 does NOT suspend processing of J visa applications associated with any other J program.  The EVP categories NOT affected by P.P. 10052 are: alien physician, government visitor, international visitor, professor, research scholar, short-term scholar, specialist, secondary school student and college/university student.
Consular officers can identify a J visa applicant's program category by referring to block 4 of the DS-2019.  Any J visa applicant with a program category beginning with "Student" in block 4 of the DS-2019 - including program category "Student Intern" - is NOT affected by PP10052.  The suspension also does not apply to H-1B1 applicants under the Chile and Singapore Free Trade Agreements.  [Note: This Proclamation is not expected to affect exchange programs funded by the Bureau of Educational and Cultural Affairs (ECA), which generally do not fall into the program categories listed for suspension.  Questions regarding specific ECA programs and their corresponding exchange visitor categories may be directed to post's Public Affairs Section or ECA's Office of Policy (ECAPPolicy@state.gov).  End Note.]

4.  (U) The effective date of the P.P. 10052's restrictions on these NIV categories is 12:01 a.m., Eastern Daylight Time, June 24, 2020.  P.P. 10052 will expire on December 31, 2020, unless continued by the President.  Visas issued prior to June 24, 2020, are not subject to this Proclamation.  The suspension and limitation on entry <u>only</u> applies to an alien who meets all three conditions set out in section 3(a) of the proclamation.  The second of those conditions, at section 3(a)(ii), was amended by a proclamation updating P.P. 10052 that was signed by the President on June 29, 2020.  In accordance with that amendment, the three conditions that must be met for an alien to be covered by P.P. 10052 are that the alien:  (a) is outside the United States on June 24, 2020; (b) does not have a nonimmigrant visa, of any of the classifications specified in section 2 of P.P. 10052 (H-1B, H-2B, J [specified categories of the EVP], and L visas classification) and pursuant to which the alien is seeking entry, that is valid on June 24, 2020; and (c) does not have an official travel document other than a visa (such as a transportation letter, boarding foil, or advance parole document) that is valid on June 24, 2020, or issued on any date thereafter that permits him or her to travel to the United States and seek entry or admission.  When issuing an otherwise suspended NIV because the applicant does not meet all three of the above conditions, please thoroughly document the reason for your finding in your case notes.  Unlike some other proclamations where individuals with valid visas on the effective date were not subject to the proclamation, individuals with valid visas on the effective date are only not subject to the Proclamation when applying for entry on a visa that is in one of the categories of NIVs suspended by the PP.  In other words, someone with a valid H-1B, H-2B, L, or J visa can re-enter the United States until the expiration date of the visa.  Any future applications in those categories falls under the suspension applications (unless an exception applies).

5.  (U)  NIV Exceptions:  After a consular officer determines that an applicant is applying for one of the visa categories covered by P.P. 10052 (see paragraph 3) and is subject to P.P. 10052 (i.e. does not meet one of the three conditions listed at paragraph 4), then officers must consider whether the applicant may be eligible for an exception. P.P. 10052 exceptions from the suspension of entry are listed in section 3(b) of the proclamation:

   a.  Any lawful permanent resident of the United States;
   b.  Any alien who is the spouse or child, as defined in section 101(b)(1) of the INA of a United States citizen;

   c.  Any nonimmigrant alien seeking to enter the United States to provide temporary labor or services essential to the United States food supply chain; or

   d.  Any alien whose entry would be in the national interest, as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees.

6.  (~~SBU~~) P.P. 10052 specifies that the consular officer shall determine, in his or her discretion, whether an NIV applicant has established eligibility for an exception. When issuing an NIV pursuant to an exception listed above, please thoroughly document which exception applies to the applicant in your case notes.  Visas should be annotated to state, "Exception under PP on

Risk to Labor Market." Exceptions listed in paragraph 5.a. or 5.b, above, are self-evident; in those cases, normal case notes (and above annotation) will suffice. Additional guidance regarding the exception listed at paragraph 5.c. is discussed further in paragraph 7. An overview of the national interest exception under paragraph 5.d. is provided in paragraph 8; however, the Department will provide operational guidance regarding aliens who may qualify for a national interest exception by SEPTEL.

7. (~~SBU~~) **Essential to U.S. Food Supply**: Paragraph 5.c., above, describes the exception for aliens "seeking to enter the United States to provide temporary labor or services essential to the United States food supply chain." Based on consultations with DHS and DOL, VO understands consular officers may apply this exception only for applicants for H-2B nonimmigrant visas. You may determine eligibility for this exception through one of two documents scanned into the relevant petition application uploaded in PIMS:

a.) the USCIS-approved I-129 petition (see Part 5 under Job Title)
b.) the Form ETA-9142A, temporary labor certification approved by the U.S. Department of Labor (see the listed Job Title or SOC Occupation Title)

Consular officers should consult with consular managers as needed when assessing eligibility for such exceptions and to ensure consistency in determinations. Several labor categories within the H-2B classification (seafood processors, fish cutters, salmon roe technicians, farm equipment mechanics, agriculture equipment operators etc.) would fall within this exception. KCC, as part of its routine pre-screening, will also review the petition and labor certificate information and will enter <u>one</u> of the two following notes in the CEAC DS-160 to assist officers in this determination:

- Note 1: "Applicant's job title and SOC occupation title indicates the applicant is likely essential to US food supply chain and likely eligible for an exception to P.P. 10052, barring additional information provided in visa application or interview."
                                -OR-
- Note 2: "Applicant's job title and SOC occupation title indicates the applicant is NOT likely essential to US food supply chain under P.P. 10052."

However, bartenders, cooks, dishwashers, and waiters will generally be considered NOT essential to the U.S. food supply chain. For questions concerning whether a job category meets the definition of "essential" to the food supply chain, please contact your CA/VO/F analyst. If you determine that the H-2B application is NOT associated with labor or services essential the U.S. food supply chain, you will then need to evaluate whether the applicant might qualify for a "National Interest" exception. Similarly, if you identify an applicant for an H-1B, J, or L visa who intends to provide labor or services essential to the food supply, you should consider whether the applicant might benefit from national interest exception. As indicated in paragraph 6, the Department will provide separate guidance regarding aliens who may qualify for a national interest exception. Posts are also reminded that KCC continues to conduct employment verifications on all H-2B petitions (REF I). You must refuse all H-2B applications under INA 221(g) if the PIMS status reads, "Client Verification Pending."

8.  (SBU) Section 3(b)(iv) of P.P. 10052 excepts aliens from the proclamation if the Secretary of State, Secretary of Homeland Security, or their respective designees determine that the alien's entry would be in the national interest.  P.P. 10052 also requires the Secretaries of Labor, Homeland Security, and State to establish standards to define categories of aliens covered by the national interest exception, including those that: are critical to the defense, law enforcement, diplomacy, or national security of the United States; are involved with the provision of medical care to individuals who have contracted COVID-19 and are currently hospitalized; are involved with the provision of medical research at United States to help the United States combat COVID-19; or are necessary to facilitate the immediate and continued economic recovery of the United States.  The Department is coordinating with the Departments of Homeland Security and Labor on these standards and consulting these and other agencies on appropriate procedures for documenting the standards.  Guidance on when a visa applicant's entry into the United States will be considered to be in the national interest is forthcoming by SEPTEL.  Consular sections should identify cases with a potential national interest justification for future consideration and track this within the section, but must not issue a visa until a national interest exception is processed following the SEPTEL guidance.

9.  (SBU) As resources allow, Posts and AIT may continue to process any 221(g) cases, ██████████████████ or any other required administrative processing, and may issue the associated visas for applicants who are not subject to P.P. 10052 or who are covered by an exception.  Individuals re-applying in the same NIV classification as one of those covered under the suspension (H-1B, H-2B, J, L) are subject to the proclamation; however, a national interest exception may be appropriate in some cases, for example, consideration should be given to cases where the applicant is returning to the  United States to continue the work the applicant had been performing under the expired visa.

10.  (SBU) **Appointment Scheduling:**  Posts may continue to schedule mission critical and emergency immigrant and nonimmigrant visa interviews as resources allow and as described in REF E, but should applicants not qualify for an exception under the relevant presidential proclamation, including in the national interest, post should refuse the case pursuant to INA 212(f) using refusal code ██████ for IVs and ██████ for NIVs.  Once the proclamation is no longer in effect, an applicant refused under ██████ or ██████ may be evaluated for reconsideration of the refusal; if the case is reconsidered within one year of the ██████ and ██████ refusal, the applicant is not required to make a new visa application.  GSS vendors at supported posts will continue to provide visa services, including collecting fees, website support, and call center services.  Posts and AIT should also review expedited appointment requests through their GSS system and public email and determine whether a case meets one of the exceptions set forth in this new P.P. and the prior COVID-19-related P.P.s.  Posts and AIT may contact their NVC post liaison at NVCPost@state.gov to make adjustments to NVC expedite and scheduling procedures as needed.

11.  (SBU) **Renewals**:  Posts and AIT should not pursue revocations for individuals who have already been issued immigrant and nonimmigrant visas; however, current visa holders applying for a visa renewal <u>after</u> June 24 are still subject to the Presidential Proclamation, absent an exception under the proclamation. Individuals subject to multiple proclamations would have to

be excepted from all applicable presidential proclamations, prior to issuance.

12.  (~~SBU~~) Posts with questions regarding this guidance should contact their post liaison officer in VO/F.

~~SENSITIVE BUT UNCLASSIFIED~~

**Signature:**          Pompeo

**Drafted By:**          CA/VO: █████████
**Cleared By:**          CA:Brownlee, Ian G
                        CONS/AG: ███████████
                        CA/VO:Ramotowski, Edward J
                        CA/VO/F: █████████
                        CA/VO/F/IE ██████████
                        CA/VO/L: ████████
                        CA/VO/L/A ████████
                        CA/VO/DO: ██████
                        CA/VO/DO/NVC ██████████
                        CA/VO/DO/KCC ████
                        CA:Benning, Douglass R
                        CA/EX: █████████
                        CA/EX/PAS ████████
                        CA/C: ██████████
                        CA/C: ██████████
                        CA/C: ████████
                        CA/C: ██████████
                        CA/P: ████████
                        ECA/P ██████
                        MED ██████
                        CONS/AG: ██████████
                        L/CA ████████
                        L/CA ██████
                        L/PD ██████
                        M: ██████
                        D: ████████
                        P: ██████████
                        S/P: ████████
                        GPA: ██████
                        R: ██████████
                        R/PPR ████████
                        AF/EX ██████████
                        EAP/EX ██████████
                        EUR-IO/EX/PMO ██████████
                        EUR-IO/EX/PMO ████████████
                        EUR/PGI ████████
                        NEA-SCA/EX ████████

|  |  |
|---|---|
|  | WHA/EX█████████ |
|  | SES█████████ |
| **Approved By:** | CA:Risch, Carl C |
| **Released By:** | CA_FO█████████ |
| **XMT:** | BASRAH, AMCONSUL; CARACAS, AMEMBASSY; SANAA, AMEMBASSY; ST PETERSBURG, AMCONSUL; VLADIVOSTOK, AMCONSUL; ALEXANDRIA, AMCONSUL |

| **Dissemination Rule:** | Archive Copy |
|---|---|

**UNCLASSIFIED**
~~SBU~~

**UNCLASSIFIED**
~~SBU~~



| | |
|---|---|
| **MRN:** | 20 STATE 65080 |
| **Date/DTG:** | Jul 08, 2020 / 082228Z JUL 20 |
| **From:** | SECSTATE WASHDC |
| **Action:** | ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE *ROUTINE* |
| **E.O.:** | 13526 |
| **TAGS:** | CMGT, CVIS |
| **Captions:** | SENSITIVE |
| **Reference:** | A) 20 STATE 30920 |
| | B) 20 STATE 28420 |
| | C) 20 STATE 42180 |
| | D) 20 STATE 32972 |
| | E) 20 STATE 40968 |
| | F) 20 STATE 37592 |
| | G) 20 STATE 41350 |
| | H) 20 STATE 50972 |
| | I) 20 STATE 46900 |
| | J) 20 STATE 55888 |
| | K) 20 STATE 61886 |
| **Subject:** | GUIDANCE ON THE PHASED RESUMPTION OF ROUTINE VISA SERVICES |

1.  (U) **SUMMARY**:  On March 20, 2020, the Department instructed all posts to immediately suspend all routine visa services (Ref A) due to the COVID-19 pandemic.  On April 28, 2020, the Department sent updated guidance on the ongoing suspension of all routine visa services (Ref B) and instructed posts not to resume routine visa operations until given a specific instruction to do so.  Beginning on July 15, 2020, posts may begin a phased approach to the resumption of routine visa services.  This cable provides guidance to the field to inform post decisions on which visa services they choose to resume during each phase of Diplomacy Strong and depending on the specific conditions at each post.  In addition, posts must adhere to restrictions laid out in any current or subsequent Presidential Proclamation, which may impact the visa services posts are able to provide.  The five geographical COVID-19 Proclamations (P.P. 9984, 9992, 9993, 9996, 10041) and the two COVID-19 Labor Market Proclamations suspending entry on certain visa applicants (P.P. 10014 and 10052) remain in effect.  Posts must carefully read the guidance below, which includes detailed instructions on how and when posts may resume routine immigrant and nonimmigrant visa services, as well as services performed on behalf of USCIS.  END SUMMARY.

2.  (U) The health and safety of consular teams, mission colleagues, and applicants for consular services should guide every decision and action in planning for the resumption of consular services at overseas posts.  Consular section chiefs, in consultation with MED and RSO staff,

will determine which CA-authorized services for each Diplomacy Strong phase should be resumed at post, based on local health and safety conditions. While the below guidance details what services posts MAY provide, it does not require posts to provide particular services. As always, the provision of American Citizens Services comes first in priority among consular services.

3. (SBU) Posts are also encouraged to respect local and CDC social distancing requirements, including crowd sizes and facial coverings. Posts should review the flow of applicants in and out of waiting rooms, ensure proper spacing in queues and avoid crowds. Posts may want to remove or readjust spacing between seats or advise on spacing between groupings of applications in the waiting room. Consular managers should discuss ventilation of the office and waiting room spaces with the facility manager and apply sound operational practices (e.g., running restroom exhaust, covering service window openings when not in use, etc.) that optimize health benefits. The Department understands such adjustments may reduce total overall volume and capacity of your operations. The A Bureau Best Practices Guide to Social Distancing and the OBO COVID-19 Mitigation at Overseas Post Toolkit offer additional information to review and consider. Managers at GSS posts should communicate with GSS personnel to ensure they are aware of posts' planning and that they are prepared to meet posts' needs.

4. (U) Posts that issue both immigrant visas (IV) and nonimmigrant visas (NIV) will need to consider a balance between them, and this balance may vary depending on an individual post's needs and capabilities. Posts are encouraged to continue to cross-train staff in both IV and NIV services so that posts can meet changing demands. During all phases of the Diplomacy Strong framework, posts should continue to prioritize mission-critical and emergency cases in accordance with CA guidance in 20 STATE 42180 (Ref C).

5. (SBU) The Department recognizes that many posts will have a significant backlog for all types of cases once regular visa operations resume. The Visa Office is establishing guidelines regarding prioritization for scheduling of IV appointments to help posts, NVC, and KCC plan ahead, prioritize and allocate resources, and balance pent-up demand for NIVs with the need for continuity in IV processing. The Department expects significant interview wait times given both pent-up demand and staffing gaps at most posts. Mindful of budget restraints and the need for resilience of staff over the long-term, posts are not/not expected to schedule overtime to address backlogs (i.e., "Super Saturdays" or longer shifts).

**Immigrant Visas**

6. (SBU) **IV-Processing Posts in Diplomacy Strong Phase Zero and One:**
   a. Since Presidential Proclamation (P.P.) 10014 suspending issuance of certain immigrant visas has been extended through at least December 31, posts should prioritize the cases that may fall under an exception to P.P. 10014. Posts in Phase One may continue processing only emergency and mission-critical IV cases, as resources and local conditions allow, including:
   - IR/CR1s, IR/CR2s, IR/IH3s, and IR/IH4s
   - SQ and SI SIVs

- Certain employment-based healthcare professionals
- Cases involving applicants who may age out
- Other emergencies or mission-critical purposes of travel as determined on a case-by-case basis by post management.

    b. Posts may continue processing any immigrant visa cases previously refused under INA 221(g) that are excepted under P.P. 10014 and can be issued without another personal appearance by the applicant(s), regardless of whether or not they are mission-critical or emergency cases.  In addition, posts may continue issuing replacement visas for applicants who possessed a valid IV on April 23 in accordance with the guidance in 9 FAM 504.10-5, regardless of the immigrant visa category.  Post **must** provide case specific information to the CA Fee Team (CAFee-Team@state.gov) for a determination of whether a new fee must be collected before reissuing the IV foil; post may not unilaterally make this determination.

7. (SBU) **IV-Processing Posts in Diplomacy Strong Phase Two:**

    a. Planning Ahead for Phase Three:  IV-processing posts will need to plan two months in advance to allow NVC time to schedule cases.  They should also plan ahead for the resumption of routine IV services, considering issues such as outreach, messaging, team training and cross-training, workflow, and scheduling.  Given that posts have varying backlogs and types of IV cases to manage, posts may submit specialty scheduling requests to NVC, while taking the IV prioritization guidelines set forth in this cable into consideration.  In addition, GSS posts are reminded that GSS services apply to immigrant visa processing and posts should avail themselves of those services.

    b. Prioritizing Immediate Relative (IR) Cases:  To reduce and eventually eliminate the currently growing IR backlog, IRs excepted under P.P. 10014 should be prioritized over most other IV categories, while recognizing that other types of IV cases still need to be scheduled and adjudicated each month.  Ideally, every documentarily qualified IR case should be scheduled for the following month.  Realistically, however, many posts will have a significant backlog in all categories of cases once routine visa operations resume.  Therefore, once posts start to open again for rescheduled interviews and routine visa processing, posts should at a minimum take steps to try to prevent their IR backlog from growing either in absolute terms or relative to their Family Preference (FP)/Employment Preference (EP) backlog.  For example, if IR cases constitute 25 percent of the total IV backlog, IR cases should be scheduled for no less than 25 percent of the new IV appointments.

    c. IV-processing posts may also schedule NIV cases taking into consideration the NIV prioritization guidelines below, while waiting for NVC to schedule more IV appointments.

8. (SBU) **IV-Processing Posts in Diplomacy Strong Phase Three:**

    a. During Phase Three, posts may resume routine services for all IV classes and cases excepted under P.P. 10014, at a level determined by the consular section chief based on local conditions and in consultation with post's EAC.  Posts may begin to reschedule and process IV appointments for classes excepted under P.P. 10014, that were cancelled due to

the suspension of routine visa processing.  This includes categories such as EB-5s and IVs for members of the U.S. Armed Forces and their spouses and children. K visas, which are nonimmigrant visas not subject to P.P. 10014, but processed by IV units may also be processed.

b. Posts may consider gradually increasing these appointments to give staff time to adjust to new and increased workflows.  For this transition period, pending further notice, the Visa Office recommends IV cases be scheduled, whether by NVC, KCC, or locally by post, in the following order of priority, with some appointments made available in each category each month to prevent complete stagnation:

1. Appointments cancelled due to the suspension of routine visa operations
2. Adoptions, age outs, humanitarian cases, SIVs, V92/V93s, SB-1s and other cases as raised by the Visa Office
3. IRs/CRs
4. Ks (which are NIVs, but processed in IV units). Because I-129 petitions expire after four months, many I-129 petitions may have expired by the time post is able to begin processing K visa cases.  Posts may follow the guidance in 9 FAM 502.7-3(B)(d) to revalidate I-129 petitions, even after they have expired.  Posts are reminded that P.P. 10014 and P.P. 10052 do not apply to K visas.
5. Family Preference (FP)/Employment Preference (EP)/Diversity Visa (DV) cases excepted by P.P. 10014

c. Other Visa-related Services:  Posts may resume routine visa-related services, including DNA collection for visa cases.  For DNA collection, posts should consult with their MED unit before resuming this service to carry out this collection in the safest manner possible.

**Nonimmigrant Visas**

9.  (~~SBU~~) **IMPORTANT NOTE**:  Presidential Proclamation 10052 suspended the issuance of nonimmigrant visas in the H-1B, H-2B, L, and J-1 (for six specific program categories: au pair, intern, trainee, summer work travel, teacher, and camp counselor) classifications until December 31, 2020, with certain exceptions (see Ref H).  Posts should NOT resume routine processing of these visa classifications, unless the applicant qualifies for an exception under this or any subsequent Proclamation, until given a specific instruction to do so; however, in accordance with Ref H, posts may, in their discretion, accept cases that may qualify for an exception.  Whether the applicant qualifies for the exception will be determined by the consular officer who adjudicates the application.  END NOTE.

10.  (~~SBU~~) **NIV-Processing Posts in Diplomacy Strong Phase Zero and One and All Posts Impacted by a Presidential Proclamation Restricting Travel from a Country or Region Related to an Outbreak of COVID-19:**

a. Visa processing remains restricted to emergency or mission critical only, in compliance with CA guidance (Ref C).
b. The exceptions to the Presidential Proclamations may also be used as a guide for additional mission-critical or emergency travelers, even in those areas not covered by the Proclamations.

    c. As resources and local health and staffing conditions permit, visa units may also process interview waiver (IW) cases. If a case falling within an IW category is found to require an interview, it should be treated as a normal NIV application, which may mean the case cannot be processed further until post can bring the applicant in for an interview. Posts should not process IW cases for applicants of nationalities with an overstay rate of four percent or higher per DHS FY19 Entry/Exit report.

    d. In addition, as resources and local health and staffing conditions permit, posts may process cases previously refused under section 221(g) as long as they do not require an interview.

11. (SBU) **NIV-Processing Posts in Diplomacy Strong Phase Two:**

    a. As staffing resources and local health and safety circumstances permit, posts may open routine appointment slots for F-1 applicants, M-1 applicants, and J-1 (consistent with guidance provided in Ref K) applicants. Posts may also open routine appointments for E, I, O and P applicants. Posts should utilize their expedite appointment queue to identify and prioritize those F-1, M-1, and J-1 applicants described above whose program start dates are quickly approaching. Posts may also process urgent applications for E, I, O, and P visas as conditions and resources permit.

    b. Posts with GSS appointment scheduling services should work with their local GSS managers to request any necessary modifications to their appointment scheduling platforms that will permit them to identify these applicants. The GSS vendors are aware of this guidance and are prepared to add additional appointment buckets tailored to posts' needs.

    c. Keep social distancing guidelines in mind when creating appointment schedules; do not open more appointments than can safely be accommodated in your waiting room. Appointment schedules are most effective when they are enforced. The Department understands and is aware that appointment wait times may increase as a result.

    d. Posts in Phase Two may also process visa referral cases and priority appointment requests.

12. (SBU) **NIV-Processing Posts in Diplomacy Strong Phase Three:** Consular sections may resume routine visa processing at a level determined by the consular section chief based on local conditions and in consultation with the EAC and consistent with CA guidance. During Phase Three, routine visa services can resume in full. Appointments for all nonimmigrant visa categories can be made available, although posts may consider phasing in these appointments gradually to give staff time to adjust to new workflows and schedules. As posts work through their backlogs, they should continue to prioritize mission-critical and emergency cases (Ref C) and also should consider prioritizing F-1, M-1, and J-1 Alien Physicians, Government Visitors, International Visitors, Professors, Short-Term Scholars, Research Scholars, Students, and their dependents, followed by E-1/E-2, I, O1/O2, and P1/2 NIV categories. For information on student visa applications for Fall 2020 Semester, please review the "New Guidance for F, M, and J Visa Adjudications" ALDAC that will be released separately. Routine B1/B2 applicants are the lowest priority as posts work though significant backlogged demand, but posts should

ensure emergency and mission critical B1/B2 applicants have a functioning mechanism to request an emergency appointment.

13. (SBU) **NIV-Special Request Process for Posts in Phase Zero or One:** Posts in Diplomacy Strong Phase Zero or Phase One who wish to seek an exception to resume additional visa services outside the guidance listed in paragraph 10 of this ALDAC must seek permission from Washington via Front Channel Cable, with the Chief of Mission describing in detail post's plans for protecting both staff and applicants from the risk of COVID-19 exposure, and certifying that the necessity of processing  such visa cases outweighs the potential risks to Embassy staff and the public.  Posts in Diplomacy Strong Phase Zero or Phase One must receive specific approval from Washington to begin processing certain additional cases.

14. (U) **Public Websites:** Posts in all phases of Diplomacy Strong should have clear language on their public facing websites about their current operating status.  Posts websites should clearly state whether they are still closed for routine processing, or if they are only open to limited appointment categories, in order to avoid confusion before applicants pay their MRV fees.

15. (U) **MRV Fee Receipt Validity:**  CA is working to finalize procedures for addressing MRV fee receipt validity in the context of the pandemic.  CA will notify posts of those procedures via Septel.

**Services Performed on Behalf of USCIS:**

16. (SBU) **USCIS Services at Posts in Diplomacy Strong Phase Zero and One:**
    a. Processing of services on behalf of USCIS remains restricted to emergency or mission critical only, in compliance with CA guidance (Ref J).
    b. Posts should continue printing boarding foils for parole cases upon receipt of a parole authorization from USCIS, unless local conditions do not allow for travel. In that case, post should inform USCIS as soon as travel is again possible, so that they may consider reissuing the parole authorization at that time.
    c. In addition, as resources and local health and staffing conditions permit, posts may process cases previously refused under section 221(g), as long as they do not require an interview.  However, posts should keep in mind that V93 cases require IOM to arrange travel so cannot be completed until IOM reopens their offices.  If you have a V93 case that seems to be an emergency, contact the V92/V93 portfolio holder in VO/F.

17. (SBU) **USCIS Services at Posts in Diplomacy Strong Phase Two:**
    a. As staffing resources and local health and safety circumstances permit, posts may resume processing routine I-131A LPR Boarding Foils for LPRs who have lost/stolen/mutilated LPR cards in Phase Two.
    b. Posts may also accept petitions on behalf of USCIS for mission-critical cases such as I-130s for IR-1/IR-2 dependents of military personnel or I-600s related to adoption cases.
    c. If staffing and resources allow, posts may also resume the delivery of USCIS

travel documents received at post.

18.  (~~SBU~~) **USCIS Services at Posts in Diplomacy Strong Phase Three:**  Consular sections may resume routine processing on behalf of USCIS at a level determined by the consular section chief based on local conditions, in consultation with the EAC, and consistent with CA guidance.  During Phase Three, processing of all USCIS services can resume in full including V92/V93s, DNA testing, ink fingerprinting, cashiering services, document verifications, and acceptance of petitions that did not meet Phase Two requirements.  Since ink fingerprinting involves direct contact between a consular employee and the individual being fingerprinted, please consult with your MED unit on steps you can take to mitigate the risk involved before resuming this service.  As posts work through their backlogs, they should continue to prioritize mission-critical and emergency cases (Ref J) as well as LPR boarding foils.

19. (U) Posts should continue to review the Coronavirus page on InfoCentral and the Consular Affairs section of the Coronavirus Global Response Coordination Unit for the latest information, guidance, and talking points related to COVID-19.

20.  (U) Please reach out to your VO/F analyst with any questions or for additional guidance on special circumstances.

~~SENSITIVE BUT UNCLASSIFIED~~



| **Signature:** | Pompeo |

| **Drafted By:** | CA/VO/F/ET: ▮▮▮    CA/VO/F/IE: ▮▮    CA/VO/F/OI: |

| **Cleared By:** | CONS/AG: ▮▮▮ |
| | CA: ▮▮ |
| | CA/VO:Ramotowski, Edward J |
| | CA/VO/F: ▮ |
| | CA/VO/F/ET: ▮ |
| | CA/VO/F/IE: ▮ |
| | CA/VO/F/IE: ▮ |
| | CA/VO/F/OI: ▮ |
| | CA/VO/L: ▮ |
| | CA/VO/L: ▮ |
| | CA/VO/L/A: ▮ |
| | CA/VO/L/A: ▮ |
| | CA/VO/DO/NVC: ▮ |
| | CA/VO/DO: ▮ |
| | CA/P: ▮ |
| | CA/P: ▮ |
| | CA/FPP: ▮ |
| | CA/C: ▮ |
| | CA/C: ▮ |
| | CA/C: ▮ |
| | CA/C: ▮ |

CA/EX: 
CA/OCS:King, Karin M
L/CA:
AF/EX:
EUR-IO/EX/PMO:
EUR/PGI:
WHA/EX:
NEA-SCA/EX:
EAP/EX:
ECA/FO:
M:
M/PRI:
HR:
P:
D:
GPA:
R/PPR:
R:
S/P:
MED:
OBO/FO:
DS/ICI/CI:
DS/IP:
A:
SES:

**Approved By:**    CA:Risch, Carl C
**Released By:**    CA_FO[           ]S
**XMT:**    BASRAH, AMCONSUL; CARACAS, AMEMBASSY; SANAA,
AMEMBASSY; ST PETERSBURG, AMCONSUL; VLADIVOSTOK,
AMCONSUL; ALEXANDRIA, AMCONSUL

**Dissemination Rule:**    Archive Copy

### UNCLASSIFIED
~~SBU~~

**UNCLASSIFIED**
~~SBU~~



| | |
|---|---|
| **MRN:** | 20 STATE 66820 |
| **Date/DTG:** | Jul 14, 2020 / 140127Z JUL 20 |
| **From:** | SECSTATE WASHDC |
| **Action:** | ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE *ROUTINE* |
| **E.O.:** | 13526 |
| **TAGS:** | CVIS, CMGT |
| **Captions:** | SENSITIVE |
| **Reference:** | A) 20 STATE 41350 |
| | B) 20 STATE 42180 |
| | C) 20 STATE 61886 |
| | D) 20 STATE 62808 |
| | E) 20 STATE 66326 |
| **Pass Line:** | PASS TO DEPARTMENT OF HOMELAND SECURITY |
| **Subject:** | National Interest Exceptions under the COVID and Labor- Related Presidential Proclamations 9984, 9992, 9993, 9996, 10014, 10041, and 10052 for visa applicants |

1.  (~~SBU~~) SUMMARY:  On March 19, 2020, the Secretary of State delegated to the Assistant Secretary for Consular Affairs the authority under Presidential Proclamations (P.P.) 9984, 9992, 9993, 9996, and 10041 relating to the suspension of entry of immigrant and nonimmigrants of certain persons who pose a risk of transmitting 2019 novel coronavirus (COVID-19 P.P.s) to determine that an alien's entry into the United States would be in the national interest. On May 6, 2020, the Secretary of State also delegated to the Assistant Secretary for Consular Affairs the authority under P.P. 10014 relating to the suspension of entry of certain immigrants to determine that an alien's entry into the United States would be in the national interest under that P.P. and its successor proclamations, which includes P.P. 10052 (Labor Market P.P.s). Effective immediately, The Assistant Secretary for Consular Affairs  has determined that immigrant visa cases involving applicants who are subject to aging out before the COVID-19 and Labor Market P.P.s expire or within two weeks thereafter are in the national interest, for purpose of an exception under the Labor Market P.P.s.  Consular Section Chiefs (or those acting as Consular Section Chief in an official capacity due to the extended absence of the Consular Section Chief) may approve a national interest exception for applicants aging out and family members applying for an immigrant visa on the same petition and traveling with the applicant subject to aging out (see para 2-5).  In addition, The Assistant Secretary has determined that Consular Section Chiefs (or those acting as Consular Section Chief in an official capacity due to the extended absence of the Consular Section Chief) may approve a national interest exception for certain nonimmigrant visa applications subject to the P.P. 10052 suspension, as described in paragraphs 6-10). END SUMMARY.

2.  (U) **Immigrant Visa Applicants (Age-Out)**:  On April 22, 2020, the President issued P.P. 10014, suspending the entry of certain aliens as immigrants for 60 days.  On June 22, 2020, the President issued P.P. 10052, extending the suspension of entry of certain immigrant visa categories previously suspended under P.P. 10014 until December 31, 2020.  The exceptions in P.P. 10014 are still applicable and officers should continue to follow the guidance in Ref A. Under P.P. 10014, consular officers may continue to process visa applications for individuals who are expressly excepted from the Proclamation to include an alien who:

> a. held a valid immigrant visa on April 23, 2020;

> b. is a lawful permanent resident of the United States;

> c. has a valid I-140 and is seeking to enter the United States as a physician, nurse, or other healthcare professional; or to perform medical research or other research intended to combat the spread of COVID-19; and any spouse and unmarried children under 21 years old of any such alien who are accompanying or following to join the alien;

> d. is applying for a visa to enter the United States pursuant to the EB-5 Immigrant Investor Program;

> e. is the spouse of a U.S. citizen (IR/CR-1);

> f. is the child of a U.S. citizen (IR/CR-2 or IR/IH-3), or who is a prospective adoptee seeking to enter the United States pursuant to the IR-4 or IH-4 visa classifications, AND is also under the age of 21;

> g. is a member of the U.S. Armed Forces and any spouse and children of a member of the U.S. Armed Forces; or

> h. is seeking to enter the United States pursuant to a Special Immigrant Visa in the SI or SQ classification, subject to such conditions as the Secretary of State may impose, and any spouse and children of any such individual.

3. (SBU) In addition, in light of the national interest determination by the Assistant Secretary for Consular Affairs on June 30, 2020, Consular Section Chiefs (or those acting as Consular Section Chief in an official capacity due to the extended absence of the Consular Section Chief) may approve a national interest exception in an immigrant visa case covered by P.P.s 9984, 9992, 9993, 9996, 10014, or 10041 upon concluding that the applicant is subject to aging out of his or her current immigrant visa classification before the relevant P.P.s expire or within two weeks thereafter.  To benefit from this determination, the applicant subject to aging out may be a principal applicant or a derivative beneficiary accompanying or following to join a principal applicant.  Consular Section Chiefs may also approve a national interest exception, based on the Assistant Secretary's determination, in an immigrant visa case for a family member of an

applicant subject to aging out before P.P.s 10014, 9984, 9992, 9993, 9996, or 10041 expire or within two weeks thereafter, if the family member is applying for an immigrant visa on the same petition and will be traveling to the United States with the applicant subject to aging out.  For example, Consular Section Chiefs may approve a national interest exception for an F43 derivative child who will age out before the expiration of the applicable P.P.s, and may also approve all other family members on the same petition (parents and siblings) so long as the family members will all be immigrating with the F43 age out applicant.  Consular sections must notify visa applicants that their admission remains subject to a determination by Customs and Border Protection officers at ports of entry and that they may be subject to a 14-day quarantine upon arrival.

4. (SBU) Application of CSPA: The national interest exception for applicants who are subject to aging out does not include those individuals protected by the Child Status Protection Act ("CSPA") as a "child" and thus would not actually age out of visa eligibility if not granted a national interest exception.  An applicant who is protected as a "child" under CSPA is already excepted from P.P.s 9984, 9992, 9993, 9996, 10041 as an "alien who is the child, foster child, or ward of a U.S. citizen or lawful permanent resident."  However, under P.P. 10014 an applicant must be under 21 years old and the child of a United States citizen to be excepted from the Proclamation. This guidance keeps a similar limitation in place for the national interest exception based on aging out.  Therefore, an applicant with a biological age of 21 or over or who is protected as a "child" under CSPA is unlikely to age out, and therefore does not qualify for the national interest exception under P.P. 10014 as set forth in this cable; these applicants may qualify for a different exception under P.P. 10014 or may qualify for a national interest exception on some basis other than aging out, in order to be issued a visa while the Proclamation is in effect.

5. (SBU) Consular officers may continue to follow the guidance set forth in Ref A paragraphs 6 and 7 to submit immigrant visa cases to the Assistant Secretary for consideration of additional national interest exceptions such as:
   a) aliens who are immigrating on any petition to perform work essential to combating, recovering from, or otherwise alleviating the effects of the COVID-19 outbreak;
   b) principal applicants and accompanying close family members requiring lifesaving medical treatment; or
   c) aliens who will provide care for a U.S. citizen, legal permanent resident, to include alleviating the burden of care from a medical or other institution.

6. (SBU) **Nonimmigrant Visa Applications**: P.P. 10052 provides an exception for "any alien whose entry would be in the national interest as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees."  Sec. 3(b)(iv).  The proclamation separately notes that "[t]he consular officer shall determine in his or her discretion, whether a nonimmigrant has established his or her eligibility" for an exception to this proclamation, including a national interest exception. The below framework identifies categories of visa applicants who should, at this time, be considered for a national interest exception based on an agreement in principle regarding the use of the national interest exception

coordinated by the White House with the Departments of State, Labor, and Homeland Security. **Further guidance expanding on who may also qualify for a national exception will be transmitted by SEPTEL.**

### 7. (~~SBU~~) Implementation Procedures for Applicants for H-1B Visas

At this time, consular officers can consider H-1B applicants for national interest exceptions who will:

- Travel as a public health or healthcare professional, or researcher to alleviate the effects of the COVID-19 pandemic, or to conduct ongoing medical research in an area with a substantial public health benefit (e.g. cancer or communicable disease research). This includes those traveling to alleviate effects of the COVID-19 pandemic that may be a secondary effect of the pandemic (e.g., travel by a public health or healthcare professional, or researcher in an area of public health or healthcare that is not directly related to COVID-19, but which has been adversely impacted by the COVID-19 pandemic). Officers should base approval of this exception through examining the I-129 petition file in PIMS, supporting documents provided by the applicant or petitioner, and/or the interview with the beneficiary.

- Travel supported by a request from a U.S. government agency or entity to meet critical U.S. foreign policy objectives or to satisfy treaty or contractual obligations. This would include individuals, identified by the Department of Defense or another U.S. government agency, performing research, providing IT support/services, or engaging other similar projects essential to a U.S. government agency. Officers should base approval of this exception through examining the I-129 petition file in PIMS, supporting documents provided by the applicant or petitioner, and/or the interview with the beneficiary

### 8. (~~SBU~~) Implementation Procedures for Applicants for H-2B Visas

- Travel based on a request from a U.S. government agency or entity to meet critical foreign policy objectives or to satisfy treaty or contractual obligations. An example of this would be supporting U.S. military base construction (e.g. associated with the National Defense Authorization Act) or IT infrastructure. The Visa Office anticipates that this exception will mainly be used for H-2B visa applicants performing construction work at military bases in Guam and the Commonwealth of Northern Mariana Islands. Officers should base approval of this exception through examining the I-129 petition file in PIMS, supporting documents provided by the applicant or petitioner, and/or the interview with the beneficiary.

### 9. (~~SBU~~) Implementation Procedures for Applicants for J-1 Visas to Participate in Exchange Visitor Program

Consular officers can consider J-1 applicants for national interest exceptions who will:

**Childcare**

- Travel to provide care for a minor U.S. citizen, lawful permanent resident, or nonimmigrant in lawful status by an au pair possessing special skills required for a child with particular needs (e.g., medical, special education, or sign language)). Childcare services provided for a child with medical issues diagnosed by a qualified medical professional by an individual who possesses skills to care for such child will be considered to be in the national interest.

- Travel by an au pair that prevents a U.S. citizen, lawful permanent resident, or other nonimmigrant in lawful status from becoming a public health charge or ward of the state of a medical or other public funded institution.   Childcare services provided for a child whose parents are involved with the provision of medical care to individuals to individuals who have contracted COVID-19 or medical research at United States facilities to help the United State combat COVID-19.

**Other Exchange Programs**

- Travel to participate in an exchange visitor program for interns, summer work travel, camp counselors, trainees, or teachers only if described below:

    ***An exchange program conducted pursuant to a bilateral agreement or other arrangement with a foreign government***:  An exchange program conducted pursuant to an MOU, Statement of Intent, or other valid agreement or arrangement between a foreign government and any federal, state, or local government entity in the United States that is designed to promote U.S. national interests if the agreement or arrangement with the foreign government was in effect prior to the effective date of the Presidential Proclamation.   In order to identify such programs, consular sections should work closely with post's Public Affairs section.  CA/VO/F (in consultation with ECA) will serve as a resource for consular sections that are unsure of whether a specific program meets this criteria.

    ***Interns and Trainees on U.S. government agency-sponsored programs (those with a program number beginning with "G-3" on Form DS-2019)***: An exchange visitor participating in an exchange visitor program in which he or she will be hosted by a U.S. government agency and the program supports the immediate and continued economic recovery of the United States.

    ***Specialized Teachers in Accredited Educational Institutions with a program number beginning with "G-5" on Form DS-2019***:   An exchange visitor participating in an exchange program in which he or she will teach full-time, including a substantial portion that is in person, in a publicly or privately operated primary or secondary accredited educational institution where the applicant demonstrates ability to make a specialized contribution to the education of students in the United States.  A "specialized teacher" applicant must demonstrate native or near-native foreign language proficiency and the ability to teach his/her assigned subject(s) in that language (e.g., teaching math in German, or teaching the Spanish language).

    ***Critical foreign policy objectives****: This only includes programs where* an exchange visitor participating in an exchange program that fulfills critical and time sensitive foreign policy

objectives.  In order to identify such programs, consular sections should work closely with their cultural and public affairs offices.  CA/VO/F (in consultation with ECA) will serve as a resource for consular sections that are unsure of whether a specific program meets this criteria.

**10. (~~SBU~~) Implementation Procedures for Applicants for L Visas**

- Travel as a public health or healthcare professional, or researcher to alleviate the effects of the COVID-19 pandemic, or to conduct ongoing medical research in an area with a substantial public health benefit (e.g. cancer or communicable disease research). This includes those traveling to alleviate effects of the COVID-19 pandemic that may be a secondary effect of the pandemic (e.g., travel by a public health or healthcare professional, or researcher in an area of public health or healthcare that is not directly related to COVID-19, but which has been adversely impacted by the COVID-19 pandemic).  Officers should base approval of this exception through examining the I-129 petition file in PIMS, supporting documents provided by the applicant or petitioner, and/or the interview with the beneficiary.

**11. (~~SBU~~) Implementation Procedures for Applicants for H-4, L-2, and J-2 Visas**

Consular officers can consider derivative applicants for national interest exceptions who will accompany or follow to join a principal applicant who is a spouse or parent and who is excepted from, or not subject to, P.P. 10052. This exception can be extended to derivative applicants when the principal is currently in the United States or has a valid visa.

12. (~~SBU~~) Consular sections processing immigrant or nonimmigrant visa applications where a national interest exception was granted should also:
   a) Enter Case Notes:
       i.   For IV cases clearly explain in the case notes that the applicant is subject to aging out or is a family member on the same petition applying and traveling with an individual aging out, and note Consular Section Chief approval. If a nonimmigrant case, identify the basis for approving the exception and note Consular Section Chief approval.
       ii.  Clearly explain in the case notes whether/how the applicant intends to self-quarantine subject to local requirements.
       iii. For IV cases include in the case notes: "#NIEIVPP; Approved for National Interest Exception under PP10014" or "#NIENIVPP; Approved for National Interest Exception under PP10052" for NIVcases.  If the applicant is also excepted from a Regional Proclamation, also include in the case notes: "#NIEPPNCOV; Approved for National Interest Exception under COVID-19 Presidential Proclamation."
   b) Scan Documents: Scan any supporting documentation into the CCD, unless the documentation is already available electronically in the system.
   c) Annotate Visas: Visas should be annotated to state:  "NIE under P.P. on Risk to Labor Market"
   d) Enter CLASS Lookout Code ████

i. 

ii.   In the Independent Namecheck (INK) system, enter the CAT-1 CLASS lookout code ▓▓ in "backscan" mode. Only users assigned an INK Manager Role can set the "backscan" mode. Once set, the "backscan" mode will apply to all users. Step-by-step instructions for this process can be found in the attached guide titled *INK Backscan Shortcut SOP*. Instructions are also on the Presidential Proclamations Adjudication Guidance page in CA Web Portal here.

iii.   Fill in the required fields. In the Short Comment Field, enter: "DOS NIE."

iv.   In the Long Comment Field, enter: "National Interest Exception Approved under Proclamation(s) XXXXX. [List specific category; ex: Age out applicant or family member.]"

v.   **NOTE**: When entering comments, do not use special characters, other than commas, periods, and dashes, because they can prevent the lookout from replicating to CLASS.

vi.   NIE1 is not a refusal. The CLASS entry will expire after 12 months and the record will eventually be purged from the CCD.

vii.   Complete this process for each traveler.

13. (~~SBU~~) **Individuals Subject to Multiple Suspensions**: Individuals who qualify for aa national interest exception to P.P. 10052 under criteria discussed in this cable should also be considered as qualifying for national interest exceptions under Presidential Proclamations 9984 (China), 9992 (Iran), 9993 (Schengen), 9996 United Kingdom/Ireland, and 10041 (Brazil) should the traveler be subject to the provisions of such regional proclamations. Travelers who do not qualify for a national interest exception under the criteria in this cable must qualify for an NIE for the regional PPs via the guidance in 20 State 49966 or 20 State 66326    Please list all P.P.s that apply to an individual in case notes and in the NIE1 CLASS lookout.

14. (~~SBU~~) Please refer to the Presidential Proclamations Adjudication Guidance page in CA Web Portal for a complete listing of the Presidential Proclamations and associated ALDAC guidance. This website will continue to be populated with useful links and flow charts. Consular sections should reach out to their VO/F analyst or email CA-VO-NIE@state.gov with any questions regarding this guidance.

~~SENSITIVE BUT UNCLASSIFIED~~

| | |
|---|---|
| **Signature:** | Pompeo |

| | |
|---|---|
| **Drafted By:** | CA/VO/F▓▓▓▓ |
| **Cleared By:** | DHS▓▓▓ |

CA: ███████████████
CA: ███████████████
CA/VO:Ramotowski, Edward J
CA/VO/F ███████████
CA/VO/F/IE ████████████████
CA/VO/L/A ██████████████
CA/VO/L/R ████████████
AF/EX ████████████
EAP/EX ████████████████
EUR-IO/EX/PMO ███████████
EUR/PGI ███████████
NEA-SCA/EX ██████████████
CA/EX ███████████
WHA/EX ███████████
CA/P ████████████
GPA ██████████████
M ████████████
S/P ██████████
R ████████████████
D ████████████████
P ████████████████
SES ███████████

**Approved By:**     CA:Risch, Carl C
**Released By:**     CA_FO: ████████████
**XMT:**            BASRAH, AMCONSUL; CARACAS, AMEMBASSY; SANAA,
                    AMEMBASSY; ST PETERSBURG, AMCONSUL; VLADIVOSTOK,
                    AMCONSUL; ALEXANDRIA, AMCONSUL

**Dissemination Rule:**     Archive Copy

**UNCLASSIFIED**
~~SBU~~

UNCLASSIFIED
SBU



| | |
|---|---|
| **MRN:** | 20 STATE 67436 |
| **Date/DTG:** | Jul 14, 2020 / 142142Z JUL 20 |
| **From:** | SECSTATE WASHDC |
| **Action:** | ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE *ROUTINE* |
| **E.O.:** | 13526 |
| **TAGS:** | CVIS, CMGT |
| **Captions:** | SENSITIVE |
| **Reference:** | 20 STATE 65080 |
| **Subject:** | NEW OPTIONS TO CONSIDER WHEN ISSUING REPLACEMENT IMMIGRANT VISAS |

1. (SBU) SUMMARY: Due to the prior suspension of routine visa services and ongoing worldwide travel restrictions including Presidential Proclamation 10014 suspending entry into the United States by certain immigrants, CA recognizes there are visa holders who have been or will be unable to travel before their immigrant visas expire and applicants whose medical examinations will expire before post is able to issue their visas. In an effort to alleviate some burden on those individuals and to conserve post resources, Centers for Disease Control and Prevention (CDC) agreed to extend the medical examination validity for one month for exams completed from January 1, 2020, through June 30, 2020 (e.g. applicants whose medical exams are valid for six months are now valid for seven and applicants whose exams were valid for three months are now valid for four months).

2. (SBU) The one-month extension is approved for applicants with medical examinations conducted anytime between January 1, 2020, and June 30, 2020, whose visas have not yet been issued or visa holders who could not travel on their original visa and request reissuance. Many visa applicants will still be unable to travel even with a one-month extension under one or more presidential proclamations, but this cable provides guidance on how posts can proceed with those applicants who are excepted and may benefit. Posts should continue to follow the guidance in Ref A regarding IV scheduling.

3. (SBU) **Pending Visa Applicants:** Post may only issue an immigrant visa for six months or less. Under no circumstances can post issue an immigrant visa valid for more than six months. However, posts may consider that the medical examination is valid for one additional month from the expiration date on the medical examination and limit the visa to that extended validity, as long as validity does not exceed six months. VO has added guidance to 9 FAM 302.2-3(C) to permit issuance based on an extended medical exam validity.

4. (SBU) **Visa Holders:** Posts may need to reissue visas for visa holders who have been unable

000052

to travel, are excepted from the current presidential proclamations, and may benefit from the medical examination extension. Post may replace visas for applicants with currently valid visas or those whose visas have expired in the last month. Posts should first determine if they have the resources and capability to reissue any visas. If your post has capacity and local conditions allow, post may issue replacement immigrant visas for those that held a valid immigrant visa on April 23, 2020 and to those applicants that are excepted from the presidential proclamations (e.g. IR1, IR2, CR1, CR2, IH-3, IH-4, IR-3, IR4, EB5, SI, SQ). Before reissuing a visa based on the one-month medical extension, post should first contact the applicant to determine whether the applicant will be able to travel before that visa would expire. Per 9 FAM 504.10-5(A), post should determine that the delay in travel was related to the COVID-19 and out of the applicant's control. If so, see below guidance. If not, those individuals should get a new medical exam and pay a new fee so that post may reissue a full validity visa.

- **Fees:** Unless fee exempt, applicants will need to pay another IV application fee in most instances. For a determination of whether a new fee must be collected before IV reissuance, posts **must** provide case specific information to the CA Fee Team (CAFee-Team@state.gov); post may not unilaterally make this determination.

- **Visa Validity:** Immigrant Visa expiration dates must align with the medical expiration. Further, as per INA 221(c)(1), an immigrant visa can only be valid for a maximum of six months. Under no circumstances can post issue an immigrant visa valid for more than six months. If post is reissuing a visa based on a medical examination with an extended validity date, reissue for one additional month past the original medical exam validity date. If the expiration date in IVO is limited to the eMedical expiration date and post is not able to update manually, post will need to submit a ticket to the CA Service Desk to amend the medical expiration date validity. Posts must enter a case note in IVO stating: Medical Exam Expiration Extended by One Month per CDC Approval.

- **Original Visa and Visa Packet**: If post is reissuing or replacing a visa, post should cancel the originally-issued visa and update the visa packet with any new supporting documents.

- **P.P. 10014**: While Presidential Proclamation 10014 is in effect, posts may issue replacement visas for applicants who are excepted from PP10014 and possessed immigrant visas that were valid on April 23, 2020. Immigrant visas that expired before April 23, 2020 cannot be replaced unless an exception to Presidential Proclamation 10014 applies, including national interest or law enforcement exceptions if granted.

5. (~~SBU~~) Posts should direct applicants to the travel.state.gov website where they may find information on steps to obtain a new or replacement IV. If an applicant cannot travel within the allowable one-month extension, the usual guidance for replacement visas in 9 FAM 504.10-5(A) applies and applicants must obtain a new medical exam, pay all applicable fees, and obtain any new documents, such as police certificates, that may have expired.

6. (U) For any questions about this guidance, please contact your VO/F analyst.

~~SENSITIVE BUT UNCLASSIFIED~~

| | |
|---|---|
| **Signature:** | Pompeo |

| | |
|---|---|
| **Drafted By:** | CA/VO█████████ |
| **Cleared By:** | CA:Brownlee, Ian G |
| | CA█████████ |
| | CA█████████ |
| | CA/VO/F█████ |
| | CA/VO/F/IE█████ |
| | CA/VO/F/IE█████ |
| | CA/VO/I█████████ |
| | CA/VO/I:EI█████ |
| | CA/VO/L/A█████ |
| | CA/VO/L/R█████ |
| | CA/C█████████ |
| | CA/C█████████ |
| | CA/C█████████ |
| | CA/C█████████ |
| | CA/C█████████ |
| | CA/FPP█████████ |
| | CA:Benning, Douglass R |
| | CA/P█████████ |
| | L/CA█████████ |
| | M█████████ |
| | AF/EX█████ |
| | EAP/EX█████ |
| | EUR-IO/EX/PMO█ |
| | EUR/PGI█████ |
| | NEA-SCA/EX█████ |
| | WHA/EX█████ |
| | SES█████ |
| **Approved By:** | CA:Risch, Carl C |
| **Released By:** | CA_FO█████████ |
| **XMT:** | BASRAH, AMCONSUL; CARACAS, AMEMBASSY; SANAA, AMEMBASSY; ST PETERSBURG, AMCONSUL; VLADIVOSTOK, AMCONSUL; ALEXANDRIA, AMCONSUL |

| | |
|---|---|
| **Dissemination Rule:** | Archive Copy |

**UNCLASSIFIED**
~~SBU~~

UNCLASSIFIED
SBU



| **MRN:** | 20 STATE 76312 |
| **Date/DTG:** | Aug 07, 2020 / 070004Z AUG 20 |
| **From:** | SECSTATE WASHDC |
| **Action:** | ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE *IMMEDIATE* |
| **E.O.:** | 13526 |
| **TAGS:** | CMGT, CVIS |
| **Captions:** | SENSITIVE |
| **Reference:** | A) 20 STATE 61886 |
| | B) 20 STATE 66820 |
| | C) 20 STATE 62808 |
| | D) 20 STATE 42180 |
| | E) 20 STATE 65080 |
| | F) 20 STATE 40968 |
| **Subject:** | FURTHER IMPLEMENTATION PROCEDURES AND GUIDANCE FOR P. P. 10052 SUSPENDING ENTRY OF IMMIGRANTS AND NONIMMIGRANTS WHO PRESENT RISK TO THE U.S. LABOR MARKET DURING THE ECONOMIC RECOVERY FOLLOWING THE COVID-19 OUTBREAK (NATIONAL INTEREST EXCEPTIONS) |

1. (SBU) SUMMARY:  On May 6, 2020, the Secretary of State delegated to the Assistant Secretary for Consular Affairs the authority under P.P. 10014  to determine that an alien's entry into the United States would be in the national interest under that P.P. and its successor proclamations, including Presidential Proclamation (P.P.) 10052 (Labor Market P.P.s). Effective immediately, the Assistant Secretary has determined that Consular Section Chiefs (or those acting as Consular Section Chief in an official capacity due to the extended absence of the Consular Section Chief) may approve a national interest exception for certain nonimmigrant visa applications subject to the P.P. 10052 suspension upon concluding that the applicant's travel falls within the scope of one of the categories described in paragraph 3, as described below.  END SUMMARY.

2. (U) Background:  Presidential Proclamations (P.P.) 10014 and 10052 suspend the entry of certain persons who pose a risk of displacing and disadvantaging United States workers during the current economic recovery.  These actions were based on the President's determinations that unrestricted entry of certain aliens as nonimmigrants and immigrants would be detrimental to the interests of the United States (REF A).  Section 3 of P.P. 10052 excepts a range of individuals from visa and entry restrictions, including aliens whose travel would be in the national interest, as determined by the Secretary of State, the Secretary of Homeland Security (DHS), or their designees.  On May 6, the Secretary of State delegated to the Assistant Secretary for Consular Affairs the authority to except individuals whose travel is in the U.S. national interest.  Following consultation with DHS and the Department of Labor (DOL), the Assistant

Secretary authorized consular section chiefs to approve national interest exceptions under PP 10052 to applicants whose travel falls within one of the categories described in the Assistant Secretary's determination.  See REF B.  REF B also advised consular officers that "[f]urther guidance expanding on who may also qualify for a national exception will be transmitted by SEPTEL."  Following further consultation with DOL and DHS, the Assistant Secretary has determined that temporary travel by nonimmigrants in the following additional categories is in the national interest.

3. (~~SBU~~) **National Interest Exceptions-Nonimmigrants:** P.P. 10052 provides an exception for "any alien whose entry would be in the national interest as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees."  Sec. 3(b)(iv).  The proclamation separately notes that "[t]he consular officer shall determine in his or her discretion, whether a nonimmigrant has established his or her eligibility" for an exception to this proclamation, including a national interest exception.  The below framework, supplementing and NOT replacing initial guidance (REF B), identifies categories of visa applicants who should, at this time, also be considered for a national interest exception based on the Assistant Secretary's determinations.  These determinations are consistent with an interagency Agreement in Principle, regarding the use of the national interest exception authority, coordinated by the White House with the Departments of State, Labor, and Homeland Security.

4. (~~SBU~~) **Applicants for H-1B Visas:** Travel by H-1B applicants is in the national interest when the applicant falls within one of the following categories:

A. (~~SBU~~) Applicants seeking to resume ongoing employment in the United States in the same position with the same employer and visa classification.  Forcing employers to replace employees in this situation may cause financial hardship.  Consular officers can refer to Part II, Question 2 of the approved Form I-129 to determine if the applicant is continuing in "previously approved employment without change with the same employer." (See also KCC pre-screening support, paragraph 4)

B. (~~SBU~~) Technical specialists, senior level managers, and other workers whose travel is necessary to facilitate the immediate and continued economic recovery of the United States.  Consular officers may determine that an H-1B applicant falls into this category when at least **two** of the following five indicators are present:

1. The petitioning employer has a continued need for the services or labor to be performed by the H-1B nonimmigrant in the United States.  Labor Condition Applications (LCAs) approved by DOL during or after July 2020 are more likely to account for the effects of the COVID-19 pandemic on the U.S. labor market and the petitioner's business; therefore, this indicator is only present for cases with an LCA approved during or after July 2020 as there is an indication that the petitioner still has a

need for the H-1B worker.  For LCAs approved by DOL before July 2020, this indicator is only met if the consular officer is able to determine from the visa application the continuing need of petitioned workers with the U.S. employer.  Regardless of when the LCA was approved, if an applicant is currently performing or is able to perform the essential functions of the position for the prospective employer remotely from outside the United States, then this indicator is not present.  To verify that an H-1B worker is still needed by a petitioner, consular officers can either consider information provided during the interview, information from the employer included in the petition ███████████ ███████████████████████████████████████████

2. The applicant's proposed job duties or position within the petitioning company indicate the individual will provide significant and unique contributions to an e**mployer meeting a critical infrastructure need.**  Critical infrastructure sectors are chemical, communications, dams, defense industrial base, emergency services, energy, financial services, food and agriculture, government facilities, healthcare and public health, information technology, nuclear reactors, transportation, and water systems.  Employment in a critical infrastructure sector alone is not sufficient; the consular officer must also establish that the applicant holds one of the two types of positions noted below:

> a.) **Senior level placement** within the petitioning organization or job duties reflecting performance of functions that are both unique and vital to the management and success of the overall business enterprise; OR

> b.) The applicant's **proposed job duties and specialized qualifications** indicate the individual will provide significant and unique contributions to the petitioning company.

3. The wage rate paid to the H-1B applicant meaningfully exceeds the prevailing wage rate (see Part F, Questions 10 and 11 of the LCA) by at least 15 percent.  When an H-1B applicant will receive a wage that meaningfully exceeds the prevailing wage, it suggests that the employee fills an important business need where an U.S. worker is not available.  (See "KCC pre-screening support" below).

4. The H-1B applicant's education, training and/or experience demonstrate unusual expertise in the specialty occupation in which the applicant will be employed.  For example, an H-1B applicant with a doctorate or professional degree, or many years of relevant work experience, may have such advanced expertise in the relevant occupation

as to make it more likely that he or she will perform critically important work for the petitioning employer.

5. Denial of the visa pursuant to P.P. 10052 will cause financial hardship to the U.S. employer. The following examples, to be assessed based on information from the visa application, are illustrative of what may constitute a financial hardship for an employer if a visa is denied: the employer's inability to meet financial or contractual obligations; the employer's inability to continue its business; or a delay or other impediment to the employer's ability to return to its pre-COVID-19 level of operations. Officers may consider information provided during the interview or information from the employer included in the petition application file in PIMS. Please note that consular officers must NOT require any documentation from the petitioner in order to make this determination. Consequently, consular officers may not often have sufficient information to determine this indicator is met.

5. (SBU) **Applicants for H-2B Visas:** Travel by H-2B applicants is in the national interest when necessary to facilitate the immediate and continued economic recovery of the United States. Consular officers may determine that an H-2B applicant falls into this category when **TWO** of the following three indicators are present:

A.  The applicant was previously employed and trained by the petitioning U.S. employer. The applicant must have previously worked for the petitioning U.S. employer under **two or more H-2B (named or unnamed) petitions**. U.S. employers dedicate substantial time and resources to training seasonal/temporary staff, and denying visas to the most experienced returning workers may cause financial hardship to the U.S. business.

B.  The applicant is traveling based on a TLC that reflects continued need for the worker. TLCs approved by DOL during or after July 2020 are more likely to account for the effects of the COVID-19 pandemic on the U.S. labor market and the petitioner's business, and therefore this indicator is only present for cases with a TLC approved during or after July 2020 as there is an indication that the petitioner still has a need for the H-2B worker. For TLCs approved by DOL before July 2020, this indicator is only met if the consular officer is able to determine from the visa application the continuing need of petitioned workers with the U.S. employer. ████████████████████ ██████████████████

C.  Denial of the visa pursuant to P.P. 10052 will cause financial hardship to the U.S.

employer.  The following examples, to be assessed based on information from the visa application, are illustrative of what may constitute a financial hardship for an employer if a visa is denied: the employer's inability to meet financial or contractual obligations; the employer's inability to continue its business; or a delay or other impediment to the employer's ability to return to its pre-COVID-19 level of operations.  Officers may consider information provided during the interview or information from the employer included in the petition application file in PIMS. ████████████████████████
████████████████████████████████████████████████
████████████████████████████████

6. (SBU)  **Applicants for L-1A Visas:** Travel by L-1A applicants is in the national interest when the applicant falls within one of the following categories:

   A.   Employers associated with the United States Government:  Travel based on a request from a U.S. government agency or entity to meet critical foreign policy objectives or satisfy treaty or contractual obligations.  An example of this would be supporting U.S. military base construction or IT infrastructure.

   B.   Applicants seeking to resume ongoing employment in the United States in the same position with the same employer and visa classification.  Forcing employers to replace employees in this situation may cause undue financial hardship.  For individual L-1A applicants, consular officers can refer to Part II, Question 2 of the approved Form I-129 to determine if the applicant is continuing in "previously approved employment without change with the same employer."  (See "KCC support" below)

   C.   Applicants travelling temporarily as a senior level executive or manager filling a critical business need of an employer meeting a **critical infrastructure** need**.**  Critical infrastructure sectors include chemical, communications, dams, defense industrial base, emergency services, energy, financial services, food and agriculture, government facilities, healthcare and public health, information technology, nuclear reactors, transportation, and water systems.   The consular officer may determine that an L-1A applicant falls into this category when at least two of the following three indicators are present AND the applicant is not establishing a new office in the United States:

      1.   Will be a senior-level executive or manager;

2.  Has spent multiple years with the company overseas, indicating a substantial knowledge and expertise within the organization that can only be replicated by a new employee within the company following extensive training that would cause the employer financial hardship; OR

3.  Will fill a critical business need for a company meeting a critical infrastructure need.

L-1A applicants seeking to establish a new office in the United States likely do NOT fall into this category, unless two of the three criteria are met AND the new office will employ, directly or indirectly, five or more U.S. workers.

7. (SBU) **Applicants for L-1B Visas**: Travel by L-1B applicants is in the national interest when the applicant falls within one of the following categories:

A.  Employers associated with the United States Government:  Travel based on a request from a U.S. government agency or entity to meet critical foreign policy objectives or satisfy treaty or contractual obligations.  An example of this would be supporting U.S. military base construction or IT infrastructure.

B.  Applicants seeking to resume ongoing employment in the United States in the same position with the same employer and visa classification.  Forcing employers to replace employees in this situation may cause undue financial hardship.  For individual L-1B applicants, consular officers can refer to Part II, Question 2 of the approved Form I-129 to determine if the applicant is continuing in "previously approved employment without change with the same employer." ████████████████████████████████████████ ██████████████████████████████████████████

C.  Applicants travelling temporarily as a technical expert or specialist meeting a critical infrastructure need.  The consular officer may determine that an L-1B applicant falls into this category if all three of the following indicators are present:

1.  The applicant's proposed job duties and specialized knowledge indicate the individual will provide significant and unique contributions to the petitioning company;

2.  The applicant's specialized knowledge is specifically related to a critical infrastructure need (**Note: Unlike for  H-1B and L-1A applicants, the position must be related to a critical infrastructure need**); AND

3. The applicant has spent multiple years with the company overseas, indicating a substantial knowledge and expertise within the organization that can only be replicated by a new employee within the company following extensive training that would cause the employer financial hardship.

8. **(**SBU**)**



9. (SBU)

10. (SBU)

11. (SBU)

12. (SBU)

13. (SBU) **GSS and Post website language:**  CA/VO/F is developing cleared language for use on GSS websites as well as embassy/consulate public webpages.  CA/VO/F will transmit this information to consular sections by email in the near future, but for now, consular sections should refrain from publicly posting any guidance included in this ALDAC.  Please consult your CA/VO/F analyst for further questions.

14. (SBU) **Not all "National Interest" Exceptions are "Mission Critical":**   Whether the applicant qualifies for a national exception is distinct from whether a particular case is "mission critical" as previously discussed (ref C).   Per previous guidance (ref D), posts not in Diplomacy Strong Phase Three should NOT resume routine visa services, including adjudication of the visa classifications covered by the Assistant Secretary's determination,  and should follow the phased resumption guidance.  However,  consular managers may, in their discretion, determine that a specific H-1B, H-2, J, or L application that is likely to meet the terms of the Assistant Secretary's determination for a national interest exception to P.P 10052 or another exception is also "mission critical."   An official determination of whether an applicant is eligible for a national interest exception can only be properly evaluated in the context of a visa adjudication; consular officers should not presume that an applicant is eligible for a national interest exception simply because a consular manager accepted the case as mission critical.

15. (SBU) **Clarification on how P.P. 10052 impacts individuals who have previously received NIVs in the suspended classifications:** On June 29, 2020, the President issued a Proclamation on Amendment to Proclamation 10052, which provided that the suspension of entry, which generally bars visa issuance in the specified visa classifications, shall apply only to an alien who is outside of the United States on the effective date of the Proclamation (June 24, 2020), and who "does not have a nonimmigrant visa, of any of the classifications specified in section 2 of this proclamation and pursuant to which the alien is seeking entry, that is valid on the effective date [June 24, 2020] of this proclamation," or other official travel document other than a visa (such as a transportation letter, an appropriate boarding foil, or an advance parole document) that is valid on the effective date.  This means that, absent eligibility for an exception, including an NIE, individuals outside the United States on June 24, with or without a valid visa, cannot be reissued a new visa in one of the suspended classifications.  If an applicant outside of the United States had a valid H-1B, H-2B, J-1, L or derivative visa on June 24, they are not subject to PP 10052 for the purposes of seeking admission to the United State until the visa expires, at which point the applicant would become subject to the proclamation. Individuals who were in the United States on June 24 are not subject to the proclamation.

16. (SBU) Consular sections should reach out to their VO/F analyst or the CA-VO-NIE@state.gov email with any questions.

SENSITIVE BUT UNCLASSIFIED

**Signature:**                    Pompeo

**Drafted By:** CA/VO

**Cleared By:** CA:Brownlee, Ian G

CA

CA

CA/VO:Ramotowski, Edward J

CA/VO

CA/VO/F

CA/VO/F/ET

CA/VO/F/IE

CA/VO/L

CA/VO/L/A

CA/VO/L/R

CA/VO/DO/KCC

CA/VO/DO/KCC

CA/EX

CA/P:Ball,

CA/FPP

L/CA

L/CA

M

AF/EX

EAP/EX

EUR-IO/EX/PMO

EUR/PGI

NEA-SCA/EX

WHA/EX

SES

**Approved By:** CA:Risch, Carl C

**Released By:** CA_FO

**XMT:** BASRAH, AMCONSUL; CARACAS, AMEMBASSY; CHENGDU, AMCONSUL; SANAA, AMEMBASSY; ST PETERSBURG, AMCONSUL; VLADIVOSTOK, AMCONSUL; ALEXANDRIA, AMCONSUL

**Dissemination Rule:** Archive Copy

**UNCLASSIFIED**
~~SBU~~

**UNCLASSIFIED**
~~SBU~~



| | |
|---|---|
| **MRN:** | 20 STATE 76312 |
| **Date/DTG:** | Aug 07, 2020 / 070004Z AUG 20 |
| **From:** | SECSTATE WASHDC |
| **Action:** | ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE *IMMEDIATE* |
| **E.O.:** | 13526 |
| **TAGS:** | CMGT, CVIS |
| **Captions:** | SENSITIVE |
| **Reference:** | A) 20 STATE 61886 |
| | B) 20 STATE 66820 |
| | C) 20 STATE 62808 |
| | D) 20 STATE 42180 |
| | E) 20 STATE 65080 |
| | F) 20 STATE 40968 |
| **Correction Reason:** | CORRECTED COPY: Corrected Copy. Please see the addition of paragraph 16. |
| **Subject:** | FURTHER IMPLEMENTATION PROCEDURES AND GUIDANCE FOR P. P. 10052 SUSPENDING ENTRY OF IMMIGRANTS AND NONIMMIGRANTS WHO PRESENT RISK TO THE U.S. LABOR MARKET DURING THE ECONOMIC RECOVERY FOLLOWING THE COVID-19 OUTBREAK (NATIONAL INTEREST EXCEPTIONS) |

1. (~~SBU~~) SUMMARY:  On May 6, 2020, the Secretary of State delegated to the Assistant Secretary for Consular Affairs the authority under P.P. 10014  to determine that an alien's entry into the United States would be in the national interest under that P.P. and its successor proclamations, including Presidential Proclamation (P.P.) 10052 (Labor Market P.P.s). Effective immediately, the Assistant Secretary has determined that Consular Section Chiefs (or those acting as Consular Section Chief in an official capacity due to the extended absence of the Consular Section Chief) may approve a national interest exception for certain nonimmigrant visa applications subject to the P.P. 10052 suspension upon concluding that the applicant's travel falls within the scope of one of the categories described in paragraph 3, as described below.  END SUMMARY.

2. (U) Background:  Presidential Proclamations (P.P.) 10014 and 10052 suspend the entry of certain persons who pose a risk of displacing and disadvantaging United States workers during the current economic recovery.  These actions were based on the President's determinations that unrestricted entry of certain aliens as nonimmigrants and immigrants would be detrimental to the interests of the United States (REF A).  Section 3 of P.P. 10052 excepts a range of individuals from visa and entry restrictions, including aliens whose travel would be in the national interest, as determined by the Secretary of State, the Secretary of Homeland Security (DHS), or their designees.  On May 6, the Secretary of State delegated to the Assistant Secretary

for Consular Affairs the authority to except individuals whose travel is in the U.S. national interest. Following consultation with DHS and the Department of Labor (DOL), the Assistant Secretary authorized consular section chiefs to approve national interest exceptions under PP 10052 to applicants whose travel falls within one of the categories described in the Assistant Secretary's determination. See REF B. REF B also advised consular officers that "[f]urther guidance expanding on who may also qualify for a national exception will be transmitted by SEPTEL." Following further consultation with DOL and DHS, the Assistant Secretary has determined that temporary travel by nonimmigrants in the following additional categories is in the national interest.

3. (SBU) **National Interest Exceptions-Nonimmigrants:** P.P. 10052 provides an exception for "any alien whose entry would be in the national interest as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees." Sec. 3(b)(iv). The proclamation separately notes that "[t]he consular officer shall determine in his or her discretion, whether a nonimmigrant has established his or her eligibility" for an exception to this proclamation, including a national interest exception. The below framework, supplementing and NOT replacing initial guidance (REF B), identifies categories of visa applicants who should, at this time, also be considered for a national interest exception based on the Assistant Secretary's determinations. These determinations are consistent with an interagency Agreement in Principle, regarding the use of the national interest exception authority, coordinated by the White House with the Departments of State, Labor, and Homeland Security.

4. (SBU) **Applicants for H-1B Visas:** Travel by H-1B applicants is in the national interest when the applicant falls within one of the following categories:

A. (SBU) Applicants seeking to resume ongoing employment in the United States in the same position with the same employer and visa classification. Forcing employers to replace employees in this situation may cause financial hardship. Consular officers can refer to Part II, Question 2 of the approved Form I-129 to determine if the applicant is continuing in "previously approved employment without change with the same employer." (See also KCC pre-screening support, paragraph 4)

B. (SBU) Technical specialists, senior level managers, and other workers whose travel is necessary to facilitate the immediate and continued economic recovery of the United States. Consular officers may determine that an H-1B applicant falls into this category when at least **two** of the following five indicators are present:

1. The petitioning employer has a continued need for the services or labor to be performed by the H-1B nonimmigrant in the United States. Labor Condition Applications (LCAs) approved by DOL during or after July 2020 are more likely to account for the effects of the COVID-19 pandemic on the U.S. labor market and the

petitioner's business; therefore, this indicator is only present for cases with an LCA approved during or after July 2020 as there is an indication that the petitioner still has a need for the H-1B worker.  For LCAs approved by DOL before July 2020, this indicator is only met if the consular officer is able to determine from the visa application the continuing need of petitioned workers with the U.S. employer.  Regardless of when the LCA was approved, if an applicant is currently performing or is able to perform the essential functions of the position for the prospective employer remotely from outside the United States, then this indicator is not present.  To verify that an H-1B worker is still needed by a petitioner, consular officers can either consider information provided during the interview, information from the employer included in the petition or, if fraud is suspected, request KCC to conduct a verification (see KCC support).  KCC will then verify with the employer whether the information provided on the LCA and I-129 petition is accurate.

2. The applicant's proposed job duties or position within the petitioning company indicate the individual will provide significant and unique contributions to an e**mployer meeting a critical infrastructure need.**  Critical infrastructure sectors are chemical, communications, dams, defense industrial base, emergency services, energy, financial services, food and agriculture, government facilities, healthcare and public health, information technology, nuclear reactors, transportation, and water systems.  Employment in a critical infrastructure sector alone is not sufficient; the consular officer must also establish that the applicant holds one of the two types of positions noted below:

> a.) **Senior level placement** within the petitioning organization or job duties reflecting performance of functions that are both unique and vital to the management and success of the overall business enterprise; OR

> b.) The applicant's **proposed job duties and specialized qualifications** indicate the individual will provide significant and unique contributions to the petitioning company.

3. The wage rate paid to the H-1B applicant meaningfully exceeds the prevailing wage rate (see Part F, Questions 10 and 11 of the LCA) by at least 15 percent.  When an H-1B applicant will receive a wage that meaningfully exceeds the prevailing wage, it suggests that the employee fills an important business need where an U.S. worker is not available.  (See "KCC pre-screening support" below).

4. The H-1B applicant's education, training and/or experience demonstrate unusual expertise in the specialty occupation in which the applicant will be employed.  For

example, an H-1B applicant with a doctorate or professional degree, or many years of relevant work experience, may have such advanced expertise in the relevant occupation as to make it more likely that he or she will perform critically important work for the petitioning employer.

5. Denial of the visa pursuant to P.P. 10052 will cause financial hardship to the U.S. employer. The following examples, to be assessed based on information from the visa application, are illustrative of what may constitute a financial hardship for an employer if a visa is denied: the employer's inability to meet financial or contractual obligations; the employer's inability to continue its business; or a delay or other impediment to the employer's ability to return to its pre-COVID-19 level of operations. Officers may consider information provided during the interview or information from the employer included in the petition application file in PIMS. Please note that consular officers must NOT require any documentation from the petitioner in order to make this determination. Consequently, consular officers may not often have sufficient information to determine this indicator is met.

5. (~~SBU~~) **Applicants for H-2B Visas:** Travel by H-2B applicants is in the national interest when necessary to facilitate the immediate and continued economic recovery of the United States. Consular officers may determine that an H-2B applicant falls into this category when **TWO** of the following three indicators are present:

A. The applicant was previously employed and trained by the petitioning U.S. employer. The applicant must have previously worked for the petitioning U.S. employer under **two or more H-2B (named or unnamed) petitions**. U.S. employers dedicate substantial time and resources to training seasonal/temporary staff, and denying visas to the most experienced returning workers may cause financial hardship to the U.S. business.

B. The applicant is traveling based on a TLC that reflects continued need for the worker. TLCs approved by DOL during or after July 2020 are more likely to account for the effects of the COVID-19 pandemic on the U.S. labor market and the petitioner's business, and therefore this indicator is only present for cases with a TLC approved during or after July 2020 as there is an indication that the petitioner still has a need for the H-2B worker. For TLCs approved by DOL before July 2020, this indicator is only met if the consular officer is able to determine from the visa application the continuing need of petitioned workers with the U.S. employer. In considering this indicator, consular officers should review the KCC-entered CEAC notes, as mentioned in previous guidance (ref E).

C.   Denial of the visa pursuant to P.P. 10052 will cause financial hardship to the U.S. employer.  The following examples, to be assessed based on information from the visa application, are illustrative of what may constitute a financial hardship for an employer if a visa is denied: the employer's inability to meet financial or contractual obligations; the employer's inability to continue its business; or a delay or other impediment to the employer's ability to return to its pre-COVID-19 level of operations.  Officers may consider information provided during the interview or information from the employer included in the petition application file in PIMS.  Please note that consular officers must NOT require any documentation from the petitioner in order to make this determination.  Consequently, consular officers may not often have sufficient information to determine this indicator is met.

6. (~~SBU~~) **Applicants for L-1A Visas:** Travel by L-1A applicants is in the national interest when the applicant falls within one of the following categories:

A.   Employers associated with the United States Government:  Travel based on a request from a U.S. government agency or entity to meet critical foreign policy objectives or satisfy treaty or contractual obligations.  An example of this would be supporting U.S. military base construction or IT infrastructure.

B.   Applicants seeking to resume ongoing employment in the United States in the same position with the same employer and visa classification.  Forcing employers to replace employees in this situation may cause undue financial hardship.  For individual L-1A applicants, consular officers can refer to Part II, Question 2 of the approved Form I-129 to determine if the applicant is continuing in "previously approved employment without change with the same employer."  (See "KCC support" below)

C.   Applicants travelling temporarily as a senior level executive or manager filling a critical business need of an employer meeting a **critical infrastructure** need**.**  Critical infrastructure sectors include chemical, communications, dams, defense industrial base, emergency services, energy, financial services, food and agriculture, government facilities, healthcare and public health, information technology, nuclear reactors, transportation, and water systems.   The consular officer may determine that an L-1A applicant falls into this category when at least two of the following three indicators are present AND the applicant is not establishing a new office in the United States:

1.  Will be a senior-level executive or manager;

2.  Has spent multiple years with the company overseas, indicating a substantial knowledge and expertise within the organization that can only be replicated by a new employee within the company following extensive training that would cause the employer financial hardship; OR

3.  Will fill a critical business need for a company meeting a critical infrastructure
need.

L-1A applicants seeking to establish a new office in the United States likely do NOT fall into this category, unless two of the three criteria are met AND the new office will employ, directly or indirectly, five or more U.S. workers.

7. (~~SBU~~) **Applicants for L-1B Visas**: Travel by L-1 applicants is in the national interest when the applicant falls within one of the following categories:

A.  Employers associated with the United States Government:  Travel based on a request from a U.S. government agency or entity to meet critical foreign policy objectives or satisfy treaty or contractual obligations.  An example of this would be supporting U.S. military base construction or IT infrastructure.

B.  Applicants seeking to resume ongoing employment in the United States in the same position with the same employer and visa classification.  Forcing employers to replace employees in this situation may cause undue financial hardship.  For individual L-1B applicants, consular officers can refer to Part II, Question 2 of the approved Form I-129 to determine if the applicant is continuing in "previously approved employment without change with the same employer."  Consular officers can either confirm this through reviewing PCQS CLAIMS III or reviewing a note entered by KCC in the CEAC.

C.  Applicants travelling temporarily as a technical expert or specialist meeting a critical infrastructure need.  The consular officer may determine that an L-1B applicant falls into this category if all three of the following indicators are present:

1.  The applicant's proposed job duties and specialized knowledge indicate the individual will provide significant and unique contributions to the petitioning company;

2.  The applicant's specialized knowledge is specifically related to a critical infrastructure need (**Note: Unlike for  H-1B and L-1A applicants, the position**

**must be related to a critical infrastructure need)**; AND

3. The applicant has spent multiple years with the company overseas, indicating a substantial knowledge and expertise within the organization that can only be replicated by a new employee within the company following extensive training that would cause the employer financial hardship.

8. (~~SBU~~) **KCC Support**:  KCC, as part of its routine pre-screening, will also review the petition and LCAs (for H-1B cases) and enter notes in the CEAC DS-160 to assist officers in determining whether an applicant might benefit from an exception.  KCC provides this service for consular officers as a way to consolidate certain information in one convenient location to streamline processing; officers at post remain the finders of fact in visa adjudications.  KCC CEAC notes for H-1B cases will detail:  the date of LCA approval; comparison of "prevailing wage" vs the offered salary; and whether the applicant is returning to the same employer.  A sample H-1B note would be:  LCA Approval Date = 07JUL2020; Offered wage = 29% over prevailing; Returning worker, SAME EMPLOYER.  KCC notes for L-1A cases will only note if the applicant is returning to the same employer.  A sample L-1A note would be:  NEW EMPLOYMENT – NOT RETURNING WORKER FOR SAME EMPLOYER.

9. (~~SBU~~) Pre-screening notes will only be entered for H-1B and individual L-1s.  Blanket L applications will <u>not</u> undergo KCC pre-screening.

10. (~~SBU~~) In order to verify a continuing need for a petitioned worker, consular staff may consider information provided during the interview or information from the employer included in the petition file in PIMS as they would in any normal adjudication.  As per usual practice, if fraud is suspected, consular officers may also request KCC conduct such a verification by transferring ECAS cases to DOS/CA/VO/DO/KCC.  Consular sections should **only** submit a verification request to KCC if this indicator is determinative in leading to an exception (i.e., the applicant is eligible for the visa and will qualify for an NIE if this indicator is present).  Given the likely volume of requests, and the impact of COVID-19 on KCC operations, delays in responses should be expected.

11. (~~SBU~~) Consular officers can also identify applicants resuming ongoing employment by viewing USCIS adjudications in the PCQS portal in the CCD.  Select CLAIMS 3 and after entering the relevant petitioner number locate "Petition C6 Chg.  In Employment and other is Y."  If the letter Y is NOT entered next to this field then the worker is returning to the same employer.

12. (~~SBU~~) Consular Section Chiefs are responsible for establishing and documenting a process under which they will assess whether an individual's travel falls within the scope of the Assistant Secretary's determination relating to travel in the U.S. national interest.  Case notes should clearly state the criteria that was met for the applicant to be covered by the Assistant Secretary's national interest determination.  A Visa Referral or Priority Appointment request (PAR) may be useful in flagging urgent travel for a visa applicant but is insufficient on its own to establish that a case is covered by the Assistant Secretary's national interest determination.  All other FAM guidance regarding the referral process still applies.  Guidance on entering

required CLASS Lookouts has been previously provided (See paragraph 12 of REF C).

13. (SBU) **GSS and Post website language:**  CA/VO/F is developing cleared language for use on GSS websites as well as embassy/consulate public webpages.  CA/VO/F will transmit this information to consular sections by email in the near future, but for now, consular sections should refrain from publicly posting any guidance included in this ALDAC.  Please consult your CA/VO/F analyst for further questions.

14. (SBU) **Not all "National Interest" Exceptions are "Mission Critical":**   Whether the applicant qualifies for a national exception is distinct from whether a particular case is "mission critical" as previously discussed (ref C).    Per previous guidance (ref D), posts not in Diplomacy Strong Phase Three should NOT resume routine visa services, including adjudication of the visa classifications covered by the Assistant Secretary's determination,  and should follow the phased resumption guidance.  However,  consular managers may, in their discretion, determine that a specific H-1B, H-2, J, or L application that is likely to meet the terms of the Assistant Secretary's determination for a national interest exception to P.P 10052 or another exception is also "mission critical."  An official determination of whether an applicant is eligible for a national interest exception can only be properly evaluated in the context of a visa adjudication; consular officers should not presume that an applicant is eligible for a national interest exception simply because a consular manager accepted the case as mission critical.

15. (SBU) **Clarification on how P.P. 10052 impacts individuals who have previously received NIVs in the suspended classifications:** On June 29, 2020, the President issued a Proclamation on Amendment to Proclamation 10052, which provided that the suspension of entry, which generally bars visa issuance in the specified visa classifications, shall apply only to an alien who is outside of the United States on the effective date of the Proclamation (June 24, 2020), and who "does not have a nonimmigrant visa, of any of the classifications specified in section 2 of this proclamation and pursuant to which the alien is seeking entry, that is valid on the effective date [June 24, 2020] of this proclamation," or other official travel document other than a visa (such as a transportation letter, an appropriate boarding foil, or an advance parole document) that is valid on the effective date.  This means that, absent eligibility for an exception, including an NIE, individuals outside the United States on June 24, with or without a valid visa, cannot be reissued a new visa in one of the suspended classifications.  If an applicant outside of the United States had a valid H-1B, H-2B, J-1, L or derivative visa on June 24, they are not subject to PP 10052 for the purposes of seeking admission to the United State until the visa expires, at which point the applicant would become subject to the proclamation.  Individuals who were in the United States on June 24 are not subject to the proclamation.

16.(SBU) **Individuals Subject to Multiple Suspensions**: Individuals who qualify for a national interest exception to P.P. 10052 under criteria discussed in this cable should also be considered as qualifying for national interest exceptions under Presidential Proclamations 9984 (China), 9992 (Iran), 9993 (Schengen), 9996 (United Kingdom/Ireland), and 10041 (Brazil) should the traveler be subject to the provisions of such regional proclamations. Travelers who do not qualify for a national interest exception under the criteria in this cable must qualify for an NIE for the regional PPs via the guidance in 20 State 49966 or 20 State 66326. Please list all P.P.s that apply to an individual in case notes and in the NIE1 CLASS lookout.

17.(SBU) Consular sections should reach out to their VO/F analyst or the CA-VO-NIE@state.gov email with any questions.

SENSITIVE BUT UNCLASSIFIED

| | |
|---|---|
| **Signature:** | Pompeo |

| | |
|---|---|
| **Drafted By:** | CA/VO:█████████ |
| **Cleared By:** | CA:Brownlee, Ian G |
| | CA:█████████ |
| | CA:█████████ |
| | CA/VO:Ramotowski, Edward J |
| | CA/VO:█████████ |
| | CA/VO/F:█████████ |
| | CA/VO/F/ET:█████████ |
| | CA/VO/F/IE:█████████ |
| | CA/VO/L:█████████ |
| | CA/VO/L/A:█████████ |
| | CA/VO/L/R:█████████ |
| | CA/VO/DO/KCC:█████████ |
| | CA/VO/DO/KCC:█████████ |
| | CA/EX:█████████ |
| | CA/P:█████████ |
| | CA/FPP:█████████ |
| | L/CA:█████████ |
| | L/CA:█████████ |
| | M:█████████ |
| | AF/EX:█████████ |
| | EAP/EX:█████████ |
| | EUR-IO/EX/PMO:█████████ |
| | EUR/PGI:█████████ |
| | NEA-SCA/EX:█████████ |
| | WHA/EX:█████████ |
| | SES:█████████ |
| **Approved By:** | CA:Risch, Carl C |
| **Released By:** | DOM CA_FO:█████████ |
| **XMT:** | BASRAH, AMCONSUL; CARACAS, AMEMBASSY; CHENGDU, AMCONSUL; SANAA, AMEMBASSY; ST PETERSBURG, AMCONSUL; VLADIVOSTOK, AMCONSUL; ALEXANDRIA, AMCONSUL |

| | |
|---|---|
| **Dissemination Rule:** | Archive Copy |

**UNCLASSIFIED**

SBU

REC1 | APPROVE | 5-5-2020

202005214

**United States Department of State**

*Washington, D.C.  20520*



<u>UNCLASSIFIED</u>

April 30, 2020

**ACTION MEMO FOR THE SECRETARY**

FROM:      CA – Carl C. Risch

SUBJECT:   Delegating Authority under Presidential Proclamation (PP) "Suspending Entry of
           Immigrants Who Present Risk to the U.S. Labor Market During the Economic
           Recovery Following the COVID-19 Outbreak."

**BLUF:**     CA seeks a delegation of your authorities under the PP suspending the entry of
           immigrants.  Such delegation would enable the Department to efficiently
           implement this proclamation.

**Recommendation**
That you sign the delegation under the PP to authorize the Assistant Secretary for Consular
Affairs or his designee, to the extent authorized by law, to determine:  (1) that work to be
performed by an immigrant is essential to combating, recovering from, or otherwise alleviating
the effects of the COVID-19 outbreak; (2) that an immigrant's entry would further important
U.S. law enforcement objectives, based on a recommendation by the Attorney General or his
designee; and (3) that an immigrant's entry into the United States would be in the national
interest.  (Approve/Disapprove by 5/5/2020)

**Background**
On April 22, the President issued a proclamation "Suspending Entry of Immigrants Who Present
Risk to the U.S. Labor Market During the Economic Recovery Following the COVID-19
Outbreak," pursuant to his authority under sections 212(f) of the Immigration and Nationality
Act (INA) and other authorities.  This action was based on the President's determination that
entry of immigrants during the economic recovery following the COVID-19 outbreak would be
detrimental to the interests of the United States.

The Proclamation went into effect at 11:59 p.m. EDT on April 23 and expires after 60 days,
unless extended by the President.  CA anticipates any cases requiring exceptions will be due to
emergency or time-sensitive constraints, such as children who are close to "aging out" of their
immigration category or individuals requiring urgent medical care.  Furthermore, as consular
sections worldwide have suspended routine services because of the pandemic, posts are only
adjudicating emergency or mission critical cases.

<u>UNCLASSIFIED</u>

Section 2(b) of the PP excepts several categories of individuals from visa and entry restriction, including three categories that would require a determination by you or your designee or by DHS: aliens performing essential medical work; aliens furthering important U.S. law enforcement objectives, based on a recommendation from the Attorney General or his designee; and aliens whose entry would be in the national interest. We anticipate DHS will delegate authority for exceptions under this PP to its port directors as they have for recent similar proclamations such as PP 9984, PP 9992, and PP 9993, which suspend the entry of persons posing a risk of transmitting COVID-19.

We expect individuals eligible for these exceptions will require a quick determination to facilitate timely visa issuance, particularly where applicants have urgent medical needs or when a delay may cause them to become ineligible to immigrate for age-related reasons. If you approve the proposed delegation, CA will work with M and L to develop procedures for exercising the delegated authority. The Secretary, Deputy Secretary, Under Secretary for Management, and Deputy Under Secretary for Management may exercise any function or authority delegated by this delegation. Individuals issued visas pursuant to an exception under the PP would not be exempted from any U.S. medical screening and/or quarantine requirements and would receive all required security vetting.

Attachments:
      Tab 1 – Delegation of Authority
      Tab 2 – Presidential Proclamation Text

UNCLASSIFIED
-3-

Approved:     CA – Carl C. Risch                          (CCR)

Drafted:      CA/VO/L/R – ███████████████

Cleared:      CA: ██████                                  (OK)
              CA: ████████                                (OK)
              CA/VO: ERamotowski                          (OK)
              CA/VO: ████                                 (OK)
              CA/VO/L ██████                              (OK)
              CA/VO/F: ██████                             (OK)
              CA/P██                                      (OK)
              CA/EX: Benning                              (OK)
              CA/EX: ██████                               (OK)
              L/M: ██████                                 (OK)
              L/CA: ████                                  (OK)
              M: ██████                                   (OK)
              D: ██████                                   (OK)
              P██████                                     (OK)
              S/P: ██████                                 (OK)
              R: J██████                                  (OK)
              GPA: ██████                                 (OK)
              AF/FO                                       (INFO)
              EAP/FO                                      (INFO)
              SCA/FO                                      (INFO)
              NEA/FO                                      (INFO)
              EUR/FO                                      (INFO)
              WHA/FO                                      (INFO)

CA Tracking Number:  T0834-20

UNCLASSIFIED

**DEPARTMENT OF STATE**
**Delegation of Authority No. _____**

### Delegation by the Secretary of State
### of Authorities under the Presidential Proclamation Suspending Entry of
### Immigrants Who Present Risk to the U.S. Labor Market During the
### Economic Recovery Following the COVID-19 Outbreak

By virtue of the authority vested in the Secretary of State, including Section 1 of the State Department Basic Authorities Act, as amended (22 U.S.C. § 2651a), and the Presidential Proclamation Suspending Entry of Immigrants Who Present Risk to the U.S. Labor Market During the Economic Recovery Following the COVID-19 Outbreak, I hereby delegate to the Assistant Secretary for Consular Affairs, to the extent authorized by law, the following authorities under said Presidential Proclamation:

1) The authority under section 2(b)(ii) to determine that work to be performed by an immigrant is essential to combating, recovering from, or otherwise alleviating the effects of the COVID-19 outbreak;

2) The authority under section 2(b)(vi) to determine that an immigrant's entry would further important United States law enforcement objectives, based on a recommendation of the Attorney General or his designee; and

3) The authority under section 2(b)(ix) to determine that an alien's entry into the United States would be in the national interest.

The Secretary, Deputy Secretary, Under Secretary for Management, and Deputy Under Secretary for Management may exercise any function or authority delegated by this delegation. The authorities delegated herein may be re-delegated.

This Delegation of Authority does not supersede or otherwise affect any other delegation of authority currently in effect and will expire upon the expiration of the Presidential Proclamation.

MAY 5 2020

_____
Date Signed

_____
Michael R. Pompeo,
Secretary of State,
Department of State.

UNCLASSIFIED



**PROCLAMATIONS**

# Proclamation Suspending Entry of Immigrants Who Present Risk to the U.S. Labor Market During the Economic Recovery Following the COVID-19 Outbreak

Issued on: April 22, 2020

The 2019 Novel Coronavirus (COVID-19) has significantly disrupted the livelihoods of Americans.  In Proclamation 9994 of March 13, 2020 (Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak), I declared that the COVID–19 outbreak in the United States constituted a national emergency, beginning March 1, 2020.  Since then, the American people have united behind a policy of mitigation strategies, including social distancing, to flatten the curve of infections and reduce the spread of SARS–CoV–2, the virus that causes COVID-19.  This needed behavioral shift has taken a toll on the United States economy, with national unemployment claims reaching historic levels.  In the days between the national emergency declaration and April 11, 2020, more than 22 million Americans have filed for unemployment.

In the administration of our Nation's immigration system, we must be mindful of the impact of foreign workers on the United States labor market, particularly in an environment of high domestic unemployment and depressed demand for labor.  We must also conserve critical State Department resources so that consular officers may continue to provide services to United States citizens abroad.  Even with their ranks diminished by staffing disruptions caused by the pandemic, consular officers continue to provide assistance to United States citizens, including through the ongoing evacuation of many Americans stranded overseas.

I have determined that, without intervention, the United States faces a potentially protracted economic recovery with persistently high unemployment if labor supply

outpaces labor demand.  Excess labor supply affects all workers and potential workers, but it is particularly harmful to workers at the margin between employment and unemployment, who are typically "last in" during an economic expansion and "first out" during an economic contraction.  In recent years, these workers have been disproportionately represented by historically disadvantaged groups, including African Americans and other minorities, those without a college degree, and the disabled.  These are the workers who, at the margin between employment and unemployment, are likely to bear the burden of excess labor supply disproportionately.

Furthermore, lawful permanent residents, once admitted, are granted "open-market" employment authorization documents, allowing them immediate eligibility to compete for almost any job, in any sector of the economy.  There is no way to protect already disadvantaged and unemployed Americans from the threat of competition for scarce jobs from new lawful permanent residents by directing those new residents to particular economic sectors with a demonstrated need not met by the existing labor supply.  Existing immigrant visa processing protections are inadequate for recovery from the COVID-19 outbreak.  The vast majority of immigrant visa categories do not require employers to account for displacement of United States workers.  While some employment-based visas contain a labor certification requirement, because visa issuance happens substantially after the certification is completed, the labor certification process cannot adequately capture the status of the labor market today.  Moreover, introducing additional permanent residents when our healthcare resources are limited puts strain on the finite limits of our healthcare system at a time when we need to prioritize Americans and the existing immigrant population.  In light of the above, I have determined that the entry, during the next 60 days, of certain aliens as immigrants would be detrimental to the interests of the United States.

NOW, THEREFORE, I, DONALD J. TRUMP, President of the United States, by the authority vested in me by the Constitution and the laws of the United States of America, including sections 212(f) and 215(a) of the Immigration and Nationality Act, 8 U.S.C. 1182(f) and 1185(a), and section 301 of title 3, United States Code, hereby find that the entry into the United States of persons described in section 1 of this proclamation would, except as provided for in section 2 of this proclamation, be detrimental to the interests of the United States, and that their entry should be subject to certain restrictions, limitations, and exceptions.  I therefore hereby proclaim the following:

Section 1.  Suspension and Limitation on Entry.  The entry into the United States of aliens as immigrants is hereby suspended and limited subject to section 2 of this proclamation.

Sec. 2.  <u>Scope of Suspension and Limitation on Entry</u>.  (a)  The suspension and limitation on entry pursuant to section 1 of this proclamation shall apply only to aliens who:

(i)    are outside the United States on the effective date of this proclamation;

(ii)   do not have an immigrant visa that is valid on the effective date of this proclamation; and

(iii)  do not have an official travel document other than a visa (such as a transportation letter, an appropriate boarding foil, or an advance parole document) that is valid on the effective date of this proclamation or issued on any date thereafter that permits him or her to travel to the United States and seek entry or admission.

(b)  The suspension and limitation on entry pursuant to section 1 of this proclamation shall not apply to:

(i)    any lawful permanent resident of the United States;

(ii)   any alien seeking to enter the United States on an immigrant visa as a physician, nurse, or other healthcare professional; to perform medical research or other research intended to combat the spread of COVID-19; or to perform work essential to combating, recovering from, or otherwise alleviating the effects of the COVID-19 outbreak, as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees;  and any spouse and unmarried children under 21 years old of any such alien who are accompanying or following to join the alien;

(iii)  any alien applying for a visa to enter the United States pursuant to the EB-5 Immigrant Investor Program;

(iv)   any alien who is the spouse of a United States citizen;

(v)    any alien who is under 21 years old and is the child of a United States citizen, or who is a prospective adoptee seeking to enter the United States pursuant to the IR-4 or IH-4 visa classifications;

(vi)   any alien whose entry would further important United States law enforcement objectives, as determined by the Secretary of State, the Secretary of Homeland Security,

or their respective designees, based on a recommendation of the Attorney General or his designee;

(vii)   any member of the United States Armed Forces and any spouse and children of a member of the United States Armed Forces;

(viii)  any alien seeking to enter the United States pursuant to a Special Immigrant Visa in the SI or SQ classification, subject to such conditions as the Secretary of State may impose, and any spouse and children of any such individual; or

(ix)    any alien whose entry would be in the national interest, as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees.

Sec. 3.  Implementation and Enforcement.  (a)  The consular officer shall determine, in his or her discretion, whether an immigrant has established his or her eligibility for an exception in section 2(b) of this proclamation.  The Secretary of State shall implement this proclamation as it applies to visas pursuant to such procedures as the Secretary of State, in consultation with the Secretary of Homeland Security, may establish in the Secretary of State's discretion.  The Secretary of Homeland Security shall implement this proclamation as it applies to the entry of aliens pursuant to such procedures as the Secretary of Homeland Security, in consultation with the Secretary of State, may establish in the Secretary of Homeland Security's discretion.

(b)  An alien who circumvents the application of this proclamation through fraud, willful misrepresentation of a material fact, or illegal entry shall be a priority for removal by the Department of Homeland Security.

(c)  Nothing in this proclamation shall be construed to limit the ability of an individual to seek asylum, refugee status, withholding of removal, or protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, consistent with the laws of the United States.

Sec. 4.  Termination.  This proclamation shall expire 60 days from its effective date and may be continued as necessary.  Whenever appropriate, but no later than 50 days from the effective date of this proclamation, the Secretary of Homeland Security shall, in consultation with the Secretary of State and the Secretary of Labor, recommend whether I should continue or modify this proclamation.

Sec. 5.  Effective Date.  This proclamation is effective at 11:59 p.m. eastern daylight time on April 23, 2020.

Sec. 6.  Additional Measures.  Within 30 days of the effective date of this proclamation, the Secretary of Labor and the Secretary of Homeland Security, in consultation with the Secretary of State, shall review nonimmigrant programs and shall recommend to me other measures appropriate to stimulate the United States economy and ensure the prioritization, hiring, and employment of United States workers.

Sec. 7.  Severability.  It is the policy of the United States to enforce this proclamation to the maximum extent possible to advance the interests of the United States. Accordingly:

(a)  if any provision of this proclamation, or the application of any provision to any person or circumstance, is held to be invalid, the remainder of this proclamation and the application of its provisions to any other persons or circumstances shall not be affected thereby; and

(b)  if any provision of this proclamation, or the application of any provision to any person or circumstance, is held to be invalid because of the lack of certain procedural requirements, the relevant executive branch officials shall implement those procedural requirements to conform with existing law and with any applicable court orders.

Sec. 8.  General Provisions.  (a)  Nothing in this proclamation shall be construed to impair or otherwise affect:

(i)   the authority granted by law to an executive department or agency, or the head thereof; or,

(ii)  the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b)  This proclamation shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c)  This proclamation is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the

United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

IN WITNESS WHEREOF, I have hereunto set my hand this
twenty-second day of April, in the year of our Lord two thousand twenty, and of the Independence of the United States of America the two hundred and forty-fourth.

DONALD J. TRUMP

ACTION ADDRESSES:  ROUTINE ALDAC

CAPTIONS:  ~~SENSITIVE BUT UNCLASSIFIED~~

TAGS:  CMGT, CVIS

REFERENCE: A) 20 STATE 22420
     B) 20 STATE 27936
     C) 20 STATE 28420
     D) 20 STATE 30920
     E) 20 STATE 34630
     F) 20 STATE 37592

SUBJECT:  PRESIDENTIAL PROCLAMATION SUSPENDING ENTRY OF IMMIGRANTS WHO PRESENT RISK TO THE U.S. LABOR MARKET DURING THE ECONOMIC RECOVERY FOLLOWING THE COVID-19 OUTBREAK

1.  (U) SUMMARY:  On April 22, 2020, the President issued a Presidential Proclamation (P.P.) titled "Suspending Entry of Immigrants Who Present Risk to the U.S. Labor Market During the Economic Recovery Following the COVID-19 Outbreak."  This P.P. is effective at 11:59 p.m. EDT on April 23, 2020 and expires in 60 days, unless continued by the President.  The earlier COVID-19-related proclamations, P.P.s 9984, 9992, 9993, and 9996, as well as the COVID-19-related guidance set forth in Refs A through F, remain in effect, subject to the additional guidance below.  All posts and AIT have already suspended routine nonimmigrant and immigrant visa services due to the COVID-19 pandemic, but continue to provide mission-critical and emergency visa services.  Posts should continue to provide mission-critical and emergency visa services for applicants meeting the exception criteria to the COVID-19 P.P.s, including this new P.P., to the extent they are able, subject to local conditions and restrictions.  Providing emergency services to U.S. citizens remains the top priority for consular sections.  END SUMMARY.

2.  (U) The President issued this P.P. pursuant to his authority under sections 212(f) and 215(a) of the Immigration and Nationality Act (INA) and other authorities, to suspend the entry into the United States of aliens as immigrants, except those set forth in paragraph 3 below, for 60 days.  This suspension and limitation on entry only applies to aliens who:  (a) are outside the United States on April 23, 2020; (b) do not possess an immigrant visa that is valid on April 23, 2020; and (c) do not have an official travel document other than a visa (such as a transportation letter, boarding foil, or advance parole document) that is valid on April 23, 2020 or issued on any date thereafter that permits him or her to travel to the United States and seek entry or admission.  The effective date of the new proclamation is 11:59 p.m., Eastern Daylight Time, April 23, 2020.  This proclamation will expire on June 22, 2020, 60 days from its effective date of April 23, 2020, unless continued by the President.

3.  (U) Under this proclamation, in addition to the carve-outs for aliens in the United States or possessing a valid immigrant visa or other travel document on the effective date, as described in paragraph 2, the suspension of entry also does not apply to:

a. Any lawful permanent resident of the United States;
b. Any alien seeking to enter the United States:  on an immigrant visa as a physician, nurse, or other healthcare professional; to perform medical research or other research intended to combat the spread of COVID-19; or to perform work essential to combating, recovering from, or otherwise alleviating the effects of the COVID-19 outbreak, as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees; and any spouse and unmarried children under 21 years old of any such alien who are accompanying or following to join the alien;
c. Any alien applying for a visa to enter the United States pursuant to the EB-5 Immigrant Investor Program;
d. Any alien who is the spouse of a U.S. citizen;
e. Any alien who is under 21 years old and is the child of a U.S. citizen, or who is a prospective adoptee seeking to enter the United States pursuant to the IR-4 or IH-4 visa classifications;
f. Any alien whose entry would further important U.S. law enforcement objectives, as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees, based on a recommendation of the Attorney General or his designee;
g. Any member of the U.S. Armed Forces and any spouse and children of a member of the U.S. Armed Forces;
h. Any alien seeking to enter the United States pursuant to a Special Immigrant Visa in the SI or SQ classification, subject to such conditions as the Secretary of State may impose, and any spouse and children of any such individual; or
i. Any alien whose entry would be in the national interest, as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees.

4. (SBU) When issuing a visa pursuant to an exception listed above, please thoroughly document which exception applies to the applicant in your case notes.  Visas should be annotated to state, "Exception under PP on Risk to Labor Market."   Exceptions listed in paragraph 3 sub-paragraphs a, c, d, e, and h are self-evident based on the immigrant visa category – in those cases, normal case notes (and above annotation) will suffice.  For the exception listed in paragraph 3.g., officers should indicate in the case note the applicant's military status.

5. (SBU) Paragraph 3.b., above, describes the exception covering aliens applying for immigrant visas as physicians, nurses, and other healthcare professionals, or to perform medical research or other research intended to combat the spread of COVID-19.  You may determine eligibility for those exceptions based on the DHS-approved petition and any other relevant information in the visa application, as well as information elicited during the visa interview, which constitutes part of the application.  You may consult with consular managers at post as needed when assessing eligibility for such exceptions, including to ensure consistency in determinations.

6. (SBU) Paragraph 3.b., above, also describes the exception for aliens who would "perform work essential to combating, recovering from, or otherwise alleviating the effects of the COVID-19 outbreak."  Determinations under this aspect of the exception require Department approval.  If

you believe an immigrant visa applicant may be eligible for this exception, you must follow the following procedure:

    a. The adjudicating officer identifies a case that appears to fall within this section and gains consular manager concurrence.
    b. The consular section sends information about the applicant's case, including a detailed explanation of the work the applicant intends to perform and relevant qualifications, to CA-VO-F-IE@state.gov.
    c. Post, in conjunction with the VO/F analyst, drafts and submits a memorandum and transmittal letter to the Secretary's designee to approve the exception.
    d. VO/F notifies post of the Secretary's or his designee's decision regarding the exception.
    e. If the exception request is approved, post issues the visa and annotates it per the instructions in paragraph 4.

7. (SBU) The national interest (i) and law enforcement (f) exceptions must be determined by the Secretary of State, Secretary of Homeland Security, or their respective designee.  If you believe an immigrant visa applicant is covered by this P.P., the applicant's travel to the United States would be in the national interest or would further important U.S. law enforcement objectives, and the applicant cannot wait until the expiration of the P.P. before traveling to the United States, you must follow the following procedure:

    a. The adjudicating officer, normally with input from USG counterparts, identifies a case in which a national interest or law enforcement exception may apply and gains consular manager concurrence.
    b. The consular section sends information about the applicant's case, including the purpose of travel, itinerary, and justification, to CA-VO-F-IE@state.gov.
    c. Post, in conjunction with the VO/F analyst, drafts and submits a memorandum and transmittal letter to the Secretary's designee to approve the exception, with concurrence from the regional bureau as warranted – and in the case of a law enforcement exception, with the recommendation of the Attorney General or his designee.
    d. VO/F notifies post of the Secretary's or his designee's decision regarding the exception.
    e. If the exception request is approved, post issues the visa and annotates it per the instructions in paragraph 4.

8. (SBU) Requests for the national interest and law enforcement exceptions are expected to be rare, and the process may take several days.  Due to the temporary nature of the proclamation, it is expected that applicants who are eligible for national interest and law enforcement exceptions will have an urgent need for travel.  Any travelers should be aware that they may be subject to a 14-day quarantine upon arrival in the United States.  Examples of possible national interest exceptions include medical emergencies, age-out cases where the beneficiary subject to aging out is the principal applicant or accompanying or following to join a principal applicant who falls under an exception to this P.P., SE SIVs, or other cases where urgent travel is necessary and the immigrant visa is otherwise issuable.

9.  (SBU) Posts and AIT may continue to adjudicate immigrant visa 221(g) cases and █████ ████████ and issue the associated visas, for applicants who are covered by an exception to this P.P. as resources allow.  In addition, posts and AIT may issue replacement visas for applicants possessing a valid immigrant visa on April 23, 2020 who will be or were unable to use that immigrant visa during its validity period because of the COVID-19 outbreak, in accordance with the guidance in 9 FAM 504.10-5.

10.  (SBU) **Appointment Scheduling:**  Due to the worldwide suspension in routine visa services announced in mid-March (REF D), NVC and KCC have already suspended transmission to posts of most immigrant and diversity visa cases.  Scheduling of any appointments by NVC or KCC will resume only when a post is authorized to resume routine services.  Posts may continue to schedule mission critical and emergency immigrant visa interviews as resources allow and as described in REF D, but should applicants not qualify for an exception under the Proclamation, including in the national interest, post should refuse the case pursuant to INA 212(f) using refusal code ████████  Once the proclamation is no longer in effect, an applicant refused under ████████ may be considered for reconsideration of the refusal; if the case is reconsidered within one year of the ████████ refusal, the applicant is not required to file a new visa application or pay new fees.  As the ████████ refusal code is not yet in CLASS, posts should contact VO/F/IE if it has a case scheduled for interview while the code is not available.  VO will inform posts by email when the code is available in CLASS.  NVC will continue to process mission-critical cases, such as adoption and age-out cases, for action at post as resources are available.  Mission critical cases, such as age-outs, that do not already fall under an explicit exception may be considered on a case-by-case basis under the national interest exception.  GSS vendors at supported posts will continue to provide immigrant visa services, including collecting fees, website support, and call center services.  Posts and AIT should also review expedited appointment requests through their GSS system and public email and determine whether a case meets one of the exceptions set forth in this new P.P. and the prior COVID-19-related P.P.s.  Posts and AIT may contact their NVC liaison at NVCPost@state.gov to make adjustments to NVC expedite and scheduling procedures as needed.

11.  (SBU) Posts and AIT should not pursue revocations for individuals who have already been issued immigrant visas and are planning to travel to the United States before June 22, 2020, as aliens who already have an immigrant visa or other official travel document valid on April 23, 2020 are not subject to this suspension on entry.

12.  (SBU) **Nonimmigrant Visas:**  This P.P. does not suspend the entry of aliens as nonimmigrants, which includes K visa holders, nor does it suspend the entry of lawful permanent residents, which includes SB-1 applicants, nor temporary agricultural workers, which includes H2A visa holders.  However, within 30 days of April 23, 2020, the Secretary of Labor and Secretary of Homeland Security, in consultation with the Secretary of State, will review nonimmigrant programs and recommend other measures appropriate to stimulate the U.S. economy and ensure the prioritization, hiring, and employment of U.S. workers.  If there are any changes that affect nonimmigrant visas, the Visa Office will provide further guidance.

13. (SBU) Posts with questions regarding this guidance should contact their post liaison officer in VO/F.

SENSITIVE BUT UNCLASSIFIED

Approved:  Carl C. Risch                           (CCR)

Drafted CA/VO/F – ██████  ██████

Cleared:

      CA: ██████                           (OK)
      CA: ██████                           (OK)
      CA/VO – Edward J. Ramotowski      (OK)
      CA/VO: ██████                        (OK)
      CA/VO/F: ██████                      (OK)
      CA/VO/F: ██████                      (OK)
      CA/VO/L: ██████                      (OK)
      CA/VO/DO: ██████                     (OK)
      CA/VO/DO/NVC: ██████                 (OK)
      L/CA: ██████                         (OK)
      CA/P: ██████                         (OK)
      CA/P: ██████                         (OK)
      CA/EX: ██████                        (OK)
      CA/EX: ██████                        (OK)
      M: ██████                            (OK)
      P: ██████                            (OK)
      D: ██████                            (OK)
      GPA: ██████                          (OK)
      R: ██████                            (OK)
      AF/EX: ██████                        (OK)
      EAP/EX: ██████                       (OK)
      EUR-IO/EX: ██████                    (OK)
      NEA-SCA/EX: ██████                   (OK)
      WHA/EX: ██████                       (OK)
      CGRCU:                               (Info)



**United States Department of State**

*Washington, D.C. 20520*

SENSITIVE BUT UNCLASSIFIED                                          April 24, 2020

## ACTION MEMO FOR ASSISTANT SECRETARY RISCH

FROM:        VO – Edward J. Ramotowski

SUBJECT:     (SBU) Guidance on Implementing the Presidential Proclamation "Suspending Entry of Immigrants Who Present Risk to the U.S. Labor Market During the Economic Recovery Following the COVID-19 Outbreak."

**BLUF:**        The attached ALDAC will provide updated guidance to overseas posts on implementing the April 22, 2020 Presidential Proclamation suspending the entry of certain immigrants.

**Recommendation:**
(SBU) That you approve sending the attached ALDAC providing guidance on implementing the April 22, 2020 Presidential Proclamation suspending the entry of certain immigrants. (Approve/Disapprove by 04/24/20)

**Background**
(SBU) On April 22, 2020, President Trump issued a Presidential Proclamation (P.P.) suspending the entry of immigrants who present a risk to the U.S. labor market during the economic recovery following the COVID-19 outbreak.  The P.P. does not apply to aliens in the United States or holding a valid immigrant visa or other travel document at 11:59 p.m. on April 23, 2020 (the effective date).  The proclamation includes exceptions, including for LPRs, certain family members of U.S. citizens, certain healthcare professionals, EB-5 investors, U.S. military members and their families, Iraqi and Afghani Special Immigrant Visa applicants, and travel in the national interest or to further a U.S. law enforcement objective.  This ALDAC provides guidance to the field on the P.P., its exceptions, and implementation.  We have drafted an Action Memo to the Secretary recommending he delegate to you authority to determine whether certain exceptions, including those for certain medical professionals, travel for law enforcement purposes, and travel in the national interest, apply for purposes of this P.P.

Attachment:

    ALDAC

Approved: CA/VO – Edward J. Ramotowski          (EJR)

Drafted CA/VO/F – ███████ ████████████

Cleared:

    CA: IGBrownlee                        (OK)
    CA: ████████████                    (OK)
    CA: K████                            (OK)
    CA/VO: I████████                    (OK)
    CA/VO/F: █████████                  (OK)
    CA/VO/F: ███████                    (OK)
    CA/VO/DO/NVC: █████████            (OK)
    CA/VO/DO: ████████                  (OK)
    CA/VO/L: ███████                    (OK)
    CA/VO/L/R: ██████                  (OK)
    L/CA: ███████                      (OK)
    CA/EX: ████████                    (OK)
    CA/EX: ████████                    (OK)

**ALDAC:  IMPLEMENTATION PROCEDURES AND GUIDANCE FOR PRESIDENTIAL PROCLAMATION 10052 SUSPENDING ENTRY OF IMMIGRANTS AND NONIMMIGRANTS WHO PRESENT RISK TO THE U.S. LABOR MARKET DURING THE ECONOMIC RECOVERY FOLLOWING THE COVID-19 OUTBREAK**

| | |
|---|---|
| **E.O.:** | 13526 |
| **TAGS:** | CMGT, CVIS |
| **Captions:** | SENSITIVE |
| **Reference:** | A) 20 STATE 41350 |
| | B) 20 STATE 22420 |
| | C) 20 STATE 27936 |
| | D) 20 STATE 28420 |
| | E) 20 STATE 30920 |
| | F) 20 STATE 34630 |
| | G) 20 STATE 37592 |
| | H) 20 STATE 49966 |
| | I)) 20 STATE 40968 |

| | |
|---|---|
| **Subject:** | IMPLEMENTATION PROCEDURES AND GUIDANCE FOR PRESIDENTIAL PROCLAMATION 10052 SUSPENDING ENTRY OF ALIENS WHO PRESENT A RISK TO THE U.S. LABOR MARKET FOLLOWING THE CORONAVIRUS OUTBREAK |

1.  (U) SUMMARY:  On June 22, 2020, the President issued Presidential Proclamation 10052 (P.P. 10052) titled "Suspension of Entry of Aliens Who Present A Risk to the U.S. Labor Market Following the Coronavirus Outbreak."  P.P. 10052 extended the suspension of entry for certain immigrant visa (IV) categories previously suspended under Presidential Proclamation 10014, see Ref A, until December 31, 2020.  The guidance provided in Ref A remains in effect and is supplemented by IV-specific guidance included in this cable.  The provisions of  P.P. 10052 related to nonimmigrant (NIV) categories became effective at 12:01 a.m. EDT on June 24, 2020, and expire on December 31, 2020, unless continued by the President.  This P.P. effectively suspends issuance of certain H-1B, H-2B, J (for certain categories within the Exchange Visitor Program), and L NIVs.  No valid visas will be revoked under the proclamation.   The earlier COVID-19-related proclamations, P.P.s 9984, 9992, 9993, and 9996 related to suspension of entry of individuals who were physically present in certain foreign jurisdictions with significant COVID-19 outbreaks, as well as the COVID-19-related guidance set forth in Refs B through H, remain in effect, subject to the additional guidance below.  All posts and AIT have already suspended routine NIV and IV services due to the COVID-19 pandemic, but continue to provide mission-critical and emergency visa services.  Posts should continue to provide mission-critical and emergency visa services for applicants meeting the exception criteria to the COVID-19 P.P.s, including this new P.P., to the extent they are able under conditions and restrictions.  Providing emergency services to U.S. citizens remains the top priority for consular sections.  END SUMMARY.

SENSITIVE BUT UNCLASSIFIED

2.  (U) **Immigrant Visas Applicants**:  On April 22, 2020, the President issued P.P. 10014 pursuant to his authority under sections 212(f) and 215(a) of the Immigration and Nationality Act (INA) and other authorities, to suspend the entry into the United States of aliens as immigrants, except those set forth in paragraph 3 of REF A.  This new proclamation, P.P. 10052, extended P.P 10014's suspension of entry for certain immigrants through December 31, 2020, and may be continued.  Consular officers should continue to refer to REF A for guidance on applying the proclamation to IV applicants, as well as the following paragraph:

UPDATES to Guidance in 20 STATE 41350 (REF A): Consular officers may issue replacement visas to aliens whose original IV was valid on April 23, 2020, in accordance with the guidance in 9 FAM 504.10-5.  Further, P.P. 10014 only excepts children of U.S. citizens under the age of 21; therefore IR/CR-2s who benefit from CSPA but are 21 years of age or older cannot be issued an IV while P.P. 10014 is in effect unless the applicant meets another exception.  NVC will continue to schedule IR/CR-2 cases despite this fact, as there is no easy way for NVC to differentiate a CSPA case in the system.  P.P. 10052 requires that IV applicants who would "age-out" of visa eligibility as a result of P.P. 10014 to be considered for a national interest exception.  Accordingly, Posts should continue to submit for consideration potential age out cases where the applicant is within two-months or less of his or her 21st birthday using the guidance in paragraph 7 of REF A.  Given the suspension on routine visa processing, posts may only schedule emergency and mission-critical IV cases which include (IR/CR1, IR/CR2, IR/IH3, IR/IH4, SQ/SI-SIVs, certain employment-based healthcare professionals, and cases involving an applicant who is aging out of eligibility).

3.  (U) **Nonimmigrant Visa Applicants:**  In addition, in P.P. 10052, the President determined that the admission of certain workers, including certain cultural and educational program participants, within several nonimmigrant visa categories also poses a risk of displacing and disadvantaging United States workers during the current recovery, and therefore effectively suspended issuance of **H-1B, H-2B, J (only for certain categories within the Exchange Visitor Program (EVP), and L visas, including derivative family members.**  The suspension of issuance of J visas applies to those applicants who will be participating in au pair, intern, trainee, teacher, camp counselor, or summer work travel programs, as well as accompanying derivative family members.  P.P. 10052 does NOT suspend processing of J visa applications associated with any other J program.  The EVP categories NOT affected by P.P. 10052 are: alien physician, government visitor, international visitor, professor, research scholar, short-term scholar, specialist, secondary school student and college/university student.

Consular officers can identify a J visa applicant's program category by referring to block 4 of the DS-2019.  Any J visa applicant with a program category beginning with "Student" in block 4 of the DS-2019 - including program category "Student Intern" - is NOT affected by PP10052.  The suspension also does not apply to H-1B1 applicants under the Chile and Singapore Free Trade Agreements.  [Note: This Proclamation is not expected to affect exchange programs funded by the Bureau of Educational and Cultural Affairs (ECA), which generally do not fall into the program categories listed for suspension.  Questions regarding specific ECA programs and their corresponding exchange visitor categories may be directed to post's Public Affairs Section or ECA's Office of Policy (ECAPPolicy@state.gov).  End Note.]

4.  (U) The effective date of the P.P. 10052's restrictions on these NIV categories is 12:01 a.m., Eastern Daylight Time, June 24, 2020.  P.P. 10052 will expire on December 31, 2020, unless continued by the President.  Visas issued prior to June 24, 2020, are not subject to this Proclamation.  The suspension and limitation on entry only applies to an alien who meets all three conditions set out in section 3(a) of the proclamation.  The second of those conditions, at section 3(a)(ii), was amended by a proclamation updating P.P. 10052 that was signed by the President on June 29, 2020.  In accordance with that amendment, the three conditions that must be met for an alien to be covered by P.P. 10052 are that the alien:  (a) is outside the United States on June 24, 2020; (b) does not have a nonimmigrant visa, of any of the classifications specified in section 2 of P.P. 10052 (H-1B, H-2B, J [specified categories of the EVP], and L visas classification) and pursuant to which the alien is seeking entry, that is valid on June 24, 2020; and (c) does not have an official travel document other than a visa (such as a transportation letter, boarding foil, or advance parole document) that is valid on June 24, 2020, or issued on any date thereafter that permits him or her to travel to the United States and seek entry or admission.  When issuing an otherwise suspended NIV because the applicant does not meet all three of the above conditions, please thoroughly document the reason for your finding in your case notes.  Unlike some other proclamations where individuals with valid visas on the effective date were not subject to the proclamation, individuals with valid visas on the effective date are only not subject to the Proclamation when applying for entry on a visa that is in one of the categories of NIVs suspended by the PP.  In other words, someone with a valid H-1B, H-2B, L, or J visa can re-enter the United States until the expiration date of the visa.  Any future applications in those categories falls under the suspension applications (unless an exception applies).

5.  (U)  NIV Exceptions:  After a consular officer determines that an applicant is applying for one of the visa categories covered by P.P. 10052 (see paragraph 3) and is subject to P.P. 10052 (i.e. does not meet one of the three conditions listed at paragraph 4), then officers must consider whether the applicant may be eligible for an exception. P.P. 10052 exceptions from the suspension of entry are listed in section 3(b) of the proclamation:

  a.  Any lawful permanent resident of the United States;
  b.  Any alien who is the spouse or child, as defined in section 101(b)(1) of the INA of a United States citizen;
  c.  Any nonimmigrant alien seeking to enter the United States to provide temporary labor or services essential to the United States food supply chain; or
  d.  Any alien whose entry would be in the national interest, as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees.

6.  (SBU) P.P. 10052 specifies that the consular officer shall determine, in his or her discretion, whether an NIV applicant has established eligibility for an exception. When issuing an NIV pursuant to an exception listed above, please thoroughly document which exception applies to the applicant in your case notes.  Visas should be annotated to state, "Exception under PP on Risk to Labor Market."  Exceptions listed in paragraph 5.a. or 5.b, above, are self-evident; in those cases, normal case notes (and above annotation) will suffice.  Additional guidance regarding the exception listed at paragraph 5.c. is discussed further in paragraph 7.  An

overview of the national interest exception under paragraph 5.d. is provided in paragraph 8; however, the Department will provide operational guidance regarding aliens who may qualify for a national interest exception by SEPTEL.

7.  (SBU) **Essential to U.S. Food Supply**:  Paragraph 5.c., above, describes the exception for aliens "seeking to enter the United States to provide temporary labor or services essential to the United States food supply chain." Based on consultations with DHS and DOL, VO understands consular officers may apply this exception only for applicants for H-2B nonimmigrant visas. You may determine eligibility for this exception through one of two documents scanned into the relevant petition application uploaded in PIMS:

a.) the USCIS-approved I-129 petition (see Part 5 under Job Title)
b.) the Form ETA-9142A, temporary labor certification approved by the U.S. Department of Labor (see the listed Job Title or SOC Occupation Title)

Consular officers should consult with consular managers as needed when assessing eligibility for such exceptions and to ensure consistency in determinations.  Several labor categories within the H-2B classification (seafood processors, fish cutters, salmon roe technicians, farm equipment mechanics, agriculture equipment operators etc.) would fall within this exception. KCC, as part of its routine pre-screening, will also review the petition and labor certificate information and will enter <u>one</u> of the two following notes in the CEAC DS-160 to assist officers in this determination:

-   Note 1: "Applicant's job title and SOC occupation title indicates the applicant is likely essential to US food supply chain and likely eligible for an exception to P.P. 10052, barring additional information provided in visa application or interview."
                                    -OR-
-   Note 2: "Applicant's job title and SOC occupation title indicates the applicant is NOT likely essential to US food supply chain under P.P. 10052."

However, bartenders, cooks, dishwashers, and waiters will generally be considered NOT essential to the U.S. food supply chain.  For questions concerning whether a job category meets the definition of "essential" to the food supply chain, please contact your CA/VO/F analyst.  If you determine that the H-2B application is NOT associated with labor or services essential the U.S. food supply chain, you will then need to evaluate whether the applicant might qualify for a "National Interest" exception.  Similarly, if you identify an applicant for an H-1B, J, or L visa who intends to provide labor or services essential to the food supply, you should consider whether the applicant might benefit from national interest exception.  As indicated in paragraph 6, the Department will provide separate guidance regarding aliens who may qualify for a national interest exception.  Posts are also reminded that KCC continues to conduct employment verifications on all H-2B petitions (REF I).  You must refuse all H-2B applications under INA 221(g) if the PIMS status reads, "Client Verification Pending."

8.  (SBU) Section 3(b)(iv) of P.P. 10052 excepts aliens from the proclamation if the Secretary of State, Secretary of Homeland Security, or their respective designees determine that the

alien's entry would be in the national interest.  P.P. 10052 also requires the Secretaries of Labor, Homeland Security, and State to establish standards to define categories of aliens covered by the national interest exception, including those that: are critical to the defense, law enforcement, diplomacy, or national security of the United States; are involved with the provision of medical care to individuals who have contracted COVID-19 and are currently hospitalized; are involved with the provision of medical research at United States to help the United States combat COVID-19; or are necessary to facilitate the immediate and continued economic recovery of the United States.  The Department is coordinating with the Departments of Homeland Security and Labor on these standards and consulting these and other agencies on appropriate procedures for documenting the standards.  Guidance on when a visa applicant's entry into the United States will be considered to be in the national interest is forthcoming by SEPTEL.  Consular sections should identify cases with a potential national interest justification for future consideration and track this within the section, but must not issue a visa until a national interest exception is processed following the SEPTEL guidance.

9.  (SBU) As resources allow, Posts and AIT may continue to process any 221(g) cases, ███████████████████████████ or any other required administrative processing, and may issue the associated visas for applicants who are not subject to P.P. 10052 or who are covered by an exception.  Individuals re-applying in the same NIV classification as one of those covered under the suspension (H-1B, H-2B, J, L) are subject to the proclamation; however, a national interest exception may be appropriate in some cases, for example, consideration should be given to cases where the applicant is returning to the  United States to continue the work the applicant had been performing under the expired visa.

10.  (SBU) **Appointment Scheduling:**  Posts may continue to schedule mission critical and emergency immigrant and nonimmigrant visa interviews as resources allow and as described in REF E, but should applicants not qualify for an exception under the relevant presidential proclamation, including in the national interest, post should refuse the case pursuant to INA 212(f) using refusal code ████████ for IVs and ████████ for NIVs.  Once the proclamation is no longer in effect, an applicant refused under ████████ or ████████ may be evaluated for reconsideration of the refusal; if the case is reconsidered within one year of the ████████ and ████████ refusal, the applicant is not required to make a new visa application.  GSS vendors at supported posts will continue to provide visa services, including collecting fees, website support, and call center services.  Posts and AIT should also review expedited appointment requests through their GSS system and public email and determine whether a case meets one of the exceptions set forth in this new P.P. and the prior COVID-19-related P.P.s.  Posts and AIT may contact their NVC post liaison at NVCPost@state.gov to make adjustments to NVC expedite and scheduling procedures as needed.

11.  (SBU) **Renewals**:  Posts and AIT should not pursue revocations for individuals who have already been issued immigrant and nonimmigrant visas; however, current visa holders applying for a visa renewal after June 24 are still subject to the Presidential Proclamation, absent an exception under the proclamation. Individuals subject to multiple proclamations would have to be excepted from all applicable presidential proclamations, prior to issuance.

SENSITIVE BUT UNCLASSIFIED

12.  (SBU) Posts with questions regarding this guidance should contact their post liaison officer in VO/F.

Approved: CA - Carl C. Risch                    []

Drafted: ██████████ ███████

Cleared:    CA/FO: IGBrownlee          (OK)
            CA: ██████                 (OK)
            CA/VO: ERamotowski         (OK)
            CA/VO: ██████              (OK)
            CA/VO/F: ████████          (OK)
            CA/VO/L: ████████          (OK)
            CA/VO/L: ██████████l       (OK)
            CA/VO/DO: ██████           (OK)
            CA/VO/DO: █████████        (OK)
            CA/VO/DO: ████████         (OK)
            CA/R: DBenning             (OK)
            CA/EX: ████████            (OK)
            CA/EX/PAS: ████████        (OK)
            CA/C: ████████             (OK)
            CA/C/CBSP: █████████       (OK)
            CA/C/SPPD: ████████        (OK)
            CA/C/PPOD: ████████        (OK)
            CA/P: ██████               (OK)
            ECA: ██████                (OK)
            CGRCU: █████████           (OK)
            CGRCU: ███████             (OK)
            L/CA: ███████              (OK)
            L/CA: ██████               (OK)
            L/PD L                     (OK)
            M: ████████                (OK)
            D: ██████                  (OK)
            P: ████                    (OK)
            S/P: █████                 (OK)
            GPA: █████                 (OK)
            R: ███████                 (OK)
            R/PPR: ████████            (OK)
            AF/EX: █████████           (OK)
            EAP/EX: ███████████        (OK)
            EUR-IO/EX: █████████       (OK)
            EUR-IO/EX: ████████        (OK)
            EUR/PGI: ██████            (OK)
            NEA-SCA/EX: ██████████     (OK)
            WHA/EX: ███████            (OK)



**United States Department of State**

*Washington, D.C.  20520*

SENSITIVE BUT UNCLASSIFIED                                                           June 30, 2020

## ACTION MEMO FOR ASSISTANT SECRETARY RISCH

FROM:        VO – Edward J. Ramotowski

SUBJECT:     (SBU) Implementation Procedures and Guidance on Presidential Proclamation 10052 "Suspension of Entry of Immigrants and Nonimmigrants Who Present a Risk to the U.S. Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak." (P.P. 10052)

**BLUF:**        The attached ALDAC will provide guidance to overseas posts on implementing P.P. 10052, issued June 22, 2020, and the subsequent proclamation updating P.P. 10052.

**Recommendation:**
(SBU) That you approve sending the attached ALDAC providing guidance on implementing P.P. 10052, issued June 22, 2020, suspending the entry of certain immigrants and nonimmigrants who present a risk to the U.S. labor market.  (Approve/Disapprove by 6/30/2020)

**Background**
(SBU) On April 22, 2020, President Trump issued Presidential Proclamation (P.P. 10014 ) suspending the entry of immigrants who present a risk to the U.S. labor market during the economic recovery following the COVID-19 outbreak.  On June 22, President Trump issued Presidential Proclamation (P.P. 10052) continuing the suspension of entry by certain immigrants under P.P. 10014, as well as, suspending entry of H-1B, H-2B, certain J, and L nonimmigrants and their derivative family members..  P.P. 10052 extends exceptions under P.P. 10014, with respect to immigrants covered by that proclamation, while explicitly instructing State to exercise authority to grant national interest exceptions to immigrant visa applicants who would age out of their eligibility for a visa. The proclamation sets out certain limits on its applicability, in section 3(a), and includes exceptions applicable to NIV applicants in section 3(b), including for LPRs, certain family members of U.S. citizens, aliens seeking to provide temporary labor or services essential to supporting U.S. food supply chain, and travel in the national interest..  This ALDAC provides guidance to the field on  P.P. 10052, its exceptions, and implementation.  Given ongoing discussions on the definition of "labor or services essential to the United States food supply chain at section 3(b)(iii) and on the scope and process for national interest determinations at section 3(b)(iv), the attached ALDAC provides guidance to the field on processing applicants potentially restricted by the proclamation and notes that additional guidance in areas still under discussion will be provided in a subsequent ALDAC.  The guidance also explains a proclamation signed by the President on June 29, 2020, updating P.P. 10052 with a revised description of

SENSITIVE BUT UNCLASSIFIED

which aliens holding valid visas on the effective date of P.P. 10052 are exempt, limiting the exemption to those seeking to enter on a visa that was effective on the date P.P. 10052 took effect.

Attachments:

        Tab 1 - ALDAC
        Tab 2 – AM to S on National Interest Exception Criteria

SENSITIVE BUT UNCLASSIFIED

Approved: CA/VO – Edward J. Ramotowski        (EJR)

Drafted CA/VO/F – ████████████

Cleared:

    CA: IGBrownlee              (OK)
    CA: ████                    (OK)
    CA: ██████                  (OK)
    CA/VO/F: ████                (OK)
    CA/VO/F: ███                 (OK)
    CA/VO/DO/NVC: ████████      (OK)
    CA/VO/DO: ████              (OK)
    CA/VO/L: ██████             (OK)
    CA/VO/L/A: █████            (OK)
    L/CA: ████                  (OK)
    CA/R: Dbenning              (OK)
    CA/EX: █████                (OK)
    CA/EX: █████                (OK)
    CA/P ██████                 (OK)



**United States Department of State**

*Washington, D.C.   20520*

~~SENSITIVE BUT UNCLASSIFIED~~          July 13, 2020

**ACTION MEMO FOR ASSISTANT SECRETARY CARL RISCH**

FROM:          CA/VO –  Edward Ramotowski,  Deputy Assistant Secretary

SUBJECT:       (~~SBU~~) Exercising the National Interest Exception Authority under and
               Presidential Proclamations 10014 and 10052 (Labor Market P.P.s)

BLUF:          (~~SBU~~) We recommend that you make a national interest determination that will
               allow consular section chiefs at posts abroad to approve national interest
               exceptions for immigrant visa cases involving children who may age out.
               Additionally, we recommend you make national interest determinations that
               would allow posts to approve certain limited national interest exceptions for
               economic recovery, humanitarian and specialized childcare purposes, COVID-19
               medical care, and national security, based on an agreement in principle regarding
               the use of the national interest exception authority coordinated by the White
               House with the Departments of State, Labor, and Homeland Security.

**Recommendation**
That you:

1) Sign the Determination at Tab 1 establishing that travel described therein is in the U.S.
   national interest, for purposes of the Labor Market P.P.s.  For immigrant visa cases, the
   Determination will allow consular officers, with a manager's concurrence, to issue
   immigrant visas for applicants who are subject to aging out before the current expiration
   date of the relevant P.P.s or within two weeks thereafter, and any family members
   applying and traveling with such age out applicants.  For nonimmigrant visa cases, the
   Determination will allow consular officers, with a manager's concurrence, to issue
   nonimmigrant visas for applicants for reasons described in Tabs 1 and 4.
   (Approve/Disapprove by 7/15/20)

2) Approve the ALDAC at Tab 4 announcing your Determination and explaining that
   consular section chiefs may approve issuance of visas in accordance with the terms of
   your Determination.  (Approve/Disapprove by 7/15/20)

**Background**

(~~SBU~~) The President issued P.P. 10014 on April 22, 2020, suspending the entry of certain aliens
as immigrants for 60 days; P.P. 10052 extended this termination date to December 31, 2020 and
it may be continued further.  This action was based on the President's determination that these
immigrants present a risk to the U.S. labor market during the economic recovery following the
COVID-19 outbreak.  Section 2 of P.P. 10014 excepts a range of individuals from its restrictions,

~~SENSITIVE BUT UNCLASSIFIED~~

SENSITIVE BUT UNCLASSIFIED

including aliens "whose entry would be in the national interest, as determined by the Secretary of State, the Secretary of Homeland Security, or their designees."  In Section 4(a)(i) of P.P. 10052, the President directed the Secretary of State to exercise the authority under section 2(b)(iv) of Proclamation 10014 to exempt alien children who would, as a result of Proclamation 10014, age out of eligibility for a visa.  On May 6, 2020, the Secretary of State delegated to the Assistant Secretary for Consular Affairs the authority to except from P.P. 10014 individuals whose travel is in the U.S. national interest.  (Tab 3).

(SBU) Since April 23, the Department of State has processed 14 national interest exception requests for cases with immigrant visa applicants who are subject to aging out before the expiration of P.P. 10014 or shortly thereafter; no age out exception requests were refused.  Seven of these cases included family members who also applied for immigrant visas and were traveling to the United States with the applicant subject to aging out.

(SBU) Because of the President's direction in P.P. 10052 to apply the national interest exception to age-outs, public uncertainty about the availability of exemptions for potential age-outs, the Department's consistent practice of approving individual age-out cases for national interest exceptions, and the undue expenditure of Department resources related to individual exercises of the national interest exception authority, we believe it would be in the national interest for you to determine cases involving applicants who are subject to aging out before the relevant P.P.s expire or within two weeks thereafter to be in the national interest.  Such an exercise of your delegated authority under Section 2 of P.P. 10014 in this manner is consistent with the President's direction to exercise this authority to except alien children who would as a result of Proclamation 10014 age out of eligibility for a visa.  Further, such a determination by you would allow consular officers to "determine" that "an immigrant has established his or her eligibility for an exception" in section 2(b), as required under Section 3 of the P. P. 10014 as extended by P.P. 10052.  The Secretary's delegation of authority to you, covering section 2 of the COVID-19 Regional P.P.s, also enables you to make categorical determinations allowing consular section chiefs to approve issuance of immigrant visas for aging out applicants and any family members applying and traveling with them, in accordance with the proposed determination at Tab 1.  We recommend making this determination for consistency with Department practice and the President's direction under P.P. 10052.

(SBU) We recommend limiting your determination of travel in the national interest to applicants who are not protected by the Child Status Protection Act ("CSPA") as a "child" and, therefore, may actually age out, if not granted a national interest exception.  An applicant who is protected as a "child" under CSPA is already excepted from the COVID-19 Regional P.P.s as an "alien who is the child, foster child, or ward of a U.S. citizen or lawful permanent resident."  However, an applicant who is protected as a "child" under CSPA must also be under the biological age of 21 and the child of a United States citizen to be excepted from P.P. 10014 as an "alien who is under 21 years old and is the child of a United States citizen."  An applicant with a biological age of 21 or over who is protected as a "child" under CSPA will generally not age out, and therefore is not covered by the proposed determination at Tab 1.  While there is some risk that, during a prolonged delay, such a beneficiary might lose CSPA protection (e.g., by marrying or if the petitioner dies) most applicants would preserve their "child status" which would allow them to complete visa processing once the applicable presidential proclamations terminate and

SENSITIVE BUT UNCLASSIFIED

conditions permit case adjudication. You have and will retain the delegated authority to review such requests for applicants protected by CSPA on a case-by-case basis (Tabs 2 and 3).

(SBU) P.P. 10052 provides an exception for "any alien whose entry would be in the national interest as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees." Sec. 3(b)(iv). The proclamation separately notes that "[t]he consular officer shall determine in his or her discretion, whether a nonimmigrant has established his or her eligibility" for an exception to this proclamation, including a national interest exception. Sec. 4(a). The ALDAC provides a framework for consular officers as part of the initial implementing procedures, identifying categories of visa applicants who should be considered for a national interest exception based on an agreement in principle regarding the use of the national interest exception coordinated by the White House with the Departments of State, Labor, and Homeland Security. The agreement in principle described four broad categories of circumstances that may be appropriate for national interest exceptions: economic recovery, humanitarian and childcare, COVID-19 medical care, and national security. As a preliminary matter, this framework for national interest exceptions will be incorporated into guidance for consular officers as part of the implementing procedures required under Section 4(a) of P.P. 10052. These procedures (Tab 4) cover areas of substantial agreement. The Department will continue to work with the Departments of Labor and Homeland Security to establish procedures for other categories not addressed in Tab 4.

(SBU) The Visa Office will provide specific guidance to overseas missions, monitor approvals, provide ongoing feedback to ensure consistent application of the exceptions, and deliver a weekly report on these efforts to exercise appropriate oversight. The Department will continue to collect the information needed to continue weekly reporting to M.

**Attachments:**
Tab 1 – Proposed Determination of Travel in the National Interest for Age Out and Certain Nonimmigrant Cases
Tab 2 – Delegation of Authority from the Secretary to the Assistant Secretary for Consular Affairs Dated March 19, 2020
Tab 3 – Delegation of Authority from the Secretary to the Assistant Secretary for Consular Affairs Dated May 6, 2020
Tab 4 – ALDAC Application of the Determination Regarding National Interest Exceptions under P.P. 10014 for Age Out and Certain Nonimmigrant Cases

SENSITIVE BUT UNCLASSIFIED

Approved:      CA/VO – Edward Ramotowski              (EJR)

Drafted:       CA/VO/F – ███████████████

Cleared:       CA:  IGBrownlee                        (OK)
               CA: ████                               (OK)
               CA: ██████                             (OK)
               CA/VO: ████                            (OK)
               CA/VO/F: ██████                        (OK)
               CA/VO/L: ██████                        (OK)
               CA/VO/L/A: ██████                      (OK)
               CA/P: █████                            (OK)



**United States Department of State**

*Washington, D.C.  20520*

<u>SENSITIVE BUT UNCLASSIFIED</u>                    July 13, 2020

**ACTION MEMO FOR ASSISTANT SECRETARY CARL RISCH**

FROM:       CA/VO – Edward Ramotowski, Deputy Assistant Secretary

SUBJECT:   (SBU) Exercising the National Interest Exception Authority under and Presidential Proclamations 10014 and 10052 (Labor Market P.P.s)

BLUF:      (SBU) We recommend that you make a national interest determination that will allow consular section chiefs at posts abroad to approve national interest exceptions for immigrant visa cases involving children who may age out. Additionally, we recommend you make national interest determinations that would allow posts to approve certain limited national interest exceptions for economic recovery, humanitarian and specialized childcare purposes, COVID-19 medical care, and national security, based on an agreement in principle regarding the use of the national interest exception authority coordinated by the White House with the Departments of State, Labor, and Homeland Security.

**Recommendation**
That you:

1) Sign the Determination at Tab 1 establishing that travel described therein is in the U.S. national interest, for purposes of the Labor Market P.P.s. For immigrant visa cases, the Determination will allow consular officers, with a manager's concurrence, to issue immigrant visas for applicants who are subject to aging out before the current expiration date of the relevant P.P.s or within two weeks thereafter, and any family members applying and traveling with such age out applicants. For nonimmigrant visa cases, the Determination will allow consular officers, with a manager's concurrence, to issue nonimmigrant visas for applicants for reasons described in Tabs 1 and 4.
(Approve/Disapprove by 7/15/20)

2) Approve the ALDAC at Tab 4 announcing your Determination and explaining that consular section chiefs may approve issuance of visas in accordance with the terms of your Determination. (Approve/Disapprove by 7/15/20)

**Background**

(SBU) The President issued P.P. 10014 on April 22, 2020, suspending the entry of certain aliens as immigrants for 60 days; P.P. 10052 extended this termination date to December 31, 2020 and it may be continued further. This action was based on the President's determination that these immigrants present a risk to the U.S. labor market during the economic recovery following the COVID-19 outbreak. Section 2 of P.P. 10014 excepts a range of individuals from its restrictions,

SENSITIVE BUT UNCLASSIFIED

including aliens "whose entry would be in the national interest, as determined by the Secretary of State, the Secretary of Homeland Security, or their designees." In Section 4(a)(i) of P.P. 10052, the President directed the Secretary of State to exercise the authority under section 2(b)(iv) of Proclamation 10014 to exempt alien children who would, as a result of Proclamation 10014, age out of eligibility for a visa. On May 6, 2020, the Secretary of State delegated to the Assistant Secretary for Consular Affairs the authority to except from P.P. 10014 individuals whose travel is in the U.S. national interest. (Tab 3).

(SBU) Since April 23, the Department of State has processed 14 national interest exception requests for cases with immigrant visa applicants who are subject to aging out before the expiration of P.P. 10014 or shortly thereafter; no age out exception requests were refused. Seven of these cases included family members who also applied for immigrant visas and were traveling to the United States with the applicant subject to aging out.

(SBU) Because of the President's direction in P.P. 10052 to apply the national interest exception to age-outs, public uncertainty about the availability of exemptions for potential age-outs, the Department's consistent practice of approving individual age-out cases for national interest exceptions, and the undue expenditure of Department resources related to individual exercises of the national interest exception authority, we believe it would be in the national interest for you to determine cases involving applicants who are subject to aging out before the relevant P.P.s expire or within two weeks thereafter to be in the national interest. Such an exercise of your delegated authority under Section 2 of P.P. 10014 in this manner is consistent with the President's direction to exercise this authority to except alien children who would as a result of Proclamation 10014 age out of eligibility for a visa. Further, such a determination by you would allow consular officers to "determine" that "an immigrant has established his or her eligibility for an exception" in section 2(b), as required under Section 3 of the P. P. 10014 as extended by P.P. 10052. The Secretary's delegation of authority to you, covering section 2 of the COVID-19 Regional P.P.s, also enables you to make categorical determinations allowing consular section chiefs to approve issuance of immigrant visas for aging out applicants and any family members applying and traveling with them, in accordance with the proposed determination at Tab 1. We recommend making this determination for consistency with Department practice and the President's direction under P.P. 10052.

(SBU) We recommend limiting your determination of travel in the national interest to applicants who are not protected by the Child Status Protection Act ("CSPA") as a "child" and, therefore, may actually age out, if not granted a national interest exception. An applicant who is protected as a "child" under CSPA is already excepted from the COVID-19 Regional P.P.s as an "alien who is the child, foster child, or ward of a U.S. citizen or lawful permanent resident." However, an applicant who is protected as a "child" under CSPA must also be under the biological age of 21 and the child of a United States citizen to be excepted from P.P. 10014 as an "alien who is under 21 years old and is the child of a United States citizen." An applicant with a biological age of 21 or over who is protected as a "child" under CSPA will generally not age out, and therefore is not covered by the proposed determination at Tab 1. While there is some risk that, during a prolonged delay, such a beneficiary might lose CSPA protection (e.g., by marrying or if the petitioner dies) most applicants would preserve their "child status" which would allow them to complete visa processing once the applicable presidential proclamations terminate and

SENSITIVE BUT UNCLASSIFIED

SENSITIVE BUT UNCLASSIFIED

conditions permit case adjudication. You have and will retain the delegated authority to review such requests for applicants protected by CSPA on a case-by-case basis (Tabs 2 and 3).

(SBU) P.P. 10052 provides an exception for "any alien whose entry would be in the national interest as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees." Sec. 3(b)(iv). The proclamation separately notes that "[t]he consular officer shall determine in his or her discretion, whether a nonimmigrant has established his or her eligibility" for an exception to this proclamation, including a national interest exception. Sec. 4(a). The ALDAC provides a framework for consular officers as part of the initial implementing procedures, identifying categories of visa applicants who should be considered for a national interest exception based on an agreement in principle regarding the use of the national interest exception coordinated by the White House with the Departments of State, Labor, and Homeland Security. The agreement in principle described four broad categories of circumstances that may be appropriate for national interest exceptions: economic recovery, humanitarian and childcare, COVID-19 medical care, and national security. As a preliminary matter, this framework for national interest exceptions will be incorporated into guidance for consular officers as part of the implementing procedures required under Section 4(a) of P.P. 10052. These procedures (Tab 4) cover areas of substantial agreement. The Department will continue to work with the Departments of Labor and Homeland Security to establish procedures for other categories not addressed in Tab 4.

(SBU) The Visa Office will provide specific guidance to overseas missions, monitor approvals, provide ongoing feedback to ensure consistent application of the exceptions, and deliver a weekly report on these efforts to exercise appropriate oversight. The Department will continue to collect the information needed to continue weekly reporting to M.

**Attachments:**
    Tab 1 – Proposed Determination of Travel in the National Interest for Age Out and Certain Nonimmigrant Cases
    Tab 2 – Delegation of Authority from the Secretary to the Assistant Secretary for Consular Affairs Dated March 19, 2020
    Tab 3 – Delegation of Authority from the Secretary to the Assistant Secretary for Consular Affairs Dated May 6, 2020
    Tab 4 – ALDAC Application of the Determination Regarding National Interest Exceptions under P.P. 10014 for Age Out and Certain Nonimmigrant Cases

SENSITIVE BUT UNCLASSIFIED

SENSITIVE BUT UNCLASSIFIED

Approved:    CA/VO – Edward Ramotowski, Deputy Assistant Secretary   (EJR)

Drafted:     CA/VO/F – ████████████████████

Cleared:     CA:  IGBrownlee                     (OK)
             CA: ████████                        (OK)
             CA: ████████                        (OK)
             CA/VO: ██████                       (OK)
             CA/VO/F: ██████                     (OK)
             CA/VO/L: ██████                     (OK)
             CA/VO/L/A: ██████                   (OK)
             CA/P: ██████                        (OK)

SENSITIVE BUT UNCLASSIFIED

Determination by the Assistant Secretary of State for Consular Affairs
Regarding Travel in the National Interest under the Presidential Proclamations
Suspending Entry of Immigrants Who Present Risk to the U.S. Labor Market During the
Economic Recovery Following the COVID-19 Outbreak and Suspending Entry as Immigrants
and Nonimmigrants of Certain Persons Who Pose a Risk of Transmitting 2019 Novel
Coronavirus

By virtue of the authority vested in the Assistant Secretary of State for Consular Affairs, including Section 1 of the State Department Basic Authorities Act, as amended (22 § USC 2651a) and Presidential Proclamations 10014 and 10052, Delegation of Authority from the Secretary of State to the Assistant Secretary of State for Consular Affairs of March 19, 2020, and Delegation of Authority from the Secretary of State to the Assistant Secretary of State for Consular Affairs of May 6, 2020, I hereby determine, based on the delegated authority under the above-listed proclamations, that the entry of an alien into the United States would be in the national interest if the alien is seeking to enter the United States on an immigrant visa and would be subject to aging out of visa eligibility  before the expiration of the relevant proclamation or within two weeks thereafter, or if the alien is a family member traveling and applying for an immigrant visa with another alien who is eligible for the national interest exception based on aging out of visa eligibility.

I hereby establish implementing procedures and determine, based on the delegated authority under Presidential Proclamation 10052, to grant exceptions to any alien whose entry would be in the national interest under Section 3(b)(iv) of Presidential Proclamation 10052 where the alien's travel to the United States falls within one of the categories below:

In addition, by virtue of the authority delegated to the Assistant Secretary of State for Consular Affairs, including authority under Section 1 of the State Department Basic Authorities Act, as amended (22 § USC 2651a) and Presidential Proclamation 10052, through the Delegation of Authority from the Secretary of State to the Assistant Secretary of State for Consular Affairs of May 6, 2020, I hereby determine, based on the delegated authority under Presidential Proclamation 10052, to establish implementing procedures and grant exceptions to any alien whose entry would be in the national interest under Section 3(b)(iv) of Presidential Proclamation 10052 where the alien's travel to the United States falls within one of the categories below:

a) H-1B applicants who travel as a public health or healthcare professional or researcher to alleviate the effects of the COVID-19 pandemic, or to conduct ongoing medical research in an area with a substantial public health benefit (e.g. cancer or communicable disease research).

b) H-1B applicants whose travel is supported by a request from a U.S. government agency or entity to meet critical U.S. foreign policy objectives or to satisfy treaty or contractual obligations.

c) H-2B applicants whose travel is based on a request from a U.S. government agency or entity to meet critical foreign policy objectives or to satisfy treaty or contractual

obligations. An example of this would be supporting U.S. military base construction (e.g. associated with the National Defense Authorization Act) or IT infrastructure.

d)  J-1 applicants who will travel as an au pair

1)  to provide care for a minor U.S. citizen, lawful permanent resident, or nonimmigrant in lawful status and who possesses special skills required for a child with particular needs (e.g., medical, special education, or sign language);

2)  to prevent a U.S. citizen, lawful permanent resident, or other nonimmigrant in lawful status from becoming a public health charge or ward of the state of a medical or other public funded institution; or

3)  to provide childcare services for a child whose parents are involved with the provision of medical care to individuals to individuals who have contracted COVID-19 or medical research at United States facilities to help the United State combat COVID-19.

e)  J-1 visa applicants who travel to participate in ECA identified exchange visitor program for interns, summer work travel, camp counselors, trainees, or teachers only if described below:

1)  An exchange program conducted pursuant to a bilateral agreement or other arrangement with a foreign government: An exchange program conducted pursuant to an MOU, Statement of Intent, or other valid agreement or arrangement between a foreign government and any federal, state, or local government entity in the United States that is designed to promote U.S. national interests if the agreement or arrangement with the foreign government was in effect prior to the effective date of the Presidential Proclamation

2)  Interns and Trainees on U.S. government agency-sponsored programs (those with a program number beginning with "G-3" on Form DS-2019): An exchange visitor participating in an exchange visitor program in which he or she will be hosted by a U.S. government agency and the program supports the immediate and continued economic recovery of the United States.

3)  Specialized Teachers in Accredited Educational Institutions with a program number beginning with "G-5" on Form DS-2019:  An exchange visitor participating in an exchange program in which he or she will teach full-time, including a substantial portion that is in person, in a publicly or privately operated primary or secondary accredited educational institution where the applicant demonstrates ability to make a specialized contribution to the education of students in the United States.  A "specialized teacher" applicant must demonstrate native or near-native foreign language proficiency and the ability to teach his/her assigned subject(s) in that language (e.g., teaching math in German, or teaching the Spanish language).

   4)  Critical foreign policy objectives:  This only includes a small number of programs where an exchange visitor participating in an exchange program that fulfills critical and time sensitive foreign policy objectives as determined in consultation between the consular section, the Visa Office, and the Education and Cultural Affairs Bureau.

f)  Derivative applicants who will accompany or follow to join a principal applicant who is a spouse or parent and who is excepted from, or not otherwise subject to, P.P. 10052. This exception can be extended to derivative applicants when the principal is currently in the United States or has a valid visa.

7/20/2020
Date Signed

Carl C. Risch
Assistant Secretary of State for Consular Affairs
Department of State

UNCLASSIFIED

**DEPARTMENT OF STATE**
**Delegation of Authority No. _____**

### Delegation by the Secretary of State
### of Authorities under the Presidential Proclamation Suspending Entry of
### Immigrants Who Present Risk to the U.S. Labor Market During the
### Economic Recovery Following the COVID-19 Outbreak

By virtue of the authority vested in the Secretary of State, including Section 1 of the State Department Basic Authorities Act, as amended (22 U.S.C. § 2651a), and the Presidential Proclamation Suspending Entry of Immigrants Who Present Risk to the U.S. Labor Market During the Economic Recovery Following the COVID-19 Outbreak, I hereby delegate to the Assistant Secretary for Consular Affairs, to the extent authorized by law, the following authorities under said Presidential Proclamation:

1) The authority under section 2(b)(ii) to determine that work to be performed by an immigrant is essential to combating, recovering from, or otherwise alleviating the effects of the COVID-19 outbreak;
2) The authority under section 2(b)(vi) to determine that an immigrant's entry would further important United States law enforcement objectives, based on a recommendation of the Attorney General or his designee; and
3) The authority under section 2(b)(ix) to determine that an alien's entry into the United States would be in the national interest.

The Secretary, Deputy Secretary, Under Secretary for Management, and Deputy Under Secretary for Management may exercise any function or authority delegated by this delegation. The authorities delegated herein may be re-delegated.

This Delegation of Authority does not supersede or otherwise affect any other delegation of authority currently in effect and will expire upon the expiration of the Presidential Proclamation.

MAY n 5 2020
_____
Date Signed

Michael R. Pompeo,
Secretary of State,
Department of State.

UNCLASSIFIED

SENSITIVE BUT UNCLASSIFIED

ACTION ADDRESSES:   ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE ROUTINE

CAPTIONS:

PASS TO:  DEPARTMENT OF HOMELAND SECURITY

E.O. 13526

TAGS:  CVIS, CMGT

SUBJECT:  National Interest Exceptions under the COVID and Labor- Related Presidential Proclamations 9984, 9992, 9993, 9996, 10014, 10041, and 10052 for visa applicants.

REF  (A):  20 STATE 41350
     (B):  20 STATE 42180
     (C):  20 STATE 61886
     (D):  20 STATE 62808
     (E):  20 STATE 66326

1. (SBU) SUMMARY:  On March 19, 2020, the Secretary of State delegated to the Assistant Secretary for Consular Affairs the authority under Presidential Proclamations (P.P.) 9984, 9992, 9993, 9996, and 10041 relating to the suspension of entry of immigrant and nonimmigrants of certain persons who pose a risk of transmitting 2019 novel coronavirus (COVID-19 P.P.s) to determine that an alien's entry into the United States would be in the national interest. On May 6, 2020, the Secretary of State also delegated to the Assistant Secretary for Consular Affairs the authority under P.P. 10014 relating to the suspension of entry of certain immigrants to determine that an alien's entry into the United States would be in the national interest under that P.P. and its successor proclamations, which includes P.P. 10052 (Labor Market P.P.s).  Effective immediately, The Assistant Secretary for Consular Affairs  has determined that immigrant visa cases involving applicants who are subject to aging out before the COVID-19 and Labor Market P.P.s expire or within two weeks thereafter are in the national interest, for purpose of an exception under the Labor Market P.P.s.  Consular Section Chiefs (or those acting as Consular Section Chief in an official capacity due to the extended absence of the Consular Section Chief) may approve a national interest exception for applicants aging out and family members applying for an immigrant visa on the same petition and traveling with the applicant subject to aging out (see para 2-5).  In addition, The Assistant Secretary has determined that Consular Section Chiefs (or those acting as Consular Section Chief in an official capacity due to the extended absence of the Consular Section Chief) may approve a national interest exception for certain nonimmigrant visa applications subject to the P.P. 10052 suspension, as described in paragraphs 6-10). END SUMMARY.

2. (U) **Immigrant Visa Applicants (Age-Out)**:  On April 22, 2020, the President issued P.P. 10014, suspending the entry of certain aliens as immigrants for 60 days.  On June 22, 2020, the President issued P.P. 10052, extending the suspension of entry of certain immigrant visa categories previously suspended under P.P. 10014 until December 31, 2020.  The exceptions in

SENSITIVE BUT UNCLASSIFIED
- 2 -

P.P. 10014 are still applicable and officers should continue to follow the guidance in Ref A. Under P.P. 10014, consular officers may continue to process visa applications for individuals who are expressly excepted from the Proclamation to include an alien who:

    a. held a valid immigrant visa on April 23, 2020;

    b. is a lawful permanent resident of the United States;

    c. has a valid I-140 and is seeking to enter the United States as a physician, nurse, or other healthcare professional; or to perform medical research or other research intended to combat the spread of COVID-19; and any spouse and unmarried children under 21 years old of any such alien who are accompanying or following to join the alien;

    d. is applying for a visa to enter the United States pursuant to the EB-5 Immigrant Investor Program;

    e. is the spouse of a U.S. citizen (IR/CR-1);

    f. is the child of a U.S. citizen (IR/CR-2 or IR/IH-3), or who is a prospective adoptee seeking to enter the United States pursuant to the IR-4 or IH-4 visa classifications, AND is also under the age of 21;

    g. is a member of the U.S. Armed Forces and any spouse and children of a member of the U.S. Armed Forces; or

    h. is seeking to enter the United States pursuant to a Special Immigrant Visa in the SI or SQ classification, subject to such conditions as the Secretary of State may impose, and any spouse and children of any such individual.

3. (SBU) In addition, in light of the national interest determination by the Assistant Secretary for Consular Affairs on June 30, 2020, Consular Section Chiefs (or those acting as Consular Section Chief in an official capacity due to the extended absence of the Consular Section Chief) may approve a national interest exception in an immigrant visa case covered by P.P.s 9984, 9992, 9993, 9996, 10014, or 10041 upon concluding that the applicant is subject to aging out of his or her current immigrant visa classification before the relevant P.P.s expire or within two weeks thereafter. To benefit from this determination, the applicant subject to aging out may be a principal applicant or a derivative beneficiary accompanying or following to join a principal applicant. Consular Section Chiefs may also approve a national interest exception, based on the Assistant Secretary's determination, in an immigrant visa case for a family member of an applicant subject to aging out before P.P.s 10014, 9984, 9992, 9993, 9996, or 10041 expire or within two weeks thereafter, if the family member is applying for an immigrant visa on the same petition and will be traveling to the United States with the applicant subject to aging out. For example, Consular Section Chiefs may approve a national interest exception for an F43 derivative child who will age out before the expiration of the applicable P.P.s, and may also approve all other family members on the same petition (parents and siblings) so long as the family members will all be immigrating with the F43 age out applicant. Consular sections must notify visa applicants that their admission remains subject to a determination by Customs and Border Protection officers at ports of entry and that they may be subject to a 14-day quarantine upon arrival.

4. (SBU) Application of CSPA: The national interest exception for applicants who are subject to aging out does not include those individuals protected by the Child Status Protection Act ("CSPA") as a "child" and thus would not actually age out of visa eligibility if not granted a

SENSITIVE BUT UNCLASSIFIED

000115

national interest exception.  An applicant who is protected as a "child" under CSPA is already excepted from P.P.s 9984, 9992, 9993, 9996, 10041 as an "alien who is the child, foster child, or ward of a U.S. citizen or lawful permanent resident."  However, under P.P. 10014 an applicant must be under 21 years old and the child of a United States citizen to be excepted from the Proclamation. This guidance keeps a similar limitation in place for the national interest exception based on aging out.  Therefore, an applicant with a biological age of 21 or over or who is protected as a "child" under CSPA is unlikely to age out, and therefore does not qualify for the national interest exception under P.P. 10014 as set forth in this cable; these applicants may qualify for a different exception under P.P. 10014 or may qualify for a national interest exception on some basis other than aging out, in order to be issued a visa while the Proclamation is in effect.

5. (~~SBU~~) Consular officers may continue to follow the guidance set forth in Ref A paragraphs 6 and 7 to submit immigrant visa cases to the Assistant Secretary for consideration of additional national interest exceptions such as:

   a) aliens who are immigrating on any petition to perform work essential to combating, recovering from, or otherwise alleviating the effects of the COVID-19 outbreak;
   b) principal applicants and accompanying close family members requiring lifesaving medical treatment; or
   c) aliens who will provide care for a U.S. citizen, legal permanent resident, to include alleviating the burden of care from a medical or other institution.

6. (~~SBU~~) **Nonimmigrant Visa Applications**: P.P. 10052 provides an exception for "any alien whose entry would be in the national interest as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees."  Sec. 3(b)(iv).  The proclamation separately notes that "[t]he consular officer shall determine in his or her discretion, whether a nonimmigrant has established his or her eligibility" for an exception to this proclamation, including a national interest exception. The below framework identifies categories of visa applicants who should, at this time, be considered for a national interest exception based on an agreement in principle regarding the use of the national interest exception coordinated by the White House with the Departments of State, Labor, and Homeland Security.  **Further guidance expanding on who may also qualify for a national exception will be transmitted by SEPTEL.**

7. (~~SBU~~) **Implementation Procedures for Applicants for H-1B Visas**
At this time, consular officers can consider H-1B applicants for national interest exceptions who will:

- Travel as a public health or healthcare professional, or researcher to alleviate the effects of the COVID-19 pandemic, or to conduct ongoing medical research in an area with a substantial public health benefit (e.g. cancer or communicable disease research). This includes those traveling to alleviate effects of the COVID-19 pandemic that may be a secondary effect of the pandemic (e.g., travel by a public health or healthcare professional, or researcher in an area of public health or healthcare that is not directly related to COVID-19, but which has been adversely impacted by the COVID-19 pandemic).  Officers should base approval of this exception through examining the I-129 petition file in PIMS,

supporting documents provided by the applicant or petitioner, and/or the interview with the beneficiary.

- Travel supported by a request from a U.S. government agency or entity to meet critical U.S. foreign policy objectives or to satisfy treaty or contractual obligations.  This would include individuals, identified by the Department of Defense or another U.S. government agency, performing research, providing IT support/services, or engaging other similar projects essential to a U.S. government agency.   Officers should base approval of this exception through examining the I-129 petition file in PIMS, supporting documents provided by the applicant or petitioner, and/or the interview with the beneficiary

## 8. (~~SBU~~) Implementation Procedures for Applicants for H-2B Visas

- Travel based on a request from a U.S. government agency or entity to meet critical foreign policy objectives or to satisfy treaty or contractual obligations. An example of this would be supporting U.S. military base construction (e.g. associated with the National Defense Authorization Act) or IT infrastructure.  The Visa Office anticipates that this exception will mainly be used for H-2B visa applicants performing construction work at military bases in Guam and the Commonwealth of Northern Mariana Islands.  Officers should base approval of this exception through examining the I-129 petition file in PIMS, supporting documents provided by the applicant or petitioner, and/or the interview with the beneficiary.

## 9. (~~SBU~~) Implementation Procedures for Applicants for J-1 Visas to Participate in Exchange Visitor Program

Consular officers can consider J-1 applicants for national interest exceptions who will:

## Childcare

- Travel to provide care for a minor U.S. citizen, lawful permanent resident, or nonimmigrant in lawful status by an au pair possessing special skills required for a child with particular needs (e.g., medical, special education, or sign language)). Childcare services provided for a child with medical issues diagnosed by a qualified medical professional by an individual who possesses skills to care for such child will be considered to be in the national interest.
- Travel by an au pair that prevents a U.S. citizen, lawful permanent resident, or other nonimmigrant in lawful status from becoming a public health charge or ward of the state of a medical or other public funded institution.  Childcare services provided for a child whose parents are involved with the provision of medical care to individuals to individuals who have contracted COVID-19 or medical research at United States facilities to help the United State combat COVID-19.

## Other Exchange Programs

- Travel to participate in an exchange visitor program for interns, summer work travel, camp counselors, trainees, or teachers only if described below:

  ***An exchange program conducted pursuant to a bilateral agreement or other arrangement with a foreign government***:  An exchange program conducted pursuant to an MOU, Statement of Intent, or other valid agreement or arrangement between a foreign

000117

government and any federal, state, or local government entity in the United States that is designed to promote U.S. national interests if the agreement or arrangement with the foreign government was in effect prior to the effective date of the Presidential Proclamation.   In order to identify such programs, consular sections should work closely with post's Public Affairs section.  CA/VO/F (in consultation with ECA) will serve as a resource for consular sections that are unsure of whether a specific program meets this criteria.

***Interns and Trainees on U.S. government agency-sponsored programs (those with a program number beginning with "G-3" on Form DS-2019)***: An exchange visitor participating in an exchange visitor program in which he or she will be hosted by a U.S. government agency and the program supports the immediate and continued economic recovery of the United States.

***Specialized Teachers in Accredited Educational Institutions with a program number beginning with "G-5" on Form DS-2019***:   An exchange visitor participating in an exchange program in which he or she will teach full-time, including a substantial portion that is in person, in a publicly or privately operated primary or secondary
accredited educational institution where the applicant demonstrates ability to make a specialized contribution to the education of students in the United States.  A "specialized teacher" applicant must demonstrate native or near-native foreign language proficiency and the ability to teach his/her assigned subject(s) in that language (e.g., teaching math in German, or teaching the Spanish language).

***Critical foreign policy objectives****: This only includes programs where* an exchange visitor participating in an exchange program that fulfills critical and time sensitive foreign policy objectives.  In order to identify such programs, consular sections should work closely with their cultural and public affairs offices.  CA/VO/F (in consultation with ECA) will serve as a resource for consular sections that are unsure of whether a specific program meets this criteria.

## 8. (~~SBU~~) Implementation Procedures for Applicants for L Visas

- Travel as a public health or healthcare professional, or researcher to alleviate the effects of the COVID-19 pandemic, or to conduct ongoing medical research in an area with a substantial public health benefit (e.g. cancer or communicable disease research). This includes those traveling to alleviate effects of the COVID-19 pandemic that may be a secondary effect of the pandemic (e.g., travel by a public health or healthcare professional, or researcher in an area of public health or healthcare that is not directly related to COVID-19, but which has been adversely impacted by the COVID-19 pandemic).  Officers should base approval of this exception through examining the I-129 petition file in PIMS, supporting documents provided by the applicant or petitioner, and/or the interview with the beneficiary.

## 11. (~~SBU~~) Implementation Procedures for Applicants for H-4, L-2, and J-2 Visas

Consular officers can consider derivative applicants for national interest exceptions who will accompany or follow to join a principal applicant who is a spouse or parent and who is excepted from, or not subject to, P.P. 10052. This exception can be extended to derivative applicants when the principal is currently in the United States or has a valid visa.

12.  (~~SBU~~) Consular sections processing immigrant or nonimmigrant visa applications where a national interest exception was granted should also:

    a)  Enter Case Notes:

        i. For IV cases clearly explain in the case notes that the applicant is subject to aging out or is a family member on the same petition applying and traveling with an individual aging out, and note Consular Section Chief approval. If a nonimmigrant case, identify the basis for approving the exception and note Consular Section Chief approval.

        ii. Clearly explain in the case notes whether/how the applicant intends to self-quarantine subject to local requirements.

        iii. 

    b)  Scan Documents: Scan any supporting documentation into the CCD, unless the documentation is already available electronically in the system.

    c)  Annotate Visas: Visas should be annotated to state:  "NIE under P.P. on Risk to Labor Market"

    d)  Enter CLASS Lookout Code ████

        i.  The **NIE1** CLASS lookout entry notifies Customs and Border Protection at the National Targeting Center about the national interest exception approval and facilitates travel. Ensure the biographic information (Name, DOB, and PPT Number) are exactly the same as it appears in the traveler's passport or the individual may be denied entry.

        ii.  In the Independent Namecheck (INK) system, enter the CAT-1 CLASS lookout code ████ in "backscan" mode. Only users assigned an INK Manager Role can set the "backscan" mode.  Once set, the "backscan" mode will apply to all users.  Step-by-step instructions for this process can be found in the attached guide titled *INK Backscan Shortcut SOP*.  Instructions are also on the Presidential Proclamations Adjudication Guidance page in CA Web Portal here.

        iii.  Fill in the required fields.  In the Short Comment Field, enter: "DOS NIE."

        iv.  In the Long Comment Field, enter: "National Interest Exception Approved under Proclamation(s) XXXXX.  [List specific category; ex: Age out applicant or family member.]"

        v.  **NOTE**: When entering comments, do not use special characters, other than commas, periods, and dashes, because they can prevent the lookout from replicating to CLASS.

        vi.  NIE1 is not a refusal.  The CLASS entry will expire after 12 months and the record will eventually be purged from the CCD.

vii.    Complete this process for each traveler.


13. (SBU) **Individuals Subject to Multiple Suspensions**:  Individuals who qualify for aa national interest exception to P.P. 10052 under criteria discussed in this cable should also be considered as qualifying for national interest exceptions under  Presidential Proclamations 9984 (China), 9992 (Iran), 9993 (Schengen), 9996 United Kingdom/Ireland, and 10041 (Brazil) should the traveler be subject to the provisions of such regional proclamations.  Travelers who do not qualify for a national interest exception under the criteria in this cable must qualify for an NIE for the regional PPs via the guidance in 20 State 49966 or 20 State 66326    Please list all P.P.s that apply to an individual in case notes and in the NIE1 CLASS lookout.


14. (SBU) Please refer to the Presidential Proclamations Adjudication Guidance page in CA Web Portal for a complete listing of the Presidential Proclamations and associated ALDAC guidance. This website will continue to be populated with useful links and flow charts.  Consular sections should reach out to their VO/F analyst or email CA-VO-NIE@state.gov with any questions regarding this guidance.

Approved:    Assistant Secretary        (CCR)

Drafted:    CA/VO/F – ███████████
            CA/VO/F – ██████

Cleared:    CA: IBrownlee        (OK)
            CA: ████        (OK)
            CA: █████        (OK)
            CA/VO: ERamotowski    (OK)
            CA/VO/F: █████        (OK)
            CA/VO/F: ██████      (OK)
            CA/VO/L/A: ██████     (OK)
            CA/VO/L: █████       (OK)
            AF/EX: █████        (OK)
            EAP/EX: ██████      (OK)
            EUR-IO/EX: ██████    (OK)
            EUR/PGI: ████       (OK)
            NEA-SCA/EX: ███████   (OK)
            CA/EX: █████        (OK)
            WHA/EX: █████      (OK)
            CA/P: █████        (OK)
            DHS: █████        (OK)
            GPA: █████        (OK)
            M: ██████        (OK)
            ECA: █████        (OK)
            R: █████        (OK)
            D: █████        (OK)
            P: ████        (OK)

000121

# BUREAU OF CONSULAR AFFAIRS
## OFFICE OF THE ASSISTANT SECRETARY
## ACTION ITEM

**SUBJECT: VOL: AM AND ALDAC ON NIE EXCEPTIONS PP 10052**

**DRAFTER: CA/VO, CA/EX, CA/P, CA/FPP   DATE IN FRONT OFFICE: 8/6/2020**

**CA TRACKING NUMBER: T1851-20   CLASSIFICATION: SBU**

| ROUTING INFORMATION | INITIALS | DATE | LET'S DISCUSS |
|---|---|---|---|
| CHECKED BY STAFFERS | | | |
| SPECIAL ASSISTANT | | | |
| EXECUTIVE ASSISTANT | | | |
| DAS RAMOTOWSKI | | | |
| DAS ARNDT | | | |
| DAS BENNING | | | |
| FINAL CHECK BY STAFFERS | | | |
| PDAS BROWNLEE | | | |
| **A/S RISCH** | _(initials)_ | 8/7 | |
| BACK TO STAFFERS | | | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**COMMENTS/INSTRUCTIONS:**

For Signature

000122



**United States Department of State**

*Washington, D.C.  20520*

SENSITIVE BUT UNCLASSIFIED                    August 6, 2020

**ACTION MEMO FOR ASSISTANT SECRETARY RISCH**

FROM:        CA/VO – Edward Ramotowski

SUBJECT:     (SBU) Exercising the National Interest Exception Authorities under Presidential
             Proclamation 10052 for Travel Necessary for Economic Recovery

**Recommendations**

That you:

1) (SBU) Sign the determination (Tab 1) establishing that travel described therein is in the
   national interest for purposes of Presidential Proclamation 10052 and in keeping with the
   interagency "Agreement in Principle" (Tab 2).  (Approve/Disapprove by 08/06/2020)

2) (SBU) Approve sending the attached ALDAC (Tab 3) announcing your determination
   and explaining that consular section chiefs may approve national interest exceptions in
   accordance with the terms of your determination. (Approve/Disapprove by 08/06/2020)

**Background**

(SBU) On June 22, 2020, the President issued Presidential Proclamation 10052 suspending the
entry of all aliens who present a risk to the U.S. labor market following the coronavirus outbreak.
This action was based on the President's determination that unrestricted entry of aliens in certain
visa classifications would be detrimental to the interests of the United States due to the impact of
foreign workers on the U.S. labor market, particularly in the current extraordinary environment
of high domestic unemployment and depressed demand for labor.

(SBU) P.P. 10052 provides an exception for "any alien whose entry would be in the national
interest as determined by the Secretary of State, the Secretary of Homeland Security, or their
respective designees." Sec. 3(b)(iv).  On May 6, 2020, the Secretary of State delegated to the
Assistant Secretary for Consular Affairs the authority to except individuals whose travel is in the
U.S. national interest from P.P 10014 and its successor proclamations, including P.P 10052.
(Tab 4).  The proclamation separately notes that "[t]he consular officer shall determine in his or
her discretion, whether a nonimmigrant has established his or her eligibility" for an exception to
this proclamation, including a national interest exception. Sec. 4(a).  On July 13 2020, you
exercised your delegated authority to determine that certain categories of travel are in the
national interest, permitting consular section chiefs abroad to approve national interest
exceptions in cases covered by P.P. 10052, where the travel meets the terms of your
determination.  Because individual requests for national interest exceptions consume significant
resources for CA, this action has improved process efficiency and facilitated urgent travel, where
exceptions have been warranted.

SENSITIVE BUT UNCLASSIFIED
-2-

(SBU) Since the announcement of P.P. 10052, we have received numerous requests from U.S. companies and industries to permit travel to the United States that supports the continued recovery of the U.S. economy and represents substantial potential economic benefit to the United States without displacing U.S. workers. Certain applicants in the H-1B and L-1 categories have years of relevant work experience and have such advanced expertise in the relevant occupation as to make it more likely that he or she will perform critically important work for the petitioning employer. This is particularly true for applicants working in critical infrastructure fields where access to skilled workers supports our national policy to strengthen and maintain secure, functioning, and resilient critical infrastructure.

(SBU) The proposed determination relating to national interest exceptions is informed by an interagency Agreement in Principle, coordinated by the White House and approved by State, DHS, and DOL (Tab 2). The agencies agreed that entry into the United States by a "a technical expert or specialist, as a senior level executive or manager, or as a worker that fills an essential business need where an American worker is not available and whose denial would cause financial hardship to a U.S. business" should be considered in the national interest. To implement that agreement, and in consideration of issues raised during the consultation process by DHS and DOL and by other State bureaus, the Visa Office (VO) recommends the categorical determinations described below. If you approve the proposed determination (Tab 1), consular officers will apply the national interest exception to visa applicants who fit within your determination. You have and will retain the delegated authority to approve national interest exceptions on an individual basis or to make additional categorical determinations.

1. **Workers returning to continue ongoing work for the same employer in the same position**: Many workers filling U.S. positions who planned short trips abroad have been unable to return due to COVID-related travel interruptions and P.P. 10052. The interagency agreed that forcing employers to replace employees in this situation may cause financial hardship. We recommend that H-1B, L-1A, and L-1B applicants be able to benefit from this provision. As H-2B positions are limited to one year, we recommend excepting only the most experienced returning workers.

2. **Travel based on U.S. government interest:** The interagency agreed this category of national interest determinations is important to ensure that critical foreign policy objectives, treaty obligations, and U.S. government contracts continue to be met. An example of this would be an applicant supporting U.S. military base construction or IT infrastructure. We recommend determining that L applicants be able to benefit from this provision; H-1B and H-2B applicants supported by U.S. government agencies are covered under your national interest determination of July 13. **Critical Infrastructure**: In our consultations with the interagency, DHS emphasized the importance of exceptions for workers supporting "critical infrastructure" sectors of the U.S. economy. The list of critical infrastructure sectors developed by DHS' Cybersecurity and Infrastructure Security Agency include chemical, communications, dams, defense industrial base, emergency services, energy, financial services, food and agriculture, government facilities, healthcare and public health, information technology, nuclear reactors, transportation, and water systems. For H-1B, H-2B, and L-1A applicants, officers must find that the offered position is significant to the employer and the employer is involved

SENSITIVE BUT UNCLASSIFIIED

in supporting critical infrastructure; this covers a broad range of positions, including critical individuals involved in finance, legal, or management, to ensure that U.S. operations in these industries are able to continue uninterrupted. For the L-1B classification, our recommendation is narrower, as the applicant's qualifications and specialized knowledge must be directly related to the critical infrastructure need.

3. **Applicant's experience and expertise:** The interagency agreed that certain applicants within the H-1B, H-2B, and L classifications possess education, training and/or experience demonstrating unusual expertise in the specialty occupation in which the applicant will be employed, making it difficult for the employer to readily hire a U.S. worker. It is likely that these highly skilled workers will perform critically important work for the petitioning employer and that denial of a visa to such workers may result in financial hardship to the U.S. employer.

4. **Financial hardship:** The interagency agreed that when denial of a visa pursuant to P.P. 10052 would cause financial hardship to a U.S. business, such a denial is not in keeping with the goals of the proclamation and approval of an exception would be in the national interest. In the absence of an approved information collection to seek additional information from U.S. petitioners, officers must assess this based on the information included in the visa application. As these topics are inconsistently addressed in visa applications, consular officers will frequently have insufficient information to approve an exception on this basis.

5. **Labor Condition Application (LCA) filed during or after July 2020**: Although a properly filed LCA (associated with an H-1B application) does not include a requirement to recruit U.S. workers, LCAs approved by DOL during or after July 2020 are more likely to account for the effects of the COVID-19 pandemic on the U.S. labor market and the petitioner's business, and therefore this indicator is present for cases with an LCA approved during or after July 2020 as there is an indication that the petitioner still has a need for the H-1B applicant. For LCAs approved by DOL before July 2020, this indicator is only met if the consular officer is able to determine from the visa application the continuing need of petitioned workers with the U.S. employer.

6. **Offered salary 15 percent above prevailing wage rate:** When an H-1B applicant will receive a wage that meaningfully exceeds the prevailing wage, it suggests that the employee fills an important business need where an American worker is not available. DOL recommended 15 percent as the threshold, based on an assessment of recent LCA data.

(SBU) VO will be able to track excepted cases as currently is done for the regional COVID proclamations. Consular officers will use the existing NIE1 lookout to facilitate travel and enter case notes explaining which NIE criteria was met to overcome the proclamation.

Attachments:
      Tab 1 – Proposed Determination of Travel in the National Interest
      Tab 2 – Interagency Agreement in Principle
      Tab 3 – Draft ALDAC
      Tab 4 - Delegation of Authority from the Secretary to the Assistant Secretary for Consular Affairs Dated May 6, 2020

SENSITIVE BUT UNCLASSIFIED
-4-

| | | |
|---|---|---|
| Approved: | CA/VO  Edward Ramotwoski | (EJR) |
| Drafted: | CA/VO/F – ██████ | |
| | | |
| Cleared: | CA:  IGBrownlee | (OK) |
| | CA: ██████████ | (OK) |
| | CA: ████████ | (OK) |
| | CA/VO: ████████ | (OK) |
| | CA/VO/F: ████████ | (OK) |
| | CA/VO/F: ████████ | (OK) |
| | CA/VO/I: ███████ | (OK) |
| | CA/VO/L/A: ████████ | (OK) |
| | CA/VO/L:I ████████ | (OK) |
| | CA/VO/L/R: ██████ | (OK) |
| | CA/EX: ██████ | (OK) |
| | L/CA: ████████ | (OK) |
| | CA/P: █████ | (OK) |
| | CA/Press: █████ | (OK) |
| | CA/FPP: ████████████ | (OK) |

CA Tracking Number:  T1851-20

SENSITIVE BUT UNCLASSIFIIED

Determination by the Assistant Secretary of State for Consular Affairs
Regarding Travel in the National Interest under Presidential Proclamation 10052
Suspending Entry of Aliens Who Present a Risk to the U.S. Labor Market Following the
Coronavirus Outbreak

By virtue of the authority delegated to the Assistant Secretary of State for Consular Affairs under the Delegation of Authority from the Secretary of State to the Assistant Secretary of State for Consular Affairs dated May 6, 2020, I hereby determine, based on the delegation of authority provided under Section 3(b)(iv) of Presidential Proclamation 10052, that the entry into the United States of an alien is in the national interest where a Consular Section Chief (or the person acting as Consular Section Chief in an official capacity due to the extended absence of the Consular Section Chief), concludes the alien's travel to the United States falls within one of the categories described below.

## Applicants for H-1B Visas

Travel by H-1B applicants is in the national interest when the applicant falls within one of the following categories:

A. Applicants seeking to resume ongoing employment in the United States in the same position with the same employer and visa classification. Forcing employers to replace employees in this situation may cause financial hardship. Consular officers can refer to Part II, Question 2 of the approved Form I-129 to determine if the applicant is continuing in "previously approved employment without change with the same employer."

B. Technical specialists, senior level managers, and other workers whose travel is necessary to facilitate the immediate and continued economic recovery of the United States. Consular officers may determine that an H-1B applicant falls into this category when at least two of the following five indicators are present:

   1. The petitioning employer has a continued need for the services or labor to be performed by the H-1B nonimmigrant in the United States. Labor Condition Applications (LCAs) approved by DOL during or after July 2020 are more likely to account for the effects of the COVID-19 pandemic on the U.S. labor market and the petitioner's business; therefore, this indicator is only present for cases with an LCA approved during or after July 2020 as there is an indication that the petitioner still has a need for the H-1B worker. For LCAs approved by DOL before July 2020, this indicator is only met if the consular officer is able to determine from the visa application the continuing need of petitioned workers with the U.S. employer. Regardless of when the LCA was approved, if an applicant is currently performing or is able to perform the essential functions of the position for the prospective employer remotely from outside the United States, then this indicator is not present.

   2. The applicant's proposed job duties or position within the petitioning company indicate the individual will provide significant and unique contributions to an **employer meeting a critical infrastructure need.** Critical infrastructure sectors are

chemical, communications, dams, defense industrial base, emergency services, energy, financial services, food and agriculture, government facilities, healthcare and public health, information technology, nuclear reactors, transportation, and water systems. Employment in a critical infrastructure sector alone is not sufficient; the consular officer must also establish that the applicant holds one of the two types of positions noted below:

> a.) **Senior level placement** within the petitioning organization or job duties reflecting performance of functions that are both unique and vital to the management and success of the overall business enterprise; OR

> b.) The applicant's **proposed job duties and specialized qualifications** indicate the individual will provide significant and unique contributions to the petitioning company.

3. The wage rate paid to the H-1B applicant meaningfully exceeds the prevailing wage rate (see Part F, Questions 10 and 11 of the LCA) by at least 15 percent. When an H-1B applicant will receive a wage that meaningfully exceeds the prevailing wage, it suggests that the employee fills an important business need where an American worker is not available.

4. The H-1B applicant's education, training and/or experience demonstrate unusual expertise in the specialty occupation in which the applicant will be employed. For example, an H-1B applicant with a doctorate or professional degree, or many years of relevant work experience, may have such advanced expertise in the relevant occupation as to make it more likely that he or she will perform critically important work for the petitioning employer.

5. Denial of the visa pursuant to P.P. 10052 will cause financial hardship to the U.S. employer. The following examples, to be assessed based on information from the visa application, are illustrative of what may constitute a financial hardship for an employer if a visa is denied: the employer's inability to meet financial or contractual obligations; the employer's inability to continue its business; or a delay or other impediment to the employer's ability to return to its pre-COVID-19 level of operations.


**Applicants for H-2B Visas**
Travel by H-2B applicants is in the national interest when necessary to facilitate the immediate and continued economic recovery of the United States. Consular officers may determine that an H-2B applicant falls into this category when at least two of the following three indicators are present:

A. The applicant was previously employed and trained by the petitioning U.S. employer. The applicant must have previously worked for the petitioning U.S. employer under **two or more H-2B (named or unnamed) petitions**. U.S. employers dedicate substantial time and resources to

training seasonal/temporary staff, and denying visas to the most experienced returning workers may cause financial hardship to the U.S. business.

B. The applicant is traveling based on a temporary labor certification (TLC) that reflects continued need for the worker. TLCs approved by DOL during or after July 2020 are more likely to account for the effects of the COVID-19 pandemic on the U.S. labor market and the petitioner's business, and therefore this indicator is only present for cases with a TLC approved during or after July 2020 as there is an indication that the petitioner still has a need for the H-2B worker. For TLCs approved by DOL before July 2020, this indicator is only met if the consular officer is able to determine from the visa application the continuing need of petitioned workers with the U.S. employer.

C. Denial of the visa pursuant to P.P. 10052 will cause financial hardship to the U.S. employer. The following examples, to be assessed based on information from the visa application, are illustrative of what may constitute a financial hardship for an employer if a visa is denied: the employer's inability to meet financial or contractual obligations; the employer's inability to continue its business; or a delay or other impediment to the employer's ability to return to its pre-COVID-19 level of operations.

## Applicants for L-1A Visas
Travel by L-1A applicants is in the national interest when the applicant falls within one of the following categories:

A. Employers associated with the United States Government: Travel based on a request from a U.S. government agency or entity to meet critical foreign policy objectives or satisfy treaty or contractual obligations. An example of this would be supporting U.S. military base construction or IT infrastructure.

B. Applicants seeking to resume ongoing employment in the United States in the same position with the same employer and visa classification. Forcing employers to replace employees in this situation may cause undue financial hardship. For individual L-1A applicants, consular officers can refer to Part II, Question 2 of the approved Form I-129 to determine if the applicant is continuing in "previously approved employment without change with the same employer."

C. Applicants travelling temporarily as a senior level executive or manager filling a critical business need of an **employer meeting a critical infrastructure need.** Critical infrastructure sectors include chemical, communications, dams, defense industrial base, emergency services, energy, financial services, food and agriculture, government facilities, healthcare and public health, information technology, nuclear reactors, transportation, and water systems. The consular officer may determine that an L-1A applicant falls into this category when at least two of the following three indicators are present AND the L-1A applicant is not seeking to establish a new office in the United States:
   1. Will be a senior-level executive or manager;
   2. Has spent multiple years with the company overseas, indicating a substantial knowledge and expertise within the organization that can only be replicated by a

new employee within the company following extensive training that would cause the employer financial hardship; or

3. Will fill a critical business need for a company meeting a critical infrastructure need.

L-1A applicants seeking to establish a new office in the United States likely do NOT fall into this category, unless two of the three criteria are met AND the new office will employ, directly or indirectly, five or more U.S. workers.

## Applicants for L-1B Visas

Travel by L-1B applicants is in the national interest when the applicant falls within one of the following categories:

A. Employers associated with the United States Government: Travel based on a request from a U.S. government agency or entity to meet critical foreign policy objectives or satisfy treaty or contractual obligations. An example of this would be supporting U.S. military base construction or IT infrastructure.

B. Applicants seeking to resume ongoing employment in the United States in the same position with the same employer and visa classification. Forcing employers to replace employees in this situation may cause undue financial hardship. For individual L-1B applicants, consular officers can refer to Part II, Question 2 of the approved Form I-129 to determine if the applicant is continuing in "previously approved employment without change with the same employer."

C. Applicants travelling temporarily as a technical expert or specialist meeting a critical infrastructure need. The consular officer may determine that an L-1B applicant falls into this category if all three of the following indicators are present:

1. The applicant's proposed job duties and specialized knowledge indicate the individual will provide significant and unique contributions to the petitioning company;
2. The **applicant's specialized knowledge is specifically related to a critical infrastructure need**; AND
3. The applicant has spent multiple years with the company overseas, indicating a substantial knowledge and expertise within the organization that can only be replicated by a new employee within the company following extensive training that would cause the employer financial hardship.

_____
Date Signed

_____
Carl C. Risch
Assistant Secretary of State for Consular Affairs
Department of State

**AGREEMENT IN PRINCIPLE\***

**Use of the national interest exception set forth in section 3(b)(iv) of the Presidential Proclamation entitled "Suspension of Entry of Immigrants and Nonimmigrants Who Present a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak"**

1. (SBU) <u>Economic Recovery</u>:  Temporary travel as a technical expert or specialist, as a senior level executive or manager, or as a worker that fills an essential business need where an American worker is not available and whose denial would cause financial hardship to a U.S. business.

2. (SBU) <u>Humanitarian/Childcare</u>:  Travel to provide care for a U.S. citizen, legal permanent resident, or nonimmigrant in lawful status, to provide services critical to the health or welfare of a child (this may include travel by an au pair), or that which prevents a U.S. citizen, legal permanent resident, or other nonimmigrant in lawful status from becoming a public charge or ward of the state or the ward of a medical or other public funded institution.

3. (SBU) <u>COVID-19 Medical Care</u>:  Travel as a public health or healthcare professional to alleviate the effects of the COVID-19 pandemic, or to continue ongoing research in an area with a substantial public health benefit (*e.g.* cancer or communicable disease research).

4. (SBU) <u>National Security</u>:  Travel, for example, based on a request from a U.S. government agency or entity to meet foreign policy objectives, U.S. Government Treaty, and/or contractual obligations.

*\* These exceptions are not exclusive and will be regularly assessed, and modified as necessary, to ensure that they account for changes in the United States labor market as the economy reopens from the current COVID-19 crisis.  Section 4(a)(i) of the proclamation establishes that State, Labor, and DHS shall refine the national interest travel exception.  This document reflects an agreement in principle as the agencies fulfill their directives under section 4(a)(i).*

SENSITIVE BUT UNCLASSIFIED

**ALDAC:  FURTHER IMPLEMENTATION PROCEDURES AND GUIDANCE FOR PRESIDENTIAL PROCLAMATION 10052 SUSPENDING ENTRY OF IMMIGRANTS AND NONIMMIGRANTS WHO PRESENT RISK TO THE U.S. LABOR MARKET DURING THE ECONOMIC RECOVERY FOLLOWING THE COVID-19 OUTBREAK (NATIONAL INTEREST EXCEPTIONS)**

| | |
|---|---|
| **TAGS:** | CMGT, CVIS |
| **Captions:** | SENSITIVE |
| **Reference:** | A) 20 STATE 61886 |
| | B) 20 STATE 66820 |
| | C) 20 STATE 62808 |
| | D) 20 STATE 42180 |
| | E) 20 STATE 65080 |
| | F) 20 STATE 40968 |
| **Subject:** | FURTHER IMPLEMENTATION PROCEDURES AND GUIDANCE FOR PRESIDENTIAL PROCLAMATION 10052 SUSPENDING ENTRY OF ALIENS WHO PRESENT A RISK TO THE U.S. LABOR MARKET FOLLOWING THE CORONAVIRUS OUTBREAK (NATIONAL INTEREST EXCEPTIONS) |

1.  (SBU) SUMMARY:  On May 6, 2020, the Secretary of State delegated to the Assistant Secretary for Consular Affairs the authority under P.P. 10014  to determine that an alien's entry into the United States would be in the national interest under that P.P. and its successor proclamations, including P.P. 10052 (Labor Market P.P.s).  Effective immediately, the Assistant Secretary has determined that Consular Section Chiefs (or those acting as Consular Section Chief in an official capacity due to the extended absence of the Consular Section Chief) may approve a national interest exception for certain nonimmigrant visa applications subject to the P.P. 10052 suspension upon concluding that the applicant's travel falls within the scope of one of the categories described in paragraph 3, as described below.  END SUMMARY.

2.  (U) Background:  Presidential Proclamations (P.P.) 10014 and 10052 suspend the entry of certain persons who pose a risk of displacing and disadvantaging United States workers during the current economic recovery.  These actions were based on the President's determinations that unrestricted entry of certain aliens as nonimmigrants and immigrants would be detrimental to the interests of the United States (REF A).  Section 3 of P.P. 10052 excepts a range of individuals from visa and entry restrictions, including aliens whose travel would be in the national interest,

as determined by the Secretary of State, the Secretary of Homeland Security (DHS), or their designees. On May 6, the Secretary of State delegated to the Assistant Secretary for Consular Affairs the authority to except individuals whose travel is in the U.S. national interest. Following consultation with DHS and the Department of Labor (DOL), the Assistant Secretary authorized consular section chiefs to approve national interest exceptions under PP 10052 to applicants whose travel falls within one of the categories described in the Assistant Secretary's determination. See REF B. REF B also advised consular officers that "[f]urther guidance expanding on who may also qualify for a national exception will be transmitted by SEPTEL." Following further consultation with DOL and DHS, the Assistant Secretary has determined that temporary travel by nonimmigrants in the following additional categories is in the national interest.

3. (SBU) **National Interest Exceptions-Nonimmigrants:** P.P. 10052 provides an exception for "any alien whose entry would be in the national interest as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees." Sec. 3(b)(iv). The proclamation separately notes that "[t]he consular officer shall determine in his or her discretion, whether a nonimmigrant has established his or her eligibility" for an exception to this proclamation, including a national interest exception. The below framework, supplementing and NOT replacing initial guidance (REF B), identifies categories of visa applicants who should, at this time, also be considered for a national interest exception based on the Assistant Secretary's determinations. These determinations are consistent with an interagency Agreement in Principle, regarding the use of the national interest exception authority, coordinated by the White House with the Departments of State, Labor, and Homeland Security.

(SBU) **Applicants for H-1B Visas**
Travel by H-1B applicants is in the national interest when the applicant falls within one of the following categories:

A. (SBU) Applicants seeking to resume ongoing employment in the United States in the same position with the same employer and visa classification. Forcing employers to replace employees in this situation may cause financial hardship. Consular officers can refer to Part II, Question 2 of the approved Form I-129 to determine if the applicant is continuing in "previously approved employment without change with the same employer." (See also KCC pre-screening support, paragraph 4)

B. (SBU) Technical specialists, senior level managers, and other workers whose travel is necessary to facilitate the immediate and continued economic recovery of the United States. Consular officers may determine that an H-1B applicant falls into this category when at least **two** of the following five indicators are present:

1. The petitioning employer has a continued need for the services or labor to be performed by the H-1B nonimmigrant in the United States. Labor Condition Applications (LCAs) approved by DOL during or after July 2020 are more likely to account for the effects of the COVID-19 pandemic on the U.S. labor market and the petitioner's business; therefore, this indicator is only present for cases with an LCA

approved during or after July 2020 as there is an indication that the petitioner still has a need for the H-1B worker. For LCAs approved by DOL before July 2020, this indicator is only met if the consular officer is able to determine from the visa application the continuing need of petitioned workers with the U.S. employer. Regardless of when the LCA was approved, if an applicant is currently performing or is able to perform the essential functions of the position for the prospective employer remotely from outside the United States, then this indicator is not present. To verify that an H-1B worker is still needed by a petitioner, consular officers can either consider information provided during the interview, information from the employer included in the petition or, if fraud is suspected, request KCC to conduct a verification (see KCC support). KCC will then verify with the employer whether the information provided on the LCA and I-129 petition is accurate.

2. The applicant's proposed job duties or position within the petitioning company indicate the individual will provide significant and unique contributions to an **employer meeting a critical infrastructure need.** Critical infrastructure sectors are chemical, communications, dams, defense industrial base, emergency services, energy, financial services, food and agriculture, government facilities, healthcare and public health, information technology, nuclear reactors, transportation, and water systems. Employment in a critical infrastructure sector alone is not sufficient; the consular officer must also establish that the applicant holds one of the two types of positions noted below:

> a.) **Senior level placement** within the petitioning organization or job duties reflecting performance of functions that are both unique and vital to the management and success of the overall business enterprise; OR

> b.) The applicant's **proposed job duties and specialized qualifications** indicate the individual will provide significant and unique contributions to the petitioning company.

3. The wage rate paid to the H-1B applicant meaningfully exceeds the prevailing wage rate (see Part F, Questions 10 and 11 of the LCA) by at least 15 percent. When an H-1B applicant will receive a wage that meaningfully exceeds the prevailing wage, it suggests that the employee fills an important business need where an U.S. worker is not available. (See "KCC pre-screening support" below).

4. The H-1B applicant's education, training and/or experience demonstrate unusual expertise in the specialty occupation in which the applicant will be employed. For example, an H-1B applicant with a doctorate or professional degree, or many years of relevant work experience, may have such advanced expertise in the relevant occupation as to make it more likely that he or she will perform critically important work for the petitioning employer.

5. Denial of the visa pursuant to P.P. 10052 will cause financial hardship to the U.S. employer. The following examples, to be assessed based on information from the visa application, are illustrative of what may constitute a financial hardship for an employer if

a visa is denied: the employer's inability to meet financial or contractual obligations; the employer's inability to continue its business; or a delay or other impediment to the employer's ability to return to its pre-COVID-19 level of operations. Officers may consider information provided during the interview or information from the employer included in the petition application file in PIMS. Please note that consular officers must NOT require any documentation from the petitioner in order to make this determination. Consequently, consular officers may not often have sufficient information to determine this indicator is met.

## (SBU) Applicants for H-2B Visas

Travel by H-2B applicants is in the national interest when necessary to facilitate the immediate and continued economic recovery of the United States. Consular officers may determine that an H-2B applicant falls into this category when **TWO** of the following three indicators are present:

A. The applicant was previously employed and trained by the petitioning U.S. employer. The applicant must have previously worked for the petitioning U.S. employer under **two or more H-2B (named or unnamed) petitions**. U.S. employers dedicate substantial time and resources to training seasonal/temporary staff, and denying visas to the most experienced returning workers may cause financial hardship to the U.S. business.

B. The applicant is traveling based on a TLC that reflects continued need for the worker. TLCs approved by DOL during or after July 2020 are more likely to account for the effects of the COVID-19 pandemic on the U.S. labor market and the petitioner's business, and therefore this indicator is only present for cases with a TLC approved during or after July 2020 as there is an indication that the petitioner still has a need for the H-2B worker. For TLCs approved by DOL before July 2020, this indicator is only met if the consular officer is able to determine from the visa application the continuing need of petitioned workers with the U.S. employer. In considering this indicator, consular officers should review the KCC-entered CEAC notes, as mentioned in previous guidance (ref E).

C. Denial of the visa pursuant to P.P. 10052 will cause financial hardship to the U.S. employer. The following examples, to be assessed based on information from the visa application, are illustrative of what may constitute a financial hardship for an employer if a visa is denied: the employer's inability to meet financial or contractual obligations; the employer's inability to continue its business; or a delay or other impediment to the employer's ability to return to its pre-COVID-19 level of operations. Officers may consider information provided during the interview or information from the employer included in the petition application file in PIMS. Please note that consular officers must NOT require any documentation from the petitioner in order to make this determination. Consequently, consular officers may not often have sufficient information to determine this indicator is met.

## (SBU) Applicants for L-1A Visas

Travel by L-1A applicants is in the national interest when the applicant falls within one of the following categories:

A.  Employers associated with the United States Government:  Travel based on a request from a U.S. government agency or entity to meet critical foreign policy objectives or satisfy treaty or contractual obligations.  An example of this would be supporting U.S. military base construction or IT infrastructure.

B.  Applicants seeking to resume ongoing employment in the United States in the same position with the same employer and visa classification.  Forcing employers to replace employees in this situation may cause undue financial hardship.  For individual L-1A applicants, consular officers can refer to Part II, Question 2 of the approved Form I-129 to determine if the applicant is continuing in "previously approved employment without change with the same employer."  (See "KCC support" below)

C.  Applicants travelling temporarily as a senior level executive or manager filling a critical business need of an employer meeting a **critical infrastructure** need.  Critical infrastructure sectors include chemical, communications, dams, defense industrial base, emergency services, energy, financial services, food and agriculture, government facilities, healthcare and public health, information technology, nuclear reactors, transportation, and water systems.   The consular officer may determine that an L-1A applicant falls into this category when at least two of the following three indicators are present AND the applicant is not establishing a new office in the United States:
    1.  Will be a senior-level executive or manager;
    2.  Has spent multiple years with the company overseas, indicating a substantial knowledge and expertise within the organization that can only be replicated by a new employee within the company following extensive training that would cause the employer financial hardship; OR
    3.  Will fill a critical business need for a company meeting a critical infrastructure need.

L-1A applicants seeking to establish a new office in the United States likely do NOT fall into this category, unless two of the three criteria are met AND the new office will employ, directly or indirectly, five or more U.S. workers.

**Applicants for L-1B Visas**
Travel by L-1B applicants is in the national interest when the applicant falls within one of the following categories:

A.  Employers associated with the United States Government:  Travel based on a request from a U.S. government agency or entity to meet critical foreign policy objectives or satisfy treaty or contractual obligations.  An example of this would be supporting U.S. military base construction or IT infrastructure.

B.  Applicants seeking to resume ongoing employment in the United States in the same position with the same employer and visa classification.  Forcing employers to replace employees in this situation may cause undue financial hardship.  For individual L-1B applicants, consular officers can refer to Part II, Question 2 of the approved Form I-129

to determine if the applicant is continuing in "previously approved employment without change with the same employer." Consular officers can either confirm this through reviewing PCQS CLAIMS III or reviewing a note entered by KCC in the CEAC.

C. Applicants travelling temporarily as a technical expert or specialist meeting a critical infrastructure need. The consular officer may determine that an L-1B applicant falls into this category if all three of the following indicators are present:

1. The applicant's proposed job duties and specialized knowledge indicate the individual will provide significant and unique contributions to the petitioning company;
2. The applicant's specialized knowledge is specifically related to a critical infrastructure need **(Note: Unlike for H-1B and L-1A applicants, the position must be related to a critical infrastructure need)**; AND
3. The applicant has spent multiple years with the company overseas, indicating a substantial knowledge and expertise within the organization that can only be replicated by a new employee within the company following extensive training that would cause the employer financial hardship.

**4. (SBU) KCC Support:** KCC, as part of its routine pre-screening, will also review the petition and LCAs (for H-1B cases) and enter notes in the CEAC DS-160 to assist officers in determining whether an applicant might benefit from an exception. KCC provides this service for consular officers as a way to consolidate certain information in one convenient location to streamline processing; officers at post remain the finders of fact in visa adjudications. KCC CEAC notes for H-1B cases will detail: the date of LCA approval; comparison of "prevailing wage" vs the offered salary; and whether the applicant is returning to the same employer. A sample H-1B note would be: LCA Approval Date = 07JUL2020; Offered wage = 29% over prevailing; Returning worker, SAME EMPLOYER. KCC notes for L-1A cases will only note if the applicant is returning to the same employer. A sample L-1A note would be: NEW EMPLOYMENT – NOT RETURNING WORKER FOR SAME EMPLOYER.

(SBU) Pre-screening notes will only be entered for H-1B and individual L-1s. Blanket L applications will not undergo KCC pre-screening.

(SBU) In order to verify a continuing need for a petitioned worker, consular staff may consider information provided during the interview or information from the employer included in the petition file in PIMS as they would in any normal adjudication. As per usual practice, if fraud is suspected, consular officers may also request KCC conduct such a verification by transferring ECAS cases to DOS/CA/VO/DO/KCC. Consular sections should **only** submit a verification request to KCC if this indicator is determinative or leading to an exception (i.e., the applicant is eligible for the visa and will qualify for an NIE if this indicator is present). Given the likely volume of requests, and the impact of COVID-19 on KCC operations, delays in responses should be expected.

(SBU) Consular officers can also identify applicants resuming ongoing employment by viewing USCIS adjudications in the PCQS portal in the CCD. Select CLAIMS 3 and after entering the

relevant petitioner number locate "Petition C6 Chg.  In Employment and other is Y."  If the letter Y is NOT entered next to this field then the worker is returning to the same employer.

5.  (SBU) Consular Section Chiefs are responsible for establishing and documenting a process under which they will assess whether an individual's travel falls within the scope of the Assistant Secretary's determination relating to travel in the U.S. national interest.  Case notes should clearly state the criteria that was met for the applicant to be covered by the Assistant Secretary's national interest determination.  A Visa Referral or Priority Appointment request (PAR) may be useful in flagging urgent travel for a visa applicant but is insufficient on its own to establish that a case is covered by the Assistant Secretary's national interest determination.  All other FAM guidance regarding the referral process still applies.  Guidance on entering required CLASS Lookouts has been previously provided (See paragraph 12 of REF C).

7 (SBU) **GSS and Post website language:**  CA/VO/F is developing cleared language for use on GSS websites as well as embassy/consulate public webpages.  CA/VO/F will transmit this information to consular sections by email in the near future, but for now, consular sections should refrain from publicly posting any guidance included in this ALDAC.  Please consult your CA/VO/F analyst for further questions.

8.  (SBU) **Not all "National Interest" Exceptions are "Mission Critical":**  Whether the applicant qualifies for a national exception is distinct from whether a particular case is "mission critical" as previously discussed (ref C).   Per previous guidance (ref D), posts not in Diplomacy Strong Phase Three should NOT resume routine visa services, including adjudication of the visa classifications covered by the Assistant Secretary's determination,  and should follow the phased resumption guidance.  However,  consular managers may, in their discretion, determine that a specific H-1B, H-2, J, or L application that is likely to meet the terms of the Assistant Secretary's determination for a national interest exception to P.P 10052 or another exception is also "mission critical."  An official determination of whether an applicant is eligible for a national interest exception can only be properly evaluated in the context of a visa adjudication; consular officers should not presume that an applicant is eligible for a national interest exception simply because a consular manager accepted the case as mission critical.

9.  (SBU) **Clarification on how P.P. 10052 impacts individuals who have previously received NIVs in the suspended classifications:**  On June 22, 2020, the President issued a Proclamation on Amendment to Proclamation 10052, which provided that the suspension of entry, which generally bars visa issuance in the specified visa classifications, shall apply only to an alien who is outside of the United States on the effective date of the Proclamation (June 24, 2020), and who "does not have a nonimmigrant visa, of any of the classifications specified in section 2 of this proclamation and pursuant to which the alien is seeking entry, that is valid on the effective date [June 24, 2020] of this proclamation," or other official travel document other than a visa (such as a transportation letter, an appropriate boarding foil, or an advance parole document) that is valid on the effective date.  This means that, absent eligibility for an exception, including an NIE, individuals outside the United States on June 24, with or without a valid visa, cannot be reissued a new visa in one of the suspended classifications.  If an applicant outside of the United States

had a valid H-1B, H-2B, J-1, L or derivative visa on June 24, they are not subject to PP 10052 for the purposes of seeking admission to the United State until the visa expires, at which point the applicant would become subject to the proclamation.  Individuals who were in the United States on June 24 are not subject to the proclamation.

10. (SBU) Consular sections should reach out to their VO/F analyst or the CA-VO-NIE@state.gov email with any questions.

Approved:         CA – Carl C. Risch         ()

Drafted:           CA/VO/F: ███████████

Cleared:           CA: IGBrownlee       (OK)

| | | |
|---|---|---|
| CA: | ██████ | (OK) |
| CA: | ███████ | (OK) |
| CA/VO: | ERamotowski | (OK) |
| CA/VO: | ██████ | (OK) |
| CA/VO/F: | ███ | (OK) |
| CA/VO/F: | ███████ | (OK) |
| CA/VO/F: | ████████ | (OK) |
| CA/VO/L: | ██████ | (OK) |
| CA/VO/L: | ██████ | (OK) |
| CA/VO/L: | ██████ | (OK) |
| CA/VO/DO/KCC: | █████████ | (OK) |
| CA/VO/DO/KCC: | ████████ | (OK) |
| CA/EX: | ██████ | (OK) |
| CA/Press: | █████ | (OK) |
| CA/FPP: | ██████████ | (OK) |
| L/CA: | ██████ | (OK) |
| L/CA: | ███████ | (OK) |
| M: | ██████ | (OK) |
| AF/EX: | ███████ | (OK) |
| EAP/EX: | ███████ | (OK) |
| EUR-IO/EX: | ████████ | (OK) |
| EUR/PGI: | ████ | (OK) |
| NEA-SCA/EX: | █████████ | (OK) |
| WHA/EX: | ██████ | (OK) |

UNCLASSIFIED

## DEPARTMENT OF STATE
**Delegation of Authority No. ____**

### Delegation by the Secretary of State
### of Authorities under the Presidential Proclamation Suspending Entry of
### Immigrants Who Present Risk to the U.S. Labor Market During the
### Economic Recovery Following the COVID-19 Outbreak

By virtue of the authority vested in the Secretary of State, including Section 1 of the State Department Basic Authorities Act, as amended (22 U.S.C. § 2651a), and the Presidential Proclamation Suspending Entry of Immigrants Who Present Risk to the U.S. Labor Market During the Economic Recovery Following the COVID-19 Outbreak, I hereby delegate to the Assistant Secretary for Consular Affairs, to the extent authorized by law, the following authorities under said Presidential Proclamation:

1) The authority under section 2(b)(ii) to determine that work to be performed by an immigrant is essential to combating, recovering from, or otherwise alleviating the effects of the COVID-19 outbreak;
2) The authority under section 2(b)(vi) to determine that an immigrant's entry would further important United States law enforcement objectives, based on a recommendation of the Attorney General or his designee; and
3) The authority under section 2(b)(ix) to determine that an alien's entry into the United States would be in the national interest.

The Secretary, Deputy Secretary, Under Secretary for Management, and Deputy Under Secretary for Management may exercise any function or authority delegated by this delegation. The authorities delegated herein may be re-delegated.

This Delegation of Authority does not supersede or otherwise affect any other delegation of authority currently in effect and will expire upon the expiration of the Presidential Proclamation.

MAY 0 5 2020
_____
Date Signed

Michael R. Pompeo,
Secretary of State,
Department of State.

UNCLASSIFIED



**United States Department of State**

*Washington, D.C.  20520*

<u>SENSITIVE BUT UNCLASSIFIED</u>                    July 13, 2020

**ACTION MEMO FOR ASSISTANT SECRETARY CARL RISCH**

FROM:        CA/VO – Edward Ramotowski,  Deputy Assistant Secretary

SUBJECT:     (SBU) Exercising the National Interest Exception Authority under and
             Presidential Proclamations 10014 and 10052 (Labor Market P.P.s)

**BLUF:**      (SBU) We recommend that you make a national interest determination that will
             allow consular section chiefs at posts abroad to approve national interest
             exceptions for immigrant visa cases involving children who may age out.
             Additionally, we recommend you make national interest determinations that
             would allow posts to approve certain limited national interest exceptions for
             economic recovery, humanitarian and specialized childcare purposes, COVID-19
             medical care, and national security, based on an agreement in principle regarding
             the use of the national interest exception authority coordinated by the White
             House with the Departments of State, Labor, and Homeland Security.

**Recommendation**
That you:

1) Sign the Determination at Tab 1 establishing that travel described therein is in the U.S.
   national interest, for purposes of the Labor Market P.P.s.  For immigrant visa cases, the
   Determination will allow consular officers, with a manager's concurrence, to issue
   immigrant visas for applicants who are subject to aging out before the current expiration
   date of the relevant P.P.s or within two weeks thereafter, and any family members
   applying and traveling with such age out applicants.  For nonimmigrant visa cases, the
   Determination will allow consular officers, with a manager's concurrence, to issue
   nonimmigrant visas for applicants for reasons described in Tabs 1 and 4.
   (Approve/Disapprove by 7/15/20)

2) Approve the ALDAC at Tab 4 announcing your Determination and explaining that
   consular section chiefs may approve issuance of visas in accordance with the terms of
   your Determination.  (Approve/Disapprove by 7/15/20)

**Background**

(SBU) The President issued P.P. 10014 on April 22, 2020, suspending the entry of certain aliens
as immigrants for 60 days; P.P. 10052 extended this termination date to December 31, 2020 and
it may be continued further.  This action was based on the President's determination that these
immigrants present a risk to the U.S. labor market during the economic recovery following the
COVID-19 outbreak.  Section 2 of P.P. 10014 excepts a range of individuals from its restrictions,

SENSITIVE BUT UNCLASSIFIED

including aliens "whose entry would be in the national interest, as determined by the Secretary of State, the Secretary of Homeland Security, or their designees." In Section 4(a)(i) of P.P. 10052, the President directed the Secretary of State to exercise the authority under section 2(b)(iv) of Proclamation 10014 to exempt alien children who would, as a result of Proclamation 10014, age out of eligibility for a visa. On May 6, 2020, the Secretary of State delegated to the Assistant Secretary for Consular Affairs the authority to except from P.P. 10014 individuals whose travel is in the U.S. national interest. (Tab 3).

(SBU) Since April 23, the Department of State has processed 14 national interest exception requests for cases with immigrant visa applicants who are subject to aging out before the expiration of P.P. 10014 or shortly thereafter; no age out exception requests were refused. Seven of these cases included family members who also applied for immigrant visas and were traveling to the United States with the applicant subject to aging out.

(SBU) Because of the President's direction in P.P. 10052 to apply the national interest exception to age-outs, public uncertainty about the availability of exemptions for potential age-outs, the Department's consistent practice of approving individual age-out cases for national interest exceptions, and the undue expenditure of Department resources related to individual exercises of the national interest exception authority, we believe it would be in the national interest for you to determine cases involving applicants who are subject to aging out before the relevant P.P.s expire or within two weeks thereafter to be in the national interest. Such an exercise of your delegated authority under Section 2 of P.P. 10014 in this manner is consistent with the President's direction to exercise this authority to except alien children who would as a result of Proclamation 10014 age out of eligibility for a visa. Further, such a determination by you would allow consular officers to "determine" that "an immigrant has established his or her eligibility for an exception" in section 2(b), as required under Section 3 of the P. P. 10014 as extended by P.P. 10052. The Secretary's delegation of authority to you, covering section 2 of the COVID-19 Regional P.P.s, also enables you to make categorical determinations allowing consular section chiefs to approve issuance of immigrant visas for aging out applicants and any family members applying and traveling with them, in accordance with the proposed determination at Tab 1. We recommend making this determination for consistency with Department practice and the President's direction under P.P. 10052.

(SBU) We recommend limiting your determination of travel in the national interest to applicants who are not protected by the Child Status Protection Act ("CSPA") as a "child" and, therefore, may actually age out, if not granted a national interest exception. An applicant who is protected as a "child" under CSPA is already excepted from the COVID-19 Regional P.P.s as an "alien who is the child, foster child, or ward of a U.S. citizen or lawful permanent resident." However, an applicant who is protected as a "child" under CSPA must also be under the biological age of 21 and the child of a United States citizen to be excepted from P.P. 10014 as an "alien who is under 21 years old and is the child of a United States citizen." An applicant with a biological age of 21 or over who is protected as a "child" under CSPA will generally not age out, and therefore is not covered by the proposed determination at Tab 1. While there is some risk that, during a prolonged delay, such a beneficiary might lose CSPA protection (e.g., by marrying or if the petitioner dies) most applicants would preserve their "child status" which would allow them to complete visa processing once the applicable presidential proclamations terminate and

SENSITIVE BUT UNCLASSIFIED

conditions permit case adjudication. You have and will retain the delegated authority to review such requests for applicants protected by CSPA on a case-by-case basis (Tabs 2 and 3).

(SBU) P.P. 10052 provides an exception for "any alien whose entry would be in the national interest as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees." Sec. 3(b)(iv). The proclamation separately notes that "[t]he consular officer shall determine in his or her discretion, whether a nonimmigrant has established his or her eligibility" for an exception to this proclamation, including a national interest exception. Sec. 4(a). The ALDAC provides a framework for consular officers as part of the initial implementing procedures, identifying categories of visa applicants who should be considered for a national interest exception based on an agreement in principle regarding the use of the national interest exception coordinated by the White House with the Departments of State, Labor, and Homeland Security. The agreement in principle described four broad categories of circumstances that may be appropriate for national interest exceptions: economic recovery, humanitarian and childcare, COVID-19 medical care, and national security. As a preliminary matter, this framework for national interest exceptions will be incorporated into guidance for consular officers as part of the implementing procedures required under Section 4(a) of P.P. 10052. These procedures (Tab 4) cover areas of substantial agreement. The Department will continue to work with the Departments of Labor and Homeland Security to establish procedures for other categories not addressed in Tab 4.

(SBU) The Visa Office will provide specific guidance to overseas missions, monitor approvals, provide ongoing feedback to ensure consistent application of the exceptions, and deliver a weekly report on these efforts to exercise appropriate oversight. The Department will continue to collect the information needed to continue weekly reporting to M.

**Attachments:**
   Tab 1 – Proposed Determination of Travel in the National Interest for Age Out and Certain Nonimmigrant Cases
      Tab 2 – Delegation of Authority from the Secretary to the Assistant Secretary for Consular Affairs Dated March 19, 2020
      Tab 3 – Delegation of Authority from the Secretary to the Assistant Secretary for Consular Affairs Dated May 6, 2020
      Tab 4 – ALDAC Application of the Determination Regarding National Interest Exceptions under P.P. 10014 for Age Out and Certain Nonimmigrant Cases

SENSITIVE BUT UNCLASSIFIED

Approved:      CA/VO – Edward Ramotowski, Deputy Assistant Secretary   (EJR)

Drafted:       CA/VO/F – ███████████████

Cleared:       CA:  IGBrownlee                          (OK)
               CA: ████████                            (OK)
               CA: ███████                             (OK)
               CA/VO: ██████                           (OK)
               CA/VO/F: █████████                      (OK)
               CA/VO/L: ███████████                    (OK)
               CA/VO/L/A: ███████                      (OK)
               CA/P: █████████                         (OK)

SENSITIVE BUT UNCLASSIFIED

Determination by the Assistant Secretary of State for Consular Affairs
Regarding Travel in the National Interest under the Presidential Proclamations
Suspending Entry of Immigrants Who Present Risk to the U.S. Labor Market During the
Economic Recovery Following the COVID-19 Outbreak and Suspending Entry as Immigrants
and Nonimmigrants of Certain Persons Who Pose a Risk of Transmitting 2019 Novel
Coronavirus

By virtue of the authority vested in the Assistant Secretary of State for Consular Affairs, including Section 1 of the State Department Basic Authorities Act, as amended (22 § USC 2651a) and Presidential Proclamations 10014 and 10052, Delegation of Authority from the Secretary of State to the Assistant Secretary of State for Consular Affairs of March 19, 2020, and Delegation of Authority from the Secretary of State to the Assistant Secretary of State for Consular Affairs of May 6, 2020, I hereby determine, based on the delegated authority under the above-listed proclamations, that the entry of an alien into the United States would be in the national interest if the alien is seeking to enter the United States on an immigrant visa and would be subject to aging out of visa eligibility  before the expiration of the relevant proclamation or within two weeks thereafter, or if the alien is a family member traveling and applying for an immigrant visa with another alien who is eligible for the national interest exception based on aging out of visa eligibility.

I hereby establish implementing procedures and determine, based on the delegated authority under Presidential Proclamation 10052, to grant exceptions to any alien whose entry would be in the national interest under Section 3(b)(iv) of Presidential Proclamation 10052 where the alien's travel to the United States falls within one of the categories below:

In addition, by virtue of the authority delegated to the Assistant Secretary of State for Consular Affairs, including authority under Section 1 of the State Department Basic Authorities Act, as amended (22 § USC 2651a) and Presidential Proclamation 10052, through the Delegation of Authority from the Secretary of State to the Assistant Secretary of State for Consular Affairs of May 6, 2020, I hereby determine, based on the delegated authority under Presidential Proclamation 10052, to establish implementing procedures and grant exceptions to any alien whose entry would be in the national interest under Section 3(b)(iv) of Presidential Proclamation 10052 where the alien's travel to the United States falls within one of the categories below:

a) H-1B applicants who travel as a public health or healthcare professional or researcher to alleviate the effects of the COVID-19 pandemic, or to conduct ongoing medical research in an area with a substantial public health benefit (e.g. cancer or communicable disease research).

b) H-1B applicants whose travel is supported by a request from a U.S. government agency or entity to meet critical U.S. foreign policy objectives or to satisfy treaty or contractual obligations.

c) H-2B applicants whose travel is based on a request from a U.S. government agency or entity to meet critical foreign policy objectives or to satisfy treaty or contractual

obligations. An example of this would be supporting U.S. military base construction (e.g. associated with the National Defense Authorization Act) or IT infrastructure.

d) J-1 applicants who will travel as an au pair

    1) to provide care for a minor U.S. citizen, lawful permanent resident, or nonimmigrant in lawful status and who possesses special skills required for a child with particular needs (e.g., medical, special education, or sign language);

    2) to prevent a U.S. citizen, lawful permanent resident, or other nonimmigrant in lawful status from becoming a public health charge or ward of the state of a medical or other public funded institution; or

    3) to provide childcare services for a child whose parents are involved with the provision of medical care to individuals to individuals who have contracted COVID-19 or medical research at United States facilities to help the United State combat COVID-19.

e) J-1 visa applicants who travel to participate in ECA identified exchange visitor program for interns, summer work travel, camp counselors, trainees, or teachers only if described below:

    1) An exchange program conducted pursuant to a bilateral agreement or other arrangement with a foreign government: An exchange program conducted pursuant to an MOU, Statement of Intent, or other valid agreement or arrangement between a foreign government and any federal, state, or local government entity in the United States that is designed to promote U.S. national interests if the agreement or arrangement with the foreign government was in effect prior to the effective date of the Presidential Proclamation

    2) Interns and Trainees on U.S. government agency-sponsored programs (those with a program number beginning with "G-3" on Form DS-2019): An exchange visitor participating in an exchange visitor program in which he or she will be hosted by a U.S. government agency and the program supports the immediate and continued economic recovery of the United States.

    3) Specialized Teachers in Accredited Educational Institutions with a program number beginning with "G-5" on Form DS-2019:   An exchange visitor participating in an exchange program in which he or she will teach full-time, including a substantial portion that is in person, in a publicly or privately operated primary or secondary accredited educational institution where the applicant demonstrates ability to make a specialized contribution to the education of students in the United States. A "specialized teacher" applicant must demonstrate native or near-native foreign language proficiency and the ability to teach his/her assigned subject(s) in that language (e.g., teaching math in German, or teaching the Spanish language).

    4) Critical foreign policy objectives:  This only includes a small number of programs where an exchange visitor participating in an exchange program that fulfills critical and time sensitive foreign policy objectives as determined in consultation between the consular section, the Visa Office, and the Education and Cultural Affairs Bureau.

f) Derivative applicants who will accompany or follow to join a principal applicant who is a spouse or parent and who is excepted from, or not otherwise subject to, P.P. 10052. This exception can be extended to derivative applicants when the principal is currently in the United States or has a valid visa.

7/20/2020

Date Signed

Carl C. Risch
Assistant Secretary of State for Consular Affairs
Department of State

Determination by the Assistant Secretary of State for Consular Affairs
Regarding Travel in the National Interest under Presidential Proclamation 10052
Suspending Entry of Aliens Who Present a Risk to the U.S. Labor Market Following the
Coronavirus Outbreak

By virtue of the authority delegated to the Assistant Secretary of State for Consular
Affairs under the Delegation of Authority from the Secretary of State to the Assistant Secretary
of State for Consular Affairs dated May 6, 2020, I hereby determine, based on the delegation of
authority provided under Section 3(b)(iv) of Presidential Proclamation 10052, that the entry into
the United States of an alien is in the national interest where a Consular Section Chief (or the
person acting as Consular Section Chief in an official capacity due to the extended absence of the
Consular Section Chief), concludes the alien's travel to the United States falls within one of the
categories described below.

## Applicants for H-1B Visas

Travel by H-1B applicants is in the national interest when the applicant falls within one of the
following categories:

A.  Applicants seeking to resume ongoing employment in the United States in the same
    position with the same employer and visa classification.  Forcing employers to replace
    employees in this situation may cause financial hardship.  Consular officers can refer to
    Part II, Question 2 of the approved Form I-129 to determine if the applicant is continuing
    in "previously approved employment without change with the same employer."

B.  Technical specialists, senior level managers, and other workers whose travel is necessary
    to facilitate the immediate and continued economic recovery of the United States.
    Consular officers may determine that an H-1B applicant falls into this category when at
    least two of the following five indicators are present:

    1.  The petitioning employer has a continued need for the services or labor to be
        performed by the H-1B nonimmigrant in the United States.  Labor Condition
        Applications (LCAs) approved by DOL during or after July 2020 are more likely to
        account for the effects of the COVID-19 pandemic on the U.S. labor market and the
        petitioner's business; therefore, this indicator is only present for cases with an LCA
        approved during or after July 2020 as there is an indication that the petitioner still has
        a need for the H-1B worker.  For LCAs approved by DOL before July 2020, this
        indicator is only met if the consular officer is able to determine from the visa
        application the continuing need of petitioned workers with the U.S. employer.
        Regardless of when the LCA was approved,  if an applicant is currently performing
        or is able to perform the essential functions of the position for the prospective
        employer remotely from outside the United States, then this indicator is not present.

    2.  The applicant's proposed job duties or position within the petitioning company
        indicate the individual will provide significant and unique contributions to an
        **employer meeting a critical infrastructure need.**  Critical infrastructure sectors are

chemical, communications, dams, defense industrial base, emergency services, energy, financial services, food and agriculture, government facilities, healthcare and public health, information technology, nuclear reactors, transportation, and water systems. Employment in a critical infrastructure sector alone is not sufficient; the consular officer must also establish that the applicant holds one of the two types of positions noted below:

   a.) **Senior level placement** within the petitioning organization or job duties reflecting performance of functions that are both unique and vital to the management and success of the overall business enterprise; OR

   b.) The applicant's **proposed job duties and specialized qualifications** indicate the individual will provide significant and unique contributions to the petitioning company.

3. The wage rate paid to the H-1B applicant meaningfully exceeds the prevailing wage rate (see Part F, Questions 10 and 11 of the LCA) by at least 15 percent. When an H-1B applicant will receive a wage that meaningfully exceeds the prevailing wage, it suggests that the employee fills an important business need where an American worker is not available.

4. The H-1B applicant's education, training and/or experience demonstrate unusual expertise in the specialty occupation in which the applicant will be employed. For example, an H-1B applicant with a doctorate or professional degree, or many years of relevant work experience, may have such advanced expertise in the relevant occupation as to make it more likely that he or she will perform critically important work for the petitioning employer.

5. Denial of the visa pursuant to P.P. 10052 will cause financial hardship to the U.S. employer. The following examples, to be assessed based on information from the visa application, are illustrative of what may constitute a financial hardship for an employer if a visa is denied: the employer's inability to meet financial or contractual obligations; the employer's inability to continue its business; or a delay or other impediment to the employer's ability to return to its pre-COVID-19 level of operations.

**Applicants for H-2B Visas**
Travel by H-2B applicants is in the national interest when necessary to facilitate the immediate and continued economic recovery of the United States. Consular officers may determine that an H-2B applicant falls into this category when at least two of the following three indicators are present:

A. The applicant was previously employed and trained by the petitioning U.S. employer. The applicant must have previously worked for the petitioning U.S. employer under **two or more H-2B (named or unnamed) petitions**. U.S. employers dedicate substantial time and resources to

training seasonal/temporary staff, and denying visas to the most experienced returning workers may cause financial hardship to the U.S. business.

B. The applicant is traveling based on a temporary labor certification (TLC) that reflects continued need for the worker. TLCs approved by DOL during or after July 2020 are more likely to account for the effects of the COVID-19 pandemic on the U.S. labor market and the petitioner's business, and therefore this indicator is only present for cases with a TLC approved during or after July 2020 as there is an indication that the petitioner still has a need for the H-2B worker. For TLCs approved by DOL before July 2020, this indicator is only met if the consular officer is able to determine from the visa application the continuing need of petitioned workers with the U.S. employer.

C. Denial of the visa pursuant to P.P. 10052 will cause financial hardship to the U.S. employer. The following examples, to be assessed based on information from the visa application, are illustrative of what may constitute a financial hardship for an employer if a visa is denied: the employer's inability to meet financial or contractual obligations; the employer's inability to continue its business; or a delay or other impediment to the employer's ability to return to its pre-COVID-19 level of operations.

## Applicants for L-1A Visas

Travel by L-1A applicants is in the national interest when the applicant falls within one of the following categories:

A.   Employers associated with the United States Government: Travel based on a request from a U.S. government agency or entity to meet critical foreign policy objectives or satisfy treaty or contractual obligations. An example of this would be supporting U.S. military base construction or IT infrastructure.

B.   Applicants seeking to resume ongoing employment in the United States in the same position with the same employer and visa classification. Forcing employers to replace employees in this situation may cause undue financial hardship. For individual L-1A applicants, consular officers can refer to Part II, Question 2 of the approved Form I-129 to determine if the applicant is continuing in "previously approved employment without change with the same employer."

C.   Applicants travelling temporarily as a senior level executive or manager filling a critical business need of an **employer meeting a critical infrastructure need.** Critical infrastructure sectors include chemical, communications, dams, defense industrial base, emergency services, energy, financial services, food and agriculture, government facilities, healthcare and public health, information technology, nuclear reactors, transportation, and water systems. The consular officer may determine that an L-1A applicant falls into this category when at least two of the following three indicators are present AND the L-1A applicant is not seeking to establish a new office in the United States:
  1. Will be a senior-level executive or manager;
  2. Has spent multiple years with the company overseas, indicating a substantial knowledge and expertise within the organization that can only be replicated by a

new employee within the company following extensive training that would cause the employer financial hardship; or
3. Will fill a critical business need for a company meeting a critical infrastructure need.

L-1A applicants seeking to establish a new office in the United States likely do NOT fall into this category, unless two of the three criteria are met AND the new office will employ, directly or indirectly, five or more U.S. workers.

**Applicants for L-1B Visas**
Travel by L-1B applicants is in the national interest when the applicant falls within one of the following categories:

A. Employers associated with the United States Government:  Travel based on a request from a U.S. government agency or entity to meet critical foreign policy objectives or satisfy treaty or contractual obligations. An example of this would be supporting U.S. military base construction or IT infrastructure.

B. Applicants seeking to resume ongoing employment in the United States in the same position with the same employer and visa classification.  Forcing employers to replace employees in this situation may cause undue financial hardship.  For individual L-1B applicants, consular officers can refer to Part II, Question 2 of the approved Form I-129 to determine if the applicant is continuing in "previously approved employment without change with the same employer."

C. Applicants travelling temporarily as a technical expert or specialist meeting a critical infrastructure need.  The consular officer may determine that an L-1B applicant falls into this category if all three of the following indicators are present:

1. The applicant's proposed job duties and specialized knowledge indicate the individual will provide significant and unique contributions to the petitioning company;
2. The **applicant's specialized knowledge is specifically related to a critical infrastructure need**; AND
3. The applicant has spent multiple years with the company overseas, indicating a substantial knowledge and expertise within the organization that can only be replicated by a new employee within the company following extensive training that would cause the employer financial hardship.

8/6/2020
Date Signed

Carl C. Risch
Assistant Secretary of State for Consular Affairs
Department of State

## AGREEMENT IN PRINCIPLE\*

**Use of the national interest exception set forth in section 3(b)(iv) of the Presidential Proclamation entitled "Suspension of Entry of Immigrants and Nonimmigrants Who Present a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak"**

1. (SBU) <u>Economic Recovery</u>: Temporary travel as a technical expert or specialist, as a senior level executive or manager, or as a worker that fills an essential business need where an American worker is not available and whose denial would cause financial hardship to a U.S. business.

2. (SBU) <u>Humanitarian/Childcare</u>: Travel to provide care for a U.S. citizen, legal permanent resident, or nonimmigrant in lawful status, to provide services critical to the health or welfare of a child (this may include travel by an au pair), or that which prevents a U.S. citizen, legal permanent resident, or other nonimmigrant in lawful status from becoming a public charge or ward of the state or the ward of a medical or other public funded institution.

3. (SBU) <u>COVID-19 Medical Care</u>: Travel as a public health or healthcare professional to alleviate the effects of the COVID-19 pandemic, or to continue ongoing research in an area with a substantial public health benefit (*e.g.* cancer or communicable disease research).

4. (SBU) <u>National Security</u>: Travel, for example, based on a request from a U.S. government agency or entity to meet foreign policy objectives, U.S. Government Treaty, and/or contractual obligations.

*\* These exceptions are not exclusive and will be regularly assessed, and modified as necessary, to ensure that they account for changes in the United States labor market as the economy reopens from the current COVID-19 crisis. Section 4(a)(i) of the proclamation establishes that State, Labor, and DHS shall refine the national interest travel exception. This document reflects an agreement in principle as the agencies fulfill their directives under section 4(a)(i).*

**From:** ███████████████
**Sent:** Monday, June 22, 2020 3:59 PM
**To:** ███████████████
**Subject:** ~~(SBU)~~ New Presidential Proclamation Suspending Certain IV and NIV categories

Colleagues,

On Monday June 22, 2020, President Trump signed a Presidential Proclamation titled "Suspension of Entry of Immigrants and Nonimmigrants who present a Risk to the US Labor Market During the Economic Recovery Following the 2019 Novel Coronarvirus Outbreak." An ALDAC providing guidance regarding this P.P. is forthcoming. The most significant impacts on visa processing are as follows:

1. **IV categories**: This P.P extends the suspension of certain IV categories noted in P.P. 10014 (see 20 STATE 41350) through at least December 31, 2020.

2. **Employment-based NIVs**: This new P.P. will also suspend the issuance, with some limited exceptions, of H-1B, H-2B, and all L visas (and their derivative family members). These NIV suspensions will also remain in effect through at least December 31, 2020.

3. **J visas**: In addition, the PP will also suspend the issuance of certain J visas associated with the following programs (and their derivative family members): au pair, intern, trainee, teacher, camp counselor, or summer work travel. These NIV suspensions will also remain in effect through at least December 31, 2020.

Because the P.P. is effective 12:01 a.m. EDT on June 24, which is during the workday June 24 at many visa adjudicating posts, consular sections should NOT issue or print visas for otherwise qualified applications in those above categories at any time on your June 24, 2020 or later. All cases must be refused under INA 221(g) until further guidance is received from the Department. In addition, a new refusal code in NIV (NVPP) is being developed for NIV applications refused under this proclamation. The ALDAC will also provide guidance in applying a "National Interest Exception" (NIE) and other exceptions in the proclamation for certain applicants. Any urgent IV applications subject to PP 10014 (including but not limited to age outs) may be submitted in the meantime following guidance in 20 State 41350.

The global suspension on routine visa processing remains in effect, so posts should continue accepting applications for mission critical and emergency cases only.

Posts with any questions regarding this guidance should contact their post liaison officer in VO/F.

https://www.whitehouse.gov/presidential-actions/proclamation-suspending-entry-aliens-present-risk-u-s-labor-market-following-coronavirus-outbreak/

██████████
Visa Policy Analyst
CA/VO/F
U.S. Department of State
202. 485.7602

SENSITIVE BUT UNCLASSIFIED

████████████ ███████████████████████████████████████████████████████████████

**Sent:**                    Thursday, August 13, 2020 8:52 AM
**Subject:**                 Message to Posts:  Phased Resumption messaging and new guidance resources

---

**From:** ████████████████████████
**Sent:** Wednesday, July 15, 2020 12:27 AM
**To:** ████████████████████
**Subject:** Message to Posts: Phased Resumption messaging and new guidance resources

Hi,
At the next COVID webinars on Wednesday, July 15, we look forward to discussing the visa services phased resumption plan and the various issues related to all of the COVID-related proclamations. With all of the rapid changes, we know it's hard to keep track.

To help, we've put together a portal with all of the recent proclamations, and their related ALDACs. It is very much a work in progress, and we hope to add more material there to help you. That's on CAWeb, so you'll need Go Virtual to access it.

Attached to this email is the Press Guidance related to the phased resumption of visa services. We also encourage you to keep an eye on the TSG Newsroom, where we often post updates on visas for the public, including an edited version of the resumption PG. You can use them for your own pre-cleared talking points. That's publicly accessible since it's travel.state.gov.

Also attached to this message is our suggested language for describing the different levels of visa services you can provide. This version has been widely cleared within CA and will be shared your GSS colleagues. If you or Post leadership need to make significant changes to the language, please clear that with VO/F.
This email was sent to Consular Section Chiefs, Deputy Section Chiefs, IV Unit Chiefs and NIV Chiefs as listed in CCD.

████████████
Division Chief, Outreach/Inquiries, NEA and EAP
Office of Field Operations
Directorate of Visa Services

Dept. of State

**From:**

**Sent:** Tuesday, May 19, 2020 12:27 PM

**Subject:** Message to Posts:  Public Messaging on Visa Services

Dear Colleagues,

The March 20 suspension of all routine visa services remains in place, but posts may continue to provide emergency and mission-critical visa services. Please review your post-specific guidance, websites, and email automatic replies to ensure that they are consistent with the Department's guidance on the current status of visa services and visa restrictions related to the COVID-19 global pandemic.

In order to ensure consistency, we strongly recommend posts use the following language to refer website visitors and inquirers back to the Department's guidance on travel.state.gov:

"In response to significant worldwide challenges related to the COVID-19 pandemic, the Department of State has temporarily suspended routine visa services at all U.S. Embassies and Consulates. Embassies and consulates have canceled all routine immigrant and nonimmigrant visa appointments as of March 20, 2020, but will continue to provide emergency and mission-critical visa services as resources and local conditions allow. We will resume routine visa services as soon as possible but are unable to provide a specific date at this time. Please see these notices which contain detailed information about the current status of visa services worldwide and visa restrictions related to the COVID-19 global pandemic: https://travel.state.gov/content/travel/en/traveladvisories/ea/covid-19-visa-services-and-restrictions.html "

Posts should contact their post liaison officer in VO/F with any questions.

Thank you,

The Visa Office

(The email was sent to Consular Sections Chiefs, Deputy Consular Section Chiefs, IV Chiefs, and NIV Chiefs listed in CCD)

**From:**
**Sent:** Wednesday, April 29, 2020 1:52 PM
**Subject:** Message to Posts: PP10014 and Age Outs

Dear Colleagues,

The Visa Office recently issued guidance in 20 STATE 42180 regarding the ongoing suspension of all routine visa services due to the COVID-19 pandemic, which reiterated that all routine visa services remain suspended and summarized the types of cases that may continue to be processed as mission-critical. We would like to highlight that all age-out cases are considered mission-critical and may continue to be scheduled for appointments as resources allow. Any urgent age-out case may be eligible for a national interest exception to Presidential Proclamation 10014, which suspended the entry of certain immigrants who present risk to the U.S. labor market during the economic recovery following the COVID-19 outbreak. Posts requesting a national interest exception to Presidential Proclamation 10014 should follow the procedure set forth in paragraph 7 of 20 STATE 41350.

Posts should contact their post liaison officer in VO/F with any questions.

Thank you,

The Visa Office

**From:** ███████

**Sent:** Tuesday, April 28, 2020 6:42 AM

**Subject:** Message to Posts: Use of the ███ refusal code

Dear Colleagues,

The Presidential Proclamation (P.P.) titled "Suspending Entry of Immigrants Who Present Risk to the U.S. Labor Market During the Economic Recovery Following the COVID-19 Outbreak" was effective starting April 23, 2020. The guidance regarding this P.P. is at 20 STATE 41350.

As noted in paragraph 10 of this ALDAC, if an immigrant visa applicant does not qualify for an exception under this P.P., post should refuse the case pursuant to INA 212(f) under the new refusal code ███████ The ███████ refusal code is now available in CLASS.

If post is unsure whether an exception applies, or is seeking necessary approvals or determinations for certain exceptions (i.e., the national interest exception, law enforcement exception, or essential work exception), post should refuse the case using the refusal code ███████ while the case undergoes consideration for an exception.

Posts with any questions regarding this guidance should contact their post liaison officer in VO/F.

Thank you,

The Visa Office

# News article – Travel. State.Gov

National Interest Exceptions to Presidential Proclamations (10014 & 10052) Suspending the Entry of Immigrants and Nonimmigrants Presenting a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak

URL: https://travel.state.gov/content/travel/en/News/visas-news/exceptions-to-p-p-10014-10052-suspending-entry-of-immigrants-non-immigrants-presenting-risk-to-us-labor-market-during-economic-recovery.html

## July 17th, 2020

## Exceptions to Presidential Proclamations (10014 & 10052) Suspending the Entry of Immigrants and Nonimmigrants Presenting a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak

Last Updated: July 17, 2020

On June 22, the President signed Presidential Proclamation (P.P.) 10052, which extends P.P. 10014 through December 31, 2020, and suspends the entry to the United States of certain additional foreign nationals who present a risk to the U.S. labor market during the economic recovery following the 2019 novel coronavirus outbreak. The Department of State is committed to implementing this Proclamation in an orderly fashion in conjunction with the Department of Homeland Security and interagency partners and in accordance with all applicable laws and regulations.

**Exceptions under P.P. 10052 and 10014 for certain travel in the national interest by nonimmigrants**

- Applicants who are subject to aging out of their current immigrant visa classification before the relevant P.P.s expire or within two weeks thereafter

- For H-1Bs, exceptions are available in these situations:

  - For travel as a public health or healthcare professional, or researcher to alleviate the effects of the COVID-19 pandemic, or to conduct ongoing medical research in an area with a substantial public health benefit (e.g. cancer or communicable disease research). This includes those traveling to alleviate effects of the COVID-19 pandemic that may be a secondary effect of the pandemic (e.g., travel by a

public health or healthcare professional, or researcher in an area of public health or healthcare that is not directly related to COVID-19, but which has been adversely impacted by the COVID-19 pandemic).

- Travel supported by a request from a U.S. government agency or entity to meet critical U.S. foreign policy objectives or to satisfy treaty or contractual obligations. This would include individuals, identified by the Department of Defense or another U.S. government agency, performing research, providing IT support/services, or engaging other similar projects essential to a U.S. government agency.

- For H-2Bs, exceptions are available in this situation:

  - Travel based on a request from a U.S. government agency or entity to meet critical foreign policy objectives or to satisfy treaty or contractual obligations. An example of this would be supporting U.S. military base construction (e.g. associated with the National Defense Authorization Act) or IT infrastructure.

- For J-1 visas, exceptions are available in these situations:

  - Travel to provide care for a minor U.S. citizen, LPR, or nonimmigrant in lawful status by an au pair possessing special skills required for a child with particular needs (e.g., medical, special education, or sign language). Childcare services provided for a child with medical issues diagnosed by a qualified medical professional by an individual who possesses skills to care for such child will be considered to be in the national interest.

  - Travel by an au pair that prevents a U.S. citizen, lawful permanent resident, or other nonimmigrant in lawful status from becoming a public health charge or ward of the state of a medical or other public funded institution.

  - Childcare services provided for a child whose parents are involved with the provision of medical care to individuals who have contracted COVID-19 or medical research at United States facilities to help the United States combat COVID-19.

  - An exchange program conducted pursuant to an MOU, Statement of Intent, or other valid agreement or arrangement between a foreign government and any federal, state, or local government entity in the United States that is designed to promote U.S. national interests if the agreement or arrangement with the foreign government was in effect prior to the effective date of the Presidential Proclamation.

  - Interns and Trainees on U.S. government agency-sponsored programs (those with a program number beginning with "G-3" on Form DS-2019): An exchange visitor

participating in an exchange visitor program in which he or she will be hosted by a U.S. government agency and the program supports the immediate and continued economic recovery of the United States.

- Specialized Teachers in Accredited Educational Institutions with a program number beginning with "G-5" on Form DS-2019: An exchange visitor participating in an exchange program in which he or she will teach full-time, including a substantial portion that is in person, in a publicly or privately operated primary or secondary accredited educational institution where the applicant demonstrates ability to make a specialized contribution to the education of students in the United States. A "specialized teacher" applicant must demonstrate native or near-native foreign language proficiency and the ability to teach his/her assigned subject(s) in that language.

- Critical foreign policy objectives:  This only includes programs where an exchange visitor participating in an exchange program that fulfills critical and time sensitive foreign policy objectives.

- For L-1 visas, exceptions are available in this situation:

  - Travel as a public health or healthcare professional, or researcher to alleviate the effects of the COVID-19 pandemic, or to conduct ongoing medical research in an area with a substantial public health benefit. This includes those traveling to alleviate effects of the COVID-19 pandemic that may be a secondary effect of the pandemic.

- H-4, L-2, and J-2 visas exceptions:

  - National interest exceptions are available for those who will accompany or follow to join a principal applicant who is a spouse or parent and who is not subject to P.P. 10052 (including those that have been granted a national interest exception). This exception can be extended to derivative applicants when the principal is currently in the United States or has a valid visa.

Travelers who believe their travel falls into one of these categories or is otherwise in the national interest may request a visa appointment at the closest Embassy or Consulate and a decision will be made at the time of interview. Travelers are encouraged to refer to the Embassy/Consulate website for detailed instructions on what services are currently available and how to request an appointment.

The Department of State will continue to issue H-4, L-2, and J-2  visas to otherwise qualified derivative applicants who qualify for an national interest exception, such as those seeking to join a principal applicant currently in the United States.

Applicants for immigrant visas covered by Presidential Proclamations 10014 and 10052, including Diversity Visa 2020 (DV-2020) applicants, who have not been issued an immigrant visa as of April 23 are subject to the proclamation's restrictions unless eligible for an exception. No valid visas will be revoked under this proclamation.

# July 22, 2020

## National Interest Exceptions to Presidential Proclamations (10014 & 10052) Suspending the Entry of Immigrants and Nonimmigrants Presenting a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak

Last Updated: July 22, 2020

On June 22, the President signed Presidential Proclamation (P.P.) 10052, which extends P.P. 10014, which suspends the entry to the United States of certain immigrant visa applicants, through December 31, 2020. P.P. 10052 also suspends the entry to the United States of certain additional foreign nationals who present a risk to the U.S. labor market during the economic recovery following the 2019 novel coronavirus outbreak. Specifically, the suspension applies to applicants for H-1B, H-2B, L-1, J-1 applicants participating in the intern, trainee, teacher, camp counselor, au pair, or summer work travel programs, and any spouses or children of covered applicants applying for H-4, L-2, or J-2 visas. The Department of State is committed to implementing this Proclamation in an orderly fashion in conjunction with the Department of Homeland Security and interagency partners and in accordance with all applicable laws and regulations.

Both P.P. 10014 and 10052 include exceptions, including an exception for individuals whose travel would be in the national interest. The list below is non-exclusive list of the types of travel that may be considered to be in the national interest.

**Exceptions under P.P. 10052 for certain travel in the national interest by nonimmigrants may include the following**

- For H-1Bs, exceptions are available in these situations:

  - For travel as a public health or healthcare professional, or researcher to alleviate the effects of the COVID-19 pandemic, or to conduct ongoing medical research in an area with a substantial public health benefit (e.g. cancer or communicable disease research). This includes those traveling to alleviate effects of the COVID-

19 pandemic that may be a secondary effect of the pandemic (e.g., travel by a public health or healthcare professional, or researcher in an area of public health or healthcare that is not directly related to COVID-19, but which has been adversely impacted by the COVID-19 pandemic).

- Travel supported by a request from a U.S. government agency or entity to meet critical U.S. foreign policy objectives or to satisfy treaty or contractual obligations. This would include individuals, identified by the Department of Defense or another U.S. government agency, performing research, providing IT support/services, or engaging other similar projects essential to a U.S. government agency.

- For H-2Bs, exceptions are available in this situation:

  - Travel based on a request from a U.S. government agency or entity to meet critical foreign policy objectives or to satisfy treaty or contractual obligations. An example of this would be supporting U.S. military base construction (e.g. associated with the National Defense Authorization Act) or IT infrastructure.

- For J-1 visas, exceptions are available in these situations:

  - Travel to provide care for a minor U.S. citizen, LPR, or nonimmigrant in lawful status by an au pair possessing special skills required for a child with particular needs (e.g., medical, special education, or sign language). Childcare services provided for a child with medical issues diagnosed by a qualified medical professional by an individual who possesses skills to care for such child will be considered to be in the national interest.

  - Travel by an au pair that prevents a U.S. citizen, lawful permanent resident, or other nonimmigrant in lawful status from becoming a public health charge or ward of the state of a medical or other public funded institution.

  - Childcare services provided for a child whose parents are involved with the provision of medical care to individuals who have contracted COVID-19 or medical research at United States facilities to help the United States combat COVID-19.

  - An exchange program conducted pursuant to an MOU, Statement of Intent, or other valid agreement or arrangement between a foreign government and any federal, state, or local government entity in the United States that is designed to promote U.S. national interests if the agreement or arrangement with the foreign government was in effect prior to the effective date of the Presidential Proclamation.

- Interns and Trainees on U.S. government agency-sponsored programs (those with a program number beginning with "G-3" on Form DS-2019): An exchange visitor participating in an exchange visitor program in which he or she will be hosted by a U.S. government agency and the program supports the immediate and continued economic recovery of the United States.

- Specialized Teachers in Accredited Educational Institutions with a program number beginning with "G-5" on Form DS-2019: An exchange visitor participating in an exchange program in which he or she will teach full-time, including a substantial portion that is in person, in a publicly or privately operated primary or secondary accredited educational institution where the applicant demonstrates ability to make a specialized contribution to the education of students in the United States. A "specialized teacher" applicant must demonstrate native or near-native foreign language proficiency and the ability to teach his/her assigned subject(s) in that language.

- Critical foreign policy objectives: This only includes programs where an exchange visitor participating in an exchange program that fulfills critical and time sensitive foreign policy objectives.

- For L-1 visas, exceptions are available in this situation:

  - Travel as a public health or healthcare professional, or researcher to alleviate the effects of the COVID-19 pandemic, or to conduct ongoing medical research in an area with a substantial public health benefit. This includes those traveling to alleviate effects of the COVID-19 pandemic that may be a secondary effect of the pandemic.

- H-4, L-2, and J-2 visas exceptions:

  - National interest exceptions are available for those who will accompany or follow to join a principal applicant who is a spouse or parent and who is not subject to P.P. 10052 (including those that have been granted a national interest exception). This exception can be extended to derivative applicants when the principal is currently in the United States or has a valid visa.

**Exceptions under P.P. 10014 for certain travel in the national interest by immigrants may include the following**

- Applicants who are subject to aging out of their current immigrant visa classification before P.P. 10014 expires or within two weeks thereafter.

Travelers who believe their travel falls into one of these categories or is otherwise in the national interest may request a visa application appointment at the closest Embassy or Consulate and a decision will be made at the time of interview as to whether the traveler has established that they are eligible for a visa pursuant to an exception. Travelers are encouraged to refer to the Embassy/Consulate website for detailed instructions on what services are currently available and how to request an appointment.

The Department of State will continue to issue H-4, L-2, and J-2 visas to otherwise qualified derivative applicants who qualify for a national interest exception, such as those seeking to join a principal applicant currently in the United States.

Applicants for immigrant visas covered by Presidential Proclamation 10014, as extended by P.P. 10052, including Diversity Visa 2020 (DV-2020) applicants, who have not been issued an immigrant visa as of April 23 are subject to the proclamation's restrictions unless they can establish that they are eligible for an exception. No valid visas will be revoked under this proclamation.

# July 30th, 2020

## National Interest Exceptions to Presidential Proclamations (10014 & 10052) Suspending the Entry of Immigrants and Nonimmigrants Presenting a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak

Last Updated: July 30, 2020

On June 22, the President signed Presidential Proclamation (P.P.) 10052, which extends P.P. 10014, which suspends the entry to the United States of certain immigrant visa applicants, through December 31, 2020. P.P. 10052 also suspends the entry to the United States of certain additional foreign nationals who present a risk to the U.S. labor market during the economic recovery following the 2019 novel coronavirus outbreak. Specifically, the suspension applies to applicants for H-1B, H-2B, L-1 visas and J-1 applicants participating in the intern, trainee, teacher, camp counselor, au pair, or summer work travel programs, and any spouses or children of covered applicants applying for H-4, L-2, or J-2 visas.  The Proclamation does not apply to those who were in the United States on the effective date of the Proclamation (June 24),  and who had a valid visa in the classifications mentioned above (and plans to enter the United States on that visa) or who had another official travel document valid on the effective date of the Proclamation. If an individual is not subject to the Proclamation, then neither the individual nor the individuals spouse or children will be prevented from obtaining a visa due to the Proclamation. The Department of State is committed to implementing this Proclamation in an

orderly fashion in conjunction with the Department of Homeland Security and interagency partners and in accordance with all applicable laws and regulations.

Both P.P. 10014 and 10052 include exceptions, including an exception for individuals whose travel would be in the national interest. The list below is non-exclusive list of the types of travel that may be considered to be in the national interest.

**Exceptions under P.P. 10052 for certain travel in the national interest by nonimmigrants may include the following**

- For H-1Bs, exceptions are available in these situations:

  - For travel as a public health or healthcare professional, or researcher to alleviate the effects of the COVID-19 pandemic, or to conduct ongoing medical research in an area with a substantial public health benefit (e.g. cancer or communicable disease research). This includes those traveling to alleviate effects of the COVID-19 pandemic that may be a secondary effect of the pandemic (e.g., travel by a public health or healthcare professional, or researcher in an area of public health or healthcare that is not directly related to COVID-19, but which has been adversely impacted by the COVID-19 pandemic).

  - Travel supported by a request from a U.S. government agency or entity to meet critical U.S. foreign policy objectives or to satisfy treaty or contractual obligations. This would include individuals, identified by the Department of Defense or another U.S. government agency, performing research, providing IT support/services, or engaging other similar projects essential to a U.S. government agency.

- For H-2Bs, exceptions are available in this situation:

  - Travel based on a request from a U.S. government agency or entity to meet critical foreign policy objectives or to satisfy treaty or contractual obligations. An example of this would be supporting U.S. military base construction (e.g. associated with the National Defense Authorization Act) or IT infrastructure.

- For J-1 visas, exceptions are available in these situations:

  - Travel to provide care for a minor U.S. citizen, LPR, or nonimmigrant in lawful status by an au pair possessing special skills required for a child with particular needs (e.g., medical, special education, or sign language). Childcare services provided for a child with medical issues diagnosed by a qualified medical professional by an individual who possesses skills to care for such child will be

considered to be in the national interest.

- Travel by an au pair that prevents a U.S. citizen, lawful permanent resident, or other nonimmigrant in lawful status from becoming a public health charge or ward of the state of a medical or other public funded institution.

- Childcare services provided for a child whose parents are involved with the provision of medical care to individuals who have contracted COVID-19 or medical research at United States facilities to help the United States combat COVID-19.

- An exchange program conducted pursuant to an MOU, Statement of Intent, or other valid agreement or arrangement between a foreign government and any federal, state, or local government entity in the United States that is designed to promote U.S. national interests if the agreement or arrangement with the foreign government was in effect prior to the effective date of the Presidential Proclamation.

- Interns and Trainees on U.S. government agency-sponsored programs (those with a program number beginning with "G-3" on Form DS-2019): An exchange visitor participating in an exchange visitor program in which he or she will be hosted by a U.S. government agency and the program supports the immediate and continued economic recovery of the United States.

- Specialized Teachers in Accredited Educational Institutions with a program number beginning with "G-5" on Form DS-2019: An exchange visitor participating in an exchange program in which he or she will teach full-time, including a substantial portion that is in person, in a publicly or privately operated primary or secondary accredited educational institution where the applicant demonstrates ability to make a specialized contribution to the education of students in the United States. A "specialized teacher" applicant must demonstrate native or near-native foreign language proficiency and the ability to teach his/her assigned subject(s) in that language.

- Critical foreign policy objectives: This only includes programs where an exchange visitor participating in an exchange program that fulfills critical and time sensitive foreign policy objectives.

- For L-1 visas, exceptions are available in this situation:

  - Travel as a public health or healthcare professional, or researcher to alleviate the effects of the COVID-19 pandemic, or to conduct ongoing medical research in an area with a substantial public health benefit. This includes those traveling to alleviate effects of the COVID-19 pandemic that may be a secondary effect of the

000167

pandemic.

- H-4, L-2, and J-2 visas exceptions:

  - National interest exceptions are available for those who will accompany or follow to join a principal applicant who is a spouse or parent and who has been granted a national interest exception to P.P. 10052. Note, a national interest exception is not required if the principal applicant is not subject to P.P. 10052 (e.g. if the principal was in the United States on the effective date, June 24, or has a valid visa that the principal will use to seek entry to the United States).  In the case of a principal visa applicant who is not subject to P.P. 10052, the derivative will not be subject to the proclamation either.

**Exceptions under P.P. 10014 for certain travel in the national interest by immigrants may include the following:**

- Applicants who are subject to aging out of their current immigrant visa classification before P.P. 10014 expires or within two weeks thereafter.

Travelers who believe their travel falls into one of these categories or is otherwise in the national interest may request a visa application appointment at the closest Embassy or Consulate and a decision will be made at the time of interview as to whether the traveler has established that they are eligible for a visa pursuant to an exception. Travelers are encouraged to refer to the Embassy/Consulate website for detailed instructions on what services are currently available and how to request an appointment.

Applicants for immigrant visas covered by Presidential Proclamation 10014, as extended by P.P. 10052, including Diversity Visa 2020 (DV-2020) applicants, who have not been issued an immigrant visa as of April 23 are subject to the proclamation's restrictions unless they can establish that they are eligible for an exception. No valid visas will be revoked under this proclamation.

# August 12th, 2020 – Latest version.

National Interest Exceptions to Presidential Proclamations (10014 & 10052) Suspending the Entry of Immigrants and Nonimmigrants Presenting a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak

Last Updated: August 12, 2020

On June 22, the President signed Presidential Proclamation (P.P.) 10052, which extends P.P. 10014, which suspended the entry to the United States of certain immigrant visa applicants, through December 31, 2020. P.P. 10052 also suspends the entry to the United States of certain additional foreign nationals who present a risk to the U.S. labor market during the economic recovery following the 2019 novel coronavirus outbreak.  Specifically, the suspension applies to applicants for H-1B, H-2B, and L-1 visas; J-1 visa applicants participating in the intern, trainee, teacher, camp counselor, au pair, or summer work travel programs; and any spouses or children of covered applicants applying for H-4, L-2, or J-2 visas.

The Proclamation does not apply to applicants who were in the United States on the effective date of the Proclamation (June 24), or who had a valid visa in the classifications mentioned above (and plans to enter the United States on that visa), or who had another official travel document valid on the effective date of the Proclamation. If an H-1B, H-2B, L-1, or J-1 non-immigrant is not subject to the Proclamation, then neither that individual nor the individual's spouse or children will be prevented from obtaining a visa due to the Proclamation.  The Department of State is committed to implementing this Proclamation in an orderly fashion in conjunction with the Department of Homeland Security and interagency partners and in accordance with all applicable laws and regulations.

Both P.P. 10014 and 10052 include exceptions, including an exception for individuals whose travel would be in the national interest, as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees.  The list below is a non-exclusive list of the types of travel that may be considered to be in the national interest, based on determinations made by the Assistant Secretary of State for Consular Affairs, exercising the authority delegated to him by the Secretary of State under Section 2(b)(iv) of P.P. 10014 and 3(b)(iv) of P.P. 10052.

Until complete resumption of routine visa services, applicants who appear to be subject to entry restrictions under P.P. 10014, P.P. 10052, and/or regional-focused Presidential Proclamations related to COVID-19 (P.P. 9984, 9992, 9993, 9996, and/ or 10041) might not be processed for a visa interview appointment unless the applicant also appears to be eligible for an exception under the applicable Proclamation(s).  Applicants who are subject to any of these Proclamations, but who believe they may qualify for a national interest exception or other exception, should follow the instructions on the nearest U.S. Embassy or Consulate's website regarding procedures necessary to request an emergency appointment and should provide specific details as to why they believe they may qualify for an exception.  While a visa applicant subject to one or more Proclamations might meet an exception, the applicant must first be approved for an emergency appointment request and a final determination regarding visa eligibility will be made at the time of visa interview.  Please note that U.S. Embassies and Consulates may only be able to offer limited visa services due to the COVID-19 pandemic, in which case they may not be able to accommodate your request unless the proposed travel is deemed emergency or mission critical.  Prospective visa applicants should visit the website for Embassy or Consulate where they intend to apply for a visa to get updates on current operating status.  Travelers who are subject to a regional COVID-19 Proclamation but who do not require a visa, such as ESTA travelers (i.e., those traveling on the Visa Waiver Program), should also follow the guidance on

000169

the nearest Embassy or Consulate's website for how to request consideration for a national interest exception.

**Exceptions under P.P. 10052 for certain travel in the national interest by nonimmigrants may include the following:**

**H-1B applicants:**

- For travel as a public health or healthcare professional, or researcher to alleviate the effects of the COVID-19 pandemic, or to conduct ongoing medical research in an area with a substantial public health benefit (e.g. cancer or communicable disease research). This includes those traveling to alleviate effects of the COVID-19 pandemic that may be a secondary effect of the pandemic (e.g., travel by a public health or healthcare professional, or researcher in an area of public health or healthcare that is not directly related to COVID-19, but which has been adversely impacted by the COVID-19 pandemic).

- Travel supported by a request from a U.S. government agency or entity to meet critical U.S. foreign policy objectives or to satisfy treaty or contractual obligations. This would include individuals, identified by the Department of Defense or another U.S. government agency, performing research, providing IT support/services, or engaging other similar projects essential to a U.S. government agency.

- Travel by applicants seeking to resume ongoing employment in the United States in the same position with the same employer and visa classification. Forcing employers to replace employees in this situation may cause financial hardship. Consular officers can refer to Part II, Question 2 of the approved Form I-129 to determine if the applicant is continuing in "previously approved employment without change with the same employer."

- Travel by technical specialists, senior level managers, and other workers whose travel is necessary to facilitate the immediate and continued economic recovery of the United States. Consular officers may determine that an H-1B applicant falls into this category when at least two of the following five indicators are present:

1. The petitioning employer has a continued need for the services or labor to be performed by the H-1B nonimmigrant in the United States. Labor Condition Applications (LCAs) approved by DOL during or after July 2020 are more likely to account for the effects of the COVID-19 pandemic on the U.S. labor market and the petitioner's business; therefore, this indicator is only present for cases with an LCA approved during or after July 2020 as there is an indication that the petitioner still has a need for the H-1B worker. For LCAs approved by DOL before July 2020, this indicator is only met if the consular officer is able to determine from the visa application the continuing need of petitioned workers with the U.S. employer. Regardless of when the LCA was approved, if an applicant is currently performing or is able to perform the essential functions of the position for the prospective employer remotely from outside the United States, then this indicator is not present.

2. The applicant's proposed job duties or position within the petitioning company indicate the individual will provide significant and unique contributions to an employer meeting a critical infrastructure need.  Critical infrastructure sectors are chemical, communications, dams, defense industrial base, emergency services, energy, financial services, food and agriculture, government facilities, healthcare and public health, information technology, nuclear reactors, transportation, and water systems.  Employment in a critical infrastructure sector alone is not sufficient; the consular officers must establish that the applicant holds one of the two types of positions noted below:

   a.)   Senior level placement within the petitioning organization or job duties reflecting performance of functions that are both unique and vital to the management and success of the overall business enterprise; OR

   b.)   The applicant's proposed job duties and specialized qualifications indicate the individual will provide significant and unique contributions to the petitioning company.

3. The wage rate paid to the H-1B applicant meaningfully exceeds the prevailing wage rate by at least 15 percent (see Part F, Questions 10 and 11 of the LCA) by at least 15 percent.  When an H-1B applicant will receive a wage that meaningfully exceeds the prevailing wage, it suggests that the employee fills an important business need where an American worker is not available.

4. The H-1B applicant's education, training and/or experience demonstrate unusual expertise in the specialty occupation in which the applicant will be employed.  For example, an H-1B applicant with a doctorate or professional degree, or many years of relevant work experience, may have such advanced expertise in the relevant occupation as to make it more likely that he or she will perform critically important work for the petitioning employer.

5. Denial of the visa pursuant to P.P. 10052 will cause financial hardship to the U.S. employer.  The following examples, to be assessed based on information from the visa application, are illustrative of what may constitute a financial hardship for an employer if a visa is denied: the employer's inability to meet financial or contractual obligations; the employer's inability to continue its business; or a delay or other impediment to the employer's ability to return to its pre-COVID-19 level of operations.

**H-2B applicants**

- Travel based on a request from a U.S. government agency or entity to meet critical foreign policy objectives or to satisfy treaty or contractual obligations. An example of this would be supporting U.S. military base construction (e.g. associated with the National Defense Authorization Act) or IT infrastructure.

- Travel necessary to facilitate the immediate and continued economic recovery of the United States (e.g. those working in forestry and conservation, nonfarm animal caretakers, etc).  Consular officers may determine that an H-2B applicant falls into this category when at least two of the following three indicators are present:

1. The applicant was previously employed and trained by the petitioning U.S. employer.  The applicant must have previously worked for the petitioning U.S. employer under two or more H-2B (named or unnamed) petitions.  U.S. employers dedicate substantial time and resources to training seasonal/temporary staff, and denying visas to the most experienced returning workers may cause financial hardship to the U.S. business.

2. The applicant is traveling based on a temporary labor certification (TLC) that reflects continued need for the worker.  TLCs approved by DOL during or after July 2020 are more likely to account for the effects of the COVID-19 pandemic on the U.S. labor market and the petitioner's business, and therefore this indicator is only present for cases with a TLC approved during or after July 2020 as there is an indication that the petitioner still has a need for the H-2B worker.  For TLCs approved by DOL before July 2020, this indicator is only met if the consular officer is able to determine from the visa application the continuing need of petitioned workers with the U.S. employer.

3. Denial of the visa pursuant to P.P. 10052 will cause financial hardship to the U.S. employer.  The following examples, to be assessed based on information from the visa application, are illustrative of what may constitute a financial hardship for an employer if a visa is denied: the employer's inability to meet financial or contractual obligations; the employer's inability to continue its business; or a delay or other impediment to the employer's ability to return to its pre-COVID-19 level of operations.

**J-1 applicants**

- Travel to provide care for a minor U.S. citizen, LPR, or nonimmigrant in lawful status by an au pair possessing special skills required for a child with particular needs (e.g., medical, special education, or sign language).  Childcare services provided for a child with medical issues diagnosed by a qualified medical professional by an individual who possesses skills to care for such child will be considered to be in the national interest.

- Travel by an au pair that prevents a U.S. citizen, lawful permanent resident, or other nonimmigrant in lawful status from becoming a public health charge or ward of the state of a medical or other public funded institution.

- Childcare services provided for a child whose parents are involved with the provision of medical care to individuals who have contracted COVID-19 or medical research at United States facilities to help the United States combat COVID-19.

- An exchange program conducted pursuant to an MOU, Statement of Intent, or other valid agreement or arrangement between a foreign government and any federal, state, or local government entity in the United States that is designed to promote U.S. national interests if the agreement or arrangement with the foreign government was in effect prior to the effective date of the Presidential Proclamation.

- Interns and Trainees on U.S. government agency-sponsored programs (those with a program number beginning with "G-3" on Form DS-2019): An exchange visitor participating in an exchange visitor program in which he or she will be hosted by a U.S. government agency and the program supports the immediate and continued economic recovery of the United States.

- Specialized Teachers in Accredited Educational Institutions with a program number beginning with "G-5" on Form DS-2019: An exchange visitor participating in an exchange program in which he or she will teach full-time, including a substantial portion that is in person, in a publicly or privately operated primary or secondary accredited educational institution where the applicant demonstrates ability to make a specialized contribution to the education of students in the United States. A "specialized teacher" applicant must demonstrate native or near-native foreign language proficiency and the ability to teach his/her assigned subject(s) in that language.

- Critical foreign policy objectives: This only includes programs where an exchange visitor participating in an exchange program that fulfills critical and time sensitive foreign policy objectives.

## L-1A applicants

- Travel as a public health or healthcare professional, or researcher to alleviate the effects of the COVID-19 pandemic, or to conduct ongoing medical research in an area with a substantial public health benefit. This includes those traveling to alleviate effects of the COVID-19 pandemic that may be a secondary effect of the pandemic.

- Travel based on a request from a U.S. government agency or entity to meet critical foreign policy objectives or satisfy treaty or contractual obligations. An example of this would be supporting U.S. military base construction or IT infrastructure.

- Travel by applicants seeking to resume ongoing employment in the United States in the same position with the same employer and visa classification. Forcing employers to replace employees in this situation may cause undue financial hardship.

- Travel by a senior level executive or manager filling a critical business need of an employer meeting a critical infrastructure need. Critical infrastructure sectors include chemical, communications, dams, defense industrial base, emergency services, energy, financial services, food and agriculture, government facilities, healthcare and public health, information technology, nuclear reactors, transportation, and water systems. An L-1A applicant falls into this category when at least two of the following three indicators are present AND the L-1A applicant is not seeking to establish a new office in the United States:

1. Will be a senior-level executive or manager;

2. Has spent multiple years with the company overseas, indicating a substantial knowledge and expertise within the organization that can only be replicated by a new employee within the company following extensive training that would cause the employer financial hardship; or

3. Will fill a critical business need for a company meeting a critical infrastructure need.

L-1A applicants seeking to establish a new office in the United States likely do NOT fall into this category, unless two of the three criteria are met AND the new office will employ, directly or indirectly, five or more U.S. workers.

## L-1B applicants

- Travel as a public health or healthcare professional, or researcher to alleviate the effects of the COVID-19 pandemic, or to conduct ongoing medical research in an area with a substantial public health benefit. This includes those traveling to alleviate effects of the COVID-19 pandemic that may be a secondary effect of the pandemic.

- Travel based on a request from a U.S. government agency or entity to meet critical foreign policy objectives or satisfy treaty or contractual obligations. An example of this would be supporting U.S. military base construction or IT infrastructure.

- Travel by applicants seeking to resume ongoing employment in the United States in the same position with the same employer and visa classification.  Forcing employers to replace employees in this situation may cause undue financial hardship.

- Travel as a technical expert or specialist meeting a critical infrastructure need.  The consular officer may determine that an L-1B applicant falls into this category if all three of the following indicators are present:

1. The applicant's proposed job duties and specialized knowledge indicate the individual will provide significant and unique contributions to the petitioning company;

2. The applicant's specialized knowledge is specifically related to a critical infrastructure need; AND

3. The applicant has spent multiple years with the company overseas, indicating a substantial knowledge and expertise within the organization that can only be replicated by a new employee within the company following extensive training that would cause the employer financial hardship.

## H-4, L-2, and J-2 applicants

- National interest exceptions are available for those who will accompany or follow to join a principal applicant who is a spouse or parent and who has been granted a national

interest exception to P.P. 10052. Note, a national interest exception is not required if the principal applicant is not subject to P.P. 10052 (e.g. if the principal was in the United States on the effective date, June 24, or has a valid visa that the principal will use to seek entry to the United States).  In the case of a principal visa applicant who is not subject to P.P. 10052, the derivative will not be subject to the proclamation either.

**Exceptions under P.P. 10014 for certain travel in the national interest by immigrants may include the following:**

- Applicants who are subject to aging out of their current immigrant visa classification before P.P. 10014 expires or within two weeks thereafter.

Travelers who believe their travel falls into one of these categories or is otherwise in the national interest may request a visa application appointment at the closest Embassy or Consulate and a decision will be made at the time of interview as to whether the traveler has established that they are eligible for a visa pursuant to an exception. Travelers are encouraged to refer to the Embassy/Consulate website for detailed instructions on what services are currently available and how to request an appointment.

Applicants for immigrant visas covered by Presidential Proclamation 10014, as extended by P.P. 10052, including Diversity Visa 2020 (DV-2020) applicants, who have not been issued an immigrant visa as of April 23, are subject to the proclamation's restrictions unless they can establish that they are eligible for an exception.  No valid visas will be revoked under this proclamation.

8/14/2020 National Interest Exceptions to Presidential Proclamations (10014 & 10052) Suspending the Entry of Immigrants and Nonimmigrants Pre...

Case 1:20-cv-01419-APM Document 96-1 Filed 08/19/20 Page 178 of 278

000175

# National Interest Exceptions to Presidential Proclamations (10014 & 10052) Suspending the Entry of Immigrants and Nonimmigrants Presenting a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak

*Last Updated: August 12, 2020*

On June 22, the President signed Presidential Proclamation (P.P.) 10052, which extends P.P. 10014, which suspended the entry to the United States of certain immigrant visa applicants, through December 31, 2020. P.P. 10052 also suspends the entry to the United States of certain additional foreign nationals who present a risk to the U.S. labor market during the economic recovery following the 2019 novel coronavirus outbreak.  Specifically, the suspension applies to applicants for H-1B, H-2B, and L-1 visas; J-1 visa applicants participating in the intern, trainee, teacher, camp counselor, au pair, or summer work travel programs; and any spouses or children of covered applicants applying for H-4, L-2, or J-2 visas.

The Proclamation does not apply to applicants who were in the United States on the effective date of the Proclamation (June 24), or who had a valid visa in the classifications mentioned above (and plans to enter the United States on that visa), or who had another official travel document valid on the effective date of the Proclamation. If an H-1B, H-2B, L-1, or J-1 non-immigrant is not subject to the Proclamation, then neither that individual nor the individual's spouse or children will be prevented from obtaining a visa due to the Proclamation.  The Department of State is committed to implementing this Proclamation in an orderly fashion in conjunction with the Department of Homeland Security and interagency partners and in accordance with all applicable laws and regulations.

Both P.P. 10014 and 10052 include exceptions, including an exception for individuals whose travel would be in the

National Interest Exceptions to Presidential Proclamations (10014 & 10052) Suspending the Entry of Immigrants and Nonimmigrants Pre…    000176

exception for individuals whose travel would be in the national interest, as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees.  The list below is a non-exclusive list of the types of travel that may be considered to be in the national interest, based on determinations made by the Assistant Secretary of State for Consular Affairs, exercising the authority delegated to him by the Secretary of State under Section 2(b)(iv) of P.P. 10014 and 3(b)(iv) of P.P. 10052.

Until complete resumption of routine visa services, applicants who appear to be subject to entry restrictions under P.P. 10014, P.P. 10052, and/or regional-focused Presidential Proclamations related to COVID-19 (P.P. 9984, 9992, 9993, 9996, and/ or 10041) might not be processed for a visa interview appointment unless the applicant also appears to be eligible for an exception under the applicable Proclamation(s).  Applicants who are subject to any of these Proclamations, but who believe they may qualify for a national interest exception or other exception, should follow the instructions on the nearest U.S. Embassy or Consulate's website regarding procedures necessary to request an emergency appointment and should provide specific details as to why they believe they may qualify for an exception. While a visa applicant subject to one or more Proclamations might meet an exception, the applicant must first be approved for an emergency appointment request and a final determination regarding visa eligibility will be made at the time of visa interview.  Please note that U.S. Embassies and Consulates may only be able to offer limited visa services due to the COVID-19 pandemic, in which case they may not be able to accommodate your request unless the proposed travel is deemed emergency or mission critical.  Prospective visa applicants should visit the website for Embassy or Consulate where they intend to apply for a visa to get updates on current operating status. Travelers who are subject to a regional COVID-19 Proclamation but who do not require a visa, such as ESTA travelers (i.e., those traveling on the Visa Waiver Program), should also follow the guidance on the nearest Embassy or Consulate's website for how to request consideration for a national interest exception.

**Exceptions under P.P. 10052 for certain travel in the national interest by nonimmigrants may include the following:**

000177

following:

## H-1B applicants:

- For travel as a public health or healthcare professional, or researcher to alleviate the effects of the COVID-19 pandemic, or to conduct ongoing medical research in an area with a substantial public health benefit (e.g. cancer or communicable disease research). This includes those traveling to alleviate effects of the COVID-19 pandemic that may be a secondary effect of the pandemic (e.g., travel by a public health or healthcare professional, or researcher in an area of public health or healthcare that is not directly related to COVID-19, but which has been adversely impacted by the COVID-19 pandemic).

- Travel supported by a request from a U.S. government agency or entity to meet critical U.S. foreign policy objectives or to satisfy treaty or contractual obligations. This would include individuals, identified by the Department of Defense or another U.S. government agency, performing research, providing IT support/services, or engaging other similar projects essential to a U.S. government agency.

- Travel by applicants seeking to resume ongoing employment in the United States in the same position with the same employer and visa classification. Forcing employers to replace employees in this situation may cause financial hardship.  Consular officers can refer to Part II, Question 2 of the approved Form I-129 to determine if the applicant is continuing in "previously approved employment without change with the same employer."

- Travel by technical specialists, senior level managers, and other workers whose travel is necessary to facilitate the immediate and continued economic recovery of the United States.  Consular officers may determine that an H-1B applicant falls into this category when at least two of the following five indicators are present:

  1. The petitioning employer has a continued need for

8/14/2020    Case 1:20-cv-01419-APM Document 96-1 Filed 08/19/20 Page 181 of 278    National Interest Exemptions from Presidential Proclamations (9984 & 10052) Suspending the Entry of Immigrants and Nonimmigrants Pre…

000178

1. The petitioning employer has a continued need for the services or labor to be performed by the H-1B nonimmigrant in the United States.  Labor Condition Applications (LCAs) approved by DOL during or after July 2020 are more likely to account for the effects of the COVID-19 pandemic on the U.S. labor market and the petitioner's business; therefore, this indicator is only present for cases with an LCA approved during or after July 2020 as there is an indication that the petitioner still has a need for the H-1B worker.  For LCAs approved by DOL before July 2020, this indicator is only met if the consular officer is able to determine from the visa application the continuing need of petitioned workers with the U.S. employer.  Regardless of when the LCA was approved, if an applicant is currently performing or is able to perform the essential functions of the position for the prospective employer remotely from outside the United States, then this indicator is not present.

2. The applicant's proposed job duties or position within the petitioning company indicate the individual will provide significant and unique contributions to an employer meeting a critical infrastructure need.  Critical infrastructure sectors are chemical, communications, dams, defense industrial base, emergency services, energy, financial services, food and agriculture, government facilities, healthcare and public health, information technology, nuclear reactors, transportation, and water systems.  Employment in a critical infrastructure sector alone is not sufficient; the consular officers must establish that the applicant holds one of the two types of positions noted below:

   a.)   Senior level placement within the petitioning organization or job duties reflecting performance of functions that are both unique and vital to the management and success of the overall business enterprise; OR

   b.)   The applicant's proposed job duties and specialized qualifications indicate the individual will provide significant and unique contributions to the petitioning company.

8/14/2020    National Interest Exceptions for Presidential Proclamations (10014 & 10052) Suspending the Entry of Immigrants and Nonimmigrants Pre…

Case 1:20-cv-01419-APM Document 96-1 Filed 08/19/20 Page 182 of 278

000179

3. The wage rate paid to the H-1B applicant meaningfully exceeds the prevailing wage rate by at least 15 percent (see Part F, Questions 10 and 11 of the LCA) by at least 15 percent. When an H-1B applicant will receive a wage that meaningfully exceeds the prevailing wage, it suggests that the employee fills an important business need where an American worker is not available.

4. The H-1B applicant's education, training and/or experience demonstrate unusual expertise in the specialty occupation in which the applicant will be employed. For example, an H-1B applicant with a doctorate or professional degree, or many years of relevant work experience, may have such advanced expertise in the relevant occupation as to make it more likely that he or she will perform critically important work for the petitioning employer.

5. Denial of the visa pursuant to P.P. 10052 will cause financial hardship to the U.S. employer. The following examples, to be assessed based on information from the visa application, are illustrative of what may constitute a financial hardship for an employer if a visa is denied: the employer's inability to meet financial or contractual obligations; the employer's inability to continue its business; or a delay or other impediment to the employer's ability to return to its pre-COVID-19 level of operations.

### H-2B applicants

- Travel based on a request from a U.S. government agency or entity to meet critical foreign policy objectives or to satisfy treaty or contractual obligations. An example of this would be supporting U.S. military base construction (e.g. associated with the National Defense Authorization Act) or IT infrastructure.

- Travel necessary to facilitate the immediate and continued economic recovery of the United States (e.g. those working in forestry and conservation, nonfarm animal caretakers, etc) Consular officers

8/14/2020    Exceptions to P.P. 10014 & 10052, Suspending the Entry of Immigrants and Nonimmigrants Pre...

Case 1:20-cv-01419-APM Document 96-1 Filed 08/19/20 Page 183 of 278

000180

may determine that an H-2B applicant falls into this category when at least two of the following three indicators are present:

1. The applicant was previously employed and trained by the petitioning U.S. employer.  The applicant must have previously worked for the petitioning U.S. employer under two or more H-2B (named or unnamed) petitions.  U.S. employers dedicate substantial time and resources to training seasonal/temporary staff, and denying visas to the most experienced returning workers may cause financial hardship to the U.S. business.

2. The applicant is traveling based on a temporary labor certification (TLC) that reflects continued need for the worker.  TLCs approved by DOL during or after July 2020 are more likely to account for the effects of the COVID-19 pandemic on the U.S. labor market and the petitioner's business, and therefore this indicator is only present for cases with a TLC approved during or after July 2020 as there is an indication that the petitioner still has a need for the H-2B worker.  For TLCs approved by DOL before July 2020, this indicator is only met if the consular officer is able to determine from the visa application the continuing need of petitioned workers with the U.S. employer.

3. Denial of the visa pursuant to P.P. 10052 will cause financial hardship to the U.S. employer.  The following examples, to be assessed based on information from the visa application, are illustrative of what may constitute a financial hardship for an employer if a visa is denied: the employer's inability to meet financial or contractual obligations; the employer's inability to continue its business; or a delay or other impediment to the employer's ability to return to its pre-COVID-19 level of operations.

### J-1 applicants

- Travel to provide care for a minor U.S. citizen, LPR, or nonimmigrant in lawful status by an au pair possessing special skills required for a child with particular needs (e.g., medical, special education, or

000181

particular needs (e.g., medical, special education, or sign language). Childcare services provided for a child with medical issues diagnosed by a qualified medical professional by an individual who possesses skills to care for such child will be considered to be in the national interest.

- Travel by an au pair that prevents a U.S. citizen, lawful permanent resident, or other nonimmigrant in lawful status from becoming a public health charge or ward of the state of a medical or other public funded institution.

- Childcare services provided for a child whose parents are involved with the provision of medical care to individuals who have contracted COVID-19 or medical research at United States facilities to help the United States combat COVID-19.

- An exchange program conducted pursuant to an MOU, Statement of Intent, or other valid agreement or arrangement between a foreign government and any federal, state, or local government entity in the United States that is designed to promote U.S. national interests if the agreement or arrangement with the foreign government was in effect prior to the effective date of the Presidential Proclamation.

- Interns and Trainees on U.S. government agency-sponsored programs (those with a program number beginning with "G-3" on Form DS-2019): An exchange visitor participating in an exchange visitor program in which he or she will be hosted by a U.S. government agency and the program supports the immediate and continued economic recovery of the United States.

- Specialized Teachers in Accredited Educational Institutions with a program number beginning with "G-5" on Form DS-2019: An exchange visitor participating in an exchange program in which he or she will teach full-time, including a substantial portion that is in person, in a publicly or privately operated primary or secondary accredited educational institution where the applicant demonstrates ability to make a specialized

8/14/2020     Case 1:20-cv-01419-APM Document 96-1 Filed 08/19/20 Page 185 of 278     Exceptions to P.P. 10014 & 10052, Suspending Entry of Immigrants and Nonimmigrants Pre…

000182

contribution to the education of students in the United States. A "specialized teacher" applicant must demonstrate native or near-native foreign language proficiency and the ability to teach his/her assigned subject(s) in that language.

- Critical foreign policy objectives: This only includes programs where an exchange visitor participating in an exchange program that fulfills critical and time sensitive foreign policy objectives.

## L-1A applicants

- Travel as a public health or healthcare professional, or researcher to alleviate the effects of the COVID-19 pandemic, or to conduct ongoing medical research in an area with a substantial public health benefit. This includes those traveling to alleviate effects of the COVID-19 pandemic that may be a secondary effect of the pandemic.

- Travel based on a request from a U.S. government agency or entity to meet critical foreign policy objectives or satisfy treaty or contractual obligations. An example of this would be supporting U.S. military base construction or IT infrastructure.

- Travel by applicants seeking to resume ongoing employment in the United States in the same position with the same employer and visa classification. Forcing employers to replace employees in this situation may cause undue financial hardship.

- Travel by a senior level executive or manager filling a critical business need of an employer meeting a critical infrastructure need. Critical infrastructure sectors include chemical, communications, dams, defense industrial base, emergency services, energy, financial services, food and agriculture, government facilities, healthcare and public health, information technology, nuclear reactors, transportation, and water systems. An L-1A applicant falls into this category when at least two of the following three indicators are present AND the L-1A applicant is not seeking to establish a new office in the United States:

8/14/2020 Exceptions to Presidential Proclamations (10014 & 10052) Suspending the Entry of Immigrants and Nonimmigrants Pre…

Case 1:20-cv-01419-APM Document 96-1 Filed 08/19/20 Page 186 of 278

000183

1. Will be a senior-level executive or manager;

2. Has spent multiple years with the company overseas, indicating a substantial knowledge and expertise within the organization that can only be replicated by a new employee within the company following extensive training that would cause the employer financial hardship; or

3. Will fill a critical business need for a company meeting a critical infrastructure need.

L-1A applicants seeking to establish a new office in the United States likely do NOT fall into this category, unless two of the three criteria are met AND the new office will employ, directly or indirectly, five or more U.S. workers.

### L-1B applicants

- Travel as a public health or healthcare professional, or researcher to alleviate the effects of the COVID-19 pandemic, or to conduct ongoing medical research in an area with a substantial public health benefit. This includes those traveling to alleviate effects of the COVID-19 pandemic that may be a secondary effect of the pandemic.

- Travel based on a request from a U.S. government agency or entity to meet critical foreign policy objectives or satisfy treaty or contractual obligations. An example of this would be supporting U.S. military base construction or IT infrastructure.

- Travel by applicants seeking to resume ongoing employment in the United States in the same position with the same employer and visa classification. Forcing employers to replace employees in this situation may cause undue financial hardship.

- Travel as a technical expert or specialist meeting a critical infrastructure need.  The consular officer may determine that an L-1B applicant falls into this category if all three of the following indicators are present:

1. The applicant's proposed job duties and specialized

8/14/2020    Case 1:20-cv-01419-APM Document 96-1 Filed 03/19/20 Page 187 of 278    National Interest Exceptions to Presidential Proclamations (10014 & 10052) Suspending the Entry of Immigrants and Nonimmigrants Pre…

000184

1. The applicant's proposed job duties and specialized knowledge indicate the individual will provide significant and unique contributions to the petitioning company;

2. The applicant's specialized knowledge is specifically related to a critical infrastructure need; AND

3. The applicant has spent multiple years with the company overseas, indicating a substantial knowledge and expertise within the organization that can only be replicated by a new employee within the company following extensive training that would cause the employer financial hardship.

### H-4, L-2, and J-2 applicants

- National interest exceptions are available for those who will accompany or follow to join a principal applicant who is a spouse or parent and who has been granted a national interest exception to P.P. 10052. Note, a national interest exception is not required if the principal applicant is not subject to P.P. 10052 (e.g. if the principal was in the United States on the effective date, June 24, or has a valid visa that the principal will use to seek entry to the United States).  In the case of a principal visa applicant who is not subject to P.P. 10052, the derivative will not be subject to the proclamation either.

### Exceptions under P.P. 10014 for certain travel in the national interest by immigrants may include the following:

- Applicants who are subject to aging out of their current immigrant visa classification before P.P. 10014 expires or within two weeks thereafter.

Travelers who believe their travel falls into one of these categories or is otherwise in the national interest may request a visa application appointment at the closest Embassy or Consulate and a decision will be made at the time of interview as to whether the traveler has established that they are eligible for a visa pursuant to an exception.

Case 1:20-cv-01419-APM Document 96-1 Filed 08/19/20 Page 188 of 278
000185

Travelers are encouraged to refer to the Embassy/Consulate website for detailed instructions on what services are currently available and how to request an appointment.

Applicants for immigrant visas covered by Presidential Proclamation 10014, as extended by P.P. 10052, including Diversity Visa 2020 (DV-2020) applicants, who have not been issued an immigrant visa as of April 23, are subject to the proclamation's restrictions unless they can establish that they are eligible for an exception. No valid visas will be revoked under this proclamation.

Case 1:20-cv-01419-APM   Document 96-1   Filed 08/10/20   Page 189 of 278

000186

# Proclamation Suspending Entry of Immigrants Who Present Risk to the U.S. Labor Market During the Economic Recovery Following the COVID-19 Outbreak

Last Updated: June 17, 2020

On Wednesday, April 22, President Trump signed a proclamation suspending entry into the United States of certain immigrants who present risk to the U.S. labor market during the economic recovery following the COVID-19 outbreak.  The proclamation was effective at 11:59 p.m. EDT on Thursday, April 23.  It was continued by President Trump on June 23, and will expire on December 31, 2020, unless continued.

U.S. citizens, lawful permanent residents, and those holding valid immigrant visas on the effective date of the Proclamation, are not subject to the proclamation.  The Proclamation is not retroactive. No valid visas will be revoked under this Proclamation.  The proclamation provides exceptions to its restrictions for certain categories of immigrants, including: certain healthcare professionals, aliens seeking to enter the United States pursuant to an EB-5 investor visa, spouses and children (categories IR2, CR2, IR3, IH3, IR4, IH4) of U.S. citizens, members of the United States Armed Forces and any spouse and children of a member of the United States Armed Forces, and aliens seeking to enter the United States pursuant to an Afghan and Iraqi Special Immigrant Visa.  In addition, cases involving a child applicant who may age out may be considered for a national interest exception.  Please refer to the proclamation for a full list of exceptions.

Routine visas services have been suspended at U.S. posts worldwide, but as resources allow, embassies and consulates will continue to provide emergency and mission critical visa services.  Mission-critical immigrant visa categories may include applicants who may be eligible for an exception under this presidential proclamation, such as: IR/CR1, IR/CR2, IR/IH-3, IR/IH-4, SQ, SI, and certain employment-based medical professionals, as well as cases

8/14/2020                    Proclamation Suspending Entry of Immigrants Who Present Risk to the US Labor Market During Economic Recovery Following the …

000187

involving an applicant who may age out.  While embassies and consulates may process these types of cases, their ability to do so may be limited by local government restrictions and available resources.  In addition, an applicant's ability to travel may be impacted by local laws, regulations, and travel restrictions

The full text of the presidential proclamation is available on the White House website at:

https://www.whitehouse.gov/presidential-actions/proclamation-suspending-entry-immigrants-present-risk-u-s-labor-market-economic-recovery-following-covid-19-outbreak/ ⧉

# Proclamation Suspending Entry of Immigrants and Nonimmigrants Who Present Risk to the U.S. Labor Market During the Economic Recovery Following the COVID-19 Outbreak

Last Updated: June 23, 2020

On Monday, June 22, President Trump signed a proclamation suspending entry into the United States of certain immigrants and nonimmigrants who present a risk to the U.S. labor market following the coronavirus outbreak. Effective immediately, the proclamation extends the suspension of entry for certain immigrants (Presidential Proclamation 10014⧉) through December 31, 2020. The new restrictions imposed by the proclamation are effective at 12:01 a.m. EDT on Wednesday, June 24 and expire on December 31, 2020, unless continued by the President.  U.S. citizens, lawful permanent residents, and aliens who are or were inside the United States or those holding valid nonimmigrant or immigrant visas on the effective date are not subject to the proclamation.

The proclamation suspends entry of nonimmigrants in the following categories: H-1B, H-2B, J (for aliens participating in an intern, trainee, teacher, camp counselor, au pair, or summer work travel program) and L, along with their spouses and children.  No valid visas will be revoked under the proclamation.

Presidential Proclamation 10014 and this proclamation provide exceptions to their restrictions for certain categories of immigrants and nonimmigrants. These exceptions include: certain healthcare professionals, aliens seeking to enter the United States pursuant to an EB-5 investor visa, spouses and children (categories IR1, CR1, IR2, CR2, IR3, IH3, IR4, IH4) of U.S. citizens, members of the United States Armed Forces and any spouse and children of a member of the United States Armed Forces, aliens seeking to enter the United States pursuant to an Afghan and Iraqi Special Immigrant Visa (SQ or SI-SIV), any alien seeking to provide temporary labor services essential to the United States food supply chain, and any alien whose entry

000189

would be in the national interest as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees.  In addition, the proclamation explicitly states that cases involving a child applicant who may age out may be considered for a national interest exception.  Please refer to the text of each proclamation for a full list of exceptions.

Routine visas services continue to be  suspended at U.S. posts worldwide as a result of the COVID pandemic, but as resources allow, embassies and consulates may continue to provide emergency and mission-critical visa services.  Mission-critical immigrant visa categories include applicants who may be eligible for an exception under these presidential proclamations, such as: IR/CR1, IR/CR2, IR/IH-3, IR/IH-4, SQ, SI, certain medical professionals, and certain aliens providing temporary labor or services essential to the United States food supply chain, as well as cases involving an applicant who may age out of his or her visa category.  While embassies and consulates may process these types of cases, their ability to do so may be limited by local government restrictions and available resources.  In addition, an applicant's ability to travel may be impacted by local laws, regulations, and travel restrictions.

The full text of the presidential proclamations are available on the White House website at:

https://www.whitehouse.gov/presidential-actions/proclamation-suspending-entry-aliens-present-risk-u-s-labor-market-following-coronavirus-outbreak/ ⬚

# Phased Resumption of Routine Visa Services

Last Updated: July 14, 2020

**Phased Resumption of Routine Visa Services**

- The Department of State suspended routine visa services worldwide in March 2020 due to the COVID-19 pandemic.  As global conditions evolve, U.S. Embassies and Consulates are beginning a phased resumption of routine visa services.

- The resumption of routine visa services will occur on a post-by-post basis, in coordination with the Department's Diplomacy Strong framework for safely returning our workforce to Department facilities.  U.S. Embassies and Consulates have continued to provide emergency and mission-critical visa services since March and will continue to do so as they are able.  As post-specific conditions improve, our missions will begin providing additional services, culminating eventually in a complete resumption of routine visa services.

- We are unable to provide a specific date for when each mission will resume specific visa services, or when each mission will return to processing at pre-Covid workload levels.  See each individual U.S. Embassy or Consulate's website for information regarding operating status and which services it is currently offering.

- Our missions overseas continue to provide all possible services to U.S. citizens. More information is available on each post's website.

- This does not affect travel under the Visa Waiver Program. See https://esta.cbp.dhs.gov/faq?focusedTopic=Schengen%20Travel%20Proclamation for more information.

- Applicants with an urgent matter who need to travel immediately should follow the guidance provided on

their nearest embassy or consulate's website to
request an emergency appointment.

FAQ

**Q.  Which additional visa services are
embassies/consulates beginning to provide?**

- All of our missions are continuing to provide
  emergency and mission-critical visa services.  As
  post-specific conditions permit, our missions will
  phase in processing some routine nonimmigrant and
  immigrant visa cases, for example: travelers with
  urgent travel needs; students (F-1, M-1, and certain J-
  1); and some family members of U.S. citizens
  consistent with Presidential Proclamation 10014.  We
  expect the volume and type of visa cases each post
  will process to depend on local circumstances.  An
  embassy or consulate will resume adjudicating all
  routine nonimmigrant and immigrant visa cases only
  when adequate resources are available and it is safe
  to do so.

**Q.  What criteria are missions using to determine when to
resume routine services?**

- We are closely monitoring local conditions in each
  country where we have a U.S. presence. Local
  conditions that may affect when we can begin
  providing various public services include medical
  infrastructure, COVID-19 cases, emergency response
  capabilities, and restrictions on leaving home.

**Q.  What steps are being taken to protect customers from
the spread of COVID-19?**

- The health and safety of our workforce and
  customers will remain paramount.  Our embassies
  and consulates are implementing safeguards to keep
  staff and customers safe, including implementing
  physical distancing in our waiting rooms, scheduling
  fewer interviews at a time, frequent disinfection of
  high touch areas, and following local health and
  safety regulations.

**Q. Do the various Presidential Proclamations/travel restrictions still apply, or are those lifting with the resumption of visa services?**

- The five geographical COVID-19 Proclamations (P.P. 9984, 9992, 9993, 9996, 10041) and the two COVID-19 Labor Market Proclamations suspending the entry of certain aliens (P.P. 10014 and 10052) remain in effect.

**Q: Is my situation an emergency? I need to go the United States immediately for X.**

- Applicants can find instructions on how to request an emergency visa appointment at the Embassy or Consulate's website.

**Q. What about my MRV fee that expired while routine services were suspended?**

- The Machine Readable Visa (MRV) fee is valid and may be used to schedule a visa appointment in the country where it was purchased within one year of the date of payment.

# Presidential Proclamations on Novel Coronavirus

Last Updated: June 29, 2020

On Friday, January 31, President Trump signed a proclamation suspending entry into the United States of aliens who were physically present in the People's Republic of China, excluding the Special Administrative Regions of Hong Kong and Macau, within the 14 days preceding entry or attempted entry into the United States. The proclamation took effect Sunday, February 2. This action followed the declaration of a public health emergency in the United States related to the novel coronavirus outbreak in Wuhan, China.

On Saturday, February 29, President Trump signed a second proclamation suspending entry into the United States of aliens who were physically present in Iran within the 14 days preceding entry or attempted entry into the United States. This proclamation took effect as of Monday, March 2.

On Thursday, March 11, President Trump signed a third proclamation suspending entry into the United States of aliens who were physically present in any of the 26 countries that make up the Schengen Area within the 14 days preceding their entry or attempted entry into the United States. The Schengen Area consists of Austria, Belgium, Czech Republic, Denmark, Estonia, Finland, France, Germany, Greece, Hungary, Iceland, Italy, Latvia, Liechtenstein, Lithuania, Luxembourg, Malta, Netherlands, Norway, Poland, Portugal, Slovakia, Slovenia, Spain, Sweden, and Switzerland. This proclamation is in effect as of 11:59 p.m., March 13, 2020.

On March 14, President Trump signed a fourth proclamation that restricts travel to the United States of foreign nationals who were physically present in the United Kingdom and Ireland within the 14 days preceding their entry or attempted entry into the United States. This proclamation is in effect as of 11:59 p.m. eastern daylight time on March 16, 2020.

On Wednesday, April 22, President Trump signed a

proclamation suspending entry into the United States of
certain immigrants who present risk to the U.S. labor
market during the economic recovery following the COVID-
19 outbreak. The proclamation was effective at 11:59 p.m.
EDT on Thursday, April 23.

On Sunday, May 24, President Trump signed a fifth
proclamation suspending entry into the United States of
foreign nationals who were physically present in the
Federative Republic of Brazil within 14 days preceding their
entry or attempted entry into the United States. This
proclamation is in effect as of 11:59 p.m. eastern daylight
time on May 26, 2020.

On Monday, June 22, President Trump signed a
proclamation suspending entry into the United States of
certain immigrants and nonimmigrants who present a risk
to the U.S. labor market following the coronavirus outbreak.
Effective immediately, the proclamation extends the
suspension of entry for certain immigrants (Presidential
Proclamation 10014⧉) through December 31, 2020. The
new restrictions imposed by the proclamation are
effective at 12:01 a.m. EDT on Wednesday, June 24 and
expire on December 31, 2020, unless continued by the
President.

U.S. citizens are not subject to the proclamations. All
proclamations provide exceptions to the restrictions for
lawful permanent residents of the United States. Some
exceptions include, but are not limited to: foreign diplomats
traveling to the United States on A or G visas and certain
family members of U.S. citizens or lawful permanent
residents including; spouses, children (under the age of 21),
parents (provided that his/her U.S. citizen or lawful
permanent resident child is unmarried and under the age of
21), and siblings (provided that both the sibling and the U.S.
citizen or lawful permanent resident are unmarried and
under the age of 21). There is also an exception for air and
sea crew traveling to the United States on C, D or C1/D
visas. For the full list of exceptions please refer to the
proclamations.

The full text of the presidential proclamations are available
on the White House website at:

China: https://www.whitehouse.gov/presidential-

actions/proclamation-suspension-entry-immigrants-nonimmigrants-persons-pose-risk-transmitting-2019-novel-coronavirus/

Iran: https://www.whitehouse.gov/presidential-actions/proclamation-suspension-entry-immigrants-nonimmigrants-certain-additional-persons-pose-risk-transmitting-coronavirus/

Schengen Area: https://www.whitehouse.gov/presidential-actions/proclamation-suspension-entry-immigrants-nonimmigrants-certain-additional-persons-pose-risk-transmitting-2019-novel-coronavirus/

United Kingdom and
Ireland: https://www.whitehouse.gov/presidential-actions/proclamation-suspension-entry-immigrants-nonimmigrants-certain-additional-persons-pose-risk-transmitting-coronavirus-2/

Brazil: https://www.whitehouse.gov/presidential-actions/proclamation-suspension-entry-immigrants-nonimmigrants-certain-additional-persons-pose-risk-transmitting-novel-coronavirus/

Brazil
Amendment: https://www.whitehouse.gov/presidential-actions/president-amendment-proclamation-president-may-24-2020/

Immigrants: https://travel.state.gov/content/travel/en/News/visas-news/Proclamation-Suspending-Entry-of-Immigrants-Who-Present-Risk-to-the-US-labor-market.html

Immigrants and
Nonimmigrants: https://travel.state.gov/content/travel/en/News/visas-news/proclamation-suspending-entry-of-immigrants-and-nonimmigrants-who-present-risk-to-the-US-labor-market-during-the-economic-recovery-following-the-COVID-19-outbreak.html

# COVID-19 - Visa Services and Restrictions

Visa Announcement May 26, 2020

COVID-19 - Visa Services and Restrictions

Please see the below notices which contain detailed information about the current status of visa services worldwide and visa restrictions related to the COVID-19 global pandemic.  For additional information, including about exceptions, please also visit the Newsroom.

August 12, 2020

National Interest Exceptions to Presidential Proclamations (10014 & 10052) Suspending the Entry of Immigrants and Nonimmigrants Presenting a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak

July 22, 2020

National Interest Exceptions for Certain Travelers from the Schengen Area, United Kingdom, and Ireland

June 23, 2020

Proclamation Suspending Entry of Immigrants and Nonimmigrants Who Present Risk to the U.S. Labor Market During the Economic Recovery Following the COVID-19 Outbreak

June 17, 2020

Proclamation Suspending Entry of Immigrants Who Present Risk to the U.S. Labor Market During the Economic Recovery Following the COVID-19 Outbreak

May 26, 2020

Presidential Proclamations on Novel Coronavirus (People's Republic of China, Iran, the Schengen Area, United Kingdom, Ireland, Brazil)

Apr 23, 2020

Proclamation Suspending Entry of Immigrants Who

000197

Present Risk to the U.S. Labor Market During the
Economic Recovery Following the COVID-19 Outbreak

Apr 8, 2020
Update on Visas for Medical Professionals

Mar 26, 2020
Important Announcement on H2 Visas

Mar 20, 2020
Suspension of Routine Visa Services



# CA Webinar on COVID-19

**July 1, 2020**

U.S. Department of State • Bureau of Consular Affairs











000205

# CA/VO

## June 22 Presidential Proclamation (10052)
## See June 30 ALDAC

- No changes to IVPP 10014 except to extend the termination date to December 31, 2020
- Adds nonimmigrant visa categories:
- H1Bs and their H4 derivatives
- H2Bs and their H4 derivatives
- Ls and their derivatives
- Certain J-1s (au pair, intern, teacher, trainee, camp counselor, SWT) and their derivatives
- The Proclamation does not suspend H1B1, H4 derivatives of the H2A or H3 categories, nor does it include K-1s, or J-1 physicians and researchers
- Suspension on routine visa services STILL applies



- **PP 10014: Suspension on Entry of Immigrants (20 State 41350)**
  - Extended through December 31, 2020 by June 22 Proclamation 10052











# CA Webinar on COVID-19
## *Special Edition*

**July 15, 2020**

U.S. Department of State • Bureau of Consular Affairs











# IV Labor Proclamation (10014)

- No changes to IVPP 10014 except to extend the termination date to December 31, 2020
- Posts may continue to except the following without an NIE:
  - I-140 medical professionals
  - EB-5
  - IR/CR-1, IR/CR-2, IR/IH-3, IR/IH-4
  - SQ/SI SIVs
- National Interest Exceptions:
  - Age Outs (can be done with Cons Sec Chief Approval)
  - All Others (must be sent to CA-VO-F-IE and VO/F analyst for CA A/S Consideration)

- SB-1s, V92/93, and Ks are not subject to the Proclamation

**April 25 ALDAC: 20 STATE 41350**
**July 13 ALDAC on National Interest Exceptions: 20 STATE 66820**

# NIV Labor Proclamation (10052)

- PP 10052 adds NIV categories:
  - H1Bs and their H4 derivatives
  - H2Bs and their H4 derivatives
  - Ls and their derivatives
  - Certain J-1s (au pair, intern, teacher, trainee, camp counselor, SWT) and their derivatives

- The Proclamation does not suspend H1B1, H1C, H4 derivatives of H categories not excepted, nor does it include K-1s, or J-1 physicians and researchers

- National Interest Exceptions to be Approved by Consular Section Chief; additional economic recovery exceptions are under consideration

**June 30 ALDAC: 20 STATE 61886**
**July 13 ALDAC on National Interest Exceptions: 20 STATE 66820**

000219













# CA Webinar on COVID-19

**July 29, 2020**

U.S. Department of State • Bureau of Consular Affairs









# CA/VO

# June 22 Presidential Proclamation (10052) See June 30 ALDAC

- No changes to IVPP 10014 except to extend the termination date to December 31, 2020
- Adds nonimmigrant visa categories:
  - H1Bs, H2Bs and their H4 derivatives
  - Ls and their derivatives
  - Certain J-1s (au pair, intern, teacher, trainee, camp counselor, SWT) and their derivatives
- The Proclamation does not suspend H1B1, H4 derivatives of the H2A or H3 categories, nor does it include K-1s, or J-1 physicians and Researchers
- Suspension on routine visa services STILL applies
- **Still working on NIE Determinations for PP10052**

- **PP 10014: Suspension on Entry of Immigrants (20 State 41350)**
  - Extended through December 31, 2020 by June 22 Proclamation 10052
  - 20 STATE 66820 guidance on National Interest Exceptions











# CA Webinar on COVID-19

**August 12, 2020**

U.S. Department of State · Bureau of Consular Affairs











000248

# CA/VO

# Presidential Proclamations and Implementation Guidance

- **Phased Resumption of visa services STILL applies (20 STATE 65080)**
  - Posts may, in their discretion, accept INDIVIDUAL cases that may qualify for an exception as mission critical – these should come in as emergency appointment requests (categorical made by CA)
  - Posts should update their websites with clear guidance on what visa services are being provided at post and how a person can request an emergency visa appointment
  - Student Visa Processing Requests: 9 approved; 17 pending; 1 rescinded

- **National Interest Exception Criteria**
  - National Interest Exception will be made at the time of interview
  - Travel.State.Gov has guidance to the public on what may qualify a person for a national interest exception
  - Refer to CAWeb Portal "Presidential Proclamations Adjudication Guidance"
  - Cases may still be considered on a case by case basis by CA A/S if outside the scope of what consular officers are allowed to determine on their ov









000254

# IV Adjudication Flowchart During The COVID Outbreak

## Last Update: 17-JUL-2020

SENSITIVE BUT UNCLASSIFIED

## Summary of Presidential Proclamations and ALDACs Related to IV Application Processing during COVID-19

- ███████████████████████████████████████████████
- ████████████████████████████████████████████████████████
- ████████████████████████████████████████████████
- █████████████████████████████████████████████████████
- **20 STATE 30920**:  Suspension of all routine visa processing
- **20 STATE 37592**:  Processing medical professionals' visa applications
- **20 STATE 41350**:  PP10014, suspension of entry of immigrants who are a risk to the labor market following the outbreak
- ████████████████████████████████████████████████████████
- ███████████████████████████████████████
- **20 STATE 54966**:  Adds IR1/CR1s and IR2/CR2s categories to mission critical visa services
- **20 STATE 61886**:  Updates to guidance in 20 STATE 41350 including its extension to December 31, 2020 per PP10052
- ███████████████████████████████████████████████████████████
- **20 STATE 65080**:  Guidance on phased resumption of services
- █████████████████████████████████████████████████████
- **20 STATE 66820**:  Authorization for consular chiefs to grant NIEs for Labor Market PPs
- **20 STATE 67436**:  Options to consider when issuing replacement IVs

SENSITIVE BUT UNCLASSIFIED

2

**Step-by-Step Summary of the Guidance in the Listed ALDACs to Adjudicate an IV, SIV, or Quasi-IV**

**PHASED RESUMPTION OF VISA SERVICES**
(**page 4**)

Determine if the IV, SIV, or Quasi-IV is Mission Critical or the application can be processed in accordance with the guidance in 20 STATE 65080.

**RESOLVE ALL INELIGIBILITIES**

Complete all case processing, including document collection, medical examination, SAOs, etc. The case should be considered otherwise eligible before considering PPs.

**ASSESS LABOR MARKET PP**
(**pages 5-8**)

Determine if the applicant is affected by PP 10014 (20 STATE 41350), which prohibits issuance of certain IVs to prevent entry of aliens who "present a risk to the U.S. labor market" following the COVID outbreak. If so, whether the applicant qualifies for an exception.



**ASSESS REGIONAL PPs**
(**page 9**)

Identify if the applicant's travel history and future travel plans are affected by the PPs on regional travel bans, and, if so, qualifies for an Exception.



Issue the visa/foil ensuring all actions are documented in case notes and the visa contains the necessary annotations. Remember to enter the NIE1 lookout to facilitate entry by CBP.

Refuse the application ensuring all actions are documented in case notes and all correct refusal codes are applied.

SENSITIVE BUT UNCLASSIFIED

## Flowchart for IV Scheduling During Phased Re-Open

Does case fall within exception to Labor Market Proclamations (P.P. 10014):
- I-140 physician, nurse, or other healthcare professionals and their derivatives
- I-140 medical research to combat COVID-19 and their derivatives
- Work to alleviate effects of COVID-19 outbreak (Department approval required);
- EB-5 Immigrant Investor Program
- Spouse of a U.S. citizen
- Under 21 and child of a U.S. citizen
- IR-4 or IH-4
- Further U.S. law enforcement objectives (Department approval required)
- U.S. Armed Forces member, spouse, and children
- SI or SQ SIV
- Age Out and family members on the same petition (excludes CSPA-protected applicants)
- Entry would be in the **national interest** (Department approval required), such as medical emergencies and urgent SE SIVs
- Replacement visa for applicants who possessed a valid visa on April 23, regardless of visa category (must contact CA Fee Team)

[K visas are not subject to P.P. 10014, P.P. 10052]

**Do not prioritize over case that fits exception**



No

Yes

### Phase Zero - One

Is the case an **emergency or mission-critical** case, including:
- IR/CR1s, IR/CR2s, IR/IH3s, and IR/IH4s
- SQ and SI SIVs
- Certain employment-based healthcare professionals
- Cases involving applicants who may age out
- Other emergencies or mission-critical purposes of travel as determined on a case-by-case basis by post management

Or 221(g) cases that do not require another personal appearance by applicant, where previous refusal overcome (and excepted under P.P. 10014)

**May Schedule**

Yes



No



**Wait for next phase**

### Phase Two

Continue to process cases excepted from P.P. 10014 and mission-critical cases, prioritizing IR cases
- Begin scheduling for Phase 3.

### Phase Three

May schedule all IV cases, prioritizing those excepted by P.P. 10014 in following order :
- Appointments cancelled due to suspension
- Adoptions, age outs, humanitarian cases, SIVs, V92/V93s, SB-1s
- IRs/CRs
- Ks (P.P. 10014 and P.P. 10052 do not apply to K visas)
- Family Preference (FP)/Employment Preference (EP)/Diversity Visa (DV) cases excepted by P.P. 10014

SENSITIVE BUT UNCLASSIFIED

4

**Flowchart for Presidential Proclamations Related to Certain Persons Who Pose a Risk to the U.S. Labor Market**



**Flowchart for Presidential Proclamations Related to Certain Persons Who Pose a Risk to the U.S. Labor Market**



**Flowchart for Presidential Proclamations Related to Certain Persons Who Pose a Risk to the U.S. Labor Market**

Is the otherwise qualified principal applicant and derivative spouse and under age 21 children as the beneficiary of a I-140 petition applying as a:
- Physician;
- Nurse;
- Other healthcare professional; or
- Medical researcher or other researcher intended to combat the spread of COVID-19.

**No** →

Will the otherwise qualified principal applicant perform work essential to combat, recover from, or otherwise alleviate the effects of the COVID-19 outbreak, and derivative spouse and under age 21 children.

**Likely** →

Determinations under this aspect of the exception require Department approval.

**Yes** ↓

**No** ↓

Proceed to next slide

**Denied** ↑

1. Send information about the applicant's case, including a detailed explanation of the work the applicant intends to perform and relevant qualifications, to CA-VO-F-IE@state.gov; and
2. In conjunction with your VO/F analyst, draft and submit a memo and transmittal letter to the Assistant Secretary for CA to approve the exception.

Exception, add a case note and an annotation:
"Exception under PP on Risk to Labor Market."
*Proceed to Regional PP analysis.*

**Approved** ←

VO/F notifies post that the exception has been approved or denied.




SENSITIVE BUT UNCLASSIFIED

7

## Flowchart for Presidential Proclamations Related to Certain Persons Who Pose a Risk to the U.S. Labor Market

Otherwise qualified principal applicant does not fit an exception listed in PP10014.



Does the case include a principal or derivative beneficiary accompanying or FTJ who will age-out before the PP expires or within two weeks of their expiration __and__ does not benefit from the application of CSPA.

**No** →

The adjudicating officer, with input from USG counterparts, identifies the case in which a national interest or law enforcement exception may apply and gains consular manager concurrence.

**Yes** →

1. Send information about the applicant's case, including purpose of travel, itinerary, and justification, to CA-VO-F-IE@state.gov; and
2. In conjunction with your VO/F analyst, draft and submit a memo and transmittal letter to the Assistant Secretary for CA to approve the exception, with concurrence from the Regional Bureaus as necessary. Also need recommendation of the Attorney General for Law Enforcement Exception.

VO/F notifies post that the exception has been approved or denied.

**Approved**


**Yes**

National Interest Exception, cons chief concurs, add a case note and an annotation: "Exception under PP on Risk to Labor Market." _Proceed to Regional PP analysis._


**No**

Refuse the case pursuant to INA 212(f) using refusal code "███" _Proceed to Regional PP analysis._

SENSITIVE BUT UNCLASSIFIED

**Denied**



Exception, add a case note and an annotation: "Exception under PP on Risk to Labor Market." _Proceed to Regional PP analysis._

8



# Adjudicator Flowcharts

|  |  |
|---|---|
| ███████████ | ██████████████ |
| **H & L** | ██████ |
| ██████ | █████████ |
| ----------------------------------------------------------<br>*Assume Applicant is Otherwise Eligible* | ████████████████████<br>███████████████<br>█████████████ |
| ----------------------------------------------------------<br>*Yellow Star Marks the Starting Point* |  |
| ███████████████ | **NIV Labor PP Exceptions** |



SBU
SENSITIVE BUT UNCLASSIFIED

# Summary of Presidential Proclamations and ALDACs Related to NIV Processing

- ███████████████████████████████████████████████████████
- █████████████████████████████████████████████████████████████
  ██████████████████
- ██████████████████████████████████████████████████████████
- █████████████████████████████████████████████████████████████
  ██████████████████

- [20 STATE 30920](): Suspension of all routine visa processing (Post Services)
- [20 STATE 37592](): Processing medical professionals' visa applications (Post Services)
- [20 STATE 42180](): Reminder, of ongoing suspension of all routine visa processing as announced in 20 STATE 30920 (Post Services)
- ████████████████████████████████████████████
- [20 STATE 61886](): Implementation procedures for PP 10052 (NIV Labor Market Proclamation)
- [20 STATE 62808](): Authorization for consular chiefs to grant National Interest Exceptions (NIEs) for regional travel bans (Urgent Medical, Humanitarian, Public Health, National Security, Member of Household, Repatriation flights, and Medical Escorts) (Regional COVID)
- [20 STATE 65080](): Guidance on phased resumption of services (Post Services)
- ████████████████████████████████████████
- [20 STATE 66326](): Determination of NIEs for economic-related cases and academic travel for regional travel bans (Regional COVID)
- [20 STATE 66820](): Authorization for consular chiefs to grant NIEs for Labor Market PPs (Labor Market Proclamations)

SENSITIVE BUT UNCLASSIFIED

# H-1B, H-2B, and L Visas







**Flowchart for COVID-19 Labor Market Presidential Proclamation for NIV Applicants**

No → **Not Subject** ← No

Was the applicant outside the United States on June 24, 2020?

Is the application for a/an:
- H-1B or H-2B;
- J1 in an intern, trainee, teacher, camp counselor, au pair, or summer work travel program;
- L1; or
- visa to accompany or follow to join the above (e.g. as an H4, J2, or L2 spouse / child)?

Yes

Is the applicant a spouse or child of a U.S. citizen?

No →

Yes

Yes

Exception. Issue with annotation "Exception under PP on Risk to Labor Market." Add thorough case notes to document exception.

Is the H-2B applicant seeking to enter to provide temporary labor or services essential to the U.S. food supply chain, as documented in PIMS and scanned into the relevant petition in either a:
- USCIS-approved I-129 (see Part 5 under Job Title); or
- DOL-approved Form ETA-9142A, temporary labor certification (see the listed Job Title or SOC Occupation Title)

**Note**: Categories such as seafood processors, fish cutters, salmon roe technicians, farm equipment mechanics, and agriculture equipment operators would fall within this exception; categories such as bartenders, cooks, dishwashers, and waiters will generally NOT.



Per 20 STATE 66820, consular chief determines if National Interest Exception applies:
- **H-1B / L only:** Health professional/researcher to alleviate COVID-19 or do med. research w/ substantial public health benefit, confirmed w/I-129 file in PIMS, docs from applicant or petitioner, and/or interview;
- **H-1B/H-2B only:** travel supported by request from USG for critical U.S. foreign policy objectives or treaty / contract obligations, confirm w/I-129 file in PIMS, docs from applicant or petitioner, and/or interview;
- **J1 au pair**: caring for minor USC, LPR, or lawful nonimmigrant AND:
  - Au pair w/special skills required for child w/particular needs (e.g. medical, special education, or sign language) diagnosed by qualified medical professional;
  - Will prevent child becoming a public charge or ward of state or medical or other public institution; or
  - Child w/parents providing COVID-19 medical care or research.
- **J1 bilateral:** valid pre-June 24, 2020 agreement between foreign gov't & USG or U.S. state/local government AND promotes U.S. national interests (consult post Public Affairs & CA/VO/F);
- **J1 USG**: intern/trainee (G-3 prog. no. on DS-2019) hosted by USG AND program supports immediate, continued U.S. economic recovery;
- **J1 Specialized Teachers**: Full-time ("G-5" prog. no. on DS-2019) w/substantial in-person teaching; at primary or secondary accredited school; must make specialized contribution to education of U.S. students; and must demonstrate native or near-native foreign language proficiency and the ability in that language; or
- **J1 critical & time sensitive foreign policy objectives:** consult post Public Affairs & CA/VO/F;

No →

H-4, L-2, or J-2 derivative child or spouse to accompany or follow to join principal app. who is excepted from, or not subject to, P.P. 10052, including principal app. currently in U.S.A. or with valid visa.

No ←

Refuse under INA 212(f) using refusal code "█████"

Yes

Yes

National Interest Exception applies:
- Obtain Consular Section Chief approval before issuing.
- Case notes: "#NIENIVPP; Approved for National Interest Exception under PP10052". Enter clear notes whether/how will self-quarantine. List all PPs that apply and any related required case notes.
- Scan supporting documentation into CCD (unless already in system).
- Annotate: "NIE under P.P. on Risk to Labor Market"
- Enter CLASS Lookout Code NIE1. (Short Comment: "DOS NIE."; Long Comment: "National Interest Exception Approved under Proclamation(s) XXXXX. [List specific category; ex: Age out applicant or family member.]"

**Return to Slide 1**

# Flowchart for Regional COVID-19 Presidential Proclamations



Within the last 14 days or within 14 days of arriving in the United States, is the applicant present in, departing directly from, or transiting through:
- Brazil;
- The UK (excluding overseas territories outside of Europe);
- Republic of Ireland;
- The Schengen Area;
- China (excluding Hong Kong and Macau);  or
- Iran.

**Not Subject, Adjudicate**

No

Yes

Is the applicant a:
- LPR/SB-1;
- Spouse, Child, Foster Child, or Prospective Adoptee of a USC or LPR (includes CSPA beneficiaries);
- Parent, Legal Guardian, or Child Sibling (unmarried & under age 21) of a USC or LPR Child (unmarried & under age 21);
- Air or sea crewmember on a C-1, D, C-1/D, or otherwise traveling as air or sea crew (ex: B-1 lightering, OCs or wind farm activity, and private air/sea crew)
- NIV traveler to the UN headquarters district or on an A-1, A-2, C-2, C-3, E-1 (TECRO/TECO-related), G-1, G-2, G-3, G-4, NATO-1 through NATO-4, or NATO-6;
- USG invitee related to COVID containment or mitigation; or
- Member of the U.S. Armed Forces; or Spouse or Child of a Member of the USAF not traveling from or through China.

Yes

No

**Exception, add a case note and an annotation: "Exception under PP on Novel Coronavirus"**

Yes



Applicant would not pose a significant health risk as determined and documented by CDC; or is a law enforcement interest exception as explained in 20 STATE 49966, para 8.

No

Per 20 STATE 62808, consular chief determines travel falls into one of these categories:
- Urgent Medical Treatment;
- Member of Household (MOH);
- Public Health;
- Humanitarian;
- Repatriation Flights;
- Medical Escorts, Legal Guardians, or Other Escorts; or
- U.S. National Security.

No

Per 20 STATE 66326, alien's travel does not include Brazil, China, or Iran and consular chief determines travel falls into one of these categories:
- Economic or Investors; or
- Students or Academics.

No

**Refuse 221g; add case note #PPNCOV**

Yes

Yes

**National Interest Exception**, applies to travelers on VWP, previously issued valid visa, and with a current application:
- Obtain Consular Section Chief approval before issuing.
- For current visa applicants: scan all documents to the CCD, add case note, "#NIEPPNCOV; Approved for National Interest Exception under COVID-19 Presidential Proclamation," and add annotation, "NIE under P.P. on Novel Coronavirus," and issue 30 days, single entry visa;
- Enter CLASS Lookout Code NIE1 via INK (except F & M NIV apps); and
- Inform traveler NIE expires in 30 days.



[Return to Slide 1](#)

SENSITIVE BUT UNCLASSIFIED

Date: _____

Dear Sir/Madam:

This is to inform you that a consular officer found you ineligible for a visa under Section 212(f) of the Immigration and Nationality Act, pursuant to Presidential Proclamation 10014 and Presidential Proclamation 10052.  Today's decision cannot be appealed.

☐  Taking into account the provisions of these Proclamations, a consular officer has determined that you are not eligible for an exception.  If the Presidential Proclamations are not extended, you may contact the consular section after December 31, 2020, to request that your visa application be reconsidered by the consular officer, and submit any updated required documents that have expired.

☐  The consular officer is reviewing your eligibility for an exception.  This can be a lengthy process, and until an individualized determination can be made, your application will remain refused under Section 212(f).

Sincerely,

Immigrant Visa Unit
Consular Section
U.S. Embassy, [City, Country]
[website]

Date: _____

Dear Sir/Madam:

This is to inform you that a consular officer found you ineligible for a visa under Section 212(f) of the Immigration and Nationality Act, pursuant to Presidential Proclamation 10052.  Today's decision cannot be appealed.

☐   Taking into account the provisions of these Proclamations, a consular officer has determined that you are not eligible for an exception.  However, you may reapply for a visa at any time.  If you decide to reapply, you must submit a new visa application form and photo, pay the visa application fee again, and make a new appointment to be interviewed by a consular officer.  If you choose to reapply, you should be prepared to provide information that was not presented in your original visa application, or to demonstrate that your circumstances have changed since that application.

☐ The consular officer is reviewing your eligibility for an exception.  This can be a lengthy process, and until an individualized determination can be made, your application will remain refused under Section 212(f).

Sincerely,

Nonimmigrant Visa Unit
Consular Section
U.S. Embassy, [City, Country]
[website]

Date: _____

Dear Sir/Madam:

This is to inform you that a consular officer found you ineligible for a visa under Section 212(f) of the Immigration and Nationality Act, pursuant to Presidential Proclamation 10014 and Presidential Proclamation 10052.  Today's decision cannot be appealed.

☐  Taking into account the provisions of these Proclamations, a consular officer has determined that you are not eligible for an exception.  Please note that all DV-2020 entrants who were selected must be found eligible for, and obtain, their visa by September 30, 2020.  This deadline cannot be extended.  This same strict deadline also applies to spouses and children of principal applicants.  As it is unlikely we will be able to issue your visa by the end of the program year on September 30, 2020, we are returning your civil documents back to you.

☐  The consular officer is reviewing your eligibility for an exception.  This can be a lengthy process, and until an individualized determination can be made, your application will remain refused under Section 212(f).

Sincerely,

Immigrant Visa Unit
Consular Section
U.S. Embassy, [City, Country]
[website]