## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DOMINGO ARREGUIN GOMEZ, *et al.,*

                Plaintiffs,

v.

DONALD J. TRUMP, *et al*.,

                Defendants.

CIVIL NO. 1:20-1419-APM

CHANDAN PANDA, *et al.,*

                Plaintiffs,

v.

CHAD WOLF, *et al*.,

                Defendants.

CIVIL NO. 1:20-1907-APM

## *PANDA* PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION
## FOR A PRELIMINARY INJUNCTION

BRADLEY B. BANIAS
Wasden Banias LLC

GEOFFREY FORNEY
Bar No. PA0088
Wasden Banias LLC
411 West Ellet Street
Philadelphia, PA 19119
202-615-8315/ geoff@wasdenbanias.com

Dated:  August 24, 2020

Attorneys for Plaintiffs in *Panda v. Wolf*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…..……………………………………………………..…………ii

    A.  Plaintiffs Have a Couse of Action Under the Administrative Procedure Act to
        Challenge *Ultra Vires* by Agency Officials……………..………………….…………1

    B.  Plaintiffs Are Challenging Final Agency Actions………….……………………7

    C.  Consular Non-Reviewability Does Not Apply………………………………11

    D.  Proclamation 10052 and its Implementation are *Ultra Vires*………………………..13

    E.  The Court Has Equitable Power to Enter a Preliminary Injunction…………………21

CERTIFICATE OF SERVICE………………....………………….......................………..24

EXHIBIT B

# TABLE OF AUTHORITIES

## CASE LAW

*Alliance to Save the Mattaponi v. U.S. Army Corps of Engineers*,
515 F. Supp. 2d 1, 9 (D.D.C. 2007).--------------------------------------------------------------8, 22

*Am. School of Magnetic Healing v. McAnnulty*,
187 U.S. 94, 110 (1902) ---------------------------------------------------------------3, 22

*Cardenas v. United States*,
826 F.3d 1164, 1171 (9th Cir. 2016) --------------------------------------------------12

*Chamber of Commerce v. Reich*,
74 F.3d 1322, 1328 (D.C. Cir. 1996)--------------------------------------------1, 2, 5, 7-8

*CSI Aviation Serv. v. DOT*,
637 F.3d 408, 412 (D.C. Cir. 2011) ----------------------------------------------------- 9

*Dalton v. Specter*,
511 U.S. 462, 476 (1994) --------------------------------------------------------------2, 14

*Dames & Moore v. Regan,*
453 U.S. 654, 675 (1981) --------------------------------------------------------------- 4

*Dart v. United States*,
848 F.3d 217, 224 (D.C. Cir. 1988) ---------------------------------------------------- 3

*Detroit International Bridge v. Government of Canada*,
189 F. Supp. 3d 85 (D.D.C. 2016)------------------------------------------------- 4, 5, 6, 7

*Doe v. Trump,*
957 F.3d 1050, 1064 (9th Cir. 2020) --------------------------------------------7, 14, 20, 21

*Guard Serv. v. Perez*,
792 F.3d 554, 562-63 (5th Cir. 2015) -------------------------------------------------13

*Hamdan v. Rumsfeld*,
548 U.S. 557, 593 n.23 (2006) ---------------------------------------------------------14

*Hamdi v. Rumsfeld,*
542 U.S. 507, 518 (2004) --------------------------------------------------------------- 4

*INS v. Doherty*,
502 U.S. 314, 330 (1991) (Scalia, J., concurring) ---------------------------------------22

*Int'l Refugee Assistance Project v. Trump*,
    857 F.3d 554, 584 (4th Cir. 2017) --------------------------------------------------------9, 12

*Kendall v. United States*,
    37 U.S. 524, 610-13 (1838) (writ of mandamus), --------------------------------------3, 21

*Kerry v. Din*,
    135 S. Ct. 2128, 2140 (2015) ----------------------------------------------------------12

*Kleindienst v. Mandal*,
    408 U.S. 753, 766 (1972) --------------------------------------------------------------13

*Knauff v. Shaughnessy*,
    338 U.S. 537, 542-43 (1950) --------------------------------------------------------- 13,19

*\*Leedom v. Kyne*,
    358 U.S. 184, 188 (1958) -----------------------------------------------------------5, 10

*Marbury v. Madison*,
    5 U.S. 137, 168-173 (1803) ----------------------------------------------------------- 3

*Marks v. United States*,
    430 U.S. 188, 193 (1977) --------------------------------------------------------------12

*Moghaddam v. Pompeo*,
    424 F. Supp. 3d 104, 114-15 (D.D.C. 2020) --------------------------------------------11

*NRDC v. EPA*,
    643 F.3d 311, 319-20 (D.C. Cir. 2011) --------------------------------------------------10

*\*Ragsdale v. Wolverine World Wide*,
    535 U.S. 81, 93-94 (2002).----------------------------------------------------------- 16, 17

*Safe Extensions v. FAA*,
    509 F.3d 593, 598 (D.C. Cir. 2007) -----------------------------------------------------10

*\*Trump v. Hawaii,*
    138 S. Ct. 2392, 2411 (2018) -------------------------------------------------------- Passim

*Trump v. Int'l Refugee Assistance Project,*
    137 S. Ct. 2080 (2017)----------------------------------------------------10, 20, 21, 22, 23

*U.S. Army Corp of Engineers v. Hawkes*,
    136 S. Ct. 1807, 1813 (2016) ---------------------------------------------------------- 8

*U.S. v. Haggar Apparel Co.*,
    526 U.S. 380, 390 (1999) ------------------------------------------------------------ 8

*United States v. George S. Bush & Co.*,
    310 U.S. 371, 378-79 (1940) ----------------------------------------------------- 14

*\*Util. Air Regulatory Group v. EPA*,
    573 U.S. 302, 324 (2014) ----------------------------------------------------17, 18, 21

*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579, 589 (1952) --------------------------------------------------- 4, 19, 20

*Zadvydas v. Davis*,
    533 U.S. 678, 695 (2001) ------------------------------------------------------- 13

## CONSTITUTION

U.S. Const. Art. I, § 8, cl. 4 ----------------------------------------------------- 13

U.S. Const., Art. I, § 8, cl. 3 ---------------------------------------------------- 19

## STATUTE LAW

5 U.S.C. § 551(13) ------------------------------------------------------------ 1, 8

5 U.S.C. § 703 ---------------------------------------------------------------3, 21

5 U.S.C. § 706(2)(A)---------------------------------------------------------8, 22

8 U.S.C. § 1182(a)(5)(A)-------------------------------------------------------17

8 U.S.C. §§ 1103(a)(1), 1182(a)(5), 1182(n), 1184(c)------------------------------ 6

8 U.S.C. § 1182(n)(1)----------------------------------------------------------16

8 U.S.C. § 1184(i)(1) --------------------------------------------------- 12, 16

8 U.S.C. § 1184(n) ------------------------------------------------------------- 7

8 U.S.C. § 1202(d) ------------------------------------------------------------- 8

8 U.S.C. §§ 1182(a)(5)(A), 1182(n) ----------------------------------------------- 2

8 U.S.C. §§ 1182(a)(5)(A), 1182(n)(1)-------------------------------------------15

8 U.S.C. §§ 1182(a)(5)(A), 1182(n), 1184(i)-------------------------------------14

8 U.S.C. §§ 1182(a)(5), 1182(n), 1184(c), 1184(g), 1184(i)------------------------------------------- 6

8 U.S.C. §§ 1182(a)(7)(B)(i), 1225(b)(1)(A)------------------------------------------------------------10

Pub. Law No. 106-313, § 106(a)-(b) ------------------------------------------------------------------ 6

Pub. Law No. 106-313, § 106(a)-(b) (Oct. 17, 2000) ----------------------------------------------16

Pub. Law No. 106-313, § 106(b)------------------------------------------------------------------------ 7

Pub. Law No. 107-273 § 11030A(a)-(b) (Nov. 2, 2002) -------------------------------------------16

## LEGISLATIVE HISTORY

Senate Report No. 106-260, at 11, 22 (Apr. 11, 2000)---------------------------------------------16

## REGULATIONS

22 C.F.R. § 14.121(a). --------------------------------------------------------------------------------8, 11

## FEDERAL REGISTER

80 Fed. Reg. at 10295, 10309 ------------------------------------------------------------------ 13, 15

81 Fed. Reg. at 82408-11------------------------------------------------------------------------------16

81 Fed. Reg. at 82469----------------------------------------------------------------------------- 13, 15

85 Fed. Reg. at 38264----------------------------------------------------------------------------12, 16, 18

## OTHER AUTHORITIES

*Federalist Papers* No. 69 at 421 (Hamilton) (Clinton Rossiter ed. 1999) ---------------------- 14, 19

William Blackstone, *Commentaries on the Laws of England* (Oxford 2016) ----------------------- 3

Tom C. Clark, *Attorney General's Manual on the Administrative Procedure Act*
   (Dep't of Justice 1947) ------------------------------------------------------------------------ 3, 21, 22

Kenneth Culp Davis, *Administrative Law* (West 1951) -----------------------------------------3, 22

Kevin M. Stack, *The Reviewability of the President's Statutory Powers*,
   62 Vand. L. Rev. 1171 (2009). ----------------------------------------------------------------- 3

Defendants' opposition to the *Panda* Plaintiffs' motion for a preliminary injunction fails to identify any legitimate threshold defense precluding judicial review of Proclamation 10052 and its application as *ultra vires*, or alternatively, as resulting in unlawfully withheld agency action that is arbitrary and capricious or otherwise contrary to law under the Administrative Procedure Act (APA).  Neither Defendants' lack of finality nor consular non-reviewability arguments succeed because Defendants evade the essential point that the *Panda* Plaintiffs are challenging the Department of State's withholding of adjudications, or failing to act, on Plaintiffs' visa applications, which constitutes an agency action under the APA.  *See* 5 U.S.C. § 551(13).  Consular non-reviewability does not apply to the Department of State's failure to act, and even if the consulates' decisions to withhold adjudication constituted visa refusals, the *Panda* Plaintiffs still have a cause of action because the consulates' decisions are neither facially legitimate nor *bona fide* owing to their reliance on an *ultra vires* Proclamation that overrides binding provisions in the Immigration and Nationality Act, as amended (INA).

Defendants' opposition further fails to establish that Plaintiffs lack a cause of action under the APA because the government completely ignores authority from the D.C. Circuit holding that aggrieved parties may challenge Presidential orders by seeking review of the officials charged with carrying out the President's orders that result in *ultra vires* actions.  *See Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996).  Relatedly, Defendants' arguments fail on the merits because they are unable to rebut Plaintiffs' showing that Proclamation 10052 displaces impermissibly the highly reticulated and detailed statutory provisions that Congress crafted to ensure the entry and retention of skilled foreign H-1B workers for the purpose of developing the domestic economy.  Proclamation 10052 relatedly negates impermissibly the certifications already issued by the Department of Labor under its

statutory authority to regulate the entry and employment of skilled foreign workers.  *See* 8

U.S.C. §§ 1182(a)(5)(A), 1182(n).  Defendants' only justification for displacing Congress's

detailed statutory scheme is to invoke a supposedly unfettered inherent power of the executive to

do all things, including regulating the domestic economy, in the name of foreign affairs.

Defendants' arguments justifying the President's unfettered power necessarily fail as a self-

defeating exercise contrary to his limited authority under the Constitution and the INA.

### A.  Plaintiffs Have a Cause of Action Under the Administrative Procedure Act To Challenge *Ultra Vires* Actions by Agency Officials

Defendants first argue as a threshold matter that Plaintiffs lack a cause of action under the

APA because the Court, so the argument goes, cannot review Presidential actions, including

Proclamation 10052.  ECF No. 94 at 43.  But this argument fails because Defendants frame the

principle on which they rely too broadly and contrary to established precedent.  Relatedly,

Defendants completely fail to address contrary legal authority in the D.C. Circuit, which follows

Supreme Court precedent, holding that an aggrieved party has a cause of action against Federal

officials for carrying out a Presidential directive that results in *ultra vires* agency actions.

Although the Supreme Court in *Dalton v. Spector* held that the APA does not apply to the

President, *see* 511 U.S. 462, 468 (1994), as the D.C. Circuit explained, *Dalton's* holding merely

stands for the proposition that, when a statute entrusts a discrete specific decision to the President

and *contains no limitations* on the President's exercise of that authority, judicial review of an

abuse of discretion claim is not available.  *See Chamber of Commerce*, 74 F.3d at 1331.  Absent

the narrow exception precluding abuse of discretion claims where the President acts without

statutory limitation, the D.C. Circuit held it untenable to conclude that there are no judicially

enforceable limitations on presidential actions where he claims to act pursuant to statutory

authority.  *Id*. at 1332.  Rather, "[t]hat the 'executive's' action here is essentially that of the

2

President does not insulate the entire executive branch from judicial review[,]" because "it is now well established that 'review of the legality of Presidential action can ordinarily be obtained in a suit seeking to enjoin the officers who attempt to enforce the President's directive." *Id*. at 1328 (citation omitted).  Thus, where plaintiffs allege an *ultra vires* action by Federal officials acting contrary to statute at the behest of the President, as the *Panda* plaintiffs allege in this case, they have a non-statutory cause of action under the APA.  *See* 5 U.S.C. § 703; *Chamber of Commerce*, 74 F.3d at 1329; *Dart v. United States*, 848 F.3d 217, 224 (D.C. Cir. 1988); Kevin M. Stack, *The Reviewability of the President's Statutory Powers*, 62 Vand. L. Rev. 1171, 1193-94 (2009).

 The doctrine of judicial review incorporated into the APA supports the conclusion that Plaintiffs have a cause of action for challenging agency officials acting *ultra vires* at the direction of the President.  Prior to the APA's enactment, courts recognized the right of parties to seek judicial review of agency actions that exceeded statutory authority.  *See Dart*, 848 F.2d at 224.  The courts traditionally used, and the APA incorporates, the equity injunction as a form of action for judicial review to hold agency officials within their statutory limits.  *See* 5 U.S.C. § 703; *Am. School of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902); Kenneth Culp Davis, *Administrative Law* 729-32 (West 1951); *cf.* Tom C. Clark, *Attorney General's Manual on the Administrative Procedure Act* 97 (Dep't of Justice 1947).  Notably, equitable actions have always applied against officers carrying out the directives of the President, *see Kendall v. United States*, 37 U.S. 524, 610-13 (1838) (writ of mandamus), which is a doctrine inherited from the common law power to hold the sovereign's agents accountable for illegal conduct.  *See* William Blackstone, 1 *Commentaries on the Laws of England* 158-160 (Oxford 2016); 3 *Commentaries* 169-171; *Marbury v. Madison*, 5 U.S. 137, 168-173 (1803).  The Court's traditional authority to

3

enjoin those acting under the direction of the President through non-statutory review survived the APA and has formed the basis for courts reviewing the actions of officials operating at the behest of the President.  *See, e.g., Hamdi v. Rumsfeld,* 542 U.S. 507, 518 (2004) (reviewing actions of Secretary of Defense under Presidential order); *Dames & Moore v. Regan,* 453 U.S. 654, 675 (1981) (reviewing decisions of Secretary of Treasury under Presidential orders); *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 582 (1952) (reviewing decision of Secretary of Commerce acting under an order from the President).  As such, Defendant's argument that Plaintiffs lack a cause of action fails as a matter of history and established D.C. Circuit precedent.

Ignoring history and precedent, Defendants advance a misplaced reliance on *Detroit International Bridge v. Government of Canada*, 189 F. Supp. 3d 85 (D.D.C. 2016), to argue that Plaintiffs lack a cause of action under the APA.  *See* ECF No. 94 at 44.  However, *Detroit International Bridge* cannot help Defendants' attempt to avoid judicial review because that case is distinguishable on several material points.

In *Detroit International Bridge*, the plaintiff challenged as arbitrary and capricious or otherwise in violation of law the Department of State's decision to grant its competitor a permit to construct an international bridge connecting the United States and Canada.  189 F. Supp. 3d at 93.  Before the Department of State granted the competitor's permit, Congress had delegated authority directly to the President by statute to approve international bridge construction and, in anticipation of that statutory authority, the President issued an executive order directing the Department of State to receive and review applications for construction permits.  *Id*. at 94-95, 97. The court recounted that when Congress granted statutory authority to the President to approve construction permits, it removed itself from the business of approving international bridges on an

4

individual basis, which bestowed upon the President maximum and unrestricted authority to approve or deny permits. *Id*. at 97-98. Because the statute granted purely discretionary authority in the President, with no limit to that discretion, neither the President's decision nor the consultation that the Department of State provided to the President to inform his decision or acquiescence were reviewable under the APA. *Id*. at 100-01, 102.

*Detroit International Bridge* is distinguishable on the law and the facts. As an initial matter, that case did not involve allegations of *ultra vires* action by an agency official, unlike the *Panda* Plaintiffs' case alleging that that Proclamation 10052 and its implementation by the Department of State, the Department of Homeland Security, and the Department of Labor are in excess of and contrary to statutory authority. *See* Panda Pl.'s Memo, ECF No. 8 at 37-44. Rather, the plaintiff in *Detroit International Bridge* challenged the Department of State's decision as arbitrary and capricious or otherwise contrary to law, *see* 189 F. Supp. 3d at 93, which rests on a different footing than a claim that agency officials are acting outside their jurisdiction or beyond their statutory authority. *See Leedom v. Kyne*, 358 U.S. 184, 188 (1958); *Chamber of Commerce*, 74 F.3d at 1327-28.

More critically, the delegation of authority to the President in *Detroit International Bridge* showed that "Congress wanted to remove itself from the approval of each international bridge, [and] it chose not to limit the President's discretion and not require the President to adhere to the policy decisions of any agency." 189 F. Supp. 3d at 100 (internal citation and quotation omitted). As such, the Department of State was simply acting as a conduit exercising the President's discretionary powers committed to him by statute. *Id*. Unlike the wholesale delegation of unfettered discretion granted to the President to approve or deny bridge permits, Congress under the INA has not removed itself from admissibility determinations relating to the

entry and employment of skilled foreign workers in the H-1B program.  Congress crafted a

highly reticulated statute, with amendments over the years, to ensure the importation and

retention of skilled foreign workers to advance this nation's domestic economic interests.  *See* 8

U.S.C. §§ 1182(a)(5), 1182(n), 1184(c), 1184(g), 1184(i); AC21, Pub. Law No. 106-313,

§ 106(a)-(b); 144 Cong. Rec. S12741, S12749 (Oct. 21, 1998) (Sen. Abraham).  Nor can the

President override those provisions.  *See Trump v. Hawaii*, 138 S. Ct. 2392, 2411 (2018).  Thus,

unlike the President's broad permitting power unfettered by standards in *Detroit International*

*Bridge*, his authority here is constrained within the standards that Congress set for determining

the conditions and terms for obtaining and retaining skilled foreign workers.

The distinction between *Detroit International Bridge* and the more limited authority of

the President under the INA is further evidenced by a distinction that the court in *Detroit*

*International Bridge* found dispositive.  In that case, the court indicated that "there is a

difference between actions involving discretionary authority delegated by Congress to the

President and actions involving authority delegated by Congress to an agency."  189 F. Supp. 3d

at 104.  The court stated that in the former case it lacks jurisdiction under the APA, but in the

latter situation the court has jurisdiction to review the agency's actions.  *Id*.  Although the first

point is demonstrably wrong based on the authorities discussed above, the court's second point is

indisputable and applies in this case.

Congress delegated to the Secretary of Labor and the Secretary of Homeland Security the

authority to make factual findings and final determinations regarding the admission and

employment of skilled foreign workers.  *See* 8 U.S.C. §§ 1103(a)(1), 1182(a)(5), 1182(n),

1184(c).  Congress further directed that the Secretary of Homeland Security "shall" extend the

stay of H-1B workers whenever they meet specific conditions in pursuing permanent resident

status.  *See* AC21, Pub. Law No. 106-313, § 106(b); *see also* 8 U.S.C. § 1184(n).  Those congressional delegations to agency heads to make determinations under statutory standards renders the agencies' certifications and decisions with respect to H-1B workers categorically distinct from the non-statutory role the Department of State played in *Detroit International Bridge*.  In that connection, the H-1B *Panda* Plaintiffs already have approved labor condition applications and approved H-1B petitions, and many have approved immigrant visa petitions.  Despite those approved certifications and petitions, Defendants have abrogated or suspended the approvals based on Proclamation 10052 and without any further justification under the statutory provisions authorizing those approved certifications and petitions.  Based on those statutory standards and conditions imposed on the agency heads in this case, the holding in *Detroit International Bridge* has no application here and Defendants' reliance on that decision fails.

> **B.  Plaintiffs Are Challenging Final Agency Actions**

As an additional threshold issue, Defendants contend that Plaintiffs' case does not involve final agency actions because they are supposedly only challenging Proclamation 10052, which by Defendants' account is not reviewable.  ECF No. 94 at 49.  However, the supposition that the Proclamation itself is not reviewable is inconsistent with *Trump v. Hawaii* where the Court reviewed directly the legality of the President's Proclamation issued under Section 1182(f).  *See* 138 S. Ct. at 2403; *see also Doe v. Trump*, 957 F.3d 1050, 1064 (9th Cir. 2020).  But even if the Proclamation itself were not subject to direct review, the government's argument still fails because it completely ignores *Chamber of Commerce v. Reich* and other authorities, discussed above, providing for a cause of action to challenge an agency official's execution of the Presidential directive.  *See Chamber of Commerce*, 74 F.3d at 1328.  Defendants' brief is tellingly silent on the application of *Chamber of Commerce* in this case.

Relatedly, Defendants acknowledge that the *Panda* Plaintiffs are challenging the Department of State's decisions to withhold adjudication of Plaintiffs' visa applications, but Defendants completely neglect to address that argument.  ECF No. 94 at 48.  Rather, they respond to an argument made by other Plaintiffs under different statutory and regulatory provisions by contending that a decision on an *immigrant* visa application is not required by law. *Id*. at 66-69.  That argument falters against those other plaintiffs, but an extension of Defendants' argument to the *nonimmigrant* visa context fails as well against the *Panda* Plaintiffs.

The statute provides that "[a]ll nonimmigrant visa applications *shall* be reviewed and adjudicated by a consular officer."  8 U.S.C. § 1202(d) (emphasis added).  The related regulation mandates that when a consular officer receives a completed DS-160 application she "must either issue or refuse the visa."  22 C.F.R. § 14.121(a).  Despite the binding nature of that regulation, *see U.S. v. Haggar Apparel Co*., 526 U.S. 380, 391 (1999), the consulates are withholding the adjudication of, or refusing to issue decisions on, Plaintiffs' applications based on Proclamation 10052.  Because "agency action" encompasses a "failure to act," 5 U.S.C. § 551(13), a failure to act amounts to consummated agency action that is final, notwithstanding the fact that the agency did nothing, which allows a party to seek relief under the APA.  *See* 5 U.S.C. § 706(2)(A); *Alliance to Save the Mattaponi v. U.S. Army Corps of Engineers*, 515 F. Supp. 2d 1, 10 (D.D.C. 2007).  Thus, Defendants fail to avoid review in connection with the consulates' withheld adjudications of nonimmigrant visa applications.

Nor have Defendants established that the effect of Proclamation 10052 is not the consummation of an agency decision making process from which legal consequences flow.  *See U.S. Army Corp of Engineers v. Hawkes*, 136 S. Ct. 1807, 1813 (2016).  Plaintiffs already received specific indications from the consulates that Proclamation 10052 operates to withhold

processing of their pending applications.  *See Panda* Appendix 220, 331, 648; *see also Panda*

Docket, ECF No. 24-1 (Exhibit A); Exhibit B (attached).  Relatedly, the documents produced in

the Administrative Record indicate that the Department of State has directed the consulates not

to issue or print visas for those individuals covered by Proclamation 10052.  Amended

Administrative Record (AR) 30, 61, 95, 156, 271.  The documents in the record also indicate that

the Assistant Secretary for Consular Affairs, acting on delegated authority from the Secretary of

State, AR 76, issued directives that Proclamation 10052 applies except in limited cases where he

is "permitting" consular officers to apply the exceptions he created.  AR 54, 129, 138, 148.  As a

result, Proclamation 10052, as implemented through the Assistant Secretary, constitutes a

definitive statement of Defendants' legal position regarding whether the processing of visa

applications must be withheld as against the Plaintiffs.  Those decisions and directives constitute

a consummated agency decision making process.  *See CSI Aviation Serv. v. DOT*, 637 F.3d 408,

412 (D.C. Cir. 2011).[1]

Additionally, when the Department of State first implemented Proclamation 10052, it

decided to withhold adjudication as directed by the Proclamation and it so informed the

Plaintiffs.  *See* AR 156; *Panda* Docket, ECF No. 24-1 (Exhibit A).  Despite crafting further

exceptions to the Proclamation, the Department of State is still withholding adjudication.  AR

148-151; Exhibit B.  On that basis, the Proclamation and its implementation have an immediate

and continuing impact on Plaintiffs in the form of withholding adjudications that are otherwise

---

[1] Defendants essentially concede this point by contending in another connection that the
consulates are legally precluded by statute from issuing visas "barred" by the Proclamation
issued under Section 1182(f).  *See* ECF No. 94 at 60-61 (relying on 8 U.S.C. § 1201(g)).  That
argument is based on a flawed begging of the question because it assumes the validity of the
Proclamation that is under review through an *ultra vires* claim.  However, despite its logical
flaw, Defendants' argument demonstrates that they believe Plaintiffs' withheld visa
adjudications under the Proclamation are final agency actions.

required by the regulation to be completed.  But for the Proclamation the consulates under the binding regulation would have already issued decisions on Plaintiffs' applications.  *See Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 584 (4th Cir. 2017), *limited on other grounds by Trump v. Int'l Refugee Assistance Project,* 137 S. Ct. 2080 (2017).  Those consequences have a direct bearing on Plaintiffs by placing a legal prohibition on their travel back to the United States, *see* 8 U.S.C. §§ 1182(a)(7)(B)(i), 1225(b)(1)(A), which renders the Defendants' actions final for purposes of judicial review.  *See Safe Extensions v. FAA*, 509 F.3d 593, 598 (D.C. Cir. 2007) (advisory circular was final agency action because it prohibited specified conduct).

In arguing against the *Gomez* Plaintiffs, Defendants suggest that the recently crafted exceptions to Proclamation 10052 undercut any allegations of harm to the Plaintiffs because some H-1B visa applicants may qualify for an exemption.  *See* ECF No. 94 at 87-88.  That argument is not workable in general, and fails more specifically to undercut finality, because it presumes that an illegal procedure can render an agency action non-final.  Because Plaintiffs would have had decisions on their applications but for the *ultra vires* Proclamation issued contrary to the INA, Defendants cannot rely on a procedure implementing an *ultra vires* Proclamation as an obstacle to undercut the finality of the agency's action.  *Cf. Leedom v. Kyne*, 358 U.S. at 187-88.

Even if the Department of State's recent exceptions were legitimate, they do not serve to render the consulate's withholding of adjudication non-final.  The Assistant Secretary issued mandatory directives for how to implement the Proclamation through specifically defined exemptions thereby narrowing the scope of the consulate's ability to issue decisions on H-1B visa applications.  AR 54-55.  That narrowing of the consulate's ability to adjudicate applications

10

constitutes a final agency action with immediate and ongoing consequences for the Plaintiffs.
*See NRDC v. EPA*, 643 F.3d 311, 319-20 (D.C. Cir. 2011).  For that reason, the finality of the
Department of State's actions in implementing the Proclamation is inescapable as a general
matter, but is further undeniable for many of the H-1B *Panda* Plaintiffs who do not even qualify
for an exemption.  Exhibit B.  Those legal consequences for the *Panda* Plaintiffs are not subject
to any legitimate dispute.

### C.  Consular Non-Reviewability Does Not Apply

Defendants also claim that the Court is precluded from reviewing the actions of the
Department of State based on the doctrine of consular non-reviewability.  *See* ECF No. 94 at 46-
47.  But that defense fails for the simple reason that it is based on an erroneous factual predicate.
Contrary to Defendants' characterizations, Plaintiffs are not challenging visa denials.  *See, e.g.,*
*Panda* Compl., ECF No. 1 ¶¶ 252-253.  Rather, they challenge the consulates' refusals to make
decisions, or withhold adjudications, on their visa applications owing to Proclamation 10052.
*See Panda* Am. Memo., ECF No. 8 at 13, 44.  The failure of the consulates to conclude a
decision on Plaintiffs' applications is confirmed by the notices Plaintiffs received from the
consulates indicating that the Department of State will not issue visas due to Proclamation
10052.  *See* Panda Docket, ECF No. 24-1 (Exhibit A); *see also* Exhibit B.

The consulates' notice of non-issuance of visas constitutes a failure to act because
withholding an adjudication is neither a refusal nor an issuance of a visa under the regulation.
*See* 22 C.F.R. § 41.121(a).  Under those circumstances, the doctrine of consular non-
reviewability does not apply because when the government simply declines to provide a
decision, it is not exercising its prerogative to grant or deny applications, but rather failing to act

at all.  *See Moghaddam v. Pompeo*, 424 F. Supp. 3d 104, 114-15 (D.D.C. 2020).  Thus, the government's consular non-reviewability defense fails.

Yet, even if the consulates' withholding decisions constituted visa refusals under Proclamation 10052, the doctrine of consular non-reviewability still would not apply.  Rather, that doctrine is only effective where the government has shown a facially legitimate and *bona fide* reason for a visa denial.  *See Kerry v. Din*, 135 S. Ct. 2128, 2140 (2015) (Kennedy, J., concurring).[2]  The withholding of visas in this case cannot be facially legitimate because the consulates' actions are based on an *ultra vires* Proclamation issued contrary to the INA.  *See Panda* Am. Memo., ECF No. 8 at 37-44.  Unlike the situation in *Din* where the consulate indicated the applicant's inadmissibility on terrorism-related grounds under the statute, *see Din*, 135 S. Ct. at 196, the consulates in this case cited as the basis for their withholding of visas Proclamation 10052, despite Plaintiffs' qualifying for the issuance of visas based on their already approved labor condition applications and H-1B petitions.  *Compare Panda* Appendix *with* Exhibits A and B.  Thus, the consulates' decisions in this case are not facially legitimate.

Moreover, the consulates' decisions are not *bona fide* because Plaintiffs have already made a *prima facie* showing of bad faith in the consulates' withholding adjudication based on a flat contradiction stated in Proclamation 10052.  *Cf. International Refugee Assistance Project*, 857 F.3d at 592; *Panda* Am. Memo., ECF No. 8 at 25, 47.  Proclamation 10052 states that suspending the entry of H-1B non-immigrant workers will supposedly address the historical

---

[2]  Justice Kennedy's concurrence is the controlling opinion in *Din*.  When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those members who concurred in the judgments on the narrowest grounds.  *See Marks v. United States*, 430 U.S. 188, 193 (1977); *see also Cardenas v. United States*, 826 F.3d 1164, 1171 (9th Cir. 2016) (holding that Justice Kennedy's concurrence in *Din* controls).

disadvantage that domestic workers without college degrees face in competing for job opportunities. 85 Fed. Reg. at 38264. But H-1B classification presupposes as a legal predicate that the employer's job opportunity requires a bachelor's degree as a minimum qualification for entry into its position. 8 U.S.C. § 1184(i)(1). By definition, the consulates' suspending the entry of H-1B non-immigrants cannot help persons without a college degree find employment. To the contrary, findings by the Department of Homeland Security show that the employment of skilled foreign workers helps domestic job growth. *See* 81 Fed. Reg. at 82469; 80 Fed. Reg. at 10295, 10309. Because withholding the adjudication of Plaintiffs' applications cannot legally achieve the stated goal of expanding job opportunities, and further defeats that stated goal, the consulates have engaged in *prima facie* discriminatory and restrictive conduct not sanctioned by the INA. *Cf. Gate Guard Serv. v. Perez*, 792 F.3d 554, 562-63 (5th Cir. 2015) (bad faith conduct under EAJA where agency engaged in abusive tactics and pursued litigation despite overwhelming contradictory evidence). Thus, the withholding of decisions on Plaintiffs' applications does not have a *bona fide* basis, which defeats the government's consular non-reviewability defense.

### D.  Proclamation 10052 and its Implementation are *Ultra Vires*

Defendants contend, contrary to *Trump v. Hawaii* and other authroties, that Proclamation 10052 is valid because the President's authority under Section 1182(f) is unbounded. ECF No. 94 at 49-51. Defendants' overarching theme that the President is limitless in his authority to act under Section 1182(f) has no basis in law.

Contrary to Defendants' invitation for judicial abdication in this area, the Supreme Court has made clear that despite the political branches' plenary power over immigration, that power is still subject to important constitutional limitations. *See Zadvydas v. Davis*, 533 U.S. 678, 695 (2001). Relatedly, the President does not have exclusive plenary authority over immigration

because that power is within the primary ambit of Congress.  *See* U.S. Const. Art. I, § 8, cl. 4; *Kleindienst v. Mandal*, 408 U.S. 753, 766 (1972) (Congress' plenary power); *Knauff v. Shaughnessy*, 338 U.S. 537, 542-43 (1950) (Congress may place the decision to admit or to exclude with the President); *see also Federalist* No. 69 at 421 (Hamilton) (Clinton Rossiter ed. 1999) (unlike a monarch, the president cannot confer privileges by making denizens of aliens). The President may exercise delegated authority from Congress to regulate immigration, but his power is limited and defined by statute.  *See Doe*, 957 F.3d at 1066-67; *cf. Hamdan v. Rumsfeld*, 548 U.S. 557, 593 n.23 (2006) ("Whether or not the President has independent power, absent congressional authorization, to convene military commissions, he may not disregard limitations that Congress has, in proper exercise of its own war powers, placed on his powers.").  The Supreme Court recently confirmed the statutory limit on the President's authority over immigration by proceeding on the assumption that Section 1182(f) does not allow the President expressly to override particular provisions of the INA.  *See Trump v. Hawaii*, 138 S. Ct. at 2411.

Nor is the limit on the President's power in terms of other provisions of the INA undercut by the cases Defendants cite in advocating for Presidential absolutism.  Unlike the highly reticulated statutory provisions in the INA relating to the admission and employment of skilled foreign workers, *see* 8 U.S.C. §§ 1182(a)(5)(A), 1182(n), 1184(i), the statutory grants of authority at issue in *George S. Bush* and *Dalton* were unlimited and left completely to the President's discretion with few, if any, statutory constraints.  *See Dalton v. Specter*, 511 U.S. 462, 476 (1994) ("The 1990 Act does not at all limit the President's discretion in approving or disapproving the Commission's recommendations."); *United States v. George S. Bush & Co*., 310 U.S. 371, 378-79 (1940) ("There is no express provision in the Act that the rate of exchange must be taken for the same period as the invoice prices. [. . .]  The matter was left at large.").

Setting aside the absolutist claims for Presidential power underlying Defendants' arguments, their specific defenses of the Proclamation also fail.  On the merits, Defendants argue that the Court is not authorized to probe the factual findings underlying the Proclamation.  ECF No. 94 at 52.  Although that argument is dubious, it does not address the claims in *Panda* because, unlike the *Gomez* Plaintiffs, the *Panda* Plaintiffs are not challenging the factual assumptions regarding the temporary decline in employment rates due to COVID-19.  Rather, the *Panda* Plaintiffs claim that the Proclamation fails to take into account, as required by statute, the legal effect of the Department of Labor's certifications and related factual findings underlying the Department of Homeland Security's approvals of Plaintiffs' H-1B petitions, and in many cases, Plaintiffs' approved I-140 immigrant visa petitions.  *See Panda* Am. Memo., ECF No. 8 at 44-47.

As required by statute, the Department of Labor already certified that Plaintiffs would be paid prevailing wage rates, and in cases involving Plaintiffs with approved I-140 petitions, the Department of Labor already confirmed the lack of available United States workers.  *See Panda* Appendix; *see also* 8 U.S.C. §§ 1182(a)(5)(A), 1182(n)(1).  Relatedly, the Department of Homeland Security made factual findings that the retention of skilled foreign workers in the H-1B program who are pursuing permanent resident status advances the goals of Congress to promote domestic economic development.  *See* 81 Fed. Reg. at 82469; 80 Fed. Reg. at 10295, 10309.  As a result, the issue does not necessarily turn on the Proclamation's insufficient factual findings, although that may be another basis for error, but rather that the Proclamation contradicts or fails to take into account the legal effect of directly related factual findings of those charged with implementing the statutory provisions governing the employment of H-1B workers.  In other words, by negating the Department of Labor's certifications, the Proclamation

and its implementation override the applicable statutory provisions, which *Trump v. Hawaii* assumed is flatly prohibited.

Moreover, the Proclamation's purported goal of helping domestic workers without college degrees by excluding the entry of H-1B workers, *see* 85 Fed. Reg. at 38264, contradicts the statutory condition that H-1B workers are only occupying jobs that require a bachelor's degree. *See* 8 U.S.C. § 1184(i)(1). Similar to the Proclamation's contradicting the relevant certifications already made by those with delegated authority under the statute, the supposed sufficiency of the factual projections is not the issue. Rather, the Proclamation's factual projection fails legally to have any meaning. Suspending the entry of H-1B workers cannot by definition help those without college degrees occupy jobs for which they are not qualified. As a result, the Proclamation has suspended the entry of H-1B workers contrary to the statutory definition and in violation of the congressional directive to ensure the retention of skilled foreign workers to occupy complex jobs to advance the domestic economy.

The *Panda* Plaintiffs relatedly show that the INA bears in its text and purpose the legislative compromises that Congress balanced between competing interest groups to determine how best to regulate the domestic economy by encouraging and providing for the entry of skilled foreign workers. *See* 8 U.S.C. § 1182(n)(1); Pub. Law No. 106-313, § 106(a)-(b) (Oct. 17, 2000); Pub. Law No. 107-273 § 11030A(a)-(b) (Nov. 2, 2002); Senate Report No. 106-260, at 11, 22 (Apr. 11, 2000); 81 Fed. Reg. at 82408-11. Proclamation 10052 and its application by Defendants subvert that careful balance by precluding the entry of H-1B workers with approved petitions, many of whom are the beneficiaries of approved immigrant visa petitions that stem from their employers' Department of Labor-authorized recruitment efforts to locate United States workers. *See Ragsdale v. Wolverine World Wide*, 535 U.S. 81, 93-94 (2002).

Defendants attempt to counter Plaintiffs' argument that Proclamation 10052 is *ultra vires* by incorrectly stating that the Supreme Court already rejected a similar challenge.  ECF No. 94 at 58.  Defendants' argument on this point fails by turning on a false analogy.  They cannot analogize the terrorism-related proclamation in *Trump v. Hawaii* with Proclamation 10052's excluding the entry of H-1B workers for the simple reason that the terrorism-related proclamation put in place a fact-gathering initiative in an area left largely undefined by Congress.  *See* 138 S. Ct. at 2412 ("Nor did Congress attempt to determine – as the multi-agency review process did – whether those high-risk countries provide a minimum baseline of information to adequately vet their nationals").  As a result, the vetting system under the proclamation in that case was well within the limits of Section 1182(f) because "this is not a situation where 'Congress has stepped into the space and solved the exact problem'."  *Id.*

Unlike the proclamation in *Trump v. Hawaii*, Proclamation 10052 does not advance an individual case-by-case approach for determining inadmissibility, but rather supersedes express provisions of the INA that determine the conditions for admitting skilled foreign nationals to perform labor or services on temporary and permanent bases.  Moreover, unlike the proclamation related to terrorism concerns, Proclamation 10052 runs afoul of 8 U.S.C. §§ 1182(a)(5)(A), 1182(n)(1), and AC21 because "Congress has stepped into the space [pertaining to H-1B skilled workers] and solved the exact problem" by balancing the interests between the need for skilled foreign labor and protections for the domestic labor market.  The terrorism-related proclamation filled in the details left open by Congress where Proclamation 10052 negates Congress' carefully crafted balance that addresses the exact issue the President has decided to regulate in a contrary manner.  Thus, Proclamation 10052 cannot stand because the executive's power does not include

the authority to negate Congress's choices.  *See Ragsdale*, 535 U.S. at 93-94; *Util. Air Regulatory Group v. EPA*, 573 U.S. 302, 324 (2014).

Defendants attempt to avoid this problem by suggesting that Proclamation 10052 simply adds permissible conditions for determining the admissibility of foreign nationals.  ECF No. 94 at 59-60.  But Defendants' argument fails because unlike the other proclamations it cites, *id*., Proclamation 10052 does not simply add further admissibility conditions in a space left open by Congress.  Rather, Proclamation 10052 negates the Department of Labor's certifications made pursuant to statutory authority and despite those certifications lays down a blanket prohibition against all H-1B workers who are seeking to return to the United States in cases where they do not already have visas.  *See* 85 Fed. Reg. at 38264; *see also* Exhibit B.

Nor can Defendants legitimately rely on additional exemptions to the Proclamation put forward by the Assistant Secretary of State.  AR 148-151; *see also* ECF No. 94 at 87-88.  The exceptions are irrelevant to the majority of the *Panda* Plaintiffs because the government is apparently contending that those exemptions do not apply to many of them.  Exhibit B.  But even if the exemptions applied to some of the *Panda* Plaintiffs, those exemptions do not merely enhance the admissibility standards left undefined by Congress.  Rather, they supplant the detailed standards that Congress expressly laid down as a balance between competing interests thereby rendering the statute unrecognizable.  *See Util. Air Regulatory Group*, 573 U.S. at 324.

For the same reason, Defendants' argument regarding the President's supposed power over the domestic economy under Section 1182(f) fails.  ECF No. 94 at 54.  Defendants cannot legitimately argue that the President has an implied power to regulate domestic economic relations because the issue was already well settled as a constitutional matter that the President has no inherent authority to regulate foreign or domestic commerce.  *See* U.S. Const., Art. I, § 8,

cl. 3; *Youngstown Sheet & Tube*, 343 U.S. at 588-89; *Federalist* No. 69 at 421 (Hamilton)

(Clinton Rossiter ed. 1999) (the President can prescribe no rules concerning the commerce).  In

order to obscure the President's obvious unconstitutional regulation of domestic economic

affairs, Defendants contend that anything immigration-related is a foreign issue that triggers the

President's supposed unfettered, inherent authority to do whatever he pleases even if it overlaps

with the domestic affairs that Congress already regulated in detail by statute.  ECF No. 94 at 54.

However, Defendants have not cited any dispositive authority for their sweeping proposition.

The authority Defendants cite in support of broad presidential powers is *Knauff v.*

*Shaghnessy*, but that case cannot bear the weight Defendants place on it because *Knauff* did not

involve the intersection between immigration and the domestic economy.  338 U.S. at 540-42.

Rather, that case upheld a pre-INA delegation of authority from Congress to the President to

impose additional restrictions on the entry of foreign nationals during a national emergency that

was identified in the legislation.  *Id*. at 540-41.  Unlike the situation in *Knauff*, the Proclamation

in this case does not act upon a congressionally identified emergency and goes much further in

substance than the proclamation in *Knauff* by supplanting the detailed congressional regulations

and policies to obtain and retain skilled foreign workers for domestic economic reasons.[3]

---

[3] Defendants' apparent attempt to rely on historical practice also fails.  The proclamations that Defendants cite as supposed examples of the President regulating the domestic economy through Section 1182(f) do not involve the regulation of commerce at all.  *See* ECF No. 94 at 55.  Rather, those proclamations by Defendants' own characterization simply exclude undocumented persons from entering the United States.  *Id*.  Excluding undocumented aliens who are not authorized to work in the United States under the INA bears no relation to the more sweeping power coveted by Proclamation 10052 to preclude the entry of foreign nationals seeking to return to the United States to work under already approved petitions granted through a detailed statutory process intended to develop the domestic economy.

Defendants also fail successfully to distinguished *Doe v. Trump*, which held that the plaintiffs in that case are likely to succeed on the merits of their challenge to another proclamation that eviscerates the statutory scheme governing admissibility determinations relating to the public charge rule. 957 F.3d at 1064. In that case, the Ninth Circuit held that Section 1182(f) does not provide the President with limitless power to deny visas to immigrants based on purely long-term domestic economic concerns. *Id*. at 1065, 1067. That holding easily extends to the overreaching of Proclamation 10052 and its domestic economic rationale for displacing Congress's detailed statutory scheme governing the employment of H-1B workers. However, Defendants apparently fail to address the Ninth Circuit's holding in *Doe* on that issue, and instead limit their attack to the reasoning of the district court. *See* ECF No. 94 at 57.

In the end, the basic flaw with Defendants' argument is that it leaves the President's power under Section 1182(f) without any discernable limits, extending even to domestic economic affairs. Defendants' refusal to recognize any limiting principle to the President's power under Section 1182(f) is a self-defeating proposition. The Constitution establishes that the President is not a lawmaker, *see Youngstown Sheet & Tube*, 343 U.S. at 588-89, and he lacks the inherent power to suspend legislation. *See Kendell*, 37 U.S. at 612-13. Nor does the executive branch have the power to negate provisions of the INA that Congress laid down in detailed form. *See Doe,* 957 F.3d at 1066-67; *Util. Air Regulatory Group*, 573 U.S. at 324. Defendants' entire argument must fail because the Supreme Court has already rejected the notion that the executive branch has the power to tailor legislation to bureaucratic policy goals by rewriting the statute under which it purports to act. *See Util. Air Regulatory Group*, 573 U.S. at 325. On that basis, the Court must impose the well-recognized limits on the executive to avoid a slide into unfettered Presidential powers.

### E.  The Court Has Equitable Power to Enter a Preliminary Injunction

In a final effort to avoid judicial scrutiny of Defendants' *ultra vires* conduct in this case, they make the novel argument that this Court lacks the authority to enter a preliminary injunction against consular posts.  ECF No. 94 at 90.  Defendants' argument on that point appears to be directed at the *Gomez* Plaintiffs, but the *Panda* Plaintiffs will address the argument for the purpose of clarifying that no legal impediment prevents the Court from granting the *Panda* Plaintiffs relief in the form of an injunction prohibiting Defendants from applying Proclamation 10052 when adjudicating their pending visa applications.[4]

Defendants rely on *Trump v. International Refugee Assistance Project* to argue against the entry of a preliminary injunction, but the holding of that case specifically permits an injunction in favor of foreign nationals like the *Panda* Plaintiffs who have a *bona fide* relationship with a person or entity in the United States.  *See* 137 S. Ct. at 2088-89.  In that case, the Supreme Court stayed preliminary injunctions against a prior proclamation as applied to foreign nationals abroad who have no connections with the United States.  *Id*.  But the Court allowed the preliminary injunctions against the proclamation in favor of foreign workers who accepted an offer of employment from an American company.  *Id*.  All of the *Panda* Plaintiffs fit within the Supreme Court's narrowed injunction because they either seek to return to the United States to resume employment with their United States employers under already approved H-1B petitions or they seek to rejoin family members in the United States (or both).  Thus, *International Refugee Assistance Project* supports the *Panda* Plaintiffs' requested relief based on their ties to family or entities in the United States.

---

[4]  Plaintiffs also request that the Court enjoin Defendants from applying Proclamation 10052 as a basis for precluding their admission into the United States after they obtain visas and then apply for re-entry to the United States.  *See Panda* Docket, Proposed Order, ECF No. 3-2.

Defendants also appear to make the curious argument that the APA does not authorize the Court to enter a preliminary injunction.  ECF No. 94 at 92.  That argument fails as a matter of text and history because as Defendants acknowledge, the APA allows for the entry of equitable relief.  *See* 5 U.S.C. § 703.  The APA incorporated the common law forms of action that the courts historically used to review agency action, *see INS v. Doherty*, 502 U.S. 314, 330 (1991) (Scalia, J., concurring); Tom C. Clark, *Attorney General's Manual on the Administrative Procedure Act* 97 (Dep't of Justice 1947), including the equity injunction as a form of action for judicial review.  *See* 5 U.S.C. § 703; *McAnnulty*, 187 U.S. at 110; Kenneth Culp Davis, *Administrative Law* 729-32 (West 1951).  In addition, the APA authorizes the Court to review an agency's failure to exercise discretion to determine whether such inaction is arbitrary and capricious, *see* 5 U.S.C. § 706(2)(A), which undercuts Defendants' argument that there is no basis for relief under the APA.  *See Alliance to Save the Mattaponi*, 515 F. Supp. 2d at 10.  And even if the Court's equitable relief must be narrowly tailored as Defendants contend, relief in equity for the *Panda* Plaintiffs still applies based on their ties to family and employers in the United States.  *See International Refugee Assistance Project*, 137 S. Ct. at 2088-89.[5]

---

[5]  The APA also authorizes the Court to "issue all necessary and appropriate process . . . to preserve status or rights pending conclusion of the review proceedings."  5 U.S.C. § 705.  Although that provision might not permit the Court to grant benefits, *see* Clark, *Attorney General's Manual* at 105, the *Panda* Plaintiffs are not asking for the granting of benefits.  Rather, they seek to enjoin Proclamation 10052 and its application so that the Department of State will cease withholding adjudications of their applications.

Based on the foregoing and the arguments set forth in the Plaintiffs' supporting amended memorandum (*Panda* Docket, ECF No. 8), the Court should grant the *Panda* Plaintiffs' motion for a preliminary injunction.

Dated:  August 24, 2020               Respectfully submitted,

BRADLEY B. BANIAS
Wasden Banias LLC

s/Geoffrey Forney
GEOFFREY FORNEY
Bar No. PA0088
Wasden Banias LLC
411 West Ellet Street
Philadelphia, PA 19119
202-615-8315/ geoff@wasdenbanias.com

Attorneys for the *Panda* Plaintiffs

23

<u>CERTIFICATE OF SERVICE</u>

I certify that on August 24, 2020, I filed the forgoing PANDA PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR A PRELIMINARY INJUNCTION through the Court's CM/ECF system, which will provide notice and an electronic hyperlink to this document by automatic email transmission to the Defendants' attorneys of record in this case.

s/Geoffrey Forney<br>GEOFFREY FORNEY<br>Wasden Banias LLC