# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DOMINGO ARREGUIN GOMEZ, et al.,** | ) | **DEFENDANTS'** |
| | ) | **SUPPLEMENTAL NOTICE** |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | Case No. 20-cv-01419 (APM) |
| | ) | |
| **DONALD J. TRUMP, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |
| **MOHAMMED ABDULAZIZ** | ) | |
| **ABDUL MOHAMMED, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | Case No. 20-cv-01856 (APM) |
| **v.** | ) | |
| | ) | |
| **MICHAEL R. POMPEO, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| **AFSIN AKER, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | Case No. 20-CV-01926 (APM) |
| | ) | |
| **DONALD J. TRUMP, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

| | | |
|---|---|---|
| **CLAUDINE NGUM FONJONG, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| | ) | Case No. 20-cv-02128 (APM) |
| **DONALD J. TRUMP, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **CHANDAN PANDA, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | Case No. 20-cv-01907 (APM) |
| | ) | |
| **CHAD F. WOLF, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

In an effort to provide the Court with accurate and current information, the Government provides this Notice in response to facts asserted by Plaintiffs during the August 27, 2020 consolidated hearing on the preliminary injunction motions and in Plaintiffs' notices, ECF Nos. 114 and 115. Defendants provide: (1) information on the status of U.S. consular operations pursuant to COVID-19 Guidelines; (2) a response to Plaintiffs' Notice, ECF No. 114, on certain Plaintiffs who claim to be "located within the United States"; (3) a response to Plaintiffs' Notice, ECF No. 115, on the number of diversity visas issued in July 2020; and (4) the state of consular operations at the U.S. Embassy and Consulate in New Zealand.

1. ***COVID-19 Consular Protocols.*** In response to concerns regarding the U.S. Department of State's COVID-19 Consular Protocols, the State Department advises that the

Administrative Record ("AR") reflects the following regarding the State Department's phased resumption of consular services at embassies and consulates:

On March 20, 2020, State Department directed all diplomatic and consular posts "to immediately suspend all routine visa services until further notice." AR12. Posts were required to "continue to provide the visa services described below, to the extent that staff who are required to report to posts for the performance of mission-critical or emergency services are able to do so." *Id*. This directive further advised that exceptions to Presidential Proclamations may be used "as a guide for additional mission-critical or emergency travelers." AR12. The National Visa Center (NVC) and Kentucky Consular Center (KCC) were instructed to "suspend most immigrant/diversity visa pre-processing," and that "any immigrant visa applicants whose appointments must be cancelled should be rescheduled by post at a later date once post resumes normal operations." AR13.

On April 25, 2020, State Department issued further guidance following the April 22, 2020 Presidential Proclamation. AR17. State Department advised that "[a]ll posts and [the American Institute in Taiwan] have already suspended routine nonimmigrant and immigrant visa services due to the COVID-19 pandemic, but continue to provide mission-critical and emergency visa services." *Id*. "Posts should continue to provide mission-critical and emergency visa services for applicants meeting the exception criteria to the COVID-19 P.P.s, including this new P.P., to the extent they are able, subject to local conditions and restrictions." *Id*.

On April 28, 2020, the State Department directed that "[t]he March 20 suspension of all routine visa services … remains in place," and that "[p]osts do not have the authority to resume normal visa operations even if the host country has lifted most restrictions." AR23. State Department advised that it was developing plans "for the resumption of services at overseas posts,

balancing the full range of interests, including: protecting Department personnel overseas; processing capacity at posts and in the Visa Office; conditions in the United States, including stay-at-home orders in many states; and economic considerations." *Id*. An updated list of categories deemed mission critical or emergency was provided. AR23-24.

On June 12, 2020, the State Department notified all posts by diplomatic cable that "Safety remains the Department's top priority[,]" and that "Posts should only schedule cases supported by appropriate levels of staffing and protections for mission staff and the public." AR26. The State Department repeated this direction to all consular posts on July 8, 2020. AR35-36.

Also on July 8, 2020, the State Department directed by diplomatic cable that "on July 15, 2020, posts may begin a phased approach to the resumption of routine visa services." AR35. This did not mean that all embassies and consulates immediately resumed such services. Rather the cable provided "guidance to the field to inform post decisions on which visa services they choose to resume during each phase … and depending on the specific conditions at each post." *Id*. The July 8 cable provided a description of the services that posts may provide for each of three phases of reopening to address health and safety, as well as backlogs. AR36-40. This cable further advised that all routine visa services can be resumed during Phase Three, and "[p]osts may consider gradually increasing these appointments to give staff time to adjust to new and increased workflows," with a suggested order of priority. AR38.

2.    ***Response to Plaintiffs' Notice, ECF No. 114.*** Plaintiffs identify six individuals in their supplemental filing and assert that they are "Plaintiffs located within the United States." *See* ECF No. 114. They contend that the Government is improperly applying Proclamation 10014 against these six individuals. *See* Ex. A, 8/27/20 Tr. at 118-119. The following provides an accurate representation of the status of the six individuals identified in Plaintiffs' Notice, ECF No. 114,

from records held by U.S. Citizenship and Immigration Services ("USCIS") and U.S. Customs and Border Protection ("CBP") and the State Department:

**Diego Barco Cuerpo** – entered the United States on February 8, 2020 on an E2 nonimmigrant, treaty-investor visa.  *See* Ex. B, Calixte Decl. ¶¶ 2-3; Ex. C, Chang Decl. ¶ 3. Mr. Cuerpo filed an I-485 application for adjustment of status to lawful permanent resident based on his diversity visa lottery selection, with USCIS on July 27, 2020 (11 days after Plaintiffs filed the *Mohammed* complaint). *See* Ex. C, Chang Decl. ¶ 3; Ex. D, Dus Decl. ¶ 2. Mr. Cuerpo's I-485 application remains pending. *Id*. In the complaint, Mr. Cuerpo alleged that he "has not been scheduled for an interview at an [sic] US Embassy or Consulate or issued a decision on his [DS-260 immigrant visa] application" submitted to the U.S. consular post. *Mohammed* Compl., ECF No. 5 at ¶ 360.

**Raefa Sufian Ibrahim Ghanayem** – entered the United States on July 4, 2020 on an L-2 nonimmigrant visa as the dependent of a temporary intracompany transferee. *See* Ex. B, Calixte Decl. ¶ 4; Ex. C, Chang Decl. ¶ 4; Ex. D Dus Decl. ¶ 3. There is no record of Ms. Ghanayem submitting an I-485 adjustment of status application to USCIS. *See* Ex. C, Chang Decl. ¶ 4. Government records indicate that Ms. Ghanayam departed the United States on August 27, 2020. *See* Ex. B, Calixte Decl. ¶ 5; Ex. C, Chang Decl. ¶ 4.

**Ahmad Salama** – entered the United States on an L-1A nonimmigrant intracompany transferee visa on July 4, 2020. *See* Ex. B, Calixte Decl. ¶¶ 6–7; Ex. C, Chang Decl. ¶ 4; Ex. D Dus Decl. ¶ 3. There is no record of Mr. Salama submitting an I-485 adjustment of status application to USCIS. *See* Ex. C, Chang Decl. ¶ 4. Government records indicate that Mr. Salama departed the United States on August 27, 2020. *See* Ex. B, Calixte Decl. ¶ 7; Ex. C, Chang Decl. ¶ 4.

**Talgat Tleubaev –** has been entering the United States on multiple occasions on a B2 nonimmigrant visitor visa since September 25, 2015. *See* Ex. D, Dus Decl. ¶ 5. Government records indicate that Mr. Tleubaev entered the United States as a B2 visitor on July 16, 2020. *See* Ex. C, Chang Decl. ¶ 6. There is no record of Mr. Tleubaev submitting an I-485 adjustment of status application to USCIS. *See id.*

**Madina Tleubaev (Umirzhanova) –** is the spouse of Talgat Tleubaev. Government records indicate that Ms. Tleubaev (Umirzhanova) was issued a B2 nonimmigrant visitor visa on September 25, 2015, and that she entered the United States on July 16, 2020. Ex. C, Chang ¶ 6; Ex. D, Dus Decl. ¶ 5. There is no record of Ms. Tleubaev (Umirzhanova) submitting an I-485 adjustment of status application to USCIS. Ex. C, Chang ¶ 6.

**Marc Cyrus** – Government records indicate that Mr. Cyrus entered the United States on September 1, 2020 and returned to Canada on September 2, 2020. Ex. B, Calixte Decl. ¶ 4. Government records indicate that Mr. Cyrus enters the United States on an almost daily basis from Canada. Ex. C, Chang ¶ 5. Government records indicate that Mr. Cyrus was refused a derivative diversity visa on December 5, 2019 (months before Proclamation 10014 was promulgated). *See* Dus Decl. ¶ 4. There is no record of Mr. Cyrus submitting an I-485 adjustment of status application to USCIS. *See* Ex. C, Chang Decl. ¶ 5.

**3.** ***Response to Plaintiffs' Notice, ECF No. 115.*** Plaintiffs assert that "over 159 Diversity Visas were issued in various posts in the month of July alone." ECF No. 115 at 2. This is inaccurate. The U.S. State Department's Consular Consolidated Database "reflects that all 159 diversity visas issued in July 2020 were *replacement immigrant visas that were issued to diversity visa applicants who had valid immigrant visas on April 23, 2020*." Ex. E, 2d Dus Decl. ¶ 2 (emphasis added).

4.    *The State of U.S. Consular Operations in New Zealand*.  During the August 27, 2020 hearing, the status of the U.S. Consulate in Auckland, New Zealand was addressed with speculation. *E.g.*, Ex. A, 8/27/20 Tr. at 31:10-15. As outlined above regarding COVID-19 consular protocols, that consulate's operations levels have fluctuated based on host-country conditions and its public-health advisories.

Specifically, the consulate in New Zealand "suspended all routine visa services due to the COVID-19 pandemic" on March 20, 2020. Ex. F, Glazeroff Decl. ¶ 3. "On July 20, 2020, the U.S. Consulate General in Auckland reopened to all routine visa services." *Id*. ¶ 4. The City of Auckland moved to Alert Level 3 on August 12, 2020. *Id*. ¶ 5. "Although U.S. diplomats in New Zealand are considered 'essential personnel' under local ordinances and permitted to travel to the office for emergencies even during Alert Level 3, the U.S. Consulate General in Auckland decided, for the health and safety of Consulate personnel and the public, to close to routine visa services so long as the City of Auckland was at Alert Level 3 or 4." *Id*. The City of Auckland moved to Alert Level 2 on August 30, 2020, and the U.S. Consulate General accordingly resumed all routine visa services the following day. *Id*. ¶ 6. In other words, the operational status of the U.S. Consulate in New Zealand has shifted based on the local conditions and public-health status.

September 3, 2020

ETHAN P. DAVIS
Acting Assistant Attorney General, Civil Division

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation, District Court Section

COLIN A. KISOR
Deputy Director

GLENN M. GIRDHARRY
Assistant Director

_/s/ Thomas B. York_
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
Washington, D.C. 20044
(202) 532-4142
Thomas.B.York@usdoj.gov

JULIAN M. KURZ
Trial Attorney

CHRISTOPHER T. LYERLA
Trial Attorney

JAMES J. WEN
Trial Attorney

_Attorneys for Defendants_

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2020, I electronically filed the foregoing document with the Clerk of the United States District Court for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

*/s/ Thomas B. York*
Trial Attorney
U.S. Department of Justice
Civil Division