**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DOMINGO ARREGUIN GOMEZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, et al., <br><br> Defendants. | **DEFENDANTS' RESPONSE TO PLAINTIFFS' EMERGENCY MOTION FOR TELEPHONE CONFERENCE.** <br><br> Case No. 20-cv-01419 (APM) |
| MOHAMMED ABDULAZIZ ABDUL MOHAMMED, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL R. POMPEO, et al., <br><br> Defendants. | Case No. 20-cv-01856 (APM) |
| AFSIN AKER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, et al., <br><br> Defendants. | Case No. 20-CV-01926 (APM) |

| | |
|---|---|
| **CLAUDINE NGUM FONJONG, et al.,**  )<br>)<br>**Plaintiffs,** )<br>**v.** )<br>)<br>**DONALD J. TRUMP, et al.,** )<br>)<br>**Defendants.** )<br>)<br>)<br>) | Case No. 20-cv-02128 (APM) |
| **CHANDAN PANDA, et al.,** )<br>)<br>**Plaintiffs,** )<br>)<br>**v.** )<br>)<br>**CHAD F. WOLF, et al.,** )<br>)<br>**Defendants.** )<br>)<br>) | Case No. 20-cv-01907 (APM) |

Pursuant to the Court's Minute Order, September 11, 2020, the Government provides this response to the following issues identified in Plaintiffs' motion for an emergency status conference. *See* ECF No. 127. The Government will address: (1) Plaintiffs' allegations regarding the potential refusal of diversity visas to individuals subject to the five regional COVID-19 proclamations; (2) Plaintiffs' allegations regarding the refusal to re-issue diversity visas beyond the end of the fiscal year deadline, September 30, 2020; (3) Plaintiffs' allegations regarding the refusal to extend the validity of medical examinations; (4) Plaintiffs' allegations regarding the refusal to process non-plaintiff DV applications that are still at the KCC; and (5) Plaintiffs' allegations regarding the refusal to allow emergency visa processing in Cuba and Azerbaijan, which have closed their borders due to COVID-19.

2

A.     **The Preliminary Injunction Order and Subsequent Actions by the State Department.**

On September 4, 2020, this Court issued an order granting in part and denying in part Plaintiffs' motions for a preliminary injunction in these consolidated cases. ECF No. 123 (the "PI Order"). Specifically, the Court ordered Defendants to "undertake good-faith efforts … to expeditiously process and adjudicate DV-2020 diversity visa and derivative beneficiary applications and issue or reissue diversity and derivative beneficiary visas to eligible applicants by September 30, 2020 …." *Id*. at 84. The PI Order further states, "this order does not prevent any embassy personnel, consular officer, or administrative processing center from prioritizing the processing, adjudication, or issuance of visas based on *resource constraints, limitations due to the COVID-19 pandemic, or country conditions*." *Id*. (emphasis added).

The following day, September 5, 2020, the State Department began developing guidance to implement the PI Order for its worldwide operations. Anticipating that some DV applicants may reside in a consular district of a U.S. embassy or consulate that would be unable to process their applications due to COVID-19 and/or country conditions, on September 8, 2020, government counsel forwarded a spreadsheet prepared by the State Department to the *Gomez*, *Aker*, *Mohammed*, and *Fonjong* plaintiffs' counsel requesting top three rank-ordered alternate posts for individual plaintiffs whose applications remain with the Kentucky Consular Center (KCC).[1]

On September 9, 2020, the State Department issued a cable providing guidance to all consular posts regarding the implementation of the PI Order to process DV applications, hosted a worldwide webinar for Department employees, and released public guidance on its website, which

---

[1] On September 11, 2020, parties on both sides identified errors in the spreadsheet in that it inadvertently omitted a number of named plaintiffs whose applications are pending at the KCC. These issues are in the process of being rectified and the lists are being reconciled. On September 11 and 12, 2020, counsels for *Mohammed*, *Fonjong*, and *Aker* provided lists of their individual plaintiffs.

includes a prioritization plan for processing DV cases consistent with the Court's order. *See* U.S. DEPARTMENT OF STATE, "Diversity Visa DV-2020 Update" https://travel.state.gov/content/travel/en/News/visas-news/diversity-visa-DV-2020-update.html, Sept. 9, 2020, (Last Accessed Sept. 14, 2020). Staff at the Department's headquarters has been actively coordinating with staff at consular sections processing immigrant visas at U.S. embassies and consulates around the world to cancel existing visa appointments, making slots available to schedule DV applicants, and attempting to reserve sufficient appointments to ensure that plaintiffs are given highest priority over other DV applicants.

**B.      Plaintiffs' motion for an "emergency" status conference.**

On September 10, 2020, government counsel received an email from the *Aker* plaintiffs' counsel regarding the State Department's implementation of the PI Order and its public guidance on the website. *See generally* ECF No. 127-1. On September 11, 2020, while government counsel and the State Department were still reviewing issues raised in the email, the *Aker* and *Gomez* plaintiffs filed a motion for an emergency status conference. *See* ECF No. 127. In their motion, Plaintiffs contend that "the September 9 guidance states that notwithstanding the Court's order, many DV2020 selectees will not be issued a visa, or will otherwise not be able to use that visa to enter the United States in the future, and will therefore be permanently deprived of the benefit of the diversity visa and of the Court's Order." *Id.* at 2-3.

**C.      The Government's response to Plaintiffs' motion.**

**1.      *The Regional COVID-19 Proclamations*.** Plaintiffs assert that "Defendants are erroneously applying the Regional COVID Proclamations' conditions on *entry* to the *issuance of visas* under this Court's Order." ECF No. 127 at 3 (emphasis in original). That is not the case. As a preliminary matter, the only proclamations that are being challenged are Proclamations 10014

and 10052. The PI Order does not require the State Department to set aside its operational guidance or decades-long interpretation of 8 U.S.C § 1182(f) with regard to any other of the dozens of presidential proclamations in effect, including any of the five COVID-19 regional proclamations or Presidential Proclamation 9645, which was reviewed by the Supreme Court in *Trump v. Hawaii*, 138 S. Ct. 2392 (2018). For a list of presidential proclamations issued pursuant to 8 U.S.C § 1182(f), *see* Ben Harrington and Theresa Reis, Cong. Research Serv., LSB10458, Presidential Actions to Exclude Aliens Under INA § 212(f) (2020) available at [crsreports.congress.gov › pdf › LSB › LSB10458](crsreports.congress.gov) (last accessed September 14, 2020). The Department is not only justified in enforcing the regional COVID-19 proclamations consistent with the implementation procedures those proclamations ordered it to devise, *see*, *e.g.*, Sec. 3(a) of Presidential Proclamation 9993, it is obligated to.

In response to the global COVID-19 pandemic, the President signed five regional proclamations suspending entry into the United States of aliens who were physically present in the relevant region within 14 days preceding entry or attempted entry into the United States. *See* U.S. DEPARTMENT OF STATE, "Presidential Proclamations on Novel Coronavirus" [https://travel.state.gov/content/travel/en/News/visas-news/presidential-proclamation-coronavirus.html](https://travel.state.gov/content/travel/en/News/visas-news/presidential-proclamation-coronavirus.html), last updated June 29, 2020 (last accessed September 14, 2020) (collectively the "COVID-19 regional proclamations"). On January 31, 2020, the President signed Proclamation 9984 suspending entry into the United States of aliens who were physically present in the People's Republic of China, excluding Hong Kong and Macau, within the 14 days preceding entry or attempted entry into the United States. *See generally* 85 Fed. Reg. 6709. On February 29, 2020, the President signed Proclamation 9992 suspending entry of aliens physically present in Iran within 14 days preceding entry. *See generally* 85 Fed. Reg. 12855. On March 11, 2020, the President

signed Proclamation 9993 suspending entry of aliens physically present in the Schengen Area within 14 days preceding entry. *See generally* 85 Fed. Reg. 15045. On March 14, 2020, the President signed Proclamation 9996 suspending entry of aliens physically present in the United Kingdom and Ireland within 14 days preceding entry. *See generally* 85 Fed. Reg. 15341. Finally, on May 24, 2020, the President signed Proclamation 10041 suspending entry of aliens physically present in Brazil within 14 days preceding entry. *See generally* 85 Fed. Reg. 31933.

The State Department's public guidance on the implementation of the PI Order states the following:

> The five Regional COVID Proclamations that suspend entry of immigrants who were physically present in China, Iran, the Schengen Area, the UK, Ireland, or Brazil within 14 days of entry into the United States are still in effect and not the subject of the Court's order.  Thus, while DV applicants subject to a regional COVID Proclamation (China, Iran, the Schengen Area, the UK, Ireland, or Brazil) may be interviewed and processed, applicants who have been physically present in the affected region during the preceding 14-day period will not be issued an immigrant visa, unless excepted under the relevant proclamation or until they have been outside the affected region for 14 days.

U.S. DEPARTMENT OF STATE, "Diversity Visa DV-2020 Update" https://travel.state.gov/content/travel/en/News/visas-news/diversity-visa-DV-2020-update.html, Sept. 9, 2020, (Last Accessed Sept. 14, 2020).

Plaintiffs take issue with this guidance, *see* ECF No. 127 at 3, but the guidance is in full compliance with the PI Order. ECF No. 123. The PI Order makes no mention of Proclamations 9984, 9992, 9993, 9996 and 10041, or any other Presidential Proclamation that State is currently enforcing through visa denials. Thus, the State Department is reasonably interpreting the scope of the PI Order to apply only to its implementation of Proclamations 10014 and 10052. *Id*. at 84-85 (paragraphs 1 through 7). The State Department has no legal authority to suspend any other proclamation, including the COVID-19 regional proclamations, or to apply the PI Order to them.

Moreover, the Court cannot extend its equitable power to proclamations and corresponding agency policies not challenged in any of the operative complaints. *See*, *e.g*., *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr*., 810 F.3d 631, 632 (9th Cir. 2015) ("[a] court's equitable power lies only over the merits of the case or controversy before it," [so that] "[w]hen a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction.").

In implementing the PI Order, the Government is not attempting to frustrate the Court's stay of the State Department's "No-Visa Policy" or its interpretation of U.S.C. § 1182(f) with regard to Proclamation 10014. *See, e.g.*, ECF No. 123 at 60-65.[2] And, Plaintiffs are asserting that the State Department should unilaterally expand the scope of the PI Order in a manner that essentially enjoins the five COVID-19 regional proclamations. But none of those five proclamations (or any agency policy implementing them) are being challenged by any of the plaintiffs in the cases before this Court.

The government acknowledges that the regional COVID-19 proclamations may present the plaintiffs with challenges, but those proclamations remain in place and are related to the COVID-19 pandemic and different countries' conditions. The PI Order specifically accounts for this because the PI Order "does not prevent any embassy personnel, consular officer, or administrative processing center from prioritizing the processing, adjudication, or issuance of visas based on resources constraints, limitations due to the COVID-19 pandemic, or country conditions." ECF No. 123 at 84.

---

[2] In accordance with the PI Order, the suspension of entry of persons subject to Proclamations 10014 and 10052 remains in effect. *See, e.g*., ECF No. 123 at 85 ("Plaintiffs' requests for the court to preliminarily enjoin Defendants from implementing or enforcing Proclamations 10014 and 10052 against Plaintiffs are denied.").

Accordingly, the PI Order does not require the State Department to supersede any COVID-19 regional proclamation or any other proclamation to which a plaintiff may be subject, including but not limited to Presidential Proclamations 9645 and 9983. https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/presidential-proclamation-archive/presidential-proclamation9645.html.

2.  *Reissuance of Diversity Visas Beyond September 30, 2020*. The State Department's public guidance on the implementation of the Court's order states:

> DV-2020 applicants whose visas will expire before December 31, 2020 when Proclamation 10014 is currently due to expire, will be unable to immigrate on that visa, unless they are exempt from the Proclamation, and cannot be issued a new visa after September 30, 2020. DV applicants are reminded that if they were either in the United States, or held a valid immigrant visa on April 23, when Presidential Proclamation 10014 went into effect, they are exempt from the Proclamation. DV applicants who held valid DV visas on April 23 but were unable to travel and whose visas have since expired, may be reissued a DV visa before September 30, 2020.

U.S. DEPARTMENT OF STATE, "Diversity Visa DV-2020 Update" https://travel.state.gov/content/travel/en/News/visas-news/diversity-visa-DV-2020-update.html, Sept. 9, 2020, (Last Accessed Sept. 14, 2020).

Plaintiffs take issue with this guidance, asserting that the State Department is not complying with the PI Order because of its "categorical refusal to reissue any diversity visas for dates that extend past September 30, 2020, even if those diversity visas will expire before December 31, 2020, the earliest date when the Proclamation could possibly expire." ECF No. 127 at 1. Plaintiffs are incorrect for two reasons. First, a person holding a valid diversity visa on April 23, 2020 is not subject to the suspension of entry under Proclamations 10014 and 10052. Accordingly, they could use their Diversity Visas, travel to the United States, and not be subject to the Proclamation 10014 restrictions, so no relief is warranted. Second, the State Department is statutorily

8

precluded from issuing or reissuing any diversity visas for the fiscal year 2020 diversity visa program after the end of the fiscal year deadline on September 30, 2020.

Section 2 of Proclamation 10014 provides that the "suspension and limitation on entry pursuant to section 1 of this proclamation shall apply only to aliens who…(ii) do not have an immigrant visa that is valid on the effective date of this proclamation." Section 2(a)(ii) of Proclamation 10014. *See* 85 Fed. Reg. 23,442. Thus, individuals with valid diversity visas when Proclamation 10014 went into effect on April 23, 2020, are not subject to the entry restrictions under Sections 2(a)(ii) and 5 of Proclamation 10014. *See* 85 Fed. Reg. 23,442. The Proclamation presents no barrier to re-issuance for individuals who had valid diversity visas on April 23 that have since expired. Moreover, for applicants who had a valid visa on April 23, 2020, Proclamation 10014 does not prevent them from using their diversity visa and entering the United States.

Secondly, under 8 U.S.C. § 1154(a)(1)(I)(ii)(II), the State Department is precluded from reissuing diversity visas after the end of the fiscal year deadline of September 30, 2020. Section 1154(a)(1)(I)(ii)(II) relates to the procedures for filing petitions pursuant to the diversity visa program and states that "Aliens who qualify, through random selection, for a visa under section 1153(c) of this title [the diversity visa program] *shall remain eligible to receive such visa* only through the end of the specific fiscal year for which they were selected." 8 U.S.C. § 1154(a)(1)(I)(ii)(II) (emphasis added). Thus, as several courts of appeals have concluded, the diversity-visa-program statute, 8 U.S.C. § 1153(c), "precludes [the State Department] from issuing a visa pursuant to the DV Program for a given fiscal year upon the expiration of that fiscal year." *Coraggioso v. Ashcroft*, 355 F.3d 730, 734 (3d Cir. 2004), *as amended* (Jan. 29, 2004) (citing *Nyaga v. Ashcroft*, 323 F.3d 906, 914 (11th Cir. 2003), and *Iddir v. INS,* 301 F.3d 492, 501 (7th Cir. 2002)); *but see P.K. v. Tillerson*, 302 F. Supp. 3d 1 (D.D.C. 2017). This statutory limitation applies equally to the issuance of replacement visas once a diversity visa issued prior to September 30, 2020, expires.

3.  ***Extending the Validity of Medical Examinations***. 8 U.S.C. § 1201(d) requires all applicants applying for immigrant visas to undergo a medical examination. *See* 9 FAM 504.4-7(a). "In no instance is the medical examination valid for more than six months." 9 FAM 504.4-4(A)(c)(2). Plaintiffs take issue with the expiration of the statutorily required medical examinations, stating the following:

> Defendants' apparent categorical refusal to extend the validity of medical exams, as Defendants have recently done for other visa categories, including K-1 visas, even though an immigrant visa generally expires when the visa recipients' medical exam expires and some medical exams are valid for only three months. Defendants' refusal makes it impossible for those visa holders to enter before December 31, 2020, the earliest date when the Proclamation could possibly expire, even if they receive their diversity visa pursuant to this Court's order.

ECF No. 127 at 1-2.

The authority, however, to extend the validity of medical examinations rests with the Centers for Disease Control and Prevention (CDC), not the State Department. *See* 9 FAM 302.2-3(C) ("Medical examination validity is determined by the CDC."); 9 FAM 302.2-3(C)(b) ("If CDC approves an extension of the original medical examination validity, posts should limit the visa to the new CDC-approved validity date, as long as the visa validity does not exceed six months…."). On July 24, 2020, State Department announced a one-month extension of the validity of the medical examinations conducted between January 1 and June 30, 2020, which required the approval of the CDC. *See* U.S. DEPARTMENT OF STATE, "One Month Extension of Immigrant Visa Medical Examinations" https://travel.state.gov/content/travel/en/News/visas-news/one-month-extension-of-immigrant-visa-medical-examinations.html (last updated July 24, 2020) (last visited Sept. 14, 2020).

4.  ***Processing of Non-Plaintiff DV Applications***. The State Department's public guidance on the implementation of the Court's order provides the following prioritization plan:

10

1. Individuals who were named plaintiffs in *Gomez v. Trump* and its companion cases;

2. Applicants who had already been interviewed who seek reissuance or to overcome a prior refusal;

3. Applicants who were scheduled for appointments in March, April, or May and whose appointments were cancelled due to the COVID-19 pandemic and worldwide suspension of routine visa processing;

4. For posts that have additional capacity to process applications and are not exhausted by the three categories above, applicants whose cases are pending with the Department's Kentucky Consular Center.

U.S. DEPARTMENT OF STATE, "Diversity Visa (DV-2020) Update" https://travel.state.gov/content/travel/en/News/visas-news/diversity-visa-DV-2020-update.html, (last updated September 9, 2020) (last visited Sept. 14, 2020). Plaintiffs appear to take issue with the fact that non-plaintiffs to the cases before this Court have received the lowest priority: "Defendants' refusal to process many DV2020 selectees who are not named plaintiffs in the *Gomez*, *Aker*, *Mohammed*, and *Fonjong* cases, including many plaintiffs whose cases are still being processed at the Kentucky Consular Center ("KCC"). ECF No. 127 at 2. The PI Order recognizes that "there is no statutory requirement that every available diversity visa be issued each year[,]" ECF No. 123 at 69, and ordered the State Department to prioritize "the named diversity visa Plaintiffs in *Gomez*, *Aker*, *Mohammed*, and *Fonjong* and their derivative beneficiaries." *Id*. at 84. Moreover, there are various limitations on the State Department's ability to process and adjudicate all DV applications, including ones submitted by non-plaintiffs, by September 30, 2020.

As a preliminary matter, only embassies and consulates that are designated immigrant visas processing posts have the capacity to process diversity visas; there are a number of embassies and consulates – approximately 90 - that only process non-immigrant visas. https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/fees/visa-issuing-posts.html. Moreover, embassies and consulates that do process immigrant visas are limited

11

because of resource constraints, local conditions, and health and safety concerns due to the COVID-19 pandemic. Despite these limitations and in an effort to accommodate the named plaintiffs and prioritize DV applicants, in accordance with the PI Order, the State Department cancelled the majority of all other previously scheduled immigrant visa appointments through September 30. Even with this drastic action, the reality is there is not sufficient capacity to process all DV-2020 selectees. *Cf* ECF No. 123 at 84. ("this order does not prevent any embassy personnel, consular officer, or administrative processing center from prioritizing the processing, adjudication, or issuance of visas based on *resource constraints*, limitations due to the COVID-19 pandemic, or country conditions.") (emphasis added).

Defendants' prioritization is especially necessary because, for applications still pending with the KCC – with the exception of named plaintiffs pursuant to the PI order – the State Department is required to follow the statutory "order of consideration" in issuing visas. *See* 8 U.S.C. § 1153(e); 22 CFR §§ 42.33(c), (d). Thus, contrary to Plaintiffs allegations, the State Department is not categorically refusing to process non-plaintiff applications that are still at KCC. Rather, it is attempting to process as many applications as possible in accordance with the PI Order and statutory and regulatory requirements.

**5.** ***Emergency Visa Processing in Cuba and Azerbaijan.*** Finally, Plaintiffs raise the issue of country conditions in Cuba and Azerbaijan, "which have closed their borders due to COVID-19." ECF No. 127 at 2. Initially, as a general matter, not all U.S. consular posts process immigrant visas. *See generally* U.S. DEPARTMENT OF STATE, "Visa Issuing Posts" https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/fees/visa-issuing-posts.html (last visited Sept. 14, 2020). As relevant here, immigrant visas for individuals from

Cuba and Azerbaijan are processed outside those respective countries. Since autumn of 2017, immigrant visas for Cuban nationals have been processed in third countries, previously in Colombia and, most recently, in Guyana. *See* U.S. DEPARTMENT OF STATE, "U.S. Relations With Cuba" https://www.state.gov/u-s-relations-with-cuba/, Nov. 22, 2019 (last visited Sept. 14, 2020) ("Due to injuries sustained by our diplomatic community in Havana, visa processing for most Cuban applicants is presently taking place in third countries."); U.S. EMBASSY IN CUBA, "Immigrant Visas" https://cu.usembassy.gov/visas/immigrant-visas/ (last visited Sept. 14, 2020) ("Due to the suspension of immigrant visa services at the U.S. Embassy in Havana, Cuba, the U.S. Department of State has designated the U.S. Embassy in Georgetown, Guyana as the primary site to process immigrant visas for residents of Cuba."); *see also* U.S. EMBASSY IN CUBA, "Information on Consular and Immigration Services," https://cu.usembassy.gov/information-consular-immigration-services/, Jan. 4, 2018 (last accessed September 14, 2020) ("The U.S. Department of State has designated the U.S. Embassy in Bogota, Colombia to process immigrant visas for residents of Cuba. Cuban immigrant visa applicants originally designated for processing at U.S. Embassy Havana are now being scheduled for interviews at Embassy Bogota, beginning in January 2018."). Immigrant visas for individuals from Azerbaijan are processed at the U.S. Embassy in Tbilisi, Georgia. U.S. DEPARTMENT OF STATE, "U.S. Embassy Tbilisi, Georgia – TBL" https://travel.state.gov/content/travel/en/us-visas/Supplements/Supplements_by_Post/TBL-Tbilisi.html (last visited Sept. 14, 2020) ("Please note that immigrant visa interviews for residents of both Georgia and Azerbaijan are held at the U.S. Embassy in Tbilisi."). Plaintiffs suggest that because of the restrictions in Cuba and Azerbaijan due to conditions in those countries that prevent individuals from those countries from traveling to Guyana and Georgia, respectively, to process their DV applications, these

applications should be processed in Cuba and Azerbaijan on an emergency basis. But this request is contrary to the PI Order, which specifically "does not prevent any embassy personnel, consular officer, or administrative processing center from prioritizing the processing, adjudication, or issuance of visas based on resources constraints, limitations due to the COVID-19 pandemic, or country conditions." ECF No. 123 at 84.

| | |
|---|---|
| September 14, 2020 | JEFFREY BOSSERT CLARK<br>Acting Assistant Attorney General, Civil Division<br><br>WILLIAM C. PEACHEY<br>Director, Office of Immigration Litigation, District Court Section<br><br>GLENN M. GIRDHARRY<br>Assistant Director<br><br>*/s/ James J. Wen*<br>Trial Attorney<br>U.S. Department of Justice, Civil Division<br>Office of Immigration Litigation<br>District Court Section<br>Washington, D.C. 20044<br>(202) 532-4142<br>James.J.Wen@usdoj.gov<br><br>*Attorneys for Defendants* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2020, I electronically filed the foregoing document with the Clerk of the United States District Court for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

*/s/ James J. Wen*
Trial Attorney
U.S. Department of Justice
Civil Division