# DECLARATION OF LAURA CHAMBERLIN

I, Laura Chamberlin, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am employed by the U.S. Department of State as a Division Chief in the Education and Tourism Division, Office of Field Operations of the Visa Office, Bureau of Consular Affairs.  The Field Operations Office supports and monitors visa operations at embassies and consulates around the world (commonly referred to as "posts"), provides updated guidance to our posts regarding changes in visa policy, and oversees the Visa Office's web unit, which maintains visa-related content on CA's public-facing website, travel.state.gov.

2. In that capacity, I have knowledge regarding the State Department's actions to implement the U.S. District Court's Memorandum Opinion and Order dated September 4, 2020 and the Amended Order dated September 14, 2020 (collectively, the "PI Order") in *Gomez v. Trump*, Case No. 20-cv-1907 (APM).

## Development of Guidance for Consular Posts and the Public

3. On Saturday, September 5, 2020, Department officials met to begin developing guidance to implement the PI Order for worldwide operations.

4. On Monday, September 7, 2020 (Labor Day), the Director of the Office of Field Operations of the Visa Office sent an email blast to all embassies' and consulates' consular sections informing them that a cable was forthcoming with guidance on the processing of diversity visa (DV) applications.  The email also instructed any posts that normally process DV that are unable to do so in September 2020 to immediately notify the Kentucky Consular Center (KCC) and the Department so that they could notify any Plaintiffs who intended to process at those posts.

5. On September 9, 2020, the Department sent a cable to all consular sections informing them about the PI Order and instructing them to make good-faith efforts to expeditiously process and adjudicate DV applications for DV-2020 by September 30, 2020.  (The cable was supposed to transmit on September 8, but technical issues delayed its transmission until September 9.)  The cable further explained that starting immediately, the processing of DV applicants takes precedent over all visa cases except unique emergency cases (i.e., urgent health or humanitarian concerns, including those of children who lose visa eligibility when they turn 21 years of age) and Afghan and Iraqi Special Immigrant Visa cases that are subject to a different court order requiring the Department to give them priority in processing.  The cable further instructed consular sections how to prioritize DV processing in accordance with the PI Order and that such prioritization could lead to consular sections having to cancel existing immigrant visa and non-immigrant visa appointments to schedule DV appointments.

6. On September 9, 2020, the Department hosted a worldwide webinar for Department employees during which the Department underscored the urgency of prioritizing DV applications and responded to questions pertaining to the processing of DV applicants.

7. On September 9, 2020, the Department released public guidance on its website notifying the public about the PI Order and stating that DV applicants may be processed in consular sections where local conditions and resources allow in accordance with a prioritization plan for processing consistent with the PI Order.

8. In response to the Court's Amended Order dated September 14, 2020, the Department updated its public guidance again on September 15 to strike references to the Regional COVID-19 Proclamations (9984, 9992, 9993, 9996, and 10041) in conjunction with DV processing, the subject of the Amended Order.

9. On September 17, the Department issued another cable informing consular sections about the Amended Order dated September 14, 2020, and instructing them to schedule and process DV-2020 applicants (principals and derivatives) regardless of their current, future, or past physical presence in areas covered by regional COVID Proclamations. The cable further stated that consular sections should also review recent DV-2020 refusals, particularly those that were adjudicated between September 4 to September 15 that were refused solely due to regional COVID PPs and re-adjudicate consistent with this revised guidance.

10. On September 17, 2020, the Department updated its public guidance again to make clear to the public that based on the PI Order "no DV-2020 applicants will be prevented from applying for or receiving a visa due to these regional COVID proclamations if otherwise eligible."

**Managing DV Scheduling Process**

**Staffing**

11. The Office of Field Operations, which is comprised of one Office Director, three Division Chiefs, and 24 visa analysts, divides responsibility regionally and functionally, with each visa analyst covering a given number of countries and functional topics, like DVs. Before September 4, there was one visa analyst and one Division Chief responsible for providing guidance to posts regarding DVs. Under the supervision of the Division Chief, that analyst's job was to provide general oversight of the Department's DV program, including operation of the lottery from entry to selection, and to respond to questions from consular officers adjudicating DV applications based on guidance in the Department's Foreign Affairs Manual.

12. Since September 4, 2020, a team of four visa analysts have worked full time, after hours, and over weekends on the DV portfolio to ensure compliance with the PI Order. To that end, they are in regular contact with consular sections to (1) gather information on consular sections' operating capacity to identify which can process more cases as well as

those that are limited by resource constraints, local conditions, and/or health safety concerns stemming from the global pandemic; (2) gather information regarding scheduled interviews and adjudications; (3) answer questions from consular officers processing DV applications; and (4) investigate and resolve issues raised by Plaintiffs' counsel.  The Office Director and all three Division Chiefs, including myself, have also worked afterhours and over weekends to provide guidance to consular officers adjudicating DV applications, to update outreach materials, and to coordinate with the KCC in determining how best to match consular sections' capacity with applicants' scheduling needs.

**Scheduling**

13. In the cable dated September 9, 2020, the Department instructed immigrant visa processing posts to cancel existing non-immigrant and immigrant visa appointments if necessary to grant sufficient appointments slots to DV applicants.  The cable instructed consular sections to prioritize the Plaintiffs over other DV applicants.  Consular sections accomplished this via email blasts to applicants who had scheduled via posts' non-immigrant visa appointment systems, as well as by posting announcements on embassies' and consulates' webpages.  Consular staff contacted via phone or email all other immigrant visa applicants who did not have urgent appointments as defined in the cables.

14. It is important to note that the Department does not have a central system for managing visa appointments.  Appointments are managed on a post-by-post basis using systems that are not equipped for reporting scheduling information back to the Department for an individual applicant.  The KCC's system allows it to schedule and transfer a case to the relevant consular section.  However, until a consular section uploads the case into the Immigrant Visa Operating system (IVO), there is no new information replicated to the consolidated consular database (CCD) via which staff in the Department's headquarters can track a case's progress.  Moreover, IVO primarily tracks cases by case number rather than by individual applicants, and IVO does not populate adjudication records for derivative applicants associated with a case until after the case is transferred to post.

15. Given that many consular sections, particularly those with the most limited resources or restrictive local conditions, are primarily teleworking due to COVID-19, and also because it is neither permissible nor possible to access IVO remotely, interim steps of re-scheduling appointments or communicating to Plaintiffs key information about documentary needs are being done remotely and via email or phone.  Consular staff update information in IVO prior to an interview and that information replicates to the CCD, but this can happen at many different points in the life cycle of a DV application.  For that reason, to comply with the PI Order, we had to devise a system from scratch for managing and monitoring the appointments, applicant contact, and case status for all Plaintiffs.

16. On September 7, 2020, the Department created a master spreadsheet with the named Plaintiffs in the *Gomez, Aker, Mohammed,* and *Fonjong* cases.  Department staff in the Visa Office and KCC have access to and update this document, providing current

3

tracking of the status of each case. Due to the inherent data gaps for the reasons already delineated, some information needed to keep the spreadsheet current is only available via communications with individual posts. With most of the consular sections operating in time zones that are six to sixteen hours ahead of Washington and variable staffing patterns mean that some information may not be available for as many as 24 hours. On September 8, 2020, government counsel forwarded that spreadsheet to Plaintiffs' counsel requesting top three rank-ordered alternate posts for individual plaintiffs whose applications remain with the KCC, anticipating that some posts would not be able to accommodate the Plaintiffs. There were several large additions of entries as we received new names and case numbers from the attorneys, including on the evening of September 11, 2020, a list of Plaintiffs' names from the attorneys for the *Mohammed* and *Fonjong* Plaintiffs, and on Saturday, September 12, 2020, a list of Plaintiffs' names from the attorneys for the *Aker* Plaintiffs. On the spreadsheet, KCC also tracked when applicants were scheduled so that KCC and the Department could monitor our progress.

17. The Department also tracked consular sections' capacity to process DVs and any limitations based on resource constraints, local conditions, and health and safety concerns. To that end, visa analysts regularly communicated with consular sections regarding local travel restrictions, staffing shortages, or any other factor that affected consular sections' capacity so that the Visa Office and KCC could work together to determine where Plaintiffs' who were unable to interview at their designated post could be scheduled or transferred.

18. As of September 21, 2020, the Department has scheduled and transferred 423 of the 425 diversity visa cases associated with Plaintiffs, including one case that was transferred to USCIS.

**Post Capacity**

19. Under regular operating conditions, there are approximately 223 consular sections that adjudicate visa applications. *See* https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/fees/visa-issuing-posts.html, (Last Accessed Sept. 21, 2020). Of the 223 consular sections that process visa applications, 136 process immigrant visa applications with posts such as Nairobi, Dakar, Ciudad Juarez, Johannesburg, and Guangzhou processing cases for a region or country. As a result of the COVID-19 pandemic, all routine visa operations worldwide were suspended from March 20, 2020, to July 15, 2020, severely limited processing ability. American citizen services were consular sections' and the Department's top priority during that time. As of July 15, 2020, consular sections have been authorized to resume processing in accordance with local conditions and resources. The pandemic and a safe but slow return to normal – only three posts in the world are at Phase Three during which all processing is authorized – have hobbled the Department's ability to safely process visas.

20. The Visa Office and KCC are in frequent contact to match consular sections' capacity with applicants' preferences, particularly for applicants who cannot be processed at their preferred post due to posts' ability to accept them or applicants' abilities to travel. For

4

example, the Visa Office found that the Embassies in Manama, Stockholm, Yaounde, and Zagreb can process more Plaintiffs than they have in their consular districts. Further, officers in Manama speak Arabic and an officer in Yaounde speaks Arabic and some Farsi. This has been useful in the effort to assist, for example, Afghan and Iranian citizens, since Embassy Kabul cannot presently process DVs, the Department has no diplomatic facilities in Iran, and Mission Turkey, an Iranian processing post, cannot accept anyone not already in the country due to local health and safety conditions.

21. Consular sections' processing abilities change due to any number of reasons. With September 30 now fewer than 14 days away, local quarantine restrictions made many consular sections nonviable options for anyone not already in that country. The following posts cannot adjudicate DV applications at all due to various resource constraints, adverse local conditions, and/or health and safety concerns due to the COVID-19 pandemic: La Paz, Tashkent, Freetown, Rangoon, Kabul, Havana, and Baghdad. To illustrate the many variables involved in consular sections' ability to process cases, Freetown does not currently have any consular officers at post; due to injuries sustained by U.S. diplomatic staff in Havana visa processing for Cuban immigrant visa applicants is presently taking place in a third country; Baghdad's consular waiting room was rendered unusable after the December 19, 2019 Embassy attack; and Rangoon reported recent COVID cases among embassy staff that have led to mandatory 100 percent telework while the embassy is cleaned and contacts are traced.

22. To varying degrees and in accordance with local constraints, all other consular sections that process immigrant visas are adjudicating DV applications. The amount of cases consular sections can process varies due to many factors including but not limited to local border closures, local quarantine requirements, COVID outbreaks, security issues, staffing issues, and panel physician limitations. Here are some more examples of posts that are experiencing such limitations:

- Argentina, Colombia, Japan, Paraguay, Peru, South Africa, and Uruguay are among post with borders closures to all but their citizens

- The United Arab Emirates and India are examples of places where the local governments require 14 days of quarantine on arrival.

- The Consulate General in Frankfurt is working to assist with overflow cases, but the German government only allows arrivals from EU member states.

- As noted, the Regional Security Officer and Medical Office at the Embassy and Consulates in Turkey have determined that local conditions are not sufficiently favorable to permit entry in consular sections to third country nationals or anyone not in Turkey for the prior 14 days. Such decisions related to post safety and security are made routinely by responsible officers serving at those posts.

- The Emergency Action Committees, an interagency and interoffice working group within a U.S. diplomatic mission responsible for addressing emergent safety and

security threats, in Bulgaria and Georgia have determined that local conditions require consular customers, just like new staff members arriving at post for work, to quarantine for 14 days upon entering the country.

- In Angola, there is currently no functioning lab to handle required medical tests. All tests have to be sent to Portugal, adding considerable processing time into the case. This is not unique to Angola, as Canadian posts have also reported that delays in the postal service have extended case timelines.

- In Macedonia, post's only consular officer is on medical isolation due to close contact with another consular employee who tested positive with COVID-19. Post's back-up consular officers have no experience processing immigrant visas and, therefore, are unable to processes DVs. Current post safety protocols as determined by post's Emergency Action Committee only allow a total of seven consular applicants per day. Also, the lone panel physician in Macedonia has limited patients seeking medical exams to four per day. Panel physicians are not U.S. government employees. Consular sections have agreements with private practitioners who agree to provide medical examinations of visa applicants consistent with the Centers of Disease Control's technical instructions.

23. On a daily basis, we assess consular sections' capacity to process DV applications and to identify which ones can handle overflow case from other posts. On September 14, 2020, government counsel provided Plaintiffs' counsel with a list of such posts and have continued to provide updates as the list changes because of resources and local circumstances. As of September 21, the following posts have been identified as overflow posts that can handle a limited number of DV applicants outside of their consular districts: Yerevan, Stockholm, Manama, Phenom Penh, Frankfurt (for people already in the EU), Lomé, Yaounde, and Zagreb.

**Scheduling and Adjudication of Plaintiffs' Cases**

24. As of September 21, there were 422 cases transferred to consular sections with 958 individual applicants associated with those 422 cases. Of those 422 cases, all but five had been interviewed or were scheduled for an interview. The Department continues to coordinate with our posts to find a post where the remaining five applicants would be able to make their diversity visa application.

25. As of September 21, consular officers issued visas to principal applicants in 122 of the 425 cases.

26. As of September 21, consular officers refused visas in 128 of those 425 cases. None of those refusals was under Presidential Proclamation 10014 or under the COVID-19 Regional Proclamations (9984, 9992, 9993, 9996, and 10041).

27. Note the Department began its hand count for these statistics at the beginning of the day on Monday, September 21, in Washington. As visa processing is happening at all hours

of the day around the world, we cannot get a "clean" count as case statuses are always changing.

I declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

|  |  |
|---|---|
| September 21, 2020 | /s/ Laura Chamberlin<br>Laura Chamberlin, Division Chief<br>Education and Tourism Division<br>Office of Field Operations, Visa Office<br>Bureau of Consular Affairs<br>United States Department of State |