## **DECLARATION OF MORGAN D. MILES**

I, Morgan D. Miles, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am employed by the U.S. Department of State as the Acting Director of the Kentucky Consular Center (KCC), which is part of the Visa Services Directorate within the Bureau of Consular Affairs. In my capacity as Acting Director, I am authorized to search the electronic Consular Consolidated Database and the Diversity Visa Information System (DVIS) system of the U.S. Department of State, Bureau of Consular Affairs, for visa records and the records of the KCC. One of the four units I oversee at KCC is responsible for processing cases under the Diversity Visa Program, including scheduling interview appointments and transferring documentarily-qualified cases to posts around the world. That unit is comprised of 28 contract staff members at this time, including supervisors.

2. In that capacity, I have knowledge regarding the Department's actions to implement the U.S. District Court's Memorandum Opinion and Order dated September 4, 2020 and the Amended Order dated September 14, 2020 (collectively, the "PI Order") in *Gomez v. Trump*, Case No. 20-cv-1907 (APM). The following declaration is based on information acquired in my official capacity in the performance of my official functions.

### **Routine Diversity Visa Scheduling**

3. The mission of KCC is to improve efficiency of worldwide consular operations by reducing clerical burdens on consular sections in U.S. embassies and consulates abroad. Accordingly, KCC performs clerical processing for diversity visa applications for applicants selected in the annual random drawing for participation in the Diversity Visa Program. This includes collecting and reviewing documents required by law to process diversity visa applications, such as the DS-260 immigrant visa application form, as well as required supporting documents. As each applicant is selected in the diversity visa lottery, computer software assigns them a rank number within the geographical region that coincides with his or her foreign state of chargeability, as is required by law.

4. Diversity visa lottery selectees are generally notified of their selection on the first Tuesday in May following their entry submission in October of the previous year through an online portal known as Entrant Status Check (ESC), a website maintained by the Department of State. Once selectees have confirmed that they were selected, they begin the process of completing their DS-260 immigrant visa application forms and submitting them to KCC, along with required documentation. Once KCC confirms that an applicant has submitted all the necessary documentation, the case is deemed "documentarily qualified," and the applicant may be scheduled for a visa interview at a consular post abroad. Scheduling an applicant for interview before she or he is documentarily qualified increases the risk that the applicant will not be eligible for the visa sought on the date of his/her interview and application. However, KCC will schedule a case that is not documentarily qualified when time is of the essence. Selectees who are already present in the United States may also elect to adjust status with U.S. Citizenship and Immigration Services (USCIS) instead of obtaining a visa overseas.

1

5. Each month, KCC receives from the Visa Office's Immigrant Visa Control and Reporting Division notification of cut-off ranks for each geographic region, which allows documentarily qualified applicants with a rank number below the cutoff to be scheduled for an interview, provided that the selected post has the capacity to receive applicants. The cut-off ranks are also published monthly in the State Department's Visa Bulletin. KCC uses the rank number, as is required by statute, to determine the order in which cases are eligible to make applications and be scheduled for appointments. This is particularly important as the total number of selectees and derivative applicants is expected to exceed the statutory numerical limit set for total diversity visas (i.e., if the Department did not over select diversity visa entrants, it would not be able to use the full allocation of diversity visa numbers). For this reason, diversity visa selectees with a low rank order, as reflected in their case number, are more likely to get the opportunity to interview, while those with higher numbers are more likely to have to wait for the opportunity to make an application. This is why selection to participate in the Diversity Visa Program is not a guarantee of a visa or even a visa interview. Once a case has been scheduled, the applicant is notified by email to once again check the ESC portal for more information.

6. The entry period starts on an announced date at the beginning of October and lasts no less than 30 days. KCC is currently processing Diversity Visa Program 2021 entries for scheduling, and preparing for the Diversity Visa 2022 entry period. Therefore, KCC staff is currently actively working on three different program years at this time.

7. In a normal program year, appointments are scheduled in consultation with posts around the world about two months before the expected interview dates. Scheduling for a program year first starts in August for appointments in October. This is done monthly as new rank order cut offs are announced in the Visa Bulletin. Document review and scheduling is all but completed by the end of August for the first diversity visa applicants for the new Diversity Visa Program year.

8. For 2020 Diversity Visa Program, the above means that resuming processing and scheduling of diversity visa cases in early September already put the KCC and the Department well past the normal deadline for completing this work. It also directly competed for resources with the work KCC was doing on the Diversity Visa Programs for 2021 and 2022. The Diversity Visa Unit at the KCC has been working full time since September 4 to complete and schedule as many cases as possible in accordance with the prioritization plan in the PI Order.

## Suspension of Diversity Visa Scheduling

9. On March 20, 2020, the Department suspended all routine visa services due to the COVID-19 pandemic. Pursuant to guidance from the Department on the suspension of routine visa services, KCC stopped scheduling additional diversity visa case appointments with consular posts as of March 20, 2020. When the Department began a phased resumption of routine visa services on July 15, 2020, taking into account the restrictions imposed on diversity visa applicants by Presidential Proclamation 10014 (as

2

continued by Presidential Proclamation 10052), the Department issued guidance stating that only when a consular post reaches Phase Three of the Diplomacy Strong Framework (i.e. full resumption of pre-pandemic processing) may the post resume diversity visa case processing, and only for cases that appear to be eligible for an exception to Presidential Proclamation 10014.

## Scheduling to Comply with the PI Order

Master Spreadsheet

10. KCC was first alerted to the PI Order on the evening of September 4. KCC leadership immediately began to work with the Visa Office over the Labor Day Weekend on planning for compliance with the order, including developing a new system for scheduling cases for interview based on the prioritization plan rather than rank order.

11. On September 8, the Department sent KCC a master spreadsheet with a list of named Plaintiffs. KCC immediately began to add information about case status and the intended location of the interviews for each Plaintiff. We also added case numbers, contact information, nationality, and other fields that would help in scheduling Plaintiffs. Several entries contained errors that made it difficult to identify the cases associated with Plaintiffs, and we had to run many queries to eliminate duplicates, misspelled names, typos in case numbers, and selectees for the 2021 Diversity Visa Program. It is important to note that all derivative applicants are included under the same case number.

12. By September 8, KCC was already coordinating with the Visa Office to gather information about the consular sections where Plaintiffs had intended to interview in order to determine if they could be scheduled there. KCC also needed to collect information about which other consular sections might be able to take transfer cases as many posts could not provide even emergency visa services. As soon as we could verify that a consular section could accept a Plaintiff's case, we scheduled the case and transferred the electronic files to the designated consular section. Additionally, KCC contractors working on correspondence proactively used the search functions to find Plaintiff-relevant inquiries in the thousands of emails KCC received every day after diversity visa selectees became aware of the PI Order.

13. Additionally, the Department made the master Plaintiff spreadsheet available to all consular sections so that consular staff worldwide could look for Plaintiffs who could be initially scheduled, Plaintiffs who had previously been scheduled and needed additional processing, and Plaintiffs associated with nearby posts that were unable to provide visa services. We then coordinated directly with consular sections and the Visa Office to schedule as many cases as we could based on consular sections' capacity.

14. KCC requested that Plaintiffs' counsel provide three rank-ordered alternate posts for individual Plaintiffs in the event that they would not be able to interview at their designated processing post. The reason for this request was to efficiently locate a place where they could interview based on their current location and ability to travel.

3

15. KCC continued to update the master spreadsheet with new information from Plaintiffs' counsel, including additions or deletions, incorrect case numbers, and alternate processing posts. In particular, there were several large additions of entries as we received names and case numbers from the attorneys, including on the evening of September 11, 2020, a list of Plaintiffs' names from the attorneys for the *Mohammed* and *Fonjong* Plaintiffs. On Saturday, September 12, 2020, a list of Plaintiffs' names from the attorneys for the *Aker* Plaintiffs. On the spreadsheet, KCC also tracked when applicants were scheduled so that KCC and the Department could monitor our progress.

16. The Visa Office continued to provide to KCC information from consular sections about local operating conditions and individual applicants to assist KCC with scheduling interviews. Once a case is scheduled and transferred to post, KCC computer systems can no longer track its status. The Visa Office took responsibility for looking at Plaintiffs and other diversity visa cases that could be transferred between posts for interviews. KCC assisted with that effort by compiling information from our public inquiry emails and phone lines.

## Document Review/Scheduling

17. By September 9, KCC had completed all document review for identified Plaintiff cases. KCC also proactively reached out to all Plaintiffs who were not yet documentarily qualified to let them know their packets were not complete. As those Plaintiffs submitted the required documents, we completed their document reviews within one business day. On September 15, KCC scheduled even those Plaintiff cases that were not documentarily complete in order to let consular officers review the physical documents and determine at the time of interview whether the applicant had submitted all legally required documentation to be deemed eligible for a diversity visa. The only two Plaintiffs who were not scheduled as of September 18 for document issues were those who never submitted a DS-260 application, the visa application form required for each applicant.

18. KCC's scheduling efforts were not limited to Plaintiffs' cases. The Visa Office tracked overall capacity to process diversity visa applications worldwide. If there was capacity in a consular district that could not accept transfers of Plaintiffs from other posts because of closed borders or local restrictions unrelated to the COVID-19 Regional Proclamations, we began to fill that capacity with non-Plaintiffs from the 2020 program year who were believed to already be in that consular district. The intent was to prioritize the cases as directed in the PI Order, but not to leave capacity unused because higher priority cases could not travel to a location where there was capacity.

## Data – Plaintiffs

19. Through September 21, 2020, KCC has scheduled and transferred 423 diversity visa cases associated with Plaintiffs, including one case that was transferred to USCIS as the applicant associated with that case is in the United States and has filed an application to adjust status. That leaves only two cases, or less than one-half of one percent, that have

4

not been scheduled because the DV selectees never completed the basic immigration application, the DS-260, and thus could not be transferred to post.

20. From September 4, 2020, through September 21, 2020, KCC has scheduled a total of 748 diversity visa cases, representing 1,650 applicants, and including Plaintiffs and non-plaintiffs, for interview.

Additional Resources

21. KCC's absolute priority – including at the managerial level – since becoming aware of the court's order on September 5 has been working document review and scheduling DV 2020 cases. I, as the Acting Director of KCC, have spent the majority of my time in the last two weeks coordinating with the Visa Office about appointment schedules and capacity numbers for DV 2020 selectees. I have also been communicating directly with posts for the same information and talking them through the guidance.

22. The DV correspondence team at KCC has sent over 9,000 emails since September 4, or about 1,110 each day. Our normal volume for this time of year is about 430 each day.

23. KCC has responded to 5,000 phone calls since September 4, averaging about 600 each day. Our normal volume at this time of year is about 100 each day.

24. KCC also reviewed numerous inquiries from Plaintiffs' counsel regarding concerns from individual Plaintiffs regarding scheduling and other matters. KCC worked together with the Visa Office and consular sections to resolve the issues raised in those inquiries and provide requested information.

I declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

September 21, 2020

Morgan D. Miles

Acting Director

Kentucky Consular Center

5