## **DECLARATION OF JOSH GLAZEROFF**

I, Josh Glazeroff, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am employed by the U.S. Department of State as the Deputy Executive Director, Office of the Executive Director, Bureau of Consular Affairs. The Office of the Executive Director is responsible for providing a wide range of management support for the Bureau of Consular Affairs, including infrastructure, human resources, and controlled consular supplies. The Office consists of several teams including a management analysis staff focusing on support for field operations, staffing, and assignments.

2. The policy position of the Bureau of Consular Affairs is that the primary function of U.S. embassies and consulates abroad is securing and promoting the safety and well-being of U.S. citizens and their interests abroad. Consular sections wherever they exist in the world will, at a minimum, provide American Citizens Services. This includes a range of services that includes providing welfare and whereabouts checks, death- and estate-related services, administering emergency financial and medical assistance programs, services related to arrest and detention, including prison visits, international judicial assistance, certain federal benefit services on behalf of other government agencies, citizenship services including adjudications of applications for passports and Consular Reports of Birth Abroad, and many others. Even before the COVID-19 pandemic emerged, demand for these American Citizens Services was increasing, and in response to the pandemic the Department by June 2020 provided record-breaking repatriation services due to the COVID-19 pandemic for 101,386 U.S. citizens on 1,140 flights from 136 countries and territories.

3. The Department's Bureau of Consular Affairs primary funding source for worldwide visa operations is revenue from visa fees, not annual appropriations. Recently, the Department has experienced a dramatic reduction in nonimmigrant visa application fee collections, which has adversely impacted our overall budget. Weekly worldwide visa application fee collections in Fiscal Year 2020, which were already at their lowest point since 2014, have dropped by almost 50 percent compared to Fiscal Year 2019, since the initial impacts of the COVID-19 pandemic in mid-February. In Fiscal Year 2019, the Bureau generated $2.1 billion in visa application fees which sustained its operations. As of August 2020, the Bureau's Office of the Comptroller projected visa fee collections of only $766 million in Fiscal Year 2020.

4. As a result of this unprecedented loss of revenue, the Bureau has limited the hiring of new consular officers and adjudicators, frozen overseas hiring, effectively eliminated the use of overseas temporary duty assignments to provide "surge" capacity, and imposed a wide range of budget cuts to include restrictions on overtime. In July 2020, the Bureau provided guidance to posts that they are not expected to resort to overtime or longer shifts to try to resolve the backlog in visa applicants caused by various COVID-19-related closures and reduced operations.

5. In addition to these budgetary constraints and increased demand for consular officers to provide American Citizens Services, the COVID-19 pandemic has contributed to a worldwide staffing shortage of officers in Consular sections. The Bureau currently has 1,966 authorized, full-time employee direct-hire American positions assigned to U.S. embassies and consulates (including vacant positions). As of September 11, 2020, there are 220 positions that are not filled by an officer who is in country. This affects some posts more than others. For example, our consular section in Addis Ababa has only three out of 10 officer positions filled; Abu Dhabi has only six out of 12 filled; Djibouti has one position filled out of four.

6. With the worldwide impact of COVID-19, every post adjusted its public posture and the availability of consular services. Over time, posts are resuming routine consular services in line with the Department of State's phased Diplomacy Strong approach (e.g. where posts at phase zero can only perform emergency or mission critical services if they are able, while posts at phase three have resumed performing all routine services). While emergency and mission critical services are permitted for all posts, the Bureau of Consular Affairs provided specific guidance on resumption of services as local conditions permit, and with a focus on the safety and well-being of our workforce, prioritizing American Citizen Services.

7. In addition to the COVID-19 related adjustments to our services around the world, there were already a number of countries where the consular section was not equipped to process immigrant visa applications, and it would not be possible to start processing immigrant visas at those posts without extensive planning. The consular sections that do not process immigrant visa applications do not have the technology and information systems configured to process immigrant visa applications nor do they have the staff – either local staff or U.S. officers – with the necessary expertise to prepare and adjudicate immigrant visa applications. Additionally, every immigrant visa case requires a medical exam completed by an approved panel physician. While most posts have a designated panel physician who agrees to provide medical examinations of visa applicants, some panel physicians typically only conduct examinations for nonimmigrant visa applicants and may not be familiar with the technical instructions to perform such examinations for immigrant visa applicants. Furthermore, panel physicians are greatly impacted by COVID-19 worldwide and may not be operating at pre-pandemic capacity or even be operational at this time.

I declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

September 21, 2020        /s/ _____
                           Josh Glazeroff