```
 1                  IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA
 2

 3      Domingo Arreguin Gomez,        )
        et al.,                        ) Civil Action
 4                                      ) No. 20-CA-1419
                         Plaintiffs,   )
 5                                      ) STATUS CONFERENCE
        vs.                            )
 6                                      ) Washington, DC
        Donald J. Trump, et al.,       ) September 22, 2020
 7                                      ) Time:  4:00 p.m.
                         Defendants.   )
 8      _____

 9                 TRANSCRIPT OF STATUS CONFERENCE
                             HELD BEFORE
10            THE HONORABLE JUDGE AMIT P. MEHTA
                   UNITED STATES DISTRICT JUDGE
11      _____

12                    A P P E A R A N C E S

13      For the Plaintiffs:      Charles Herman Kuck
                                 KUCK IMMIGRATION PARTNERS LLC
14                               365 Northridge Road
                                 Suite 300
15                               Atlanta, GA 30350
                                 404-816-8611
16
                                 Rafael N. Urena
17                               THE LAW OFFICE OF RAFAEL URENA
                                 925 N. La Brea Ave
18                               Ste 4th Floor
                                 Los Angeles, CA 90038
19                               703-989-4424
                                 Email: Ru@urenaesq.com
20
        Also for Plaintiffs:     Abadir Barre
21                               Cleland Welton
                                 Esther Sung
22                               Laboni Hoq
                                 Nadia Dahab
23                               Jesse Bless
                                 Curtis Lee Morrison
24                               Bradley Banias

25
```

```
 1      For the Defendants:       James Wen
                                  U.S. DEPARTMENT OF JUSTICE
 2                                Office of Immigration Litigation,
                                    District Court Section
 3                                P.O. Box 868 Ben Franklin Station
                                  Washington, DC 20044
 4                                202-532-4142
                                  Email: James.j.wen@usdoj.gov
 5
        Also for Defendants:      Glenn Girdharry
 6                                Benton York
                                  Robert Caplen
 7
        _____
 8
        Court Reporter:           Janice E. Dickman, RMR, CRR, CRC
 9                                Official Court Reporter
                                  United States Courthouse, Room 6523
10                                333 Constitution Avenue, NW
                                  Washington, DC  20001
11                                202-354-3267
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1          THE COURTROOM DEPUTY:  This is 20-1419, Domingo

2     Arreguin Gomez, et al. versus Donald J. Trump, et al.

3          Abadir Barre, Cleland Welton, Esther Sung, Laboni

4     Hoq, Naia Dahab, Jesse Bless, Curtis Lee Morris, Rafael Urena,

5     Charles Kuck, and Bradley Banias for the plaintiffs.  Glenn

6     Girdharry, James Wen, Benton York, and Robert Caplen for the

7     defense.

8          THE COURT:  Counsel, good afternoon, everybody.  Hope

9     everybody is safe and doing well.

10          So, first of all, thank you for making yourselves

11     available so quickly this afternoon.  I only realized recently

12     that despite having set the deadline for receipt of the status

13     report, I didn't follow along with a deadline to have a

14     hearing, or date to have a hearing.  And so I'm glad everybody

15     was able to convene so quickly.  So thank you for that.

16          I've had a chance to review what the parties have

17     submitted.  And so, I guess, the question, the main question

18     going forward is where we go from here.  The defendants have

19     set forth what's -- the work that they've been doing to comply

20     with the order.  And as I read what they've written, they have,

21     at least with respect to the named plaintiffs, it looks like

22     nearly all of them have been scheduled for interviews and at

23     least half of those applications have been adjudicated, with

24     about 50 percent of those that have been adjudicated receiving

25     either the visas themselves -- actually receiving the visas,

 1   with the other 50 percent having being refused, or give or take

 2   that number.  And then in terms of additional non-plaintiffs

 3   that have been adjudicated, it looks like north of another

 4   1,000 -- excuse me, I should say another 900 or so additional

 5   diversity visas have been issued since September the 5th.

 6        Plaintiffs obviously don't find, you know, a lot of

 7   the numbers terribly satisfying and ask that we provide some

 8   additional relief, including potentially reserving additional

 9   visas for 2020 DV applicants past the September 30th deadline.

10   I presume both sides are going to ask for an opportunity to

11   brief the ability to grant that relief.

12        So, why don't we start with government counsel and

13   see if there's anything else you want to add to what's already

14   in the extensive report that you've provided, along with the

15   declarations that are attached to it.

16        MR. WEN:  Yes, Your Honor.  It is James Wen for the

17   government.  So I just wanted to add that this morning the --

18   we got information from USCIS that they've also adjudicated --

19   we've received the numbers of how many diversity visas they've

20   adjudicated -- that they've issued this fiscal year.  So,

21   they've issued an additional 711 diversity visas, on top of the

22   number that we reported.  So that brings the number that we

23   have to about 13,352 diversity visas that have been issued this

24   fiscal year so far.

25        I just want to emphasize that this is a fluid

1    situation.  The State Department has indicated to me that a lot

2    of -- that many interviews are occurring this week.  So, that

3    number, you know, could go up.

4              And, also, with respect to the number of cases that

5    have been refused, the State Department has indicated to me

6    that the majority of those cases are due to administrative

7    processing in which, you know, basically, you know, documents

8    are missing or medical exams need to happen.  And so, those

9    issues relating to the administrative processing issues can be

10   cured and those could end up -- those could very well end up

11   being issued.  So, that -- those are just two issues I wanted

12   to raise.

13             THE COURT:  Okay.  Thank you.  Can you help me

14   understand something that you just said?  I think I heard you

15   say that 711 visas, diversity visas, have been issued by USCIS,

16   is that right?

17             MR. WEN:  Yes, Your Honor.

18             THE COURT:  And that brings the total, I think you

19   said, to 13,172?  Did I hear you correctly?

20             MR. WEN:  I'm sorry, Your Honor, it's 13,352.

21             THE COURT:  13,352.  Okay.  Just for my own

22   edification, can you tell me, why is it that USCIS is issuing

23   some of these visas, as opposed to states?  Just for my -- go

24   ahead.

25             MR. WEN:  Yes, Your Honor.  Some of these

1    individuals, the diversity selectees are -- in that situation

2    would be located inside the United States.  So instead of going

3    to an overseas post to have their diversity visa applications

4    be adjudicated by a consulate post, they can adjust their

5    status through USCIS.

6            THE COURT:  Okay.  All right.  That's what I

7    suspected, but I wanted to get that clarification.  I

8    appreciate it.  Of that 711 that USCIS has processed, do you

9    have a sense of whether any of those folks are main plaintiffs

10   in any of the cases before me?  And I don't include the Kennedy

11   case in that grouping just yet.

12           MR. WEN:  Your Honor, it's my understanding that one

13   plaintiff is having -- is having the diversity visa application

14   processed through USCIS.  That's my understanding.

15           THE COURT:  And would you anticipate that number --

16   that 711 number of USCIS, do you anticipate that number going

17   up?  In other words, are there still more diversity visa

18   applicants in queue to be processed in the United States?

19           MR. WEN:  Your Honor, I do not have that information

20   at this time.

21           THE COURT:  Okay.  All right.  And just one other

22   question, and maybe you can answer this, maybe you can't, but,

23   has State attempted -- you've given me the current numbers, but

24   are you in any position to provide even a ballpark estimate of

25   how many applications or how many visas you expect to -- how

1       many visas you would expect to be issued, adjudicated and

2       issued by the end of the month?  Any way of making that

3       estimate?

4               MR. WEN:  Your Honor, we do -- I'm not -- I don't

5       believe I have any, like, forecast for how many total diversity

6       visas will be issued by the end of the fiscal year.  As I

7       mentioned, Your Honor, it is a fluid situation.  Adjudications

8       are happening, essentially, as we speak.  But, if the Court

9       wants an update, I can certainly try to get updated numbers and

10      engage with the State Department.

11              THE COURT:  Yeah, I think we certainly -- I'll ask

12      you to do that as we get towards the end of the call and talk

13      about next steps and at least one interim date, if not more,

14      just to get updated numbers from the government on where we

15      stand with issuance -- processing and issuance.

16              Okay.  All right.  So let me then turn to the

17      plaintiffs here.  And, you know, obviously plaintiffs have a

18      different take on how -- on the efforts that the State

19      Department has been making.  But I want to hear from plaintiff.

20      Mr. Kuck or --

21              MR. KUCK:  Thank you, Your Honor.  Charles Kuck, Your

22      Honor.  Thank you.

23              Earlier the Court mentioned that State had somehow

24      issued upwards of 500 visas.  That's not true.  I mean, it's

25      not true.  We've had -- not counting the one reissue that was

1    done after the Court's order, we've had six out of 81 families

2    that had their visas issued.  Now, I don't know the exact

3    numbers for the Mohammed and Fonjong plaintiffs, but I think

4    the numbers are pretty consistent, Your Honor.

5             THE COURT:  Mr. Kuck, if I can just interrupt.  Look,

6    I'm just going off of the State Department's reports.

7             MR. KUCK:  I understand, Your Honor.  And that's

8    where our concern is, is those reports don't reflect the

9    reality of our plaintiffs on the ground.  Now, we're only

10   tracking our plaintiffs.  There may be other non-plaintiffs --

11   we know, for example, they have issued visas to non-plaintiffs,

12   and that's great, and there's lots of places in the world where

13   we don't have plaintiffs that they should be issuing visas to

14   non-plaintiffs, if they're truly complying with the Court's

15   order in good faith.

16            But we know that, for example, they are setting

17   interviews in places that literally our clients cannot get to.

18   That's not good faith compliance.  They are setting interviews

19   in places where our clients cannot comply with the law --

20   medical exams, for example -- prior to the end of the period.

21   In the Aker case, for ten days they didn't do anything for our

22   clients because they didn't even have them on their list.

23            The reality here is, Judge, is that the State

24   Department is not making the efforts they need to make to

25   adjudicate as many diversity visas as they normally do in a

1      normal year.  They're not even close to that number.

2              THE COURT:  Well, Mr. Kuck, let me just go back a

3      little bit, what you said, and make sure I -- and numbers are

4      helpful.  The government said that among your clients -- and

5      when I say "your clients," I mean all of the plaintiffs in this

6      consolidated action, I don't mean just the clients that you

7      represent -- that they've identified, among those clients, 425

8      diversity visa cases, and out of those 425 cases they have

9      issued visas in 122 of those cases.

10             They refused visas to the principal applicants in 128

11     of those cases.  And Mr. Wen said some of those are

12     attributable to administrative shortcomings and can be cured,

13     which is how I got to about half, a little more than half.  It

14     is more than half, closer -- it's more than half of the total

15     number of cases that your clients are representative of.

16             MR. KUCK:  Your Honor, I think the issue -- I hate to

17     interrupt you, Judge, because I think the issue is you're

18     confusing numbers.  There are 423 family cases, but there's

19     over 950 people.  So if they've issued 122 visas, that's not

20     out of 400, that's out of 900.  So they're not close to

21     50 percent.  And I think that's where the confusion comes from.

22     And there is -- at their current pace, there's no way they'll

23     be able to adjudicate, and we know that they have to adjudicate

24     all of these -- just for the plaintiffs, by the 30th of

25     September.  Heck, we've sent out a plaintiff at the KCC for

1     some reason.

2              So I think the numbers are important to look at in

3     the context that they really do exist, not to confuse the

4     numbers between families and individuals.

5              THE COURT:  Well, maybe I'm not understanding them

6     because -- maybe I've been assuming that the visa issuance in a

7     case would extend to all members of a family who --

8              MR. KUCK:  That's not how we understand that they're

9     counting the number, because they have to count the number of

10    visas issued, not the number of family visas that are issued.

11    So, you know, in general terms, if there's 55,000 diversity

12    visas that are available, that's 55,000 people.  They might

13    have a family of one person, they might have a family of ten

14    people, and they're going to count for it however number there

15    are.  And so it's important not to look at just how many

16    families there are, but how many people there are, because

17    that's the limit to how many they can adjudicate in a fiscal

18    year.  And that's why when they tell you 122 have been issued,

19    that's visas to individuals, not to cases.

20             MR. WEN:  They've got --

21             THE COURT:  Hold on, Mr. Wen.  Real quick, I want to

22    make sure I understand.  I'm not sure I appreciated this issue,

23    this distinction.  But the 55,000 cap, is that a number that

24    applies to, you know, individual winners, or is that a number

25    that applies to individual winners plus family?  In other

1    words, if there is a winner of a diversity visa, that person

2    has a wife and two children, does that winner count as one

3    towards the 55,000 or does that person count as four towards

4    the 55,000?

5               MR. KUCK:  Generally each person counts as towards

6    the 55,000, not just the principal winner.

7               THE COURT:  Mr. Wen, is that your understanding?

8               MR. URENA:  Your Honor, my understanding is that the

9    55,000 person cap applies to each person.  These are, you know,

10   individual.  So that would include the residents.  The

11   residents would also -- that would all include that number.

12              THE COURT:  Okay.  All right.  So, I'm sorry, I cut

13   you off.  Mr. Wen, you were going to say something about your

14   numbers --

15              MR. KUCK:  Sorry.  Your Honor, that was Mr. Urena.  I

16   can understand how that would be --

17              THE COURT:  Okay.

18              MR. KUCK:  The numbers --

19              THE COURT:  Hang on a sec.

20              Mr. Wen, let me just make sure I understand

21   correctly.  So when you say that -- when, in your report, you

22   say that 122 -- you'd issued visas to principal applicants in

23   122 of the 425 cases, and that means you've issued diversity

24   visas to 122 principal applicants.  That means -- does that

25   number include the winner plus derivatives?  Or does that

1    number just simply include folks who won and there are

2    additional visas that are to be issued or will be issued to the

3    derivative beneficiaries of the diversity winner?  I hope that

4    question is clear.

5              MR. WEN:  Your Honor, this is James Wen for the

6    government.  I think I understand the Court's question.  State

7    Department tells me that 122 -- of the -- so these 122 cases

8    are cases in which -- you know, these are named plaintiff cases

9    in which visas were issued.  So, I guess maybe put it this way:

10   At least 122 individuals received visas, but these also, you

11   know, include, you know, family, too.  We try to get this

12   information -- we try to get a solid, you know, bead on this

13   information this morning because I understand that, you know,

14   the answer is a little bit complicated.

15             But because -- and the reason why we -- it's

16   complicated because it's kind of a moving target.  It's very

17   fluid.  But we estimate that it's 122 cases.  It kind of

18   represents 272 individuals who are associated with these cases

19   who are issued visas, if that helps at all.

20             THE COURT:  I'm sorry.  You said 122 cases is the

21   equivalent of about how many individuals?

22             MR. WEN:  Our estimate is 272 individuals who are

23   issued visas within these 122 cases in which these visas were

24   issued.  That's the State Department's estimate.

25             THE COURT:  Okay.  So if I'm comparing apples to

1    apples here -- and this is my confusion, the root of my

2    confusion, which is that I was assuming that the 120 -- you

3    know, in any event, so just to make sure I'm understanding,

4    when you say 127 individuals, so, basically, two out of --

5    let's say three out of nine, just shy of a third of all

6    plaintiffs, named plaintiffs, have actually received a visa.

7    Is that a fair summary then?  Mr. Wen?

8              MR. WEN:  Sorry.  James Wen for the government.  I

9    think so.  I have not really done the math on that.  So --

10             THE COURT:  I'm just basing that on you said that 122

11   cases is about the equivalent of 272 individuals.  I understand

12   there's just north of 900 plaintiffs, so that's where I get,

13   you know, just shy of 33 percent, about 30 percent of the

14   plaintiffs have actually had visas issued.

15             MR. WEN:  Yes, Your Honor.  And also, you know,

16   that -- so -- and I just want to put that in context with the

17   fact that State Department has issued 1,009 diversity visas to

18   both plaintiffs and to non-plaintiffs since, you know, the

19   Court's order.

20             THE COURT:  So that number of 1,000 diversity visas,

21   that's -- that includes the 272?

22             MR. WEN:  Yes.  I believe so, Your Honor.  That's my

23   understanding from the State Department.

24             THE COURT:  Okay.

25             MR. URENA:  Your Honor, Rafael Urena here.  I don't

1       think that number is jibing with what we've seen on the ground.

2       We ran a CEAC check.  CEAC is the database where individual

3       applicants can check the status of their visas.  We've seen, on

4       our cases, about 51 applications have been approved, 51 winners

5       have been approved out of 293.  That's about one in six, which

6       I believe is only 16 percent of the named plaintiffs.  And this

7       was supposed to be -- the named plaintiffs was the group that

8       was supposed to be the large push of the defendants.  And so,

9       these numbers are just not correlating.

10              What we expected to see, based on the Court's order,

11      was a list of named plaintiffs, which ones were issued, where

12      the status of the rest of them were, so we could have a better

13      picture of where we were at at this point.

14              I think what -- the status report that the government

15      has given us is what was all kind of confused, as to where

16      they're at, what we're doing, and where we're going to be at on

17      9-30.  So we're just -- these numbers are just not adding up,

18      from our perspective.

19              THE COURT:  Well, my reaction is as follows, which

20      is, you know, I did not specify in what form and manner they

21      ought to provide this report.  But I'll concede the aggregate

22      numbers are somewhat limiting and don't necessarily reflect --

23      obviously don't reflect what's happening in any individual

24      case.

25              Look, you know, seems to me that you all --

1    government's counsel and plaintiffs' counsel ought to be

2    engaged in a regular dialogue in terms of these plaintiffs, the

3    named plaintiff, in figuring out exactly what's happening to

4    them.  You know, your numbers ought not to be all that

5    different from one another and there ought to be some attempt

6    at real-time tracking of who among these plaintiffs is getting

7    their visas, getting interviews.

8         I guess the question -- I mean, the government is

9    essentially saying that nearly every plaintiff, named

10    plaintiff, at a minimum, could have been scheduled for their

11    interview.  Are you disputing that?

12         MR. KUCK:  Your Honor, Charles Kuck for Aker

13    plaintiffs.  We have -- most of our clients, except for two,

14    have been scheduled for their interviews sometime between now

15    and September 28th.  But many of them cannot go to the

16    interviews, so scheduling them is completely useless.

17         MR. URENA:  This is Rafael Urena for the Mohammed and

18    Fonjong plaintiffs.  We're unsure if the government is using

19    prior interviews in this calculation.  So, an individual might

20    have been scheduled in March and then put into 221(g) and not

21    been rescheduled.  So we don't even know whether or not these

22    individuals have been rescheduled to submit additional

23    documentation that would allow the visa to be issued.

24         And it seems, though, there is a late-night push to

25    get individuals scheduled.  We have one individual who was told

1    to go to another country for an interview the very next

2    morning.  So it just seems like they were trying to pad the

3    numbers at the very last minute, interviews.

4             THE COURT:  Okay.

5             UNIDENTIFIED SPEAKER:  Agreed, Your Honor.

6             THE COURT:  I mean, look --

7             MR. WEN:  Your Honor, James Wen for the government.

8    If I might just add something?

9             THE COURT:  Sure.  Go ahead.

10            MR. WEN:  Mr. Kuck has, you know, discussed his

11   dissatisfaction with the numbers so far.  He talks about how it

12   lags, you know, the numbers that you would expect in the normal

13   course.  I just want to emphasize that this is really not the

14   normal course, that we are dealing with a lot of very, very

15   challenging circumstances, especially due to COVID-19.  A lot

16   of different variables that have made what seems to be very,

17   very simple to the plaintiffs' attorneys, just incredibly

18   complicated.  The State Department has done -- has gone above

19   and beyond to try to -- to do its best to implement the Court's

20   order.

21            I think that this was a pretty significant

22   accomplishment in trying to basically, you know, issue 1009

23   diversity visas to both plaintiffs and non-plaintiffs, and that

24   number is going to grow.  And this was done in relatively short

25   order.  So I just don't want anyone to lose sight of that.

1    THE COURT:  No.  And if I didn't say it earlier, I

2    should have.  I do want to credit the State Department in what

3    I think it's accomplished to date.  The affidavits and the

4    declarations you submitted with your status report, you know, I

5    don't know how any reasonable interpretation of those can be

6    viewed as the State Department is dragging its feet after the

7    court's order.  I mean, there have been some hiccups along the

8    way, certainly, and that's to be expected.  But I don't -- I

9    certainly don't chastise the State Department in terms of what

10   it's doing and it's trying to drag its feet and not trying to

11   accomplish what I've asked them to accomplish.

12   MR. KUCK:  Your Honor --

13   THE COURT:  Mr. Kuck?

14   MR. KUCK:  Yes.  I'll let you finish.  I'm sorry.  I

15   didn't mean to interrupt you, Your Honor.  It's hard when

16   you've got to visualize where you are.

17   THE COURT:  That's one of the shortcomings of doing

18   these things telephonically.

19   It's not to say I've made any decisions in terms of

20   any additional relief that the plaintiffs might request.  So

21   that was --

22   MR. KUCK:  Your Honor, if I might add this, this

23   is -- what Mr. Wen just said is exactly why you have to extend

24   the deadline.  Last September they issued 6900 visas in

25   September of 2019.  So basically what they've done month to

1     date is 15 percent of the effort of last year.

2          Now, I understand that they're in a difficult

3     situation, but they're in a difficult situation because of what

4     they did, not because of what the plaintiffs did.  And that's

5     what's infuriating to the plaintiffs, Your Honor, is that they

6     feel like they've done everything they could to receive the

7     benefit that they feel they were entitled to --

8          THE COURT:  Mr. Kuck, if I can --

9          MR. KUCK:  Sorry, Your Honor.

10         THE COURT:  That's okay.  Look, I'm sympathetic.  I

11    mean, I really am.  But I think it's an overstatement to

12    say that -- or to suggest that the State Department needs to

13    hit the 100 percent number from a year ago to date.  That's

14    just not -- that just does not recognize -- it fails to take

15    into account the conditions that exist in the world we live in.

16         MR. KUCK:  And we agree, Your Honor.  We didn't

17    expect that either.

18         THE COURT:  I'm not saying -- I'm not suggesting that

19    if we're sitting here in another week and the dial hasn't moved

20    any further, that that would be acceptable.  But, you know, to

21    say that last year, you know, they processed 6900 applications

22    in September and this time around they've only done 1,000, you

23    know, it, understandably, going to be a lesser number.

24         And the things that I've been grappling with, and

25    I'll tell you right now, this is something everybody is going

1   to need to think about.  You know, if the plaintiffs want some

2   kind of relief, additional relief that asks me to reserve a

3   certain number of additional visas after September 30th for

4   processing, that number has got to, in some rational way, be

5   tied to the State Department's refusal to process the visas due

6   to the proclamation.

7            MR. KUCK:  We agree, Your Honor.  We agree.

8            THE COURT:  To put a finer point on it, you know,

9   that number can't be 100 percent.  And the reason it can't be

10  100 percent is that some number of these applications aren't

11  getting processed and haven't been processed by virtue of

12  COVID, and COVID conditions in particular countries and

13  individual circumstances that might require someone, for

14  example, to have to travel to another country because the

15  conflict in a particular country is not operating in the same

16  way it would be otherwise.

17           You know, that is some pretty rough justice to try to

18  figure out what is a number that is a rough approximation of

19  what the State Department can reasonably be expected to

20  produce, even under these present circumstances.

21           MR. KUCK:  Your Honor, I might add this that the

22  Court needs to take into consideration:  In a normal year the

23  State Department and consulates would not just be processing

24  diversity visa lotteries, they would be -- cases, they would be

25  processing family-based cases, employment-based cases.  They

20

1    are not processing those cases right now.  That is an entire

2    workload that is far more than the workload for diversity visa

3    lottery cases that they're not doing.

4         So the reality is, there is additional capacity that

5    they are not using.  And I would brief this, but I want the

6    Court to know, we agree, we don't think that the Court should

7    extend it for a year.  But there is five and a half months they

8    didn't process cases.  And they can do a lot of work in five

9    and a half months if they're focused, like they have been for

10   the last two weeks.

11        MR. URENA:  Rafael Urena, Your Honor, here with

12   Mohammed and Fonjong plaintiffs.

13        To the point Your Honor is making, we can look to

14   where the issue started.  If the government had not implemented

15   unlawful termination and suspension of the DVA adjudications,

16   then at this point there would be no issues.  But we can point

17   back all the way to March that they haven't issued --

18        THE COURT:  But, Mr. Urena, we can't go all the way

19   back to March and that's because, you know, at least for two

20   months, until at least the middle of June, you know, the State

21   Department was operating under an order not to process anything

22   except for -- all routine processing was put on pause because

23   of COVID-19, not just in the United States but throughout the

24   world.

25        It's not clear to me how many diversity visa

1    applications they would have processed in April, May, June, in

2    any event.  And that's a difficulty I'm having in figuring out

3    what's a reasonable expectation, if I'm going to grant

4    additional relief.  You know, it's not going to be 55,000, that

5    doesn't make any sense because that would fail to account for

6    the real world conditions.  And ultimately I've got to have a

7    causal effect between the relief and the violation.  And that

8    just can't be accomplished and wouldn't be accomplished by

9    saying, you know, I'm going to reserve 55,000, minus whatever

10   you processed to September 30th.

11        MR. BLESS:  Your Honor, this is Jesse Bless on behalf

12   of the Gomez plaintiffs.  Just two issues.  Number one, we

13   recognize the deferred ruling on our motion for class

14   certification for DV applicants, and hope that that will be

15   encompassed on whatever briefing and ruling comes to issue.

16   You know, we do know that 23 percent is not sufficient.  I

17   think we can all agree on that.  And where -- I think the issue

18   now is where between 23 percent and 100 percent of 55,000.

19        We do know that when the consulates reopened and

20   started processing these.  And, you know, maybe it's not March,

21   but it's certainly not September.  So, you know, I think

22   there's a couple marks we can use.  I agree it's difficult, but

23   we hope that classification and a number above, or closer to,

24   you know, 80 to 90 percent, and not 50, is sufficient.

25        THE COURT:  Okay.  I mean, remember, you know, I

1     think it was June 15th was the date of the guidance that -- you

2     know, the diplomacy strong guidance that authorized consulates

3     to potentially start opening and prioritizing the visas that

4     they were processing.  The same guidance that said, you know,

5     not to process diversity visa applicants because of the

6     proclamations, except for, you know, Phase 3, and then give

7     them the lowest priority.  But anyway, you all get my point.

8     Let's try to get to the point when we figure out where we're

9     going from here.

10          I think what I would like to do is as follows:  You

11    know, I'll give everybody until Friday to brief for me any

12    additional relief that the plaintiffs -- the plaintiffs are

13    asking for additional relief in the form of reserving some

14    number of diversity visas beyond September 30th.  I would like

15    to know, one, you know, each side's position on whether I have

16    the authority in the first place to do that.  I know that's

17    been briefed a little bit and we had some discussion about it

18    and I deferred the issue previously, but I would like briefing

19    on that.

20          And then the second issue is, to the extent I have

21    that authority, what the right number is.  Because as I said, I

22    don't think the right number is 55,000, but I would like some

23    discussion about what the right number is and some way of

24    getting to a number that reflects, I think -- reflects what I

25    thought -- what I ruled was the legal error, which was the

1    non-processing of these diversity visa applications in light of

2    the proclamations.  And, you know, how one teases out that

3    effect from the effect of closing of the consulates due to

4    COVID, the slow down of processing due to country conditions is

5    a hard question, it seems to me, and I would like to hear from

6    the parties on that issue as well.

7           So if you all want to file something by Friday, that

8    would be helpful.  I think what I'd also like the government to

9    do, and it need not be in a great -- need not be in the detail

10   that is present in a status report, but I would like an update

11   on the numbers by Friday.

12          MR. KUCK:  Your Honor, if I may ask -- this is

13   Charles Kuck for the plaintiffs -- could we get that number

14   update by, like, noon, so we can include that information in

15   our briefing later in the day?

16          THE COURT:  Sure.  That's fine.  Why don't we get an

17   update by noon on Friday, and then file your briefing on Friday

18   itself.

19          Now, look, I would urge you all to talk to one

20   another, and I don't know how much of that is happening.  But,

21   you know, it wouldn't seem, to me, to be a heavy lift to be

22   exchanging spreadsheets in which each side is communicating its

23   understanding of where these particular named plaintiffs are.

24   We shouldn't have to have -- we shouldn't be on different --

25   shouldn't be any real daylight, it seems to me, with respect to

1          what's happening with the named plaintiffs.  The lines of

2          communication are open, it seems to me that that's something

3          that ought not to be a real matter of dispute.

4                    But, in any event, so I will ask for additional

5          briefing on Friday.

6                    Can I ask whether -- whether counsel would be

7          available on Monday for a further hearing?  It is a Jewish

8          holiday and I'm going to be sensitive to anybody that might be

9          affected by that.  On the other hand, time is of the essence

10         here.

11                   MR. KUCK:  Charles Kuck for Aker, Your Honor.  We're

12         available whenever the Court sets a hearing, Your Honor.

13                   MR. WEN:  It works.  James Wen for the government, as

14         well.

15                   THE COURT:  Let's set the time down for 2 o'clock on

16         Monday for hearing and we'll have a further discussion about

17         where things stand then and I'll hear argument on the requested

18         relief, in terms of those additional visa lottery numbers after

19         September 30th.

20                   Okay.  I've got two more issues I want to raise.  One

21         concerns the kind of -- we'd discussed the issue of the

22         medical -- the expiration of the medicals -- medical clearances

23         and whether the government was going to -- or, the State

24         Department was going to raise that issue with the CDC.  And,

25         Mr. Wen, you'd -- I don't think you committed to anything, but

1    at least left that as a possibility.  Can you provide any

2    update on that front?

3         MR. WEN:  Yes, Your Honor.  I've inquired of the

4    State Department and the State Department has indicated to me

5    that they're declining the requests for the extension of the

6    validity of the medical examination.  They've raised -- the

7    concern that they've raised is just in light of the pandemic

8    and the medical issues surrounding that.  That's what the State

9    Department has indicated to me.

10        THE COURT:  And so remind me again how long the

11   medical certifications are valid.

12        MR. WEN:  Your Honor, James Wen for the government.

13   The medical -- my understanding, according to the State

14   Department, is generally these -- the validity of the medical

15   examination is generally good for six months.  So that's tied

16   to the validity of the visa itself.

17        THE COURT:  Okay.  So your understand is that the

18   medical evaluation is good for essentially the duration.  Is it

19   coextensive with the visa?

20        MR. WEN:  That is my understanding from the State

21   Department, it is generally coextensive.  They're tied

22   together.

23        MR. KUCK:  Your Honor, this is Charles Kuck.

24   Depending on the country.  Many countries have a three-month

25   medical exam and the visa is codependent on that -- is

1    coterminous with that three-month visa, the three-month medical

2    exam.  So it depends on the country.

3            THE COURT:  So there are two different categories, or

4    two different durations for diversity visa -- longer for

5    diversity visas?  Six months and three months?

6            MR. KUCK:  Yes.  It depends on the visa, the validity

7    of the medical exam itself.  For example, in Russia, if I'm not

8    mistaken, a medical exam is good for 90 days, so the visa would

9    be issued for 90 days.  Which would mean if they issued it on

10   the 30th of September, it would expire before the proclamation

11   expired and they would have to ask for re-issuance of their

12   visa to extend it beyond the end of the -- end of the fiscal

13   year -- the end of the calendar year in order to benefit, if

14   the proclamation goes away.

15           THE COURT:  And can a visa be reissued after the

16   fiscal year?

17           MR. KUCK:  That is a great question, Your Honor, and

18   that is actually something we will address in our brief on

19   Friday.  Technically, no, it cannot be reissued beyond the end

20   of the fiscal year for which it was issued.  But that's not a

21   legal issue, that is actually a FAM no., which is the notes

22   that control the Department of State's internal process.  It's

23   not necessarily a regulation.  So, we will be asking the Court

24   for that in our order, that should that issue arise, that there

25   be an opportunity to request a visa re-issuance.

1          THE COURT:  Okay.  Well, you know, I'll look forward

2     to hearing from the parties on that issue as well.

3          And then, finally, at least in terms of my list of

4     things to discuss this afternoon, there is this recently filed

5     case from Friday -- I don't have the case number in front of

6     me, but the lead plaintiff is Kennedy.  What is it -- I guess

7     it's Kennedy versus Trump, it's 20-CV-2639.  What's the status

8     of that case in terms of service?  And what is the -- what are

9     the parties' positions in terms of the pending motion for TRO

10    in that case?

11         MR. URENA:  Your Honor, Rafael Urena here.  Service

12    will be completed as of tomorrow.  There's COVID-related

13    restrictions that the DOJ has implemented that prevent

14    in-person filing.  So actual service should be completed

15    tomorrow.  We also e-mailed all of the documents and papers to

16    the government counsel already.  I think that was completed on

17    Thursday.  So, we would like to be heard on that case as soon

18    as possible.

19         THE COURT:  Okay.

20         MR. WEN:  Your Honor, James Wen for the government.

21    I'm not the attorney on that case -- maybe it eventually will

22    be assigned to me -- but, you know, we do not waive formal

23    service on that case.  And I don't have any further updates,

24    you know, regarding the status.

25         THE COURT:  Well, I mean, look, you're right, the

1   government hasn't formally been served.  On the other hand, you

2   know, I don't need to wait formal service to issue a TRO.  So,

3   you know, the government is certainly aware of the case, you

4   can proceed with the papers.  The question is, you know, do you

5   intend to respond to the TRO motion, now that you've been given

6   notice of it?

7          Mr. Wen?

8          MR. WEN:  Sorry, Your Honor.  Well, so, I think the

9   short answer is simply I need to confer with my superiors on

10  moving forward with that case.  And, you know, as I think the

11  Court knows, I think this case is also -- you know, significant

12  undertaking, all of these cases.  So I think I need to confer

13  on next steps with respect to the Kennedy case.

14         THE COURT:  Okay.  You know, I have questions in my

15  mind as to the appropriateness of relief or the need for relief

16  in that case.  On the other hand, you know, there's been a

17  motion filed, a case filed, a motion filed for temporary

18  restraining order, a PI, I've got to deal with it, and I think

19  the government has to deal with it.

20         So, you know, today is the first business day after

21  we've been given notice.  And so, you know, I can appreciate

22  you need some time to think about what the government's

23  position is going to be.  But, I am -- talk tomorrow about that

24  case, see where the government stands on it, and then we can

25  figure out what we're going to do with that case.  And, you

1    know, reality is that these thing just may all have to happen

2    at once.

3              So, can you all be available at 4:30 tomorrow?  I

4    have another hearing, substantive hearing at 2 o'clock, so I

5    can't do it really before then.  So could you all be available

6    at 4:30 tomorrow?

7              MR. KUCK:  Yes, Your Honor.

8              THE COURT:  Mr. Wen?

9              MR. WEN:  Yes, Your Honor.  The government will make

10   itself available for the hearing tomorrow at 4:30.

11             THE COURT:  Okay.  All right.  So --

12             MR. WEN:  I'm sorry, Your Honor, I just wanted to

13   clarify a couple of points.  I don't mean to talk out of turn,

14   but the briefing that's due Friday, is that -- is the

15   government responding to plaintiffs' points, or is everyone

16   submitting their submission by Friday on whether additional

17   relief is appropriate?

18             THE COURT:  I mean, I think it's the latter.  I'm not

19   sure -- well, I would like you to understand, Mr. Wen, what the

20   plaintiffs are asking for; they set it out in their status

21   report.  So I would like the government's position on the

22   relief that's been requested there.  There just is not time to

23   have, you know, serial briefing here.  And plaintiff moved for

24   something, the government has an opportunity to respond to it.

25   So the best I can do, in the little bit of time we have, is to

1    have you all file something simultaneously on Friday and

2    everybody will have an opportunity to weigh in on Monday.

3            MR. WEN:  Yes, Your Honor, I understand.  And I

4    wanted to, you know, make a point about Mr. Kuck's statements

5    about the validity of the medical exam.  He mentioned something

6    about a three-month validity for certain visas.  You know,

7    three months validity is based on -- my understanding from the

8    State Department, they say that the three-month validity is

9    based on the patient's symptoms.  So, for example, someone with

10   symptoms of tuberculosis, you know, that they may have -- their

11   validity of the medical exam is -- may be shorter than the six

12   months, which is -- my understanding is that's the general

13   case.

14           So, that's the way it works, based on the unique

15   medical circumstances, not really based on, you know, the

16   country or anything like that.  That's what -- my understanding

17   from the State Department.  I just wanted to, you know, put

18   that out there.

19           THE COURT:  Look, I mean, that's an issue, but it's

20   been raised and so we ought to get some clarification on what

21   the -- you know, what the actual lay of the land looks like on

22   that front.

23           Okay.  All right.  Is there anything else anybody

24   else wants to raise before we adjourn?

25           MR. URENA:  Yes, Your Honor.  This is Rafael Urena.

1    I have a couple of points that I wish to raise.  We have 48

2    diversity visa winners that are still going to be refused under

3    212(f) refusals on PP 9645 and PP 9983.

4            THE COURT:  I don't know which -- Mr. Urena, I don't

5    know which confirmation --

6            MR. URENA:  Yes, Your Honor.  Colloquially, we refer

7    to one as the Muslim ban and the second one as the Africa ban.

8    This was 2017 travel-related bans.  The defendants have

9    basically invited the Court to issue an order telling them to

10   stop refusing people under 212(f), even though the Court has

11   repeatedly told them that's not a basis for refusal.  So that's

12   what the 50 of our winners of 300 or so, 20 percent or

13   something -- I don't have the math on top of my head -- are

14   going to be refused under that unlawful guidance that the Court

15   has said, you know, just doesn't add up with the statutes.

16           So, we invite the Court to -- if defendants need an

17   order from the Court to not do that, we would invite the Court

18   to amend its order so they wouldn't be able to do that.

19           MR. KUCK:  Charles Kuck for the Aker plaintiffs.

20   That is an issue, Your Honor, that we also raised in our recent

21   filing and in our other filing on this issue.  They are still

22   denying visas to people under 212(f), contrary to this Court's

23   order.  And the Kennedy case actually challenged the TRO

24   challenges, the defendants' 212 regime.  We named it a 212

25   regime, that defendants still are using that statute as a basis

1    to refuse visas, even though this Court has stated time and

2    time again that is not a valid basis to refuse a visa.  That's

3    one of the reasons we filed a TRO in Kennedy, just on this

4    point right here.

5              THE COURT:  Well, what are you asking is me to do?

6    If you're asking me at this point to amend the order, you know,

7    this is another extension of this, that is, you know -- how can

8    I say it?  Let's put it this way:  It's another option.  And,

9    you know, the last time we convened concerning the government's

10   implementation of the additional two-week quarantine period,

11   that struck me as something that was an outgrowth of my order

12   and an effort to implement that order.  And that's why I felt

13   that I could and it was within the scope of my authority to

14   issue relief as to that step.  I'm not so sure that's true with

15   this and the other proclamations and how the State Department

16   is approaching those.

17             MR. KUCK:  This is something that would be squarely

18   before the Court tomorrow at 4:30 p.m. on the Kennedy v. Trump

19   case.

20             THE COURT:  We'll talk about it tomorrow.

21             MR. KUCK:  One more point, Your Honor.  I think there

22   may be some differing opinions as to the relief available for

23   the plaintiffs.  We ask that the Mohammed and Fonjong

24   plaintiffs be able to submit their own status report.  Would

25   that be something the Court would be amenable to?

1          THE COURT:  No, just put everything in one brief.  I

2     mean, if you all have a different view than other plaintiffs,

3     just put it all in one brief.  I'll ask you all to limit the

4     briefs to 20 pages, double spaced.  That's more than enough,

5     you know, to put forth your views on any additional relief, on

6     the propriety of an order or the lack of propriety of any

7     additional order.

8          UNIDENTIFIED SPEAKER:  Okay.

9          UNIDENTIFIED SPEAKER:  Yes, Your Honor.

10          UNIDENTIFIED SPEAKER:  Yes, Your Honor.

11          THE COURT:  All right.  Anything else, anyone?

12          MR. KUCK:  Yes, Your Honor, one last question.  I

13     think there was some sort of maybe confusion as to spreadsheet.

14     We provided a spreadsheet to the defendants already.  I think

15     it would be very easy for defendants and plaintiffs to operate

16     off of the spreadsheet, and I think it would be beneficial for

17     the Court.  If we just have a -- maybe an order from the Court

18     that we should use the spreadsheet to apprise the Court of the

19     actual number, so there's no disagreement.  I think that would

20     be very, very, very easy for plaintiffs and defendants to put

21     together very, very quickly.

22          THE COURT:  Mr. Wen, do you have any objection to

23     working off of a spreadsheet that will be used to update me on

24     Friday?

25          MR. WEN:  Your Honor, James Wen for the government.

1    So, I mean, there has been a significant engagement between the

2    government and the plaintiffs' counsel.  We certainly exchanged

3    spreadsheets for the purpose of double checking our list.  I

4    mean, there's some hiccups there, but we're able to work a lot

5    of these issues out.  I don't know if a Court's order is

6    necessary, as far as that goes.  I mean --

7         THE COURT:  That's what -- what would be helpful to

8    me, and, you know, this will require some work on your part, is

9    the preexisting spreadsheet, seems to me, all you need to do is

10   add a column to that spreadsheet, or two, that indicates the

11   status of the plaintiff.  And if you could work together to put

12   that kind of spreadsheet together, submit it to me on Friday,

13   that will give me a sense of where the individual plaintiffs

14   are.  And, ideally, you all will be working off the same

15   spreadsheet and one that you all are in agreement on.

16        So I'll just ask that, you know, that be included

17   with the updates on Friday.  And I know that creates a little

18   bit of extra work -- it does create extra work, in addition to

19   everything else that's happening, but, you know, I think

20   that's, frankly, the only way to really get the answers that we

21   need here, that I need in order to make a decision about what

22   to do here.  Okay.

23        UNIDENTIFIED SPEAKER:  Thank you for your time today,

24   Your Honor.

25        THE COURT:  Thank you, everyone.  Bye.

                          *   *   *

1                   CERTIFICATE OF OFFICIAL COURT REPORTER

2

3              I, JANICE DICKMAN, do hereby certify that the above

4       and foregoing constitutes a true and accurate transcript of my

5       stenographic notes and is a full, true and complete transcript

6       of the proceedings to the best of my ability.

7              This hearing was held telephonically in compliance

8       with the COVID-19 pandemic stay-at-home orders and is,

9       therefore, subject to the limitations associated with the use

10      of current technology, including but not limited to telephone

11      signal interference, static, signal interruptions, and other

12      restrictions and limitations associated with remote court

13      reporting via telephone, speakerphone, and/or

14      videoconferencing.

15

16                             Dated this 24th day of September, 2020

17

18

19                        _____

20                        Janice E. Dickman, CRR, CMR, CCR
                          Official Court Reporter
21                        Room 6523
                          333 Constitution Avenue, N.W.
22                        Washington, D.C.  20001

23

24

25