**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| _____ | ) | |
| **DOMINGO ARREGUIN GOMEZ, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Case No. 20-cv-01419 (APM)** |
| | ) | |
| **DONALD J. TRUMP, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |
| | ) | |
| **MOHAMMED ABDULAZIZ** | ) | |
| **ABDUL MOHAMMED, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Case No. 20-cv-01856 (APM)** |
| | ) | |
| **MICHAEL R. POMPEO, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |
| | ) | |
| **AFSIN AKER, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Case No. 20-cv-01926 (APM)** |
| | ) | |
| **DONALD J. TRUMP, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |
| | ) | |
| **CLAUDINE NGUM FONJONG, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |

|  |  |  |
|---|---|---|
| v. | ) | **Case No. 20-cv-02128 (APM)** |
| | ) | |
| **DONALD J. TRUMP, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

|  |  |  |
|---|---|---|
| _____ | ) | |
| | ) | |
| **CHANDAN PANDA, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Case No. 20-cv-1907 (APM)** |
| | ) | |
| **CHAD F. WOLF, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## MEMORANDUM OPINION AND AMENDED ORDER

In a Memorandum Opinion and Order issued on September 4, 2020, the court ordered Defendants to "undertake good-faith efforts, directly and through their designees, to expeditiously process and adjudicate DV-2020 diversity visa and derivative beneficiary applications and issue or reissue diversity and derivative beneficiary visas to eligible applicants by September 30, 2020, giving priority to the named diversity visa Plaintiffs," in these consolidated actions.  Though Defendants have issued more than 3,000 diversity visas since the court's order, many of the Plaintiffs' applications have still not been finally adjudicated, and approximately 40,000 of the 55,000 diversity visas Congress has made available for Fiscal Year 2020 remain unissued. Plaintiffs fear that if no further relief is ordered, these unissued visas will lapse pursuant to the Immigration and Nationality Act ("INA"), which states that diversity visa selectees "shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected."  8 U.S.C. § 1154(a)(1)(I)(II).  The fiscal year expires today, September 30, 2020, at

2

11:59 p.m.  Plaintiffs ask the court to certify two classes of DV-2020 Selectees who have not yet received or been reissued visas, and to order Defendants to reserve 30,000 diversity visa numbers pending final resolution of this matter and to renew any FY 2020 diversity visas that expire after the end of the fiscal year.  For the reasons that follow, the court grants in part and denies in part Plaintiffs' motions.

## I.   BACKGROUND

In its Memorandum Opinion and Order issued on September 4, 2020, the court held that Plaintiffs were likely to succeed on their claims that the U.S. Department of State (1) had arbitrarily and capriciously refused to review and adjudicate DV-2020 Selectees' visa applications pursuant to the State Department's implementation of Presidential Proclamation 10014 (the court refers to this as the "No-Visa Policy"), (2) had unreasonably delayed in processing those applications, and (3) had arbitrarily and capriciously failed to explain its exclusion of such applications from its "COVID-19 Guidance" setting forth the categories of visa applications eligible for "mission critical" and "emergency" processing.  *See Gomez v. Trump*, No. 20-CV-01419 (APM), 2020 WL 5367010, at *26–33 (D.D.C. Sept. 4, 2020).

As a remedy for these violations, the court ordered Defendants (other than President Trump) to "undertake good-faith efforts, directly and through their designees, to expeditiously process and adjudicate DV-2020 diversity visa and derivative beneficiary applications and issue or reissue diversity and derivative beneficiary visas to eligible applicants by September 30, 2020, giving priority to the named diversity visa Plaintiffs," in these consolidated actions.  *Id.* at *38 ¶ 2.  The court declined to rule on Plaintiffs' request to order Defendants to reserve unissued DV-2020 visas past the September 30 deadline or until a final adjudication on the merits, but promised to revisit the issue closer to the deadline.  *Id.* at *38 ¶ 4.  The court also denied without prejudice the

*Gomez* and *Aker* Plaintiffs' motions to certify classes of DV-2020 Selectees, finding that the relief issued under the Administrative Procedure Act would benefit all putative class members. *Id.* at *37, *38 ¶ 5.

Between September 5, 2020 and September 24, 2020, when the court last received an update on Defendants' efforts to comply with the court's Order, the Department of State had adjudicated 5,093 diversity visa applications, issuing 3,208 diversity visas and refusing 1,885 applications. *See* Defs.' Suppl. Report On Good Faith Efforts to Implement the Prelim. Inj., ECF No. 143 [hereinafter Defs.' Suppl. Report], Decl. of Brenda L. Grewe, ECF No. 143-2 [hereinafter Grewe Decl.], ¶ 5. These additional visa issuances bring the total number of diversity visas issued for FY 2020 to approximately 15,401[1] as of September 24, 2020, roughly 28 percent of the 55,000 visas annually afforded under the INA. *Id.* ¶ 6.

During the same time, and consistent with the court's direction to prioritize them, the State Department issued 523 visas to the 974 Named Plaintiffs with DV-2020 applications in these consolidated actions. Defs.' Suppl. Report, Decl. of Laura Chamberlin, ECF No. 143-1 [hereinafter Chamberlin Decl.], ¶¶ 3–4. Consular officers refused visas to 149 Named Plaintiffs pursuant to Section 221(g) of the INA, 8 U.S.C. § 1201(g), and refused 73 of their applications on other grounds. *Id.* ¶ 5. An additional 164 Named Plaintiffs were scheduled for interviews as of September 24, but had not yet received final decisions on their applications.

The INA provides that foreign nationals selected in the DV lottery "shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected," in this case, September 30, 2020. 8 U.S.C. § 1154 (a)(1)(I)(II); *see also* 22 C.F.R. § 42.33(a)(1);

---

[1] This figure includes diversity visa numbers issued by the U.S. Citizenship and Immigration Services to applicants already in the United States. *See* Grewe Decl. ¶ 6. Though not technically visas, diversity visa numbers issued to these applicants count against the total 55,000 diversity visas numbers available. Courts use the term "diversity visas" to describe both processes. *See Almaqrami v. Pompeo*, 933 F.3d 774, 776 n.1 (D.C. Cir. 2019).

31 U.S.C. § 1102.  With the September 30, 11:59 p.m. deadline rapidly approaching, Plaintiffs contend that Defendants' efforts to comply with the court's September 4 Order are too little, too late.  *See* Pls.' Joint Submission Regarding Further Relief, ECF No. 146 [hereinafter Pls.' Mot. for Suppl. Relief].  Plaintiffs assert that additional relief is necessary both to cure Defendants' failure to comply in good faith with the court's previous order, and to adequately remedy the harms experienced by DV-2020 Selectees as a result of Defendants' months-long refusal to process DV-2020 visa applications.  *Id.* at 9–14.  Plaintiffs ask the court to order Defendants to reserve approximately 30,000 FY 2020 diversity visa numbers for adjudication after September 30 pending a final decision on the merits.  *Id.* at 14; 9/28/2020 Oral Arg. Draft Hr'g Tr. [hereinafter Draft Hr'g Tr.], at 13–15 (agreeing that if diversity visa applications are reserved after the fiscal year that it is "not paramount that they be processed immediately after September 30th").  They also ask the court to direct Defendants to renew FY 2020 diversity visas after the end of the fiscal year, as necessary to permit the visa recipients to have a reasonable opportunity to enter the country.  *Id.* at 18.  In addition, the *Gomez* and *Aker* Plaintiffs renew their motions for class certification.  *Gomez & Aker* Pls.' Renewed Mot. for Class Cert., ECF No. 144, at 1–6 [hereinafter Pls.' Renewed Class Cert. Mot.].  Defendants filed their opposition to Plaintiffs' requests for additional relief on September 25, 2020, *see* Defs.' Suppl. Br., ECF No. 145 [hereinafter Defs.' Opp'n to Suppl. Relief], and September 30, 2020, *see* Defs.' Renewed Opp'n to Pls.' Renewed Class Cert. Mot., ECF No. 150.  The court heard oral argument on the matter on September 28, 2020.  *See* 9/28/2020 Minute Entry.

## II.      DISCUSSION

The court first discusses Plaintiffs' requests for supplemental equitable relief and then turns to the *Gomez* and *Aker* Plaintiffs' motions for class certification.

### A.      Supplemental Equitable Relief

Plaintiffs primarily ask the court to order Defendants to reserve diversity visa numbers for adjudication after September 30 pending a final decision on the merits.  Defendants assert that such relief is legally unavailable, unnecessary, and overbroad.  The court discusses each contention in turn.

#### 1.      Authority to Issue Relief

Defendants argue that the "INA's plain text imposes a limitation on DV eligibility based on the close of the fiscal year," and that "courts may not craft an equitable remedy where a legislative temporal window has already closed."  Defs.' Opp'n to Suppl. Relief at 2, 5.  Plaintiffs retort that granting their requested relief would create no conflict with the INA where, as here, Plaintiffs have sought and received some relief before the end of the fiscal year.  Pls.' Mot. for Suppl. Relief at 7–8.

Plaintiffs have the better argument.  In the case most comparable with this one, *P.K. v. Tillerson*, a group of DV-2017 plaintiffs sought a preliminary injunction, alleging that the State Department had unlawfully failed to process their diversity visa applications pursuant to the agency's implementation of Executive Order No. 13,780.  302 F. Supp. 3d 1 (D.D.C. 2017).  The *P.K.* court found that it could not direct the State Department to process the plaintiffs' visas because of ongoing litigation at the Supreme Court over the validity of E.O. 13,780, and so it directed the State Department to "reserve any unused visa numbers for FY 2017 for processing following the Supreme Court's decision."  *Id.* at 9–11.  After the fiscal year deadline passed and

Executive Order 13,780 had lapsed on its own terms, the State Department argued that the *P.K.* action was moot.  *See Almaqrami v. Tillerson*, 304 F. Supp. 3d 1 (D.D.C. 2018).  The court reiterated its earlier ruling that if it "were to require the State Department's full compliance with its prior order, it would be within its inherent power to enforce prior orders to do so," but it nevertheless dismissed the action as moot, finding that because the Supreme Court had dismissed the challenge to Executive Order No. 13,780 as moot, there was no additional relief that the court could grant the plaintiffs.  *Id.* at 6–8.

On appeal, the D.C. Circuit reversed, holding that the district court improperly dismissed the case because it was "not implausible" that the court's pre-September 30 Order left "open the possibility" that additional relief would be available notwithstanding the mootness of the challenge to Executive Order 13,780.  *Almaqrami v. Pompeo*, 933 F.3d 774, 781–82 & n.2 (D.C. Cir. 2019). The Circuit also rejected the Government's argument that the case was moot because the fiscal year deadline had passed, finding that it was "not implausible that the district court here could rely on equity to take steps to compel the issuance of diversity visas, notwithstanding the end of FY 2017."  *Id.* at 781 (cleaned up).

Though the D.C. Circuit never reached the merits of the district court's authority to issue post-fiscal year relief, its reasoning is instructive.  The Circuit explained that "[c]ourts are often asked to intervene in disputes over diversity visas," and that relief is unavailable where the plaintiff fails to file her lawsuit until after the relevant fiscal year has passed, or where the court fails to issue any relief until then.  *Id.* at 780.   In contrast, where "[t]he plaintiff files suit and the court grants some relief—but not the visa—before October 1 . . . , the court might lawfully take steps to compel the government to process the plaintiff's application and issue her a diversity visa" even "after the fiscal year has ended."  *Id.*  In such an instance, the court observed, a post-deadline order

would permissibly "give effect to the district court's prior directive, entered before the end of the selection FY, to preserve an essential (and otherwise expiring) ingredient of relief." *Id.* at 782.

Courts in other circuits also recognize this temporal distinction on the availability of relief for diversity visa selectees. In *Paunescu v. INS*, 76 F. Supp. 2d 896 (N.D. Ill. 1999), for example, the district court ordered the Government to adjudicate DV-1998 visa applications before the September 30 deadline, and after the Government failed to do so, the court ordered it to "process [the] applications and to grant [the applicants] all relief to which they would have been entitled had defendants processed their applications in a timely fashion"—even though the order compelling such relief was issued more than a year after the 1998 fiscal year had closed. *Id.* at 903. Likewise in *Przhebelskaya v. USCIS*, 338 F. Supp. 2d 399 (E.D.N.Y. 2004), the district court had issued an order on September 24, 2003, compelling the Government to adjudicate diversity visa applications, and when the Government failed to do so within the fiscal year, the court issued an order compelling adjudication of the applications after the fiscal year deadline, *see id.* at 406. The court explained that "the expiration of the statutory deadline" did not "extinguish[] the [defendants'] obligation to comply with the court's order," and that where the court has ordered the Government to act on a diversity visa application, "the court has the power to vindicate its own order" by compelling post-deadline adjudication. *Id.* at 403–04.[2]

Defendants attempt to distinguish *Paunescu* and *Przhebelskaya* on the ground that they involved diversity applicants already inside the United States seeking an adjustment of status,

---

[2] Likewise, in the cases where diversity visa plaintiffs have been unable to obtain relief because either the court or plaintiff did not act before the fiscal year, courts have recognized that it is "a different case" where "the district court order[s] the [Government] to adjudicate [visa applications] while the [Government] maintain[s] the statutory authority to issue the visas." *Iddir v. INS*, 301 F.3d 492, 501 n.2 (7th Cir. 2002); *see also Coraggioso v. Ashcroft*, 355 F.3d 730, 734 n.8 (3d Cir. 2004) (observing that the court might have afforded relief if petitioner had "sought relief prior to the expiration of the . . . fiscal year"); *Ahmed v. DHS*, 328 F.3d 383, 387 (7th Cir. 2003) (*Iddir* properly "recognized that the case would have been different if it had been filed before the end of the visa year, while the [Government] still had statutory authority to issue the visa, and if the district court had acted within that time period."); *Keli v. Rice*, 571 F. Supp. 2d 127, 135 (D.D.C. 2008) (drawing same distinction).

*see* Defs.' Opp'n to Suppl. Relief at 7–10, but that is a distinction without a difference in the present context.  To be eligible for an adjustment of status, an "applicant must be eligible to receive an immediately available immigration visa." *Przhebelskaya*, 338 F. Supp. 2d at 400; *see also* 8 U.S.C. § 1255(a).  Thus, the plaintiffs in *Paunescu* and *Przhebelskaya* were equally subject to the INA's requirement that diversity visa selectees "shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected."  8 U.S.C. § 1154 (a)(1)(I)(II).  Defendants also suggest that those cases "did not involve [ ] separation-of-powers and foreign affairs issues" because the foreign nationals in those case were already in the United States, but the Supreme Court has explained that "*any policy* toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952) (emphasis added).  The foreign/domestic distinction Defendants glean from *Paunescu* and *Przhebelskaya* thus cannot bear the weight they place on it.

Defendants insist that "neither *Przhebelskaya* nor *Paunescu* are applicable because in both cases the application files were already substantially complete before the court ordered the government to take action," whereas here, Plaintiffs' applications are in varying stages of completeness. Defs.' Opp'n to Suppl. Relief at 9–10.  But Defendants overlook that the delay in processing of Plaintiffs' applications is largely due to Defendants' own unlawful interpretation of Presidential Proclamation 10014 and 8 U.S.C. § 1201(g)—it is in no way the fault of Plaintiffs themselves.  In any event, the differing levels of application completeness that Defendants' identify is only a difference of degree, and Defendants cite no authority indicating why such differences have any bearing on the court's authority to issue equitable relief.

Perhaps a more relevant distinction (though not one pressed by Defendants) is that *Paunescu* and *Przhebelskaya* both involve pre-deadline orders to *process* visas, whereas in this case, Plaintiffs are primarily asking the court to reserve visas past the fiscal year for future processing.   But, as the D.C. Circuit noted, those cases "offer useful examples, not binding models," and a pre-deadline order to reserve visas for future processing after the deadline "is more similar to *Paunescu* and *Przhebelskaya* than the cases dismissed as moot because the plaintiff filed too late or the court did not act in time."   *Almaqrami v. Pompeo*, 933 F.3d 774, 782 (D.C. Cir. 2019); *see also Almaqrami*, 304 F. Supp. 3d at 5–7 (opining that "whether a district court orders the immediate or future processing of diversity visas—as long as plaintiffs seek relief and the court issues an order granting relief prior to the September 30 deadline—the court is entitled to enforce its prior order").   Moreover, the D.C. Circuit has recognized in the analogous context of congressional appropriations that courts may suspend the operation of a statutory expiration date on an appropriation so long as the plaintiff requests relief before that date, thereby effectively reserving a congressionally afforded benefit past a statutory deadline.   *See, e.g.*, *City of Houston, Tex. v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1426 (D.C. Cir. 1994) (explaining that a court acting in equity may "award funds based on an appropriation even after the date when the appropriation lapses, so long as the lawsuit was instituted on or before that date," and that "the equity powers of the courts allow them to take action to preserve the status quo of a dispute and protect their ability to decide a case properly before them.   In such situations, the courts *simply suspend the operation of a lapse provision* and extend the term of already existing budget authority" (emphasis added) (cleaned up)); *see also State of Conn. v. Schweiker*, 684 F.2d 979, 997 (D.C. Cir. 1982); *Andrulis Research Corp. v. U.S. Small Bus. Admin.*, No. CIV. A. 90-2569

(CRR), 1990 WL 169318, at *2 (D.D.C. Oct. 19, 1990) (extending a statutory deadline and collecting cases in support of this authority).

Defendants invoke *INS v. Pangilinan*, 486 U.S. 875 (1988), for the proposition that lower courts cannot "create a remedy in violation of law," Defs.' Opp'n to Suppl. Relief at 4 (quoting 486 U.S. at. 883) (cleaned up), but as the D.C. Circuit has explained, "[t]he only form of relief specifically disapproved by the *Pangilinan* Court was the lower courts' asserted power to make someone a citizen of the United States," *In re Thornburgh*, 869 F.2d 1503, 1517 (D.C. Cir. 1989) (cleaned up).  The *Pangilinan* Court did not "securely shut the door" on claims for relief where, as here, the "aliens in question complied with the statute by attempting to file applications in a proper and timely fashion." *Id.* at 1516.  Defendants also assert that "a court may not require an agency to render performance that is impossible," *see* Defs.' Opp'n to Suppl. Relief at 4 (quoting *Am. Hosp. Assoc. v. Price*, 867 F.3d 160, 167 (D.C. Cir. 2018)), but that doctrine in inapposite here, where Defendants have not even attempted to shoulder the "heavy burden" of demonstrating that "resource constraints" or other "practical challenges" render it impossible to reserve and potentially process diversity visas after September 30.  867 F.3d at 168 (cleaned up).

In sum, because the fiscal year has not yet passed, the court plainly has the equitable authority and discretion to order Defendants to reserve visas for future processing pending a final resolution of the merits.  *See P.K.*, 302 F. Supp. 3d at 9 (holding that "[t]he court's authority to grant such relief is clear").  Assuming Plaintiffs ultimately succeed on their claims, an order instructing the State Department to process these reserved visas would not create any conflict with the INA because "such an order would give effect to the district court's prior directive, entered before the end of the selection FY, to preserve an essential (and otherwise expiring) ingredient of relief." *Almaqrami*, 933 F.3d at 782; *see also Almaqrami*, 304 F. Supp. 3d at 6 (D.D.C. 2018) (explaining that "the court issued an order directing the State Department to act prior to the September 30 deadline, and if it were to require

the State Department's full compliance with its prior order, it would be within its 'inherent power to enforce prior orders' to do so").  Defendants suggest that such an order would also run afoul of Congress's intent, *see* Defs.' Opp'n to Suppl. Relief at 2–3, but the court has already found that Defendants violated Congress's design when they nearly extinguished the FY 2020 diversity visa program through their No-Visa Policy, *see Gomez*, 2020 WL 5367010, at *30.  Defendants cannot credibly claim that, though they have effectively abrogated Congress's policy for months through their unlawful and arbitrary actions, it would be inconsistent with Congress's intent to grant a remedy for their wrongs.  *Cf. Defy Ventures, Inc. v. U.S. Small Bus. Admin.*, No. CV CCB-20-1736, 2020 WL 3546873, at *12 (D. Md. June 29, 2020) (holding that, where the plaintiffs "risk [ ] losing a benefit for which they are eligible because of arbitrary and capricious agency action" and a rapidly approaching statutory deadline, an order extending the deadline and "giv[ing] the plaintiffs the chance to apply" for the benefit "would further, rather than contravene, Congress's will that eligible [applicants] be able to apply").

## 2.    *Need for Relief*

Plaintiffs assert that supplemental relief is needed because Defendants "spent six months violating what they were required to do under the INA," and the relief granted to date has not been sufficient to remedy that harm.  Dr. Hr'g Tr. at 12; *see also* Pls.' Mot. for Suppl. Relief at 9–14. The court agrees.  For the reasons that follow, the court finds that additional relief is necessary to "meet the exigencies of the . . . case," *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, at 115 (3d ed. 2013)), and to adequately "address each element contributing to the violation," *Hutto v. Finney*, 437 U.S. 678, 687 (1978).[3]

---

[3] Plaintiffs also claim that supplemental relief is necessary because Defendants "have not complied with the letter and the spirit of the" the court's September 4 Order.  *See* Dr. Hr'g Tr. at 12.  The court need not decide this question in

First, the raw numbers. As of September 24, 2020, Defendants have issued only approximately 15,041 visas, or 28% of the 55,000 diversity visas Congress made available for FY 2020. For comparison, between 1998 and 2016, the State Department issued an average of 47,404 diversity visas per year, or between 86% and 95% of the total annual diversity visas allotted by Congress. *See* Pls.' Mot. for Suppl. Relief at 15; Dr. Hr'g Tr. at 19 (explaining that the yearly allotment of visas has vacillated between 50,000 and 55,000).

As discussed in greater detail in the following section, a substantial portion of this shortfall is undoubtedly caused by COVID-19-related disruptions outside of Defendants' control, but not all of it. Defendants' rate of visa processing after the court's September 4, 2020 Order illustrates this point. In the 20 days after the court's September 4 Order, the Department of State issued 3,208 diversity visas, at a rate of 160.4 per day (3,208 / 20). *See* Grewe Decl. ¶ 5. By comparison, in 2019, the State Department issued 8,834 immigrant visas between July 15, 2019 and September 4, 2019, at a rate of 173 per day (8,834 / 51). *See id.* ¶ 8. The roughly comparable daily rate of processing between these two periods suggests that, but for their No-Visa Policy and COVID-19 Guidance excluding DV selectees from mission critical processing, Defendants *could* have issued many more diversity immigrant visas in the weeks and months before the court issued its September 4 Order, notwithstanding the exigencies of the global pandemic.

The State Department's efforts to make up for this shortfall since September 4 do not obviate the need for additional relief. The court acknowledges and appreciates the hard work undertaken by many State Department employees to process the huge backlog of diversity visa applications, but the fact remains that, unless additional relief is granted, approximately 72% of the available diversity visas for FY 2020 will go unissued, and several hundred of the Named

---

light of its finding that additional relief is necessary to grant DV-2020 Selectees a complete remedy for Defendants' violations of the INA and Administrative Procedure Act.

Plaintiffs in this case may not receive final adjudication of their applications.  Moreover, the State Department waited five days (three business days) to issue guidance implementing the court's order—nearly 20% of the time that remained before the deadline—and, during that time, unlawfully and arbitrarily imposed a "Quarantine Requirement" on DV-2020 Selectees from five separate regions, thereby further delaying many DV-2020 Selectees from receiving adjudication of their applications.  *See* Amended Order, ECF No. 132, at 4–5; Pls.' Request for an Emergency Status Conference, ECF No. 127, at 2 & n.2.  This lost time and confusion engendered by Defendants' implementing guidance further supports that supplemental relief is necessary to preserve a full remedy.

Additional relief is also needed to provide an adequate remedy to the DV-2020 Selectees who are not Named Plaintiffs in these actions.  Defendants have, consistent with the court's September 4 Order, prioritized the Named Plaintiffs' applications, but the harm the court identified and the relief it ordered extended beyond just those individuals.  Yet, only a tiny fraction of non-Named Plaintiffs have received relief since the court's September 4 Order.  The court has been presented with evidence that there has been confusion regarding these individuals' entitlement to relief under the court's earlier order, with personnel at consular offices and the Kentucky Consular Center ("KCC") informing some applicants that "if you['re] not [a] plaintiff, you lost your chance," and "[w]e will not process your documents."  *See* Pls.' Mot. for Suppl. Relief at 12–13; *id.*, Decl. of Nadia Dahab, ECF No. 146-1 [hereinafter Dahab Decl.] ¶ 9; *see also* Dr. Hr'g Tr. at 47–48 (audio recording from KCC communicating a similar message).  Indeed, in a survey that Plaintiffs' counsel conducted of 1,794 non-Named Plaintiffs who requested expedited processing based on the court's September 4 Order, 81 percent reported that the consulate had either not responded or had otherwise not processed their applications.  *See* Dahab Decl. ¶ 8.  Many of these

respondents indicated that they received "automatic response[s]" from consular offices "indicating that their application would not be processed."   *Id.*   The survey and accompanying anecdotal evidence may not be fully representative or statistically unassailable, but they suffice to show that further relief is necessary for DV-2020 Selectees who are not Named Plaintiffs.

Reserving additional visas past the fiscal year also comports with the additional requirements of injunctive relief.   *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Failure to issue such relief will result in irreparable harm to thousands of DV-2020 Selectees who will otherwise lose their opportunity to secure a DV-2020 visa.   Such relief is also in the public interest because "there is a substantial public interest in having governmental agencies abide by the federal laws," *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (cleaned up), and an order reserving additional visas is necessary to remedy Defendants' violations of the INA and the Administrative Procedure Act.

### 3.   *Scope of Relief*

What remains then is to determine the scope of relief.   Plaintiffs ask the court to order Defendants to both reserve visas beyond the fiscal year and to renew FY 2020 diversity visas that lapse after the end of the fiscal year.   The court considers each request in turn.

***Visa Reservation.***   Plaintiffs ask the court to order the State Department to reserve 30,000 diversity visas past September 30 pending final resolution of this matter.   Pls.' Mot. for Suppl. Relief at 14.   Plaintiffs presumably arrive at that number by subtracting the number of diversity visas issued in FY 2020 as of September 24, 2020—15,401, *see* Grewe Decl. ¶ 6—from the eighteen-year average for diversity visas issued between FY 1998 and 2016—47,404, *see* Pls.' Mot. for Suppl. Relief at 15.   This means approximately 32,003 (47,404 – 15,401) fewer diversity visas have issued in FY 2020.   Ordering the State Department to reserve 30,000 diversity visa

numbers would result in a total FY 2020 issuance that, Plaintiffs contend, "falls within the historical range of diversity visa issuance (though below the average), while reasonably balancing the challenges presented this fiscal year against the irreparable harms faced" by DV-2020 Selectees as a result of the State Department's actions. *Id.* at 15.

The problem with Plaintiffs' proposed number is that it asks the court to treat FY 2020 as if it were an "average" year. But, to state the obvious, it has been anything but average. The COVID-19 pandemic has caused worldwide operational disruptions of the State Department's consular and visa processing operations. For example, from March 20, 2020, to July 15, 2020, the State Department's COVID-19 Guidance was in effect, which "temporarily suspend[ed] routine visa services at all U.S. Embassies and Consulates" due to COVID-19, but continued to require posts to provide "emergency and mission critical visa services" as resources allowed. *Gomez*, 2020 WL 5367010, at *3. After July 15, 2020, the State Department began a phased re-opening dependent upon individual country health and safety conditions. *See id.* at *4.

The impact on visa processing has been substantial. Take, for example, the IR-1 and IR-2 visa categories, which are immigrant visas for spouses and children of U.S. citizens, respectively. These are not numerically capped visas, and they were not subject to the Presidential Proclamations' restrictions on entry. Still, issuance of these visas fell dramatically in FY 2020. IR-1 visa issuance was down approximately 35% and IR-2 visa issuance was down approximately 41% from FY 2019. *See* Defs.' Suppl. Report on Good Faith Efforts to Implement the Prelim. Inj., ECF No. 148 [hereinafter Defs.' Second Suppl. Report], at 3. For those same categories, visa issuance fell by 76% and 73%, respectively, from March 21, 2020, to September 30, 2020, when compared to that same period in FY 2019. *See id.* There was an approximately 50% drop off in both categories from July 15, 2020, to September 30, 2020, when compared to that same period in

FY 2019.  *See id.*  These figures illustrate the substantial operational impact that COVID-19 has had on the State Department's visa-processing capacity.

As a court of equity, the court cannot place Plaintiffs in a *better* position than they would have been in but for the State Department's legal mistakes.  At most, the court can endeavor to place Plaintiffs in the position they would have been in but for the errors.  That requires the court to approximate how many DV-2020 visas the State Department likely would have issued had it continued visa adjudications under its substantially limited operations from March 20, 2020—the date of the COVID-19 Guidance—to September 9, 2020—the date embassies and consulates were advised to resume diversity visa processing as a result of this court's order.  Coming up with a reasonable estimate is hardly an exact science.

The percentage reduction in issued IR-1 and IR-2 visas during FY 2020 provides a helpful guide.  Again, these are not visa categories subject to the Presidential Proclamations.  So, presumably these visas were processed and adjudicated as health and safety conditions permitted in various embassies and consulates around the world.  Even then, issuance of these visas fell by approximately 75% during the period of March 21, 2020, to September 30, 2020, compared to that same period in FY 2019.  Defs.' Second Suppl. Report at 3.

With respect to diversity visas, the State Department has advised that in FY 2019 it issued 44,882 diversity visas, of which 12,897 were issued between October 1, 2018, and March 20, 2019.  Defs.' Report on Good Faith Efforts to Implement the Prelim. Inj., ECF No. 136, at 6.  That means the balance of 31,985 (44,882 – 12,897) FY 2019 diversity visas were issued between March 21, 2019, and September 30, 2019.  The court can assume a similar increase in issuance would have unfolded in FY 2020 but for COVID-19, as the State Department had issued only 11,023 diversity visas as of March 20, 2020.  *See id.* at 7.  The court assumes that, but for the COVID-19 pandemic,

the State Department in FY 2020 would have issued an average number of diversity visas. The court will use the eighteen-year average figure of 47,404. That means that, but for COVID-19, the State Department would have issued an additional 36,381 (47,404 – 11,023) diversity visas between March 21, 2020, and September 30, 2020. The court further assumes that the issuance of diversity visas, if it had continued after March 20, 2020, would have been impacted by the pandemic to the same extent as the approximate 75% reduction that occurred in the IR-1 and IR-2 categories. Applying such reduction to the 36,381 projection yields a total of 9,095 visas that the State Department reasonably and realistically could have issued after March 20, 2020, through the end of the fiscal year.

The court will order the State Department to reserve 9,095 diversity visa numbers after September 30, 2020, pending final adjudication of this matter.[4] Adding that number to the number of diversity visas already issued in FY 2020—15,401 through September 24, 2020, *see* Grewe Decl.¶ 6—could result in the issuance of a total of 24,496 DV-2020 visas, if Plaintiffs ultimately were to prevail. That is approximately 51% of the average of diversity visas issued over the last eighteen years (24,496 / 47,404). That percentage is slightly below the percentage of IR-1 (65%) and IR-2 (59%) visas issued in FY 2020 relative to FY 2019, *see* Defs.' Second Suppl. Report at 3, but is nevertheless a reasonable estimate.

***Visa Reissuance.*** Plaintiffs also ask for the court to order Defendants to renew DV-2020 visas after the end of the fiscal year, as necessary to permit the visa recipients a reasonable opportunity to use their visas to enter the country. *See* Pls.' Mot. for Suppl. Relief at 18. The

---

[4] The court recognizes that this final reservation figure does not credit the State Department for diversity visas issued following the agency's implementation of the court's September 4 Order. The court does not believe that a further reduction of this already rough approximation is warranted, however, as the equities favor reserving a greater number of DV-2020 visas to offset the State Department's halting the processing and adjudication of visa applications for nearly six months.

court denies this request without prejudice.  Plaintiffs have not shown how the post-deadline expiration (or the possible refusal to renew the visa) could be attributed to any action which the court has found to be unlawful.  Absent this connection, equitable relief is unwarranted.  Nor is it apparent that such relief is necessary at this juncture.  Plaintiffs have explained that "[n]othing in the INA forecloses" the State Department from reissuing diversity visas after the fiscal year, and so the only apparent impediment is the State Department's non-binding "policy of refusing to reissue diversity visas after the end of this fiscal year."  *See* Pls.' Mot. for Suppl. Relief at 18 (citing FAM 504.10-5(A)).  Should the State Department choose to enforce that policy in the future, then presumably the INA would not prevent Plaintiffs from seeking relief at that point.

### B.   Class Certification

The court turns now to the *Gomez* and *Aker* Plaintiffs' renewed motion for class certification.  *See* Pls.' Renewed Class Cert. Mot.  The court previously declined to certify a DV-2020 subclass "because all proposed class members will benefit from the preliminary relief" afforded by the court under the Administrative Procedure Act.  *Gomez*, 2020 WL 5367010, at *37. As discussed, the preliminary relief thus far fashioned has not been sufficient to remedy the harm caused by the State Department's legal errors.  That is particularly true for DV-2020 Selectees who are not Named Plaintiffs.  Although some have benefited and received visas, thousands have not, and their lack of success at securing visa adjudication in the weeks since the court issued its order is well documented.  *See, e.g.*, Dahab Decl. ¶ 8(e) (indicating that in a survey of nearly 1,800 non-named plaintiff DV-2020 Selectees, over 1,450, or approximately 81 percent, reported that they either received no response to consular inquiries regarding expedited processing, or that they otherwise received indications that their applications would not be processed).  Class certification is now required to place putative class members before the court as parties, *see Molock v. Whole*

*Foods Mkt. Grp.*, Inc., 952 F.3d 293, 298 (D.C. Cir. 2020) ("Putative class members become parties to an action . . . only after class certification."), and to ensure their eligibility for the visa numbers that the court has ordered the State Department to reserve after September 30 pending final judgment, *see Almaqrami*, 933 F.3d at 781–82.  The court will grant the class certification motion in *Gomez*, but declines to do so for the class requested in *Aker*.

   **The Gomez *Plaintiffs' Proposed Class.***  The *Gomez* Plaintiffs seek to certify a class of DV-2020 Selectees pursuant to Rule 23(b)(2) and 23(b)(1)(A).  They define the proposed class as follows:

> Individuals who have been selected to receive an immigrant visa
> through the U.S. Department of State's FY2020 Diversity Visa
> Lottery and who had not received their immigrant visa on or before
> April 23, 2020, when the Presidential Proclamation 10014, later
> extended by Presidential Proclamation 10052, took effect.

*Gomez* Pls.' Mot. for Class Certification, ECF No. 52, at 1 [hereinafter *Gomez* Pls.' Class Mot.].  The *Gomez* Plaintiffs ask that the class representatives include Plaintiffs Fatma Bushati, Jodi Lynn Karpes, Shyam Sundar, Koirala, Aja Tamamu Mariama Kinteh, Iwundu épouse Kouadio Ijeoma Golden, and Aya Nakamura.  *See id.* at 2.

   Rule 23, which governs class certification, permits certification only if: "(1) the class is so numerous that joinder of all members is impracticable"; (2) "there are questions of law or fact common to the class"; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  In addition to meeting these requirements, a class must satisfy at least one of the three subsections of Rule 23(b).  Here, Plaintiffs seek certification under subsections 23(b)(2) and 23(b)(1)(A).  The former subsection allows certification of a class if "the party opposing the class has acted or refused to act on grounds that

apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."   Fed. R. Civ. P. 23(b)(2).   The latter subsection permits certification if "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(1)(A).

The *Gomez* Plaintiffs easily satisfy the Rule 23(a) requirements.   The class consists of tens of thousands of DV-2020 Selectees, whose collective joinder is impracticable.   There are questions of law common to the class, including but not limited to, whether the State Department's No-Visa Policy as applied to DV-2020 Selectees is in accordance with the law or in excess of the agency's statutory authority; whether the State Department unreasonably delayed in processing and adjudicating DV-2020 applications; and whether the treatment of DV-2020 Selectees as not "mission critical" under the agency's COVID-19 Guidance was arbitrary and capricious.   *Gomez*, 2020 WL 5367010, at \*26–33.   The class representatives' claims are typical of the class as a whole, as the representatives and class members share the same interest and suffered the same injury— securing the otherwise stalled adjudication of their DV-2020 applications.   *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982).   The representative parties will fairly and adequately represent the interests of the class, and class counsel are qualified to vigorously prosecute their interests.   *See Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997).   The proposed class therefore satisfies the prerequisites of numerosity, commonality, typicality, and adequacy of representation required under Rule 23(a).

Additionally, class certification is appropriate under both Rules 23(b)(2) and 23(b)(1)(A). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.   It does not authorize class certification when each individual class

member would be entitled to a different injunction or declaratory judgment against the defendant." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (cleaned up).  That criterion is satisfied here.  Each class member seeks an injunction that prevents the State Department from implementing the No-Visa Policy and the COVID-19 Guidance against DV-2020 Selectees.  They also seek the *opportunity* to have their diversity visa applications processed and adjudicated consistent with governing statutes and regulations after the end of the 2020 fiscal year.  No class member asks the court to actually issue a visa.  The requested injunctive relief thus applies uniformly across the class.  *Id.* (stating that "the key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them" (cleaned up)).[5]

As for Rule 23(b)(1)(A), "certification is appropriate when the class seeks injunctive or declaratory relief to change an alleged ongoing course of conduct that is either legal or illegal as to all members of the class."  *Adair v. England*, 209 F.R.D. 5, 12 (D.D.C. 2002) (citing 5 Moore's Federal Practice § 23.41[4] (3d ed. 2000)).  "'Rule 23(b)(1)(A) certification is most common' in cases in which the class seeks declaratory or injunctive relief against the government 'to provide unitary treatment to all members of a defined group.'"  *Id.* (quoting 5 Moore's § 23.41[4]).  That is, of course, precisely the case here.  Certification under Rule 23(b)(1)(A) is thus appropriate for the same reasons as under Rule 23(b)(2).

---

[5] The court recognizes that the number of class members exceeds the number of visas reserved by the court, meaning that many class members will not actually obtain a visa.  That fact does not, however, defeat class certification under Rule 23(b)(2).  *See DL v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013) (stating that Rule 23(b)(2) "does not bar courts from granting further equitable relief that does not reach every plaintiff in the case" and "the requested relief must respond, at least in part, to a common harm suffered as a result of a policy or practice that affects each class member").

Defendants advance a host of arguments in opposition to class certification, but none are persuasive.  First, Defendants contend that none of the *Gomez* DV-2020 Plaintiffs has standing to bring suit and therefore cannot serve as a representative of the class.   Defs.' Opp'n to *Gomez* Pls.' Class Mot., ECF No. 95, at 13–15 [hereinafter Defs.' Opp'n to Class Mot.].   But the court already has held that Plaintiff Aya Nakamura has demonstrated a substantial likelihood of Article III standing.  *See Gomez*, 2020 WL 5367010, at *11–12.   She therefore can serve as a class representative.  *J.D. v. Azar*, 925 F.3d 1291, 1324 (D.C. Cir. 2019) ("The [Article III] 'one plaintiff' rule presumably applies with equal force to a Rule 23(b)(2) class action advancing a uniform claim and seeking uniform injunctive and declaratory relief.").[6]

Second, Defendants contend that the *Gomez* DV-2020 Plaintiffs cannot satisfy the commonality requirement because the proposed class, as defined, "would sweep in a wide number of individuals who would be otherwise ineligible for an immigrant visa for any number of independent reasons, or who may not be able to receive an interview due to the suspension of consular services based on the ongoing worldwide pandemic."  Defs.' Opp'n to Class Mot. at 16.  But these differences do not defeat commonality.   Plaintiffs need only show that one issue is common to all proposed class members in order to satisfy the commonality requirement.  *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).  Here, there are multiple legal issues common to the class.

Third, Defendants argue that the *Gomez* DV-2020 Plaintiffs have not come forward with "evidentiary proof" that the Named Plaintiffs can adequately represent the class.  Defs.' Opp'n to Class Mot. at 18.  But the court has carefully analyzed the evidence concerning Plaintiff Nakamura

---

[6] Defendants also premise their arguments regarding typicality, adequacy, Rule 23(b)(2), and Rule 23(b)(1)(A), in part, on the DV-2020 Plaintiffs' purported lack of standing.  *See* Defs.' Opp'n to Class Mot. at 16–19.  These contentions fail insofar as they rest on the standing argument already rejected by the court.

to establish her standing, and finds that the same proof shows her to be an adequate class representative.

Finally, Defendants contend that certification under Rules 23(b)(2) and 23(b)(1)(A) should be denied because "any single injunction or declaration of relief would not provide relief to each member of the class." *Id.* at 28; *id.* at 29 (arguing that certification should be denied under Rule 22(b)(1)(A) because "a wide variety of factual circumstances" foreclose class-wide relief). That contention rests on the assertion that "Plaintiffs' claims rely on too many case-specific allegations." *Id.* at 28. But Defendants misconstrue what the *Gomez* DV-2020 Plaintiffs seek. They do not ask the court to order the State Department to issue visas to each class member. Rather, they seek the removal of unlawful State Department policies that stand in the way of their statutory right to have their DV-2020 applications adjudicated. *See* 8 U.S.C. § 1202(b) ("All immigrant visa applications shall be reviewed and adjudicated by a consular officer."); *Almaqrami*, 933 F.3d at 777 (observing that if a diversity visa selectee "meets the criteria to obtain one, the State Department 'shall' issue him a diversity visa") (quoting 8 U.S.C. § 1153(c)). Individual circumstances that might ultimately result in a visa denial or prevent a class member from completing visa processing for reasons unrelated to the challenged policies therefore do not impede certification under Rule 23(b)(2).

Accordingly, pursuant to Rules 23(b)(2) and 23(b)(1)(A), the court certifies as a class,

> Individuals who have been selected to receive an immigrant visa through the U.S. Department of State's FY2020 Diversity Visa Lottery and who had not received their immigrant visa on or before April 23, 2020, when the Presidential Proclamation 10014, later extended by Presidential Proclamation 10052, took effect.

The court also names as representatives of the class: *Gomez* Plaintiffs Fatma Bushati, Jodi Lynn Karpes, Koirala, Aja Tamamu Mariama Kinteh, Iwundu épouse Kouadio Ijeoma Golden, and Aya

Nakamura.  Finally, under Rule 23(g), the Court appoints Karen C. Tumlin and Esther H. Sung of Justice Action Center; Stephen Manning, Nadia Dahab, Tess Hellgren, and Jordan Cunnings of Innovation Law Lab; Jesse Bless of American Immigration Lawyers Association; and Laboni Hoq of the Law Office of Laboni A. Hoq as class counsel.

*The* **Aker** *Plaintiffs' Proposed Class.*  The *Aker* Plaintiffs request certification of a class that would consist of "all individual diversity visa immigrant applicants and their derivative beneficiaries whose diversity visas *were issued* prior to Presidential Proclamations 10052 and/or 10014 taking effect, but who were unable to enter the United States due to travel restrictions and who have subsequently been unable to obtain reissuance of their visas through the individual consulates of the Department of State pursuant to the Presidential Proclamations."  Mot. for Class Cert. & Supporting Mem., ECF No. 84 (emphasis added).  By its own terms, the requested *Aker* class does not include DV-2020 Selectees whose visas were not issued before the Proclamations went into effect; it includes only applicants who received diversity visas that have since expired. The court's September 4 Order required the State Department to renew visas that had expired but were not renewed due to the Proclamations.

The court declines to certify the *Aker* class for two main reasons.  First, it is unclear how many DV-2020 Selectees who meet the definition of the proposed *Aker* class continue to be without a renewed visa and thus face ongoing harm resulting from the State Department's prior actions.  Without even an approximation of how many DV-2020 Selectees are awaiting a renewed visa, the court cannot make a numerosity or typicality assessment.  Second, the need for class relief is not apparent.  As discussed, for DV-2020 Selectees who have yet to obtain a visa, class certification is necessary to affect their party status before the court and to ensure their eligibility for reserved visa numbers after September 30.  The same cannot be said for the proposed *Aker*

class.  The court has received no information that a reserved visa number is necessary to renew a visa (as distinct from issuing one in the first instance).  And, according to Plaintiffs, there is no legal impediment to renewing a visa after the end of the fiscal year.  Thus, the relief that is driving the need for class certification for the *Gomez* proposed class is missing for the proposed *Aker* class. The *Aker* Plaintiffs have thus failed to carry their burden under Rule 23 to certify a class.

## III.   CONCLUSION AND AMENDED ORDER

For the foregoing reasons, the court grants in part and denies in part Plaintiffs' request for supplemental relief, ECF No. 146, and orders the State Department to reserve 9,095 diversity visa numbers after September 30, 2020, for the future processing of the Named Plaintiffs' and class-members' diversity visa applications, pending final adjudication of this matter.

The court also grants the *Gomez* Plaintiffs' Renewed Motion for Class Certification, ECF No. 144, and certifies the following class:

> Individuals who have been selected to receive an immigrant visa through the U.S. Department of State's FY2020 Diversity Visa Lottery and who had not received their immigrant visa on or before April 23, 2020, when the Presidential Proclamation 10014, later extended by Presidential Proclamation 10052, took effect.

The court names as representatives of the class and appoints as class counsel those individuals identified in Section II.B. of this opinion.  The *Aker* Plaintiffs' Renewed Motion for Class Certification is denied.

Dated:  September 30, 2020

Amit P. Mehta
United States District Judge