# **DECLARATION OF EDWARD J. RAMOTOWSKI**

I, Edward J. Ramotowski, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am employed by the U.S. Department of State as the Deputy Assistant Secretary for Visa Services, Bureau of Consular Affairs. The Visa Office provides guidance to U.S. embassies and consulates around the world on a broad range of policy and procedural issues related to the adjudication of visas by consular officers overseas. I have been a member of the U.S. Foreign Service since 1986 and have served in my current position since July 2012. Prior to holding this position, I was Managing Director of the Visa Office from August 2009 until July 2012. Additionally, I previously served as the Chief of the Consular Section at the U.S. Embassy in Nassau, Bahamas and as U.S. Consul in Warsaw, Poland. In my current position I oversee the Visa Office in Washington D.C., two domestic processing centers, as well as visa operations at over 200 U.S. Embassies and Consulates abroad.

2. From this experience, I have knowledge of the Department of State's implementation of entry restrictions imposed by Presidential Proclamations issued pursuant to Sections 212(f) and/or 215(a) of the Immigration and Nationality Act (INA). Since at least 1995, the Department of State has applied Presidential Proclamations issued pursuant to these authorities as a basis for visa refusal. The Department's understanding has been that the INA requires the refusal of visas where section 212(f) applies and that the Department has no policy discretion to interpret section 212(f) differently.

3. The Department is aware of dozens of Presidential Proclamations issued under 212(f) that are currently in effect. I have reviewed existing guidance to consular officers on the application of such restrictions in the Department's Foreign Affairs Manual (FAM). Department guidance at 9 FAM 301.4-1(a) provides that the basis on which applicants must be denied visas are established by law and lists 212(f) as such a ground of refusal. This provision also notes that the Department of State generally uses the term "ineligibilities" to refer to these grounds of refusal, while the Department of Homeland Security usually refers to these grounds as "inadmissabilities." In addition to listing INA 212(f) as a ground of refusal generally, this section of the FAM also lists several major Presidential Proclamations imposing restrictions pursuant to this authority under categories of refusals, such as refusals related to human rights violations or national security grounds.

4. For example, 9 FAM 301.1-1(c)(7) lists Presidential Proclamation 8697 as an ineligibility related to human rights violations, directing consular officers to additional guidance on the implementation of this proclamation in 9 FAM 302.7-11. As provided in 9 FAM 302.7-11(A)(a), on August 4, 2011, President Obama issued Presidential Proclamation 8697 on the Suspension of Entry as Immigrants and Nonimmigrants of Persons Who Participate in Serious Human Rights and Humanitarian Law Violations and Other Abuses. The FAM guidance that follows in this section provides instructions to consular

officers on the scope of the Proclamation's restrictions, including the definition of key terms, and procedures to follow for refusing visas, if the consular officer believes an applicant is subject to these restrictions.

5. As another example, 9 FAM 302.14-10(B) provides guidance to consular officers on the application and scope of Presidential Proclamations 9645 and 9983, Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry Into the United States by Terrorists or Other Public-Safety Threats. This guidance in 9 FAM 302.14-10(B)(1) lists the nationalities subject to Presidential Proclamation 9645 and makes clear that "the issuance of visas to nationals" of the country in question "is suspended" for the specified visa categories. Similarly, the guidance in 9 FAM 302.14-10(B)(2) lists the nationalities subject to Presidential Proclamation 9983 and makes clear that the issuance of visas to nationals of these countries is suspended for the visa categories specified for each.

6. Relatedly, 9 FAM 302.14-10(E)(3) and (4) provide the language that consular posts must use to inform nonimmigrant and immigrant visa applicants (including diversity visa applicants) that they have been refused under section 212(f) of the INA based on Presidential Proclamation 9645 or 9983. These refusal letters make clear that the applicant has been found ineligible for a visa under Section 212(f) pursuant to the relevant Proclamation and indicate whether the consular officer is reviewing the applicant for a waiver of this ineligibility. For immigrant visa applicants, the text of the letter is as follows:

> "This is to inform you that a consular officer found you ineligible for a visa under Section 212(f) of the Immigration and Nationality Act, pursuant to [Presidential Proclamation 9645 or Presidential Proclamation 9983, as applicable]. Today's decision cannot be appealed.
>
> ☐ Taking into account the provisions of the Proclamation, a waiver will not be granted in your case.
>
> ☐ The consular officer is reviewing your eligibility for a waiver. To approve your waiver, the consular officer must determine that denying your entry would cause you undue hardship, that your entry would not pose a threat to the national security or public safety of the United States, and that your entry would be in the national interest of the United States. This can be a lengthy process, and until the consular officer can make an individualized determination on these three factors, your application will remain refused under Section 212(f). You will be contacted with a final determination on your application as soon as practicable."

7. Furthermore, 9 FAM 307.3 provides guidance on "Meeting the Visa Lookout Accountability (VLA) Requirement." This requirement stems from Section 140(c) of Public Law 103-233 (Foreign Relations Authorization Act, FY-94 and 95, as amended) (8 U.S.C. 1182 note), which requires that "whenever a consular officer issues a visa for admission to the United States, that official shall certify that a check of the automated visa lookout system, or any other system or list which maintains information about the

excludability of aliens under the Immigration and Nationality Act, has been made, and that there is no basis under such system or list for the exclusion of such alien. If, at the time an alien applies for an immigrant or nonimmigrant visa, the alien's name is included in the Department of State's visa lookout system and the consular officer to whom the application is made fails to follow the procedures in processing the application required by the inclusion of the alien's name in such system, the consular officer's failure shall be made a matter of record and shall be considered as a serious negative factor in the consular officer's annual performance evaluation."

8. A determination that an individual is subject to a presidential proclamation or executive order issued by the President pursuant to 212(f) will result in the alien's name being included in the Department's automated visa lookout system. As a result, a consular officer who issues a visa to an applicant subject to a 212(f) restriction without following the procedures set out in the FAM could be found to have violated VLA requirements and be subject to the penalty provided for in that law.

9. Other parts of the FAM also make clear restrictions imposed by Presidential Proclamations issued pursuant to Section 212(f) render persons subject to them ineligible to receive a visa. For example, 9 FAM 402.3-7(C) provides guidance to consular officers on the limited grounds of ineligibility that apply to G and A visa applicants, respectively, and notes that "If a person may be ineligible on grounds other than INA 212(a) (for example under a Presidential Proclamation)," the consular officer must request an Advisory Opinion from the Office of the Legal Adviser for Consular Affairs.

10. The FAM guidance described above reflects the Department's consistent historical understanding that the President's "suspension of entry," pursuant to the authorities in 212(f) and 215(a) of the INA, suspends the issuance of visas to applicants subject to those restrictions as well as suspending the admission of such applicants into the United States, unless the applicant is found to be eligible for an exception or is granted a waiver. In drafting implementing guidance to consular officers on the implementation of specific Presidential Proclamations, the Department does not consider whether, as a policy matter, the restrictions should be applied as a basis for visa refusal, as the Department has historically viewed visa refusal to be required by law.

11. It would be entirely inconsistent with the Department's longstanding practice for consular officers to issue visas to applicants they have determined to be ineligible for entry pursuant to restrictions imposed by the President under 8 U.S.C. 1182(f). The effective implementation of U.S. immigration law requires consistency and coordination between visa issuance decisions by consular officers of the Department of State and admission decisions made at U.S. ports of entry by immigration officers of the Department of Homeland Security. As the Department's public-facing website makes clear, "[h]aving a U.S. visa allows you to travel to a port of entry, airport or land border crossing, and request permission of the Department of Homeland Security (DHS), Customs and Border Protection (CBP) inspector to enter the United States. While having a visa does not guarantee entry to the United States, it does indicate a consular officer at a U.S. Embassy or Consulate abroad has determined *you are eligible to seek entry for that specific*

*purpose*" (emphasis added). https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/frequently-asked-questions/what-is-us-visa.html.

12. Issuing visas to persons who are not eligible to seek entry would promote confusion in the U.S. immigration system and enhance the risks that such persons will attempt to travel to a port of entry and attempt to unlawfully enter the United States. Recognizing that a visa is a government's authorization for an alien to travel to the issuing country and apply for admission, even if a consular officer advises an applicant that the visa that is being issued is subject to an entry restriction, or annotates the visa to specify that it does not allow for travel, it would be understandable for recipients of that visa to be confused and, relying on the issuance of the visa, make travel plans, expend substantial resources, or even attempt to travel and enter the United States on that visa  It is our understanding that commercial airlines are not expected to understand or enforce immigration laws and typically screen passengers based on holding a valid travel document, including a valid U.S. visa. Once a consular officer issues a visa, it would be up to DHS/CBP to screen passengers and arriving immigrants and nonimmigrants to determine whether they are subject to an entry restriction imposed by the President pursuant to 8 U.S.C. 1182(f). Foreign governments and media organizations could also become confused about the direction and objectives of U.S. policy, if they observe the Department of State and the Department of Homeland Security taking divergent approaches to Presidential 212(f) actions.

I declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

January 19, 2021

*[signature]*

Edward J. Ramotowski
Deputy Assistant Secretary for Visa Services,
Bureau of Consular Affairs
U.S. Department of State