**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DOMINGO ARREGUIN GOMEZ, et al.,<br>        Plaintiffs,<br><br>        v.<br><br>DONALD J. TRUMP, et al.,<br>        Defendants. | Civil Action No. 1:20-cv-01419 |
| MOHAMMED ABDULAZIZ ABDUL<br>MOHAMMED, et al.,<br>        Plaintiffs,<br><br>        v.<br><br>MICHAEL R. POMPEO, et al.,<br>        Defendants. | Civil Action No. 1:20-cv-01856 |
| AFSIN AKER, et al.,<br>        Plaintiffs,<br><br>        v.<br><br>DONALD J. TRUMP, et al.,<br>        Defendants. | Civil Action No. 1:20-cv-01926 |
| CLAUDINE NGUM FONJONG, et al.,<br>        Plaintiffs,<br><br>        v.<br><br>DONALD J. TRUMP, et al.,<br>        Defendants. | Civil Action No. 1:20-cv-02128 |
| MORAA ASNATH KENNEDY, et al.,<br>        Plaintiffs,<br><br>        v.<br><br>DONALD J. TRUMP, et al.,<br>        Defendants. | Civil Action No. 1:20-cv-02639 |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR**
**EMERGENCY INJUNCTIVE RELIEF**

Jesse M. Bless (D.D.C. Bar No. MA0020)
AMERICAN IMMIGRATION LAWYERS
   ASSOCIATION
1301 G Street NW, Ste. 300
Washington, DC 20005
(781) 704-3897
jbless@aila.org

Karen C. Tumlin (*pro hac vice*)
Esther H. Sung (*pro hac vice*)
Jane P. Bentrott (*pro hac vice*)
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 316-0944
karen.tumlin@justiceactioncenter.org
esther.sung@justiceactioncenter.org
jane.bentrott@justiceactioncenter.org

Stephen Manning (*pro hac vice*)
Tess Hellgren (*pro hac vice*)
Jordan Cunnings (*pro hac vice*)
INNOVATION LAW LAB
333 SW Fifth Avenue #200
Portland, OR 97204
Telephone: (503) 241-0035
stephen@innovationlawlab.org
tess@innovationlawlab.org
jordan@innovationlawlab.org

Andrew J. Pincus (D.C. Bar No. 370762)
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Telephone: (202) 263-3000
apincus@mayerbrown.com

Matthew D. Ingber (*pro hac vice*)
Cleland B. Welton II (*pro hac vice*)
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
mingber@mayerbrown.com
cwelton@mayerbrown.com

Laboni A. Hoq (*pro hac vice*)
LAW OFFICE OF LABONI A. HOQ
Justice Action Center Cooperating Attorney
P.O. Box 753
South Pasadena, CA 91030
laboni@hoqlaw.com

Attorneys for *Gomez* Plaintiffs

Charles H. Kuck (D.C. Bar No. GA429940)
KUCK BAXTER IMMIGRATION
365 Northridge Rd., Suite 300
Atlanta, GA 30350
ckuck@immigration.net

Jeff Joseph (D.C. Bar ID: CO0084)
JOSEPH & HALL P.C.
12203 East Second Avenue
Aurora, CA 80011
jeff@immigrationissues.com

Greg Siskind (*Pro Hac Vice*)
SISKIND SUSSER PC
1028 Oakhaven Rd.
Memphis, TN 39118
gsiskind@visalaw.com

Attorneys for *Aker* Plaintiffs

Kristina Ghazaryan
Philip Duclos
Abadir Barre
Curtis Lee Morrison
Rafael Urena
THE LAW OFFICE OF RAFAEL URENA
925 N. La Brea Ave, 4th Floor
Los Angeles, CA 90038
Tel: (703) 929-4424
ru@urenaesq.com

Attorneys for *Mohommed*, *Fonjong*, and *Kennedy* Plaintiffs

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..............................................................................................ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND .............................................................................................................. 2

ARGUMENT ................................................................................................................... 4

I.  THE COURT SHOULD GRANT INJUNCTIVE RELIEF UNDER THE APA .............. 4

    A.  Defendants' Implementation Of The "National Interest" Exception Is Final
        Agency Action ...................................................................................................... 4

    B.  Defendants' Implementation Of The "National Interest" Exception Is Not
        Committed To Agency Discretion ........................................................................ 5

    C.  Defendants' Implementation Of The "National Interest" Exception Is
        Arbitrary, Capricious, And Contrary To Law ....................................................... 6

    D.  The Court Should Compel DHS Promptly To Issue New "National
        Interest" Guidance ............................................................................................... 8

    E.  The Court Should Grant Emergency Injunctive Relief .......................................... 9

II.  THE COURT SHOULD GRANT RELIEF UNDER THE ALL WRITS ACT .............. 11

III. THE COURT SHOULD ORDER DEFENDANTS TO ASSIST CLASS
    COUNSEL IN NOTIFYING CLASS MEMBERS OF DEVELOPMENTS IN
    THIS ACTION ...................................................................................................... 14

CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aamer v. Obama,*
    742 F.3d 1023 (D.C. Cir. 2014) ............................................................10

*Adams v. United States ex rel. McCann,*
    317 U.S. 269 (1942) ............................................................................11

*Al Otro Lado, Inc. v. Wolf,*
    952 F.3d 999 (9th Cir. 2020) ...............................................................13

*Am. Hosp. Ass'n v. Azar,*
    967 F.3d 818 (D.C. Cir. 2000) ...........................................................5, 6

*In re Am. Rivers & Idaho Rivers United,*
    372 F.3d 413 (D.C. Cir. 2004) ...............................................................8

*In re Baldwin-United Corp.,*
    770 F.2d 328 (2d Cir. 1985) ................................................................11

*Belbacha v. Bush,*
    520 F.3d 452 (D.C. Cir. 2008) .............................................................13

*Bennett v. Spear,*
    520 U.S. 154 (1997) .............................................................................4

*Cal. Cmtys. Against Toxics v. EPA,*
    934 F.3d 627 (D.C. Cir. 2019) ...............................................................5

*Defy Ventures, Inc. v. U.S. Small Business Admin.,*
    469 F. Supp. 3d 459 (D. Md. 2020) .....................................................10

*Dep't of Commerce v. New York,*
    139 S. Ct. 2551 (2019) .......................................................................5, 6

*DHS v. Regents of the Univ. of Cal.,*
    140 S. Ct. 1891 (2020) ...........................................................................7

*Gomez v. Trump,*
    2020 WL 5367010 (D.D.C. Sept. 4, 2020) .......................1, 4, 7, 8, 9, 10, 11, 12, 13

*Gomez v. Trump,*
    2020 WL 5861101 (D.D.C. Sept. 30, 2020) ...........................1, 3, 12, 14

*Gresham v. Azar,*
    950 F.3d 93 (D.C. Cir. 2020) ..................................................................7

## TABLE OF AUTHORITIES

**Page(s)**

*Klay v. United Healthgroup, Inc.*,
  376 F.3d 1092 (11th Cir. 2004) ............................................................................................11

*League of Women Voters v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) ................................................................................................10

*Michael v. INS*,
  48 F.3d 657 (2d Cir. 1995).............................................................................................13, 14

*Oppenheimer Fund v. Sanders*,
  437 U.S. 340 (1978).............................................................................................................15

*Pa. Bureau of Corr. v. U.S. Marshals Serv.*,
  474 U.S. 34 (1985)...............................................................................................................11

*In re People's Mojahedin Org. of Iran*,
  680 F.3d 832 (D.C. Cir. 2012) .............................................................................................9

*Physicians for Soc. Responsibility v. Wheeler*,
  956 F.3d 634 (D.C. Cir. 2020) .............................................................................................6

*Prestige Trans. Inc. v. DHS*,
  No. 20-cv-2544, ECF 31 (D.D.C. Nov. 17, 2020) ..............................................................4

*Procup v. Strickland*,
  792 F.2d 1069 (11th Cir. 1986) (en banc) ..........................................................................13

*Ramirez v. U.S. Imm. & Customs Enf't*,
  338 F. Supp. 3d 1 (D.D.C. 2018) ......................................................................................5, 6

*Sackett v. EPA*,
  566 U.S. 120 (2012)...............................................................................................................5

*Telecommunications Research & Action Center v. FCC*,
  750 F.2d 70 (D.C. Cir. 1984)............................................................................................8, 9

*Thomas v. Pompeo*,
  438 F. Supp. 3d 35 (D.D.C. 2020) ........................................................................................6

*United States v. Catoggio*,
  698 F.3d 64 (2d Cir. 2012)..................................................................................................14

*United States v. Morgan*,
  346 U.S. 502 (1954).............................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

*United States v. New York Telephone Co.*,
    434 U.S. 159 (1977)......................................................................................................11

*Westar Energy, Inc. v. FERC*,
    473 F.3d 1239 (D.C. Cir. 2007) ...........................................................................2, 6, 7

*Whitman v. Am. Trucking Ass'n*,
    531 U.S. 457 (2001)........................................................................................................4

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)..........................................................................................................10

**Statutes, Regulation, and Rules**

5 U.S.C. § 555(b) ...............................................................................................................8

5 U.S.C. § 705 ....................................................................................................................7

5 U.S.C. § 706(1) ...............................................................................................................8

5 U.S.C. § 706(2)(A)...........................................................................................................7

8 U.S.C. § 1151(e) .....................................................................................................6, 7, 9

8 U.S.C. § 1201(c) .....................................................................................................3, 6, 8

28 U.S.C. § 1651(a) ...................................................................................................2, 11

8 C.F.R. § 42.72(b) ..........................................................................................................15

Fed. R. App. P. 28(j) ..........................................................................................................3

Fed. R. Civ. P. 23(d)(1)(B)(i) .....................................................................................14, 15

**Other Authorities**

9 FAM 302.2-3(C).a ...........................................................................................................3

9 FAM 302.2-3(C).b ...........................................................................................................3

85 Fed. Reg. 38,265 (2020) ...............................................................................................6

86 Fed. Reg. 417 (2020) .....................................................................................................3

Executive Order 13985, 86 Fed. Reg. 7,009 (2021) ..........................................................1

86 Fed. Reg. 7387-01 (2021) ...........................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

Executive Order 14010, 86 Fed. Reg. 8,267 (Feb. 2, 2021) ...........................................................1

Camilo Montoya-Galvez, *Biden to rescind Trump's pandemic-era limits on
immigrant and work visas, top adviser says* CBS News (Jan. 28, 2021) ................................1

H.R. Rep. No. 101-723 (1990)......................................................................................................10

Immigrant Visa Issuances by Foreign State of Chargeability or Place of Birth
September 2020 (FY 2020), https://bit.ly/378AD8F ................................................................2

## INTRODUCTION

"For generations, immigrants have come to the United States with little more than the clothes on their backs, hope in their hearts, and a desire to claim their own piece of the American Dream. These mothers, fathers, sons, and daughters have made our Nation better and stronger." Executive Order 14010, 86 Fed. Reg. 8,267 (Feb. 2, 2021).  And as President Biden reaffirmed on Inauguration Day, "diversity is one of our country's greatest strengths."  Executive Order 13985, 86 Fed. Reg. 7009 (2021).  In keeping with that inclusive rhetoric, the Biden Administration announced last month that it would "rescind the Trump proclamations that precluded the admission of immigrants," including the prospective diversity immigrants at issue in this case.[1]

But the Administration reneged on both its rhetoric and its public commitments—leaving in place President Trump's virtual shutdown of the legal immigration system.  For  fiscal year 2020 diversity visa holders, the result is devastating.  *Thousands* of individuals received or renewed their diversity visas pursuant to this Court's order in *Gomez v. Trump*, 2020 WL 5367010 (D.D.C. Sept. 4, 2020) (*Gomez I*), and reasonably expected that a new Administration would finally admit them to the country.  Instead, the Administration has refused to offer these individuals any form of protection—even as their visas are now set to expire, raising the possibility that they will be forever barred from immigrating.  Hundreds of visas have already expired, and *all* of the visas issued in September will expire by the time the Proclamations are set to lapse at the end of March—"abrogat[ing] Congress's policy" and threatening to "extinguish[] the FY 2020 diversity visa program."  *Gomez v. Trump*, 2020 WL 5861101, *5 (D.D.C. Sept. 30, 2020) (*Gomez II*).

Plaintiffs respectfully request that the Court issue emergency injunctive relief to protect the interests of the named diversity-visa Plaintiffs and class members in these consolidated cases.

---

[1] Camilo Montoya-Galvez, *Biden to rescind Trump's pandemic-era limits on immigrant and work visas, top adviser says*, CBS News (Jan. 28, 2021), https://cbsn.ws/3t9cUyG

DHS's omission to adopt a general "national interest" exception to allow the holders of expiring diversity visas to enter the country is arbitrary and capricious: It takes no account of congressional policy or of the visa-holders' interests, and it violates the "fundamental norm of administrative procedure [that] requires an agency to treat like cases alike," *Westar Energy, Inc. v. FERC*, 473 F.3d 1239, 1241 (D.C. Cir. 2007), by inexplicably failing to extend the same favorable treatment to diversity-visa holders that even the Trump Administration extended to "age-outs"—another group of immigrants facing a strict entry deadline. DHS's policy should accordingly be set aside, and DHS should be ordered to promptly issue new guidance that properly accounts for the interests of the *Gomez I* visa holders. The Court should also order the extension of unexpired visas so that their holders do not lose their opportunity to immigrate while DHS is formulating a new policy.

In addition, Plaintiffs respectfully submit that the Court should invoke its authority to protect its own jurisdiction (past and present) under the All Writs Act, 28 U.S.C. § 1651(a). Mass expiration of the *Gomez I* visas would render the interim relief issued under *Gomez I* a virtual nullity, and would have the bizarre and inequitable effect of depriving the named Plaintiffs of the very remedy that *Gomez II* preserved for thousands of as-yet-unidentified class members. It would also risk rendering Plaintiffs' claims moot before this Court (or the D.C. Circuit) can decide their merits. To head off those results, the Court should direct as a matter of equity that the *Gomez I* visas be treated as having been issued as of the date that this Court issues a final judgment. That outcome would preserve all parties' rights and the courts' jurisdiction, in a manner consonant with this Court's decisions in *Gomez I* and *Gomez II*.

## **BACKGROUND**

The State Department issued around 7,000 diversity visas pursuant to *Gomez I*—including at least 523 visas to the named Plaintiffs in these cases. *See* Immigrant Visa Issuances by Foreign State of Chargeability or Place of Birth September 2020 (FY 2020), https://bit.ly/378AD8F;

*Gomez II*, 2020 WL 5861101 at *2.  But these visas are valid for a maximum of six months, and have already begun expiring.  *See* 8 U.S.C. § 1201(c); 9 FAM 302.2-3(C).a, b.

President Trump extended the Proclamations' entry suspensions to March 31, 2021—a period that fits precisely with the last day on which a six-month diversity visa issued in September 2020 could remain valid.  *See* Proclamation 10131, 86 Fed. Reg. 417 (2020).  Thus, absent judicial relief or a change in policy, all of the diversity visas issued under *Gomez I* will expire, unused.

Plaintiffs and other *Gomez I* visa-holders nevertheless reasonably expected (based on public statements including those quoted above) that the Biden Administration would rescind the Proclamations and allow holders of valid visas to immigrate.  But while President Biden announced other immigration-related actions on February 2, he did not rescind the Proclamations. Nor did the new Administration alter the Trump Administration's omission of an express "national interest" exception to the Proclamations for immigrants with expiring visas.  *See* CAR 174.  As a result, diversity visas issued pursuant to *Gomez I* have continued expiring, at an accelerating pace.

Prior to bringing this matter to this Court, Plaintiffs sought an amicable solution— proposing on February 2 to work with Defendants "to ensure that those lucky enough to possess DV2020 visas have the ability to enter the United States at some point."  *See* Bless Decl. (submitted herewith) ¶¶ 3-4.  Defendants have stated only that they are considering the matter.  *See id.* ¶ 9.

Because the validity of the Proclamations' suspension of immigrant entry was actively pending before the D.C. Circuit, the *Gomez* Plaintiffs filed a Fed. R. App. P. 28(j) letter on February 2 to advise that court that the Proclamations had not been rescinded as expected.  The court of appeals issued a limited remand on February 9—directing this Court to "determine whether plaintiffs are eligible for interim relief and to take whatever steps are necessary to afford any relief found to be due."  The court of appeals also instructed this Court to "determine from the government whether it intends to pursue enforcement of the Proclamation."

3

## ARGUMENT

## I.   THE COURT SHOULD GRANT INJUNCTIVE RELIEF UNDER THE APA

Defendants have implemented the Proclamations' "national interest" exception without adopting an express provision calling for such exceptions generally to be granted to holders of expiring 2020 diversity visas.  *See* CAR 19-20, 44-45, 167-74.  That policy (which to Plaintiffs' knowledge has not changed since Defendants produced the administrative record) is arbitrary and capricious.[2]  It should be set aside, and the Court should take steps to protect the Plaintiffs and class members whose DV-2020 visas are set to expire in the coming weeks.[3]

### A.   Defendants' Implementation Of The "National Interest" Exception Is Final Agency Action

At the outset, Defendants' implementation of the "national interest" exception constitutes final agency action.  *See Gomez I*, 2020 WL 5367010, at *33; *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 478 (2001); *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); ECF 195-1, at 34-36.

*First*, Defendants have published guidance specifying the scenarios in which a "national interest" exception to the Proclamations is available, but making "no specific national interest exceptions available for diversity visa applicants."  *Gomez I*, 2020 WL 5367010, at *5 (citing CAR 173-74); *see id.* at *7 ("diversity visas are not listed as among the categories of visas eligible for the exception").  That guidance represents the completion of the decisionmaking process.

Although Defendants have suggested that they are "considering" their options with regard to diversity visa holders, including the option of issuing new "national interest" guidance (Bless

---

[2] Plaintiffs' claim is not that DHS has a policy to "categorically deny … the opportunity to apply for a national interest exception," as the plaintiffs alleged in *Prestige Transportation Inc. v. DHS*, No. 20-cv-2544, ECF 31 (D.D.C. Nov. 17, 2020).  While a diversity visa holder may in principle *apply* for an exception, Plaintiffs object to the absence of a general policy to *grant* such exceptions.

[3] Defendants may argue that a nonreviewability doctrine bars relief.  Plaintiffs respectfully refer the Court to their motions for partial summary judgment (ECF 194-1, at 4-5; ECF 195-1, at 13-16).

Decl. ¶ 9), "[t]he mere possibility that an agency might reconsider … does not suffice to make an otherwise final agency action nonfinal."  *E.g.*, *Sackett v. EPA*, 566 U.S. 120, 127 (2012).

*Second*, legal consequences flow from Defendants' omission of DV-2020 visa holders from the "national interest" guidance.  With no express exception available, none of the DV-2020 Plaintiffs or class members has secured an exception allowing him or her to enter the country—despite their efforts to seek such exceptions.[4]  Plaintiffs and class members are being denied entry, and will lose their eligibility to immigrate, precisely because DHS has made no express "national interest" exception for them.  This is a "concrete consequence[]" that constitutes final agency action.  *See Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 637 (D.C. Cir. 2019).

## B. Defendants' Implementation Of The "National Interest" Exception Is Not Committed To Agency Discretion

Defendants may argue that their implementation of the "national interest" exception is "committed to agency discretion" (*see* ECF 189-1, at 44-45).  That is wrong.  The APA embodies a "strong presumption that Congress intends judicial review of administrative action," which may be overcome only by "clear and convincing evidence that Congress intended" to foreclose review. *Am. Hosp. Ass'n v. Azar*, 967 F.3d 818, 824 (D.C. Cir. 2000) (citation omitted); *see, e.g.*, *Ramirez v. U.S. Imm. & Customs Enf't*, 338 F. Supp. 3d 1, 37-39 (D.D.C. 2018).  Courts therefore "have read the … exception for action committed to agency discretion '*quite narrowly*, restricting it to those *rare circumstances* where … a court would have ***no*** meaningful standard against which to judge the agency's exercise of discretion.'"  *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2568 (2019) (emphases added; citation and internal quotation marks omitted).  Defendants' action here does not fall within those "rare circumstances."  *See* ECF 195-1, at 27-31, 36.

---

[4] *See, e.g.*, Bushati Decl. ¶ 21; Iwundu Decl. ¶ 11; Karpes Decl. ¶ 12; Kinteh Decl. ¶ 10; Koirala Decl. ¶ 7; Nakamura Decl. ¶¶ 14-18; Hellgren Decl. (submitted herewith) ¶ 19.  Citations to the *Gomez* Plaintiffs' declarations are to those filed with their motion for partial summary judgment.

*First*, Defendants' "national interest" guidance does not fall in any of the few "categories of administrative decisions that courts traditionally have regarded as 'committed to agency discretion.'" *Dep't of Commerce*, 139 S. Ct. at 2568 (citation omitted).

*Second*, this is not a "rare circumstance[] where … there is no law to apply." *Id.* at 2568-69 (citation and internal quotation marks omitted). The INA provides meaningful standards for reviewing the "national interest" guidance's rationality (or lack thereof). For example, the courts can evaluate whether the agency's exercise of discretion accounts for Congress's directives that "[t]he worldwide level of diversity immigrants is equal to 55,000 for each fiscal year," 8 U.S.C. § 1151(e), and that immigrant visas are valid for no more than six months, *id.* § 1201(c).

Additionally, Proclamation 10052 itself (85 Fed. Reg. at 38,265) and the agencies' implementing documents (CAR 44-45, 174) direct that age-out cases be granted national-interest exceptions. Courts are well-positioned to assess whether DHS must afford diversity-visa holders similar treatment under the "fundamental norm of administrative procedure requires an agency to treat like cases alike." *Westar*, 473 F.3d at 1241; *see, e.g.*, *Thomas v. Pompeo*, 438 F. Supp. 3d 35, 42 (D.D.C. 2020) (relying on terms of Presidential proclamation to conclude that agency implementation of that proclamation was not "committed to agency discretion").

There thus exist "meaningful standards" and "legal norms" under which the Court may evaluate DHS's exercise of discretion. *Physicians for Soc. Responsibility v. Wheeler*, 956 F.3d 634, 642-43 (D.C. Cir. 2020). Certainly there is no "clear and convincing evidence" that Congress meant to foreclose judicial review. *Am. Hosp. Ass'n*, 967 F.3d at 824 (citation omitted); *see Ramirez*, 338 F. Supp. 3d at 37.

### C.   Defendants' Implementation Of The "National Interest" Exception Is Arbitrary, Capricious, And Contrary To Law

On the merits, the Court should set aside Defendants' implementation of the "national

interest" exception under 5 U.S.C. §§ 706(2)(A) and 705, for at least four reasons.

*First*, the "national interest" guidance is arbitrary and capricious because it violates the "fundamental norm of administrative procedure" under which the agency must "treat like cases alike." *Westar*, 473 F.3d at 1241.  Defendants cannot "point to a relevant distinction," *id.*, between age-outs (who are expressly granted "national interest" exceptions to avoid the harsh consequence of losing eligibility to immigrate, *see* CAR 174) and DV-2020 visa-holders (for whom there is no express exception despite materially identical circumstances).  DHS is required to "make an exception in [this] similar case." *Westar*, 473 F.3d at 1241.

*Second*, by omitting DV-2020 selectees from the classes to whom "national interest" exceptions are expressly available, Defendants committed the same errors that the Court identified in connection with the COVID-19 Guidance:  It is evident that "Defendants failed to consider an important aspect of the problem in violation of § 706(2) of the APA," because "[t]he record reveals no explanation whatsoever for the exclusion of DV-2020 selectees from [the 'national interest' guidance], nor does it reflect any reasoned consideration of the detrimental effects that will be wrought on diversity visa selectees if they do not [gain admission before their visas expire]." *Gomez I*, 2020 WL 5367010, at *33; *see DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020); CAR 173-74.

*Third*, Defendants' guidance is also arbitrary and capricious because Defendants have "fail[ed] to account for … a matter of importance under the statute." *Gresham v. Azar*, 950 F.3d 93, 102 (D.C. Cir. 2020).  Specifically, the record reflects no consideration of Congress's provision that "[t]he worldwide level of diversity immigrants"—not just visas, but actual *admitted immigrants*—"is equal to 55,000 for each fiscal year," 8 U.S.C. § 1151(e).  The "national interest" guidance works *against* that policy, as it is preventing some 7,000 diversity immigrants from immigrating even in a year when the pandemic has prevented most diversity immigration.

*Fourth*, Defendants' "national interest" guidance indicates that only "mission-critical or emergency case[s]" under the COVID-19 Guidance are eligible to be considered for a "national interest" exception.  CAR 24.  But the Court has enjoined the COVID-19 Guidance's "mission critical" criteria as arbitrary and capricious in their application to diversity visa selectees.  *Gomez I*, 2020 WL 5367010, at *38.  A "national interest" policy that rests on a separate arbitrary and capricious agency action must itself be arbitrary and capricious as well.

**D.      The Court Should Compel DHS Promptly To Issue New "National Interest" Guidance**

Upon vacating the "national interest" guidance as arbitrary and capricious, the Court should invoke 5 U.S.C. § 706(1) to compel DHS promptly to issue new guidance that reasonably accounts for the interests of DV-2020 visa holders.  The Proclamations themselves require such guidance, mandating that "[t]he Secretary of Homeland Security shall implement this proclamation as it applies to the entry of aliens."  CAR 3, *see* CAR 7.  DHS also owes a duty under the APA: "[W]ithin a reasonable time, each agency ***shall*** proceed to conclude a matter presented to it," 5 U.S.C. § 555(b) (emphasis added), meaning that DHS is "obligated *under the APA* to respond to" matters presented to it, and to do so "within a reasonable time."  *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 418-19 (D.C. Cir. 2004).  This matter has been presented to DHS.  *See* Bless Decl. ¶¶ 8-9.  And under *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984) (*TRAC*), any delay in issuing a new, lawful policy would be unreasonable:

*First and Second TRAC Factors*.  As this Court has explained in a related context, these factors strongly favor Plaintiffs and class members.  The INA "sets an absolute, unyielding deadline": diversity-visa holders must enter the country before their visas expire.  *Gomez I*, 2020 WL 5367010, at *30; *see* 8 U.S.C. § 1201(c)(1).  "'The specificity and relative brevity'" of that

deadline "supplies content for the *TRAC* rule of reason."  *Gomez I*, 2020 WL 5367010, at *30

(quoting *In re People's Mojahedin Org. of Iran*, 680 F.3d 832, 836-37 (D.C. Cir. 2012)).  And

under that rule of reason, DHS cannot "effectively extinguish the diversity program" by

withholding "national interest" guidance that accounts for the diversity visa holders' interests.  *Id.*

Allowing DHS to leave the current regime in place "would 'plainly frustrate[] the congressional

intent' to" admit 55,000 diversity immigrants each year.  *Id.* (quoting *Mojahedin*, 680 F.3d at 837);

*see* 8 U.S.C. § 1151(e).

> *Third and Fifth TRAC Factors*.  Defendants "d[id] not dispute" that these factors "favor[ed]

a finding of unreasonable delay" in connection with visa issuance, "and for good reason."

*Gomez I*, 2020 WL 5367010, at *31.  The same considerations plainly apply in the context of

imminent visa *expiration*.  "The prejudice from delay is dire[,] … and such delay is 'less tolerable'

in cases like this one, where 'human … welfare' is 'at stake.'"  *Id.* (citation omitted).

> *Fourth TRAC Factor*.  Plaintiffs are aware of no basis to conclude that "expediting delayed

action" would have a negative effect on any "competing priorit[ies]." *See TRAC*, 750 F.2d at 232.

To the contrary, counsel for the Government indicated at the February 10 status conference that it

would take no more than a week to determine in the first instance whether it would voluntarily

cease to enforce the Proclamations against Plaintiffs and class members.

> *Sixth TRAC Factor*.  Although impropriety is not necessary for a finding of unreasonable

delay, *see Gomez I*, 2020 WL 5367010, at *31, it bears remembering that present policy is a

continuation of President Trump's "well documented" "hostility towards the diversity visa lottery

program," *id.* at *26.  It is hard to understand why that hostile policy has not already been reversed.

> **E.     The Court Should Grant Emergency Injunctive Relief**

> For the foregoing reasons, the Court should vacate DHS's "national interest" guidance and

should remand with directions promptly to issue new guidance that is not arbitrary or capricious.

In addition, Plaintiffs submit that the Court should grant equitable relief to provide an effective remedy for DHS's arbitrary and capricious action by equitably extending the validity of Plaintiffs' and class members' visas so as to guarantee their opportunity to enter the country upon the issuance of new and lawful "national interest" guidance (or rescission of the Proclamations). The Court has such equitable authority, similar to the authority it exercised in *Gomez II*. For example, the court in *Defy Ventures, Inc. v. U.S. Small Business Administration*, 469 F. Supp. 3d 459 (D. Md. 2020), granted an injunction to extend a statutory deadline in order to save the plaintiffs from "losing a benefit for which they are eligible because of arbitrary and capricious agency action" that prevented them from meeting the deadline. *Id.* at 477-80 (surveying case law). Plaintiffs here are in the same situation. They are likely to succeed on their claim that the challenged policy is arbitrary and capricious, and they satisfy the remaining injunction factors. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014).

*First*, Defendants have made the "smart choice" not to dispute that the DV-2020 Plaintiffs would suffer irreparable injury if they are unable to complete their immigration process. *Gomez I*, 2020 WL 5367010, at *34. The declarations submitted with Plaintiffs' motions for partial summary judgment, and the harms reported by class members through counsel's recent survey, only reconfirm this obvious truth.[5]

*Second*, there is no countervailing public interest. To the contrary, the national interest and congressional policy strongly *favor* "promot[ing] diversity in [the] immigration system." *E.g.*, H.R. Rep. No. 101-723, pt. 1 at 48 (1990). And "[t]here is generally no public interest in the perpetuation of unlawful agency action," *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C.

---

[5] *See, e.g.*, Bushati Decl. ¶¶ 22, 32; Iwundu Decl. ¶ 10; Karpes Decl. ¶ 20; Kinteh Decl. ¶ 8; Koirala Decl. ¶ 5; Nakamura Decl. ¶ 25; *see also* Hellgren Decl. ¶ 20.

Cir. 2016), so Defendants can claim no harm from an injunction here.  *See Gomez I*, 2020 WL 5367010, at *34.

Defendants may assert that the public interest would be harmed by allowing immigrants to enter the country during the pandemic.  But the Proclamations at issue are not addressed to the health emergency.  And a variety of other Executive actions, including the CDC's requirement that travelers provide a negative COVID-19 test or proof of recovery,[6] exist to protect public health.

## II.    THE COURT SHOULD GRANT RELIEF UNDER THE ALL WRITS ACT

Under the All Writs Act, this Court has broad and flexible equitable authority to "issue all writs necessary or appropriate in aid of [its] jurisdiction[] and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  The statute authorizes the Court to (among other things) "issue such commands … as may be necessary or appropriate to effectuate and prevent the frustration of [its] orders," *United States v. New York Telephone Co.*, 434 U.S. 159, 172 (1977), to right a "wrong [which] may [otherwise] stand uncorrected," *United States v. Morgan*, 346 U.S. 502, 512 (1954), to grant equitable remedies "calculated in its sound judgment to achieve the ends of justice," *Adams v. United States ex rel. McCann*, 317 U.S. 269, 273 (1942), and to "fashion extraordinary remedies when the need arises." *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985).  The Court may invoke the Act whenever there is "some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004).[7]

---

[6] Requirement for Negative Pre-Departure COVID-19 Test Result or Documentation of Recovery From COVID-19 for all Airline or Other Aircraft Passengers Arriving Into the United States From Any Foreign Country, 86 Fed. Reg. 7387-01 (2021).

[7] The traditional four-part injunction test does not apply to the AWA; the Court need only find that relief is necessary to aid its exercise of jurisdiction—past, present, or future. *See, e.g.*, *Klay*, 376 F.3d at 1100; *In re Baldwin-United Corp.*, 770 F.2d 328, 338 (2d Cir. 1985).

Plaintiffs respectfully submit that the Court should invoke the AWA's broad authority to relieve Plaintiffs and class members from the expiration of DV-2020 visas that were issued in September 2020 pursuant to *Gomez I*, for two principal reasons.

***First***, the expiration of DV-2020 visas issued under *Gomez I* would frustrate the Court's prior orders.  Finding that Defendants had unlawfully and "unreasonably delayed processing DV-2020 selectees' visa applications," this Court in *Gomez I* directed Defendants to "process and adjudicate DV-2020 diversity visa[s] … and issue or reissue … visas to eligible applicants by September 30, 2020, giving priority to the named diversity visa Plaintiffs."  2020 WL 5367010, at *30, *38.  The State Department issued some 7,000 visas pursuant to that order, and then the Court exercised its equitable authority to order the State Department "to reserve" an *additional* "9,095 diversity visa numbers after September 30, 2020, for the future processing of the Named Plaintiffs' and class-members' diversity visa applications" upon entry of final judgment.  *Gomez II*, 2020 WL 5861101, at *2, *12.  Together, the Court's orders find that "the equities" of this case warrant issuance of a total of about 16,000 DV-2020 visas "to offset the State Department's halting the processing and adjudication of visa applications for nearly six months."  *Id.* at *8 n.4.

Allowing expiration of the 7,000 visas that issued under *Gomez I* would frustrate this Court's orders.  Most obviously, the visas would become nullities—wastes of the Plaintiffs' and the State Department's emergency efforts, not to mention the Court's.  Respectfully, Plaintiffs do not believe that the Court would have issued equitable relief requiring the State Department to issue useless visas—the Court premised its injunction in *Gomez I* on the observation that a visa issued under the injunction "w[ould] be valid for another three months after the Proclamations are set to expire [then December 31, 2020], giving [the recipient] three months to enter the country," 2020 WL 5367010 at *28, and the Court *refused* relief to non-DV Plaintiffs who had "no immediate prospect for entering the country," *id.* at *35.  More broadly, allowing the 7,000

*Gomez I* visas to expire would impair the integrity of the Court's ruling in *Gomez II* that the appropriate equitable remedy for Defendants' conduct was for 12,303 DV-2020 visas to issue—it would reduce the scope of the Court's ultimate remedy by more than 40%.

Allowing the *Gomez I* visas to expire would also risk the bizarre and inequitable result of foreclosing ultimate relief for the very individuals whose litigating efforts secured the decisions in *Gomez I* and *Gomez II*. All six of the named Plaintiffs in *Gomez*, and hundreds of named Plaintiffs in the consolidated cases, would have their visas expire even as thousands of absent members of the *Gomez* class could benefit from the visas reserved in *Gomez II*. That result would not be just, nor would it comport with the "important equity" that this Court recognized in maintaining "the uniform application of immigration law and policy." *Gomez I*, 2020 WL 5367010 at *37 (cleaned up). The Court should invoke the All Writs Act to ensure that its prior orders have effect.

**Second**, All Writs Act relief is also appropriate to preserve this Court's and the D.C. Circuit's ongoing jurisdiction to hear and decide Plaintiffs' claims on the merits. Should the individuals with issued visas see those visas expire, leaving them with no clear prospect of immigrating, their underlying claims could become moot—including not only the claims relating to visa issuance that are now before this Court on cross-motions for partial summary judgment, but also the *Gomez* Plaintiffs' direct challenges to the Proclamations themselves. Relief is necessary and appropriate to secure the courts' ongoing jurisdiction to hear and decide Plaintiffs' claims through final judgment: "Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." *Procup v. Strickland,* 792 F.2d 1069, 1074 (11th Cir. 1986) (en banc); *see, e.g.*, *Belbacha v. Bush*, 520 F.3d 452, 458-59 (D.C. Cir. 2008) (invoking All Writs Act to enjoin Guantanamo detainee's transfer to Algeria, which would have mooted his habeas case); *Al Otro Lado, Inc. v. Wolf*, 952 F.3d 999, 1006 n.6 (9th Cir. 2020) (affirming invocation of All Writs Act

to preserve jurisdiction over claims challenging immigration policy); *Michael v. INS*, 48 F.3d 657, 663-64 (2d Cir. 1995) (staying deportation order).

For the foregoing reasons, Plaintiffs respectfully submit that the Court should invoke its equitable power to grant relief under the All Writs Act.  As to the form that such relief should take, the Court has "broad power" and "significant flexibility in exercising [its] authority under the Act." *United States v. Catoggio*, 698 F.3d 64, 67 (2d Cir. 2012).  Here, Plaintiffs respectfully submit that the most appropriate relief (assuming that no other relief from the Proclamations is forthcoming) would be an order directing Defendants to treat visas issued and renewed pursuant to *Gomez I* as having been issued as of the date that this Court renders its final judgment in this action.  This would resolve each of the issues raised above:  It would avoid the nullification of this Court's prior orders; it would preserve the interests of Plaintiffs and other individuals who already received visas; it would avoid the incongruous and inequitable result of depriving the very Plaintiffs who secured class-wide relief from benefiting from that relief; and it would ensure that this Court and the D.C. Circuit do not lose jurisdiction to decide the ultimate merits of Plaintiffs' claims.  This Court has already (and correctly) granted equitable relief from the statutory deadline for visa issuance, *see Gomez II*, 2020 WL 5861101, at *12, and similar relief for the 7,000 *Gomez I* visa holders is fully appropriate.[8]

## III.   THE COURT SHOULD ORDER DEFENDANTS TO ASSIST CLASS COUNSEL IN NOTIFYING CLASS MEMBERS OF DEVELOPMENTS IN THIS ACTION

Finally, class counsel in *Gomez* respectfully request that this Court order Defendants to

---

[8] The Court could consider other equitable relief.  It could, for example, order that the running of the validity periods of *Gomez I* visas be tolled as of the date President Trump extended the Proclamations (December 31, 2020)—so that when the Proclamations ultimately are lifted, visa holders retain the same amount of time in which to use their visas that they would have possessed absent the extension.  Or the Court could direct that expired visas be reissued or renewed.

provide appropriate assistance in contacting absent class members regarding this case. *See* Fed. R. Civ. P. 23(d)(1)(B)(i). Class counsel have attempted to contact absent class members (i) to advise them that they should apply to extend any *Gomez I* visas that were originally issued for less than six months, *see* 8 C.F.R. § 42.72(b), and (ii) to apprise them of any case developments, but counsel have so far been unable to contact all class members. *See* Hellgren Decl. ¶¶ 3-6 & Exs. A-C. And even though Defendants have access to class members' contact information, Defendants have refused either to provide appropriate notice to class members or to share their contact information with class counsel. *See* Bless Decl. at ¶¶ 3-7, 10-11.

In these circumstances, class counsel submit that "to protect class members and fairly conduct the action," this Court should "require" that Defendants give notice as described above to all class members. Fed. R. Civ. P. 23(d)(1)(B)(i). In the alternative, the Court should direct Defendants to provide sufficient information to allow class counsel to provide notice directly. *See, e.g.*, *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 341, 359 (1978) (court may order defendant to cooperate in identifying class members where only defendant "can perform one of the tasks necessary to send notice, such as identification").

<u>CONCLUSION</u>

The Court should set aside as arbitrary and capricious DHS's implementation of the Proclamations' "national interest" exception as it applies to holders of currently valid DV-2020 visas that expire on or before March 31, 2021. The Court should compel DHS promptly to issue new "national interest" guidance that is neither arbitrary nor capricious. And the Court should order the extension of unexpired 2020 diversity visas to ensure that they may benefit from DHS's forthcoming new "national interest" policy.

In addition, the Court should grant appropriate relief under the All Writs Act.

The Court should direct Defendants to aid class counsel in providing notice to the class.

February 12, 2021

Jesse M. Bless (D.D.C. Bar No. MA0020)
AMERICAN IMMIGRATION LAWYERS
  ASSOCIATION
1301 G Street NW, Ste. 300
Washington, D.C. 20005
(781) 704-3897
jbless@aila.org

Karen C. Tumlin (*pro hac vice*)
Esther H. Sung (*pro hac vice*)
Jane P. Bentrott (*pro hac vice*)
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 316-0944
karen.tumlin@justiceactioncenter.org
esther.sung@justiceactioncenter.org
jane.bentrott@justiceactioncenter.org

Stephen Manning (*pro hac vice*)
Tess Hellgren (*pro hac vice*)
Jordan Cunnings (*pro hac vice*)
INNOVATION LAW LAB
333 SW Fifth Avenue #200
Portland, OR 97204
Telephone: (503) 241-0035
stephen@innovationlawlab.org
tess@innovationlawlab.org
jordan@innovationlawlab.org

Respectfully submitted,

/s/ Andrew J. Pincus
Andrew J. Pincus (D.C. Bar No. 370762)
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Telephone: (202) 263-3000
apincus@mayerbrown.com

Matthew D. Ingber (*pro hac vice*)
Cleland B. Welton II (*pro hac vice*)
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
mingber@mayerbrown.com
cwelton@mayerbrown.com

Laboni A. Hoq (*pro hac vice*)
LAW OFFICE OF LABONI A. HOQ
Justice Action Center Cooperating Attorney
P.O. Box 753
South Pasadena, CA 91030
laboni@hoqlaw.com

Attorneys for *Gomez* Plaintiffs

Charles H. Kuck (D.C. Bar No. GA429940)
KUCK BAXTER IMMIGRATION
365 Northridge Rd., Suite 300
Atlanta, GA 30350
ckuck@immigration.net

Greg Siskind (*Pro Hac Vice*)
SISKIND SUSSER PC
1028 Oakhaven Rd.
Memphis, TN 39118
gsiskind@visalaw.com

Jeff Joseph (D.C. Bar ID: CO0084)
JOSEPH & HALL P.C.
12203 East Second Avenue
Aurora, CA 80011
jeff@immigrationissues.com

Attorneys for *Aker* Plaintiffs

Kristina Ghazaryan
Philip Duclos
Abadir Barre
Curtis Lee Morrison
Rafael Urena
THE LAW OFFICE OF RAFAEL URENA
925 N. La Brea Ave, 4th Floor
Los Angeles, CA 90038
Tel: (703) 929-4424
ru@urenaesq.com

Attorneys for *Mohommed*, *Fonjong*, and *Kennedy* Plaintiffs