# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DOMINGO ARREGUIN GOMEZ, *et al.*,
                    Plaintiffs,

v.

DONALD J. TRUMP, President of the United
States of America, *et al.*,

                    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 20-1419 (APM)

MOHAMMED ABDULAZIZ ABDULBAGI
MOHAMMED, *et al.*,

          Plaintiffs,

v.

MICHAEL R. POMPEO, Secretary,
U.S. Department of State, *et al.*,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 20-1856 (APM)

CLAUDINE NGUM FONJONG, *et al.*,

          Plaintiffs,

v.

DONALD J. TRUMP, President of the United
States of America, *et al.*,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 20-2128 (APM)

1



|  |  |
|---|---|
| AFSIN AKER, *et al*.,<br><br>    Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, President of the United States of America, *et al.*,<br><br>    Defendants. | Civil Action No. 20-1926 (APM) |
| MORAA ASNATH KENNEDY, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, President of the United States of America, *et al.*,<br><br>    Defendants. | Civil Action No. 20-2639 (APM) |

## JOINT STATUS REPORT

The Parties respectfully submit this joint filing laying out their proposals for a time frame within which Defendants must complete processing the reserved visas. Pursuant to the Court's Order of August 17, 2021, which required that the parties "attempt to negotiate a reasonable time frame within which Defendants must complete processing the reserved visas," ECF 237 at 52, the Parties conferred via teleconference on August 23, 2021, but could not reach agreement regarding a time frame within which Defendants must complete processing the reserved visas. Accordingly, the Parties present their respective positions as follows:

<u>Defendants' Position</u>[1]

In compliance with the Court's Order,[2] the Government submits, consistent with its position at the July 19, 2021 hearing, Oral Arg. Tr., ECF No. 236 (hereafter "Hr'g Tr."), at 169:13-173:21, that the Department of State (the "Department") should be permitted to process the reserved Fiscal Year ("FY") 2020 Diversity Visas ("DVs") during FY 2023, which begins October 1, 2022. Doing so promises to balance the competing interests of other visa applicants, the Department's responsibilities and competing priorities, and the Department's limited resources against the backdrop of an ongoing global pandemic and emergency consular needs in Afghanistan.

If, as Plaintiffs propose, the Court were to order the Department to complete processing of FY 2020 DVs by January 31, 2022, the Department would need to begin processing those reserved visas immediately. The Department, however, currently lacks the consular resources necessary to do so for two reasons.

First, the Department's Visa Office, and its leadership, is fully engaged in evacuation efforts, including providing emergency visa assistance to Special Immigrant Visa ("SIV")

---

[1] The Government would like to bring to the Court's attention that it terminated the meet-and-confer teleconference early on August 23, 2021, because of *ad hominem* comments by Plaintiffs' counsel (subsequently posted on social media) that the Government concluded were abusive and counter-productive. The Government raises this issue here because Plaintiffs' counsel is presently seeking to be appointed as class counsel in *Rosales v. Biden*, 21-cv-1874-APM, which the Government opposes.

[2] The Government proposes a timeframe to process the reserved visas to comply with the Court's Order. The Government's proposal, however, does not constitute any waiver of its right to appeal the Court's forthcoming final order in this matter.

applicants seeking to depart Afghanistan. *See* Declaration of Neal Vermillion, at ¶ 11.[3] Many consular officers overseas, including those at posts in third countries where Afghan evacuees are being received, are focused on managing the crisis in Afghanistan. *Id*. As a result, the Department currently has very few resources to focus on the number of changes necessary to replace current worldwide guidance related to DV processing. *Id*.

Second, the Department currently lacks the information systems infrastructure to process DV applications after the conclusion of a particular FY. *See* Declaration of Gulcin Halici, at ¶¶ 2-4, 6. The Department's information systems are designed only to process DV cases from active program years, and systems modifications would be necessary to resume processing DV cases from an expired program year. *Id*. ¶ 2. An order from this Court directing the Department immediately to resume processing DV applications for a past FY would create an unprecedented computing demand that will require the Department to implement wide-ranging hardware and software modifications. *Id*. The Department anticipated the need to process DV applications after the conclusion of a FY in the event of an adverse order, *id*. ¶ 8, and estimates that resumption of processing FY 2020 DV cases at the beginning of FY 2023 will allow sufficient time to make all necessary system modifications. *Id*. ¶ 9.  Given the number of high priority development projects that the Department is managing to address known and urgent needs, it could not justify diverting resources from those projects to work on a project to implement a court order that had not yet been issued and which could shape the scope of the entire project.

---

[3] The Government will lodge the declarations of Neal Vermillion, Division Chief, Outreach and Inquiries Division, Office of Field Operations of the Visa Office, Bureau of Consular Affairs, U.S. State Department") and Gulcin Halici, Team Lead, Systems Development and Liaison Team, Office of Information Management and Liaison of the Visa Office, Bureau of Consular Affairs, U.S. State Department, separately after the Parties file this Joint Status Report.

Even if the Department had the consular capacity and computing capability immediately to resume processing FY 2020 DV applications, in light of the backlog of visa applications that the COVID-19 pandemic has caused and continues to cause, the Department is unable to process FY 2020 DV applications without delaying the adjudication of other visa applicants. Due to the effects of the COVID-19 pandemic, the Department currently faces a backlog of over 500,000 immigrant visa applications, including the close family members of U.S. citizens and lawful permanent residents and current DV applicants. Declaration of Neal Vermillion, at ¶¶ 2, 9. To ensure the health and safety of consular staff, visa applicants, and the global public, the Department has had to limit capacity at diplomatic posts worldwide. *Id.* ¶ 7. In many instances, the health of consular staff, local public health conditions, and COVID-related restrictions further limit the Department's ability to conduct interviews and process visas. *Id.* To reduce the backlog in visa adjudication, consistent with Congress's direction in the Immigration and Nationality Act, the Department has prioritized reducing the wait time for the immediate family members of U.S. citizens. *Id.* ¶ 9. Ordering the Department to begin adjudicating FY 2020 DVs immediately would disturb this prioritization and necessarily require the Department to delay the adjudication of all categories of visas.  The relief that Plaintiffs seek would put them ahead in line of all other visa applicants; even with the delays DV 2020 selectees have faced, they have not been waiting as long as many other Immigrant Visa applicants. *See* U.S. Dep't of State Bureau of Consular Affairs, *Visa Bulletin for August 2021[4],* (indicating that a son or daughter of an American citizen (F1 classification) must have a priority date before November 22, 2014 to apply for an immigrant visa;

---

[4] Available at https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2021/visa-bulletin-for-august-2021.html (last visited August 25, 2021).

that the son or daughter of a lawful permanent resident (F2B classification) must have a priority date of September 22, 2015 to apply; that the married son or daughter of a U.S. citizen (F3 classification) must have a priority date before November 8, 2008 to apply; and that the sibling of a U.S. citizen (F4 classification) must have a priority date of March 1, 2007 to apply.). Notably, Plaintiffs' proposals to fast track the adjudication of the reserved FY 2020 DV applications would come at the expense of other *Gomez* plaintiffs who filed family-based immigrant visa petitions and are still waiting for the visa applications of their beneficiaries to be adjudicated.[5] Moreover, as the Government noted at the July 19, 2021 hearing, *see* Hr'g Tr., at 172:9-17, an order from this Court prioritizing the adjudication of FY 2020 DV applications would invariably delay the Department's ongoing adjudication of FY 2021 DV applications and the future adjudication of FY 2022 DV applications. This, in turn, would place FY 2020 DV applicants ahead of FY 2021 DV applicants and, when the new fiscal year starts on October 1, 2021, it would place FY 2020 applicants ahead of FY 2022 applicants. Notably, counsel for the *Mohammed*, *Fonjong*, *Kennedy*, and *Aker* Plaintiffs represent DV selectees from both FY 2020 and FY 2021. Delaying the Department's adjudication of FY 2021 DV applications may likely also create a perennial basis for future litigation concerning visa adjudication against the Department.

By contrast, an order permitting the Department to process FY 2020 DV applications during FY 2023 would minimize disruptions to the Department's current operations. It would permit the Department to plan for the additional workload, allocate the resources associated with processing FY 2020 DV applications, and develop the necessary computer infrastructure. Doing

---

[5] The Department believes that three of the named *Gomez* plaintiffs fall into this category as they are awaiting adjudication of family-based immigrant visa petitions.

so would also afford the Department the ability to continue processing DV visas without additional disruption to other categories of visa applications—including applications from FY 2021 and FY 2022 DV applicants. Permitting the Department to process FY 2020 DV applications during FY 2023 would not unduly prejudice Plaintiffs in this matter as it will still permit them the opportunity to seek to immigrate to the United States as the beneficiary of a diversity immigrant visa. Finally, an order permitting the Department to process FY 2020 DV applications during FY 2023 would grant the Department the flexibility to respond to urgent visa processing needs, such as those that have arisen recently in Afghanistan.

<u>Gomez</u> Plaintiffs' Position[6]

The Court "order[ed] Defendants to in good faith adjudicate DV-2020 applications until the [9,095] reserved diversity visas for the 2020 Fiscal Year are filled."  ECF 237, at 52.  "As for timing," the Court directed the parties to "notify the court by August 25, 2021, whether they have agreed to a time within which to process the reserved visas." *Id.* at 52, 53. Consistent with the Court's order, counsel have exchanged e-mail correspondence, and also met and conferred telephonically on August 23, 2021, but have not been able to agree to a time frame for processing

---

[6] Defendants' footnote 1 misrepresents the meet-and-confer telephone call of August 23, 2021. The teleconference was not "terminated . . . early" by either side. Defendants entered the call unwilling to compromise their position, which they had proffered at the July 19 summary judgment hearing, but which this Court's order (ECF 237) did not entertain—that the visas reserved in *Gomez II* should not be processed under fiscal year 2023. Defendants further declined Plaintiffs' requests for additional information, which are summarized in Plaintiffs' statements below. Once it became clear that Defendants' intransigence would foreclose compromise, the call concluded with agreement between the parties regarding a schedule for preparing this joint submission.

At all events, counsel for the *Gomez* Plaintiffs and the class wish to make clear that they were responsible for no "*ad hominem*" or "abusive" comments, and have made no social media postings about which Defendants could complain. (Class counsel in *Gomez* are not seeking to be appointed as class counsel in *Rosales*.) Class counsel respectfully requested that Defendants make this clear in their submission, but Defendants refused that request.

the reserved visas.

Specifically, Plaintiffs' counsel tentatively proposed a deadline of January 31, 2022, for the State Department's adjudication of the 9,095 reserved visas.  That date would take into account the need for some lottery winners to make arrangements to complete the application process (*e.g.*, making arrangements to travel to an open consulate to attend an interview), and would provide the State Department more than five months to issue the 9,095 visas—a period that appears reasonable given the fact that the State Department issued more than 7,000 diversity visas over the course of less than a month in September 2020, during a peak in the Covid-19 pandemic.  *See* Immigrant Visa Issuances by Foreign State of Chargeability or Place of Birth September 2020 (FY 2020), https://bit.ly/378AD8F.

Class counsel clarified, however, that this tentative proposal is contingent on obtaining from the State Department a better understanding of how it plans to complete the processing of visas pursuant to the Court's order. To this end, *Gomez* class counsel posed several questions to the government, including:

- Whether the State Department (namely, the Kentucky Consular Center) will maintain lottery selectees' rank order as reported in fiscal year 2020, or whether it instead intends to conduct a new lottery selection process;
- Whether the Department will schedule appointments for documentarily qualified applicants consistent with their regional lottery rank;
- Whether the Department will take steps to ensure that the reserved visas are allocated proportionally across the six geographic regions;
- Whether the Department will prioritize individuals who had interviews scheduled in 2020 but which were canceled because of consulate and embassy closures; and
- Whether the Department will transfer interviews and cases away from consulates and embassies that are closed due to COVID-19 or other country-specific circumstances, such as the Kabul embassy.

Class counsel submit that understanding how the selection, interview, and issuance processes will work is vital to any possible agreement regarding an appropriate time frame for completion of

those processes.  Defendants, however, have not yet provided any answers to Plaintiffs' questions.

Defendants instead proposed that "the reserved visas should be processed during Fiscal Year 2023"—*i.e.*, that processing should not *begin* until October 2022, more than a year from now—on grounds that the State Department "does not have additional capacity" to adjudicate the reserved 9,095 DV2020 visas during fiscal year 2022.  Counsel refer to the COVID-19 pandemic, the backlog of immigrant visa cases, and the present crisis in Afghanistan, and state that the State Department's internal computer software would need to be updated to permit issuance of fiscal year 2020 diversity visas (an eventuality that could have been anticipated last September).  Class counsel respectfully submit that Defendants have not adequately explained how or why the State Department would be impossible to adjudicate a single DV-2020 application before October 2022.

The *Gomez* class is unable to agree to Defendants' proposal.  Class members are enduring great hardships, not least of which is uncertainty regarding whether and when they may finally obtain visas and be admitted into the country.  Moreover, the Court has determined that the visas in question should have been issued in 2020.  The *Gomez* class respectfully submits that it would be unreasonable to require lottery winners to wait more than two full years, and continue to put their personal and professional lives, and financial futures, on hold.

The class is not insensitive to the burdens that Defendants now face, but those burdens are attributable in at least some substantial part to Defendants' own conduct.  In particular, the visa backlog was generated as a result of Defendants' unlawful policies with respect to visa processing and issuance.  *See, e.g.*, ECF 237 (Defendants unlawfully suspended diversity visa adjudications); *Tate v. Pompeo*, 513 F. Supp. 3d 132, 146 (D.D.C. 2021) (same as to O visas);  *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 316 (D.D.C. 2020) (same as to K visas); *Young v. Trump*, 506 F. Supp. 3d

921, 944-46 (N.D. Cal. 2020) (same as to family-based visas).  Any burden relating to computer modifications must also fall on Defendants:  The Government has known for nearly a year that Plaintiffs were "highly likely to succeed on the merits," *Gomez v. Trump*, 485 F. Supp. 3d 145, 201 (D.D.C. 2020), and that the Court was likely to order the State Department to process and to issue 9,095 visas after the end of fiscal 2020, *see Gomez v. Trump*, 490 F. Supp. 3d 276, 294-95 (D.D.C. 2020), *appeal dismissed*, 2020 WL 7688214 (D.C. Cir. Dec. 14, 2020)—yet Defendants apparently took no steps to prepare for that outcome.  Defendants did not even advise Plaintiffs or the Court of this concern.

The class further respectfully submits that any additional burden imposed by a requirement to adjudicate the 9,095 reserved diversity visas appears slight in the context of Defendants' overall annual visa adjudications:  The State Department historically has issued well over 500,000 immigrant visas per year, as well as well over 9 million nonimmigrant visas per year.  Even in 2020, with the Proclamations in place and consular operations restricted, the State Department issued more than 240,000 immigrant visas and more than 4 million nonimmigrant visas.[7]  *See* Immigrant and Nonimmigrant Visas Issued at Foreign Service Posts, Fiscal Years 2016-2020, https://bit.ly/3jbsUgh.

For the foregoing reasons, counsel have not reached an agreement on a reasonable time

---

[7] The government cites no factual basis for its speculative claim that requiring it to process the reserved DV 2020 visas before October 2022 would have any appreciable impact on the three *Gomez* family-based visa applicants who have yet to have their visas issued. Those visas are among those that ought to have issued already if not for Defendants' unlawful actions. In any event, those Plaintiffs' claims are now moot.  Class counsel are simply asking the government to fulfill the Court's order in a reasonable time and the government's proposal unreasonably delays relief to the class members.

frame for processing the reserved visas. Class counsel object to the government's proposal to postpone issuance of the reserved DV 2020 visas until Fiscal Year 2023, but would welcome the opportunity to discuss these issues in greater detail at a status hearing or in additional briefing. Class counsel respectfully submit that given Defendants' unique access to relevant information and their failure to date to respond substantively to Plaintiffs' inquiries, Defendants should bear the burden to justify any further delay in adjudicating the reserved visas.  In this regard, class counsel observe that Defendants rely on declarations that they propose to "lodge" with the Court after this filing is submitted; Defendants apprised Plaintiffs of the declarations' existence only at 5 p.m. today, and refused Plaintiffs request to provide the declarations to Plaintiffs prior to this submission.  Class counsel respectfully submit that the Court ought not base any decision on such late-disclosed evidentiary submissions without, at minimum, allowing Plaintiffs an opportunity to respond to the new declarations and to test the veracity of the averments therein.

### *Aker* Plaintiffs' Position

On August 17, 2021, this Court "order[ed] Defendants to in good faith adjudicate DV-2020 applications until the [9,095] reserved diversity visas for the 2020 Fiscal Year are filled."  ECF 237, at 52.  "As for timing," the Court directed the parties to "notify the court by August 25, 2021, whether they have agreed to a time within which to process the reserved visas." *Id.* at 52, 53. The parties have not agreed to a time frame for processing the reserved visas.

*Aker* Plaintiffs' counsel propose that this Court order a deadline of January 31, 2022, for the State Department to complete adjudication and issue the 9,095 reserved visas.  This will give the State Department sufficient time to issue the 9,095 visas, at a rate of 1,500 or so visas a month spread out over 150 or more consulates. These 1500 monthly (more or less) DV immigrant visa issuances cannot possibly cause so much strain and consternation at individual consulates that

Defendants would instead need more than two years to adjudicate them.  Further, software modifications to update the Defendant's system to allow for issuance of DV2020 viasas in FY2022 cannot possibly take a year to make.  Defendants have not given any detailed plan to this court on how or when it will actually adjudicate these cases, and have not even said what efforts they have made since September 30, 2020 to update their computer system to allow for this visa issuance, knowing that a preliminary injunction was in place on this exact issue. Apparently, for a year, Defendants have literally done nothing to deal with what they had to anticipate would become a final order.  Whether the result of mismanagement or willful delay, the result is the same. Defendants wish for Plainitffs to bear the burden of their own inaction. Further, Defendants have already been paid by Plaintiffs for these visa issuances (and by thousands more who will not get visas at all), and, in light of Defendants hiring of new foreign service officers over the last 8 months and ongoing hiring[8] for consular officer positions, any time frame longer than 6 months after this Court's final order would be inherently unreasonable.

Aker Plaintiffs also asked Defendants the following questions, in light of this court's Order, answers to which could speed up consular processing of these 9,095 permitted visas; Defendants have refused to answer these questions.  Unfortunately, operating in this opaque manner makes this Court's order more difficult to carry to fruition and to ascertain who, exactly, could be expected to receive visas, including the 12 remaining Aker Plaintiffs, all of whom were previously scheduled for appointments in September 2020, but who were not permitted to leave their country (Belarus) to attend their visa appointment.  These questions (in addition to those noted in the Gomez section) are:

---

[8] See, https://careers.state.gov/work/available-jobs/

- Will DOS reopen and reinterview individuals' cases who were denied solely because of the Muslim Ban for DV2020?

- Will DOS include individuals who were interviewed but whose cases were denied due to the expiration of the fiscal year or whose administrative processing extended beyond the end of the fiscal year?

- Does DOS agree that the Court's order stating that all individuals with expired DV2020 visas can now enter the US, regardless of visa expiration date?

Aker Counsel believes that answers to these questions can help narrow who is eligible according to Defendants processing protocols, and set the expectations of all Plaintiffs for allocation of these 9,095 reserved visas.

<u>*Mohammed*, *Fonjong*, and *Kennedy* Plaintiffs' Position</u>

On August 17, 2021, this Court "order[ed] Defendants to in good faith adjudicate DV-2020 applications until the [9,095] reserved diversity visas for the 2020 Fiscal Year are filled."  ECF 237, at 52.  "As for timing," the Court directed the parties to "notify the court by August 25, 2021, whether they have agreed to a time within which to process the reserved visas." *Id.* at 52, 53. The parties have not agreed to a time frame for processing the reserved visas.

*Mohammed*, *Fonjong*, and *Kennedy* Plaintiffs' counsel propose that this Court order a deadline of January 31, 2022, for the State Department to complete adjudication and issue the 9,095 reserved visas.  This will give the State Department sufficient time to issue the 9,095 visas. This is reasonable given the fact that the State Department issued 37,932 immigrant visas in June 2021.  *See* Immigrant Visa Issuances by Post June 2021 (FY2021), https://bit.ly/3kjgSkB. Should the Defendants continue to adjudicate visas at their June 2021 pace, DV-2020 processing would

consume less than 5% of the Defendants' current immigrant visa processing capacity over the next five months.

Plaintiffs have attempted to create a dialogue with the Defendants regarding the timeline for processing of Plaintiffs' immigrant visa applications to understand the underlying reasoning supporting Defendants' proposal begin processing DV-2020 cases in FY-2023. Defendants' have been unwilling to answer any of Plaintiffs' questions regarding how they intend to implement or what resources are being allocated to effectuate this Court's Order. In fact, in an August 20, 2021 email, Defendants' counsel questioned whether "the Court has the authority to order the processing of the reserved visas at all…" Plaintiffs' reasonable questions, outlined below, remain unanswered:

- Whether DOS is willing to facilitate transfers where embassies are closed or not issuing DVs and they are not currently facilitating transfers. (Moscow, Baghdad, Tirana, Kabul, etc);

- Whether Defendant President Biden considered the impact of the FY-2023 proposal on potential age-outs? Taking into account CSPA, how many older children of DV-2020 selectees, many of whom who are named plaintiffs, will completely lose their opportunity to immigrate under the FY-2023 proposal? Would Defendants be willing to provide the court with a list of the named plaintiffs whose immigration paths are extinguished by the FY-2023 proposal?
- Whether Diversity Visa immigrant visa applicants will be turned away if they make the perilous journey to the Kabul airport, or will they be allowed on planes?

- When can DV-2020 selectees begin communicating with KCC and embassies about their files and documents?

- Whether there was anything DOS would like us to pass on to DV-2020 selectees so that they are better prepared.

- When the DV-2020 clients whose cases mysteriously do not appear on the status update on the CEAC portal can expect that to change.

- Whether there is a plan to turn the KCC phones back on.

14

Without any further explanation, other than the generalizations put forward by Defendants'
counsel, this Court should not accept the Defendants proposal.  *Mohammed*, *Fonjong*, and *Kennedy*
Plaintiffs have undergone great prejudice by Defendants' withholding of adjudications of their visa
applications.   In fact, two Kennedy plaintiffs have passed away during the pendency of this
litigation, resulting in the lost opportunity for their remaining family members to immigrate to the
United States.   Others, continue to face oppressive regimes, war, famine, and disease that they
would have otherwise escaped but for Defendants unlawful actions.[9] **Subjecting Plaintiffs to an**
**additional two-year delay and the hardships caused thereby is not justice.**  For these reasons,
*Mohammed*, *Fonjong*, and *Kennedy* strongly urge the Court to reject the government's proposal to
issue the reserved DV-2020 visas in FY-2023.

Defendant's claim that State Department software does not prevent the printing of DV-
2020 immigrant visas is false, as Defendants' counsel Robert Caplen assisted Counsel Curtis Lee
Morrison in getting one printed in March 2021. See this DV-2020 printed in March:

---

[9] To the extent Defendants argue the plight of Afghans is a competing priority, 25 *Mohammed*
and *Kennedy* Plaintiffs rebut that they are actual Afghans, as were a total of 981 Afghani DV-
2020 selectees. *See* ECF No. 238.



Also, MFK Plaintiffs object to Defendants' plan to file declarations they won't share with us in advance of filing.

To the extent the Gomez Class has invited more briefing and argument on the subject, *Mohammed*, *Fonjong*, and *Kennedy* Plaintiffs' do not find that this will be useful and only serves to delay the adjudication of Plaintiffs' visa applications. In the alternative, *Mohammed*, *Fonjong*, and *Kennedy* Plaintiffs' request that this Court order Defendants to submit a plan to the Court, subject to objection by Plaintiffs, on how the Defendants will undertake to effectuate this Court's order.

August 26, 2021

BRIAN M. BOYNTON
Acting Assistant Attorney General, Civil
Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation,
District Court Section
COLIN A. KISOR
Deputy Director
GLENN M. GIRDHARRY
Assistant Director
JOSHUA PRESS
Senior Litigation Counsel

_/s/ Eric C. Steinhart_
ERIC C. STEINHART
JAMES J. WEN
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation – DCS
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 514-0618
Email: eric.c.steinhart@usdoj.gov

Attorneys for Defendants

Respectfully submitted,

_/s/ Andrew J. Pincus_
Andrew J. Pincus (D.D.C. Bar No. 370762)
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Telephone: (202) 263-3000
apincus@mayerbrown.com

Matthew D. Ingber (_pro hac vice_)
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020

Cleland B. Welton II (_pro hac vice_)
MAYER BROWN MEXICO, S.C.
Goldsmith 53, Polanco
Ciudad de Mexico, 11560

Jesse M. Bless (D.D.C. Bar No. MA0020)
AMERICAN IMMIGRATION LAWYERS
ASSOCIATION
1301 G Street NW, Ste. 300
Washington, D.C. 20005

Karen C. Tumlin (_pro hac vice_)
Esther H. Sung (_pro hac vice_)
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027

Stephen Manning (_pro hac vice_)
Nadia Dahab (_pro hac vice_)
Tess Hellgren (_pro hac vice_)
Jordan Cunnings (pro hac vice)
INNOVATION LAW LAB
333 SW Fifth Avenue #200
Portland, OR 97204

Laboni A. Hoq (_pro hac vice_)
LAW OFFICE OF LABONI A. HOQ
Justice Action Center Cooperating Attorney
P.O. Box 753

17

South Pasadena, CA 91030
labonihoq@gmail.com

/s/Charles H. Kuck
CHARLES H. KUCK
Kuck Baxter Immigration, LLC
Bar No. 429940
365 Northridge Rd, Suite 300
Atlanta, GA 30350
404.816.8611

Greg Siskind
Siskind Susser PC
1028 Oakhaven Rd.
Memphis, TN 39118

Jeff D. Joseph
Joseph & Hall P.C.
12203 East Second Avenue
Aurora, CO 80011

/s/ Rafael Urena
Rafael Urena
Curtis Lee Morrison
Abadir Barre
The Law Office of Rafael Urena
925 N. La Brea Ave, 4th Floor
Los Angeles, CA 90038
Tel: (703) 929-4424
Fax: (929) 286-9584
curtis@curtismorrisonlaw.com
ru@urenaesq.com
abadir@barrelaw.com
Attorneys for the Plaintiffs

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 26, 2021, I electronically filed the foregoing document with the Clerk of the United States District Court for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

<u>/s/ Eric C. Steinhart</u>
ERIC C. STEINHART
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation – DCS
