CURTIS LEE MORRISON (D.C. Bar ID: 1631896)
RAFAEL URENA (Pro Hac Vice)
KRISTINA GHAZARYAN (Pro Hac Vice)
ABADIR BARRE (Pro Hac Vice)
Morrison Urena, LC
PO Box 80844
Rancho Santa Margarita, CA 92688
Telephone: (703) 989-4424
curtis@morrisonurena.com
rafael@morrisonurena.com
kristina@morrisonurena.com
abadir@barrelaw.com
*Attorneys for Mohammed, Fonjong, and Kennedy Plaintiffs*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

DOMINGO ARREGUIN GOMEZ, *et al*.,
    Plaintiffs,

v.

JOSEPH R. BIDEN, President of the United
    States of America, *et al.*,
    Defendants.

Civil Action No. 20-1419 (APM)

MOHAMMED ABDULAZIZ ABDULBAGI
    MOHAMMED, *et al*.,
    Plaintiffs,

v.

ANDREW J. BLINKEN, Secretary, U.S.
    Department of State, *et al.*,
    Defendants.

Civil Action No. 20-1856 (APM)

CLAUDINE NGUM FONJONG, *et al*.,

Civil Action No. 20-2128 (APM)

Plaintiffs,

v.

JOSEPH R. BIDEN, President of the United
        States of America, *et al.*,
        Defendants.

AFSIN AKER, *et al.*,
        Plaintiffs,

v.

JOSEPH R. BIDEN, President of the United
        States of America, *et al.*,
        Defendants.

Civil Action No. 20-1926 (APM)

MORAA ASNATH KENNEDY, *et al.*,
        Plaintiffs,

v.

JOSEPH R. BIDEN, President of the United
        States of America, *et al.*,
        Defendants.

Civil Action No. 20-2639 (APM)

**MOHAMMED, FONJONG, AND KENNEDY PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR STAY AND MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………iii

INTRODUCTION……………………………………………………………………………...1

BACKGROUND……………………………………………………………………………1

LEGAL STANDARD………………………………………………………………………..2

ARGUMENT………………………………………………………………………………...4

I.   Defendants are not Likely to Succeed on Appeal…………………………………………4

      A.   The Court did not Err in Holding that State's Refusal to Process Visa Applications and Issue Visas to Persons Barred from Entry by PPs is not in Accordance with Law and is Arbitrary and Capricious.…………………………………………………4

      B.    The Court did not Err in Holding that State Unreasonably Delayed and Unlawfully Withheld Adjudication of DVs. …………………………………………6

      C.   The Court did not Err in Holding that it had the Equitable Authority to Order State to Adjudicate and Issue Reserved DVs Beyond the FY End. …………………8

      D.   The Court did not Err in Holding that it can issue relief to nonparties. ………………12

II.   Defendants Will Not Suffer Irreparable Harm Absent a Stay Pending Appeal………………14

III. Plaintiffs Will be Harmed by a Stay Pending Appeal. ………………………………………17

IV. A Stay Pending Appeal is Not in The Public Interest. …………………………………………17

CONCLUSION………………………………………..………………………………………18

# TABLE OF AUTHORITIES

**Cases**

*Al-Adahi v. Obama*,
672 F. Supp. 2d 81 (D.D.C. 2009) …………………………………………..……………………..3

*Al-Adahi v. Obama*,
613 F.3d 1102 (2010) …………………………………………..……………………………………3

*Almaqrami v. Pompeo*,
933 F.3d 774 (D.C. Cir. 2019) …………………………………………………………………12, 13

*Barton v. Barr*,
140  S. Ct.  1442 (2020)…………………………………………………………………………..4

*Dist. Title v. Warren*,
Civil Action No. 14-1808 (ABJ), 2015 U.S. Dist. LEXIS 193144 (D.D.C. Jan. 9, 2015) …..…14

*Doe v. Trump*,
Civil Action No. 17-1597 (CKK), 2017 U.S. Dist. LEXIS 211561 (D.D.C. Dec. 11, 2017) ……16

*Filazapovich v. Dep't of State*,
No. 21-cv-00943 (APM), 2021 U.S. Dist. LEXIS 171312, (D.D.C. Sep. 9, 2021)………………6

*FTC v. Church & Dwight Co.*,
756 F. Supp. 2d 81 (D.D.C. 2010) …………………………………………..……………………..3

*Gomez v. Trump (Gomez I)*,
485 F. Supp. 3d 145, 203 (D.D.C. Sept. 4, 2020) …………………………………………..*passim*

*Gomez v. Trump (Gomez II)*,
486 F. Supp. 3d 445 (D.D.C. 2020)………………………………………………… ...*passim*

*Gomez v. Biden (Gomez III)*,
No. 20-CV-01419 (APM), 2021 WL 3663535, (D.D.C. Aug. 17, 2021) ………………….. *passim*

*INS v. Pangilinan*,
486 U.S. 875 (1988)……………………………………………………………………………...12

*Serakova v. Biden*,
No. 1:21-cv-02066 (TNM), 2021 U.S. Dist. LEXIS 209870, at *1 (D.D.C. Sep. 24, 2021) …...13

*Tate v. Pompeo*,
Civil Action No. 20-3249 (BAH), 2021 U.S. Dist. LEXIS 8813 (D.D.C. Jan. 16, 2021)………..6

*Tineo v. AG United States,*

937 F.3d 200, 216 (3d Cir. 2019) …………………………………………………………..12

*United States v. Bolton*,
468 F. Supp. 3d 1, 5 (D.D.C. 2020)…………………………………………………………2

*United States v. Palomar-Santiago*,
141 S. Ct.  1615 (2021)…………………………………………………………………4

*Young v. Trump*,
No. 20-cv-07183-EMC, 2020 U.S. Dist. LEXIS 233614 (N.D. Cal. Dec. 11, 2020)………………5

*Wis. Gas Co. v. FERC*,
758 F.2d 669 (D.C. Cir. 1985) …………………………………………………………...14

*Xiaobing Liu v. Blinken*,
No. 21-cv-629-TJK, 2021 WL 2514692  (D.D.C. June 18, 2021) ………………………………10

**Other Authorities**

8 U.S.C. § 1101(a)(3)…………………………………………………………………..4

8 U.S.C. § 1182…………………………………………………………………..passem

Presidential Proclamation 10014, *Suspension of Entry of Immigrants Who Present a
Risk to the United States Labor Market During the Economic Recovery Following the
2019 Novel Coronavirus Outbreak*…………………………………………………….passem

Presidential Proclamation 10149, *Revoking Proclamation 10014,* 86 FR 11847…………1, 2, 17

Presidential Proclamation 10225, *National Immigrant Heritage Month, 2021,* 86 FR 11847…16

## TABLE OF EXHIBITS

Exhibit A, *Declaration of Andrea Whiting*

Exhibit B., Excerpt of Gov.  Opp. to Pls. Mot. For Pre. Inj., *Young v. Trump*, Case No. 3:20-cv-07183-EMC (Cal. N.D.) (Dkt. No. 23)

***MOHAMMED*, *FONJONG*, AND *KENNEDY* PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR A STAY AND MEMORANDUM IN SUPPORT**

On February 1, 2022, Defendants filed a Motion for a Stay of this Court's October 13, 2021 order pending Defendants' appeal of that order to the United States Court of Appeals for the District of Columbia Circuit. ECF No. 253, Def. Mot. For Stay. (Stay Mot.) *Mohammed*, *Fonjong*, and *Kennedy* Plaintiffs ("MFK Plaintiffs") hereby oppose the motion a stay and offer the follow memorandum in support. Further, in the interest of efficiency, MFK Plaintiffs have taken care to omit duplicative arguments put forth by *Gomez* plaintiffs in their opposition memorandum (ECF No. 255), but incorporate those arguments in their entirety.

## BACKGROUND

MFK Plaintiffs take issue with Defendants' claim that "President Trump signed Proclamation 10014, *Suspension of Entry of Immigrants Who Present a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak*, 85 Fed. Reg. 23,441," "**[i]n response to** the damage the COVID-19 pandemic inflicted on the U.S. economy, on April 22, 2020." Mot. at 3, (emphasis added). There are no facts to suggest President Trump's nativist motives were related to damage the COVID-19 pandemic inflicted on the U.S. economy. In fact, when revoking PP 10014, President Biden rightfully conceded that the proclamation "does not advance the interests of the United States." Proclamation 10149, *Revoking Proclamation 10014*, 86 FR 11847 ("PP 10149"). "To the contrary, it harms the United States, including by preventing certain family members of United States citizens and lawful permanent residents from joining their families here." *Id*. "It also harms industries in the United States that utilize talent from around the world." *Id*. "And it harms individuals who were selected to receive the opportunity to apply for, and those who have likewise received, immigrant visas through the Fiscal Year 2020 Diversity Visa Lottery." *Id*. "Proclamation 10014 has prevented these individuals

from entering the United States, resulting, in some cases, in the delay and possible forfeiture of their opportunity to receive Fiscal Year 2020 diversity visas and to realize their dreams in the United States." *Id.* MFK Plaintiffs ask the court to take judicial notice of President Biden's own admissions in PP 10149 that are in stark contradiction to the arguments his attorneys now make before this Court.

MFK Plaintiffs also take issue with Defendants' portrayal of the procedural history with the Circuit Court. Defendants explain "the D.C. Circuit dismissed the [*Gomez* plaintiffs' prior] appeal as moot" because "President Biden rescinded Proclamation 10014, and Proclamation 10052 expired by its own terms."  Stay Mot. at 5. What Defendants omit is they filed their own cross-appeal of the *Gomez I* decision where they could have challenged much of what they say now is causing them a risk of great harm, but they stipulated to voluntary dismissal of that cross-appeal just before their statement of issues became due on December 14, 2020, before any of the September issuances were able to enter. *Gomez, et al. v. Biden et al.*, D.C. Cir. No. 20-5332, Dkt. #1874316 (Dec. 3, 2020).[1] This stipulation occurred months before "President Biden rescinded Proclamation 10014, and Proclamation 10052 expired by its own terms."

## LEGAL STANDARD

MFK Plaintiffs supplement the legal standard for a stay pending appeal laid out by *Gomez* Plaintiffs only to add: "[T]he government must clearly establish all four [*Nken*] factors." *United States v. Bolton*, 468 F. Supp. 3d 1, 5 (D.D.C. 2020) (noting the "D.C. Circuit has expressly declined to address the viability of the "sliding scale" approach...").

---

[1] *Gomez* Plaintiffs suggest this was an appeal only of the *Gomez* II order. ECF No. 255 at 16. Not so. *See*: ECF No. 167 at 1, *Defendants' First Notice of Appeal,* ("Defendants hereby appeal from the Court's Orders entered September 4, 2020 (ECF No. 123), September 14, 2020 (ECF No. 132), and September 30, 2020 (ECF No. 151) in the above-captioned cases to the United States Court of Appeals for the District of Columbia Circuit.").

# ARGUMENT

## I.    Defendants are not Likely to Succeed on Appeal

Defendants are not likely to succeed on the merits at the D.C. Circuit.  Defendants argue the Court should stay the implementation of its order because "the issues presented this case deal with complicated matters of immigration policy and the operations of U.S. consular posts worldwide, and the D.C. Circuit may view these matters in a different light on appeal," citing *Al-Adahi v. Obama*, 672 F. Supp. 2d 81, 83 (D.D.C. 2009). Stay Mot. at 7. However, in *Al-Adahi,* government defendants were seeking a stay pending their appeal of district court granting of a habeas corpus petition for a Guantanamo Bay detainee that "concerned the delicate balance of habeas corpus and national security; furthermore, had the stay not been granted, and the case reversed on appeal, it was likely the government would never have recovered the defendant." *FTC v. Church & Dwight Co.*, 756 F. Supp. 2d 81, 84-85 (D.D.C. 2010) (finding it "questionable" for the defendant to equate a reconsideration of their appeal to *Al-Adahi* when "[t]hose circumstances are a far cry from the facts in this case."). In fact, on appeal, the Circuit Court did view the matter in a different light than the District Court, finding "there can be no doubt that Al-Adahi was more likely than not part of al-Qaida." *Al-Adahi v. Obama*, 392 U.S. App. D.C. 135, 144, 613 F.3d 1102, 1111 (2010). Here, however, like in *FTC*, Plaintiffs are not Guantanamo detainees accused of being part of part of al-Qaida, and Defendants embarrass themselves suggesting that the issues in *Al-Adahi* are comparable to the issues here.

**A. The Court did not Err in Holding that State's Refusal to Process Visa Applications and Issue Visas to Noncitizens Barred from Entry by PPs is not in Accordance with Law and is Arbitrary and Capricious.**

First, Defendants again argue "§ 1201(g) prevents State from issuing visas to noncitizens subject to Proclamations 10014 and 10052 suspending entry under § 1182(f)," suggesting that the Court's reasoning "severs the closely linked concepts of admissibility and visa eligibility." Stay Mot. At 8. They are wrong. The Court's reasoning was sound when it determined that "[a] restriction on entry pursuant to subsection 1182(f) therefore does not render a person ineligible to receive a visa" because the categories of individuals "ineligible to receive a visa" under section 1201(g) is cabined strictly within the paragraphs under section 1182(a), which lists "Classes of [noncitizens][2] ineligible for visas . . .", thus excluding the distinct subsection of 1182(f). *Gomez III*, 2021 WL 3663535 at *12.

Second, Defendants argue that the "double check system...requires a [noncitizen] to demonstrate his admissibility before two different administrative officials" and suggesting that "the State Department could not properly issue a visa to a FY 2020 DV selectee because the consular officer would have known at the time of the visa adjudication that the applicant was subject to Proclamation 10014 and 10052, and thus inadmissible under § 1182(f)." Stay Mot. at 8-9. In fact, what Defendants are oversimplifying as a double check system is not that at all as the requirements for issuance of a visa are not the same as the requirements for entry into the US. .

Further, Defendants forget that consular officers have already issued Diversity Visas to noncitizens subject to Proclamations suspending entry under § 1182(f), and without any adverse consequences to the United States. In September 2020, consular officers issued 7,023 Diversity

---

[2] Plaintiffs prefer, and some opinions of the Supreme Court now use, the term "noncitizen" in place of the pejorative term "alien." See, e.g., *United States v. Palomar-Santiago*, 141 S. Ct. 1615, 1619 (2021); *Barton v. Barr*, 140 S. Ct. 1442, 1446 n.2 (2020) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'") (citing 8 U.S.C. § 1101(a)(3)).

Visas to FY-2020 selectees and their spouses and children, pursuant to *Gomez I*,[3] even though those selectees were still subject to the entry restrictions of PP 10014. Those visa holders waited patiently and eventually were able to the U.S. after PP 10014 was rescinded. Some are even now employed by Plaintiffs' counsel. Interestingly, Defendants filed a cross-appeal with the Circuit Court of Appeals of the *Gomez I* decision where they could have challenged this part of the Court's decision, but they stipulated to voluntary dismissal of that cross-appeal just before their statement of issues became due on December 14, 2020, before any of the September issuances were able to enter. *Gomez, et al. v. Biden et al.*, D.C. Cir. No. 20-5332, Dkt. #1874316 (Dec. 3, 2020). If Defendants needed to have the Circuit Court weigh in on the lawfulness of consular officers' issuing Diversity Visas despite an entry bar of a presidential proclamation, they could have pursued that issue with the Circuit Court in 2020. They did not, and they were not harmed. Nearly all of the 7,023 individuals issued Diversity Visas in September 2020 entered the U.S., with help from the Court (ECF No. 209), when they were not subject to entry restrictions, and nobody, including Congress, complained after they did. Under the general principles of *laches*, a stay pending appeal over this issue now, when Defendants did not pursue their appeal before, is untimely, and would not be appropriate.

Next, Defendants argue "Congress's implementation of the Automated Visa Lookout System bolsters this interpretation of the statutory scheme," and they could not possibly get around that barrier. Stay Mot. at 10. Multiple courts in this district have already correctly found this argument unpersuasive. "Accepting this argument would require the conclusion that 'exclusion'

---

[3] Defendants once held the Court's September 4, 2020 (*Gomez I*) order in high regard, characterizing it for another court as "comprehensive and well-reasoned." Exhibit B., Excerpt of Gov. Opp. to Pls. Mot. For Pre. Inj., *Young v. Trump*, Case No. 3:20-cv-07183-EMC (Cal. N.D.) (Dkt. No. 23).

within the meaning of the statute encompasses ineligibility for entry as contemplated by § 1182(f). Defendants do not explain, however, how the term "excludability" relates to "inadmissibility," under § 1182(a), or "entry," under § 1182(f). Nor do they explain whether the "system[s] or list[s] which maintains information about the excludability of [noncitizens]" would include information about individuals subject to § 1182(f). In the absence of such information, the Court cannot conclude that this provision is inconsistent, or even in tension, with plaintiffs' interpretation of § 1182(f)." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 145-46 (D.D.C. 2021). "Defendants have produced no evidence that any Plaintiff's name was entered into the system, nor have they explained what consequences would follow from a consular officer's issuance of a visa to an individual listed in the system," and thus, "[t]he Automated Visa Lookout System...does not justify Defendants' refusal to process diversity visa applications." *Filazapovich v. Dep't of State*, No. 21-cv-00943 (APM), 2021 U.S. Dist. LEXIS 171312, at *57-58 (D.D.C. Sep. 9, 2021); *Gomez v. Biden,* No. 20-cv-01419 (APM), 2021 U.S. Dist. LEXIS 154921, at *50-51 (D.D.C. Aug. 17, 2021) (same). Like in these cases, Defendants have not produced any evidence that Plaintiffs' names ever appeared Lookout System or explained consequences if they did. Obviously, there are no consequences because, from above, consular officers would not have been able to issue visas pursuant to *Gomez I*, but they did, and as noted above, Defendants stipulated to dismissal of their appeal of that order.

**B. The Court did not Err in Holding that State's Mission-Critical Guidance was Arbitrary and Capricious Because the Determinations Underlying the Guidance is Committed to Agency Discretion and Unreviewable Under the APA, and Even if the Guidance Were Reviewable, it was Reasonable in Light of the Pandemic.**

Defendants argue "in the context of the DV2020 plaintiffs, who raised the same claim as the O-visa applicants in *Tate*, this Court did not provide any reason for its departure from, or

disagreement with, Chief Judge Howell's determination that the State Department's mission-critical guidance was unreviewable under the APA." Stay Mot. at 13. *Gomez* Plaintiffs appropriately rebut this claim, (ECF No. 255 at 8), but MFK Plaintiffs supplement their rebuttal with another reason why this Court's departure from *Tate* was appropriate. In *Tate*, Chief Judge Howell found a declaration from Brianne Marwaha persuasive support in denying preliminary injunction on the mission critical issue for O-visa plaintiffs. *Tate v. Pompeo*, 513 F. Supp. 3d 132, 138 (D.D.C. 2021) (citing the declaration seven times). This Court, however, recognized that the rationale put forth in Brianne Marwaha's January 19, 2021 declaration, (found at ECF No. 189-3), provided "post hoc rationalization [that could not] make up for the lack of contemporaneous evidence showing that the agency gave any consideration to the September 30 deadline for issuance of diversity visas or the 'detrimental effects that will be wrought on diversity visa selectees if they do not receive visas.'" ECF No. 237 at 37, (quoting *Gomez I*, 485 F. Supp. 3d at 199). Further, unlike here, *Tate* plaintiffs filed "[their] lawsuit on November 10, 2020" (*Tate*, 513 F. Supp. 3d 132, at 139), so Chief Judge Howell lacked this Court's unique perspective on how Defendants' rationale evolved over time.

*Gomez* Plaintiffs appropriately rebut Defendants' arguments with respect to *Sunny,* as well, MFK Plaintiffs add only that the consequences of Defendants' mission critical policies on F2A visa category visa applicants, while also severe, did not involve a September 30 deadline where the immigration benefit completely disappears.

Further, Defendants argue the Court's conclusion they failed to consider an important aspect of the problem in issuing the COVID-19 guidance, Defendants point to zero words within the Certified Administrative Record and instead try to freestyle a new rationalization from scratch. Defendants now suggest they considered that "DV2020 selectees—all of whom were subject to

entry suspension under the Presidential Proclamations and Section 1182(f)—*may* lose the opportunity to immigrate *if* processing of DV2020 applications occurred after the end of the fiscal year." Stay Mot. At 15, (emphasis added). "[M]ay" and "if" are interesting word choices. Defendants claim they "have strong arguments on appeal that, in the context of the pandemic, [their Mission Critical guidance] was a reasonable judgment by the Executive Branch that this Court should not have overridden" (Stay Mot. at 15), but all they have really done is point to two orders from courts that had no reason to look at whether Defendants considered the impact of their guidance on Diversity Visa selectees and reaffirmed the Court's conclusion, through a botched attempt with a new post-hoc rationalization, that they never considered that DV2020 selectees *would* lose the opportunity to immigrate, or that processing of DV2020 applications *could not* occur after the fiscal year.

### C. The Court did not Err in Holding that State Unreasonably Delayed and Unlawfully Withheld Adjudication of DVs.

*Gomez* Plaintiffs appropriately rebut Defendants' arguments with respect to Defendants' arguments on unreasonable delay and unlawful withholding. ECF No. 255 at 10.

However, MFK Plaintiffs take issue with Defendants suggestion that "a closer review of § 1202(b) shows that this sentence does not impose an affirmative duty on a consular officer to adjudicate a visa application in a certain time period, nor does it limit in any way the Secretary's exercise of his broad discretion under 22 U.S.C. § 2651a." Stay Mot. at 16. Defendants were not adjudicating Diversity Visas in **any time period** or **under any circumstances** for several months of FY-2020. Defendants essentially suggest that they have unfettered discretion to wait until a minute before midnight on September 30 of any given fiscal year to decide whether to implement the DV program, if even then. That's now how law works.

Defendants also point to the Declaration of Brenda Grewe to put forth a new argument that "the fact that State annually over selects DV selectees militates against the Court's narrow reading of § 1202(b) to require State to provide interviews for selectees even after all DVs for a given fiscal year are allotted." Stay Mot. at 17. Ms. Grewe blurs the lines between the number of DV-2020 selectees eligible to apply for an immigrant visa and the number of DV-2020 selectees who actually applied, making the Defendants' latest lecture about DV lottery procedures kind of bizarre. Ms. Grewe declares there were "90,215 *applicants*" (ECF No. 253-2, at ¶ 4), when that is how many "approved petitions" were eligible to submit applications. 22 CFR § 42.33 (c) (d). For FY-2020, like every fiscal year, KCC only received applications from a subset of the 90,215 approved petitions. That there are significantly more "approved petitions" than actual submitted applications demonstrates why Defendants have a nondiscretionary duty to adjudicate diversity visa applications, not the other way around. The Department's purpose in over selection is not to flaunt the Secretary's discretion, but "to ensure, to the extent possible, usage of all immigrant visas authorized under INA 203(c) for the fiscal year in question." 22 CFR § 42.33(c).

The Court has already weighed the factors from *Telecomms. Research & Action Center* ("*TRAC*") v. FCC, 750 F.2d 70, 79–80 (D.C. Cir. 1984) and found that " the TRAC factors favor a finding that Defendants unreasonably delayed processing Plaintiffs' DV-2020 visas." ECF No. 237 at 43. Nevertheless, MFK Plaintiffs address Defendants' arguments on those factors below.

### *Factors one and two.*

As the Court has already explained twice now, "'[t]he specificity and relative brevity' of the September 30 [diversity visa] deadline manifests Congress's intent that the State Department undertake good-faith efforts to ensure that diversity visas are processed and issued before the deadline." ECF No. 237 at 41, (quoting *Gomez I*, 485 F. Supp. 3d at 196 (quoting *In re People's*

*Mojahedin*, 680 F.3d at 837)). Defendants claim they "have provided an identifiable rationale—Defendants first suspended all routine nonimmigrant and immigrant visa services due to the COVID-19 pandemic, as this Court acknowledged, in an effort to protect the health of consular officers and the public." Stay Mot. 18-19. However, the Court has already found "that argument overlooks the fact that, at least with regard to DV-2020 applicants, the Secretary of State did not just 'reduce consular processing,' but instructed consular posts to process only the applications of 'applicants that . . . meet an exception to the [Proclamation], . . . and that constitute a mission-critical category.'" ECF No. 237 at 41. "Based on that instruction, consular officers stopped the processing of DV-2020 applications altogether." *Id*. Defendants have not shown how that policy, which the court has found was based on a faulty legal premise, was governed by a rule of reason." *Id*.

Gomez Plaintiffs are correct that Defendants' citation to *Xiaobing Liu v. Blinken*, No. 21-cv-629- TJK, 2021 WL 2514692 (D.D.C. June 18, 2021), is inapposite because it does not involve time-sensitive nature of diversity visas, but also, that case challenged Defendants' tiered immigrant visa prioritization scheme, a policy that did not even go into effect until November 2020. Stay Mot. At 19. Another court's view of Defendants' different rationale of a different policy that was not challenged by any Plaintiffs in these consolidated cases is simply not relevant to an appeal of this Court's order.

### *Third and Fifth factor*

Defendants do not bring up the third and fifth factors—concerning health, welfare, and the interests prejudiced, as they did not dispute the factors in summary judgment briefing, and the Court already found they "favor Plaintiffs, and for good reason." ECF No. 237 at 42. "'[P]rejudice from delay is dire, as thousands of DV-2020 selectees risk losing their (likely) once-in-a-lifetime

opportunity to immigrate to the United States, and delay is less tolerable in cases like this one, where human . . . welfare' is at stake." *Id.*, (internal citations and quotations omitted). Those factors are further bolstered by the Supplemental Declaration of Tess Hellgren, submitted in support of the *Gomez* Plaintiffs' opposition. ECF No. 255-1.

### *Fourth factor.*

While the Court has previously found this factor neutral, Defendants continue to argue "the effect of expedited delayed action on agency activities of a higher or competing priority, also weighs in favor of Defendants." Stay Mot. at 19. Now, they argue "expediting action in this case would direct resources away from the adjudications of other immigrant visa applicants who have been waiting longer." Stay Mot. at 19. Defendants point to the *Visa Bulletin for May 2020* and note "an adult child of a U.S. citizen (F1) whose petition was filed before March 22, 2014 and a married child of a U.S. citizen (F3) whose petition was filed before March 15, 2008." *Id.* Defendants also generalize the Visa Bulletin, as F1 category petitions for beneficiaries from Mexico and Philippines are only current for 1999 and 2011, respectively, and F3 category petitions for beneficiaries of these two countries are only current 2000 and 2001, respectively. However, Diversity Visa selectees do not produce the Visa Bulletin. Defendants produce it to comply with visa allotments from Congress. Blaming Plaintiffs who are eligible for 9,095 visas reserved by the court for why some family preference category petitions take up to 23 years to become current is purely fanciful.

### Sixth factor.

In its opinion supporting final judgment, the Court declined to find that Defendants acted in bad faith. ECF 257 at 43. MFK Plaintiffs ask the Court to consider that, on a hypothetical future

remand, the Court could change that position based upon Defendants' latest admission that they never considered that DV2020 selectees *would* lose the opportunity to immigrate, or that processing of DV2020 applications *could not* occur after the fiscal year. *See:* §1(B) above.

**D.      The Court did not Err in Holding that it had the Equitable Authority to Order State   to Adjudicate and Issue Reserved DVs Beyond the FY 2020.**

Defendants point to *INS v. Pangilinan*, 486 U.S. 875, 883-84 (1988), for the proposition that "[t]he Court lacked this authority because the relief it granted to the DV2020 plaintiffs violates clear statutory language to the contrary." Stay Mot. At 20. However, "[*Pangilinan*] involved the judicial conferral of citizenship as an equitable remedy..." and stands for the proposition that "the power to make someone a citizen of the United States has not been conferred upon the federal courts, like mandamus or injunction, as one of their generally applicable equitable powers." *Tineo v. AG United States*, 937 F.3d 200, 216 (3d Cir. 2019) (internal citations omitted) (declining to expand *Pangilinan*). Here, the Court is not attempting to confer citizenship to anyone, and Defendants' implementation of the Court's order would not require that remedy either.

Defendants argue that "[f]or decades, the State Department has implemented these congressional mandates through unambiguous agency regulations that make clear that '[u]nder no circumstances may a consular officer issue a visa or other documentation to an [noncitizen] after the end of the fiscal year during which an [noncitizen] possesses diversity visa eligibility.'" Stay Mot. At 21, (citing 22 C.F.R. § 42.33(a)(1)) (emphasis omitted). Defendants argue they have a duty not to issue Diversity Visas *after* the end of the fiscal year, while denying that they have a duty to issue Diversity Visas *before* the end of the fiscal year.

Defendants accuse the Court of "[r]elying on an overbroad reading of *Almaqrami v. Pompeo*, 933 F.3d 774 (D.C. Cir. 2019)," suggesting that Court's expansion of *Almaqrami* effectively eviscerates Congress's limitation on DVs each FY, and it ignores the INA's requirement that the State Department cease processing DVs at the close of the FY." Stay Mot. at

21. For this, Defendants point to a case decided prior to *Almaqrami*. The Court is not expanding *Almaqrami*, but ruling consistent with this settled law.

Further, Defendants suggest that "another court in this District has expressed skepticism about whether it can reserve DVs for FY2021." Stay Mot. at 22. First, the reason Defendants point to a transcript is because that court's one-page opinion contained no analysis. *Serakova v. Biden*, No. 1:21-cv-02066 (TNM), 2021 U.S. Dist. LEXIS 209870, at *1 (D.D.C. Sep. 24, 2021) ("For the reasons stated on the record, the Court denies Serakova's Motion.") (See: ECF No. 52-2). Second, even the *Serakova* court said "...I think this is something of a close call on that question...[so,] I am going to go on and even assuming that the plaintiff was right that I do have the authority to grant this type of relief." ECF No. 52-2, (distinctly not dismissing the case due to the orally expressed skepticism). Third, the *Serakova* court's alleged skepticism was based upon an expansive and erroneous interpretation of *Pangilinan*, 486 U.S. 875, even though implementation of the Court's order would not require the Court to confer citizenship on anyone.

Defendants also take another shot at calling into question the Court's finding that "the reservation of visas is similar to 'reserving a congressionally afforded benefit past a statutory deadline' in the appropriations context. ECF No. 237 at 51, (quoting *Gomez II*, 490 F. Supp. 3d at 285–86). This time, they ask the Court to look not to a case not about Diversity Visas, but about F2A family preference category visas. Stay Mot. At 22. In fact, in the same paragraph where Defendants find their new support, the Sunny court acknowledged, "[t]he language in the Guidance Cables implies that once the IR backlog is addressed, a foreign post will have more discretion in its allocation of visa appointments." *Sunny v. Biden*, No. 21-cv-4662 (BMC), 2021 U.S. Dist. LEXIS 220185, at *41 (E.D.N.Y. Nov. 12, 2021). That language provided much more comfort to F2As, a visa category where the applicants do not lose their opportunity to immigrate at the end of the fiscal year.

Defendants also argue they are distinguished from *Przhebelskaya v. USCIS*, 338 F. Supp. 2d 399 (E.D.N.Y. 2004) and *Paunescu v. INS*, 76 F. Supp. 2d 896 (N.D. Ill. 1999), because they

implemented *Gomez I*. Mot. at 23. That's not what Plaintiffs remember. Defendants omit that the Court had to step in with amended order on September 14, 2020 to deal with "the State Department's legally dubious and illogical foisting of a 14-day quarantine requirement upon those DV-2020 selectees affected by the Regional Proclamations." ECF No. 132 at 5. Defendants also omit the Court's own findings that "lost time and confusion engendered by Defendants' implementing guidance further supports that supplemental relief is necessary to preserve a full remedy," and that "[a]dditional relief is also needed to provide an adequate remedy to the DV-2020 Selectees" and that "[t]he survey and accompanying anecdotal evidence may not be fully representative or statistically unassailable, but they suffice to show that further relief is necessary for DV-2020 Selectees..." ECF No. 151 at 14, 15.

## II.    Defendants Will Not Suffer Irreparable Harm Absent a Stay Pending Appeal

"The showing of irreparable harm must be more than a bare allegation of what is likely to occur." *Dist. Title v. Warren*, Civil Action No. 14-1808 (ABJ), 2015 U.S. Dist. LEXIS 193144, at *7 (D.D.C. Jan. 9, 2015) (citing *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674, (D.C. Cir. 1985). "The movant must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." *Id*. "[E]conomic loss does not, in and of itself, constitute irreparable harm." *Id*. Despite *Dist. Title*, Defendants make no attempt to show that the alleged harm to them occurred in the past. Defendants make no attempt in their motion to show how they were harmed by the visa issuances that occurred in September 2020 pursuant to the Court's order. Since Defendants were not harmed by visa issuances to Plaintiffs in September 2020, it is logical that issuances to Plaintiffs in February 2022 will not cause them harm either.

While Defendants complain that implementing the Court's order will "impose significant costs, subject [the State Department] to overwhelming operational burdens and require it to reorder its consular and administrative priorities during an ongoing pandemic to the detriment of other visa applicants" (Stay Mot. at 24), Defendants submitted a declaration before another court this week from Andrea Whiting where she admits the necessary system modifications to implement the order that are not already complete, will be complete by **April 18, 2022**. Exhibit A, *Declaration of Andrea Whiting*, ¶ 4.

Defendants best offer of proof that the alleged harm is certain to occur in the near future includes the required modifications that "will cost approximately $500,000," (Stay Mot. at 25), in the context that their resources are "finite," "insufficient," "scarce," and "diminished." Stay Mot. at 2, 28; ECF No. 253-4 at at ¶ 3, 5. Those adjectives are intense, but for the FY-2022 budget, Defendant Secretary Antony Blinken requested $1,979,600,000 for the Bureau of Consular Affairs, and a budget of $359,000,000 just for [t]he Office of Consular Systems and Technology within the Bureau (a decrease of $42,400,000 from the FY-2021 estimate).[4] It is not clear how much of the State Department's Office of the Legal Adviser's $1,700,000 budget is earmarked to fight the Court's order or Diversity Visa applicants, but it's clear they are not taking that cost into account.[5]

To the extent the Court entertains Defendants' arguments from the Declaration of Sharon B. Westmark (ECF No. 253-3), another court in this district has found that a declaration with a

---

[4] FY 2022 International Affairs Budget, State Dep't (May 28, 2021), https://www.state.gov/wp-content/uploads/2021/05/FY-2022-State_USAID-Congressional-Budget-Justification.pdf.

[5] FY 2022 International Affairs Budget, State Dep't (May 28, 2021), https://www.state.gov/wp-content/uploads/2021/05/FY-2022-State_USAID-Congressional-Budget-Justification.pdf.

lengthy discussion of the administrative difficulties associated with implementing an order that fails to acknowledge the considerable amount of time the party has already had to prepare for the implementation of the policy does not demonstrate irreparable harm to government defendants. *Doe v. Trump*, Civil Action No. 17-1597 (CKK), 2017 U.S. Dist. LEXIS 211561, at *7 (D.D.C. Dec. 11, 2017) (where the court had issued an order six weeks prior, putting government Defendants "on notice that they would be required to implement [a policy of the accession of transgender individuals into the military]).

When rescinding Presidential Proclamation 10014, *Suspension of Entry of Immigrants Who Present a Risk to the United States Labor Market During the Economic Recovery Following the 2019 Novel Coronavirus Outbreak* (PP 10014), Defendant President Joseph Biden, found "that the unrestricted entry into the United States of persons described in section 1 of Proclamation 10014 **is not detrimental to the interests of the United States**." Presidential Proclamation 10149, *Revoking Proclamation 10014, 86 FR 11847*, (emphasis added). The persons described in PP 10014, §1, specifically, were "[noncitizens] as immigrants..." Thus, according to President Joseph Biden and Defendant Blinken, Plaintiffs, who are noncitizens as immigrants, are not detrimental to the interests of the United States, and thus Defendants will suffer no irreparable harm by implementing the Court's order. *See also*, Presidential Proclamation 10225, *National Immigrant Heritage Month*, 2021, 86 FR 11847, ("Vice President Harris and I affirm that immigrants historically have made and continue to make our Nation stronger."). Even Defendant Secretary Blinken has affirmed that "welcoming immigrants is core to our national identity." Opening Remarks by Secretary of State Antony J. Blinken Before the House Committee on Foreign Affairs (Mar. 10, 2021), https://www.state.gov/opening-remarks-by-secretary-of-state-antony-j-blinken-before-the-house-committee-on-foreign-affairs/.

**III.   Plaintiffs Will be Harmed by a Stay Pending Appeal.**

MFK Plaintiffs echo the rebuttal put forth by *Gomez* Plaintiffs on this issue, but add one more point. When rescinding PP10014, Defendant President Joseph Biden, declared that proclamation "harm[ed] individuals who were selected to receive the opportunity to apply for, and those who have likewise received, immigrant visas through the Fiscal Year 2020 Diversity Visa Lottery... [because it] prevented these individuals from entering the United States, resulting, in some cases, in the delay and possible forfeiture of their opportunity to receive Fiscal Year 2020 diversity visas and to realize their dreams in the United States." Presidential Proclamation 10149, *Revoking Proclamation 10014*, 86 FR 11847. With this motion, Defendants seek to cause more of the same type of harm the President has already denounced.

**IV.   A Stay Pending Appeal would not Serve the Public Interest.**

MFK Plaintiffs echo the rebuttal put forth by *Gomez* Plaintiffs on this issue, but again, add one more point. In arguing a stay pending appeal is in the public interest, Defendants argue that FY 2022 DV selectees, and other immigrant visa applicants, could be adversely impacted if they are compelled to implement the Court's order. Stay Mot. At 28. This is ironic, because if Defendants had considered the harms to Plaintiffs when implementing their No-Visa Policy, we would not be here. In any event, Defendants' claims that FY-2022 DV selectees will be prejudiced absence a stay are betrayed by their own declarant Andrea Whiting's explanation about how they are frontloading the processing of FY-2022 DV cases earlier in the year to create more capacity

for the FY-2020 and FY-2021 DV adjudications later on in FY 2022.  ECF No. 240 at 4; ECF No. 250-1 at ¶10

## CONCLUSION

Defendants' belated motion for stay pending appeal is not compelling. For all the reasons discussed above, and reasons offered by *Gomez* Plaintiffs, and by explained by MFK Plaintiffs in prior briefing before this court, Defendants are not likely to succeed on appeal and they will not suffer irreparable harm absent a stay; Plaintiffs will be harmed by a stay; and a stay is not in the public interest. Defendants' motion should be denied.

Dated: February 15, 2022

Fallbrook, California

Respectfully submitted,

*/s/ Curtis Lee Morrison*

Curtis Lee Morrison
Rafael Ureña
Kristina Ghazaryan
Abadir Barre
**Morrison Urena, LC**
PO Box 80844
Rancho Santa Margarita, CA 92688
Tel: (703) 929-4424
Fax: (929) 286-9584
*Attorneys for Mohammed, Fonjong, and Kennedy Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

On the below date, I electronically filed **MOHAMMED, FONJONG,** and **KENNEDY PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR A STAY AND MEMORANDUM IN SUPPORT**, with the Clerk of the United States District Court for the District of Columbia, using the CM/ECF System. The Courts CM/ECF System will send an email to all noticed parties to the action who are registered with the Court's CM/ECF System.

Dated: February 15, 2022

Fallbrook, CA

By: */s/ Curtis Lee Morrison*

Curtis Lee Morrison, Esq.

**Morrison Urena, LC**

*Attorney for the Mohammed, Fonjong, and Kennedy Plaintiffs*