# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DOMINGO ARREGUIN GOMEZ, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> JOSEPH R. BIDEN, JR., President of the United States of America, *et al.*, <br><br> Defendants. | Civil Action No. 20-1419 (APM) |
| MOHAMMED ABDULAZIZ ABDULBAGI MOHAMMED, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ANTONY BLINKEN, Secretary, U.S. Department of State, *et al.*, <br><br> Defendants. | Civil Action No. 20-1856 (APM) |
| CLAUDINE NGUM FONJONG, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> JOSEPH R. BIDEN, JR., President of the United States of America, *et al.*, <br><br> Defendants. | Civil Action No. 20-2128 (APM) |

| | |
|---|---|
| AFSIN AKER, *et al.*,<br><br>      Plaintiffs,<br><br>      v.<br><br>JOSEPH R. BIDEN, JR., President of the United States of America, *et al.*,<br><br>      Defendants. | Civil Action No. 20-1926 (APM) |
| MORAA ASNATH KENNEDY, *et al.*,<br><br>      Plaintiffs,<br><br>      v.<br><br>JOSEPH R. BIDEN, JR., President of the United States of America, *et al.*,<br><br>      Defendants. | Civil Action No. 20-2639 (APM) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR STAY**

## INTRODUCTION

The Court should grant Defendants' Motion for a Stay, ECF No. 253 (the "Stay Motion"), and stay its Order of October 13, 2021, ECF Nos. 243, 244, which requires the U.S. Department of State (the "State Department") to issue 9,095 diversity visas ("DVs") from Fiscal Year ("FY") 2020 ("DV 2020") by September 1, 2022, pending Defendants' appeal to the U.S. Court of Appeals for the District of Columbia Circuit. Defendants do not ask the Court to reconsider its Order of October 13, 2021, ECF Nos. 243, 244, but they do respectfully ask the Court to recognize the extraordinary nature of that Order and to stay further implementation of that Order until the pending appeal of that Order resolves the important questions posed. Those questions revolve around the President's authority under the Immigration and Nationality Act ("INA"), as well as the Court's authority to direct the State Department to take action that runs contrary to the temporal limitations put in place by Congress through exercise of its plenary power over immigration. *Kleindienst v. Mandel*, 408 U.S. 753, 769–70 (1972) ("[P]lenary congressional power to make policies and rules for exclusion of aliens has long been firmly established.")

A stay will not extinguish Plaintiffs' remaining claims, nor will it terminate Plaintiffs' ability to immigrate to the United States if the D.C. Circuit agrees with the Court. Notwithstanding arguments to the contrary by the *Gomez* as well as the *Mohammed*, *Fonjong*, and *Kennedy* Plaintiffs,[1] *see generally* ECF Nos. 255, 256, given the myriad issues in this case, Defendants posit there is a real probability that the D.C. Circuit will disagree with the Court's conclusions, or the remedy implemented as a result. The absence of a stay will not only have resulted in the needless expenditure of limited resources by the State Department, but will also cause needless harm to

---

[1] The *Aker* Plaintiffs have filed no opposition to Defendants' Stay Motion, ECF No. 253.

1

other immigrant visa petitioners and their beneficiaries patiently waiting to immigrate by virtue of their displacement in line. A stay will also ensure that visas are not issued to and admission is not granted for persons who, but for the Court's Order, would by law be ineligible for a visa and for admission to the United States. For all these reasons here, prudence is warranted, and Defendants respectfully request that the Court stay further effect of its Order until the appeal of that Order is resolved.

In its Minute Order of February 8, 2022, the Court observed that "Defendants . . . have demonstrated a lack of diligence in seeking a stay" and noted that Defendants "waited nearly the full 60 days to file their notices of appeal, and then waited two more months to file their motion for stay." Defendants moved expediently to determine whether to appeal the Court's Order of October 13, 2021, ECF Nos. 243, 244. Federal regulations required the Office of the Solicitor General to make that determination, which required consideration of a number of complex factors. *See* 28 C.F.R. § 0.20(b); *United States v. Mendoza*, 464 U.S. 154, 161 (1984) ("[T]he Government's litigation conduct in a case is apt to differ from that of a private litigant. Unlike a private litigant who generally does not forgo an appeal if he believes that he can prevail, the Solicitor General considers a variety of factors, such as the limited resources of the Government and the crowded dockets of the courts, before authorizing an appeal."). The Office of the Solicitor General's determination in this case was particularly complex, as it required consideration of whether to appeal several related cases before the U.S. District Court for the District of Columbia, as well as coordinating multiple federal agencies with an interest in these cases. That process was necessary to ensure that the ultimate determination to appeal these cases reflected both the interests of the United States and the interests of justice.

2

Additionally, given the various arguments raised by the *Mohammed*, *Fonjong*, and *Kennedy* Plaintiffs, *see e.g.*, ECF No. 256 at 16, it bears mentioning at the outset that the Proclamations that were once central to this case, along with the President's subsequent rescission of those Proclamations, are no longer at issue. Rather, the residual legal questions concern the Plaintiffs' Administrative Procedure Act ("APA") claims regarding the State Department's action in implementing Proclamations 10014 and 10052, which implicate the President's authority under Section 212(f) of the INA, as well as the limits of the Court's authority in equity to grant relief in contravention of bright-line temporal eligibility limits set by Congress through exercise of its plenary power over immigration. Accordingly, many of the arguments and contentions raised by the *Mohammed*, *Fonjong*, and *Kennedy* Plaintiffs are irrelevant to Defendants' Stay Motion. ECF No. 253.

## ARGUMENT

### I. The Court's Order Merits A Stay As It Is An Extraordinary Order That Raise Significant Legal Issues On Appeal.

Although Defendants believe they have a strong likelihood of success on appeal, Defendants do not expect that the Court will summarily reject its own analysis rendered last year. And Defendants have not asked the Court to do so. However, Defendants do believe that the Court also recognizes the serious legal questions raised in this litigation and that a stay is merited until these questions are resolved by the D.C. Circuit.

For example, Defendants have raised the question of whether, when a noncitizen applicant for a visa to the United States is barred from entering the United States by a Proclamation issued under 8 U.S.C. § 1182(f), the State Department's refusal to process or issue the visa to that

3

applicant is arbitrary, capricious, and not in accordance with law, in violation of the APA. This question not only raises a legitimate question about the proper interpretation of a statute, but also a very serious question regarding the limits of the President's national security authority to preclude visa issuance to individuals barred from coming to the United States. Over the last 37 years the President has periodically invoked his authority under 8 U.S.C. § 1182(f) to preclude various groups of individuals from coming to the United States. As a result, the State Department routinely refuses to issue visas to such individuals, a practice that extends far beyond the context of the Proclamations in this case.[2] For example, in the Proclamation at issue in *Trump v Hawaii*, 138 S. Ct. 2392 (2018), the President invoked § 1182(f) to improve "the screening and vetting protocols and procedures associated with the *visa-issuance* process." 82 Fed. Reg. at 13,209 (Mar. 6, 2017) (emphasis added). The Supreme Court upheld this exercise of the Proclamation authority to improve vetting in the visa issuance process. *Id*. But under this Court's interpretation, visa issuance would have been required in that case. And, under the Court's interpretation, the State Department would also be unable to refuse to issue visas to foreign government officials who

---

[2] On February 21, 2022, President Biden issued a new Executive Order under 8 U.S.C. § 1182(f) against individuals who threaten the "peace, stability, sovereignty, and territorial integrity of Ukraine", including a suspension of entry as immigrants and nonimmigrants. *See* Executive Order on Blocking Property of Certain Persons and Prohibiting Certain Transactions With Respect to Continued Russian Efforts to Undermine the Sovereignty and Territorial Integrity of Ukraine available at https://www.whitehouse.gov/briefing-room/presidential-actions/2022/02/21/executive-order-on-blocking-property-of-certain-persons-and-prohibiting-certain-transactions-with-respect-to-continued-russian-efforts-to-undermine-the-sovereignty-and-territorial-integrity-of-ukraine/ (last visited Feb. 22, 2022). Consistent with historical practice, the President delegated to the Secretary of State the authority to implement this Proclamation "as it applies to visas." *Id*. at § 6. Under this Court's interpretation of relevant authorities, the Department of State would have no choice but to issue a visa to those clearly covered under this Proclamations, undermining an important aspect of the President's authority in an important foreign policy matter.

4

failed to combat human trafficking, as prohibited by Proclamation 8342. 74 Fed. Reg. 4,093, 4,094 (Jan. 21, 2009) (invoking § 1182(f) to suspend entry of such government officials, and delegating authority to the Secretary to implement the Proclamation). Visas must also be issued under this Court's interpretation to Russian officials undermining the sovereignty and territorial integrity of Ukraine. *See* Executive Order on Blocking Property of Certain Persons and Prohibiting Certain Transactions With Respect to Continued Russian Efforts to Undermine the Sovereignty and Territorial Integrity of Ukraine, § 6 (Feb. 21, 2022).[3] Against this backdrop, the Court's legal interpretation of the INA places significant limits upon the Executive's foreign affairs authority that Defendants believe is not consistent with the INA. Defendants also believe that they have shown, in that absence of a clear statutory prohibition in the INA, Defendants' decision not to process visas for individuals barred from entering the United States was both lawful and reasonable.

Regardless, Defendants readily acknowledge that the Court has thus far determined otherwise, and that the Court's view is consistent with the views held by some other judges in the district. *See, e.g.*, *Rai, et al. v. Biden, et al.*, No. 21-cv-863 (TSC), ECF Nos. 53, 54, 61, and 62 (D.D.C.). Nevertheless, resolution of this question by the D.C. Circuit is necessary to ensure the consistent interpretation and application of the law. *See Alabama Ass'n of Realtors v. United States Dep't of Health & Hum. Servs.*, 539 F. Supp. 3d 211, 216-17 (D.D.C. 2021) (noting that, given the significance of the orders in question, diverging views in the District Court evidenced the existence

---

[3] *See* The White House, *Presidential Actions*, https://www.whitehouse.gov/briefing-room/presidential-actions/2022/02/21/executive-order-on-blocking-property-of-certain-persons-and-prohibiting-certain-transactions-with-respect-to-continued-russian-efforts-to-undermine-the-sovereignty-and-territorial-integrity-of-ukraine/ (last visited Feb. 22, 2022).

of a significant legal question).

Defendants have also raised the serious legal question of the Court's ability to direct the State Department to issue visas to individuals whose statutory period of eligibility has expired. 8 U.S.C. § 1154(a)(1)(I)(ii). This question raises significant separation of powers questions, given the fact that Congress has plenary power over immigration and has explicitly stated that people selected for the opportunity to receive a diversity visa "shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected only through the end of the specific fiscal year for which they were selected." *Id*. Here, despite this clear limitation set by Congress, the Court has specifically directed the State Department to adjudicate and issue visas after eligibility for those visas expired. *Id*. The Court's authority to do so poses a question not yet definitively answered by the D.C. Circuit. *See Almaqrami v. Pompeo*, 933 F.3d 774 (D.C. Cir. 2019).

Given the serious legal questions that this litigation has raised, a stay is merited until these questions are resolved by the D.C. Circuit.

## II. Defendants Will Suffer Irreparable Harm Without A Stay

Defendants will also suffer irreparable injury without a stay of the Court's order and judgment pending appeal. Absent a stay pending appeal, the State Department must undertake the action of processing and issuing FY 2020 diversity visas in FY 2022. This will violate the INA, impose significant costs, subject the State Department to significant operational burdens, and require it to reorder its consular and administrative priorities during an ongoing pandemic to the detriment of other visa applicants. In particular, without a stay pending appeal, the State Department must continue to undertake significant, costly, and disruptive modifications to its IT

6

infrastructure to process DV applications from past fiscal years. In addition, the State Department will be forced to reorder its consular and administrative priorities amid the ongoing COVID-19 pandemic. Plaintiffs' contentions otherwise are unpersuasive.[4]

As an initial matter, the *Gomez* Plaintiffs make much of the timing of Defendants' Notice of Appeal, ECF No. 248, and Stay Motion, ECF No. 253, in this matter. *See* ECF No. 255 at 1, 19. As discussed, Defendants moved diligently to determine whether to appeal the Court's Order of October 13, 2021, ECF Nos. 243, 244, which was a decision that required consideration of potential appeals in several related cases in this district, coordination between multiple federal agencies, and obtaining authorization from the Office of the Solicitor General. *See Mendoza*, 464 U.S. at 161. That this process took longer than the *Gomez* Plaintiffs might wish does not diminish the irreparable harm that Defendants will face without a stay.

Plaintiffs focus on the agency time and resources necessary for the State Department to modify its IT infrastructure and suggest that these harms are incidental. *See* ECF No. 255 at 18-19, ECF No. 256 at 15. This misses the mark. As a preliminary matter, compliance with the Court's Order of October 13, 2021, ECF Nos. 243, 244, requires the State Department to continue to modify its IT infrastructure in an unprecedented fashion that, for the first time, will permit the

---

[4] Relying on a *Dist. Title v. Warren*, No. 14-1808 (ABJ), 2015 U.S. Dist. LEXIS 193144, (D.D.C. Jan. 9, 2015), the *Mohammed*, *Fonjong*, and *Kennedy* Plaintiffs assert, in part, that Defendants have not demonstrated that they will suffer irreparable harm because "Defendants make no attempt to show that the alleged harm to them occurred in the past." ECF No. 256 at 14. The sentence from *Warren* that the *Mohammed*, *Fonjong*, and *Kennedy* Plaintiffs quote for the apparent proposition that Defendants must demonstrate past harm to obtain a stay is disjunctive: "'The movant must provide proof that the harm has occurred in the past and is likely to occur again, *or proof indicating that the harm is certain to occur in the near future*.'" *Id.* at *7 (emphasis added) (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Here, Defendants have demonstrated that harm is ongoing and *certain* to occur in the near future.

State Department to process DVs from past fiscal years.[5] *See* Declaration of Sharon B. Westmark ("Westmark Decl."), ECF No. 253-3 ¶ 2. And, although an estimated cost of approximately $500,000 may appear modest in comparison to the State Department's overall budget, *see* ECF No. 256 at 15, this sum represents a concrete and substantial monetary cost that the State Department must incur to comply with this Court's Order of October 13, 2021. ECF Nos. 243, 244. Moreover, the State Department's injury is not limited simply to the "time and resources necessary to comply with a court's order . . . ." ECF No. 255 at 19. Rather, its injury stems also from the State Department's need to divert resources from implementing several high-priority IT projects, including the deployment of the National Vetting Center, which, in turn, affects border security and travel facilitation. The harm to the State Department is thus not merely the "expend[ature] of agency time and resources" necessary to make the required modifications to the State Department's IT infrastructure, but also the State Department's being forced to delay implementing several essential IT projects. *Id.* at 18.

---

[5] The *Mohammed*, *Fonjong*, and *Kennedy* Plaintiffs cite *Doe v. Trump*, No. 17-1597 (CKK), 2017 U.S. Dist. LEXIS 211561, at *7 (D.D.C. Dec. 11, 2017) for the proposition that the Court should discount the Declaration of Sharon B. Westmark, ECF No. 253-3, because "another court in this district has found that a declaration with a lengthy discussion of the administrative difficulties associated with implementing an order that fails to acknowledge the considerable amount of time the party has already had to prepare for the implementation of the policy does not demonstrate irreparable harm to government defendants." ECF No. 256 at 15-16. *Doe*, however, concerned a motion for a partial stay pending appeal of a preliminary injunction requiring the Department of Defense "to revert to the *status quo*," *Doe*, 2017 U.S. Dist. LEXIS 211561, at *4, with regard to existing planning to permit transgender individuals to enter military service notwithstanding the issuance of an intervening Presidential Memorandum to the contrary. *See id.*, at *3-4. Here, as noted, compliance with the Court's Order of October 13, 2021, ECF Nos. 243, 244, will require the State Department not to return to the status quo, but to undertake unprecedented and costly modifications to its IT infrastructure.

Plaintiffs' contentions that Defendants will not suffer irreparable harm without a stay because the State Department has already expended considerable resources in complying with the Court's Order of October 13, 2021, ECF Nos. 243, 244, fare no better. *See* ECF No. 255 at 19; ECF No. 256 at 15. As an initial matter, Defendants' diligent compliance with the Court's Order of October 13, 2021, ECF No. 243, 244, does not disqualify Defendants from seeking relief from the further implementation of that Order pending appeal. Moreover, although the State Department has undertaken substantial efforts to implement the IT modifications necessary to comply with the Court's Order of October 13, 2021, ECF Nos. 243, 244, much work remains to be done and the State Department currently estimates that it will not complete these IT alterations until April. *See* Westmark Decl., ECF No. 253-3 ¶ 12. Without a stay, Defendants will continue to suffer irreparable harm as described above by complying with the Court's Order of October 13, 2021. ECF Nos. 243, 244.

The *Gomez* Plaintiffs' unadorned contention that "if a stay is granted, the time and money Defendants have already spent preparing to implement the Court's order will be entirely wasted," ECF 255 at 19, is similarly unpersuasive. To be sure, if the D.C. Circuit finds in Defendants' favor on appeal without a stay already in place, the significant and resource-intensive IT modifications that the State Department has undertaken thus far will have been unnecessary. Yet, Plaintiffs provide no explanation for why, if Plaintiffs prevail on appeal, pausing further modifications to the State Department's IT infrastructure will go to waste. To the contrary, if the D.C. Circuit finds for Plaintiffs, the State Department can simply resume work on the IT modifications necessary to process DV applications from past fiscal years in an orderly fashion.

9

The *Gomez* Plaintiffs also implausibly seek to discount the institutional harms to the State Department, which, to implement the Court's Order of October 13, 2021, ECF Nos. 243, 244, will require the State Department to reorder its consular and administrative priorities worldwide while the COVID-19 pandemic remains ongoing. *See* ECF No. 255 at 20. The *Gomez* Plaintiffs aver that these harms "all boil down to the fact that the agency will not be able to arrange its priorities in the manner it prefers," *id.*, and maintain that the State Department has not demonstrated that the further implementation of the Court's Order of October 13, 2021, ECF Nos. 243, 244, will "seriously threaten its mission or operations." *Id.* (internal quotation marks and citations omitted). These bald assertions fail to address the extent to which the implementation of the Court's Order of October 13, 2021, ECF Nos. 243, 244, impedes and undermines the State Department's mission and operations. In particular, implementing the Court's Order of October 13, 2021, ECF Nos. 243, 244, will circumscribe the State Department's ability to return to the pre-pandemic balance between immigrant and nonimmigrant visa services and ultimately limit the State Department's capacity to carry out the Administration's immigration-related priorities.

Moreover, the *Gomez* Plaintiffs fail to address the harms to specific consular posts, which do not bear the burden of DV-application processing equally, and will need to divert substantial resources from competing priorities to process the DV 2020 Plaintiffs' visa applications. The current status of the U.S. Embassy in Kyiv, which has an extremely high DV workload, typifies the harms that specific consular posts face without a stay. Notably, since Defendants filed their Stay Motion, ECF No. 253, the Secretary of State has announced: "[W]e are in the process of temporarily relocating our Embassy operations in Ukraine from our Embassy in Kyiv to Lviv due to the dramatic acceleration in the buildup of Russian forces." U.S. Dept. of State, *Operations at U.S.*

*Embassy Kyiv*, https://www.state.gov/operations-at-u-s-embassy-kyiv/ (last accessed Feb. 18, 2022). As of February 21, 2022, State Department personnel relocated to Lviv will spend nights in Poland. U.S. Dept. of State, *Department of State Presence in Ukraine*, https://www.state.gov/department-of-state-presence-in-ukraine/ (last accessed Feb. 22, 2022). If Kyiv is unable to process DV applications under the Order, other posts already taxed and facing their own unique challenges will have to issue more cases in lieu of other work.

In sum, Plaintiffs do not meaningfully challenge the irreparable harms that the State Department will face without a stay pending appeal.

### III. Plaintiffs Will Not Be Harmed By A Stay Pending Appeal

Although Defendants acknowledge that many DV 2020 Plaintiffs have suffered delays in visa processing that the COVID-19 pandemic has precipitated, these harms are shared by other visa applicants seeking for the State Department to process their visas and are reparable if Plaintiffs prevail on appeal.

Plaintiffs aver that they will continue to suffer irreparable harm if this Court issues a stay. ECF No. 255 at 20-23; ECF No. 256 at 17. Relying, in part, on a survey of *Gomez* class members, *see generally* Supplemental Declaration of Tess Hellgren, ECF 255-1, the *Gomez* Plaintiffs maintain that continued delay in the State Department's processing of DV 2020 applications creates myriad harms, including economic disruption, familial hardship, medical ramifications, lost professional and educational opportunities, and the continued threat of armed conflict. *See* ECF No. 255 at 20-23. In particular, the *Gomez* Plaintiffs submit that "[m]any class members also have been harmed by the significant affirmative steps they have taken to prepare to immigrate to

11

the United States . . . ."[6] *Id.* at 21.

At the threshold, the winners of the DV lottery are, by necessity, diverse. Their personal circumstances, like their countries of origin, will vary, often greatly. Defendants, of course, acknowledge that many DV applicants—like many visa applicants generally—have suffered inconvenience because of delays in visa processing that the COVID-19 pandemic has caused and are understandably eager to receive visas. In this regard, many DV 2020 Plaintiffs are no differently situated than many visa applicants seeking reunification with their U.S. citizen and Lawful Permanent Resident relatives or DV applicants from FY 2021 and FY 2022, who also seek for the State Department to process their visa applications in an environment of scarce consular resources.

A stay will not extinguish Plaintiffs' claims, nor will it extinguish their opportunity to have their DVs adjudicated should the D.C. Circuit agree with the Court. If Plaintiffs succeed on appeal, Plaintiffs' injury in the form of additional delay in visa processing can be repaired. Defendants ask simply that the Court stay further implementation of its Order of October 13, 2021, ECF Nos. 243,

---

[6] Defendants note that State Department guidance cautions DV applicants against making financial or professional commitments or travel arrangements before receiving a visa. DV selectees are not guaranteed to receive a visa—only the chance to apply for one. The State Department's public guidance makes clear that "selection does not guarantee you will receive a visa. In order to receive a DV to immigrate to the United States, selectees must still meet all eligibility requirements under U.S. law." U.S. Dep't of State, Diversity Visa Program – Entry – If You Are Selected, https://travel.state.gov/content/travel/en/us-visas/immigrate/diversity-visa-program-entry/diversity-visa-if-you-are-selected.html (last visited Feb. 18, 2022) (bold in original). The State Department's public guidance further advises applicants that it is "important that you do not make arrangements such as selling your house, car or property, resigning from your job or making non-refundable flight or other travel arrangements until you have received your immigrant visa." U.S. Dep't of State, Diversity Visa Program - Interview https://travel.state.gov/content/travel/en/us-visas/immigrate/diversity-visa-program-entry/diversity-visa-interview.html (last visited Feb. 18, 2022) (bold in original).

244, so that Defendants may obtain appellate review of that Order. All parties will benefit from the certainty that appellate review will provide. As noted, *see* ECF No. 253-1 at 28, because of its IT infrastructure and the other resource limitations, the State Department has not yet been able to issue a "reserved" FY 2020 DV to any plaintiff. Accordingly, a stay pending appeal will not disrupt any immediate actions being taken by the plaintiffs. Were Plaintiffs to succeed on appeal, the State Department would process the "reserved" FY 2020 DVs, thereby permitting Plaintiffs to obtain the benefits of the Court's Order of October 13, 2021, ECF Nos. 243, 244.

### IV. A Stay Pending Appeal Would Serve The Public Interest

Plaintiffs gloss over the significant impact of the Court's legal interpretation upon the national security and foreign affairs powers of the Executive, in which the public has an overwhelming interest. By implementing the Proclamation at the visa issuance stage, the State Department continues to give meaningful effect to a visa issuance process long considered as the first line of defense against the travel of inadmissible noncitizens to the United States. *See* U.S. Dep't of State, *Visa Issuance: Our First Line of Defense Hearing before the S. Comm. on the Judiciary* (Sept. 30, 2003) (testimony of Maura Harty, Asst. Sec. of State, Bureau of Consular Affairs) ("[The Department of State's] visa work abroad constitutes the 'forward based defense' of the United States against terrorists and criminals who seek to enter the country to harm us."); S. Rep. 81-1515 (Apr. 20, 1950), at 327 ("If a double check was essential 25 years ago to protect the United States against criminals or other undesirables, it is the opinion of the subcommittee that it is even more necessary in the present critical condition of the world to use the double check to screen [noncitizens] seeking to enter the United States."). The authority of the President to act in this sphere is incredibly broad. *See Hawaii*, 138 S. Ct. at 2410. However, despite the INA

13

containing no specific prohibition on the Executive's sweeping authority to implement a President's determinations under 8 U.S.C. § 1182(f), the Court now reads into the INA a limitation on that authority. The public's interest in preserving the President's ability to act through his national security apparatus, or at least to know definitively when he cannot, cannot be understated.

A stay pending appeal would also serve the public interest by permitting appellate review of the Court's Order of October 13, 2021, ECF Nos. 243, 244, which, without a stay, would require de-prioritization of other immigrant visa applicants (which will, in turn, inevitably generate more mandamus litigation). Judge Lamberth has observed that "visa processing during the pandemic is a zero-sum game with [the State Department]'s limited resources. Processing one category of immigrant visas necessarily results in diminished resources for processing another category of visas." *Gjoci v. Dep't of State*, Civ. A. No. 2-0294 (RCL) 2021 WL 3912143, at *13 (D.D.C., Sept. 1, 2021). This is very true; without a stay, the State Department may be forced to de-prioritize visa processing for U.S. citizen petitioners and other immigrant visa applicants, including FY 2022 DV selectees, in favor of processing "reserved" FY 2020 DVs.

Plaintiffs advance three arguments for why a stay would not be in the public interest—none of which is availing. First, the *Gomez* Plaintiffs argue that "Congress has determined that diversity visas are in the public interest" and assert—tellingly without citation to the record in this matter—that "Defendants may not like that congressional choice . . . ." ECF No. 255 at 23. Defendants do not dispute Congress's direction to establish and administer a diversity visa program. Rather, the question here is whether the Court should stay further implementation of its Order of October 13, 2021, ECF Nos. 243, 244, so that the parties may obtain appellate review, particularly where that Order will require the State Department to de-prioritize certain other

categories of visa applicants, including visa applicants where Congress set explicit timing requirements for the State Department to follow, as well as other DV applicants from subsequent fiscal years (such as the current fiscal year).

Second, the *Gomez* Plaintiffs submit that "Defendants can continue processing family-based visas while complying with the Court's order" and assert that "9,095 visas is a mere fraction of the visas that consulates process annually.'" ECF No. 255 at 23. That the State Department will continue to process applications from other visa categories in the absence of a stay is not germane to the fact that, without a stay, the State Department will likely need to de-prioritize other visa applicants, including reunification of family members of U.S. citizens and lawful permanent residents, in the "zero-sum" environment for consular resources that the COVID-19 pandemic has created.

Third, the *Mohammed*, *Fonjong*, and *Kennedy* Plaintiffs maintain that "Defendants' claims that FY-2022 DV selectees will be prejudiced absence [sic] a stay are betrayed by their own declarant Andrea Whiting's explanation about how they are frontloading the processing of FY-2022 DV cases earlier in the year to create more capacity for the FY-2020 and FY-2021 DV adjudications later on in FY 2022." ECF No. 256 at 17-18. Once again, that the State Department is deploying its finite visa-processing resources to comply with the Court's Order of October 13, 2021, ECF Nos. 243, 244, does not change the underlying fact that, to process "reserved" FY 2020 DVs, the State Department will inevitably need to de-prioritize applications for other types of visas, including FY 2022 DV applications. A stay pending appeal would benefit the public interest by permitting appellate review of the Court's Order of October 13, 2021, ECF Nos. 243, 244, prior to disturbing the State Department's ability to process applications from other categories of visas.

15

Finally, a stay serves the public interest by ensuring that persons who, but for the Court's Order, would be ineligible for the visas and for admission to the United States, are not issued these visas and admitted before the D.C. Circuit has the chance to opine. A stay would thus preserve the status quo of the orderly implementation of immigration law and avoid agency actions that would otherwise be contrary to the statutory scheme established by Congress.

\* \* \*

The government previously indicated that it would seek appellate relief 14 days after filing its stay motion in this matter and two other similar cases. By setting that timeframe, the government did not intend to prevent this Court's complete consideration of a stay motion, but simply to provide a timing plan if this Court did not take any action or indicate that it needed further submissions or hearing relating to the government's request. *See* Fed. R. App. P. 8(a)(1); 8(a)(2)(A)(ii). In light of this Court's decision to provide for briefing, the government now intends to seek a stay pending appeal from the D.C. Circuit on March 4, 2022, or earlier if warranted by the ruling of this Court. This action is needed to provide the D.C. Circuit adequate time to become familiar with the issues and act on a stay request without the need for an emergency filing and in advance of April 18, 2022, when the most substantial irreparable and irreversible injury will begin to accrue. *See* Circuit Rule 27(f).

## CONCLUSION

For these reasons, the Court should grant Defendants' Stay Motion, ECF No. 253, and stay its Order of October 13, 2021, ECF Nos. 243, 244.

16

Respectfully submitted,

February 22, 2022

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General,
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation,
District Court Section
COLIN A. KISOR
Deputy Director
GLENN M. GIRDHARRY
Assistant Director
JOSHUA PRESS
Senior Litigation Counsel

*/s/ Eric C. Steinhart*
ERIC C. STEINHART
JAMES J. WEN
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation – DCS
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 514-0618
Email: eric.c.steinhart@usdoj.gov

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 22, 2022, I electronically filed the foregoing document with the Clerk of the United States District Court for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

*/s/ Eric C. Steinhart*
ERIC C. STEINHART
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation – DCS